IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. ) | | |
|   JEROME HENDRICKS, | ) | |
| | ) | |
|        Petitioner, | ) | |
| | ) | |
|     v. | ) | |
| | ) | No. 08 C 1589 |
| | ) | |
| DON HULICK, Warden, | ) | The Honorable |
| | ) | Matthew F. Kennelly, |
|       Respondent. | ) | Judge Presiding. |

## ANSWER

Pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, and this Court's order of March 28, 2008, respondent DON HULICK, Warden of the Menard Correctional Center, answers the petition for writ of habeas corpus filed in the above-captioned cause as follows:

1.      Petitioner Jerome Hendricks is in the custody of Don Hulick, warden of Menard Correctional Center, in Menard, Illinois, where petitioner is identified as prisoner number N53807.

2.      On August 26, 1991, following a bench trial in the Circuit Court of Cook County, petitioner was sentenced to life imprisonment for murder, and to concurrent 30-year sentences for aggravated criminal sexual assault of a victim under the age of 13, five years' imprisonment for concealing a homicidal death, and fifteen years' imprisonment for aggravated kidnaping.  Petitioner's concurrent term-

of-years sentences were ordered to run consecutively to his life sentence. (Resp. Exh. A, Certified statement of conviction/disposition in *People v. Hendricks*, No. 88-CR-12517).

3.     Petitioner appealed, arguing: (1) police lacked probable cause to make a warrantless arrest of petitioner in his home, and his statement to police following that arrest should have been suppressed; (2) there was insufficient evidence to prove petitioner guilty of murder beyond a reasonable doubt; (3) the sentence of natural life imprisonment was excessive; and (4) section 5-8-1(a)(1) of Illinois's Unified Code of Corrections violates his constitutional rights to due process and equal protection. (Resp. Exh. B; *People v. Hendricks*, 625 N.E.2d 304 (Ill. App. 1993)). The appellate court affirmed, holding: (1) given the information available to the police at the time, they "were entitled to more than a mere suspicion that [petitioner] committed the crimes with which he was charged;" (2) there was sufficient evidence that "a reasonable trier of fact could conclude that [petitioner] murdered the victim in this case;" (3) the trial court "acted within its discretion in imposing the natural life sentence, as it could reasonably conclude [the crime] invlove[d] brutal and heinous behavior indicative of wanton cruelty;" and (4) petitioner "failed to show that section 5-8-1(a)(1) is unconstitutional." (*Id.*).

4.     On October 12, 1993, petitioner filed a Petition for Leave to Appeal (PLA), arguing: (1) the police did not have probable cause to arrest him in his home without a warrant; (2) his natural life sentence was excessive; and (3) the

2

Illinois penalty statutes for murder violate due process and equal protection. (Resp.

Exh. C, PLA in *People v. Hendricks*, No. 76244). The Illinois Supreme Court denied

the PLA on December 1, 1993. (Resp. Exh. D, Order denying PLA in *People v.*

*Hendricks*, No. 76244, 624 N.E.2d 812 (Table) (Ill. 1993)). Petitioner did not seek a

writ of certiorari from the Supreme Court of the United States.

     5.     On February 24, 1994, petitioner filed a pro se postconviction petition

pursuant to 725 ILCS 5/122-1, *et seq.*, arguing: (1) the police did not have probable

cause to arrest him; (2) he was not proven guilty of murder beyond a reasonable

doubt; (3) his natural life sentence was excessive; and (4) the Illinois penalty

statutes for murder violate due process and equal protection. (Resp. Exh. E, Pro se

postconviction petition in *People v. Hendricks*, No. 88 CR 12517). On March 21,

1994, the Circuit Court of Cook County denied the petition as res judicata. (Resp.

Exh. F, Order denying PC in *People v. Hendricks*, No. 88 CR 12517 (Cook Cty. Cir.

Ct. Mar. 21, 1994)). Following appellate counsel's motion to withdraw pursuant to

*Pennsylvania v. Finley*, 481 U.S. 551 (1987), the appellate court affirmed the PC

trial court's judgment on November 21, 1994. (Resp. Exh. G, Order in *People v.*

*Hendricks*, No. 1-94-1570 (Ill. App. Nov. 21, 1994)).

     6.     On April 19, 1994, petitioner filed another pro se postconviction

petition, repeating his previous claims verbatim. (Resp. Exh. H, Pro se

postconviction petition in *People v. Hendricks*, No. 88 CR 12517). On December 16,

1994, the Circuit Court of Cook County dismissed the petition. (Resp. Exh. I,

Certified report of disposition in *People v. Hendricks*, No. 88 CR 12517 (Cook Cty. Cir. Ct. Dec. 16, 1994)).  Petitioner appealed, arguing that his postconviction counsel failed to comply with Illinois Supreme Court Rule 651(c), which requires court-appointed postconviction counsel to certify that counsel consulted with petitioner, examined the record, and made changes to the pro se petition necessary to present petitioner's contentions.  (Resp. Exh. J, Order in *People v. Hendricks*, No. 1-95-0474 (Ill. App. Nov. 18, 1996)).  On November 18, 1996, the appellate court agreed, vacated the order dismissing petitioner's postconviction petition, and remanded the case for further proceedings.  (*Id.*).

7.    On June 25, 2001, counsel filed a supplemental postconviction petition arguing that petitioner's sentence violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because the factors used to enhance petitioner's sentence were not proven beyond a reasonable doubt; and the factors relied on to impose petitioner's consecutive sentences were neither proven beyond a reasonable doubt, nor included in petitioner's indictment.  (Resp. Exh. K, Supplemental postconviction claim in *People v. Hendricks*, No. 88 CR 12517).  On October 15, 2003, the trial court dismissed the supplemental petition.  (Resp. Exh. O, Order in *People v. Hendricks*, No. 1-06-2093 (Ill. App. Apr. 26, 2007)).  On February 15, 2005, petitioner filed a "motion to vacate an adverse judgment," claiming that he had not received notice of the adverse judgment until January 3, 2005.  (*Id.*).  The trial court denied the motion, but on July 11, 2006, the Illinois Supreme Court issued a supervisory order

4

allowing petitioner to file a notice of appeal from the denial of his successive postconviction petition. (*Id.*).

8.      In that appeal, petitioner argued:  (1) the postconviction court should have granted his motion for substitution of counsel because the public defenders assigned to represent him neglected his case; (2) his consecutive term-of-year sentences should run concurrently with his life sentence; and (3) *Apprendi* applies retroactively to invalidate his natural life sentence.  (Resp. Exh. L, Brief and argument for petitioner-appellant in *People v. Hendricks*, No. 1-06-2093).  On April 26, 2007, the appellate court affirmed the circuit court's judgment and modified his sentence, holding:  (1) petitioner's legal rights were not prejudiced by appointed counsel's delay in pursuing postconviction proceedings; (2) petitioner's term-of-years sentences must run concurrently to his life sentence because it is impossible to serve those sentences consecutively to a life sentence; and (3) *Apprendi* does not apply retroactively to cases in which the direct appeal was complete before *Apprendi* was decided.  (Resp. Exh. O).

9.      On June 8, 2007, petitioner filed a PLA, arguing:  (1) his motion for substitution of counsel should have been granted; and (2) his natural life sentence was "void under . . . *Apprendi*."  (Resp. Exh. P, PLA in *People v. Hendricks*, No. 104781).  On September 26, 2007, the Illinois Supreme Court denied petitioner's PLA.  (Resp. Exh. Q, Order denying PLA in *People v. Hendricks*, No. 104781, 875 N.E.2d 1117 (Table) (Ill. 2007)).

10.    On March 11, 2008, petitioner mailed the instant habeas petition, in which he argues:  (1) the postconviction court erred in denying his motion for substitution of counsel; (2) the prosecutor committed misconduct by using evidence he knew to be false; and (3) petitioner's life sentence is invalid under *Apprendi*. Petitioner also claims that his constitutional rights are violated by the imposition of sentences to be served consecutively to his life imprisonment.  Because the state appellate court already held that petitioner's term-of-years sentences must run concurrently with his life sentence, (Resp. Exh. O), respondent will not address this claim in this answer, as it has no basis in fact.

11.    In compliance with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, respondent is manually filing Exhibits A-Q with the Clerk of this Court[1]:

**Exhibit A:**  Certified statement of conviction/disposition in *People v. Hendricks*, No. 88 CR 12517;

**Exhibit B:**  *People v. Hendricks*, 625 N.E.2d 79 (Ill. App. 1993);

**Exhibit C:**  PLA in *People v. Hendricks*, No. 76244;

**Exhibit D:**  Order denying PLA in *People v. Hendricks*, No. 76244, 624 N.E.2d 812 (Table) (Ill. 1993);

**Exhibit E:**  Pro se postconviction petition in *People v. Hendricks*, No. 88 CR 12517;

---

[1]  Respondent has been unable to obtain briefs in several of petitioner's older appeals.  The materials provided are sufficient to respond to the instant petition in a complete manner.  However, if respondent obtains these additional briefs, he will provide them to this Court under separate cover.

6

**Exhibit F:**  Order in *People v. Hendricks*, No. 88 CR 12517 (Cook Cty. Cir. Ct. Mar. 21, 1994);

**Exhibit G:**  Order in *People v. Hendricks*, No. 1-94-1570 (Ill. App. Nov. 21, 1994);

**Exhibit H:**  Pro se postconviction petition in *People v. Hendricks*, No. 88 CR 12517;

**Exhibit I:**  Certified report of disposition in *People v. Hendricks*, No. 88 CR 12517 (Cook Cty. Cir. Ct. Dec. 28, 1994);

**Exhibit J:**  Order in *People v. Hendricks*, No. 1-95-0474 (Ill. App. Nov. 18, 1996);

**Exhibit K:**  Supplemental postconviction claim in *People v. Hendricks*, No. 88 CR 12517;

**Exhibit L:**  Brief and argument for petitioner-appellant in *People v. Hendricks*, No. 1-06-2093;

**Exhibit M:**  Brief and argument for respondent-appellee in *People v. Hendricks*, No. 1-06-2093;

**Exhibit N:**  Reply brief and argument for petitioner-appellant in *People v. Hendricks*, No. 1-06-2093;

**Exhibit O:**  Order in *People v. Hendricks*, No. 1-06-2093 (Ill. App. Apr. 26, 2007);

**Exhibit P:**  PLA in *People v. Hendricks*, No. 104781; and

**Exhibit Q:**  Order denying PLA in *People v. Hendricks*, No. 104781, 875 N.E.2d 1117 (Table) (Ill. 2007).

In addition to the documents filed in this response, there are 22 volumes containing the state common law record and report of proceedings, which are held by the Circuit Court of Cook County. The entire state court record is not filed with this answer because the issues raised can be disposed of based upon the filed pleadings.

*See Simental v. Matrisciano*, 363 F.3d 607, 612 (7th Cir. 2004) (decision of whether transcripts are necessary left to sound discretion of the district court; review of state court transcripts quite rare); *Kines v. Godinez* 7 F.3d 674, 677 (7th Cir. 1993) (where federal habeas petitioner does not "identify any inaccuracies or incompleteness" in the appellate court factual summaries, a federal habeas court may exclusively rely on those factual summaries in adjudicating the claims contained in the habeas petition).

12.    As more fully set forth below, respondent denies that petitioner is entitled to relief.

## ARGUMENT IN OPPOSITION TO PETITION

## Application of the AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) apply to petitioner's habeas corpus petition, which is deemed filed on March 11, 2008. *Benefiel v. Davis*, 357 F.3d 655, 659 (7th Cir. 2004); *Jones v. Bertrand*, 171 F.3d 499, 501-02 (7th Cir. 1999) (holding that the "mailbox rule" applies to prisoners filing pro se habeas petitions). *See also* Rule 3(d) of the Rules Governing Section 2254 Cases in the United States District Courts (setting forth "mailbox rule" with regard to inmate filing).

## Exhaustion of State Court Remedies

A habeas petitioner must meet several distinct procedural requirements before seeking federal habeas review. First, the petitioner must satisfy the

exhaustion requirement.  Before a federal court can entertain a petition for a writ of habeas corpus, a state prisoner must exhaust his available state remedies. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  A federal habeas petition "should be dismissed if the prisoner has not exhausted available state court remedies as to any of his federal claims."  *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).  The principle of comity is the guiding doctrine behind the exhaustion rule, inasmuch as "the States should have the first opportunity to address and correct alleged violations of a state prisoner's federal rights."  *Coleman*, 501 U.S. at 731.  Petitioner has exhausted his state court remedies on the claims he raises in the instant petition.  *See* 725 ILCS 5/122-1(c).

## **Procedural Default**

Before a federal court can consider a claim of a state inmate, the state courts must have had a full and fair opportunity to consider constitutional objections to the inmate's imprisonment.  *Farrell v. Lane*, 939 F.3d 409, 410 (7th Cir. 1991); *United States ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1131-32 (7th Cir. 1990). Thus, before considering the merits of a habeas petition, a district court must determine whether the petitioner fairly presented all his claims during the course of the state court proceedings.  *Farrell*, 939 F.2d at 410 (citing *Henderson v. Thieret*, 859 F.2d 492, 496 (7th Cir. 1988)).  This means that a habeas petitioner forfeits the right to raise an issue in his federal habeas petition if he failed to raise it, inter alia, on appeal to the state's highest court.  *Boerckel*, 526 U.S. at 845; *Hadley v. Homes*,

9

341 F.3d 661, 664 (7th Cir. 2003) (failure to take claim through complete round of appellate process results in procedural default).  Illinois treats a failure to appeal as a procedural default barring further review, and "no independent federal doctrine permits the district court to disregard a prisoner's failure to take an appeal under circumstances in which state law requires an appeal." *Jenkins v. Gramley*, 8 F.3d 505, 507 (7th Cir. 1993).  Claims never raised in state court cannot be raised for the first time in a federal habeas petition. *Rodriguez v. Peters*, 63 F.3d 546, 555 (7th Cir. 1995); *Burgin v. Broglin*, 900 F.2d 990, 996 (7th Cir. 1990).

To excuse a procedural default, petitioner must show "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that the failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.  "Cause" is defined as some external objective factor that impeded compliance. *Barksdale v. Lane*, 957 F.2d 379, 382 (7th Cir. 1992) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  The "fundamental miscarriage of justice" pathway is limited to the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 321 (1995); *see House v. Bell*, 547 U.S. 518, 537-38 (2006).  A petitioner who asserts actual innocence to excuse a default "must *demonstrate* innocence; the burden is his, not the state's, for the state has the benefit of the jury's verdict." *Buie v. McAdory*, 341 F.3d 623, 627 (7th Cir. 2003) (emphasis in original).

10

## **Adjudication of the Merits Under AEDPA**

The claims raised in the instant petition that were adjudicated on the merits in state court must be examined through the lens of AEDPA.  AEDPA requires that this Court deny habeas relief unless the decision on the merits by a state reviewing court is either "contrary to" or an "unreasonable application of" United States Supreme Court precedent, or was premised on an unreasonable determination of facts.  28 U.S.C. §2254(d)(1)-(2).  The burden of proof falls squarely on petitioner to show that he is entitled to relief under any of these theories.  *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).  Furthermore, this Court is obligated to presume that the state courts know and follow the rules of federal constitutional law.  *Visciotti*, 537 U.S. at 24.

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law; [or] if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the United States Supreme Court]."  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  This Court is obligated to deny habeas relief under the "contrary to" clause even if the state reviewing court's decision is not an exemplar of good legal drafting:  "[a]voiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases,

so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (emphasis in original).

With respect to the "unreasonable application" prong, "a federal habeas court . . . should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. The Court cautioned that "an unreasonable application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*

The Supreme Court has explicitly held that passage of AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). AEDPA placed "new constraints on the power of a federal habeas court" to grant habeas relief for claims adjudicated on the merits in state court; this heightened standard safeguards "the principles of comity, federalism, and finality." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Thus, merits determinations by state courts are no longer open to plenary review in the habeas forum, as AEDPA "leaves primary responsibility to the state courts for these judgments, and authorizes

federal-court intervention only when a state-court decision is objectively unreasonable." *Visciotti*, 537 U.S. at 27. This view, as one appeals court noted, "is premised on the fact that the state courts, as part of a co-equal judiciary, are competent interpreters of federal law deserving our full respect." *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003).

AEDPA's treatment of substantive state court determinations is mirrored by a concomitant obligation to respect state court findings of fact, which, whether developed in state trial or appellate courts, are presumed to be correct. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981). A petitioner contesting findings of fact bears the burden of rebutting this presumption of correctness with clear and convincing evidence. *See* 28 U.S.C. §2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002). Therefore, all facts developed in the state courts must be presumed to be correct for purposes of these collateral proceedings, absent any showing by petitioner that they are unreasonable based on the record.

## I. Petitioner's Claim That The State Court Erred In Denying His Motion For Substitution Of Counsel Is Not Cognizable.

Petitioner alleges that the trial court erred in failing to grant his motion for substitution of counsel. Petitioner's claim is essentially an assertion that his appointed postconviction counsel failed to provide reasonable assistance as required by Ill. Sup. Ct. R. 651(c). This claim is not a federal constitutional claim, and is non-cognizable on habeas review. *See* 28 U.S.C. §2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction

proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *see also Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *Dressler v. McCaughtry*, 238 F.3d 908, 914 (7th Cir. 2001). "Violations of state laws are cognizable only if they resulted in fundamental unfairness and consequently violate a petitioner's constitutional rights." *Lechner v. Frank*, 341 F.3d 635, 642 (7th Cir. 2003). Illinois law entitles postconviction petitioners to a reasonable level of assistance of counsel. *See People v. Suarez*, 862 N.E.2d 977, 979 (Ill. 2007). However, there is no constitutional right to counsel in the postconviction context. *See Lawrence v. Florida*, __ U.S. __, 127 S.Ct. 1079, 1085 (2007). Therefore, petitioner's claim is not cognizable, and habeas relief should be denied on this claim.

## II.    Petitioner Procedurally Defaulted His Claim Of Prosecutorial Misconduct.

Petitioner claims that the prosecutor committed misconduct at trial by allowing testimony that he knew to be false.[2] As petitioner concedes in his petition, this claim was never presented to the state courts. (Pet. at 9). Thus it is procedurally defaulted. *Rodriguez*, 63 F.3d at 555; *Burgin*, 900 F.2d at 996-97.

Petitioner's default is not excused under the fundamental miscarriage of justice exception because the evidence presented at trial, as well as the evidence that petitioner now presents, does not show that these errors probably resulted in

---

[2] Petitioner's second claim is labeled "Prosecution Misconduct," but it is unclear of what behavior petitioner is complaining. This response represents respondent's best-faith effort to understand petitioner's claim.

the conviction of one who is actually innocent. *See Schlup*, 513 U.S. at 325-27; *Bell*, 267 F.3d at 551.

The state's evidence was strong. The 12-year-old victim, Denise J., went to her cousin's, Yolanda Hill's, home on the night of August 1, 1988 to babysit Hill's children. (Resp. Exh. A at 3). Hill and her housemate confronted petitioner — who was 27 at the time — when they found him on Hill's porch talking to Denise. (*Id.*). Later that evening, Denise asked permission to return to the porch; five minutes later, when Hill checked on her, Denise had disappeared. (*Id.*). Michael Walker testified that on August 2, 1988, petitioner approached him and asked him to fabricate an alibi for petitioner's whereabouts the previous evening. (*Id.*). On August 8, 1988, Chicago police received a call regarding an odor coming from a garage at 251 W. 117th Street. (*Id.*). The garage can be seen from Hill's front porch. (*Id.* at 4). When Officer John Fassl entered the garage he found the body of a young girl. (*Id.*). The girl was lying on her stomach with her hands bound behind her back by shoelaces; her pants were unfastened, her bra straps were down, and her shirt was tied around her neck. (*Id.*). She was wearing the same "Princess" brand shoes, marked in red with the name "Denise," that she was wearing at Hill's home. (*Id.* at 3, 4). In addition to the shirt, another shoelace was tied around Denise's neck. (*Id.* at 4). An older, male cousin of Denise's testified that petitioner initially said that he had not seen Denise on August 1, 1988, but later acknowledged that he had. (*Id.* at 3, 4). Police learned that petitioner was then on

15

parole from a conviction for criminal sexual assault. (*Id.* at 4). The victim in that case had been choked, but not to the point of death. (*Id.*). Petitioner had also been arrested for another criminal sexual assault that occurred at the same address where Denise's body was discovered. (*Id.*).

Petitioner initially told police that he was at a friend's house that evening from six to nine, then returned home briefly, before meeting Walker at Pullman Park. (*Id.* at 5). He said that he then went to the Everett White School where he played basketball until 4:30 in the morning. (*Id.*). He never indicated that he saw Denise that evening. (*Id.*). Petitioner was interviewed twice more on the night of August 8. (*Id.*). In the third interview, petitioner admitted talking to Denise on August 1, and claimed that she went to get ice cream for him, and he later saw her talking to his nephew. (*Id.*). Again, petitioner claimed to play basketball until early morning. (*Id.*). Police were unable to find anyone who had seen petitioner at either Pullman Park or Everett White School. (*Id.*). On August 9, 1988, another detective spoke with petitioner. (*Id.*). Petitioner said that he had not told the truth earlier because he was on parole for rape and feared that he would not be believed. (*Id.*). He now told police that on August 3 or 4 he noticed the odor coming from the garage and discovered the body. (*Id.*). He claimed that he did not report his discovery because of his background. (*Id.*). Later that evening, petitioner asked to speak to police again, at which time petitioner admitted having sex with Denise, but claimed it was consensual. (*Id.*). Finally, later that night, petitioner told police

that Denise had been "hitting" on him all day, and that he had sex with her near a
car parked behind 11720 South Princeton.  (*Id.* at 6).  Afterward, he claimed, Denise
chased him down and led him to the garage.  (*Id.*).  There, he said, Denise took her
pants down and pulled her top over her head; petitioner had vaginal intercourse
with her from behind.  (*Id.*).  Petitioner claimed that Denise had a gag that she
stuck in her mouth and asked him to hold it, pull it, and "ride her like a horse."
(*Id.*).  Two additional women testified to incidents in which petitioner had forcible
intercourse with them, while using the threat of strangulation to subdue them.
(*Id.*).

Against the weight of this evidence, petitioner now offers evidence that
appears to have been produced at trial (and thus, is not "new").  For example,
petitioner says that "the victim was seen by two elderwomen after the date stated
the victim was murder."  At trial, Officer David Kaddigan testified that he spoke
with two women who claimed to have seen Denise on August 2, 1988, though this
testimony was struck as hearsay.  (*Id.* at 7).  Petitioner also appears to complain
about the credibility of in-court testimony by Walker and by Denise's male cousin,
claiming that the State paid Walker for his statement.  Not only did the judge have
a chance to see and evaluate the credibility of the witnesses' testimony for himself,
but Walker admitted on cross-examination that he was in prison, and that he might
receive one month of relocation costs from the State upon his release.  (*Id.* at 3).
Because petitioner's evidence is not new and does not tend to show that the alleged

errors resulted in the conviction of one who is actually innocent, this Court should not excuse petitioner's default. *See Schlup*, 513 U.S. at 325-27; *Bell*, 267 F.3d at 551

Nor can petitioner show cause and prejudice to excuse his procedural default. Petitioner points to no objective, external factor that impeded compliance with the State's procedural rules. Nor can he. The only reason petitioner failed to present his claim in state court is that he chose not to do so. Therefore, he cannot show cause to excuse his procedural default. *See Barksdale*, 957 F.2d at 382. Having failed to excuse his procedural default, petitioner is not entitled to substantive habeas review on this claim.

## III.    The State Court Correctly Held That *Apprendi* Does Not Apply Retroactively.

Petitioner appears to contend that *Apprendi* entitled him to have a jury determine whether the murder was "accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." *See* 730 ILCS 5/5-8-1(a)(1)(b). The State appellate court's holding that *Apprendi* does not apply retroactively to cases in which the defendant's direct appeal was completed before *Apprendi* was decided was neither "contrary to" nor an "unreasonable application of" United States Supreme Court precedent, and therefore petitioner is not entitled to relief on this claim.   28 U.S.C. §2254(d)(1). Petitioner's conviction became final on March 1, 1994, 90 days after the Illinois Supreme Court denied petitioner's direct appeal PLA. (Resp. Exh. D). *Apprendi* was not decided until 2000, and does not apply

retroactively to such cases.  *See White v. Battaglia*, 454 F.3d 705, 706 (7th Cir. 2006) (citing *Schriro v. Summerlin*, 542 U.S. 348 (2004)).  Thus, petitioner is not entitled to relief.

## CONCLUSION

This Court should deny the instant petition for writ of habeas corpus without granting an evidentiary hearing.  Should this Court find that any of petitioner's claims that respondent has not addressed on the merits are cognizable or not procedurally defaulted, or that the petition raises grounds not addressed by this answer, respondent requests thirty days from the entry of the Court's order to address those claims in a supplemental pleading.


May 29, 2008                                   Respectfully submitted,

                                               LISA MADIGAN
                                               Attorney General of Illinois

                          By:      s/ Garson Fischer
                                   GARSON FISCHER, Bar # 6286165
                                   Assistant Attorney General
                                   100 West Randolph Street, 12th Floor
                                   Chicago, Illinois 60601-3218
                                   TELEPHONE: (312) 814-2566
                                   FAX: (312) 814-2253
                                   E-MAIL: gfischer@atg.state.il.us

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2007, I electronically filed respondent's **Answer** with the Clerk of the United States District Court for the Northern District, Eastern Division, using the CM/ECF system, and that on this same date I mailed by United States Postal Service the same to the following non-registered party:

Jerome Hendricks, #N53807,
Menard Correctional Center,
711 Kaskaskia Street
P.O. Box 711
Menard, Illinois, 62259.

May 29, 2008                          LISA MADIGAN
                                      Attorney General of Illinois

                          By:    s/ Garson Fischer
                                 GARSON FISCHER, Bar # 6286165
                                 Assistant Attorney General
                                 100 West Randolph Street, 12th Floor
                                 Chicago, Illinois 60601-3218
                                 TELEPHONE: (312) 814-2566
                                 FAX: (312) 814-2253
                                 E-MAIL: gfischer@atg.state.il.us