*MHK*

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. | ) | |
| JEROME HENDRICKS, | ) | **FILED** |
| | ) | 5-29-2008 |
| Petitioner, | ) | MAY 2 9 2008 |
| | ) | 08 C V 1589 |
| vs. | ) | MICHAEL W. DOBBINS |
| | ) | No. 08 C 1589 CLERK, U.S. DISTRICT COURT |
| | ) | |
| DON HULICK, Warden, | ) | The Honorable |
| | ) | Matthew F. Kennelly, |
| Respondent. | ) | Judge Presiding. |

## TO THE CLERK OF THE UNITED STATES DISTRICT COURT

In compliance with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, the following below-named exhibits are being filed with respondent's Motion to Dismiss the above-captioned petition for writ of habeas corpus[1]:

**Exhibit A:**  Certified statement of conviction/disposition in *People v. Hendricks*, No. 88 CR 12517;

**Exhibit B:**  *People v. Hendricks*, 625 N.E.2d 79 (Ill. App. Ct. 1993);

**Exhibit C:**  PLA in *People v. Hendricks*, No. 76244;

**Exhibit D:**  Order denying PLA in *People v. Hendricks*, No. 76244, 624 N.E.2d 812 (Table) (Ill. 1993);

---

[1] Respondent has been unable to obtain briefs in several of petitioner's older appeals. The materials provided are sufficient to respond to the instant petition in a complete manner. However, if respondent obtains these additional briefs, he will provide them to this Court under separate cover.

**Exhibit E:**   Pro se postconviction petition in *People v. Hendricks*, No. 88 CR 12517;

**Exhibit F:**   Order in *People v. Hendricks*, No. 88 CR 12517 (Cook Cty. Cir. Ct. Mar. 21, 1994);

**Exhibit G:**   Order in *People v. Hendricks*, No. 1-94-1570 (Ill. App. Ct. Nov. 21, 1994);

**Exhibit H:**   Pro se postconviction petition in *People v. Hendricks*, No. 88 CR 12517;

**Exhibit I:**   Certified report of disposition in *People v. Hendricks*, No. 88 CR 12517 (Cook Cty. Cir. Ct. Dec. 28, 1994);

**Exhibit J:**   Order in *People v. Hendricks*, No. 1-95-0474 (Ill. App. Ct. Nov. 18, 1996);

**Exhibit K:**   Supplemental postconviction claim in *People v. Hendricks*, No. 88 CR 12517;

**Exhibit L:**   Brief and argument for petitioner-appellant in *People v. Hendricks*, No. 1-06-2093;

**Exhibit M:**   Brief and argument for respondent-appellee in *People v. Hendricks*, No. 1-06-2093;

**Exhibit N:**   Reply brief and argument for petitioner-appellant in *People v. Hendricks*, No. 1-06-2093;

**Exhibit O:**   Order in *People v. Hendricks*, No. 1-06-2093 (Ill. App. Ct. Apr. 26, 2007);

**Exhibit P:**   PLA in *People v. Hendricks*, No. 104781; and

**Exhibit Q:** Order denying PLA in *People v. Hendricks*, No. 104781, 875
N.E.2d 1117 (Table) (Ill. 2007).

May 29, 2008                          Respectfully submitted,

                                      LISA MADIGAN
                                      Attorney General of Illinois

                       By:            _____
                                      GARSON FISCHER, Bar # 6286165
                                      Assistant Attorney General
                                      100 West Randolph Street, 12th Floor
                                      Chicago, Illinois 60601
                                      TELEPHONE: (312) 814-2566
                                      FAX: (312) 814-2253
                                      E-MAIL: gfischer@atg.state.il.us

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS          Page 001

PEOPLE OF THE STATE OF ILLINOIS

VS                              NUMBER 88CR1251701

JEROME          HENDRICKS

CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois, and keeper of the records and seal thereof do hereby certify that the electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION with the Clerk of the Circuit Court.

Charging the above named defendant with:

| | | |
|---|---|---|
| 38-9-1-A(1) | F | MURDER |
| 38-9-1-A(2) | F | MURDER |
| 38-9-1-A(3) | F | MURDER |
| 38-9-1-A(3) | F | MURDER |
| 38-12-14-A(1) | F | AGG CRIM SEX ASSAULT |
| 38-12-14-A(2) | F | AGG CRIM SEX ASSAULT |
| 38-12-14-A(3) | F | AGG CRIM SEX ASSAULT |
| 38-12-14-A(4) | F | AGG CRIM SEX ASSAULT |
| 38-12-14-A(4) | F | AGG CRIM SEX ASSAULT |
| 38-12-14-B(1) | F | AGG CRIM SEX ASSAULT |
| 38-12-13-A(1) | F | CRIM SEXUAL ASSAULT |
| 38-9-3.1-A | F | CONCEAL HOM DEATH |
| 38-10-1-A(1) | F | KIDNAPPING |
| 38-10-2-A(2) | F | AGGRAVATED KIDNAPPING |
| 38-10-2-A(3) | F | AGGRAVATED KIDNAPPING |
| 38-10-2-A(3) | F | AGGRAVATED KIDNAPPING |
| 38-10-2-A(3) | F | AGGRAVATED KIDNAPPING |
| 38-10-3-A | F | UNLAWFUL RESTRAINT |

The following disposition(s) was/were rendered before the Honorable Judge(s):

08/22/88 IND/INFO-CLK OFFICE-PRES JUDGE          09/02/88 1701
      FITZGERALD, RICHARD J.
09/02/88 APPEARANCE FILED
      FITZGERALD, RICHARD J.
09/02/88 DEFENDANT ARRAIGNED
      FITZGERALD, RICHARD J.
09/02/88 PLEA OF NOT GUILTY
      FITZGERALD, RICHARD J.
09/02/88 CASE ASSIGNED                          09/02/88 6726
      FITZGERALD, RICHARD J.
09/02/88 MOTION TO SUBSTITUTE JUDGE                  S          2
      FITZGERALD, RICHARD J.

EXHIBIT A

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS     Page 002

PEOPLE OF THE STATE OF ILLINOIS

VS                          NUMBER 88CR1251701

JEROME     HENDRICKS

CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois,
and keeper of the records and seal thereof do hereby certify that the
electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION

| | | |
|---|---|---|
| 09/02/88 CASE ASSIGNED | 09/09/88 | 6714 |
| FITZGERALD, RICHARD J. | | |
| 09/09/88 CONTINUANCE BY AGREEMENT | 10/17/88 | |
| MEEKINS, FRANK W. | | |
| 10/17/88 CONTINUANCE BY AGREEMENT | 12/16/88 | |
| HOLT, LEO E | | |
| 12/16/88 CONTINUANCE BY AGREEMENT | 02/02/89 | |
| HOLT, LEO E | | |
| 02/02/89 WITNESSES ORDERED TO APPEAR | 02/02/89 | 6714 |
| HOLT, LEO E | | |
| 02/02/89 CONTINUANCE BY AGREEMENT | 03/29/89 | |
| HOLT, LEO E | | |
| 03/29/89 CONTINUANCE BY AGREEMENT | 04/14/89 | |
| HOLT, LEO E | | |
| 04/14/89 CONTINUANCE BY AGREEMENT | 04/18/89 | |
| HOLT, LEO E | | |
| 04/14/89 WITNESSES ORDERED TO APPEAR | 04/18/89 | 6714 |
| HOLT, LEO E | | |
| 04/14/89 CONTINUANCE BY AGREEMENT | 06/05/89 | |
| HOLT, LEO E | | |
| 06/05/89 WITNESSES ORDERED TO APPEAR | 06/05/89 | 6714 |
| HOLT, LEO E | | |
| 06/05/89 CONTINUANCE BY AGREEMENT | 08/14/89 | |
| HOLT, LEO E | | |
| 08/14/89 MOTION DEFT - CONTINUANCE - MD | 08/21/89 | |
| HOLT, LEO E | | |
| 08/21/89 MOTION DEFT - CONTINUANCE - MD | 08/23/89 | |
| HOLT, LEO E | | |
| 08/23/89 CONTINUANCE BY AGREEMENT | 10/06/89 | |
| HOLT, LEO E | | |
| 10/06/89 CONTINUANCE BY AGREEMENT | 11/17/89 | |
| HOLT, LEO E | | |
| 11/17/89 CONTINUANCE BY AGREEMENT | 01/12/90 | |
| HOLT, LEO E | | |
| 01/12/90 MOTION DEFT - CONTINUANCE - MD | 01/19/90 | |
| HOLT, LEO E | | |
| 01/19/90 WITNESSES ORDERED TO APPEAR | 01/19/90 | 6714 |
| HOLT, LEO E | | |

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS          Page 003

PEOPLE OF THE STATE OF ILLINOIS

VS.                          NUMBER 88CR1251701

JEROME      HENDRICKS

CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois, and keeper of the records and seal thereof do hereby certify that the electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
01/19/90 CONTINUANCE BY AGREEMENT                  02/15/90
         HOLT, LEO E
02/15/90 WITNESSES ORDERED TO APPEAR               02/15/90 6714
         HOLT, LEO E
02/15/90 MOTION DEFT - CONTINUANCE - MD            02/20/90
         HOLT, LEO E
02/20/90 WITNESSES ORDERED TO APPEAR               02/20/90 6714
         HOLT, LEO E
02/20/90 CONTINUANCE BY AGREEMENT                  02/27/90
         HOLT, LEO E
02/27/90 WITNESSES ORDERED TO APPEAR               02/27/90 6714
         HOLT, LEO E
02/27/90 CONTINUANCE BY ORDER OF COURT             03/07/90
         HOLT, LEO E
03/07/90 MOTION DEFT - CONTINUANCE - MD            03/13/90
         HOLT, LEO E
03/13/90 CONTINUANCE BY AGREEMENT                  03/29/90
         HOLT, LEO E
03/29/90 CONTINUANCE BY ORDER OF COURT             04/04/90
         HOLT, LEO E
04/04/90 DEFENDANT IN CUSTODY
         HOLT, LEO E
04/04/90 MOTION DEFT - CONTINUANCE - MD            04/09/90
         HOLT, LEO E
04/09/90 DEFENDANT IN CUSTODY
         HOLT, LEO E
04/09/90 MOTION DEFT - CONTINUANCE - MD            05/16/90
         HOLT, LEO E
05/16/90 DEFENDANT IN CUSTODY
         HOLT, LEO E
05/16/90 MOTION DEFT - CONTINUANCE - MD            05/31/90
         HOLT, LEO E
05/31/90 DEFENDANT IN CUSTODY
         HOLT, LEO E
05/31/90 CONTINUANCE BY ORDER OF COURT             06/27/90
         HOLT, LEO E
06/27/90 DEFENDANT IN CUSTODY
         HOLT, LEO E

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS       Page 004

PEOPLE OF THE STATE OF ILLINOIS

                    VS                    NUMBER 88CR1251701

    JEROME      HENDRICKS

          CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

    I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois,
and keeper of the records and seal thereof do hereby certify that the
electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
06/27/90 CONTINUANCE BY AGREEMENT                  08/03/90
      HOLT, LEO E
08/03/90 DEFENDANT IN CUSTODY
      HOLT, LEO E
08/03/90 CONTINUANCE BY AGREEMENT                  08/10/90
      HOLT, LEO E
08/10/90 DEFENDANT IN CUSTODY
      HOLT, LEO E
08/10/90 WITNESSES ORDERED TO APPEAR               08/10/90 6714
      HOLT, LEO E
08/10/90 CONTINUANCE BY AGREEMENT                  10/09/90
      HOLT, LEO E
10/09/90 DEFENDANT IN CUSTODY
      HOLT, LEO E
10/09/90 CONTINUANCE BY AGREEMENT                  10/23/90
      HOLT, LEO E
10/23/90 WITNESSES ORDERED TO APPEAR               10/23/90 6714
      HOLT, LEO E
10/23/90 CONTINUANCE BY AGREEMENT                  01/14/91
      HOLT, LEO E
10/22/90 CHANGE PRIORITY STATUS            P
      HOLT, LEO E
10/22/90 CONTINUANCE BY AGREEMENT                  01/14/91
      HOLT, LEO E
01/14/91 DEFENDANT IN CUSTODY
      HOLT, LEO E
01/14/91 WITNESSES ORDERED TO APPEAR               01/14/91 6714
      HOLT, LEO E
01/14/91 CONTINUANCE BY AGREEMENT                  01/22/91
      HOLT, LEO E
01/22/91 WITNESSES ORDERED TO APPEAR               01/22/91 6714
      HOLT, LEO E
01/22/91 MOTION DEFT - CONTINUANCE - MD            02/04/91
      HOLT, LEO E
02/04/91 DEFENDANT IN CUSTODY
      HOLT, LEO E
02/04/91 WITNESSES ORDERED TO APPEAR               02/04/91 6714
      HOLT, LEO E

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS       Page 005

PEOPLE OF THE STATE OF ILLINOIS

VS                          NUMBER 88CR1251701

JEROME       HENDRICKS

CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois,
and keeper of the records and seal thereof do hereby certify that the
electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
02/04/91 MOTION DEFT - CONTINUANCE - MD        02/05/91
    HOLT, LEO E
02/05/91 DEFENDANT IN CUSTODY
    HOLT, LEO E
02/05/91 CONTINUANCE BY ORDER OF COURT         02/06/91
    HOLT, LEO E
02/06/91 DEFENDANT IN CUSTODY
    HOLT, LEO E
02/06/91 CONTINUED BENCH TRIAL                 02/07/91
    HOLT, LEO E
02/07/91 DEFENDANT IN CUSTODY
    HOLT, LEO E
02/07/91 CONTINUED BENCH TRIAL                 02/08/91
    HOLT, LEO E
02/08/91 DEFENDANT IN CUSTODY
    HOLT, LEO E
02/08/91 MOTION TO DISMISS INDICTMENT                     D       2
    HOLT, LEO E
02/08/91 CONTINUED BENCH TRIAL                 02/11/91
    HOLT, LEO E
02/11/91 DEFENDANT IN CUSTODY
    HOLT, LEO E
02/11/91 CONTINUED BENCH TRIAL                 02/13/91
    HOLT, LEO E
02/13/91 DEFENDANT IN CUSTODY
    HOLT, LEO E
02/13/91 CONTINUED BENCH TRIAL                 02/14/91
    HOLT, LEO E
02/14/91 DEFENDANT IN CUSTODY
    HOLT, LEO E
02/14/91 CONTINUED BENCH TRIAL                 02/19/91
    HOLT, LEO E
02/19/91 DEFENDANT IN CUSTODY
    HOLT, LEO E
02/19/91 CONTINUED JURY TRIAL                  02/20/91
    HOLT, LEO E
02/20/91 DEFENDANT IN CUSTODY
    HOLT, LEO E

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS        Page 006

PEOPLE OF THE STATE OF ILLINOIS

                    VS                    NUMBER 88CR1251701

    JEROME        HENDRICKS

            CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

    I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois,
and keeper of the records and seal thereof do hereby certify that the
electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
02/20/91 MOTION DIRECT VERD OR FINDING                          E
        HOLT, LEO E
02/20/91 CONTINUED BENCH TRIAL                    02/21/91
        HOLT, LEO E
02/21/91 DEFENDANT IN CUSTODY
        HOLT, LEO E
02/21/91 CONTINUANCE BY ORDER OF COURT            03/25/91
        HOLT, LEO E
03/25/91 DEFENDANT IN CUSTODY
        HOLT, LEO E
03/25/91 MOTION DIRECT VERD OR FINDING                          S
        AS TO COUNTS 5 & 8 ONLY
        HOLT, LEO E
03/25/91 DIR FINDING NOT GUILTY          C005
        HOLT, LEO E
03/25/91 DIR FINDING NOT GUILTY          C008
        HOLT, LEO E
03/25/91 CONTINUED BENCH TRIAL                    03/26/91
        HOLT, LEO E
03/26/91 DEFENDANT IN CUSTODY
        HOLT, LEO E
03/26/91 CONTINUED BENCH TRIAL                    04/16/91
        HOLT, LEO E
04/16/91 DEFENDANT IN CUSTODY
        HOLT, LEO E
04/16/91 CONTINUED BENCH TRIAL                    05/21/91
        HOLT, LEO E
05/21/91 DEFENDANT IN CUSTODY
        HOLT, LEO E
05/21/91 CONTINUANCE BY AGREEMENT                 05/23/91
        HOLT, LEO E
05/23/91 DEFENDANT IN CUSTODY
        HOLT, LEO E
05/23/91 WITNESSES ORDERED TO APPEAR             05/23/91 6714
        HOLT, LEO E
05/23/91 CONTINUANCE BY AGREEMENT                 05/29/91
        HOLT, LEO E

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS    Page 007

PEOPLE OF THE STATE OF ILLINOIS

VS                    NUMBER 88CR1251701

JEROME      HENDRICKS

CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois, and keeper of the records and seal thereof do hereby certify that the electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
05/29/91 DEFENDANT IN CUSTODY
     HOLT, LEO E
05/29/91 CONTINUED BENCH TRIAL                    05/30/91
     HOLT, LEO E
05/30/91 DEFENDANT IN CUSTODY
     HOLT, LEO E
05/30/91 FINDING OF GUILTY                    C001
     HOLT, LEO E
05/30/91 FINDING OF GUILTY                    C002
     HOLT, LEO E
05/30/91 FINDING OF GUILTY                    C003
     HOLT, LEO E
05/30/91 FINDING OF GUILTY                    C010
     HOLT, LEO E
05/30/91 FINDING OF GUILTY                    C012
     HOLT, LEO E
05/30/91 FINDING OF GUILTY                    C013
     HOLT, LEO E
05/30/91 FINDING OF GUILTY                    C014
     HOLT, LEO E
05/30/91 FINDING OF GUILTY                    C015
     HOLT, LEO E
05/30/91 FINDING OF GUILTY                    C016
     HOLT, LEO E
05/30/91 FINDING OF GUILTY                    C017
     HOLT, LEO E
05/30/91 FINDING OF GUILTY                    C018
     HOLT, LEO E
05/30/91 FINDING OF NOT GUILTY                    C004
     HOLT, LEO E
05/30/91 FINDING OF NOT GUILTY                    C006
     HOLT, LEO E
05/30/91 FINDING OF NOT GUILTY                    C007
     HOLT, LEO E
05/30/91 FINDING OF NOT GUILTY                    C009
     HOLT, LEO E
05/30/91 FINDING OF NOT GUILTY                    C011
     HOLT, LEO E

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS          Page 008

PEOPLE OF THE STATE OF ILLINOIS

                    VS                    NUMBER 88CR1251701

    JEROME      HENDRICKS

           CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

    I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois,
and keeper of the records and seal thereof do hereby certify that the
electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
05/30/91 JGMT ON FINDING/VERDICT/PLEA                        F
      HOLT, LEO E
05/30/91 BAIL REVOKED
      HOLT, LEO E
05/30/91 CHANGE PRIORITY STATUS              M
      HOLT, LEO E
05/30/91 PRE-SENT INVEST. ORD, CONTD TO         08/20/91 6714
      HOLT, LEO E
08/20/91 DEFENDANT IN CUSTODY
      HOLT, LEO E
08/20/91 MOTION DEFENDANT - NEW TRIAL                       D
      HOLT, LEO E
08/20/91 CONTINUANCE BY ORDER OF COURT          08/22/91
      HOLT, LEO E
08/22/91 DEFENDANT IN CUSTODY
      HOLT, LEO E
08/22/91 SPECIAL ORDER
      DEFT ELIGIBLE FOR IMPUTION OF DEATH PENALTY
      HOLT, LEO E
08/22/91 CONTINUANCE BY ORDER OF COURT          08/26/91
      HOLT, LEO E
08/26/91 DEFENDANT IN CUSTODY
      HOLT, LEO E
08/26/91 DEF SENT TO LIFE IMPRISONMENT       C001
      LIFE INPRISONMENT
      HOLT, LEO E
08/26/91 DEF SENTENCED ILLINOIS DOC          C010
      CONSECUTIVE TO CT 1
            30 YRS
      HOLT, LEO E
08/26/91 DEF SENTENCED ILLINOIS DOC          C012
      CONCURRENT WITH CT 10 AND CONSECUTIVE TO CT 1
            5 YRS
      HOLT, LEO E
08/26/91 DEF SENTENCED ILLINOIS DOC          C014
      CONCURRENT WITH CTS 10 & 12 AND CONSECUTIVE TO CT 1
            15 YRS
      HOLT, LEO E

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS          Page 009

PEOPLE OF THE STATE OF ILLINOIS

                    VS                    NUMBER 88CR1251701

    JEROME      HENDRICKS

            CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

    I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois,
and keeper of the records and seal thereof do hereby certify that the
electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
08/26/91 LET MITTIMUS ISSUE/MITT TO ISS
      HOLT, LEO E
08/28/91 NOTICE OF APPEAL FILED, TRNSFR
08/28/91 NOTICE OF NOTICE OF APP MAILED
08/28/91 CONTINUANCE BY ORDER OF COURT          09/13/91 1713
09/13/91 PUBLIC DEF APPTD FOR APPEAL
      FITZGERALD, THOMAS R.
09/13/91 O/C FREE REPT OF PROCD ORD N/C
      FITZGERALD, THOMAS R.
09/19/91 COMMON LAW RECORD PREPARED
09/20/91 CLR RECD BY APP COUNSEL
      PD
09/18/91 MEMO OF ORDS & NOA PICKED-UP
09/13/91 APPELLATE COURT NUMBER ASGND                91-2922
12/04/91 TRANS PROC REC/FILED CLKS OFF
12/11/91 REPT OF PRCDS ORD FR CRT RPT
12/11/91 REPORT OF PROCEEDINGS PREPARED
12/17/91 REPRT/PROCDS RECD BY APP ATTRY
03/23/92 REPORT OF PROCEEDINGS PREPARED
01/12/94 MANDATE FILED                          01/24/94 1701
01/24/94 REVIEW COURT AFFIRMANCE
      FITZGERALD, THOMAS R.
02/24/94 POST-CONVICTION FILED            CALL 03/10/94 1701
03/10/94 TRANSFERRED                           03/17/94 6714
      BASTONE, ROBERT P.
03/17/94 CONTINUANCE BY ORDER OF COURT          03/23/94
      HOLT, LEO E
03/21/94 CASE ADVANCED                          03/21/94 6714
      HOLT, LEO E
03/21/94 POST-CONV PETITION DENIED
      HOLT, LEO E
04/07/94 NOTICE OF APPEAL FILED, TRNSFR
05/05/94 NOTICE OF NOTICE OF APP MAILED
05/05/94 CONTINUANCE BY ORDER OF COURT          05/10/94 1713
05/10/94 PUBLIC DEF APPTD FOR APPEAL
      FITZGERALD, THOMAS R.
05/10/94 O/C FREE REPT OF PROCD ORD N/C
      FITZGERALD, THOMAS R.

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS       Page 010

PEOPLE OF THE STATE OF ILLINOIS

                    VS                    NUMBER 88CR1251701

    JEROME       HENDRICKS

              CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

    I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois,
and keeper of the records and seal thereof do hereby certify that the
electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
05/10/94 MEMO OF ORDS & NOA PICKED-UP
        FITZGERALD, THOMAS R.
05/17/94 APPELLATE COURT NUMBER ASGND                          94-1570
04/19/94 POST-CONVICTION FILED              CALL 06/10/94 1701
06/10/94 TRANSFERRED                             06/17/94 6714
        BASTONE, ROBERT P.
06/17/94 CONTINUANCE BY ORDER OF COURT           06/27/94
        HOLT, LEO E
06/27/94 CONTINUANCE BY ORDER OF COURT           06/30/94
        HOLT, LEO E
06/30/94 CONTINUANCE BY ORDER OF COURT           07/27/94
        HOLT, LEO E
07/27/94 PUBLIC DEFENDER APPOINTED
        HOLT, LEO E
07/27/94 CONTINUANCE BY ORDER OF COURT           09/16/94
        HOLT, LEO E
09/07/94 COMMON LAW RECORD PREPARED
09/07/94 REPORT OF PROCEEDINGS PREPARED
09/16/94 PUBLIC DEFENDER APPOINTED
        HOLT, LEO E
09/16/94 CONTINUANCE BY AGREEMENT                12/16/94
        HOLT, LEO E
09/14/94 CLR RECD BY APP COUNSEL
        PD
09/14/94 REPRT/PROCDS RECD BY APP ATTRY
        PD
12/16/94 POST-CONV PETITION DENIED
        HOLT, LEO E
01/11/95 NOTICE OF APPEAL FILED, TRNSFR
01/31/95 NOTICE OF NOTICE OF APP MAILED
01/31/95 CONTINUANCE BY ORDER OF COURT           02/03/95 1713
01/31/95 NOTICE OF MOTION/FILING                 02/24/95 6714
        APPEALING DECISION OF POST-CONVICTION, NEED  TATUS
02/03/95 PUBLIC DEF APPTD FOR APPEAL
02/03/95 O/C FREE REPT OF PROCD ORD N/C
02/03/95 MEMO OF ORDS & NOA PICKED-UP
02/23/95 MANDATE FILED                           03/03/95 1701

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS          Page 011

PEOPLE OF THE STATE OF ILLINOIS

                    VS              NUMBER 88CR1251701

JEROME      HENDRICKS

        CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

    I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois,
and keeper of the records and seal thereof do hereby certify that the
electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
02/24/95 CONTINUANCE BY ORDER OF COURT            02/27/95 6714
        BROWNFIELD, GARY L.
02/24/95 CONTINUANCE BY ORDER OF COURT            03/07/95
        HOLT, LEO E
03/03/95 REVIEW COURT AFFIRMANCE
        PORTER DENNIS J
03/03/95 TRANS PROC REC/FILED CLKS OFF
03/07/95 CONTINUANCE BY ORDER OF COURT            03/21/95
        HOLT, LEO E
03/13/95 REPORT OF PROCEEDINGS PREPARED
03/13/95 COMMON LAW RECORD PREPARED
03/15/95 CLR RECD BY APP COUNSEL
        PD
03/15/95 REPRT/PROCDS RECD BY APP ATTRY
        PD
03/21/95 DEFT SERVING SENTENCE
        HOLT, LEO E
02/09/95 APPELLATE COURT NUMBER ASGND                     95-0474
06/06/95 TRANS PROC REC/FILED CLKS OFF
06/08/95 SUPPL REPORT OF PRCD PREPARED
06/14/95 SUPPL REC RECD BY APPL COUNSEL
        PD
06/25/96 SUPPL REPORT OF PRCD PREPARED
06/26/96 SUPPL REPORT OF PRCD PREPARED
06/27/96 SUPPL REC RECD BY APPL COUNSEL
        STATE APPELLATE DEFENDER
06/27/96 SUPPL REC RECD BY APPL COUNSEL
        STATE APPELLATE DEFENDER
01/23/97 MANDATE FILED                            02/05/97 1701
02/05/97 REVIEW COURT REVERSAL-RMD DRTN           02/19/97 6714
        MAKI, WILLIAM
02/19/97 DEFENDANT IN CUSTODY
        HOLT, LEO E
02/19/97 CONTINUANCE BY ORDER OF COURT            03/04/97
        HOLT, LEO E
03/04/97 CONTINUANCE BY ORDER OF COURT            03/14/97
        HOLT, LEO E

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS    Page 012

PEOPLE OF THE STATE OF ILLINOIS

VS                        NUMBER 88CR1251701

JEROME    HENDRICKS

CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois,
and keeper of the records and seal thereof do hereby certify that the
electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
03/14/97 CONTINUANCE BY ORDER OF COURT          03/17/97
        HOLT, LEO E
03/17/97 CONTINUANCE BY ORDER OF COURT          03/21/97
        DAVY, THOMAS M.
03/21/97 CONTINUANCE BY AGREEMENT               05/23/97
        HOLT, LEO E
05/23/97 CONTINUANCE BY ORDER OF COURT          08/29/97
        HOLT, LEO E
08/29/97 DEFENDANT NOT IN COURT
        HOLT, LEO E
08/29/97 CONTINUANCE BY AGREEMENT               12/05/97
        HOLT, LEO E
12/05/97 DEFENDANT NOT IN COURT
        HOLT, LEO E
12/05/97 MOTION DEFT - CONTINUANCE - MD         01/14/98
        HOLT, LEO E
01/14/98 DEFENDANT NOT IN COURT
        HOLT, LEO E
01/14/98 MOTION DEFT - CONTINUANCE - MD         03/20/98
        HOLT, LEO E
03/20/98 MOTION DEFT - CONTINUANCE - MD         05/29/98
        HOLT, LEO E
05/29/98 DEFENDANT NOT IN COURT
        HOLT, LEO E
05/29/98 CONTINUANCE BY AGREEMENT               08/21/98 6714
        HOLT, LEO E
08/21/98 DEFENDANT NOT IN COURT
        HOLT, LEO E
08/21/98 TRANSFERRED                            09/08/98 1701
        HOLT, LEO E
09/08/98 CASE ASSIGNED                          09/17/98 6714
        JDG. HOLT ROOM 704
        FITZGERALD, THOMAS R.
09/17/98 MOTION DEFT - CONTINUANCE - MD         12/08/98
        HOLT, LEO E
12/08/98 DEFENDANT NOT IN COURT
        HOLT, LEO E

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS      Page 013

PEOPLE OF THE STATE OF ILLINOIS

VS                              NUMBER 88CR1251701

JEROME      HENDRICKS

CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois, and keeper of the records and seal thereof do hereby certify that the electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
12/08/98 MOTION DEFT - CONTINUANCE - MD       01/20/99 1716
    HOLT, LEO E
01/20/99 DEFENDANT NOT IN COURT
    HOLT, LEO E
01/20/99 MOTION DEFT - CONTINUANCE - MD       03/18/99
    HOLT, LEO E
03/18/99 MOTION DEFT - CONTINUANCE - MD       06/03/99
    HOLT, LEO E
06/03/99 MOTION DEFT - CONTINUANCE - MD       09/01/99
    HOLT, LEO E
09/01/99 CONTINUANCE BY ORDER OF COURT        11/02/99
    HOLT, LEO E
11/02/99 DEFENDANT IN CUSTODY
    HOLT, LEO E
11/02/99 MOTION DEFT - CONTINUANCE - MD       12/01/99
    HOLT, LEO E
12/01/99 DEFENDANT NOT IN COURT
    HOLT, LEO E
12/01/99 DEFENDANT IN CUSTODY
    HOLT, LEO E
12/01/99 CONTINUANCE BY ORDER OF COURT        12/02/99
    HOLT, LEO E
12/02/99 MOTION DEFT - CONTINUANCE - MD       01/11/00
    HOLT, LEO E
01/11/00 MOTION DEFT - CONTINUANCE - MD       03/14/00
    HOLT, LEO E
01/24/00 HEARING DATE ASSIGNED                01/27/00 1716
    APPT. OF COUNSEL OTHER THEN PUBLIC DEFENDER
01/27/00 CONTINUANCE BY ORDER OF COURT        03/14/00
    HOLT, LEO E
01/31/00 HEARING DATE ASSIGNED                03/14/00 1716
    APPT. OF COUNSEL OTHER THEN P.D.
03/14/00 MOTION DEFT - CONTINUANCE - MD       04/10/00
    HOLT, LEO E
04/10/00 MOTION DEFT - CONTINUANCE - MD       04/24/00
    HOLT, LEO E
04/24/00 SPECIAL ORDER                        00/00/00
    M/D APPT OF COUNSEL OTHER THAN P.D.- DENIED
    HOLT, LEO E

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS          Page 014

PEOPLE OF THE STATE OF ILLINOIS

VS                          NUMBER 88CR1251701

JEROME          HENDRICKS

CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois,
and keeper of the records and seal thereof do hereby certify that the
electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
04/24/00 CONTINUANCE BY ORDER OF COURT          07/24/00
    HOLT, LEO E
07/24/00 DEFENDANT IN CUSTODY                   00/00/00
    HOLT, LEO E
07/24/00 DEFENDANT NOT IN COURT                 00/00/00
    HOLT, LEO E
07/24/00 CONTINUANCE BY AGREEMENT               09/13/00
    HOLT, LEO E
09/13/00 DEFENDANT IN CUSTODY                   00/00/00
    LACY, WILLIAM G.
09/13/00 DEFENDANT NOT IN COURT                 00/00/00
    LACY, WILLIAM G.
09/13/00 CONTINUANCE BY AGREEMENT               12/13/00
    LACY, WILLIAM G.
12/13/00 DEFENDANT IN CUSTODY                   00/00/00
    HOLT, LEO E
12/13/00 MOTION DEFT - CONTINUANCE - MD         03/13/01
    HOLT, LEO E
03/13/01 CONTINUANCE BY AGREEMENT               06/05/01
    HOLT, LEO E
06/05/01 DEFENDANT IN CUSTODY                   00/00/00
    HOLT, LEO E
06/05/01 PRISONER DATA SHEET TO ISSUE           00/00/00
    HOLT, LEO E
06/05/01 CONTINUANCE BY AGREEMENT               08/30/01
    HOLT, LEO E
06/25/01 HEARING DATE ASSIGNED                  08/30/01 1716
    PARTIAL SUPPLEMENTAL POST CONVICTION PETITION
08/30/01 MOTION DEFT - CONTINUANCE - MD         11/15/01
    HOLT, LEO E
11/15/01 MOTION DEFT - CONTINUANCE - MD         02/14/02
    HOLT, LEO E
02/07/02 HEARING DATE ASSIGNED                  02/14/02 1716
    REMOVE COUNSEL-REQUEST COUNSEL OTHER THEN P.D. FFICE.
02/14/02 CONTINUANCE BY ORDER OF COURT          02/20/02
    HOLT, LEO E
02/20/02 DEFENDANT IN CUSTODY                   00/00/00
    HOLT, LEO E

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS    Page 015

PEOPLE OF THE STATE OF ILLINOIS

VS                        NUMBER 88CR1251701

JEROME        HENDRICKS

CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois, and keeper of the records and seal thereof do hereby certify that the electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION

| | |
|---|---|
| 02/20/02 MOTION DEFT - CONTINUANCE - MD<br>     HOLT, LEO E | 05/22/02 |
| 05/22/02 CONTINUANCE BY ORDER OF COURT<br>     HOLT, LEO E | 05/24/02 |
| 05/24/02 CONTINUANCE BY ORDER OF COURT<br>     HOLT, LEO E | 08/14/02 |
| 08/14/02 CONTINUANCE BY ORDER OF COURT<br>     HOLT, LEO E | 11/14/02 |
| 11/14/02 MOTION DEFT - CONTINUANCE - MD<br>     HOLT, LEO E | 03/13/03 |
| 03/13/03 MOTION DEFT - CONTINUANCE - MD<br>     HOLT, LEO E | 04/15/03 |
| 04/15/03 CONTINUANCE BY AGREEMENT<br>     HOLT, LEO E | 05/21/03 |
| 05/21/03 DEFENDANT IN CUSTODY<br>     HOLT, LEO E | 00/00/00 |
| 05/21/03 DEFENDANT NOT IN COURT<br>     HOLT, LEO E | 00/00/00 |
| 05/21/03 MOTION DEFT - CONTINUANCE - MD<br>     HOLT, LEO E | 07/09/03 |
| 05/21/03 DEFENDANT IN CUSTODY<br>     HOLT, LEO E | 00/00/00 |
| 05/21/03 DEFENDANT NOT IN COURT<br>     HOLT, LEO E | 00/00/00 |
| 05/21/03 MOTION DEFT - CONTINUANCE - MD<br>     HOLT, LEO E | 07/09/03 |
| 07/09/03 CONTINUANCE BY AGREEMENT<br>     KIRBY, JOHN P. | 07/30/03 |
| 07/30/03 DEFENDANT IN CUSTODY<br>     HOLT, LEO E | 00/00/00 |
| 07/30/03 CONTINUANCE BY ORDER OF COURT<br>     HOLT, LEO E | 10/15/03 |
| 10/15/03 SPECIAL ORDER<br>     M/S DISMISS ALLOWED<br>     HOLT, LEO E | |
| 02/23/05 SPECIAL ORDER | 00/00/00 F    2 |

ADVERSE JUDGEMENT & MOTION TO VACATE ADVERSE JUDGEMENT.

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS          Page 016

PEOPLE OF THE STATE OF ILLINOIS

VS                        NUMBER 88CR1251701

JEROME       HENDRICKS

CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois,
and keeper of the records and seal thereof do hereby certify that the
electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
02/23/05 HEARING DATE ASSIGNED                    02/28/05 1716
02/28/05 DEFENDANT IN CUSTODY                     00/00/00
        CROOKS, WILBUR E.
02/28/05 DEFENDANT NOT IN COURT                   00/00/00
        CROOKS, WILBUR E.
02/28/05 CONTINUANCE BY ORDER OF COURT            03/15/05
        CROOKS, WILBUR E.
03/15/05 DEFENDANT IN CUSTODY                     00/00/00
        CROOKS, WILBUR E.
03/15/05 DEFENDANT NOT IN COURT                   00/00/00
        CROOKS, WILBUR E.
03/15/05 PUBLIC DEFENDER APPOINTED                00/00/00
        CROOKS, WILBUR E.
03/15/05 M/D VACATE PLEA, FNDG, VRDCT             00/00/00 D          2
        CROOKS, WILBUR E.
03/15/05 SPECIAL ORDER                            00/00/00
   OFF CALL
        CROOKS, WILBUR E.
03/15/05 PREVIOUS ORDER TO STAND                  08/26/91
        CROOKS, WILBUR E.
04/18/05 NOTICE OF APPEAL FILED, TRNSFR           00/00/00
04/18/05 NOTICE OF NOTICE OF APP MAILED           00/00/00
04/18/05 HEARING DATE ASSIGNED                    04/29/05 1713
05/03/05 APPELLATE COURT NUMBER ASGND             00/00/00 05-1223
04/29/05 ILL STATE APPELLATE DEF APPTD            00/00/00
        BIEBEL, PAUL JR.
04/29/05 O/C FREE REPT OF PROCD ORD N/C           00/00/00
        BIEBEL, PAUL JR.
04/29/05 MEMO OF ORDS & NOA PICKED-UP             00/00/00
        BIEBEL, PAUL JR.
05/09/05 APPELLATE COURT NUMBER ASGND             00/00/00 05-1223
07/12/05 COMMON LAW RECORD PREPARED               00/00/00
07/21/05 CLR RECD BY APP COUNSEL                  00/00/00
        STATE APPELLATE DEFENDER
07/25/05 REPT OF PRCDS ORD FR CRT RPT             00/00/00
04/10/06 REPORT OF PROCEEDINGS PREPARED           00/00/00
04/11/06 REPRT/PROCDS RECD BY APP ATTRY
        STATE APPELLATE DEFENDER - ONE VOLUME

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS    Page 017

PEOPLE OF THE STATE OF ILLINOIS

VS                    NUMBER 88CR1251701

JEROME      HENDRICKS

CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois, and keeper of the records and seal thereof do hereby certify that the electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION

| | | |
|---|---|---|
| 04/21/06 SUPPL REPORT OF PRCD PREPARED | 00/00/00 | |
| (1)VOL | | |
| 04/25/06 SUPPL REC RECD BY APPL COUNSEL | 00/00/00 | |
| STATE APPELLATE DEFENDER - ONE VOLUME | | |
| 05/09/06 SUPPL REC RECD BY APPL COUNSEL | 00/00/00 | |
| STATE APPELLATE DEFENDER - ONE VOLUME | | |
| 06/08/06 SUPPL REPORT OF PRCD PREPARED | 00/00/00 | |
| (1)VOL | | |
| 06/09/06 SUPPL REC RECD BY APPL COUNSEL | 00/00/00 | |
| STATE APPELLATE DEFENDER - ONE VOLUME | | |
| 07/18/06 NOTICE OF APPEAL FILED, TRNSFR | 00/00/00 | |
| 07/18/06 NOTICE OF NOTICE OF APP MAILED | 00/00/00 | |
| 07/18/06 HEARING DATE ASSIGNED | 07/21/06 | 1713 |
| 07/28/06 APPELLATE COURT NUMBER ASGND | 00/00/00 | 06-2093 |
| 08/04/06 SUPPLEMENTAL CLR PREPARED | 00/00/00 | |
| (01)VOLUME SUPP(1/2 SHEET AND NOA) PREPARED | | |
| 07/21/06 ILL STATE APPELLATE DEF APPTD | 00/00/00 | |
| BIEBEL, PAUL JR. | | |
| 07/21/06 O/C FREE REPT OF PROCD ORD N/C | 00/00/00 | |
| BIEBEL, PAUL JR. | | |
| 07/21/06 MEMO OF ORDS & NOA PICKED-UP | 00/00/00 | |
| BIEBEL, PAUL JR. | | |
| 08/08/06 CLR RECD BY APP COUNSEL | 00/00/00 | |
| STATE APPELLATE DEFENDER - ONE VOLUME | | |
| 01/09/07 MANDATE FILED | 01/19/07 | 1701 |
| 01/19/07 SPECIAL ORDER | 00/00/00 | |
| APPELLANTS MOTION TO DISMISS ALLOWED | | |
| GAINER THOMAS V JR. | | |
| 11/19/07 MANDATE FILED | 12/04/07 | 1701 |
| 06-2093 | | |
| 12/04/07 REVIEW COURT AFFIRMANCE | 00/00/00 | |
| GAINER THOMAS V JR. | | |

I hereby certify that the foregoing has been entered of record on the above captioned case.
Date 04/10/08



DOROTHY BROWN
CLERK OF THE CIRCUIT COURT OF COOK COUNTY

Westlaw.

625 N.E.2d 304                                                                                              Page 1
253 Ill.App.3d 79, 625 N.E.2d 304, 192 Ill.Dec. 344
**(Cite as: 253 Ill.App.3d 79, 625 N.E.2d 304)**

People v. Hendricks
Ill.App. 1 Dist.,1993.

Appellate Court of Illinois,First District, First Division.
The PEOPLE of the State of Illinois, Plaintiff-Appellee,
v.
Jerome HENDRICKS, Defendant-Appellant.
No. 1-91-2922.

Sept. 7, 1993.

Defendant was convicted in the Circuit Court, Cook County, Leo Holt, J., of first-degree murder, aggravated sexual assault, aggravated kidnapping, kidnapping, unlawful restraint, and concealment of homicidal death. Defendant appealed. The Appellate Court, Campbell, J., held that: (1) police had probable cause to arrest defendant; (2) evidence supported murder conviction; and (3) natural life imprisonment was not excessive.

Affirmed.

West Headnotes

**[1] Arrest 35 €═63.4(2)**

35 Arrest
   35II On Criminal Charges
     35k63 Officers and Assistants, Arrest Without Warrant
       35k63.4 Probable or Reasonable Cause
         35k63.4(2) k. What Constitutes Such Cause in General. Most Cited Cases
Police had probable cause to arrest defendant for murder of girl; detective had information that defendant gave inconsistent statements about seeing victim and that defendant was one of last persons to see victim alive on night of disappearance, case had elements of strangulation and sexual molestation, defendant had been arrested for another sexual assault near location of body, and defendant lived

near garage in which body was found. U.S.C.A. Const.Amend. 4.

**[2] Arrest 35 €═63.4(2)**

35 Arrest
   35II On Criminal Charges
     35k63 Officers and Assistants, Arrest Without Warrant
       35k63.4 Probable or Reasonable Cause
         35k63.4(2) k. What Constitutes Such Cause in General. Most Cited Cases
Factors relevant to determining probable cause for arrest include proximity of defendant's abode to scene of crime, defendant's commission of similar offense, violent and serious nature of offense, defendant's presence among last to see victim alive, and false and exculpatory statements or differing explanations. U.S.C.A. Const.Amend. 4.

**[3] Arrest 35 €═63.4(11)**

35 Arrest
   35II On Criminal Charges
     35k63 Officers and Assistants, Arrest Without Warrant
       35k63.4 Probable or Reasonable Cause
        35k63.4(7) Information from Others
          35k63.4(11) k. Other Officers or Official Information. Most Cited Cases
When police officers are working on concert in investigating crime or possible crime, probable cause to arrest may be established from their collective knowledge, even if it is not within personal knowledge of arresting officer. U.S.C.A. Const.Amend. 4.

**[4] Homicide 203 €═1186**

203 Homicide
   203IX Evidence
     203IX(G) Weight and Sufficiency
       203k1176 Commission of or Participation in Act by Accused; Identity
         203k1186 k. Confessions and Declara-



**EXHIBIT B**

625 N.E.2d 304
253 Ill.App.3d 79, 625 N.E.2d 304, 192 Ill.Dec. 344
**(Cite as: 253 Ill.App.3d 79, 625 N.E.2d 304)**

Page 2

tions. Most Cited Cases
  (Formerly 203k234(10))
Evidence supported murder conviction, despite defendant's claim that he had consensual sex with victim, that he was encouraged by her to pull on something around her face, which may have been shoelace, and that he left without victim; defendant gave varying accounts of events on evening at issue, each account tended to be more inculpatory, defendant asked witness to fabricate alibi, and testimony from two women supported inference that defendant's modus operandi was to use threat of strangulation to coerce sex or to intimidate woman from revealing sexual encounter.

**[5] Criminal Law 110 ☞554**

110 Criminal Law
  110XVII Evidence
    110XVII(V) Weight and Sufficiency
      110k554 k. Testimony or Statement of Accused. Most Cited Cases
Where defendant's testimony is sole evidence of what actually occurred, trier of fact is not obligated to accept all or any part of it, but may assess probabilities and reasonableness of any defense offered and may reject any or all of defendant's account in favor of state's circumstantial evidence.

**[6] Criminal Law 110 ☞552(2)**

110 Criminal Law
  110XVII Evidence
    110XVII(V) Weight and Sufficiency
      110k552 Circumstantial Evidence
        110k552(2) k. Proof of Circumstantial Facts. Most Cited Cases
Conviction based upon circumstantial evidence must be based on proof of conclusive nature that tends to lead to satisfactory conclusion and produces reasonable and moral certainty that defendant and no one else committed the crime.

**[7] Homicide 203 ☞1572**

203 Homicide

  203XIV Sentence and Punishment
    203k1570 Life Sentence
      203k1572 k. Murder. Most Cited Cases
  (Formerly 203k354(2))

**Sentencing and Punishment 350H ☞82**

350H Sentencing and Punishment
  350HI Punishment in General
    350HI(D) Factors Related to Offense
      350Hk82 k. Brutality or Cruelty in Commission of Offense. Most Cited Cases
  (Formerly 203k354(2))
Natural life imprisonment was not excessive for first-degree murder of girl, even though no forcible rape was found; trial judge indicated that it was just as likely that defendant murdered victim after consensual sex to prevent others from learning of it, and trial court could reasonably conclude that scenarios of forcible rape and murder after consensual sex involved brutal and heinous behavior indicative of wanton cruelty. Ill.Rev.Stat.1987, ch. 38, ¶¶ 1005-8-1(a)(1), 1005-8-2(a)(1).

**\*\*305 \*80 \*\*\*345 Rita A. Fry**, Public Defender of Cook County (Lester Finkle, Asst. Public Defender, of counsel), for defendant-appellant.
Jack O'Malley, State's Atty., County of Cook (Renee Goldfarb, Asst. State's Atty. and Noreen M. Daly, Sp. Asst. State's Atty., of counsel), for plaintiff-appellee.
**\*81** Justice CAMPBELL delivered the opinion of the court:
Following a bench trial in the circuit court of Cook County, defendant Jerome Hendricks was found guilty of first degree murder, aggravated criminal sexual assault, aggravated kidnapping, kidnapping, unlawful restraint and concealment of a homicidal death. Defendant was sentenced to natural life imprisonment for murder plus concurrent sentences for the remaining offenses, the longest of which was 30 years imprisonment for criminal sexual assault. These sentences run consecutively to the natural life sentence.

The record on appeal indicates the following facts.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

625 N.E.2d 304
253 Ill.App.3d 79, 625 N.E.2d 304, 192 Ill.Dec. 344
(Cite as: 253 Ill.App.3d 79, 625 N.E.2d 304)

Page 3

Before trial, defendant moved to quash his arrest and suppress statements he made to the authorities following that arrest. Following a hearing, the trial court denied this motion. The testimony elicited during the pretrial hearing will be discussed below as necessary.

At trial, Yolanda Hill testified that she was the 23 year old cousin of Denise J. On August 1, 1988, Ms. Hill lived at 11720 South Princeton in Chicago. Denise J. was 12 years old at that time and lived with Ms. Hill's mother, Estelle Fields.

Ms. Hill testified that Denise J. came over to her house on August 1, 1988, to baby-sit Ms. Hill's children. Denise J. was approximately five feet tall and weighed approximately 100 pounds. According to Ms. Hill, Denise J. arrived wearing a black tank top, white knee pants, white socks and white gym shoes. The shoes were "Princess" brand; the name "Denise" was written in red ink on the outside of the instep of the left shoe.

At 5:15 p.m. on the evening at issue, Ms. Hill, her two children, her housemate Karlena McCoy and Denise J. were all at Ms. Hill's home. Ms. Hill and McCoy went out onto the porch to discover Denise J., who had Ms. Hill's children with her, speaking with defendant. Ms. Hill told defendant he was not welcome on her porch, took her baby from defendant and gave the child to Denise J. Ms. Hill bent over and told Denise J. that defendant had just been released from jail for rape. Denise J. took the baby indoors and went upstairs. Ms. Hill told defendant that Denise J. was 12 years old and was not allowed to speak to any men. McCoy told defendant to leave, which defendant did after arguing with Ms. Hill and McCoy for five to ten minutes.

Later that evening, after Denise J. spoke to Ms. Hill, Denise J. was allowed to go out onto the porch for five minutes. Ms. Hill checked on Denise J. five minutes later; Denise J. had disappeared. Ms. Hill never saw Denise J. alive again.

*82 On cross-examination, Ms. Hill denied that she

had ordered Denise J. off the porch or that the two fought thereafter. She also denied that Denise J. was a runaway or that she had told the police this.

James Hill, another cousin of Denise J., testified that on the morning of August 2, 1988, he drove his mother to Ms. Hill's **306 ***346 home. Mr. Hill testified that after arriving, he saw defendant coming down the street. Mr. Hill asked defendant whether he had seen Denise J. Defendant stated that he had not. Mr. Hill told defendant that Ms. Hill and McCoy had seen him with Denise J. and described Denise J. Defendant indicated that he had seen Denise J. on his porch at 9:30 p.m. with his nephew. According to Mr. Hill, defendant later told him that defendant had seen Denise J. on 119th Street and told her to go home.

Michael Walker testified that he was approached by defendant on August 2, 1988. According to Walker, defendant told him that the police were looking for defendant. Walker testified that defendant wanted him to say he was with defendant on the night Denise J. disappeared. Walker indicated that he had not been with defendant; rather, he had been searching for Denise J. that evening.

On cross-examination, Walker admitted that he was close to McCoy and Denise J.'s family. Walker admitted that he said nothing of his conversation with defendant to either the police or Denise J.'s family until after defendant was arrested and placed in custody. Walker further admitted that he had been convicted twice for selling cocaine and was currently in prison. Walker testified that the State had promised only to write a letter to the warden indicating that Walker had testified truthfully in court. Walker indicated that he might receive one month of relocation costs from the state upon his release from prison.

Chicago Police Officer John Fassl testified that on August 8, 1988, he and his partner received a call regarding a suspicious odor coming from a garage at 251 W. 117th Street. Fassl indicated that the garage was located behind an abandoned house at that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

625 N.E.2d 304
253 Ill.App.3d 79, 625 N.E.2d 304, 192 Ill.Dec. 344
(Cite as: 253 Ill.App.3d 79, 625 N.E.2d 304)

address. Upon entering the garage, Officer Fassl discovered the body of a young girl in the southeast corner of the garage. The girl was lying on her stomach and her hands were bound behind her back with what appeared to be a set of shoelaces. The girl's pants were unfastened, her bra straps were pulled down and her top was tied around her neck. The girl was wearing her right shoe; the left shoe, found near the girl's head, had the name "Denise" written upon it with a red marker. The shoes were Princess brand.

*83 According to Officer Fassl, the girl's top was tied around her neck at chin level and a shoe lace was tied around her neck near the shoulders. When the body was discovered, there were garbage bags thrown on top of it. Officer Fassl testified that the body was in a high state of decomposition; fluid seeped from the body when it was turned over, there was skin slippage from the face and a large maggot infestation in and around the body and the garbage area.

Officer Fassl also identified a photograph taken from the front porch of 11720 S. Princeton. The photograph indicates that the garage where the body was discovered can be seen from the front porch of the building where Denise J. had been at the time of her disappearance.

Doctor Mary Jumbelic, a forensic pathologist, testified that she performed an autopsy on the body on August 9, 1988. Dr. Jumbelic indicated that the girl's pants were unbuttoned, unzipped and pulled down slightly. Dr. Jumbelic found that the shoelace ligature on the neck measured three inches in diameter, indicating that the shoelace had been pulled extremely tight. Grooves from the shoelaces were also found on the wrists. Dr. Jumbelic was unable to determine whether a sexual assault had taken place, due to the decomposition and tissue loss in the genitalia area. Dr. Jumbelic opined that the death was caused by strangulation.

On cross-examination, Dr. Jumbelic indicated that autoeroticism-the practice of tying something

around one's neck to enhance a sexual experience-is not seen often among females. Dr. Jumbelic indicated that she had never heard of a case involving a female.

Area. Two Violent Crimes Detective Lawrence Nitsche also testified for the State. The parties also stipulated to Detective Nitsche's testimony from the pretrial motion to quash and suppress, much of which is detailed here. Nitsche testified that he **307 ***347 was assigned to investigate the Denise J. homicide the afternoon the body was discovered. Nitsche spoke to Ms. Hill and McCoy, who told him substantially those things to which Ms. Hill testified at trial. In particular, McCoy told Detective Nitsche that defendant had been arrested before regarding a sexual matter with a young girl. Detective Nitsche testified that he spoke to a woman named Paula Townsend, who told him that she saw Denise J. speaking with defendant on the night Denise J. disappeared. Townsend heard defendant ask Denise J. "Would that be okay," to which Denise J. responded that it would. Townsend then saw Denise J. walk toward 119th Street and defendant walk toward his home. Detective Nitsche also interviewed Mr. Hill, who told Detective Nitsche about conversations he had with defendant after Denise J's *84 disappearance. According to Detective Nitsche, defendant initially told Mr. Hill that he had not seen Denise J. on the night of her disappearance, but later told Mr. Hill that he had seen her on 119th Street and still later told Mr. Hill that he saw her on 117th Street.

As a result of these interviews, Detective Nitsche conducted a background check of defendant. Detective Nitsche learned that defendant was then on parole from a conviction for criminal sexual assault. Detective Nitsche indicated that the victim in that case had been strangled, though apparently not to the point of death. Detective Nitsche also learned that defendant had been arrested for another criminal sexual assault that occurred at 251 W. 117th Street.

Based on this information, Detective Nitsche and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

625 N.E.2d 304

253 Ill.App.3d 79, 625 N.E.2d 304, 192 Ill.Dec. 344

(Cite as: 253 Ill.App.3d 79, 625 N.E.2d 304)

Page 5

other police officers began looking for defendant. The police were unable to find him at home and left a message that they wanted to speak with him. Defendant contacted the police later that evening, which led to defendant's arrest. The testimony of the police officers conflicted with the testimony of defendant and his family regarding the circumstances of his arrest. It is noted at this juncture that the trial court determined that the police effected a warrantless, nonconsensual arrest in defendant's home, but that the arrest was valid because it was supported by probable cause.

At trial, Detective Nitsche testified that he conducted an initial interview with defendant at Area Two Police Headquarters on the evening of August 8, 1988. Defendant told Detective Nitsche that between 6 p.m. and 9 p.m. of the night at issue, he was at his friend Tom's home, which was across the street from his own home. After returning home for a short time, he went to Pullman Park, where he met Walker and a woman. Defendant then went to the Everett White School playground, where he drank and played basketball until 4:30 a.m. According to Detective Nitsche, defendant never indicated that he saw Denise J. on the night of her disappearance.

Detective Michael Baker testified that defendant was then taken for an interview at 11th and State and later returned to Area Two Police Headquarters for a third interview. Detective Baker testified that during the third interview, defendant admitted that he talked to Denise J. on the night of her disappearance. Defendant told Detective Baker that Denise J. went to get ice cream for defendant and that he later saw Denise J. in front of his house talking to his nephew. Defendant then went to play basketball at the Everett White School. Defendant indicated he played basketball with someone named "Shorty Mac" and walked out with Michael Walker. Defendant then went to meet his girl friend at 119th Street and Michigan. When *85 defendant returned home early the next morning, family members informed him that the police were looking for him.

After defendant made this statement, Detective Baker went to Pullman Park and the Everett White School, but was unable to find "Shorty Mac," Walker, or anyone who saw defendant at these locations on the night in question.

Detective John Yucaitis testified that on August 9, 1988, he and his partner spoke with the detectives investigating this homicide. Thereafter, Detective Yucaitis and his partner canvassed the area where the body was found. Later that afternoon, **308 ***348 Detective Yucaitis and his partner spoke with defendant. Detective Yucaitis told defendant that he did not believe defendant's account of his whereabouts on the night at issue.

According to Detective Yucaitis, defendant stated that he had not told the whole truth because he was on parole for rape and feared that he would not be believed. Defendant then told Yucaitis that on August 3 or 4, 1988, he noticed the odor coming from the garage at 251 W. 117th Street. Defendant entered the garage and noticed the body on the floor. Defendant stated that he did not report his discovery to anyone due to his background.

Detective Yucaitis told defendant that he thought defendant was withholding information and asked whether defendant had sex with the girl. Detective Yucaitis told defendant that tests could be done to determine whether defendant had sex with the girl. Defendant indicated that he wanted to think for awhile, at which time Detective Yucaitis and his partner left the interview room.

According to Detective Yucaitis, defendant asked to see him later that evening. Defendant asked whether he could get in trouble if he admitted having sex with the girl; Detective Yucaitis responded in the affirmative. Defendant then admitted having sex with the girl, but insisted that it was consensual. Defendant denied ejaculating into the girl. The conversation was then terminated.

Later that evening, Detective Yucaitis returned with Detective Joann Ryan. Detective Yucaitis left the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

625 N.E.2d 304
253 Ill.App.3d 79, 625 N.E.2d 304, 192 Ill.Dec. 344
(Cite as: 253 Ill.App.3d 79, 625 N.E.2d 304)

Page 6

room after defendant indicated that he wanted to speak with Detective Ryan alone.

Detective Ryan testified that defendant told her that the girl had "hit" on him all day on the date at issue. According to defendant, he and the girl had sex near a car parked behind 11720 S. Princeton and that he left afterwards. Defendant told Detective Ryan that the girl then chased him and led him to the garage at 251 W. 117th Street. Defendant stated that the girl hugged him, kissed him and asked that he not tell anyone she had been with him. According to defendant, *86 the girl then took her pants down and pulled her top over her head. Defendant then had vaginal intercourse with the girl from the rear. Defendant told Detective Ryan that the girl had something like a gag that she stuck in her mouth and asked defendant to hold it, pull on it and "ride her like a horse."

According to Detective Ryan, defendant admitted ejaculating in the girl. Defendant stated that the girl again asked him not to tell anyone what had happened. Defendant stated that he then left for Pullman Park.

Assistant State's Attorney Anna Democopolous testified that she took a handwritten statement from defendant after 10 p.m. on August 9, 1988. This statement was substantially similar to the oral statement defendant gave to Detective Ryan, adding that he did not look back at the girl as he left the garage and knew that she did not leave with him. Defendant also related his discovery of the body several days later. Defendant indicated that the girl and the girl's top were in the same position as when he initially left the garage. Defendant denied killing, raping or secretly confining the girl.

Phyllis Williams testified that on June 30, 1984, she was living at 7416 Phillips. As she left her apartment that day, she saw defendant sitting in the hallway. Williams testified that as she passed the defendant, he grabbed her from behind and put a knife to her neck. Williams testified that defendant then dragged her into his apartment and threw her on a couch.

Williams indicated that defendant then pulled a rope from the side of the couch and wrapped it twice around her neck. Defendant then told her to take a leg out of her pants, after which he twice had forcible intercourse with Williams. Williams testified that during these episodes, defendant pulled on the rope around her neck, threatening to kill her.

On cross-examination, Williams admitted that she went to a game room with defendant after these episodes. Williams indicated**309 ***349 that she wanted to get out into the public. Williams further indicated that while she appeared in court, the case was dismissed.

Stephanie Smith testified that she lived at 7416 Phillips in September 1984. On September 3, 1984, Smith saw defendant standing inside the building as she entered. Smith testified that as she walked up the stairs, defendant grabbed her from behind, dragged her into a basement apartment and put her in a closet for ten to fifteen minutes. Smith testified that defendant forcibly raped her after removing her from the closet.

*87 Smith testified that she was fifteen years old at the time and that she told defendant this. Smith indicated that as she left the apartment, defendant grabbed her around the neck and threatened to kill her if she told anyone what had happened.

The trial court indicated that he would consider the testimony of Williams and Smith only to the extent of similarities to the case on trial.

Defendant called Chicago Police Youth Officer Steve Matkovich, who testified that on August 2, 1988, he began investigating Denise J.'s disappearance as a missing persons case. Officer Matkovich's report indicated that he had spoken with Ms. Hill as part of that investigation. The report indicated that Ms. Hill stated that she had an "altercation" with Denise J. regarding defendant before Denise J. disappeared.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

625 N.E.2d 304
253 Ill.App.3d 79, 625 N.E.2d 304, 192 Ill.Dec. 344
(Cite as: 253 Ill.App.3d 79, 625 N.E.2d 304)

Page 7

Estelle Fields, Denise J.'s legal guardian, testified that she spoke with a youth officer on August 3, 1988 regarding Denise J.'s disappearance. Fields denied telling this officer that Denise J. had previously run away from home and denied that Denise J. had ever run away from home. Fields also denied telling the officer that the only interest Denise J. had was boys and that Denise J. was a problem child.

Officer David Kaddigan, testified that on August 7, 1988, he canvassed the area of 105th and State. Officer Kaddigan showed a photograph of Denise J. to two women who told him that they lived at 10537 S. State. According to Officer Kaddigan, these women stated that they saw Denise J. on August 2, 1988. The trial judge ultimately struck this testimony as hearsay.

Youth Officer Daniel Gryzb testified that he was conducting a follow-up investigation on a missing twelve year old. Officer Gryzb testified that he spoke with Estelle Fields, who told him that Denise J. was a problem child. Officer Gryzb denied that Fields also indicated that Denise J. was interested in boys or men.

Another Youth Officer assigned to the missing persons case, Donna Padgurskis, testified that Fields told her that Denise J. had occasionally socialized with older men or boys. However, Fields also told Officer Padgurskis that Denise J. socialized with girls and was not sexually active. According to Officer Padgurskis, Fields stated that Denise J. had previously gone to her grandfather's home without Fields' permission. However, Fields did not tell Officer Padgurskis that Denise J. was a problem child.

Following closing arguments, the trial court found defendant guilty of first degree murder. The trial court also found defendant *88 guilty of criminal sexual assault based on the ages of defendant and Denise J. The trial court further found defendant guilty of aggravated kidnapping, kidnapping, unlawful restraint and concealment of a homicidal death. Defendant was found not guilty of criminal

sexual assault based upon the use of force.

The trial court later denied defendant's post-trial motion.

Subsequently, the trial court found defendant eligible for a death sentence because defendant committed murder in the course of a criminal sexual assault and aggravated kidnapping. At a hearing regarding aggravating and mitigating factors, the State introduced evidence that the offenses were committed while defendant was on parole. The State also had Fields testify as to the impact of the murder upon her and her family. Defendant presented no witnesses in mitigation. The trial court ultimately sentenced defendant to natural life imprisonment for murder plus concurrent**310 ***350 sentences for the remaining offenses, the longest of which was 30 years imprisonment.

Defendant timely filed a notice of appeal to this court.

I

[1] Defendant initially contends that the trial court erred in denying his motion to quash his arrest and suppress evidence. The trial court indicated that the warrantless arrest of defendant in his home was nonconsensual, in violation of *Payton v. New York* (1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639. The trial court nevertheless ruled that defendant's statement was admissible because the statement was not given in defendant's home and the arrest was supported by probable cause. (See *New York v. Harris* (1990), 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13.) Defendant argues that the police lacked probable cause for arrest.

Probable cause for arrest exists where the totality of the circumstances known to the police officers at the time of arrest would lead a reasonably prudent person to believe that the suspect is committing or has committed a crime. The officer must have more than a mere suspicion of guilt, but need not have evidence sufficient to convict the suspect. The de-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

625 N.E.2d 304
253 Ill.App.3d 79, 625 N.E.2d 304, 192 Ill.Dec. 344
**(Cite as: 253 Ill.App.3d 79, 625 N.E.2d 304)**

Page 8

cision to arrest relies upon factual and practical considerations of everyday life upon which a reasonable, prudent person (rather than a legal technician) acts. Thus, a trial court's finding of probable cause will not be disturbed unless it is manifestly erroneous. See *People v. Cabrera* (1987), 116 Ill.2d 474, 485-86, 108 Ill.Dec. 397, 401, 508 N.E.2d 708, 712.

[2][3] Many factors are relevant to a determination of probable cause, including but not limited to: (1) the proximity of defendant's abode to *89 the scene of the crime; (2) information that defendant had committed a similar offense; (3) whether the nature of the offense was both violent and serious; (4) whether defendant was among the last to see the victim alive; and (5) whether it appears that defendant has made false exculpatory statements or offered differing explanations. (See *People v. Williams* (1992), 230 Ill.App.3d 761, 776, 172 Ill.Dec. 445, 455, 595 N.E.2d 1115, 1125 (factors 1 through 4); *People v. Tyler* (1984), 128 Ill.App.3d 1080, 1088, 84 Ill.Dec. 202, 209, 471 N.E.2d 968, 975 (factor 5).) When police officers are working in concert in investigating a crime or possible crime, probable cause may be established from their collective knowledge, even if it is not within the personal knowledge of the arresting officer. See *People v. Fenner* (1989), 191 Ill.App.3d 801, 806, 138 Ill.Dec. 917, 921, 548 N.E.2d 147, 151.

Defendant does not dispute that the record establishes that at least one very serious violent crime occurred in this case. The record indicates that at the time of defendant's arrest, Detective Nitsche had information from Mr. Hill that defendant had initially stated that defendant had not seen the victim, but defendant's statement was not consistent with later conversations between defendant and Mr. Hill and information Nitsche had received from Ms. Hill, McCoy and Townsend. Nitsche had information suggesting that defendant was one of the last persons to see the victim alive on the night of her disappearance. Nitsche had information from Mc-Coy that defendant "had been arrested before for

doing something with a girl."

This information prompted Nitsche to conduct a background check of defendant that revealed defendant was on parole from a conviction for criminal sexual assault. Nitsche learned that the case had elements of strangulation and sexual molestation. Other entries on defendant's "rap sheet" alerted Nitsche to another prior arrest for criminal sexual assault. The complainant in this prior instance had lived at 251 West 117th Street. In this case, the victim's body was discovered in a garage at 251 West 117th Street. The record shows this garage was next door to defendant's abode. Given these factors, the police were entitled to more than a mere suspicion that defendant committed the crimes with which he was charged.

**311 ***351 Defendant notes that the Area Two Youth Division, which was investigating the victim's disappearance as a missing persons case, had information that the victim was interested in men, that the victim had run away previously and that two females claimed to have seen the victim alive on August 2, 1988. The record indicates that the Area Two Violent Crimes detectives were not aware of the relevant Youth Division reports at the time of the arrest. Thus, it was not manifestly *90 erroneous to conclude that the Youth Division was not working "in concert" with the Violent Crimes detectives on this case.

II

[4][5][6] Defendant contends that the State failed to prove him guilty of murder beyond a reasonable doubt. The relevant inquiry on appeal is whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt, after viewing the evidence in the light most favorable to the prosecution. (*People v. Jimerson* (1989), 127 Ill.2d 12, 43-44, 129 Ill.Dec. 124, 138, 535 N.E.2d 889, 903.) It is axiomatic that determinations of the credibility of witnesses and the weight to be given to their testimony is the function of the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

625 N.E.2d 304
253 Ill.App.3d 79, 625 N.E.2d 304, 192 Ill.Dec. 344
(Cite as: 253 Ill.App.3d 79, 625 N.E.2d 304)

Page 9

trier of fact. Indeed, where the defendant's testimony is the sole evidence of what actually occurred, the trier of fact is not obligated to accept all or any part of that testimony, but may assess the probabilities, the reasonableness of any defense offered and reject any or all of defendant's account in favor of the State's circumstantial evidence of guilt. (*People v. Boone* (1987), 152 Ill.App.3d 831, 835, 105 Ill.Dec. 753, 756, 504 N.E.2d 1271, 1274.) A conviction based upon circumstantial evidence must be based on proof of a conclusive nature that tends to lead to a satisfactory conclusion and produces a reasonable and moral certainty that defendant and no one else committed the crime. (*People v. Williams* (1977), 66 Ill.2d 478, 484-85, 6 Ill.Dec. 854, 857, 363 N.E.2d 801, 804.) This court will not disturb a guilty verdict unless the evidence is so improbable or unsatisfactory that it raises a reasonable doubt as to defendant's guilt. *People v. Brandon* (1990), 197 Ill.App.3d 866, 874, 146 Ill.Dec. 77, 82, 557 N.E.2d 1264, 1269.

In this case, Assistant State's Attorney Democopolous read the written statement she took from defendant on August 9, 1988. In the statement, defendant admitted having sex with the victim in the garage next door to his home. Defendant stated that the victim's shirt was pulled over her head during the intercourse. Defendant stated that the victim pulled the shirt over her head and further encouraged him to pull on something around her face, which may have been a shoelace. Defendant stated that the victim did not accompany him when he left the garage. Defendant indicated that after hearing complaints from his family about an odor coming from the garage he returned to the garage and found the victim with her shirt "still in the same position over her head."

The record in this case also indicates that defendant gave Hill and the police varying accounts of the events of the evening at issue; each of these tended to be more inculpatory than the last. The record indicates that the day after the victim disappeared, defendant asked **91** Walker to fabricate an alibi for defendant. The record further contains the testimony of two women regarding their encounters with defendant. A reasonable trier of fact could infer from their accounts that it was defendant's *modus operandi* to use the threat of strangulation to coerce sex from a woman or to intimidate a woman from revealing a sexual encounter.

Viewing this evidence in the light most favorable to the prosecution, a reasonable trier of fact could conclude that defendant murdered the victim in this case.

### III

[7] Defendant contends that his sentence of natural life imprisonment is excessive. The record indicates that defendant was found eligible for the death penalty. However, the trial court imposed the natural life sentence after finding that this murder "was accompanied by exceptionally brutal and heinous behavior indicative of **312 ***352** wanton cruelty." (Ill.Rev.Stat.1987, ch. 38, par. 1005-8-1(a)(1)(b).) "Heinous" may be defined as hatefully or shockingly evil, grossly bad, enormously and flagrantly criminal; "brutal" may be defined as grossly ruthless, devoid of mercy or compassion, cruel and cold-blooded; "cruelty" may be defined as a disposition to inflict pain and suffering or to enjoy its being inflicted. *People v. Hartzol* (1991), 222 Ill.App.3d 631, 651, 165 Ill.Dec. 112, 127, 584 N.E.2d 291, 306.

The imposition of a sentence falls within the sound discretion of the trial court. The trial judge's decision is entitled to great deference as he or she has had the opportunity to assess the subjective circumstances in each case, including the defendant's: (1) character and demeanor; (2) mentality; (3) abnormal and subnormal tendencies; and (4) natural inclination or aversion to commit crime. *People v. Henderson* (1988), 175 Ill.App.3d 483, 490, 124 Ill.Dec. 934, 938, 529 N.E.2d 1051, 1055.

In this case, the trial court was aware that defendant

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

625 N.E.2d 304
253 Ill.App.3d 79, 625 N.E.2d 304, 192 Ill.Dec. 344
(Cite as: 253 Ill.App.3d 79, 625 N.E.2d 304)

was on parole for a criminal sexual assault where defendant had grabbed the then-fifteen year old victim by the neck and threatened her with death if she told anyone of the assault. The trial court heard evidence that defendant sexually assaulted yet another woman while pulling on the rope he had wrapped around her neck and threatening to kill her. Given the record on appeal, such evidence is relevant to an assessment of whether defendant showed abnormal tendencies or a natural inclination to commit crime. We also note that defendant presented no witnesses in mitigation in this case.

This court has previously stated in a case involving the rape and murder by strangulation of a 75 year old woman that the trial court *92 was "incontestably justified" in imposing a natural life sentence. (*People v. Cole* (1988), 168 Ill.App.3d 172, 185, 118 Ill.Dec. 965, 973, 522 N.E.2d 635, 643.) Defendant has offered no compelling reason why a similar conclusion is not warranted in this case. Defendant states in his brief that "[t]he court's own findings were that no forcible rape occurred." The pages of the record cited by defendant in support of this assertion indicate only that the trial judge stated that he could not find that a forcible rape occurred beyond a reasonable doubt due to the decomposition of the body before it was discovered. The trial judge indicated that it was just as likely that defendant murdered the victim after consensual sex to prevent others from learning of it. The trial court acted within its discretion in imposing the natural life sentence, as it could reasonably conclude that both scenarios involve brutal and heinous behavior indicative of wanton cruelty.

### IV

Finally, defendant contends that section 5-8-1(a)(1) of the Unified Code of Corrections (Ill.Rev.Stat.1987, ch. 38, par. 1005-8-1(a)(1)) violates his constitutional rights to due process and equal protection of the laws. Defendant contends that because the trial judge may sentence him to either natural life or an extended term upon finding

brutal or heinous behavior indicative of wanton cruelty (compare (Ill.Rev.Stat.1987, ch. 38, par. 1005-8-1(a)(1) with Ill.Rev.Stat.1987, ch. 38, par. 1005-8-2(a)(1)), the trial judge's selection of one statutory provision over the other is arbitrary.

Defendant acknowledges that this very issue was decided adversely to his position in cases such as *People v. Cartalino* (1982), 111 Ill.App.3d 578, 591-92, 67 Ill.Dec. 426, 437, 444 N.E.2d 662, 673, but contends that such cases were decided incorrectly. However, defendant also acknowledges that this court has repeatedly affirmed the rationale of *Cartalino*-that the statutory aggravating and mitigating factors which the trial court must weigh before imposing any sentence limit the trial court's discretion. *E.g., People v. Abernathy* (1989), 189 Ill.App.3d 292, 318, 136 Ill.Dec. 677, 694-95, 545 N.E.2d 201, 218-19; *People v. Burke* (1987), 164 Ill.App.3d 889, 899-900, 115 Ill.Dec. 847, 853-54, 518 N.E.2d 372, 378-79.

Defendant's contention that this reasoning, taken to its extreme, would allow trial judges to select a determinate year sentence in contravention of other sections of **313 ***353 the Unified Code of Corrections is unpersuasive. The statutory scheme contains standards that determine whether a defendant receives less than an extended term sentence. Where a murder is accompanied by brutal and heinous behavior indicative of wanton cruelty, an extended term or natural life sentence is *93 appropriate, depending on the aggravating and mitigating factors presented in a given case. Defendant's contention that these factors should only be used in determining whether to sentence a defendant to between 60 and 100 years is made without citation to authority and is not supported by case law. Thus, defendant has failed to show that section 5-8-1(a)(1) is unconstitutional.

For all of the aforementioned reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

625 N.E.2d 304
253 Ill.App.3d 79, 625 N.E.2d 304, 192 Ill.Dec. 344
**(Cite as: 253 Ill.App.3d 79, 625 N.E.2d 304)**

Page 11

MANNING, P.J., and BUCKLEY, J., concur.
Ill.App. 1 Dist.,1993.
People v. Hendricks
253 Ill.App.3d 79, 625 N.E.2d 304, 192 Ill.Dec. 344

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# 76 244

No. _____

ORIGINAL

## IN THE

## SUPREME COURT OF ILLINOIS

PEOPLE OF ~~THE~~ STATE OF ILLINOIS,

~~Plaintiff~~-Respondent,

v~~s~~.

JEROME HENDRICKS,

De~~fendant~~-Petitioner.

---

Petition for Leave to Appeal from the Appellate Court
of Illinois
First District, First Division,
No. 1-91-2922
There Heard on Appeal from the Circuit Court of
Cook County, Illinois, Criminal Division.
No. 88 CR 12517
The Honorable Leo Holt, Judge Presiding.

---

## PETITION FOR LEAVE TO APPEAL

---

RITA A. FRY
Public Defender of Cook County
200 West Adams - 4th Floor
Chicago, Illinois 60606
(312) 609-2040

**Counsel for Petitioner**

1SW
NOFEE

LESTER FINKLE
Assistant Public Defender

Of Counsel.

**FILED**

OCT 1 2 1993

SUPREME COURT CLERK

0-9-7-93
10-12
10-26

EXHIBIT C

No. _____

IN THE

SUPREME COURT OF ILLINOIS

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS | ) Petition for Leave to |
| | ) Appeal From the Appellate |
| | ) Court of Illinois, |
| Plaintiff-Respondent, | ) First District. |
| | ) |
| | ) No. 1-91-2922 |
| | ) |
| -vs- | ) |
| | ) ——————————— |
| JEROME HENDRICKS, | ) There Heard on Appeal |
| | ) From The Circuit Court of |
| Defendant-Petitioner. | ) Cook County, Criminal |
| | ) Division. |
| | ) No. 88 CR 12517 |
| | ) |
| | ) Honorable |
| | ) Leo Holt, |
| | ) Judge Presiding. |

## PETITION FOR LEAVE TO APPEAL

To:  The Honorable Chief Justice and the Associate Justices of
the Supreme Court of Illinois.

May It Please Your Honors:

### I.

## PRAYER FOR LEAVE TO APPEAL

Petitioner Jerome Hendricks, by and through his attorneys
RITA A. FRY, Public Defender of Cook County, and LESTER FINKLE,
Assistant Public Defender, pursuant to Supreme Court Rules 315
and 612, respectfully petitions this Court, as a matter of sound
judicial discretion, to review a question of general importance
within this State, by granting him leave to appeal the decision
of the Appellate Court, First District.  The lower court's
decision affirmed Petitioner's conviction for first degree
murder, aggravated criminal sexual assault, aggravated

1

kidnapping, kidnapping, unlawful restraint and concealment of a homicidal death, and subsequent sentence of natural life imprisonment plus consecutive sentences totalling 30 years.

The Appellate Court rejected petitioner's arguments that his warrantless arrest in his home was not justified by probable cause; that his sentence of natural life without possibility of parole for first degree murder was excessive in light of the facts surrounding this offense; and the argument that the penalty statutes for murder, which permit imposition of either an extended term sentence or natural life based on the same criteria, denied him due process and equal protection under the law.  For these reasons, Petitioner's conviction and/or sentence must be set aside by the Supreme Court of Illinois.

Petitioner requests, therefore, that this Honorable Court allow his Petition for Leave to Appeal and reverse the decision of the Appellate Court, First District, First Division.

## II.

### HISTORY IN THE APPELLATE COURT

Following a bench trial before the Honorable Leo Holt, Jerome Hendricks was convicted of first degree murder, aggravated criminal sexual assault, aggravated kidnapping, kidnapping, unlawful restraint and concealment of a homicidal death, and was subsequently sentenced to natural life in prison without possibility of murder for first degree murder, and a total of 30 years for the remaining offenses, to be served consecutive to the natural life sentence. His conviction was affirmed by the Illinois Appellate Court, First District, First Division, in a published opinion dated September 7, 1993. No petition for rehearing was filed. An affidavit of intent to seek further review was filed on September 24, 1993. The Appellate Court's opinion and affidavit of intent are set forth in the appendix to this petition.

## III.

### POINTS RELIED UPON FOR REVERSAL

#### 1.

REVIEW OF THIS CASE BY THE SUPREME COURT OF ILLINOIS IS WARRANTED BECAUSE (1) OF THE LOWER COURT'S INTERPRETATION OF PROBABLE CAUSE AND WHEN IT SUFFICIENTLY JUSTIFIES AN ILLEGAL AND WARRANTLESS ARREST NORMALLY BARRED UNDER PAYTON v. NEW YORK; (2) PETITIONER'S EXCESSIVE SENTENCE VIOLATES THE TENETS PRONOUNCED BY THIS COURT IN ANDREWS; AND (3) THE LACK OF DIRECTION FROM THIS COURT IN DECIDING WHETHER THE ILLINOIS PENALTY STATUTES FOR FIRST DEGREE MURDER VIOLATE DUE PROCESS AND EQUAL PROTECTION.

Payton v. New York, 445 U.S. 573, 63 L.Ed.2d 639, 100 S.Ct. 1371 (1980)...............10

New York v. Harris, 495 U.S. 14, 109 L.Ed.2d 13, 110 S.Ct. 1640 (1990)...............10

People v. Andrews, 132 Ill.2d 451,

548 N.E.2d 1025 (1989)................................10

## ii.

THE POLICE DID NOT HAVE PROBABLE CAUSE TO ARREST JEROME
HENDRICKS IN HIS HOME, THEREBY JUSTIFYING HIS WARRANTLESS
ARREST.   THE TRIAL AND APPELLATE COURTS ERRED IN FAILING TO
QUASH HENDRICKS'S ARREST AND SUPPRESS ALL EVIDENCE WHICH
FLOWED FROM IT.

Payton v. New York, 445 U.S. 573,
63 L.Ed.2d 639, 100 S.Ct. 1371 (1980).................11

New York v. Harris, 495 U.S. 14,
109 L.Ed.2d 13, 110 S.Ct. 1640 (1990).................11, 12

Illinois v. Gates, 462 U.S. 213,
76 L.Ed.2d 527, 103 S.Ct. 2317 (1983).................12

Dunaway v. New York, 442 U.S. 200,
60 L.Ed.2d 824, 99 S.Ct. 2248 (1979).................12

Brown v. Illinois, 422 U.S. 590,
45 L.Ed.2d 416, 95 S.Ct. 2254, (1975).................12

People v. Tisler, 103 Ill.2d 226,
469 N.E.2d 147 (1984)................................12

People v. Adams, 131 Ill.2d 387,
546 N.E.2d 561 (1989)................................12

People v. Williams, 147 Ill.2d 173,
588 N.E.2d 983 (1991)................................12

## iii.

JEROME HENDRICKS'S SENTENCE OF NATURAL LIFE IN PRISON
WITHOUT POSSIBILITY OF PAROLE WAS EXCESSIVE WHERE THE
OFFENSE WAS NOT ACCOMPANIED BY EXCEPTIONALLY BRUTAL OR
HEINOUS CONDUCT INDICATIVE OF WANTON CRUELTY.

People v. LaPointe, 88 Ill.2d 482,
431 N.E.2d 344 (1981)................................15, 16

People v. Andrews, 132 Ill.2d 451,
548 N.E.2d 1025 (1989)................................16, 17

People v. Clark, 102 Ill.App.3d 414,
429 N.E.2d 1255 (1st Dist., 1981)....................16

People v. Davis, 121 Ill.App.3d 916,
460 N.E.2d 471 (1st Dist, 1984)......................16

People v. Cox, 82 Ill.2d 268,

412 N.E.2d 541 (1980)...................................15

Ill.Const., 1970, art. I., sec. 11.....................15

Ill.Rev.Stat., 1987, ch. 38, par. 1005-8-1(a)(1)(b)....15

Ill.Rev.Stat., 1987, ch. 38, par. 1005-8-2(a)(1).......17

Ill.Rev.Stat., 1987, ch. 38, par. 1005-5-3.2(b)(2).....17

Ill.Rev.Stat., 1987, ch. 110A, par. 615(b)............17

iv.

THE ILLINOIS PENALTY STATUTES FOR MURDER VIOLATE DUE
PROCESS AND EQUAL PROTECTION BECAUSE THEY ALLOW THOSE WHO
ARE FOUND GUILTY OF AN EXCEPTIONALLY BRUTAL OR HEINOUS
MURDER TO BE SENTENCED TO EITHER NATURAL LIFE OR AN
EXTENDED TERM.

People v. Bradley, 79 Ill.2d 410,
403 N.E.2d 1029 (1980)................................19

Skinner v. Oklahoma, 316 U.S. 535,
62 S.Ct. 1110, 86 L.Ed.2d 1655 (1942)..................19

People v. Nicholson, 401 Ill. 546,
82 N.E.2d 656 (1948)..................................19

People v. Natoli, 70 Ill.App.3d 131,
387 N.E.2d 1096 (1st Dist., 1979).....................19

Kent v. United States, 383 U.S. 541,
86 S.Ct. 1045, 16 L.Ed.2d 84 (1966)...................19

People v. Williams, 60 Ill.2d 1,
322 N.E.2d 819 (1975).................................20

People v. Bullock, 40 Ill.App.3d 672,
353 N.E.2d 35 (4th Dist., 1976).......................20

People v. Gutierrez, 71 Ill.App.3d 895,
390 N.E.2d 438 (1st Dist., 1979)......................20

People v. Cartalino, 111 Ill.App.3d 578,
444 N.E.2d 662 (1st Dist., 1982)......................21

People v. Abernathy, 189 Ill.App.3d 292,
545 N.E.2d 201 (1st Dist., 1989)......................21

United States Constitution, Amendment XIV.............18

Illinois Constitution, 1970, art. I, section 2........18

Ill.Rev.Stat., 1987, ch. 38, par. 1005-5-3.2(b)(2).....18, 21

Ill.Rev.Stat., 1987, ch. 38, par. 1005-8-1(a).........passim

Ill.Rev.Stat., 1987, ch. 38, par. 1005-8-2(a)(1).......passim

Ill.Rev.Stat., 1987, ch. 110A, par. 615(a)............22

IV.

## STATEMENT OF FACTS

The defendant-appellant, Jerome Hendricks, was convicted of first degree murder, aggravated criminal sexual assault, aggravated kidnapping, kidnapping, unlawful restraint and concealment of a homicidal death, and was subsequently sentenced to natural life in prison without possibility of murder for first degree murder, and a total of 30 years for the remaining offenses, to be served consecutive to the natural life sentence. Petitioner adopts the facts as they are set forth in the Appellate Court's published opinion, and incorporates them herein into this Petition. (Slip Op., pp. 2-13)

Prior to trial, an extensive hearing was held regarding Petitioner's motion to quash his arrest and suppress evidence. Petitioner testified that on August 8, 1988, he was informed by his mother that some officers wished to talked with him. (R. 79) Petitioner called the police and waited for their arrival. (R. 79) When the police arrived, they rushed in and handcuffed Petitioner in his home. (R. 80-83) He was taken to the police station where he later made inculpatory statements. (R. 87-88)

Detective Lawrence Nitche testified that an investigation revealed the body of a girl in a garage at 251 West 117th Street, next door to Petitioner's residence. (R. 101) Nitche learned that Petitioner was seen talking to the missing girl, Denise J., on August 1, 1988, at about 6 p.m. Denise had been missing since the evening hours of August 1st. (R. 102) Nitche was also aware that a criminal background check of Petitioner

discovered he had been convicted of a sex offense and was currently on parole.  (R. 106)

Nitche agreed that Petitioner called the police station at about 8:30 p.m. on August 8, 1988.  When he and his brother officers arrived at Petitioner's home, they found a mob outside.  (R. 109-110)  Petitioner was escorted to the squad car and brought to the station.  (R. 113-115)  Nitche admitted he made no written notation that any mob was present.  (R. 137)

Detective Michael Baker also testified that a mob was present outside Petitioner's home.  He, too, admitted that no report was ever made making note of the mob's existence.  (R. 203-204, 221)  Baker also admitted that another police report prepared by Youth Officer Kaddigan, indicated that Denise J. was seen alive on August 2, 1988, by two unrelated women.  (R. 231)  Another witness, James Hill, testified that he was outside Petitioner's home and tried to hit Petitioner with a stick.  (R. 185)  In rebuttal, Petitioner's mother and sister testified that no mob was present, and that Petitioner was involuntarily carted away by the police.  (R. 266-267, 282-284).

The trial judge determined that Petitioner was arrested in his home without benefit of warrant, in violation of <u>Payton v. New York</u>, 445 U.S. 573, 63 L.Ed.2d 639, 100 S.Ct. 1371 (1980).  The trial judge declined to believe the officers that Petitioner was confronted by an angry mob, in light of the failure of any report to mention the incident, and declined to believe that Petitioner voluntarily remained in the stationhouse for over 16 hours until a statement was made.  (R. 336-338, 348)  The judge nevertheless ruled that Petitioner's statement was admissible

because it was not made in Petitioner's home and was supported by probable cause, basing his ruling on New York v. Harris, 495 U.S. 14, 109 L.Ed.2d 13, 110 S.Ct. 1640 (1990). (R. 351-352)

Following Petitioner's conviction, the State requested that Petitioner be sentenced to death. The trial judge determined that the death penalty was not an appropriate sentence, but nevertheless ruled that Petitioner's actions were exceptionally brutal and heinous, indicative of wanton cruelty. Petitioner was sentenced to natural life in prison without possibility of parole. (R. 1716-1717)

A timely Notice of Appeal was filed on August 28, 1991. (C. 165)

Petitioner's Appeal to the Appellate Court

In its opinion entered on September 7, 1993, the Appellate Court, First District, First Division, affirmed the trial court's judgment of conviction of first degree murder, aggravated criminal sexual assault, aggravated kidnapping, kidnapping, unlawful restraint and concealment of a homicidal death, and Petitioner's sentence of natural life in prison for first degree murder and 30 years in prison, to be served consecutively, for the remaining charges. (Appendix, Slip. Op.) Petitioner now seeks leave to appeal from the judgment of the Appellate Court affirming Petitioner's conviction and sentence.

9.

V.

## ARGUMENT

### A.

REVIEW OF THIS CASE BY THE SUPREME COURT OF ILLINOIS IS
WARRANTED BECAUSE (1) OF THE LOWER COURT'S INTERPRETATION
OF PROBABLE CAUSE AND WHEN IT SUFFICIENTLY JUSTIFIES AN
ILLEGAL AND WARRANTLESS ARREST NORMALLY BARRED UNDER PAYTON
v. NEW YORK; (2) PETITIONER'S EXCESSIVE SENTENCE VIOLATES
THE TENETS PRONOUNCED BY THIS COURT IN ANDREWS; AND (3) THE
LACK OF DIRECTION FROM THIS COURT IN DECIDING WHETHER THE
ILLINOIS PENALTY STATUTES FOR FIRST DEGREE MURDER VIOLATE
DUE PROCESS AND EQUAL PROTECTION.

This case presents for review by the Supreme Court of
Illinois Petitioner's conviction and sentence for first degree
murder.  Review of the three questions presented by Petitioner
is warranted because of their respective importance.  First,
there is the interplay between Payton v. New York, 445 U.S. 573,
63 L.Ed.2d 639, 100 S.Ct. 1371 (1980) and New York v. Harris,
495 U.S. 14, 109 L.Ed.2d 13, 110 S.Ct. 1640 (1990), squarely
presented in this cause.  The trial court ruled that Petitioner
was subject to a warrantless arrest at his home in direction
violation of Payton v. New York, yet simultaneously ruled that
said arrest was justified by probable cause pursuant to New York
v. Harris.  In light of the information possessed by the
authorities at the time of Petitioner's arrest, the standard
enunciated in New York v. Harris had not been met and warrants
review by this Court.

Second, Petitioner was sentenced to natural life in prison
with the justification that this offense involved conduct
exceptionally brutal and heinous indicative of wanton cruelty.
In light of the trial judge's findings of fact, and guided by
the principles provided by this Court in People v. Andrews, 132

Ill.2d 451, 548 N.E.2d 1025 (1989), Petitioner's conduct did not rise to the level of being exceptionally brutal and heinous indicative of wanton cruelty.  Further clarification of this standard is needed from this Court to avoid imposition of excessive sentences.

Third, there is a constitutional defect in having the same standard of "exceptionally brutal and heinous behavior indicative of wanton cruelty" serve as underlying criteria for both extended term sentences and sentences of natural life. Where the same standard serves to justify two distinctly different sentences, it is obvious that no direction has been provided to the circuit courts of this State to guide their discretion.  Again, direction from this Court is necessary.

## B.

THE POLICE DID NOT HAVE PROBABLE CAUSE TO ARREST JEROME HENDRICKS IN HIS HOME, THEREBY JUSTIFYING HIS WARRANTLESS ARREST.   THE TRIAL AND APPELLATE COURTS ERRED IN FAILING TO QUASH HENDRICKS'S ARREST AND SUPPRESS ALL EVIDENCE WHICH FLOWED FROM IT.

The trial judge made the finding of fact that Petitioner was the subject of a warrantless arrest in his home, in violation of Payton v. New York, 445 U.S. 573, 63 L.Ed.2d 639, 100 S.Ct. 1371 (1980).  The judge then ruled that Petitioner's statement was nonetheless admissible because it was not made in Petitioner's home and the arrest was supported by probable cause, following the law in New York v. Harris, 495 U.S. 14, 109 L.Ed.2d 13, 110 S.Ct. 1640 (1990).

In New York v. Harris, the United States Supreme Court ruled that Payton was designed to protect the physical integrity of the home, and was not intended to grant criminal suspects

protection for statements made outside their premises where the
police have probable cause to arrest the suspect for committing
a crime.  Only if police do not have probable cause to arrest
will an illegal arrest and evidence flowing from it be
suppressed.  110 S.Ct. 1640, 1643.

The existence of probable cause is not governed by
technical legal rules but by common sense considerations which
are factual and practical.  People v. Tisler, 103 Ill.2d 226,
236, 469 N.E.2d 147 (1984).  The existence of probable cause
must be determined from the totality of the circumstances.
Illinois v. Gates, 462 U.S. 213, 230, 76 L.Ed.2d 527, 103 S.Ct.
2317, 2328 (1983).  The trial court must determine whether a
reasonable and prudent man, having the knowledge possessed by
the officer at the time of the arrest, would believe the
defendant committed the offense.  Tisler, 103 Ill.2d 226, 237.
This determination, however, cannot be tainted by hindsight
which may luckily seem to be supported by the fruit of some
criminality; rather, the review must center on the information
available to the officers preceding the arrest.  People v.
Adams, 131 Ill.2d 387, 398, 546 N.E.2d 561 (1989); People v.
Williams, 147 Ill.2d 173, 588 N.E.2d 983 (1991).

The Fourth Amendment to the United States Constitution
prohibits police from arresting persons on the basis of "mere
suspicion" (Dunaway v. New York, 442 U.S. 200, 213, 60 L.Ed.2d
824, 99 S.Ct. 2248, 2257 (1979)), or for the purposes of
investigation "in the hope that something might turn up."
(Brown v. Illinois, 422 U.S. 590, 605, 45 L.Ed.2d 416, 95 S.Ct.
2254, 2262 (1975)).

When Petitioner was placed under arrest, Detective Nitche and his brother officers knew the following:  Petitioner was on parole from a conviction for criminal sexual assault and a prior arrest from another sexual offense; the body of Denise J. was discovered in a garage next door to Petitioner's residence; Petitioner was one of the last persons, although not the last person, to be seen with the victim, Denise J., prior to her disappearance; and Petitioner had made different off-handed remarks to family and friends of the victim after her disappearance.

The Appellate Court ruled that this information was sufficient to create probable cause for Petitioner's arrest. (Slip Op., p. 15)  The Appellate Court further discounted information that another officer, also working on the case via the initial report of a missing person, talked with two females who claimed they saw Denise J. the day after she was thought to have disappeared.  (Slip Op., p. 16)

The Appellate Court's ruling was in error.  As the record established, Petitioner was not the last person to be seen with Denise J.  After talking with Petitioner, Denise J. entered her aunt's home and disappeared some time later, only after requesting permission to leave the house.  (R. 556-559) Although her body was found in an abandoned garage next to Patitioner's property, that same garage was but a few feet on the other side of the alleyway from where her aunt lived. Everyone on the block had immediate and unrestricted access to the abandoned garage.

The evidence also showed that Officer Kaddigan testified that he interviewed two women on August 2, 1988, the day after Denise J. disappeared. This was consistent with testimony that Denise J. was known to run away from home. From August 1 through August 8, 1988, the investigation focused on Denise J. being a runaway. Once her body was found, the focus naturally shifted to become a murder investigation. The investigation, however, was continuing and the homicide detectives relied upon the earlier investigation done by the youth officers. The Appellate Court therefore erred in holding that the detectives and youth officers were not acting in concert, and thus not privy to the information acquired.

At issue is whether probable cause existed to justify an otherwise illegal arrest. While the information the detectives possessed admittedly justified a suspicion, that is not enough. It must be remembered that acting on that information the detectives handcuffed Petitioner and took him from his home. They kept Petitioner at the police station for 16 hours until a statement was secured. That statement finally provided the officers with probable cause to arrest and process Petitioner. Until that time, however, the police were acting solely on suspicion.

It is therefore respectfully requested that this Court reverse the ruling of the trial and appellate courts and order that Petitioner's arrest be quashed.

14

C.

### JEROME HENDRICKS'S SENTENCE OF NATURAL LIFE IN PRISON WITHOUT POSSIBILITY OF PAROLE WAS EXCESSIVE WHERE THE OFFENSE WAS NOT ACCOMPANIED BY EXCEPTIONALLY BRUTAL OR HEINOUS CONDUCT INDICATIVE OF WANTON CRUELTY.

Petitioner's sentence of natural life in prison without the possibility of parole for the offense of first degree murder was an abuse of discretion. The trial judge ruled that Petitioner's actions were brutal and heinous, but that judgment was in error.

A trial court may impose a natural life sentence for first degree murder where the "court finds that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." Ill.Rev.Stat., 1987, ch. 38, par. 1005-8-1(a)(1)(b). The imposition of a sentence rests within the trial court's discretion, and will not be reduced or modified by an appellate court absent an abuse of discretion. People v. Cox, 82 Ill.2d 268, 412 N.E.2d 541 (1980).

Despite the presumption in favor of the sentence imposed, an appellate review must determine if the penalty was determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship. Ill.Const., 1970, art. I., sec. 11. A sentencing judge must fashion a sentence which strikes an appropriate balance between protection of society and rehabilitation of the offender. People v. LaPointe, 88 Ill.2d 482, 492, 431 N.E.2d 344 (1981). Imposition of a natural life sentence is for that class of murderers who have demonstrated by their conduct their inability to contribute to society. LaPointe, 88 Ill.2d 482, 501.

15

"Heinous" has been defined as "hatefully or shockingly evil... grossly bad... enormously and flagrantly criminal;" "brutal" has been defined as "grossly ruthless... devoid of mercy or compassion... cruel and cold-blooded." LaPointe, 88 Ill.2d 482, 501. "Cruelty" has been further defined as a "disposition to inflict pain or suffering or to enjoy its being inflicted." People v. Clark, 102 Ill.App.3d 414, 424, 429 N.E.2d 1255 (1st Dist., 1981).

In determining whether conduct is exceptionally brutal or heinous, the court may not consider those acts which simply exemplify, without more, the legal elements of the offense for which the defendant was convicted, and instead must look for additional aggravating factors. People v. Davis, 121 Ill.App.3d 916, 460 N.E.2d 471 (1st Dist., 1984)

In People v. Andrews, 132 Ill.2d 451, 548 N.E.2d 1025 (1989), the defendant and another man approached an automobile stopped at the exit ramp of a Chicago expressway. The defendant shot the driver in the head, then pistol-whipped the passenger and ordered her to surrender her money. In determining that the extended-term 70 year sentence imposed was excessive because the crime was not exceptionally brutal or heinous, this Court wrote:

> Although the victim was defenseless and the defendant could
> have achieved his goal of robbing the victim and the
> victim's girlfriend without killing the victim, every
> single murder is by nature unnecessary; (the statute)
> requires that the murder be "exceptionally" brutal or
> heinous.  All murders are brutal and heinous to a certain
> degree.  Moreover, many murdered robbery victims are
> defenseless when killed.  (The statute) was not intended to
> convert every offense into an extraordinary offense subject
> to an extended-term sentence. Andrews, 548 N.E.2d 1025,
> 1032.

In the instant case, the sentence of natural life imprisonment was error.  The trial judge specifically exonerated Petitioner of committing any acts of forcible sex against Denise.  The judge ruled that the evidence was consistent with Petitioner and Denise having consensual sex.  (R. 1516-1517)  Despite that ruling, the trial judge then sentenced Petitioner to natural life for a murder incidental to consensual sex.

The above words written by this Court in <u>Andrews</u> could have been written concerning the instant case.  No one denies that this death was completely senseless and unnecessary.  But senselessness does not rise to the level of exceptionally brutal and heinous conduct indicative of wanton cruelty.

Since not even an extended term sentence can be imposed absent a finding that the offense was exceptionally brutal or heinous, Petitioner's sentence of natural life must be vacated.  Ill.Rev.Stat., 1987, ch. 38, pars. 1005-8-2(a)(1) and 1005-5-3.2(b)(2).

Petitioner therefore respectfully requests that his sentence of natural life be vacated, and that a non-extended term sentence be imposed by this Court, pursuant to its authority under Supreme Court Rule 615(b), or else that this matter be remanded for resentencing with appropriate directions to imposed a non-extended term sentence for first degree murder.

D.

**THE ILLINOIS PENALTY STATUTES FOR MURDER VIOLATES DUE PROCESS AND EQUAL PROTECTION BECAUSE THEY ALLOW THOSE WHO ARE FOUND GUILTY OF AN EXCEPTIONALLY BRUTAL AND HEINOUS MURDER TO BE SENTENCED TO EITHER NATURAL LIFE OR AN EXTENDED TERM.**

The trial judge sentenced Petitioner to natural life in prison because he believed that Petitioner's actions were exceptionally brutal and heinous, indicative of wanton cruelty. When a trial court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty, the court may use this factor as a reason to impose (a) either an extended term sentence, from 60 to 100 years in prison, or (b) a term of natural life. Ill.Rev.Stat., 1987, ch. 38, pars. 1005-5-3.2(b)(2); 1005-8-1(a); and 1005-8-2(a)(1). Under these statutes, there is no distinction between the types of exceptionally brutal or heinous conduct for which the conviction must be returned. Thus, these particular penalty statutes unconstitutionally fail to provide a meaningful distinction between those defendants convicted of an exceptionally brutal or heinous murder who are eligible for natural life, and those defendants convicted of an exceptionally brutal or heinous murder who are eligible for an extended term sentence.

Both the United States and Illinois Constitutions prevent the State from taking any action which denies equal protection and due process of law to any person found within the State's jurisdiction. U.S. Constitution, Amend. XIV; Ill.Const., 1970, art. I, sec. 2. Essential to the validity of every claim regarding the denial of equal protection is the requirement that

18

the questionable legislation "lay an unequal hand on those who
have committed intrinsically the same quality of offense and
(penalize) one and not the other." People v. Bradley, 79 Ill.2d
410, 416, 403 N.E.2d 1029 (1980), citing Skinner v. Oklahoma,
316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed.2d 1655 (1942). See
also People v. Nicholson, 401 Ill. 546, 553, 82 N.E.2d 656
(1948), and People v. Natoli, 70 Ill.App.3d 131, 139, 387 N.E.2d
1096 (1st Dist., 1979). In other words, the equal protection
clause requires equality between persons "similarly situated."
Bradley, 79 Ill.2d 410, 416. Also essential to every claim that
equal protection has been denied is the absence of any rational
relationship to any legitimate state purpose for treating
differently those who are similarly situated. See Nicholson,
401 Ill. 546, 555; and Natoli, 70 Ill.App.3d 131, 139-141.
Finally, in order to meet the requirements of due process, there
must be some standard upon which a trial judge bases his/her
decision to utilize the statute which imposes natural life or
the extended term statute when the murder is found to be
exceptionally brutal or heinous. See Kent v. United States, 383
U.S. 541, 562, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), a case
holding that there must be "procedural regularity" in order to
satisfy the basic requirements of due process and fairness.

Both murder penalty statutes at issue in the instant case
deal with defendants who have committed the same offense, an
exceptionally brutal or heinous murder. (Ill.Rev.Stat., 1987,
ch. 38, pars. 1005-8-1(a) and 1005-8-2(a)(1)). The statutes
"lay an unequal hand" upon defendants found to have committed
this offense. One statute utilizes the finding that the

19.

defendant has committed an exceptionally brutal or heinous murder to make that person eligible for a natural life sentence.  Ill.Rev.Stat., 1987, ch. 38, par. 1005-8-1(a).  The other statute employs the finding that the defendant has committed an exceptionally brutal or heinous murder to make that person eligible for an extended term sentence which is not to exceed 100 years.  Ill.Rev.Stat., 1987, ch. 38, par. 1005-8-2(a)(1).  This different treatment of similarly situated persons has no rational relationship to any legitimate state purpose.

Petitioner knows of no way that these statutes can be read together so that the application of the statute imposing natural life can be found constitutional.  When the existence of the same factor forms the basis for two sentencing schemes, one more favorable to the defendant than the other, defendants have been accorded the benefits of the more favorable sentencing provisions.  See People v. Williams, 60 Ill.2d 1, 16-17, 322 N.E.2d 819 (1975); People v. Bullock, 40 Ill.App.3d 672, 677, 353 N.E.2d 35 (4th Dist., 1976); and People v. Gutierrez, 71 Ill.App.3d 895, 899, 390 N.E.2d 438 (1st Dist., 1979).  This favorable treatment should apply here as well.  Petitioner should have received no more than the maximum extended term sentence.

Finally, no standards exist for a trial judge to decide which of these penalty provisions he/she should employ.  Thus, trial judges arbitrarily decide which statute to utilize when sentencing a defendant convicted of a brutal or heinous murder.  Without any governing standards as to which penalty statute to

apply, another judge could have sentenced Petitioner to natural
life in prison, but could also have sentenced him to an extended
term sentence of anywhere from 60 to 100 years in prison.  It is
this very arbitrariness in deciding which penalty statute to
utilize which denies Petitioner his right to due process under
the law.

It is acknowledged that this same issue was addressed and
rejected in People v. Cartalino, 111 Ill.App.3d 578, 590-592,
444 N.E.2d 662 (1st Dist., 1982), and relied upon since.  See
People v. Abernathy, 189 Ill.App.3d 292, 545 N.E.2d 201, 218
(1st Dist., 1989).  This issue, however, has yet to be decided
by this Court, and with all due respect, it is asserted this
analysis of the Appellate Court decided the issue incorrectly.

In Cartalino, the court stated that the argument made by
defendant ignored the aggravating and mitigating factors which
the Code mandates a Circuit Court weigh before imposing any
sentencing, including one of natural life or an extended term.
(111 Ill.App.3d 578, 591-592).  Under this reasoning, however, a
trial judge could find someone eligible for an extended term
versus a determinate year sentence that is not an extended term,
solely on the basis that he/she has considered the aggravating
and mitigating factors.  Trial judges cannot do this because
there are certain governing standards which must be found before
an extended term can be imposed.  Ill.Rev.Stat., 1987, ch. 38,
pars. 1005-5-3.2 and 1005-8-2(a).  Once one of these standards
is met, the trial judge then may use the aggravating and
mitigating factors to determine how many years should be given
for a sentence within the limits of the extended term statute.

This is the approach that must be applied to the natural life versus extended term statutes when the murder is exceptionally brutal or heinous.  Just as in a situation where a trial judge must find that some standard exists which elevates a non-extended term, determinate year sentence, to an extended term sentence, some standard must exist to elevate an exceptionally brutal or heinous murder from an extended term to a natural life sentence.  The existence of aggravating and mitigating factors should only be utilized in determining what sentence to give between 60 and 100 years.  These aggravating and mitigating factors cannot be utilized in deciding whether to give a natural life sentence or an extended term sentence.

For the reasons given, the Illinois penalty statutes for exceptionally brutal or heinous murders are unconstitutionally arbitrary, disparate, and discriminatory.  Because the violation of Petitioner's right to due process and equal protection is plain (Ill.Rev.Stat., 1987, ch. 110A, par. 615(a)), this Honorable Court should remand this matter for resentencing with directions that Petitioner not be given a sentence in excess of the extended term limit.

## CONCLUSION

For the reasons stated herein, Jerome Hendricks, Petitioner, prays that this Honorable Court grant him leave to appeal, and that this Court order Petitioner's arrest quashed; that Petitioner's sentence be ruled excessive; and/or that the penalty statutes for murder be found to violate Petitioner's right to due process and equal protection.

Respectfully submitted,

RITA A. FRY
Public Defender of Cook County
200 West Adams - 4th Floor
Chicago, Illinois 60606
(312) 609-2040

**Counsel for Petitioner**

LESTER FINKLE
Assistant Public Defender

**Of Counsel.**

23

# STATE OF ILLINOIS
## SUPREME COURT

At a Term of the Supreme Court, begun and held in Springfield, on Monday, the eighth day of November, 1993.

Present: Ben K. Miller, Chief Justice

| | |
|---|---|
| Justice Michael A. Bilandic | Justice James D. Heiple |
| Justice Charles E. Freeman | Justice Moses W. Harrison II |
| Justice Mary Ann G. McMorrow | Justice John L. Nickels |

On the first day of December, 1993, the Supreme Court entered the following judgment:

No. 76244

People State of Illinois,

    Respondent

    v.

Jerome Hendricks,

    Petitioner

Petition for Leave to Appeal from Appellate Court First District
1-91-2922
88CR12517

The Court having considered the Petition for Leave to Appeal and being fully advised of the premises, the Petition for Leave to Appeal is DENIED.

As Clerk of the Supreme Court of the State of Illinois and keeper of the records, files and Seal thereof, I certify that the foregoing is a true copy of the final order in this case.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed the Seal of said Court, this twenty-third day of December, 1993.

Clerk,
Supreme Court of the State of Illinois

**File Date:** _5 - 29 - 2008_

**Case No:** _08 c v /589_

**ATTACHMENT #** _____

**EXHIBIT** _D through F_ _____

**TAB (DESCRIPTION)**

_____



624 N.E.2d 812 (Table)                                                      Page 1
153 Ill.2d 564, 624 N.E.2d 812 (Table), 191 Ill.Dec. 624
**(Cite as: 153 Ill.2d 564, 624 N.E.2d 812 (Table))**


People v. Hendricks
Ill. 1993.
(The decision of the Court is referenced in the
North Eastern Reporter in a table captioned
"Supreme Court of Illinois Dispositions of Petitions
for Leave to Appeal".)
                  Supreme Court of Illinois
                            People
                               v.
                    Hendricks (Jerome)
                       NO. 76244


                NOVEMBER TERM, 1993
                      Dec 01, 1993


Lower Court: 253 Ill.App.3d 79, 192 Ill.Dec. 344,
625 N.E.2d 304


Disposition: Denied.


Ill. 1993.
People v. Hendricks
153  Ill.2d  564,  624  N.E.2d  812  (Table),  191
Ill.Dec. 624


END OF DOCUMENT

**EXHIBIT D**

**FILED**

FEB 24 1994

AURELIA PUCINSKI
CLERK OF THE CIRCUIT COURT,
CRIMINAL DIVISION

**ORIGINAL**
**FILE COPY**
**DO NOT REMOVE**

STATE OF ILLINOIS )
) SS:
COUNTY OF COOK )

IN THE CIRCUIT COURT OF COOK COUNTY
CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS, )
)
         Respondent. )
)
)
  vs )
)
JEROME HENDRICKS, )
)
)
)
)
PRO SE PETITIONER. )

POST CONVICTION NUMBER_____

INDICTMENT NO. CR-
88 CR 12517

CIRCUIT COURT OF COOK COUNTY,

HONORABLE

LEO HOLT
JUDGE PRESIDING

<u>PRO SE POST CONVICTION PETITION RELIEF</u>

Petitioner, Jerome Hendricks, comes before the Court and requests
leave to file his Pro Se Post Conviction Petition Relief pursuant
to the Post-Conviction Act, Illinois Compiled Statutes, Chapter
725, Section 5/122 et seq.

<u>GENERAL BACKGROUND</u>

1. Petitioner Jerome Hendricks was found guilty of these offenses
in August of 1991, on a bench trial, First Degree Murder;
Aggravated Criminal Sexual Assault, Aggravated Kidnapping, and
Concealment of a Homicidal Death.

2. Petitioner Jerome Hendricks was sentenced to Natural Life Imprisonment
for First Degree Murder, plus 30 years, to be served consecutively,
for the remaining charges.

3. Indictment Number 88 CR-12517.

4. Bench Trial.

5. Sentence Judge: Honorable Leo Holt.

6. Sentence date; August 26, 1991.

EXHIBIT E



## HISTORY IN THE APPELLATE COURT

**FILED**

FEB 24 1994

AURELIA PUCINSKI
CLERK OF THE CIRCUIT COURT
CRIMINAL DIVISION

NOTICE OF APPEAL

GENERAL BACKGROUNDS

1. A Notice Of Appeal was timely filed on August 28, 1991.

2. His conviction was affirmed by the Illinois Appellate Court, First District, First Division in a published opinion date September 7, 1993.

3. No petition for rehearing was filed.

4. An affidavit of intent to seek further review by the Illinois Supreme Court was filed on September 24, 1993.

5. The Illinois Supreme Court denied the Petitioner rehearing in 1993.

6. The pro se Petitioner are filing a pro se post conviction petition to the Cook County Circuit Court Judge Leo Holt in February of 1994.

## NATURE OF THE CASE

The defendant, Jerome Hendricks, was charged under Indictment 88 CR

12517 with the offenses of first degree murder, aggravated criminal

sexual assault, criminal sexual assault, aggravated kidnapping,

concealment of a homicidal death, and unlawful restraint.

Following a bench y trial before the Honorable Leo Holt,

Hendricks was convicted of first degree murder, aggravated criminal

sexual assault, aggravated kidnapping and concealment of a homicidal

death. Hendricks was sentenced to natural life imprisonment for murder,

plus 30 years, to be served consecutively, for the remaining charges.

FILED

FEB 24 1994

AURELIA PUCINSKI
CLERK OF THE CIRCUIT COURT
CRIMINAL DIVISION

ORIGINAL
FILE COPY
DO NOT REMOVE

## STATEMENT OF FACTS

Jerome Hendricks was indicted for and convicted of first degree murder, aggravated criminal sexual assault, and aggravated kidnapping.

# FILED

FEB 24 1994

AURELIA PUCINSKI
CLERK OF THE CIRCUIT COURT
CRIMINAL DIVISION

C    18
(3)

## CONSTITUTIONAL VIOLATIONS
### I.

JEROME HENDRICKS WAS DENIED DUE PROCESS OF THE LAW UNDER THE

UNITED STATES CONSTITUTION , BECAUSE THE POLICE DID NOT HAVE

PROBABLE CAUSE TO ARREST HIM.

The trial court erred by ruling that Jerome Hendricks arrest was supported
by probable cause. The police had no probable cause to arrest
Jerome Hendricks, and his arrest and all evidence flowing from it
should have been suppressed.

Following a lengthy pre-trial motion to quash arrest and suppress evidence,
the trial court made, as its findings of fact, that Jerome Hendrick
was arrested in his home in violation of Payton v. New York,
445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980).

This determination that probable cause existed was in error and violated
Jerome Hendricks right to be free from unreasonable search and seizure.
U.S. Const., amends. IV, XIV; Ill. Const., 1970, art. I. sec. 6.

The trial judge ruled this satisfied probable cause, and found no
Fourth Amendment violation to exist. This decision was in error.

The Fourth Amendment to the United States Constitution prohibits
police from arresting persons on the basis of "mere suspicion.

The knowledge that a defendant was the last person to be seen with the
victim does not support a finding of probable cause, but rather remains
in the realm or mere suspicion and probability.

Jerome Hendricks, however, was not the last person to be seen with
victim Denise. Yolanda Hill testified that she ordered Jerome Hendricks
to leave her house, and then ordered Denise to go upstairs.

Jerome Hendricks arrest was not based upon probable cause.
The evidence adduced at trial was that Jerome Hendricks was kept in
continuous custody until he made a statement. The statement was the
fruit of the illegal arrest and must be suppressed.

Wong Sun v. United States, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d
441 (1963). It is respectfully requested that the trial court's
determination that probable cause existed be reversed, and that
the statement and any other evidence obtained as a result of the
illegal arrested be suppressed.

C  19

(4)

CONSTITUTIONAL VIOLATIONS
2.

JEROME HENDRICKS WAS DENIED A FAIR BENCH TRIAL UNDER THE
UNITED STATES CONSTITUTION SIXTH AMENDMENT , HE WAS NOT
PROVEN GUILTY OF FIRST DEGREE MURDER BEYOND A REASONABLE
DOUBT.

Jerome Hendricks was not proven guilty of first degree murder beyond a
reasonable doubt. The State's sole evidence linking Hendricks to
Denise Johnson's death was Hendrick's statement, but that statement did not
implicate Hendrick's in committing first degree murder.

In the instant case, Jerome Hendricks was convicted of first degree murder
based upon circumstantial evidence.
There was no evidence linking Jerome Hendricks to the death of Denise Johnson.

As our Supreme Court stated:

The elements of murder which must be established are: The proof of death and
the proof of a criminal agency causing death. Both of these elements
must be established by evidence beyond a reasonable doubt. After these
elements, termed in law the corpus delicti, have been proved, then the law
requires that the evidence establish beyond a reasonable doubt that the
defendant was the criminal agency or put in motion the criminal agency,
which caused the death of the victim.
People v. Wilson, 400 Ill. 461, 81 N.E. 2d 211, 220 (1984).

The Seventh Circuit has observed that a verdict must not rest soley on
the piling of inference upon inference, but proper judgment must be
used to evaluated what reasonably may be inferred from circumstantial
evidence. U.S. v. Guzzino, 810 F. 2d 687 (7th Cir.1987).

## CONSTITUTIONAL VIOLATIONS
### 3.

JEROME HENDRICKS NATURAL LIFE SENTENCE VIOLATES DUE PROCESS OF THE
LAW AND EQUAL PROTECTION OF THE LAWS UNDER THE UNITED STATES
CONSTITUTION EIGHTH AMENDMENT. THE SENTENCE ARE EXCESSIVE.

The trial court abused its discretion in sentencing Jerome Hendricks
to natural life in prison without possibility of parole for the offense
of first degree murder, The judge ruled that Jerome Hendricks actions
were brutal and heinous, but that judgment was in error.

" Heinous" has been defined as " hatefully or shockingly evil.....grossly bad..
enormously and flagrantly criminal". "brutal" has been defined as "
grossly ruthless.... devoid of mercy or compassion......cruel and cold-
blooded." People v. LaPointe, 88 Ill. 2d 482, 501.
"Cruelty" has been further defined as a "disposition to inflict pain or
suffering or to enjoy its being inflicted."

# FILED

FEB 24 1994

AURELIA PUCINSKI
CLERK OF THE CIRCUIT COURT
CRIMINAL DIVISION

(6)

## CONSTITUTIONAL VIOLATIONS
### 4.

THE ILLINOIS PENALTY STATUTES FOR MURDER VIOLATE DUE PROCESS
AND EQUAL PROTECTION BECAUSE THEY ALLOW THOSE WHO ARE FOUND
GUILTY OF AN EXCEPTINALLY BRUTAL OR HEINOUS MURDER TO BE
SENTENCED TO EITHER NATURAL LIFE OR AN EXTENDED TERM.

The trial judge sentenced Jerome Hendricks to natural life in prison
because he believed the Jerome Hendricks actions were exceptionally brutal and
heinous indicative of wanton cruelty.

Jerome Hendricks knows of no way these statutes can be read together so that
the application of the ....
tatute imposing natural life can be found constitutional.
.hen the existence of the same factor forms the basis for two sentencing
schemes, one more favorable to the defendant than the other, defendants have
been accorded the benefits of the more favorable sentencing provisions.

See People v. Williams, 60 Ill. 2d I, 16-17, 322 N.E. 2d 819 (1975).

This favorable treatment should apply here as well.
Jerome Hendricks should have received no more than the maximum extended
term sentence.

For the reasons given, the Illinois penalty statutes for exceptinally brutal
or heinous murders are unconstitutionally arbitrary, disparate, and
discriminatory. Because the violation of Jerome Hendricks rights to due process
and equal protection is plain (Ill. Rev. Stat., 1987, ch 110A, par. 616(a),
this Honorable Court should remand this matter for resentencing.

FILED

FEB 24 1994

AURELIA PUCINSKI
CLERK OF THE CIRCUIT COURT
CRIMINAL DIVISION

ORIGINAL
FILE COPY
DO NOT REMOVE

FILED
FEB 24 1994
AURELIA PUCINSKI
CLERK OF THE CIRCUIT COURT
CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS

　　　　Plaintiff

vs.

Pro Se Petitioner

Jerome Hendricks,

FILED
FEB 24 1994
AURELIA PUCINSKI
CLERK OF THE CIRCUIT COURT
CRIMINAL DIVISION

Indictment Number 88 CR 12517

---

## NOTICE OF FILING

TO: JACK O' MALLEY
　　STATE'S ATTORNEY
　　309 DALEY CENTER
　　CHICAGO, IL 60612

AURELIA PUCINSKI
CLERK OF THE CIRCUIT COURT OF COOK
COUNTY, ILLINOIS COUNTY DEPARTMENT
DEPARTMENT-CRIMINAL DIVISION
2650 SOUTH CALIFORNIA AVE
CHICAGO, ILLINOIS 60608

PLEASE TAKE NOTICE that on _____, I filed 6 copies

of my Pro Se Post Conviction Petition

to the Cook County Circuit Clerk Mrs. Pucinski.

### PROOF OF SERVICE

I, the undersigned, being first duly sworn on oath,

depose and state that on this date I served 6 copies of my

Pro Se Post Conviction Petition to the Cook County Circuit Court

Clerk, Mrs. Pucinski.

X̲_____
　Pro Se Petitioner

Subscribed and Sworn To
Before me this 15th day of February, A.D. 1994.

X̲_____
Notary Public

OFFICIAL SEAL
KATHRYN J. DONOVAN
NOTARY PUBLIC STATE OF ILLINOIS
MY COMMISSION EXP. MAY 8, 1994

(8)　　　C　23

# Patch T



## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

PEOPLE OF THE STATE OF ILLINOIS

v.

JEROME HENDRICKS

NO.   88CR-12517

# FILED

**ORDER**

MAR 2 1 1994

AURELIA PUCINSKI
CLERK OF THE CIRCUIT COURT
CRIMINAL DIVISION

This cause comes on pursuant to the provisions of
725 ILCS 5/122-1 et seq., and the Court having considered the Petition
filed herein, the record of the proceeding herein and the Opinion of
the Appellate Court in this cause, and now finds as follows:

1. That the issues sought to be raised in the Petition
are all res adjudicata; and

2. The Petition is patently without merit.

Wherefore, pursuant to the provisions of 725 ILCS 5/122.2-1,
the Petition is dismissed.

ENTER:

JUDGE
Leo E. Holt

DATE: _____ March 21, 1994 _____

EXHIBIT F

**File Date:** _5 - 29 - 2 0 0 8_

**Case No:** _0 8 c v 1 5 8 9_

**ATTACHMENT #** _____

**EXHIBIT** _G - J_

**TAB (DESCRIPTION)**

_____

**NOTICE**

The text of this order may be changed or corrected prior to the time for filing of a Petition for Rehearing or the disposition of the same.

1-94-1570

## IN THE
## APPELLATE COURT OF ILLINOIS
## FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| v. | ) | No. 88 CR 12517 |
| JEROME HENDRICKS, | ) | Honorable Leo Holt, |
| Defendant-Appellant. | ) | Judge Presiding. |

## O R D E R

Following a bench trial, defendant was found guilty of first degree murder, aggravated criminal sexual assault, aggravated kidnapping, kidnapping, unlawful restraint and concealment of a homicidal death.  He was sentenced to natural life imprisonment for murder plus concurrent sentences for the remaining offenses, the longest of which was 30 years imprisonment for criminal sexual assault.  These sentences run consecutively to the natural life sentence.  On appeal, this court affirmed the judgment. (People v. Hendricks (1993), 253 Ill. App. 3d 79, 625 N.E.2d 304.)  On February 24, 1994, defendant filed a pro se post-conviction petition which the trial court summarily denied on March 21, 1994.

The public defender of Cook County, who represents defendant on appeal, has filed a motion for leave to withdraw as appellate counsel.  A brief in support of the motion has been submitted

**EXHIBIT G**

1-94-1570

pursuant to <u>Pennsylvania v. Finley</u> (1987), 481 U.S. 551, 95 L.
Ed.2d 539, 107 S. Ct. 1990, in which counsel states that he has
reviewed the trial record and concluded that there are no
arguable bases for collateral relief.

We have carefully reviewed the record in this case and the
aforesaid brief in compliance with the mandate of <u>Pennsylvania v.
Finley</u> and no issues of arguable merit.  Therefore, the motion of
the public defender for leave to withdraw as counsel is allowed
and the judgment of the circuit court is affirmed.

Affirmed.

CAMPBELL, P.J., with BUCKLEY, J., and O'CONNOR, JR., J., con-
curring.

2

**ORIGINAL**
**FILE COPY**
**DO NOT REMOVE**
NO._____

4-20-94

# FILED

APR 1 9 1994

**AURELIA PUCINSKI**
CLERK OF CIRCUIT COURT

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | IN THE |
| Plaintiff-Appellee, | APPELLATE COURT OF ILLINOIS |
| | FIRST DISTRICT |

PEOPLE OF THE STATE OF ILLINOIS,

    Plaintiff-Appellee,

         -vs-

JEROME HENDRICKS,

PRO SE PETITIONER/APPELLANT

)    IN THE

)    APPELLATE COURT OF ILLINOIS

)    FIRST DISTRICT

)    APPEAL FROM THE CIRCUIT COURT OF COOK

)    COUNTY, ILLINOIS.

)    INDICTMENT NO. 88 CR-125177

)    HONORABLE _____

)    LEO HOLT _____

)    JUDGE PRESIDING

## PRO SE POST CONVICTION PETITION RELIEF

Petitioner's Jerome Hendricks, comes before the Court and requests

leave to file his Pro Se Post Conviction Petition Relief pursuant

to the Post- Conviction Act, Illinois Compiled Statutes, Chapter 725, Section

5/122 et seq.

### GENERAL BACKGROUND

1. Petitioner's Jerome Hendricks was found guilty of these offenses in August of 1991, on a bench trial, First Degree Murder, Aggravated Criminal Sexual Assault, Aggravated Kidnapping , and Concealment of a Homicidal Death/

2. Petitioner's Jerome Hendricks was sentenced to Natural Life Imprisonment for First Degree Murder, plus 30 years, to be served consecutively, for the remaining charges.

3. Indictment Number 88 CR- 12517.

4. Bench Trial.

5. Sentence Judge: Honorable Leo Holt.

6. Sentence date: August 26, 1991.

7. The Circuit Court judge Leo Holt denied my Pro Se Post Conviction Petition on 3/21/94.

8. I filed a Notice Of Appeal to the Illinois Appellate Court on 4/1/94.

**EXHIBIT H**

**ORIGINAL**
**FILE COPY**
**DO NOT REMOVE**

## HISTORY IN THE APPELLATE COURT

### NOTICE OF APPEAL

### GENERAL BACKGROUND

**FILED**

APR 1 9 1994

AURELIA PUCINSKI
CLERK OF CIRCUIT COURT

1. A Notice Of Appeal was timely filed on August 28, 1991.

2. His conviction was affirmed by the Illinois Appellate Court. First District, First Division in a published opinion date September of 1993.

3. No petition for rehearing was filed.

4. An affidavit of intent to seek further review by the Illinois Supreme Court was filed on September 24, 1993.

5. The Illinois Superme Court denied the Petitioner rehearing in 1993.

6. The Pro Se Petitioner are filing a pro se post conviction petition to the Cook County Circuit Court Judge Leo Holt in February of 1994.

7. The Circuit Court judge Leo Holt denied my Pro Se Post Conviction Petition on 3/21/94.

8. I filed a Notice Of Appeal to the Illinois Appellate Court on 4/1/94.

## NATURE OF THE CASE

The defendant, Jerome Hendricks, was charged under Indictment 88 CR 12517 with the offenses of first degree murder, aggravated criminal sexual assault, criminal sexual assault, aggravated kidnapping, concealment of a homicidal death, and unlawful restraint.

Following a bench trial before the Honorable Leo Holt.

Jerome Hendricks was convicted of first degree murder, aggravated criminal sexual assault, aggravated kidnapping and concealment of a homicidal death. Jerome Hendricks was sentenced to natural life imprisonment for murder,

plus 30 years, to be served consecutively, for the remaining charges.

ORIGINAL
FILE COPY
DO NOT REMOVE

## STATEMENT OF FACTS

Jerome Hendricks was indicted for and convicted of first
degree murder, aggravated criminal sexual assault, and
aggravated kidnapping.

**ORIGINAL**
FILE COPY
DO NOT REMOVE

## CONSTITUTIONAL VIOLATIONS

1.

JEROME HENDRICKS WAS DENIED DUE PROCESS OF THE LAW UNDER THE UNITED STATES CONSTITUTION, BECAUSE THE POLICE DID NOT HAVE PROBABLE CAUSE TO ARREST HIM.

The trial court erred by ruling that Jerome Hendricks arrest was supported by probabale cause. The police had no probable cause to arrest Jerome Hendricks, and his arrest and all evidence flowing from it should have been suppressed.

Following a lengthy pre-trial motion to quash arrest and suppress evidence, the trial court made, as its findings of fact, that Jerome Hendricks was arrested in his home in violation of Payton v. New York, 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980).

This determination that probable cause existed was in error and violated Jerome Hendricks right to be free from unreasonable search and seizure. U.S. Const., amends. IV XIV; Ill. Const., 1970, art. I. sec 6.

The trial judge ruled this satisfied probable cause, and found no Fourth Amendment violation to exist. This decision was in error.

The Fourth Amendment to the United States Constitution prohibits police from arresting persons on the basis of "mere suspicion.

The knowledge that a defendant was the last person to be seen with the victim does not support a finding of probable cause, but rather remains in the realm or mere suspicion and probability.

Jerome Hendricks, however, was not the last person to be seen with victim Denise . Yolanda Hill testified that she ordered Jerome Hendricks to leave her house, and then ordered Denise to go upstairs.

Jerome Hendricks arrest was not based upon probable cause. The evidence adduced at trial was that Jerome Hendricks was kept in continous custody until he made a statement. The statement was the fruit of the illegal arrest and must be suppressed.

Wong Sun v. United States, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441(1963).

It is respectfully requested that the trail court's determination that probable cause existed be reversed, and that the statement and any other evidence obtained as a result of the illegal arrested be suppressed.

ORIGINAL
FILE COPY
DO NOT REMOVE

## CONSTITUTIONAL VIOLATIONS
### 2.

JEROME HENDRICKS WAS DENIED A FAIR BENCH TRIAL UNDER THE UNITED STATES  CONSTITUTION
SIXTH AMENDMENT, HE WAS NOT PROVEN GUILTY OF FIRST DEGREE MURDER BEYOND A REASONABLE
DOUBT.

Jerome Hendricks was not proven guilty of first degree murder beyond a reasonable doubt.
The State's sole evidence linking Hendricks to Denise Johnson's death was Hendricks
statement, but that statement did not implicate Hendrick's in committing first degree
murder.

In the instant case, Jerome Hendricks was convicted of first degree murder based upon
circumstantial evidence.
There was no evidence linking Jerome Hendricks to the death of Denise Johnson.

As our Supreme Court stated:

The elements of murder which must be established are: The proof of death and the proof
of a criminal agency causing death. Both of these elements must be established by
evidence beyond a reasonable doubt. After these elements, termed in law the corpus
delicti, have been proved, then the law requires that the evidence establish beyond
a reasonable doubt that the defendant was the criminal agency or put in motion the
criminal agency, which caused the death of the victim.
People v. Wilson, 400 Ill. 461, 81 N.E. 2d 211, 220 (1984).

The Seventh Circuit has observed that a verdict must not rest soley on the piling
of inference upon inference, but proper judgment must be used to evaluated what
reasonably may be inferred from circumstantial evidence.
U.S. v. Guzzino, 810 F. 2d 687 (7th Cir. 1987)

C        9

## CONSTITUTIONAL VIOLATIONS
### 3.

JEROME HENDRICKS NATURAL LIFE SENTENCE VIOLATES DUE PROCESS OF THE

LAW AND EQUAL PROTECTION OF THE LAWS UNDER THE UNITED STATES

CONSTITUTION EIGHTH AMENDMENT. THE SENTENCE ARE EXCESSIVE.


The trial court abused its discretion in sentencing Jerome Hendricks to natural life
in prison without possibility of parole for the offense
of first degree murder, The  judge ruled that Jerome Hendricks actions
were brutal and heinous, but that judgment was in error.

"Heinous" has been defined as " hatefully or shockingly evil...... grossly bad....
 enormously and flagrantly criminal." " brutal " has been defined as"
 grossly ruthless.... devoid of mercy or compassion..... cruel and cold-blooded."

 People v. LaPointe,88 Ill. 2d 482, 501.
"Cruelty" has been further defined as a "disposition to inflict pain or suffering
 or to enjoy its being inflicted.

C    10

## CONSTITUTIONAL VIOLATIONS
### 4.

THE ILLINOIS PENALTY STATUTES FOR MURDER VIOLATE DUE PROCESS AND EQUAL PROTECTION
BECAUSE THEY ALLOW THOSE WHO ARE FOUND GUILTY OF AN EXCEPTINALLY BRUTAL OR HEINOUS
MURDER TO BE SENTENCED TO EITHER NATURAL LIFE OR AN EXTENDED TERM.

The trail judge sentenced Jerome Hendricks to natural life in prison because he believed
the Jerome Hendricks actions were exceptionally brutal and heinous indicative of wanton
cruelty.

Jerome Hendricks knows of no way these statutes can be read together so that
the application of the statute imposing natural life can be found constitutional.
When the existence of the same factor forms the basis for two sentencing
schemes, one more favorable to the defendant than the other, defendants have
been accorded the benefits of the more favorable sentencing provisions.

See People v. Williams, 60 Ill. 2d I, 16-17, 322 N.E. 2d 819 (1975).

This favorable treatment should apply here as well.
Jerome Hendricks should have received no more than than the maximum extended term sentence.

For the reasons given, the Illinois penalty statutes for exceptionally brutal
or heinous murders are unconstitutionally arbitrary, disparate, and discriminatory.
Because the violation of Jerome Hendricks rights to due process and equal protection
is plain(Ill. Rev. Stat., 1987, Ch 110A, par. 616(a), this Honrable Court should
remand this for resentencing.

(Rev. 8/11/92) CCCR 0084

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS )
)  INDICTMENT NO. _88CR-125 17_
)
)  INDICTMENT FOR: _____
vs. )
)
)  _POST CONVICTION_
)
_JEROME HENDRICKS_ )
)

### CERTIFIED REPORT OF DISPOSITION

**The following disposition was rendered before the Honorable Judge**

_LEO E. HOLT. ON DECEMBER 16, 1994 PETITION_

_FOR POST CONVICTION RELIEF WAS DISMISSED._

_____

_____

_____

_____

_____

_____

_____

**I hereby certify that the foregoing has been entered of record on the above captioned case.**

Date: _December 28, 1994_

_Aurelia Pucinski_
**AURELIA PUCINSKI , Clerk of the Circuit Court**

AURELIA PUCINSKI, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

EXHIBIT I

FILED

JAN 23 12 37 PM '97

CLERK OF CRIMINAL DIVISION COURT
NO. 1-95-0474
AURELIA PUCINSKI
CLERK

NOTICE

The text of this order may be changed or corrected prior to the time for filing of a Petition for Rehearing or the disposition of the same.

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| Respondent-Appellee, | ) | |
| v. | ) | No. 88 CR 12517 |
| JEROME HENDRICKS, | ) | Honorable Leo E. Holt, |
| Defendant-Appellant. | ) | Judge Presiding. |

O R D E R

Following a bench trial, defendant Jerome Hendricks was convicted of one count each of first-degree murder, aggravated criminal sexual assault, aggravated kidnapping, kidnapping, unlawful restraint and concealment of a homicidal death. He was sentenced to natural life imprisonment for first-degree murder and a consecutive 30-year term for aggravated criminal sexual assault, with concurrent sentences for the remaining convictions. Defendant's conviction and sentence for first-degree murder were affirmed on direct appeal. People v. Hendricks, 253 Ill. App. 3d 79, 90-2 (1993). Subsequently, defendant filed a pro se petition for post-conviction relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 et seq. (West 1994)), which the court dismissed as being frivolous, without appointing counsel and this

EXHIBIT J

C00041

1-95-0474

court affirmed.  A subsequent petition for post-conviction relief was also dismissed.  On appeal, defendant argues that the court erred in dismissing his second petition for post-conviction relief because his counsel failed to comply with the requirements set forth in Supreme Court Rule 651(c).  134 Ill. 2d R. 651(c).

The underlying facts of defendant's conviction are adequately set forth on his direct appeal, and it is not necessary to repeat them here.  Defendant unsuccessfully contended on direct appeal that the circuit court erred when it denied his motion to suppress evidence, he was not proven guilty beyond a reasonable doubt, his sentence was excessive, and section 5-8-1(a)(1) of the Unified Code of Corrections (730 ILCS 5/5-8-1 (a)(1) (West 1994)) violated his rights to due process and equal protection.

Defendant filed a pro se post-conviction petition which was summarily dismissed without appointment of counsel and, after reviewing the record and finding that there was no issue meriting further appeal, we granted counsel's Finley motion to withdraw. People v. Hendricks, No. 1-94-1570 (1994) (unpublished order under Supreme Court Rule 23).  A subsequent pro se post-conviction petition was filed, and the court appointed counsel to represent defendant.  Defendant alleged in his petition that he had been denied his right to due process because he was arrested without probable cause, he was denied his right to effective assistance of counsel because he was not proven guilty beyond a reasonable doubt, his sentence was excessive and section 5-8-1(a)(1) of the Unified

- 2 -

1-95-0474

Code of Corrections violated his rights to due process and equal
protection. Defense counsel moved the court to withdraw as counsel
because defendant had alleged the same contentions in his initial
post-conviction petition.    Defense counsel did not file a
certificate pursuant to Supreme Court Rule 651(c).    The State
motioned to dismiss defendant's post-conviction petition, arguing
that his claims were <u>res judicata</u> and waived, and the court granted
the State's motion.

A proceeding under the Act is not a direct appeal; it serves
as a collateral attack on a judgment of conviction, and it is
limited to constitutional issues which have not been, and could not
have been, presented on direct review. <u>People v. Flores</u>, 153 Ill.
2d 264, 274 (1992). In such a proceeding, defendant has the burden
of showing a substantial denial of his constitutional rights.
<u>People v. Odle</u>, 151 Ill. 2d 168, 172 (1992). Furthermore, a
defendant is not entitled to an evidentiary hearing unless the
allegations in the post-conviction petition are supported by
affidavits and the record in the case and show a substantial
violation of his constitutional rights. <u>People v. Franklin</u>, 167
Ill. 2d 1, 9 (1995). A reviewing court will not disturb a circuit
court's determination unless it is manifestly erroneous. <u>Franklin</u>,
167 Ill. 2d at 9.

Supreme Court Rule 651(c) requires court-appointed counsel to
file with the record some showing that he has consulted with the
petitioner to understand his contentions, has examined the record

CC0042

1-95-0474

of proceedings at the trial and has made necessary changes to the pro se petition to adequately present petitioner's contentions. 134 Ill. 2d R. 651(c).

The record does not contain a Rule 651(c) certificate nor does is affirmatively show that post-conviction counsel sufficiently complied with the requirements of the rule. Defendant is entitled to adequate assistance of counsel in his attempt to draft a proper petition. People v. Carter, 223 Ill. App. 3d 957, 962-63 (1992). We therefore vacate the order dismissing defendant's pro se petition and remand the cause to the trial court for further proceedings.

Vacated and remanded.

CAMPBELL, P.J., with BUCKLEY, J., and BRADEN, J., concurring.

- 4 -

**File Date:** ___5 - 2 9 - 2 0 0 8_____

**Case No:** ___0 8 c v 1 5 8 9_____

**ATTACHMENT #** _____

**EXHIBIT** ___K - M_____

**TAB (DESCRIPTION)**

_____

## IN THE CIRCUIT COURT OF COOK COUNTY
## COUNTY DEPARTMENT - CRIMINAL DIVISION

| | | |
|---|---|---|
| JEROME HENDRICKS, | ) | |
| Petitioner, | ) | |
| | ) | NO. 88 CR 12517 |
| vs. | ) | |
| | ) | Judge Holt, |
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Presiding. |
| Respondent. | ) | |

### SUPPLEMENTAL POST-CONVICTION CLAIM UNDER
### *APPRENDI V. NEW JERSEY*

NOW COMES, the petitioner, JEROME HENDRICKS, through his attorney, RITA A. FRY, the Public Defender of Cook County, Illinois, by her able Assistant, MARIENNE BRANCH, and presents this supplemental claim to the previously filed *pro se* petition for Post-Conviction Relief pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122 - 1 et seq.

In support thereof, Mr. Hendricks states as follows:

1. Following findings of guilty, Jerome Hendricks was sentenced on August 26, 1991 to the following terms in the Illinois Department of Corrections:

- natural life for 1st degree murder,
- thirty (30) years for Aggravated Criminal Sexual Assault (ACSA),
- five (5) years for concealment of a homicidal death and
- fifteen (15) years for aggravated kidnaping (R. 1716 and 1717).

In doing so, this Honorable Court found that the murder of Denise Johnson was exceptionally brutal and heinous, indicative of wanton cruelty and that it was committed in the course of another felony (aggravated kidnaping). (R. 1713 and 1714). This court also found that exceptions to the consecutive sentencing statute (IRS Ch. 38, TP 1005-8-4 (a)) applied and ordered that the sentences on the convictions for ACSA, concealment of a homicidal death and aggravated kidnaping run consecutive to the sentence on the conviction for 1st degree murder. (R. 1716 and 1717). In addition, the court found that consecutive sentencing was required to protect the public from further criminal conduct by Mr. Hendricks (IRS Ch. 38, TP 1005-8-4(b)) (R. 1713).

The United States Supreme Court held that, "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be . . . proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435 AT 455 (2000).The Illinois Appellate Court held that *Apprendi* applies to life sentences in murder cases

1

**EXHIBIT K**

and also that the prescribed maximum penalty for murder did not include life imprisonment when the defendant killed only one (1) person. People v. Lee, 318 Ill App. 3d 417, 743 N.E. 2d 1019 (1st Dist. 2000); see also People v. Joyner, 317 Ill. App. 3d 93, 739 N.E. 2d 594 (2d Dist. 2000).

Thus, because the murder of Denise Johnson was not proved beyond a reasonable doubt to be exceptionally brutal or heinous, indicative of wanton cruelty or to have been committed in the course of another felony, aggravated kidnaping, Mr. Henrick's sentence to natural life violates the Illinois and the United States constitutions and he must therefore be re-sentenced to between twenty (20) and sixty (60) years imprisonment.

Again, the factors this Court considered when imposing consecutive sentences on Mr. Hendricks were neither proved beyond a reasonable doubt nor included in his indictment.

While it is true that the Illinois Supreme Court held that *Apprendi* does not apply to consecutive sentences, that Court acknowledged that *Apprendi* could be construed to apply to those cases where the "real world" time to which a defendant was sentenced increased that sentence. (People v. Wagener, Docket #88843 (2000)) slip opinion at 15. This is particularly so in a case such as this where the natural life sentence is unconstitutional and, by law, Mr. Hendricks will be re-sentenced to a determinate term of years. But more importantly, the United States Supreme Court has not excluded consecutive sentences from *Apprendi*.

WHEREFORE, Petitioner, Jerome Hendricks, respectfully and hopefully prays that this Honorable Court grant him the following relief on this supplemental claim:

1.      that this court vacate his sentence and grant a new sentencing hearing which complies with Apprendi v. New Jersey, and/or

2.      any other relief that this Court deems just.

Respectfully Submitted,
RITA A. FRY
Public Defender of Cook County

BY:

Marienne Branch
Assistant Public Defender

Attorney No. 30295
Rita A. Fry, Cook County Public Defender
Marienne Branch, Assistant Public Defender
69 West Washington, Suite 1700
Chicago, Illinois   60602
(312) 603-8300

2

5 0.

No. 1-06-2093

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

RECEIVED
CRIMINAL APPEALS

SEP - 1 2006

309 RICHARD J. DALEY CENTER
RICHARD A. DEVINE
STATE'S ATTORNEY'S OFFICE

| | | |
|---|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,** | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Respondent-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 88 CR 12517. |
| | ) | |
| **JEROME HENDRICKS,** | ) | Honorable |
| | ) | Wilber E. Crooks, |
| Petitioner-Appellant. | ) | Judge Presiding. |

**BRIEF AND ARGUMENT FOR PETITIONER-APPELLANT**

MICHAEL J. PELLETIER
Deputy Defender

CAROLINE E. BOURLAND
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR PETITIONER-APPELLANT

**ORAL ARGUMENT REQUESTED**

EXHIBIT L

POINTS AND AUTHORITIES                                                Page

I.   The trial court erred in denying Jerome Hendricks' *pro se* motions for substitution
     of counsel where the motions contained detailed and specific allegations of the
     neglect of his case by the assistant public defenders assigned to represent him,
     further supported by the demonstrable neglect that the trial court witnessed over
     the 7-1/2 year period that the Post-Conviction Unit of the Public Defender's Office
     represented Hendricks. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Illinois Supreme Court Rule 651(c) (West 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

     A.   The trial court erred in failing to appoint Hendricks new counsel where it was
          glaringly apparent that the assistant public defenders from the Post-Conviction
          Unit were wholly neglecting Hendricks' claims of constitutional deprivations. . 17

*People v. Hardin*, 217 Ill. 2d 289, 840 N.E.2d 1205 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*People v. Landers*, 215 Ill. 2d 577, 831 N.E.2d 596 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . 22

*People v. Davis*, 166 Ill. 2d 149, 619 N.E.2d 750 (1993) . . . . . . . . . . . . . . . . . . . . . . . . 17, 24

*People v. Lyons*, 46 Ill. 2d 172, 263 N.E.2d 95 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 30

*People v. Hawkins*, 44 Ill. 2d 266, 255 N.E.2d 456 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . 22

*People v. Bashaw*, 361 Ill. App. 3d 963, 838 N.E.2d 972 (2nd Dist. 2005) . . . . . . . . . . . . 22, 26

*People v. Wanke*, 303 Ill. App. 3d 772, 708 N.E.2d 833 (2nd Dist. 1999) . . . . . . . . . . . . . . . 17

*People v. Royark*, 215 Ill. App. 3d 255, 574 N.E.2d 1211 (3rd Dist. 1991) . . . . . . . . . . . . 17, 30

*People v. Johnson*, 232 Ill. App. 3d 674, 597 N.E.2d 1258 (5th Dist. 1992) . . . . . . . . . . . . . 27

*People v. Hendricks*, No. 1-95-0474 (1st Dist., Nov. 18, 1996) (unpublished order pursuant to
S.Ct. R. 23) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

725 ILCS 5/122-1 *et al* (West 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 29

     B.   In the alternative, this Court should remand this case with instructions to the trial
          court to make adequate inquiries into Hendricks' *pro se* motion for counsel other
          than the Public Defender's Office. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*People v. Moore*, 207 Ill. 2d 68, 797 N.E.2d 631 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30-33

*People v. Smith*, 191 Ill. 2d 408, 732 N.E.2d 513 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*People v. Milton*, 354 Ill. App. 3d 283, 820 N.E.2d 1074 (1st Dist. 2004) . . . . . . . . . . . . . . . . 31

*People v. Hardin*, 353 Ill. App. 3d 522, 818 N.E.2d 1246 (2nd Dist. 2004) . . . . . . . . . . . . . . . 31

II.    **Jerome Hendricks' consecutive sentences of a 30-year term, 15-year term, and a 5-year term are void because the trial court imposed these sentences along with the current sentence of natural life for murder; therefore, this Court should modify the sentences to run concurrently with the natural life term.** . . . . . . . . . . . . . . . . . . . . . 34

*People v. Palmer*, 218 Ill. 2d 148, 843 N.E.2d 292 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 34-35

*People v. Thompson*, 209 Ill. 2d 19, 805 N.E.2d 1200 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*People v. Dixon*, 2006 Ill. App. LEXIS 425 (May 30, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 34-35

III.    **The holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), applies retroactively to invalidate Jerome Hendricks' natural-life sentence because the rule either effected a substantive change in Illinois law or it constituted a "watershed" rule under *Teague v. Lane*, 489 U.S. 288 (1989)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Burton v. Waddington*, No. 05-9222, 2006 U.S. LEXIS 4352 (petition for certiorari granted June 5, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Blakely v. Washington*, 542 U.S. 296 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Apprendi v. New Jersey*, 530 U.S. 466 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Lucien v. Briley*, 213 Ill. 2d 340, 821 N.E.2d 1148 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*People v. De La Paz*, 204 Ill. 2d 426, 791 N.E.2d 489 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . 37

*People v. Swift*, 202 Ill. 2d 378, 781 N.E.2d 292 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*People v. Coleman*, 358 Ill. App. 3d 1063, 835 N.E.2d 387 (3rd Dist. 2005) . . . . . . . . . . . . . . 37

Ill. Rev. Stat., ch. 38, sec. 1005-8-1(a)(1) (West 1988 and West 1991) . . . . . . . . . . . . . . . . . . 36

Ill. Rev. Stat., ch. 38, sec. 1005-8-2(1) (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Ill. Rev. Stat., ch. 38, sec. 1005-5-3.2(b)(2) (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

     A.     *Apprendi* effected a substantive change in Illinois law and therefore should be
           given full retroactive effect. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Burton v. Waddington*, No. 05-9222, 2006 U.S. LEXIS 4352 (petition for certiorari granted June
5, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Schriro v. Summerlin*, 542 U.S. 348 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38-40

*Ring v. Arizona*, 536 U.S. 584 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Apprendi v. New Jersey*, 530 U.S. 466 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37-38, 40

*Bousley v. United States*, 523 U.S. 614 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Saffle v. Parks*, 494 U.S. 484 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Teague v. Lane*, 489 U.S. 288 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38-39

*Griffith v. Kentucky*, 479 U.S. 314 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Lucien v. Briley*, 213 Ill. 2d 340, 821 N.E.2d 1148 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*People v. De La Paz*, 204 Ill. 2d 426, 791 N.E.2d 489 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . 39

*People v. Swift*, 202 Ill. 2d 378, 781 N.E.2d 292 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*People v. Jackson*, 199 Ill. 2d 286, 796 N.E.2d 21 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*People v. Flowers*, 138 Ill.2d 218, 561 N.E.2d 674 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*People v. Kelley*, No. 1-04-2600, ___ Ill. App. 3d ___ (1st Dist., June 23, 2006) . . . . . . . . . . . 41

*People v. Williams*, 90 Ill. App. 3d 524, 527, 413 N.E.2d 60 (1st Dist. 1980) . . . . . . . . . . . . . 40

*People v. Peddicord*, 85 Ill. App. 3d 414, 407 N.E.2d 89 (3rd Dist. 1980) . . . . . . . . . . . . . . . . 40

*State v. Towery*, 204 Ariz. 386, 64 P. 3d 828 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

     B.     *Apprendi's* requirement that aggravating factors that increase the maximum
           penalty must be proven beyond a reasonable doubt applies retroactively under
           *Teague's* exception for rules that implicate the fundamental fairness and accuracy

of criminal proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Schriro v. Summerlin*, 542 U.S. 348 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Sattazahn v. Pennsylvania*, 537 U.S. 101 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42-43

*United States v. Cotton*, 535 U.S. 625 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Tyler v. Cain*, 533 U.S. 656 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Apprendi v. New Jersey*, 530 U.S. 466 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42, 45

*Teague v. Lane*, 489 U.S. 288 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41, 45

*Hankerson v. North Carolina*, 432 U.S. 233 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Mullaney v. Wilbur*, 421 U.S. 684 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Ivan V. v. City of New York*, 407 U.S. 203 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44-45

*In re Winship*, 397 U.S. 358 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*People v. De La Paz*, 204 Ill. 2d 426, 791 N.E.2d 489 (2003) . . . . . . . . . . . . . . . . . . . . . . 42-43

    C.    The trial court did not make a valid death-eligibility finding under section 9-
        1(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Apprendi v. New Jersey*, 530 U.S. 466 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*Enmund v. Floida*, 458 U.S. 782 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*People v. Fuller*, 205 Ill. 2d 308, 793 N.E.2d 526 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*People v. Ford*, 198 Ill. 2d 68, 761 N.E.2d 735 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*People v. Mack*, 167 Ill. 2d 525, 658 N.E.2d 437 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*People v. Ramey*, 151 Ill. 2d 498, 603 N.E.2d 519 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*People v. Jimerson*, 127 Ill. 2d 12, 535 N.E.2d 889 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*People v. Virella*, 256 Ill. App. 3d 635, 628 N.E.2d 268 (1st Dist. 1993) . . . . . . . . . . . . . . . . 48

Ill. Rev. Stat., ch. 38, sec. 9-1(b)(6) (West 1988) ................................. 46, 48

Ill. Rev. Stat., ch. 38, sec. 1005-8-1(a)(1)(a) (West 1988) ............................. 48

## NATURE OF THE CASE

Jerome Hendricks, Petitioner-Appellant, appeals from a judgment dismissing his petition for post-conviction relief.

No issue is raised concerning the charging instrument. However, issues are raised concerning the sufficiency of the post-conviction pleadings and the validity of Hendricks' sentence.

## ISSUES PRESENTED FOR REVIEW

I.      Whether this Court should reverse the denial of Jerome Hendricks' post-conviction petition and remand this matter for further proceedings where the trial court refused to appoint new counsel other than the Public Defender even though it was apparent that the attorneys from that office were wholly neglecting their representation of Hendricks. Alternatively, whether this Court should remand this matter for the required inquiry into Hendricks' *pro se* claims.

II.      Whether Jerome Hendricks' sentences of 30 years for aggravated criminal sexual assault, five years for concealment of a homicidal death, and 15 years for aggravated kidnaping, imposed concurrent to each other but consecutive to a natural life sentence for murder, are void and must be modified to run concurrently.

III.     Whether this Court should apply the rule of *Apprendi* retroactively and vacate Jerome Hendricks' extended-term sentence, notwithstanding the decision in *People v. De La Paz*, which did not address the precise arguments advanced herein, because *Apprendi* either effected a substantive change in the way Illinois defines the elements of enhanced murder, or because *Apprendi*'s requirement that such elements be proved beyond a reasonable doubt to a jury constituted a "watershed rule of criminal procedure" under *Teague v. Lane*, 489 U.S. 288 (1989).

## JURISDICTION

Jerome Hendricks, Petitioner-Appellant, appeals the denial of his post-conviction petition. The judgment being appealed was entered on October 15, 2003. (S.C. I 23)[1] On July 11, 2006, the Illinois Supreme court granted a motion for supervisory order allowing Hendricks to file a notice of appeal instanter. (S.C. III 5) Notice of appeal was then timely filed on July 18, 2006. (S.C. III 4) Jurisdiction therefore lies in this Court pursuant to Article VI, Section 6, of the Illinois Constitution, and Supreme Court Rule 651(a).

---

[1] The volumes of the record will be cited as follows:

C.: Current Post-Conviction Common Law Record

R.: Current Post-Conviction Report of Proceedings

S.C. I: Supplemental Current Post-Conviction Common Law Record (Containing the opinion on direct appeal and the order of sentence.)

S.C. II: Supplemental Current Post-Conviction Common Law Record (Containing the first post-conviction petition and additional documents relative to the successive post-conviction petition.)

S.C. III: Supplemental Current Post-Conviction Common Law Record (Containing the Supervisory Order and Notice of Appeal)

P.C.: Common Law Record from Appeal No. 1-95-0474 (Appeal from first dismissal of current post-conviction petition)

P.R.: Report of Proceedings from Appeal No. 1-95-0474 (Appeal from first dismissal of current post-conviction petition)

P.S.R.: Supplemental Report of Proceedings from Appeal No. 1-95-0474 (Appeal from first dismissal of current post-conviction petition)

P.S.R. Vols. IV and V: "Volume Four or Five of Five Volumes", from Appeal No. 1-95-0474 (Containing the transcript of the trial finding of guilt and sentencing hearing)

F.C.: Common Law Record from Appeal No. 1-94-1570 (Appeal from dismissal of first post-conviction petition)

F.R: Report of Proceedings from Appeal No. 1-94-1570 (Appeal from dismissal of first post-conviction petition)

Tr. R.: Trial Report of Proceedings

## STATEMENT OF FACTS

The instant appeal stems from the denial of Jerome Hendricks' post-conviction petition at the second stage of proceedings, following a remand by this Court after finding that initial appointed post-conviction counsel did not comply with Illinois Supreme Court Rule 651(c).

### Trial and Direct Appeal

Relevant evidence adduced at a bench trial and examined on direct appeal indicates that "D.J.," the decedent, was 12 years old in August of 1988.[2]  Several witnesses testified that they last saw D.J. alive on August 1, 1988. (S.C. I 3, 7)  Witnesses also testified that they observed D.J. speaking with Hendricks at some point on that evening. (S.C. I 3, 7)  D.J. was wearing a black tank top, white knee pants, white socks, and white "Princess" brand gym shoes. (S.C. I 3)  The name, "Denise," was written in red ink in the instep of the left shoe. (S.C. I 3)

Officer John Fassl testified that he discovered the body of a young girl underneath some garbage bags in a garage on August 8, 1988. (S.C. I 5)  The girl was lying on her stomach and her hands were tied behind her back with shoelaces. (S.C. I 5)  The girl's pants were unfastened, her bra straps were pulled down, and a top was tied around her neck. (S.C. I 6)  A "Princess" brand shoe with the name "Denise" written in red marker was found near the girl's head. (S.C. I 5)  The body was in a high state of decomposition. (S.C. I 5)  The forensic pathologist who performed the autopsy opined that the cause of death was strangulation. (S.C. I 6)

Later that day, the police spoke with Hendricks at Area Two Police Headquarters. (S.C. I

---

[2] The decision on direct appeal, *People v. Hendricks*, 253 Ill. App. 3d 79, 625 N.E.2d 304 (1st Dist. 1993), is contained in Volume I of the Supplemental Current Post-Conviction Common Law Record.  Trial citations will be taken from the Appellate Court decision where allowable.

8) Hendricks gave varying accounts of his whereabouts on August 1, 1988. (S.C. I 8-9)

Detective John Yucaitis testified that Hendricks told him that he was not telling the whole truth

because he was on parole for rape and feared that he would not be believed. (S.C. I 9) After this

conversation, Detective Joann Ryan testified that Hendricks told her that he and "the girl" had

sex near a car, and Hendricks left. (S.C. I 10) The girl chased Hendricks, led him to a garage,

and hugged and kissed him. (S.C. I 10) Hendricks and the girl then had intercourse after she

took her pants down and pulled her top over her head. (S.C. I 10) The girl had something like a

gag that she stuck in her mouth and asked Hendricks to hold it, pull on it, and "ride her like a

horse." (S.C. I 10) The girl asked Hendricks not to tell anyone what happened, and Hendricks

left. (S.C. I 10-11)

 Assistant State's Attorney Anna Decampolous testified that she took Hendricks'

handwritten statement. (S.C. I 11) The statement was substantially similar to the oral statement

testified to by Detective Ryan, adding that Hendricks knew that the girl did not leave with him

and that he did not look back at her as he left the garage. (S.C. I 11) Hendricks also related that

he discovered the body several days later in the same position as when he left the garage. (S.C. I

11) Hendricks denied killing, raping, or secretly confining the girl. (S.C. I 11)

 Midway through Hendricks' bench trial, a hearing was held regarding an allegation that

the State committed a discovery violation. (Tr. R. 634-63) For purposes of that motion, Chicago

Police Youth Officer David Kaddigan testified that he investigated D.J.'s disappearance as a

missing person case. (Tr. R. 642) On August 7, 1988, two women who resided at 10537 S. State

stated that they saw D.J. alive on August 2, 1988, the day after D.J. had last been seen alive by

the other testifying witnesses. (S.C. I 13) When defense counsel attempted to elicit information

regarding these witnesses during Hendricks' case-in-chief, the trial court struck the testimony as hearsay. (S.C. I 13)

The trial court found Hendricks guilty of first degree murder, aggravated criminal sexual assault, concealment of a homicidal death, and aggravated kidnaping. (S.C. I 23) At sentencing, the trial court found Hendricks eligible for the death penalty under Ch. 38, Sec. 9-1(b)(6) (West 1988) of the Criminal Code. (Tr. R. 1636-38, in P.S.R. Vol. V) In reaching this determination, the court found that Hendricks committed the offense of murder and that the deceased was killed during the course of the felony of aggravated kidnaping. (Tr. R. 1636-38, in P.S.R. Vol. V) The trial court declined to impose the death penalty. (S.C. I 19) The trial court sentenced Hendricks to natural life in prison after finding that the murder "was accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty." (S.C. I 19) The trial court also sentenced Hendricks to 30 years in prison for aggravated criminal sexual assault, five years for concealment of a homicidal death, and 15 years for aggravated kidnaping, with the sentences to run concurrently to each other but consecutive to the sentence for natural life. (S.C. I 23)

Hendricks appealed his conviction, arguing that the police lacked probable cause to arrest him, that the State failed to prove him guilty of murder beyond a reasonable doubt, that his natural life sentence was excessive, and that section 5-8-1(a)(1) of the Unified Code of Corrections violates his constitutional rights to due process and equal protection of the law. (S.C. I 14-22) On September 7, 1993, Hendricks' conviction and sentence were affirmed under *People v. Hendricks*, 253 Ill. App. 3d 79, 625 N.E.2d 304 (1st Dist. 1993).

*Post-Conviction Proceedings*

On February 24, 1994, Hendricks filed a *pro se* Post-Conviction petition, raising the same

-6-

four arguments argued on direct appeal. (F.C. 15-32)  The trial court dismissed the petition at the

first stage of proceedings on March 21, 1994. (F.C. 35; F.R. 1-2)  Hendricks appealed, and the

assistant public defender appointed to represent Hendricks filed a motion for leave to withdraw

as appellate counsel pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987).  On November 21,

1994, the appellate court granted the motion, affirming the dismissal of the post-conviction

petition. (S.C. II 29-30)

Prior to the Appellate Court's decision, Hendricks filed a second *pro se* post-conviction

on April 19, 1994. (P.C. 4-16)  In the petition, Hendricks alleged the same four constitutional

violations that had been raised on direct appeal and in his first post-conviction petition. (P.C. 8-

11)  On September 16, 1994, the trial court advanced the petition to the second stage of

proceedings and appointed the Public Defender's Office to represent Hendricks. (P.S.R. 6)  On

December 16, 1994, the State filed a Motion to Dismiss the petition, arguing that the allegations

were barred by *res judicata* and waiver. (S.C. II 24-26)  On the same day, Assistant Public

Defender Diane Slocum appeared on behalf of Hendricks and stated:

> ...I'm asking that our office be granted permission to withdraw. The PC date that was
> filed April 19th is identical. In fact, I think it's a Xerox copy of the one that was filed
> February 24th which was dismissed and, as Mr. Haskins [the State's Attorney] said,
> the dismissal was affirmed on appeal.
> (P.R. A3)

The trial court granted the State's motion to dismiss. (P.R. A4)

Under *People v. Hendricks*, No. 1-95-0474 (1st Dist., November 18, 1996) (unpublished

order pursuant to Ill. S.Ct. R. 23), the appellate court vacated the dismissal of Hendricks' post-

conviction petition after finding that counsel did not comply with Rule 651 and remanded the

petition to the trial court for further proceedings. (C. 41-43)

-7-

From March, 1997, to October, 2003, three assistant public defenders from the Post-Conviction Unit primarily represented Hendricks. During this time, Hendricks filed three motions for appointment of counsel other than the Public Defender due to the assistant public defenders' neglect of the case.

On March 4, 1997, before any attorney entered an appearance on Hendricks' behalf, Hendricks filed a *pro se* "Motion for Bar Association Attorney." (S.C. II 31-34)  Hendricks stated, "I believe I have a meritorious defense which is neither frivolous or malicious," and "that in regards to rule 651(c), which is stipulated in the record of proceedings in this matter, there would be a genuine conflict of interest if assistance of counsel arose from the Public Defenders' Office." (S.C. II 33)

Representation by Assistant Public Defender Jerry Namini:

From March 17, 1997, through December 8, 1998, the trial court granted continuances to at least eight different assistant public defenders entering their appearances on Hendricks' behalf. (R. E1-2, F1, G3, I2, J2-3, K1-3, L3, N3-4, M1, O3)  On January 14, 1998, Assistant Public Defender Brendon Max requested a continuance on behalf of Assistant Public Defender Jerry Namini, indicating that Namini reviewed the trial transcripts and was investigating the case, and planned on filing a supplement. (R. J2)  Max requested another continuance on May 29, 1998, indicating that three post-conviction issues had been identified. (R. L3)

On January 20, 1999, Namini appeared and stated that there were several witnesses that Hendricks wanted him to interview that he had been unable to locate, that he would revisit Hendricks after locating the witnesses, and then file a supplement or be ready to argue. (R. P3)

On September 1, 1999, Namini appeared and indicated that he had received the names of

two witnesses to interview, determined that there were three issues to investigate, and was waiting on the names of two more witnesses. (R. S3)  On November 2nd, Namini informed the trial court that he finalized the issues with Hendricks and was in the process of writing a supplemental petition, but was not able to dedicate much time to the case because he had been transferred out of the Post-Conviction Unit. (R. T5)  The trial court granted Namini a one-month continuance to finalize the petition. (R. T5)

On November 23, 1999, Hendricks filed a second *pro se* Motion for Appointment of Counsel. (S.C. II 37-42)  Hendricks again claimed that the Public Defender's Office had a conflict of interest in his representation and explained that Namini had done nothing to assist his case in the two years that he had been assigned. (S.C. II 40)  Hendricks expressed his concern that Namini now wanted to rush the procedures of his "appeal" without having anything prepared. (S.C. II 40)

On January 11, 2000, Namini appeared and stated that he had been ready to finalize the case, but Hendricks had brought up some more issues for him to investigate. (R. X3)  Because he was leaving the unit, Namini could not complete the investigation and instead transferred the case to Assistant Public Defender Marienne Branch. (R. X4)

Representation by Assistant Public Defender Marienne Branch:

After the trial court granted two continuances to Branch and another assistant public defender (R. Z1, AA3), on April 10, 2000, the State appeared and requested a continuance on behalf of the Public Defender's Office, indicating that a paralegal, "the most reliable person now in the post-conviction unit," told the State that the office would "go along with whatever your Honor rules." (R. BB3)

On April 24, 2000, the trial court denied Hendricks' second motion for new counsel without reasoning. (R. CC3)

After two more continuances (R. DD3, FF3), on March 13, 2001, Branch filed a written "Motion for Continuance" with the trial court. (S.C. II 45-47) In the motion, Branch asserts that the trial court "ordered" her to file a supplemental petition or response to the State's brief by March 13, 2001. (S.C. II 45) Since that date, she had spoken with Hendricks, read most of the file and outlined possible areas to follow-up, ordered and received the trial file, and sought unsuccessfully to acquire the appellate briefs and police reports. (S.C. II 45-46) Based on that progress, Branch had determined that there may be an *Apprendi* issue. (S.C. II 46) On June 25, 2001, Branch filed a Supplemental Post-Conviction Claim under *Apprendi v. New Jersey*. (S.C. II 48-50)

On January 31, 2002, Hendricks filed his third *pro se* "Motion to Remove Counsel and Request for New Counsel Other Than the Public Defender's Office." (S.C. II 72) Hendricks again alleged the existence of a conflict of interest, referencing Diane Slocum's representation when his petition was first filed with the court before the remand. (S.C. II 73) Hendricks had explained to Slocum that he did have constitutional allegations to place in an amended petition. (S.C. II 73) Slocum did not prepare any amendments but instead informed the trial court that it was "successive." (S.C. II 73) Hendricks explained Slocum's error to Branch and requested that she now amend the petition to include these errors, but Branch's personal feelings toward the case prevented her from doing anything. (S.C. II 74)

Hendricks also described a phone call that occurred between himself and Branch on November 20, 2001. (S.C. II 74) During the conversation, Branch told Hendricks that he had

-10-

stated that he had "done this." (S.C. II 74) Hendricks tried to correct Branch by telling her to

review the trial records because he had never made those statements in or out of court. (S.C. II

74) Branch told Hendricks that she did not have to prepare a successive post-conviction petition

for Hendricks because it would be a waste of time as he had already put forth the petition. (S.C.

II 74)

Hendricks attached to his motion two letters that he received from Branch. (S.C. II 76-

78) The first letter, dated August 13, 2001, references the supplemental *Apprendi* claim filed by

Branch. (S.C. II 76) Branch explains that, although she had not yet read the case, she was

advised that the supplemental claim was rendered moot by *People v. Vida* because Hendricks

was found eligible for the death penalty before being sentenced to natural life in prison. (S.C. II

76)

The second letter, dated November 26, 2001, reads, in part:

I reviewed your file again and consulted with my supervisor regarding some of the
things you explained to me. I will write to you as soon as we complete this review.

Whether our review will change anything about the conclusions I conveyed to you,
the fact remains that all litigation must, by law, come to an end. This case will not
go on forever. It is also an unfortunate fact of life that there is not a right for every
wrong. Every case isn't a winner.

Finally, you must accept responsibility for any errors you made in the filing. The
rules governing this are spelled out clearly for inmates. A post-conviction addresses
issues that were **not** addressed at trial or an appeal. Your first (and second) post-
conviction(s) merely repeat issues from the appeal of your trial. Because you did not
make any other claims, there is, quite simply, nothing to work with.
(S.C. II 77-78) (Emphasis in original.)

On February 20, 2002, Branch requested another continuance. (R. NN3) Branch

explained, "I'm very well versed in his case, except for the one - - this one part not having read

-11-

the transcript yet." (R. NN3) After asking the trial court to remind her what sentence Hendricks

received, Branch explained:

> Then he came back on a successor petition with the same four claims, and the
> assistant public defender from our unit pointed this out to the court and the court said
> dismissed. That went on appeal and the Appellate Court sent it back saying that Mr.
> Hendricks had a right to have an attorney help him draft a petition. And that's caused
> some problems in my office because that's not the way we read the statute. Although
> we do understand that we have to obey the Appellate Court mandate. So that's the
> position that we're in.
>
> As the successor [*sic*] petition I believe that I could have, not could but could have
> done this matter awhile back. But because I have to, according to the Appellate
> Court mandate, read the transcript and search for issues and talk to him about that
> and then do the regular things I would do, I do need a three month continuance.
> (R. NN4-5)

On May 24, 2002, the parties appeared regarding Hendricks' third motion to remove the

Public Defenders' Office. (R. PP3) The trial court denied the motion without explanation. (R.

PP3) Branch requested to "be heard" and asserted "my office had talked about this with my

supervisor and we did not oppose Mr. Hendricks' motion because based on the documents that

you've just perused, your Honor, Mr. Hendricks seems to misunderstand this process but we also

believe that this misunderstanding is based in part on some of the prior history of the case. As

regards to my office." (R. PP4) The trial court maintained its denial, reasoning that Hendricks

does not have the constitutional right to counsel in a remand regarding a failure to file the 651

certificate. (R. PP4) The trial court recognized the length of time the case had been pending

without resolution, but determined that changing counsel would exacerbate rather than address

the problem. (R. PP4)

The trial court then admonished Branch, "You're going to have to file the 651 certificate

before we proceed to a resolution of the State's motion to dismiss." (R. PP5) Branch indicated

-12-

in response that she had still not read the 1800-page record. (R. PP5) The trial court asked

Branch why they had been continuing the case if it was not to familiarize herself with the record.

(R. PP6) Branch answered:

> Your Honor, I was not aware of the mandate of the Appellate Court from the
> beginning. That was not clear from the file I inherited and so I spent a lot of time
> doing other things in the case that were not germane to getting it to the 651C filed
> immediately.
>
> * * *
>
> And then, Your Honor, I proceeded as a successor petition and I was preparing the
> case as a successor petition which wouldn't necessitate me reading the transcript until
> the Court ruled on whether his defense to appear successor or his reasoning for filing
> successor petition was ruled on by the Court.
>
> * * *
>
> ...When I understood the mandate I talked to my supervisor, I talked to my chief and
> we came in here and we talked to you and you said this is what the Appellate Court
> said and so it cannot be treated like a successor petition. I have to read it and that
> changes the whole structure of the case, the way I would handle it.
> (R. PP6-8)

The trial court responded, "I don't see how you could proceed with it under any theory

that you've talked about, successor petition or otherwise, until you've read the record. You are in

no position to know anything at all about this defendant's case. Nothing. Nothing can you know

about his case without having read the record." (R. PP8)

Representation by Assistant Public Defender Lindsay Huge:

Branch went on family leave (R. QQ3) and, on March 13, 2003,[3] Assistant Public

Defender Lindsay Huge requested a continuance, indicating that he had been "newly assigned" to

represent Hendricks. (R. SS5) The trial court granted Huge a 30-day continuance, stating, "If it

---

[3] The cover page of this portion of the transcript is dated March 13, 2002. (R. SS1)
However, based on the sequence of events and because a 30-day continuance was granted on this
date until April 13, 2003, it appears that the 2002 date was transcribed in error and that the actual
date of the hearing was March 13, 2003.

-13-

isn't filed then, the next continuance will be for two weeks. And if it isn't filed then, the next continuance will be for a week. And if it isn't filed then, you will be held day to day until it is filed." (R. SS6)

On May 21, 2003, APD Huge indicated, "I have gone through everything, and I have the 651 certificate ready to file. However, I haven't - - I have written him a letter. I'd like the chance to get some communication back from him. I can tell him about the recent Supreme Court case on Apprendi. And so what I'm saying, I don't think I have fully communicated with him. If I can have like another month, I could sufficiently file this with the Court - - " (R. UU3)

On July 30, 2003, APD Huge indicated, "I have a 651 petition on file in this case. We'll stand on the post-conviction petition." (R. WW2) Because the State was not present, the matter was continued. (R. WW2-4)

On October 15, 2003, the trial court file-stamped the 651(c) certificate, in which Huge asserted that: (1) he consulted with Hendricks by mail and ascertained his contentions; (2) he reviewed Hendricks' petition, supplemental petition, and trial transcripts, "[h]aving inherited Hendrick's file previously worked on by at least two different Assistant Public Defenders," and (3) Hendricks' *pro se* petition and the supplemental petition filed by previous counsel adequately presented Hendricks' claims. (S.C. II 82) The trial court then granted the State's motion to dismiss. (R. XX3)

On February 15, 2005, Hendricks filed a *pro se* Motion for Adverse Judgement and Motion to Vacate Adverse Judgement. (C. 57-62) In the motion, Hendricks claimed that he did not receive notice that his post-conviction petition was dismissed until January 3, 2005, after he sent a letter to the Public Defender's Office requesting a status on the petition. (C. 58)

-14-

Hendricks attached to the motion a copy of a letter from Huge dated January 3, 2005. (C. 60) In the letter, Huge writes, "You have called and written concerning your post-conviction petition. I presented and argued your petition - - which was a successive, duplicate petition - - before Judge Holt in October of 2003. He dismissed the petition. I believe the date of the dismissal was October 15, 2003. You should have been notified by me and/or the Clerk of the Court as to the disposition of your case. I usually send a letter, but it must not have gotten to you." (C. 60)

On March 15, 2005, the trial court dismissed Hendricks' motion. (C. 55) On July 11, 2006, the Illinois Supreme Court issued a supervisory order allowing Hendricks to file a notice of appeal instanter from the dismissal of his second post-conviction petition after remand on October 15, 2003. (S.R. III 5) This appeal followed. (S.C. III 4)

**ARGUMENT**

I.    **The trial court erred in denying Jerome Hendricks'** *pro se* **motions for substitution of counsel where the motions contained detailed and specific allegations of the neglect of his case by the assistant public defenders assigned to represent him, further supported by the demonstrable neglect that the trial court witnessed over the 7-1/2 year period that the Post-Conviction Unit of the Public Defender's Office represented Hendricks.**

Jerome Hendricks filed the instant *pro se* successive post-conviction petition on April 19, 1994. (P.C. 4-16) After the trial court dismissed the petition at the second stage of proceedings, this Court vacated the dismissal and remanded the petition on November 18, 1996, after finding that appointed post-conviction counsel failed to provide reasonable assistance as required by Illinois Supreme Court Rule 651(c) (West 1994) ("Rule 651(c)"). (C. 41-43) Following remand, the trial court appointed the Post-Conviction Unit of the Public Defender's Office ("Post-Conviction Unit") to represent Hendricks. The Post-Conviction Unit exercised control over Hendricks' petition until October 15, 2003, when a 651(c) certificate was filed and the trial court granted the State's motion to dismiss. While the petition languished, Hendricks filed three *pro se* motions to remove the Public Defender's Office from his case, alleging that its attorneys were neglecting his case due to a conflict of interest. (S.C. II 31-34, 37-42, 72-78) Because the trial court was presented with overwhelming evidence that the Post-Conviction Unit was substantially mishandling Hendricks' petition, the trial court erred in denying Hendricks' motion for new counsel. Accordingly, this Court should reverse the trial court's subsequent denial of Hednricks petition and remand this cause for further proceedings with new counsel. Alternatively, this Court should remand this cause, instructing the trial court to adequately inquire into the substance of Hendricks' *pro se* motions.

-16-

A.   The trial court erred in failing to appoint Hendricks new counsel where it was glaringly apparent that the assistant public defenders from the Post-Conviction Unit were wholly neglecting Hendricks' claims of constitutional deprivations.

In the context of criminal trials, a trial court must grant a motion for new counsel upon a showing of good cause. *People v. Royark*, 215 Ill. App. 3d 255, 256, 574 N.E.2d 1211 (3rd Dist. 1991). Good cause exists when the attorney is performing deficiently. *People v. Wanke*, 303 Ill. App. 3d 772, 782, 708 N.E.2d 833 (2nd Dist. 1999).

The Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et al* (West 1994), similarly guarantees a petitioner reasonable assistance from appointed post-conviction counsel. *People v. Hardin*, 217 Ill. 2d 289, 299, 840 N.E.2d 1205 (2005). Thus, in a post-conviction setting, a trial court should appoint new counsel where post-conviction counsel is consistently unprepared and it is evident that the attorney is not complying with Rule 651(c). *See, e.g., People v. Lyons*, 46 Ill. 2d 172, 174, 263 N.E.2d 95 (1970). Although a petitioner is not entitled to the advocacy of post-conviction counsel for the purpose of "exploration, investigation[,] and formulation of particular claims," in order to substantially comply with Rule 651(c), appointed post-conviction counsel must consult with the petitioner about his complaints, examine as much of the trial transcript as is necessary to adequately present and support those claims, shape the claims into proper legal form, and present the claims before the court. *People v. Davis*, 166 Ill. 2d 149, 163-64, 619 N.E.2d 750 (1993).

Because the trial court was provided with overwhelming evidence that the attorneys from the Post-Conviction Unit were consistently unprepared to represent Hendricks and were neglecting his claims of constitutional deprivations, good cause to appoint new counsel existed. Accordingly, the trial court's refusal to do so warrants a reversal of the subsequent denial of

Hendricks' petition.

When Hendricks initially filed the instant *pro se* successive petition in April of 1994, all

of his written claims had already been raised in the direct appeal of his conviction and in a prior

post-conviction petition. (P.C. 8-11) The assistant public defender assigned to represent

Hendricks on that petition, Diane Slocum, did not amend the petition or argue on Hendricks'

behalf at the hearing on the State's motion to dismiss, but requested permission for the Public

Defender's Office to withdraw from representation, asserting that "it's not a valid petition to

begin with." (P.R. A4) The trial court granted the State's motion to dismiss the petition. (P.R.

A4) Under *People v. Hendricks*, No. 1-95-0474 (1st Dist., Nov. 18, 1996) (unpublished order

pursuant to S.Ct. R. 23), this Court vacated the trial court's dismissal and remanded the petition

for further proceedings after finding that post-conviction counsel did not comply with Rule 651.

(C. 41-43)

After the petition was remanded, before any attorney entered an appearance on

Hendricks' behalf, Hendricks filed a *pro se* "Motion for Bar Association Attorney," alleging a

conflict of interest by the continued representation of the Public Defender's Office. (S.C. II 31-

34) Hendricks' motion specifically included a statement that he had a meritorious defense. The

trial court did not rule on Hendricks' motion.

From March 17, 1997, through December 8, 1998, at least eight different assistant public

defenders requested continuances before the trial court. (R. E1-2, F1, G3, I2, J2-3, K1-3, L3,

N3-4, M1, O3) At some point during the course of these continuances, Assistant Public

Defender Jerry Namini acquired primary responsibility for Hendricks' representation. The record

reflects that, by at least as early as January 14, 1998, Hendricks was orally informing Namini of

-18-

claims and witnesses that he wished to present. On that day, Assistant Public Defender Brendan

Max requested a continuance on Namini's behalf, indicating that Namini was investigating the

case, had received the trial transcripts, and planned on filing a supplement. (R. J2)  Max

requested another continuance on May 29, 1998, indicating that Namini had identified three post-

conviction issues. (R. L3)

On January 20, 1999, Namini appeared before the trial court, confirming that Hendricks

was providing him with issues to investigate and indicating that he was attempting to locate

witnesses. (R. P3)  Namini planned to meet with Hendricks again to reduce the issues to viable

ones and would then either be ready to argue or file a supplement. (R. P3)  Nine months later, on

September 1, 1999, Namini indicated that he had determined that three issues warranted further

investigation and potential inclusion into a supplemental petition. (R. S3)  On November 2,

1999, Namini indicated that he was "in the process of writing a supplement" after finalizing the

issues in the case. (R. T5)  However, because he had been transferred out of the Post-Conviction

Unit, he had not been able to dedicate as much time as he wanted toward the case. (R. T5)  The

trial court continued the case for one month so that Namini could complete the supplemental

petition. (R. T5-6)

On November 23, 1999, Hendricks filed his second *pro se* "Motion for Appointment of

Counsel." (S.C. II 37-42)  Hendricks alleged that Namini had not been working on his case in

the two years that he had been assigned to represent Hendricks, but that Namini was now going

to the trial court and rushing the case along without having put anything together. (S.C. II 40)

The supplemental petition that Namini was preparing was never presented to the trial

court.  On January 11, 2000, Namini informed the trial court that Hendricks provided him with

-19-

more claims necessitating investigation and he could not finalize the case. (R. X3) Instead, Namini transferred Hendricks' petition to Marienne Branch. (R. X3)

Branch's appointment to represent Hendricks lasted from January of 2000 until May of 2002. Unlike Namini, Branch never indicated that she was consulting with Hendricks and investigating his claims. Indeed, the only substantive document that Branch filed during her period of representation was a "Supplemental Post-Conviction Claim Under *Apprendi v. New Jersey*." (S.C. II 48-50) Less than two months after she filed this claim, Branch determined that the claim had been rendered moot by a case decided around the same time that the claim was filed. (S.C. II 76)

On January 31, 2002, Hendricks filed his third *pro se* motion to appoint counsel outside the Public Defender's Office. (S.C. II 48-50) In the motion, Hendricks acknowledged that the petition he filed was barred by *res judicata*, but claimed that he did have meritable claims to present in an amended petition. (S.C. II 73) Hendricks had explained the situation to Slocum, the attorney who represented him prior to remand. (S.C. II 73) However, Slocum did not prepare an amended petition including his claims. (S.C. II 73) Hendricks asserted that he was currently trying to explain Slocum's error to Branch and requesting that Branch prepare an amended petition on his behalf, but she refused to do so. (S.C. II 74) Ultimately, Branch was doing nothing for Hendricks' case. (S.C. II 74)

On May 24, 2002, the trial court denied Hendricks' motion to appoint new counsel. (R. PP3) However, because Hendricks' allegations of neglect were confirmed by Branch's own oral assertions that she was not complying with Rule 651(c), the trial court's refusal to appoint new counsel was erroneous.

-20-

Here, the very reason that Hendricks' post-conviction petition appeared a second time before the trial court was because Hendricks did not previously receive the assistance of counsel guaranteed by the Post-Conviction Hearing Act. (C. 41-43) Yet, when Branch was first assigned to the petition following Namini's departure, she adopted a position similar to that of Slocum prior to the remand, believing that she did not need to consider any of Hendricks' substantive constitutional claims until the procedural problems with his petition were resolved. In his motion for new counsel, Hendricks described a phone conversation that occurred between himself and Branch of November 20, 2001. (S.C. II 74) In that conversation, Hendricks had requested that Branch look over some issues and put them forth in an amended petition. (S.C. II 74) Hendricks claimed that Branch told him that she did not have to prepare a petition on Hendricks' behalf, explaining that it would be "a waste of time" because he had already submitted the *pro se* petition. (S.C. II 74)

Hendricks also attached to his motion a letter from Branch dated November 26, 2001. (S.C. II 77-78) In the letter, after apologizing to Hendricks for her behavior during a recent phone conversation, Branch writes:

> Finally, you must accept responsibility for any errors you made in filing. The rules governing this are spelled out clearly for inmates. A post-conviction addresses issues that were **not** addressed on appeal. Your first (and second) post-conviction(s) merely repeat issues from the appeal of your trial. Because you did not make any other claims, there is, quite simply, nothing to work with.
> (S.C. II 77) (Emphasis in original.)

Branch admitted her initial misunderstanding as to her role as appointed post-conviction counsel to the trial court at the hearing regarding Hendricks' motion for new counsel. After the trial court had already denied Hendricks' motion, the trial court asked Branch why they had been

-21-

continuing the case if it was "not for the purpose of familiarizing yourself with the record?" (R.

PP6) Branch offered:

> Your Honor, I was not aware of the mandate of the Appellate Court from the beginning. That was not clear from the file I inherited and so I spent a lot of time doing other things in the case that were not germane to getting it to the 651C filed immediately.
>
> \* \* \*
>
> And then, Your Honor, I proceeded as a successor petition and I was preparing the case as a successor petition which wouldn't necessitate me reading the transcript until the Court ruled on whether his defense to appear successor or his reasoning for filing successor petition was ruled on by the Court.
>
> \* \* \*
>
> ...When I understood the mandate I talked to my supervisor, I talked to my chief and we came in here and we talked to you and you said this is what the Appellate Court said and so it cannot be treated like a successor petition. I have to read it and that changes the whole structure of the case, the way I would handle it.
> (R. PP6-8)

Branch's position of refusing to consider any substantive claims until Hendricks'

"defense to appear successor" was ruled on by the trial court did not allow Branch to provide

Hendricks with reasonable representation. Under Rule 651(c), Branch was required to meet with

Hendricks to ascertain his contentions and file an amended petition including those claims that

were meritable. *People v. Hawkins*, 44 Ill. 2d 266, 298-99, 255 N.E.2d 456 (1970). In order to

provide reasonable assistance, post-conviction counsel must submit the petitioner's substantive

claims to the State to give the prosecutor the chance to determine whether they are sufficient to

merit the State's waiver of the procedural default. *People v. Bashaw*, 361 Ill. App. 3d 963, 968-

69, 838 N.E.2d 972 (2nd Dist. 2005), citing *People v. Landers*, 215 Ill. 2d 577, 584-85, 831

N.E.2d 596 (2005).

Here, because the written claims in Hendricks' *pro se* petition were barred by *res*

*judicata*, Hendricks' actual constitutional claims could only survive through placement in an

-22-

amended petition. At that time, the State could determine if it wished to challenge the procedural

defects in the petition. Yet, Branch asserted her initial belief that she did not need to consider

any of Hendricks' claims until after the procedural matters were resolved. Thus, the trial court

was presented with specific evidence that Branch was engaging in an unreasonable form of

representation.

Moreover, even after Branch learned of the appellate court mandate and remand, it did

not amount to a turning point in the Post-Conviction Unit's representation of Hendricks. Instead,

Branch continued to mishandle Hendricks' petition. In fact, Branch had previously expressed to

the trial court the "problems" that the remand had caused in the Post-Conviction Unit.

On February 20, 2002, less than one month after Hendricks filed his motion for new

counsel, Branch requested a continuance so that she could read the trial transcript, which she

asserted to be between 800 and 1,200 pages. (R. NN3) Branch explained the turmoil that the

remand of Hendricks' petition had caused in her office:

> ...Then he came back on a successor petition with the same four claims [as had been
> raised on direct appeal and in the first post-conviction petition], and the assistant
> public defender from our unit pointed this out to the court and the court said
> dismissed. That went on appeal and the Appellate Court sent it back saying that Mr.
> Hendricks had a right to have an attorney help him draft a petition. And that's posed
> some problems in my office because that's not the way we read the statute. Although
> we do understand we have to obey the Appellate Court mandate. So that's the
> position we're in.
>
> As the successor [*sic*] petition I believe that I could have, not could but could have
> done this matter awhile back. But because I have to, according to the Appellate
> Court mandate, read the transcript and search for issues and talk to him about that
> and then do the regular things I would do, I do need a three month continuance.
> (R. NN4-5)
>
> Contrary to Branch's understanding, she did not need to pore over Hendricks' transcript

blindly in order to develop potentially cognizable constitutional deprivations. Instead, as Hendricks' appointed post-conviction counsel, Branch needed to consult with Hendricks to ascertain his claims, read as much of the transcript as necessary to present those claims, and shape the claims into a legally cognizable form so that the trial court could determine the merits of the claims. *Davis*, 166 Ill. 2d at 163. These basic duties enumerated in Rule 651(c) were required of Branch simply by virtue of being appointed to represent Hendricks at the second stage of proceedings. Yet, Branch never indicated that she was meeting with Hendricks or listening to his claims. Instead, the only evidence before the trial court was Hendricks' claim that Branch refused to listen to him, which was directly supported by the letters from Branch and the representations Branch orally made before the court.

Moreover, for whatever reason, it was patently apparent to the court that Branch was grossly neglecting Hendricks' petition, failing to familiarize herself with even the basics of her client's case. Branch admitted to the trial court before and after it denied Hendricks' motion that she had not read Hendricks' trial transcript. (R. NN3, PP5) Two other significant points should have stood out to the trial court. First, in the November 20, 2001 phone conversation described by Hendricks in his motion for new counsel, Hendricks claimed that Branch incorrectly told him "that 'I (Plaintiff) stated that I did this.'" (S.C. II 74) Hendricks then told Branch that she should review the trial records because he had not made such a statement. (S.C. II 74) In response, Branch told Hendricks to "shut up," that she knew he committed the murder, that the crime was awful, and that he did not have a leg to stand on appeal. (S.C. II 74) Indeed, at no stage of the prosecution did the State offer any evidence suggesting that Hendricks confessed to killing the decedent, but only that Hendricks admitted to having sex with the decedent and leaving her in the

-24-

garage where the intercourse occurred. The order from the direct appeal also states, "Defendant denied killing, raping or secretly confining the girl." (S.C. I 11) At the very least, Branch should have read the decision of the Appellate Court regarding the precise claims Hendricks raised in the written petition to which Branch was appointed.

Also, in February of 2002, after Hendricks filed his motion to remove Branch, Branch needed to ask the trial court to remind her what sentence Hendricks had received while seeking to obtain yet another continuance. (R. NN4) Notably, this discussion occurred after Branch had filed a supplemental *Apprendi* claim alleging that Hendricks' natural life sentence was void. (S.C. II 49) The fact that Branch had been assigned to Hendricks' case for over two years and could not recall that her client was serving a sentence for his natural life in prison is significant. Yet, this fact was not even acknowledged by the trial court in its determination of Hendricks' motion to remove Branch from his case.

Despite the girth of evidence that Branch was neglecting and mishandling Hendricks' case, the trial court denied Hendricks' motion. Notably, the Post-Conviction Unit did not object to Hendricks' motion, but only requested to "be heard" after the trial court denied the motion. (R. PP4) Branch stated, "my office had talked about this with my supervisor and we did not oppose Mr. Hendricks' motion because based on the documents you've just perused, Your Honor, Mr. Hendricks seems to misunderstand this process but we also believe that this misunderstanding is based in part on some prior history of the case. As regards to my office." (R. PP4) The trial court then explained that: (1) Hendricks did not have the constitutional right to counsel; and (2) the trial court believed that changing counsel at that stage would only exacerbate the delay. (R. PP4) Yet, although Hendricks did not have a constitutional right to

-25-

counsel in post-conviction proceedings, the Post-Conviction Hearing Act does afford a statutory right to counsel to an indigent petitioner whose post-conviction petition is not summarily dismissed. *Bashaw*, 361 Ill. App. 3d at 967. Here, Hendricks was not receiving the reasonable assistance guaranteed to him by statute.

Moreover, the Post-Conviction Unit had been appointed to represent Hendricks for over six years, and Branch had failed to even minimally comply with Rule 651(c) in the 2-1/2 years that she had been assigned to the case. Branch had yet to perform any of the requirements of Rule 651(c); she still needed to consult with Hendricks to ascertain his claims, read the relevant portions of the transcript, and shape Hendricks' claims into a legally cognizable form. In fact, just two days earlier, on May 22, 2002, Branch indicated that she had not been able to "comply with the Appellate Court mandate" because "personal difficulties" prevented her from being at work. (R. OO3-4) Contrary to the trial court's belief, new counsel could have brought Hendricks' post-conviction petition to resolution in at least as timely a fashion as the Post-Conviction Unit. (R. NN4-5)

After the trial court denied Hendricks' motion for new counsel, Hendricks' petition languished for more than 16 months before coming to resolution. Moreover, the petition was resolved without the submission of any further substantive document or argument on Hendricks' behalf. (R. XX3)

After the trial court's denial of Hendricks' motion for substitute counsel, Branch never again appeared before the trial court. Assistant Public Defender Lindsay Huge entered his first appearance on March 13, 2003. (R. SS5) The trial court hesitantly granted Huge a 30-day continuance, noting, "If it isn't filed then, the next continuance will be for two weeks. And if it

-26-

isn't filed then, the next continuance will be for a week. And if it isn't filed then, you will be held day to day until it is filed." (R. SS6) To an attorney newly assigned to the case, two significant points of the trial court's admonition would stand out. First, the trial court did not leave open an option for Huge to meet with Hendricks, ascertain his claims of constitutional violations, and prepare a supplemental or amended petition on his behalf, but instead demanded that Huge file a 651(c) certificate. (R. SS6) Even if Huge understood that he could still present Hendricks' constitutional claims to the court, the time limits imposed by the trial court would thwart those efforts significantly, for Huge would not want to be "held" in contempt, particularly where the delay was attributable to the malfeasance of the attorneys assigned to the case before him.

Ultimately, on July 30, 2003, Huge indicated, "I have a 651 petition [*sic*] on file in this case. We'll stand on the post-conviction petition." (R. WW2) The State was not then present, so the matter was continued to October 15, 2003, when the trial court accepted the 651(c) certificate. (R. WW2-4) In the certificate, Huge asserts that: (1) he consulted with Hendricks by mail and ascertained his contentions; (2) "[h]aving inherited Hendrick's [*sic*] filed previously worked on by at least two different Assistant Public Defenders," he reviewed the petition, supplemental petition, and transcripts; and (3) the petition and supplemental petition adequately presented Hendricks' claims. (S.C. II 82) Although Rule 651(c) provides that post-conviction counsel may demonstrate compliance by filing a certificate to that effect, the filing of the certificate creates only a presumption of compliance that can be rebutted by the record. *People v. Johnson*, 232 Ill. App. 3d 674, 678, 597 N.E.2d 1258 (5th Dist. 1992). Here, the record certainly rebuts any presumption that Huge, or the assistant public defenders who came before him,

-27-

complied with the requirements of Rule 651(c).

First, Huge's oral representations to the trial court directly rebut his written statement that he consulted with Hendricks by mail and ascertained his contentions. On May 21, 2003, Huge indicated, "I have gone through everything, and I have the 651 certificate ready to file. However, I haven't - - I have written him a letter. I'd like the chance to get some communication back from him. I can tell him about the recent Supreme Court case on Apprendi. And so what I'm saying, I don't think I have fully communicated with him." (R. UU3) Although Huge indicated that he wanted to "fully" communicate with Hendricks before filing the certificate, Huge also asserted in the 651(c) certificate ready to be filed that he had already examined the record and determined that Hendricks' constitutional claims were adequately presented. Without a consultation with Hendricks, Huge could not legitimately assert that the existing petitions adequately presented Hendricks' claims.

Huge also indicated in his 651(c) certificate that the *pro se* petition and supplemental petition adequately presented Hendricks' claims of constitutional deprivation. The only supplemental petition ever filed in this case contained an *Apprendi* claim filed by Branch on June 25, 2001. (S.C. II 48-50) However, on August 13, 2001, Branch informed Hendricks that a case decided on June 22, 2001 rendered the claim moot. (S.C. II 76) Moreover, Branch admitted in May of 2002, almost a year after the supplemental claim was filed, that she still had not reviewed Hendricks' trial transcripts. Therefore, the two petitions which Huge asserted adequately presented Hendricks' claims included Hendricks' *pro se* motion containing claims that were barred by *res judicata* and a supplemental petition that was filed, without the benefit of the trial record, three days after a decision was entered that the attorney conceded rendered the claim

-28-

moot.

Most importantly, Huge never indicated to the trial court orally or in writing that he reviewed the supplemental petition that Namini had begun, or followed up with Namini's investigation based on the claims and witnesses that Hendricks provided to Namini. Namini informed the trial court that he determined that there were at least three viable claims, plus additional claims that he did not have time to investigate. (R. S3, X3) These additional claims were not included in the petitions relied on by Huge, the *pro se* petition and the *Apprendi* claim.

The lasting effect of the Post-Conviction Unit's failure to preserve Hendricks' claims of constitutional deprivation in the 7-1/2 years in which it maintained control over those claims cannot be understated. The Post-Conviction Hearing Act requires that petitions be filed within six months after the denial of a petition for leave to appeal a decision on direct appeal or within three years from the date of conviction, whichever is sooner. 725 ILCS 5/122-1(c) (West 1994). Hendricks was convicted in 1991 and his conviction was affirmed on direct appeal in 1993. When Hendricks filed this petition, in 1994, he was well within the prescribed statutory guidelines. Yet, now, if Hendricks attempts to file another petition, the State will have the affirmative defense of untimeliness at its disposal, and Hendricks will need to prove that the delay in filing is not due to his culpable negligence. 725 ILCS 5/122-1(c) (West 1994). Additionally, because Hendricks has already filed two post-conviction petitions, any successive petition that he files will have to allege actual innocence or satisfy the cause and prejudice test. 725 ILCS 5/122-3 (West 1994). These are significant procedural hurdles that will be difficult for a *pro se* litigant to overcome.

Ultimately, even though the record leaves doubt as to whether Hendricks ever received

reasonable assistance under Rule 651(c), the resolution of this matter does not hinge upon this issue. Instead, the focus is on Hendricks' rights. Hendricks alerted the trial court to the neglect and mistreatment of his case by the Post-Conviction Unit, as well as the fact that he had constitutional claims that were not being presented to the court. Every assertion contained in Hendricks' motion was confirmed by the oral representations of the assistant public defenders themselves. Good cause existed to remove the Post-Conviction Unit from Hendricks' case and appoint Hendricks new counsel who would not neglect his case, but would treat his petition in the manner required under Rule 651(c). Because the trial court refused to do so, and because it appears that the Post-Conviction Unit disregarded the claims that Hendricks wished to present, Hendricks presented the trial court with good cause to appoint new counsel. *Royark*, 303 Ill. App. 3d at 782. Accordingly, this Court should vacate the trial court's denial of his petition and remand for further proceedings with reasonable counsel. *Lyons*, 46 Ill. 2d at 174.

    B.    <u>In the alternative, this Court should remand this case with instructions to the trial court to make adequate inquiries into Hendricks' *pro se* motion for counsel other than the Public Defender's Office.</u>

Where a defendant files a detailed *pro se* motion alleging that he has not received reasonable assistance of counsel, the trial court must conduct an adequate inquiry into the defendant's allegations. *See People v. Moore*, 207 Ill. 2d 68, 78, 797 N.E.2d 631 (2003) (holding that a trial court must inquire where a defendant files a sufficiently detailed *pro se* motion alleging ineffectiveness of trial counsel). When a defendant presents a *pro se* claim of ineffective assistance of counsel the trial court must examine the factual matters underlying the defendant's claim. *Moore*, 207 Ill. 2d at 77-78. In so doing, the trial court may: (1) ask counsel about the facts and circumstances related to the defendant's allegations; (2) ask the defendant for more

-30-

specific information; or (3) rely on its own knowledge of counsel's performance. *Id.* at 78-79;
*People v. Milton*, 354 Ill. App. 3d 283, 292, 820 N.E.2d 1074 (1st Dist. 2004). Whether or not
the trial court made an adequate inquiry is a legal question subject to *de novo* review. *People v.
Smith*, 191 Ill. 2d 408, 411, 732 N.E.2d 513 (2000).

Although *Moore* pertained to a motion for a new trial based on ineffective assistance of
counsel made by a defendant in a trial setting, Hendricks maintains that the same method of
inquiry is available here, where Hendricks, an incarcerated individual in a post-conviction
proceeding who has a right to conflict-free and reasonable assistance of counsel, alerted the trial
court on three occasions that these rights were being compromised. *See People v. Hardin*, 353
Ill. App. 3d 522, 818 N.E.2d 1246 (2nd Dist. 2004) (holding that a trial court has a duty to
inquire into the nature of a petitioner's *pro se* claims of a conflict of interest when presented at an
early stage in the proceedings). Unlike a post-trial motion involving trial counsel, when
Hendricks alerted the court to counsel's performance here, there had been no substantive
decision on his case, and therefore the trial court could have appointed alternative counsel
without reversing any of its prior decisions.

Here, the trial court did not adequately employ any of the three methods delineated in
*Moore*. Nor did the trial court even make the minimal inquiry required by *Hardin*. The trial
court did not consider Hendricks' first motion and denied his second motion without inquiry or
explanation. (R. CC3) When Hendricks presented his third motion to the trial court, the trial
court again initially denied the motion without inquiry or explanation. (R. PP3) Post-conviction
counsel then requested to be heard and indicated that the Post-Conviction Unit of the Public
Defender's Office did not oppose the motion. (R. PP4) Yet, the trial court maintained its denial

-31-

of the petition on the grounds that Hendricks did not have a constitutional right to counsel and because it believed that appointing new counsel would only exacerbate the delay.

The trial court failed to comply with the mandates of *Moore*. First, the trial court did not ask counsel about the facts underlying Hendricks' claims, but instead ignored Branch when she indicated that the Post-Conviction Office did not oppose Hendricks' motion and her admission that she had not even read the trial record in the years to which she had been assigned to the case. Second, the trial court never asked Hendricks for a further explanation of his claims. Finally, the court obviously ignored his own knowledge of the performance of the Public Defender's Office. At the time of Hendricks' final motion, six years had elapsed since Hendricks' petition was remanded. This fact alone is *prima facie* evidence that counsel's assistance was presumptively unreasonable. Moreover, as explained in Argument IA, *supra*, the trial court had expressed its own concern and dissatisfaction with the demonstrable neglect occurring before it. The trial court never once considered Hendricks' contentions of a conflict of interest or that his claims of constitutional deprivations were being disregarded by the Public Defender's Office.

It is apparent from a review of the record that the trial court failed to conduct some type of inquiry into the underlying factual basis of Hendricks' *pro se* claims as required by the rule expressed by the Illinois Supreme Court in *Moore*. *Moore*, 207 Ill. 2d at 79. The trial court could only make a reasoned determination of the merits of Hendricks' motions after an investigation into whether Hendricks provided the assistant public defenders with claims, and whether the assistant public defenders were neglecting those claims. Accordingly, even if this Court does not reverse the denial of Hendricks' petition, at the very least, this Court should remand this matter to the trial court for the required preliminary inquiry into his claims and the

-32-

appointment of alternative counsel to look into the merits of his *pro se* motions. See *Moore*, 207 Ill. 2d at 78 (2003) ("if the allegations [in the defendant's *pro se* post-trial motion] show possible neglect of the case, new counsel should be appointed" for a hearing on the motion).

### C.    Conclusion

Here, over the seven years that the Post-Conviction Unit was appointed to represent Hendricks, and, more specifically, the six years that elapsed prior to the trial court's last denial of Hendricks' request for substitute counsel, the trial court was continually told by the attorneys from the Post-Conviction Unit that they were not prepared to present anything on Hendricks' behalf. The demonstrated inadequacies in the representation of Hendricks and the expressed displeasure of the attorneys in their appointment to Hendricks' petition should cause this Court concern. This Court should reverse the trial court's denial of Hendricks' post-conviction petition, allowing Hendricks the basic right to be reasonably represented by new counsel. At the very least, this Court should remand this matter with instructions to the trial court to engage in the required preliminary inquiry into Hendricks' *pro se* claims of neglect.

**II.    Jerome Hendricks' consecutive sentences of a 30-year term, 15-year term, and a 5-year term are void because the trial court imposed these sentences along with the current sentence of natural life for murder; therefore, this Court should modify the sentences to run concurrently with the natural life term.**

Jerome Hendricks is currently serving a term of natural life for murder. (S.C. I 23)

Along with the sentence for murder, the trial court imposed sentences of 30 years for aggravated

criminal sexual assault, five years for concealment of a homicidal death, and 15 years for

aggravated kidnaping, to run concurrently with each other but consecutive to the natural life

sentence. (S.C. I 23)   Recently, the Illinois Supreme Court held that any additional sentences

running consecutively to a natural life sentence are void and may only be imposed to run

concurrently to the sentence for natural life. *People v. Palmer*, 218 Ill. 2d 148, 167-70, 843

N.E.2d 292 (2006); *accord People v. Dixon*, 2006 Ill. App. LEXIS 425, *18 (May 30, 2006).

Thus, this Court should vacate the consecutive nature of Hendricks' sentences and modify all of

his sentences to run concurrently.

Because this issue is one of statutory interpretation, it is subject to *de novo* review.

*Palmer*, 218 Ill. 2d at 154.   Although this issue was not raised in the underlying post-conviction

petition, a void order may be attacked at any time and in any court. *People v. Thompson*, 209 Ill.

2d 19, 25, 805 N.E.2d 1200 (2004).

In *Palmer*, the trial court sentenced the defendant to seven consecutive terms of natural

life after adjudging him a habitual criminal. *Palmer*, 218 Ill. 2d at 151.   The appellate court

reversed the seven consecutive natural-life sentences and sentenced the defendant to one term of

natural life. *Id.* at 154.   The Supreme Court granted the State's petition for leave to appeal to

consider whether it was proper for the trial court to impose consecutive natural-life sentences.

-34-

In its analysis, the Supreme Court first noted that although the defendant qualified for consecutive sentences under section 5-8-4(a) of the Unified Code of Corrections, this section did not apply. *Id.* at 164-65. Instead, the Court applied both natural law and the plain meaning of "consecutive" to determine that consecutive natural-life sentences are inappropriate. *Id.* at 164-165. The Court noted that the plain meaning of "consecutive" mandates that a defendant serve consecutive sentences in sequence, one right after the other. *Id.* at 167. However, the Court further noted the obvious fact that at the end of a sentence of natural life, the defendant's life is over. *Id.* The Court then deduced that the total amount of time served by a defendant sentenced to natural life would never be more than the defendant's life. *Id* at 168. Thus, since a defendant cannot serve natural-life sentences consecutively, natural-life sentences must be imposed concurrently. *Id.* at 169-70.

In *Dixon*, this Court held that the rationale of *Palmer* applies also to additional terms of years imposed consecutively to a natural-life sentence. *Dixon*, 2006 Ill. App. LEXIS at *17-18. Thus, the Court ordered that the defendant's 30-year sentence for armed robbery must run concurrently to his natural life sentence for murder. *Id.*

Accordingly, under *Palmer* and *Dixon*, Hendricks' consecutive sentences are void and all of the sentences imposing terms of years must be modified to run concurrently.

-35-

**III.    The holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), applies retroactively to invalidate Jerome Hendricks' natural-life sentence because the rule either effected a substantive change in Illinois law or it constituted a "watershed" rule under *Teague v. Lane*, 489 U.S. 288 (1989).**

On August 26, 1991, the trial court sentenced Jerome Hendricks for first degree murder, which at the time carried a sentence of 20 to 60 years' imprisonment. (S.C. I 23) Ill. Rev. Stat., ch. 38, sec. 1005-8-1(a)(1) (West 1988 and West 1991). The trial court sentenced Hendricks to an extended-term sentence of natural life in prison, which he is still serving. (S.C. I 23) This sentence was based on the trial court's finding that the murder was exceptionally brutal and heinous under Ill. Rev. Stat., ch. 38, sections 1005-8-2(1) and 1005-5-3.2(b)(2) (1991). (Tr. R. 1713-14)

Because the facts that increased Hendricks' sentence beyond the prescribed statutory maximum were not required to be pled before trial, or proven beyond a reasonable doubt, Hendricks' natural-life sentence is invalid under the rule announced in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). *See People v. Swift*, 202 Ill. 2d 378, 392, 781 N.E.2d 292 (2002) (extended-term sentence based on trial judge's factual finding that defendant's crime was brutal or heinous violates *Apprendi* and cannot stand); *Blakely v. Washington*, 542 U.S. 296, 303-304 (2004) (for purposes of the Sixth Amendment right to trial by jury, as interpreted in *Apprendi*, the "statutory maximum sentence" is the maximum sentence the judge may impose based on facts reflected in the jury's verdict or admitted by the defendant). Accordingly, Hendricks' natural-life sentence should be vacated, provided that the *Apprendi-Blakely* rulings may be applied retroactively in these post-conviction proceedings.

Hendricks recognizes that the Illinois Supreme Court has held that *Apprendi* does not

-36-

apply retroactively to cases in which the direct appeal was final before *Apprendi* was decided. *People v. De La Paz*, 204 Ill. 2d 426, 434, 791 N.E.2d 489 (2003); *see also Lucien v. Briley*, 213 Ill. 2d 340, 347-348, 821 N.E.2d 1148 (2004) (applying *De La Paz* to reverse circuit court order holding extended-term statute unconstitutional under *Apprendi* and granting defendant's habeas corpus petition). However, the question of whether *Blakely* is a new rule and, if it is, whether it applies retroactively on collateral review, is now pending before the United States Supreme Court in *Burton v. Waddington*, No. 05-9222, 2006 U.S. LEXIS 4352 (petition for certiorari granted June 5, 2006). Therefore, Hendricks is making these arguments to preserve his *Apprendi* claim for further review.

Whether the rule of *Apprendi* applies retroactively is a question of law, and therefore, this Court's review is *de novo*. *See Lucien*, 213 Ill. 2d 340 at 343. Because an *Apprendi* claim was raised below in a supplemental petition (S.C. II 49-50) and summarily denied by the trial court, this Court's review is *de novo*. *People v. Coleman*, 358 Ill. App. 3d 1063, 1065-66, 835 N.E.2d 387 (3rd Dist. 2005).

A.     *Apprendi* effected a substantive change in Illinois law and therefore should be given full retroactive effect.

In *Apprendi*, the Supreme Court held that any fact, other than a prior conviction, that increases the penalty for an offense beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490. The Supreme Court based this holding on the due process clause and the jury trial guarantee of the Fifth and Sixth Amendments to the U.S. Constitution, U.S. Const., amends. V, VI, XIV. *Apprendi*, 530 U.S. at 476, 484. The Supreme Court also suggested that facts relied on to impose an extended-term

-37-

sentence must be pled before trial to comport with the notice guarantee of the Sixth Amendment, U.S. Const., amends. VI, XIV. *Apprendi*, 530 U.S. at 476, 489 n. 15. Thus, in *Apprendi*, the Supreme Court created a new rule of constitutional law in criminal cases.

A new rule of constitutional law will apply retroactively to criminal cases pending on direct review at the time the new rule was announced. *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987). As for criminal cases where the conviction is final, retroactive application depends on whether the new rule is procedural or substantive. The Illinois Supreme Court has adopted the federal retroactivity doctrine described in *Teague v. Lane*, 489 U.S. 288 (1989), to determine whether a new constitutional rule will apply retroactively in Illinois post-conviction proceedings. *People v. Flowers*, 138 Ill.2d 218, 237, 561 N.E.2d 674 (1990).

Under *Teague*, when a Supreme Court decision announces a "new rule" of criminal procedure that did not exist at the time a criminal defendant's direct appeal became final, that rule will only be applied in collateral proceedings under limited circumstances. First, rules that pertain to substantive matters generally apply retroactively. This includes decisions that narrow the scope of a criminal statute by interpreting its terms, *see Bousley v. United States*, 523 U.S. 614, 620-621 (1998), as well as constitutional determinations that place particular conduct or persons covered by a statute beyond the State's power to punish, *see Saffle v. Parks*, 494 U.S. 484, 494-495 (1990); *Teague*, 489 U.S. at 311. Substantive rules apply retroactively "because they 'necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal' or faces a punishment that the law cannot impose upon him." *Schriro v. Summerlin*, 542 U.S. 348, 352 (2004) (quoting *Bousley*, 523 U.S. at 620) (internal quotation omitted). The second *Teague* exception permits retroactive application of those "watershed rules

-38-

of criminal procedure" that implicate the fundamental fairness and accuracy of a criminal proceeding. *Teague*, 489 U.S. at 311-312.

In *De La Paz*, the petitioner did not argue, and the Illinois Supreme Court did not consider, whether the new rule in *Apprendi* effected a substantive change in Illinois law. Rather, the Court decided that the rule of *Apprendi* did not fall within the second *Teague* exception. *De La Paz*, 204 Ill. 2d at 434- 439. Moreover, in *Lucien*, the Court did not address the precise argument detailed below. *Lucien*, 213 Ill. 2d at 347-48. Accordingly, the decisions in *De La Paz* and *Lucien* do not resolve this issue, especially in light of the U.S. Supreme Court's discussion of retroactivity in a case decided after *De La Paz*.

In *Summerlin*, the U.S. Supreme Court considered the retroactive application of its previous decision in *Ring v. Arizona*, 536 U.S. 584 (2002), which had applied *Apprendi* to Arizona's capital sentencing scheme. The Court concluded that the new rule in *Ring* was not substantive, as "the range of conduct punished by death in Arizona was the same before *Ring* as after." *Summerlin*, 542 U.S. at 354. Even before *Apprendi*, Arizona's Supreme Court had long required aggravating factors to be proven beyond a reasonable doubt before a defendant could be found eligible for the death penalty. *Summerlin*, 542 U.S. at 351, n.1. As the Arizona Supreme Court stated: "*Ring* changed neither the underlying conduct that the state must prove to establish that a defendant's crime warrants death nor the state's burden of proof; it affected neither the facts necessary to establish Arizona's aggravating factors nor the state's burden to establish the factors beyond a reasonable doubt. Instead, *Ring* altered *who* decides whether any aggravating circumstances exist, thereby altering the fact-finding procedures used in capital sentencing hearings." *State v. Towery*, 204 Ariz. 386, 391, 64 P. 3d 828 (2003) (cited in *Summerlin*, 542

U.S. at 354-355) (emphasis supplied).

By contrast, the Illinois Supreme Court has held that the new rule in *Apprendi* went beyond merely changing "who decides" whether an aggravating circumstance exists; it effected a substantive change in Illinois law by effectively establishing a new enhanced offense of murder. *People v. Swift*, 202 Ill. 2d 378, 392, 781 N.E.2d 292 (2002). Thus, the range of conduct punished by a natural-life sentence in Illinois is not the same now as it was before the decisions in *Apprendi* and *Swift*. At the time of Hendricks' trial and sentencing, it was well-established that the aggravating factors for natural-life sentencing were not elements of the offense and were not required to be pleaded or proven at trial. *People v. Peddicord*, 85 Ill. App. 3d 414, 418, 407 N.E.2d 89 (3d Dist. 1980). See *also Swift*, 202 Ill. 2d at 384 (burden of proof for aggravating factors used in extended term sentencing provision was "merely a preponderance of the evidence, not proof beyond a reasonable doubt"); *People v. Williams*, 90 Ill. App. 3d 524, 527, 413 N.E.2d 60 (1st Dist. 1980) (aggravating factors [in the extended-term provision of section 5-5-3.2] are not necessary elements of the crime charged and need not be alleged in the indictment or proved at trial). After *Apprendi*, however, the Illinois Supreme Court recognized that aggravating factors that make a defendant eligible for an extended-term or natural-life sentence are "'by definition "elements" of a separate legal offense.'" *People v. Jackson,* 199 Ill. 2d 286, 296, 796 N.E.2d 21 (2002) (quoting *Apprendi*, 530 U.S. at 483, n.10).

In this way, the new rule in *Apprendi* has modified the elements of the offense for which Hendricks was convicted and sentenced. This amounts to a substantive change in Illinois law that should be given full retroactive effect. This Court should decline to follow the decisions in *De La Paz* and *Lucien* because they did not address the arguments advanced here. Accordingly,

-40-

the retroactivity principles of *Teague* do not prevent application of *Apprendi* to Hendricks' post-conviction case. Hendricks recognizes that this Court very recently rejected the arguments presented here. *See People v. Kelley*, No. 1-04-2600, ___Ill. App. 3d ___ (1ˢᵗ Dist., June 23, 2006). However, as noted, Hendricks is raising this issue to preserve his *Apprendi* claim for further review pending the resolution of the retroactivity question in *Burton v. Waddington*, No. 05-9222, 2006 U.S. LEXIS 4352 (petition for certiorari granted June 5, 2006).

B. *Apprendi's* requirement that aggravating factors that increase the maximum penalty must be proven beyond a reasonable doubt applies retroactively under *Teague's* exception for rules that implicate the fundamental fairness and accuracy of criminal proceedings.

In *Teague*, the Court held that new rules that constitute a "watershed rule of criminal procedure," would be excepted from the general non-retroactivity rule. 489 U.S. at 311-312. Such rules require "observance of 'those procedures that . . . are "implicit in the concept of ordered liberty." *Teague v. Lane*, 489 U.S. 288, 311 (1989). As the plurality explained in *Teague*, "watershed" rules come about when "'time and growth in social capacity, as well as judicial perceptions of what we can rightly demand of the adjudicatory process, . . .alter our understanding of the bedrock procedural elements that must be found to vitiate the fairness of a conviction.'" *Teague*, 489 U.S. at 311. In addition, to qualify for this exception, the new rule must "significantly improve the preexisting fact-finding procedures," which the Court explained narrows the scope of the exception to "those new procedures without which the likelihood of an accurate conviction is seriously diminished." *Id.* at 312, 313. To the extent that *Apprendi's* effect on Illinois law was procedural rather than substantive, *Apprendi's* holding that factual findings, which increase the maximum punishment for an offense, must be treated as elements of

a greater offense and thus must be proven beyond a reasonable doubt is a watershed rule.

The language used by the U.S. Supreme Court in *Apprendi* shows that the second exception in *Teague* should apply. At the beginning of the decision, the Court noted that "[a]t stake in this case are constitutional protections of surpassing importance." *Apprendi*, 530 U.S. at 476. Justice O'Connor, writing in dissent, stated that the new rule announced in *Apprendi* was "a watershed change in constitutional law." *Apprendi*, 530 U.S. at 524 (O'Connor, J., dissenting). Also, by requiring a jury finding of proof beyond a reasonable doubt for "sentencing factors" that increase the sentence beyond the statutory maximum, the Court made clear that its holding in *Apprendi* touches upon the fundamental fairness and accuracy of criminal proceedings. *Apprendi*, 530 U.S. at 490.

By contrast, in *De La Paz*, the Illinois Supreme Court asserted that "*Apprendi* is about sentencing only." *De La Paz*, 204 Ill. 2d at 436. "The most that can be said is that an *Apprendi* violation results in a defendant's imprisonment on a charge *one element of which* – the sentencing enhancement -- was not proven to a jury beyond a reasonable doubt." *De La Paz*, 204 Ill. 2d at 437 (emphasis in original). The Court concluded that such a rule does not rise to the level of a "bedrock procedural element" that is essential to the fairness and accuracy of a criminal proceeding under the second exception in *Teague*. *De La Paz*, 204 Ill. 2d at 436-37. This is a highly constricted and erroneous view of *Apprendi* that cannot be reconciled with how the U.S. Supreme Court views *Apprendi*:

> Our decision in *Apprendi* . . .clarified what constitutes an 'element' of an offense for purposes of the Sixth Amendment's jury trial guarantee. Put simply, if the existence of any fact (other than a prior conviction) increases the maximum punishment that may be imposed on a defendant, that fact – no matter how the State labels it – constitutes an element, and must be found by a jury beyond a reasonable doubt." *Sattazahn v.*

*Pennsylvania*, 537 U.S. 101, 111 (2003).

Thus, the new rule in *Apprendi* is *not* only about sentencing. Rather, *Apprendi* has catalyzed changes affecting the entire criminal proceeding, including the manner in which defendants must be charged, the level of proof and types of evidence that must be used to establish the presence of elements formerly considered to be sentencing factors, and the issues that must be presented to and decided by a jury. The changes wrought by this decision show that the new rule in *Apprendi* is sufficiently fundamental to qualify for full retroactivity under the second exception in *Teague*.

In addition, although the Court in *De La Paz* concluded that *Apprendi* cannot satisfy the fundamental fairness requirement of *Teague*'s "watershed rule" exception, the Court focused only on *Apprendi*'s application of the Sixth Amendment's jury trial right to penalty-increasing elements, and not on the application of the reasonable doubt standard. Specifically, the Court in *De La Paz* assumed that a new rule cannot be fully retroactive if a violation of that rule can be deemed harmless error. *De La Paz*, 204 Ill. 2d at 437. The Court found guidance on the retroactivity question in *United States v. Cotton*, 535 U.S. 625 (2002), where the U.S. Supreme Court held that an *Apprendi* violation was harmless because of overwhelming evidence of the particular fact at issue. *De La Paz*, 204 Ill. 2d at 437-38. The U.S. Supreme Court, however, has held that "The standard for determining whether an error is structural ... is not coextensive with the second *Teague* exception." *Tyler v. Cain*, 533 U.S. 656, 666-67 (2001). Thus, whether a violation of *Apprendi* is subject to review for harmless error does not determine whether the second exception in *Teague* will apply to make the new rule fully retroactive. Accordingly, this Court should not view the decision in *De La Paz* as having resolved the issue of whether the new

-43-

rule in *Apprendi* qualifies for full retroactivity under the second exception in *Teague*.

The decision in *Summerlin*, which came after *De La Paz*, also provides new guidance. In *Summerlin*, the Supreme Court only considered the question of whether *Apprendi*'s requirement that the factors increasing the maximum penalty be submitted to a jury should be considered as a "watershed" rule under *Teague*. As the Arizona sentencing scheme in *Summerlin* already required aggravating factors to be proven beyond a reasonable doubt, that aspect of the new rule in *Apprendi* was not at issue. *Summerlin*, 542 U.S. 348, 351, n.1. The Court concluded that the part of the new rule requiring a jury determination was not a "watershed" rule − not because such a right failed to be "implicit in the concept of ordered liberty" − but because the Court could not find that "judicial factfinding seriously diminishes accuracy," as is required by *Teague*. *Summerlin*, 542 U.S. at 355-358.

The same cannot be said of that part of *Apprendi*'s new rule dealing with wider application of the reasonable doubt standard. As the U.S. Supreme Court explained in *In re Winship*, 397 U.S. 358, 363 (1970), use of the reasonable doubt standard "is a prime instrument for reducing the risk of convictions resting on factual error." The Court later held that the new rule established in *Winship* must be given full retroactive effect: "Plainly, . . . the major purpose of the constitutional standard of proof beyond a reasonable doubt announced in *Winship* was to overcome an aspect of a criminal trial that substantially impairs the truth-finding function... ." *Ivan V. v. City of New York*, 407 U.S. 203, 205 (1972). Later, in *Mullaney v. Wilbur*, 421 U.S. 684, 704 (1975), the Court extended *Winship* by holding that the state was required to prove the absence of provocation in a homicide beyond a reasonable doubt. Reasoning that the reasonable doubt standard is as substantial a requirement under *Mullaney* as it was in *Winship*, the Court

also made the new rule in *Mullaney* fully retroactive in *Hankerson v. North Carolina*, 432 U.S. 233, 242-44 (1977).  Although both *Ivan V.* and *Hankerson* were decided before *Teague*, these decisions are still pertinent because the relevant standard for retroactivity at the time was whether "the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials." *Ivan V.*, 407 U.S. at 204 (citation omitted); *Hankerson*, 432 U.S. at 241 (citation omitted).

Before *Apprendi*, the State could increase – even double – a defendant's sentence based on the finding of facts that were not proven beyond a reasonable doubt.  The rule in *Apprendi* now requires that these same facts be subjected to the reasonable doubt standard.  *Apprendi*, 530 U.S. at 490.  The U.S. Supreme Court suggested in *Teague* that it is unlikely that there are many procedures yet to emerge that are so basic to an accurate determination of guilt or innocence that they will be given full retroactive application.  *Teague*, 489 U.S. at 313.  Nevertheless, the new rule in *Apprendi* provides for such a fundamental procedure, a "watershed" rule that has emerged because of the development of sentence enhancements that are now understood to be the functional equivalents of elements of a greater offense.  *Apprendi* involves the right to a jury trial and the due process right to proof beyond a reasonable doubt, rights that are fundamental to the fairness and integrity of the criminal justice system and "without which the likelihood of an accurate conviction is seriously diminished." *Teague*, 489 U.S. at 313.  Accordingly, the new rule announced in *Apprendi* must be given full retroactive application because it affects the reliability of the entire criminal proceeding.

C.    The trial court did not make a valid death-eligibility finding under section 9-1(b)(6).

In the instant case, the trial court never made a valid death eligibility finding under

section 9-1(b)(6) of the Criminal Code. In *People v. Ford*, 198 Ill. 2d 68, 761 N.E.2d 735

(2001), the Illinois Supreme Court held that when a defendant is found eligible for the death

penalty by proof beyond a reasonable doubt, a sentence other than death does not violate

*Apprendi*, because the statutory maximum sentence is death, not 60 years' imprisonment. *Ford*,

198 Ill. 2d at 74. Here, although the trial court concluded that Hendricks was eligible for a life

sentence pursuant to Ill. Rev. Stat., ch. 38, sec. 9-1(b)(6) (West 1988), which permits a sentence

of death if the murder was committed in the course of another felony (Tr. R. 1636-68, in P.S.R.

Vol. V), *Ford* does not apply because the trial court did not make a valid death-eligibility

determination pursuant to sec. 9-1(b)(6). Specifically, the trial court did not determine, or even

consider, whether Hendricks acted with the intent to kill the decedent.

In 1988, section 5/9-1(b)(6) provided that a person over the age of 18 was death eligible if

"the murdered individual was killed in the course of another felony" and:

(a)    the murdered individual (i) was actually killed by the defendant,... *and*;

(b)    in performing the acts which caused the death of the murdered individual
        or which resulted in physical injuries personally inflicted by the defendant
        on the murdered individual under the circumstances of subdivision (ii) of
        subparagraph (a) of paragraph (6) of subsection (b) of this Section, the
        defendant acted with the intent to kill the murdered individual or with
        knowledge that his acts created a strong probability of death or great
        bodily harm to the murdered individual or another; *and*

(c)    the other felony was one of the following: aggravated kidnaping . . . .
Ill. Rev. Stat., ch. 38, sec. 9-1(b)(6)(a)(i)(ii), (b), (c) (1988) (emphasis added).

Thus, under this statute, a defendant is death eligible only if the State proves beyond a

reasonable doubt that the defendant: (a) actually killed the decedent or personally inflicted injuries (substantially contemporaneously with the injuries inflicted by the principal offender); *and* (b) acted with the intent to kill or with knowledge that his acts created the strong probability of death or great bodily harm; *and* (c) committed the murder in the course of an aggravated kidnaping. *People v. Fuller*, 205 Ill. 2d 308, 343, 793 N.E.2d 526 (2002). The State is required to prove these elements because a certain degree of culpable conduct is necessary to warrant imposition of the death penalty. *People v. Ramey*, 151 Ill. 2d 498, 544-45, 603 N.E.2d 519 (1992) (citing *People v. Jimerson*, 127 Ill. 2d 12, 48, 535 N.E.2d 889 (1989) (quoting *Enmund v. Floida*, 458 U.S. 782, 797 (1982))).

In concluding that Hendricks was eligible for a natural life sentence under sec. 9-1(b)(6), the trial court reasoned, "...the defendant was found guilty of the offense of felony murder. And in that regard, the State must not only prove beyond a reasonable doubt that the defendant committed the murder, but must prove several other factors enumerated in the statute. To wit, that the deceased was killed in the course of another felony." (Tr. R. 1636, in P.S.R. Vol. V) The trial court subsequently determined that Hendricks committed the offense of murder during the course of an aggravated kidnaping. (Tr. R. 1636-38, in P.S.R. Vol. V)

Where a verdict purports to set out the elements of the offense as specific findings, it must do so completely or it will be held to be insufficient. *People v. Mack*, 167 Ill. 2d 525, 538, 658 N.E.2d 437 (1995). A verdict purporting to list the elements of statutory aggravating factors that fails to include an essential element cannot withstand judicial scrutiny. *Id.* Here, the trial court listed two of the requirements for death eligibility, but failed to include an essential element. The trial court never considered whether Hendricks possessed the requisite mental

-47-

state, to wit: in performing the acts which caused the death of the murdered individual or which resulted in physical injuries personally inflicted by the defendant on the murdered individual..., the defendant acted with the intent to kill the murdered individual or with knowledge that his acts created a strong probability of death or great bodily harm to the murdered individual." Ill. Rev. Stat., ch. 38, sec. 9-1(b)(6) (West 1988). The trial court's language demonstrates that he misapprehended the law regarding death eligibility, because he mistakenly assumed that the guilty verdicts for murder and aggravated kidnaping were alone sufficient to support a finding of death eligibility. *See People v. Virella*, 256 Ill. App. 3d 635, 638-39, 628 N.E.2d 268 (1st Dist. 1993) (finding that trial court's statements rebutted the presumption that the trial court knew the law and followed it).

Having established that the trial court did not make a death eligibility finding, it follows that *Ford* is inapplicable to the instant case. Because *Ford* does not apply here, the maximum sentence for the murder was 60 years' imprisonment. Ill. Rev. Stat., ch. 38, sec. 1005-8-1(a)(1)(a) (West 1988). Hendricks' natural-life sentence exceeded the statutory maximum; therefore, under *Apprendi*, the factors qualifying him for an enhanced sentence had to be pled and proved to a jury beyond a reasonable doubt. As explained above, the enhancing factors (i.e., those enumerated in sec. 9-1(b)(6)) were not found by a jury beyond a reasonable doubt. Accordingly, Hendricks' natural-life sentence violates *Apprendi*, 530 U.S. at 482-84.

D.　Conclusion

For all of the foregoing reasons, Hendricks respectfully asks this Court to vacate his natural-life sentence and remand the cause for re-sentencing to a term not to exceed 60 years' imprisonment.

## CONCLUSION

For the foregoing reasons, Jerome Hendricks, Petitioner-Appellant, respectfully requests that this Court reverse the denial of his post-conviction petition and remand this matter for further proceedings and the appointment of new counsel.  In the alternative, Hendricks requests that this Court remand this matter so that the trial court can inquire into Hendricks' *pro se* claims of a conflict of interest and unreasonable representation.  Additionally, Hendricks asks this Court to modify his sentence so that all of his term-of-year sentences run concurrent to his sentence for natural life.  Finally, Hendricks requests that this Court vacate his natural-life sentence and either re-sentence him to a term of 60 years or remand for re-sentencing to a term not to exceed 60 years.

Respectfully submitted,

MICHAEL J. PELLETIER
Deputy Defender

CAROLINE E. BOURLAND
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois  60601
(312) 814-5472

COUNSEL FOR PETITIONER-APPELLANT

-49-

## **APPENDIX TO THE BRIEF**

Index to the Record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1

Trial Court's Dismissal of the Post-Conviction Petition . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-7

Illinois Supreme Court Supervisory Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-9

Notice of Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-10

# INDEX TO THE RECORD

## Common Law Record (No. 1-06-2093) ("C")

Certified Statement of Conviction/Disposition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Memorandum of Orders ("Half Sheet") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Mandate of the Appellate Court, appeal no. 1-95-0474 (January 16, 1997) . . . . . . . . . . . . . . . 39

Appellate Court Rule 23 Order, appeal no. 1-95-0474 (November 18, 1996) . . . . . . . . . . . . . . 41

Mandate of the Appellate Court, appeal no. 1-91-2922 (January 10, 1994) . . . . . . . . . . . . . . . 43

Appellate Court Opinion, appeal no. 1-91-2922 (September 7, 1993) (incomplete) . . . . . . . . . 45

Order - Denial of Motion to Vacate Verdict (March 22, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 55

*Pro Se* Motion for Adverse Judgment and Motion to Vacate Adverse Judgment (February 15, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

Notice of Appeal (April 18, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

Notice of Notice of Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

## Supplemental Common Law Record Volume I (No. 1-06-2093) ("S.C. I")

Appellate Court Opinion, appeal No. 1-91-2922 (September 7, 1993) (complete) . . . . . . . . . . . 2

Sentencing Order (August 26, 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## Supplemental Common Law Record Volume II (No. 1-06-2093) ("S.C. II")

*Pro Se* Petition for Post-Conviction Relief (February 24, 1994) . . . . . . . . . . . . . . . . . . . . . . . . 2

*Pro Se* Letter to the Clerk of the Circuit Court regarding Notice of Appeal (May 11, 1994) . . . 20

State's Amended Motion to Dismiss (December 16, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Mandate of the Appellate Court, appeal no. 1-94-1570 (February 15, 1995) . . . . . . . . . . . . . . 27

Appellate Court Rule 23 Order, appeal no. 1-94-1570 (November 21, 1994) . . . . . . . . . . . . . . 29

*Pro Se* Motion for Bar Association Attorney (March 4, 1997) ........................... 31

State's Motion to Dismiss (January 14, 1998) ...................................... 35

*Pro Se* Motion for Appointment of Counsel (November 23, 1999) ...................... 37

Letter from The Circuit Court of Cook County (January 5, 2000) ....................... 43

Motion for Continuance (March 13, 2001) .......................................... 45

Partial Supplemental Petition for Post Conviction Relief (June 25, 2001) ................. 48

*Pro Se* Motion to Remove Counsel from Presiding Case/Request for New Counsel Other than Public Defender's Office (January 31, 2002) ..................................... 72

State's Motion to Dismiss Supplemental Post-Conviction Petition (May 22, 2002) ......... 79

Rule 651(c) Certificate (October 15, 2003) ......................................... 82

**Supplemental Common Law Record Volume III (No. 1-06-2093) ("S.C. III")**

Notice of Appeal Pursuant to Supreme Court Order (July 18, 2006) ...................... 3

Illinois Supreme Court Supervisory Order (July 11, 2006) .............................. 5

**Report of Proceedings (No. 1-06-2093) ("R.")**

February 19, 1997
Continuance .................................................................. B4

March 4, 1997
Continuance .................................................................. C3

March 14, 1997
Continuance .................................................................. D2

March 17, 1997
Continuance .................................................................. E2

March 21, 1997
Continuance .................................................................. F3

May 23, 1997
Continuance ........................................................................ G4

August 29, 1997
Continuance ........................................................................ H2

December 5, 1997
Continuance ........................................................................ I3

January 14, 1998
Continuance ........................................................................ J5

March 20, 1998
Continuance ........................................................................ K3

May 29, 1998
Continuance ........................................................................ L4

August 21, 1998
Continuance ........................................................................ M3

June 17, 1998
Continuance ........................................................................ N4

December 8, 1998
Continuance ........................................................................ O4

January 20, 1999
Continuance ........................................................................ P7

June 3, 1999
Continuance ........................................................................ R4

September 1, 1999
Continuance ........................................................................ S5

November 2, 1999
Continuance ........................................................................ T6

December 2, 1999
Continuance ........................................................................ V3

January 11, 2000
Continuance .............................................................. X5

January 27, 2000
Continuance .............................................................. Z3

March 14, 2000
Continuance .............................................................. AA4

April 10, 2000
Continuance .............................................................. BB3

April 24, 2000
Motion for Appointment of Counsel Other Than the Public Defender - Denied .......... CC3
Continuance .............................................................. CC4

July 24, 2000
Continuance .............................................................. DD3

December 13, 2000
Continuance .............................................................. FF4

March 13, 2001
Continuance .............................................................. GG3

June 5, 2001
Continuance .............................................................. II3

August 30, 2001
Continuance .............................................................. JJ3

February 20, 2002
Continuance .............................................................. NN9

May 22, 2002
Continuance .............................................................. OO5

May 24, 2002
Motion for Bar Association Attorney - Denied ............................... PP3, PP5
Continuance .............................................................. PP9

August 14, 2002
Continuance .............................................................. QQ4

March 13, 2003
Continuance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SS6

April 15, 2003
Continuance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . TT3

May 21, 2003
Continuance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . UU5

July 30, 2003
Continuance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . WW4

October 15, 2003
State's Motion to Dismiss - Allowed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . XX3

February 28, 2005
Continuance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . YY3

March 15, 2005
*Pro Se* Petition - Dismissed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ZZ3

## First Appeal of Current Post-Conviction Petition Common Law Record (No. 1-95-0474) ("P.C.")

Memorandum of Orders ("Half Sheet") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Pro Se* Petition for Post-Conviction Relief (April 19, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

State's Amended Motion to Dismiss (December 16, 1994)  . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Certified Report of Disposition (December 28, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Notice of Appeal (January 11, 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Notice of Notice of Appeal  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## First Appeal of Current Post-Conviction Petition Report of Proceedings (No. 1-95-0474) ("P.R.")

December 16, 1994
State's Motion to Dismiss - Allowed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A4

## First Appeal of Current Post-Conviction Supplemental Report of Proceedings (No. 1-95-0474) ("P.S.R.")

July 27, 1994
Appointment of Public Defender . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Continuance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

September 16, 1994
Continuance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## First Appeal Of Current Post-Conviction Supplemental Record Volumes 1 Through 6 and Volumes 1 Through 5 (No. 1-95-0474)

Contains a duplicate set of the Report of Proceedings at Trial in two Volumes, Volumes 1-6, and Volumes 1-5.

In Volumes 1-5, Volume 4 contains the Trial Court's finding of guilt (Tr.R. 1523 and Volume 5 contains the Sentencing Hearing (Tr. R. 1636-38), both referenced in Appellant's Brief

## First Post-Conviction Common Law Record (No. 1-94-1570) ("F.C.")

Memorandum of Orders ("Half Sheet") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Pro Se* Post-Conviction Petition (February 24, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Order (March 21, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Certified Report of Disposition (March 29, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Notice of Appeal (April 7, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Notice of Notice of Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

## First Post-Conviction Report of Proceedings (No. 1-94-1570 ("F.R.")

March 21, 1994
Dismissal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## Trial Report of Proceedings ("Tr. R.")

Index . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

1   STATE OF ILLINOIS )
                      ) SS:
2   COUNTY OF COOK    )

3           IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
                 COUNTY DEPARTMENT-CRIMINAL DIVISION

4   THE PEOPLE OF THE          )
5   STATE OF ILLINOIS,         )
                               )
6                              )   88 CR 12517-01
                               )   Judge Marcus R. Salone
7           vs.                )   October 15, 2003
                               )
8   JEROME HENDRICKS           )

9

10

11

12   Court having reconvened pursuant to adjournment.

13

                PRESENT:
14
                    HON. RICHARD A. DEVINE,
15                  STATE'S ATTORNEY OF COOK COUNTY, by
                    MR. JOHN HASKINS,
16                  Assistant State's Attorney,
                        Appeared on behalf of the People;

17
                    MR. EDWIN BURNETTE,
18                  PUBLIC DEFENDER OF COOK COUNTY, by
                    MR. LINDSAY HUGE,
19                  Assistant Public Defender of Cook County,
                        Appeared on behalf of the Defendant.

20                             * * * * *

21

22
     Peter J. Paris
23   Official Court Reporter
     2650 South California
24   Chicago, Illinois  60608

A-7

1          THE CLERK:  Jerome Hendricks?

2          THE COURT:  And Jerome of course has been

3     around since the memory of man runneth.

4          MR. HASKINS:  I think we can dispose of that

5     today.

6               John Haskins, assistant state's

7     attorney.

8          MR. HUGE: Lindsay Huge, H-u-g-e.

9          THE COURT:  What is the situation with Mr.

0     Hendricks?

1          MR. HUGE: Judge, at this time, I am prepared

2     to file a 651(C) certificate and stand on Mr.

3     Hendricks' pro se post-conviction petition.

4          THE COURT:  Did you file a petition to

5     dismiss?

6          MR. HASKINS: A long time. It was like in

7     1994. There were two PCs. The first one you dismissed.

8     The second one you dismissed. Sent it back because they

9     needed a 651(C).

0          THE COURT:  Motion State to dismiss is

1     allowed.

2               MR. HASKINS: Thank you, Judge.

3

4                                   - -.

A-8

IN THE

## SUPREME COURT OF ILLINOIS

| | |
|---|---|
| JEROME HENDRICKS, | ) |
| | ) |
| Movant, | ) |
| | ) |
| vs. | )    Motion for supervisory order |
| | ) |
| HON. MARGARET O'MARA FROSSARD, | ) |
| Justice of the Appellate Court, First District, | ) |
| et al., etc., | ) |
| | ) |
| Respondents. | ) |

## O R D E R

This cause coming to be heard on the motion of the movant, due notice having been given to

the respondents, and the court being fully advised in the premises;

IT IS ORDERED that the motion for supervisory order is <u>allowed</u>.  In the exercise of this

court's supervisory authority, movant is allowed to file a notice of appeal instanter from the order of

October 15, 2003, dismissing his second post-conviction petition after remand.

Order entered by the Court.

FILED
CR-526-12
JUL 18 2006
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

# FILED

JUL 11 2006

SUPREME COURT CLERK

A-9

## CRIMINAL DIVISION

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | IND./INF. No. 88 CR 12517 |
| Respondent-Appellee, | |
| -vs- | Trial Judge: Wilbur E. Crooks |
| | Trial Atty: |
| Jerome Hendricks | Type of Trial: Hearing |
| Petitioner-Appellant. | |

### NOTICE OF APPEAL

An appeal is taken to the Appellate Court, First District:

Appellant(s) Name:        Jerome Hendricks

Appellant's Address:        Illinois Department of Corrections

Appellant(s) Attorney:        Office of the State Appellate Defender

Address:        203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601

Offense of which convicted:   first degree murder, aggravated criminal sexual assault, etc.

Date of Judgment or Order:   October 15, 2003

Sentence:        natural life

If appeal is not from a conviction, nature of order appealed:

Dismissal of Post-Conviction Petition

MICHAEL J. PELLETIER
Deputy Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472
COUNSEL FOR PETITIONER-APPELLANT

**FILED**
CR-526-12
JUL 18 2006
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

### NOTICE OF APPEAL FILED PURSUANT TO SUPREME COURT ORDER

 A-10



EXHIBIT M

IN THE

APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT

PEOPLE OF THE STATE OF ILLINOIS,

Respondent-Appellee,

vs.

JEROME HENDRICKS,

Petitioner-Appellant.

## POINTS AND AUTHORITIES

### I.

**THE COURT PROPERLY DISMISSED PETITIONER'S POST-CONVICTION PETITION FOR NEW COUNSEL WHERE THE RECORD SHOWS THAT POST-CONVICTION COUNSEL COMPLIED WITH THE REQUIREMENTS OF ILLINOIS SUPREME COURT RULE 651(c), AND NO MERITORIOUS ISSUES EXISTED**..................................  **19**

People v. MacNeal, 194 Ill.2d 135,
    742 N.E.2d 269 (2000)........................................................................  19

People v. Turner, 187 Ill. 2d 406,
    719 N.E.2d 725 (1999)........................................................................  19,21

People v. Flores, 153 Ill.2d 264,
    606 N.E.2d 1078 (1992)........................................................................  19

People v. Owen, 139 Ill.2d 351,
    564 N.E.2d 1184(1990)........................................................................  19

1

People v. Davis, 156 Ill.2d 149,
   619 N.E.2d 750 (1993)..........................................................................20-21

People v. Stewart, 121 Ill.2d 93,
   520 N.E.2d 348 (1988)..........................................................................21

People v. Johnson, 232 Ill.App.3d 674,
   597 N.E.2d 1258 (5th Dist. 1992)........................................................21

People v. Speitzer,143 I43 Ill.2d 210,
   572 N.E.2d (1991).................................................................................22

People v. Rials, 345 Ill. App. 3d 636,
   802 N.E.2d 1240 (1st Dist. 2003).........................................................22,23

People v. Hendricks, No. 1-95-1570(1st Dist., November 21, 1994)............23

People v. Treadway, 245 Ill.App.3d 1023,
   615 N.E.2d 887 (1993)..........................................................................24

People v. Thompkins, 121 Ill.2d 401,
   521 N.E.2d 38 (1998)............................................................................26

People v. Williams, 205 Ill.2d 559,
   793 N.E.2d 632 (2002)..........................................................................26

People v. Hardin, 217 Ill.2d 289,
   840 N.E.2d 1205 (2005).........................................................................27,28

People v. Moore, 207 Ill.2d 68,
   797 N.E.2d 631 (2003)..........................................................................27

Strickland v. Washington, 466 U.S. 668,
   104 S. Ct. 2052 (1984)..........................................................................27

People v. Hardin, 353 Ill. App. 3d 522, 818 N.E.2d 1246(2d Dist.2004),
   aff'd, 217 Ill.2d 289, 840 N.E.2d 1205 (2005) ...................................27

725 ILCS 5/122-4 (West 2002).........................................................................19

2

## II.

**PETITIONER HAS WAIVED HIS CHALLENGE
TO HIS CONSECUTIVE SENTENCES BY FAILING
TO INCLUDE IT IN HIS POST-CONVICTION
PETITION** ...................................................................... 29

People v. Palmer, 218 Ill. 2d 148,
    843 N.E.2d 292 (2006)................................................... 29

People v. Lee Jones, 211 Ill. 2d 140,
    809 N.E.2d 1233 (2004)................................................ 29

People v. McNeal, 194 Ill. 2d 135,
    742 N.E.2d 269 (2000)................................................. 29

People v. Williams, 52 Ill. 2d 466,
    288 N.E.2d 353 (1972)................................................. 29

People v. De La Paz, 204 Ill. 2d 426,
    791 N.E.2d 489 (2003)................................................. 30

People v. Tremaine Jones, 213 Ill. 2d 498,
    821 N.E.2d 1093 (2004).............................................. 30

People v. Davis, 156 Ill.2d 149,
    619 N.E.2d 750 (1993)................................................. 30

McDunn v. Williams, 156 Ill. 2d 288,
    620 N.E.2d 385 (1993)................................................. 31

Marsh v. Illinois Racing Board, 179 Ill. 2d 488,
    689 N.E.2d 1113, 228 Ill. Dec. 692 (1997)....................... 31

People v. Curry, 178 Ill. 2d 509,
    687 N.E.2d 877 (1997)................................................. 33

People v. Whitney, 188 Ill. 2d 91,
    720 N.E.2d 225 (1999)................................................. 33

730 ILCS 5/5-8-4 ........................................................... 32

725 ILCS 5/122-3............................................................ 29

Black's Law Dictionary 1393 (8th ed. 2004)..................................................... 32

## III.

### THE UNITED STATES SUPREME COURT'S DECISIONS IN APPRENDI V. NEW JERSEY AND RING V. ARIZONA DO NOT APPLY RETROACTIVELY TO CONVICTIONS WHICH WERE FINAL PRIOR TO THEIR ISSUANCE .............. 35

Apprendi v. New Jersey, 530 U.S. 466,
    120 S. Ct. 2348 (2000)......................................................................... 35

Ring v. Arizona, 536 U.S. 584,
    122 S. Ct. 2428 (2002)......................................................................... 35

People v. De La Paz, 204 Ill. 2d 426,
    791 N.E.2d 489 (2003).......................................................................... 35,40

People v. Hendricks, 253 Ill.App.3d 79, 625 N.E.2d 79 (1st Dist. 1993),
    petition for leave to appeal denied December 1, 1993 (No. 76244) .. 35

Griffith v. Kentucky, 479 U.S. 314,
    107 S.Ct. 708 (1987)............................................................................. 35

People v. Lee, 207 Ill. 2d 1,
    796 N.E.2d 1021 (2003)........................................................................ 36

People v. Ford, 198 Ill. 2d 68,
    761 N.E.2d 735 (2001).......................................................................... 36

Schriro v. Summerlin, 542 U.S. 348,
    124 S. Ct. 2519 (2004)......................................................................... 38

People v. Swift, 202 Ill. 2d 378,
    781 N.E.2d 292 (2002)......................................................................... 38

Lucien v. Briley, 213 Ill.2d 340;
    821 N.E.2d 1148 (2004)....................................................................... 38

People v. Schrader, 353 Ill. App. 3d 684,
    820 N.E.2d 489 (2004)......................................................................... 38

People v. Lee Jones, 211 Ill. 2d 140,
    809 N.E.2d 1233 (2004)...................................................................... 39

People v. McNeal, 194 Ill. 2d 135,
    742 N.E.2d 269 (2000)...................................................................... 39

People v. Williams, 52 Ill. 2d 466,
    288 N.E.2d 353 (1972)...................................................................... 39

People v. Tremaine Jones, 213 Ill. 2d 498;
    821 N.E.2d 1093 (2004)...................................................................... 40,41

McDunn v. Williams, 156 Ill. 2d 288,
    620 N.E.2d 385 (1993)...................................................................... 41

Marsh v. Illinois Racing Board, 179 Ill. 2d 488,
    689 N.E.2d 1113, 228 Ill. Dec. 692 (1997)......................................... 41

725 ILCS 5/122-3............................................................................... 39

## STATEMENT OF FACTS

Petitioner, Jerome Hendricks, was found guilty of first degree murder, aggravated criminal sexual assault, aggravated kidnapping, kidnapping, unlawful restraint and concealment of a homicidal death of a twelve year old girl. (People v. Hendricks, 253 Ill.App.3d 79, 625 N.E.2d 79(1st Dist. 1993), S.C. I 123) Although petitioner was found eligible for the death penalty, the trial court declined to impose the death penalty. (S.C.I 19) However, the trial court found that the murder "was accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty." (S.C. I 19) Petitioner was sentenced to natural life imprisonment for murder, 30 years for aggravated criminal sexual assault, 15 years for aggravated kidnapping, and 5 years for concealment of a homicidal death. (S.C.I 23) These sentences were to be served concurrently to one another, but consecutively to the natural life sentence. (S.C.I 23)

On direct appeal, this Court summarized the facts as follows:

At trial, Yolanda Hill testified that she was the 23 year old cousin of Denise J. On August 1, 1988, Ms. Hill lived at 11720 South Princeton in Chicago. Denise J. was 12 years old at that time and lived with Ms. Hill's mother, Estelle Fields.

Ms. Hill testified that Denise J. came over to her house on August 1, 1988, to baby-sit Ms. Hill's children. Denise J. was approximately five feet tall and weighed approximately 100 pounds. According to Ms. Hill, Denise J. arrived wearing a black tank top, white knee pants, white socks and white

6

gym shoes. The shoes were "Princess" brand; the name "Denise" was written in red ink on the outside of the instep of the left shoe.

At 5:15 p.m. on the evening at issue, Ms. Hill, her two children, her housemate Karlena McCoy and Denise J. were all at Ms. Hill's home. Ms. Hill and McCoy went out onto the porch to discover Denise J., who had Ms. Hill's children with her, speaking with defendant. Ms. Hill told defendant he was not welcome on her porch, took her baby from defendant and gave the child to Denise J. Ms. Hill bent over and told Denise J. that defendant had just been released from jail for rape. Denise J. took the baby indoors and went upstairs. Ms. Hill told defendant that Denise J. was 12 years old and was not allowed to speak to any men. McCoy told defendant to leave, which defendant did after arguing with Ms. Hill and McCoy for five to ten minutes.

Later that evening, after Denise J. spoke to Ms. Hill, Denise J. was allowed to go out onto the porch for five minutes. Ms. Hill checked on Denise J. five minutes later; Denise J. had disappeared. Ms. Hill never saw Denise J. alive again.  On cross-examination, Ms. Hill denied that she had ordered Denise J. off the porch or that the two fought thereafter. She also denied that Denise J. was a runaway or that she had told the police this.

James Hill, another cousin of Denise J., testified that on the morning of August 2, 1988, he drove his mother to Ms. Hill's home. Mr. Hill testified that after arriving, he saw defendant coming down the street. Mr. Hill asked

7

defendant whether he had seen Denise J. Defendant stated that he had not. Mr. Hill told defendant that Ms. Hill and McCoy had seen him with Denise J. and described Denise J. Defendant indicated that he had seen Denise J. on his porch at 9:30 p.m. with his nephew. According to Mr. Hill, defendant later told him that defendant had seen Denise J. on 119th Street and told her to go home.

Michael Walker testified that he was approached by defendant on August 2, 1988. According to Walker, defendant told him that the police were looking for defendant. Walker testified that defendant wanted him to say he was with defendant on the night Denise J. disappeared. Walker indicated that he had not been with defendant; rather, he had been searching for Denise J. that evening....

Chicago Police Officer John Fassl testified that on August 8, 1988, he and his partner received a call regarding a suspicious odor coming from a garage at 251 W. 117th Street. Fassl indicated that the garage was located behind an abandoned house at that address. Upon entering the garage, Officer Fassl discovered the body of a young girl in the southeast corner of the garage. The girl was lying on her stomach and her hands were bound behind her back with what appeared to be a set of shoelaces. The girl's pants were unfastened, her bra straps were pulled down and her top was tied around her neck. The girl was wearing her right shoe; the left shoe, found near the girl's

head, had the name "Denise" written upon it with a red marker. The shoes were Princess brand.

According to Officer Fassl, the girl's top was tied around her neck at chin level and a shoe lace was tied around her neck near the shoulders. When the body was discovered, there were garbage bags thrown on top of it. Officer Fassl testified that the body was in a high state of decomposition; fluid seeped from the body when it was turned over, there was skin slippage from the face and a large maggot infestation in and around the body and the garbage area.

Officer Fassl also identified a photograph taken from the front porch of 11720 S. Princeton. The photograph indicates that the garage where the body was discovered can be seen from the front porch of the building where Denise J. had been at the time of her disappearance.

Doctor Mary Jumbelic, a forensic pathologist, ... opined that the death was caused by strangulation. On cross-examination, Dr. Jumbelic indicated that auto-eroticism -- the practice of tying something around one's neck to enhance a sexual experience -- is not seen often among females. Dr. Jumbelic indicated that she had never heard of a case involving a female.

As a result of [several] interviews, Detective Nitsche conducted a background check of defendant. Detective Nitsche learned that defendant was then on parole from a conviction for criminal sexual assault. Detective

9

Nitsche indicated that the victim in that case had been strangled, though apparently not to the point of death. Detective Nitsche also learned that defendant had been arrested for another criminal sexual assault that occurred at 251 W. 117th Street.

Based on this information, Detective Nitsche and other police officers began looking for defendant. The police were unable to find him at home and left a message that they wanted to speak with him. Defendant contacted the police later that evening, which led to defendant's arrest. The testimony of the police officers conflicted with the testimony of defendant and his family regarding the circumstances of his arrest. It is noted at this juncture that the trial court determined that the police effected a warrantless, nonconsensual arrest in defendant's home, but that the arrest was valid because it was supported by probable cause.

At trial, Detective Nitsche testified that he conducted an initial interview with defendant at Area Two Police Headquarters on the evening of August 8, 1988. Defendant told Detective Nitsche that between 6 p.m. and 9 p.m. of the night at issue, he was at his friend Tom's home, which was across the street from his own home. After returning home for a short time, he went to Pullman Park, where he met Walker and a woman. Defendant then went to the Everett White School playground, where he drank and played basketball

10

until 4:30 a.m. According to Detective Nitsche, defendant never indicated that he saw Denise J. on the night of her disappearance.

Detective Michael Baker testified that defendant was then taken for an interview at 11th and State and later returned to Area Two Police Headquarters for a third interview. Detective Baker testified that during the third interviewed, defendant admitted that he talked to Denise J. on the night of her disappearance. Defendant told Detective Baker that Denise J. went to get ice cream for defendant and that he later saw Denise J. in front of his house talking to his nephew. Defendant then went to play basketball at the Everett White School. Defendant indicated he played basketball with someone named "Shorty Mac" and walked out with Michael  Walker. Defendant then went to meet his girl friend at 119th Street and Michigan. When defendant returned home early the next morning, family members informed him that the police were looking for him.

After defendant made this statement, Detective Baker went to Pullman Park and the Everett White School, but was unable to find "Shorty Mac," Walker, or anyone who saw defendant at these locations on the night in question.

Detective John Yucaitis testified that on August 9, 1988, he and his partner spoke with the detectives investigating this homicide. Thereafter, Detective Yucaitis and his partner canvassed the area where the body was

11

found. Later that afternoon, Detective Yucaitis and his partner spoke with defendant. Detective Yucaitis told defendant that he did not believe defendant's account of his whereabouts on the night at issue.

According to Detective Yucaitis, defendant stated that he had not told the whole truth because he was on parole for rape and feared that he would not be believed. Defendant then told Yucaitis that on August 3 or 4, 1988, he noticed the odor coming from the garage at 251 W. 117th Street. Defendant entered the garage and noticed the body on the floor. Defendant stated that he did not report his discovery to anyone due to his background.

Detective Yucaitis told defendant that he thought defendant was withholding information and asked whether defendant had sex with the girl. Detective Yucaitis told defendant that tests could be done to determine whether defendant had sex with the girl. Defendant indicated that he wanted to think for awhile, at which time Detective Yucaitis and his partner left the interview room.

According to Detective Yucaitis, defendant asked to see him later that evening. Defendant asked whether he could get in trouble if he admitted having sex with the girl; Detective Yucaitis responded in the affirmative. Defendant then admitted having sex with the girl, but insisted that it was consensual. Defendant denied ejaculating into the girl. The conversation was then terminated.

12

Later that evening, Detective Yucaitis returned with Detective Joann Ryan. Detective Yucaitis left the room after defendant indicated that he wanted to speak with Detective Ryan alone.

Detective Ryan testified that defendant told her that the girl had "hit" on him all day on the date at issue. According to defendant, he and the girl had sex near a car parked behind 11720 S. Princeton and that he left afterwards. Defendant told Detective Ryan that the girl then chased him and led him to the garage at 251 W. 117th Street. Defendant stated that the girl hugged him, kissed him and asked that he not tell anyone she had been with him. According to defendant, the girl then took her pants down and pulled her top over her head. Defendant then had vaginal intercourse with the girl from the rear. Defendant told Detective Ryan that the girl had something like a gag that she stuck in her mouth and asked defendant to hold it, pull on it and "ride her like a horse."

According to Detective Ryan, defendant admitted ejaculating in the girl. Defendant stated that the girl again asked him not to tell anyone what had happened. Defendant stated that he then left for Pullman Park.

Assistant State's Attorney Anna Democopolous testified that she took a handwritten statement from defendant after 10 p.m. on August 9, 1988. This statement was substantially similar to the oral statement defendant gave to Detective Ryan, adding that he did not look back at the girl as he left the

13

garage and knew that she did not leave with him. Defendant also related his discovery of the body several days later. Defendant indicated that the girl and the girl's top were in the same position as when he initially left the garage. Defendant denied killing, raping or secretly confining the girl.

Phyllis Williams testified that on June 30, 1984, she was living at 7416 Phillips. As she left her apartment that day, she saw defendant sitting in the hallway. Williams testified that as she passed the defendant, he grabbed her from behind and put a knife to her neck. Williams testified that defendant then dragged her into his apartment and threw her on a couch.

Williams indicated that defendant then pulled a rope from the side of the couch and wrapped it twice around her neck. Defendant then told her to take a leg out of her pants, after which he twice had forcible intercourse with Williams. Williams testified that during these episodes, defendant pulled on the rope around her neck, threatening to kill her.

On cross-examination, Williams admitted that she went to a game room with defendant after these episodes. Williams indicated that she wanted to get out into the public. Williams further indicated that while she appeared in court, the case was dismissed.

Stephanie Smith testified that she lived at 7416 Phillips in September 1984. On September 3, 1984, Smith saw defendant standing inside the building as she entered. Smith testified that as she walked up the stairs,

14

defendant grabbed her from behind, dragged her into a basement apartment and put her in a closet for ten to fifteen minutes. Smith testified that defendant forcibly raped her after removing her from the closet.

Smith testified that she was fifteen years old at the time and that she told defendant this. Smith indicated that as she left the apartment, defendant grabbed her around the neck and threatened to kill her if she told anyone what had happened.

The trial court indicated that he would consider the testimony of Williams and Smith only to the extent of similarities to the case on trial. Defendant called Chicago Police Youth Officer Steve Matkovich, who testified that on August 2, 1988, he began investigating Denise J.'s disappearance as a missing person's case. Officer Matkovich's report indicated that he had spoken with Ms. Hill as part of that investigation. The report indicated that Ms. Hill stated that she had an "altercation" with Denise J. regarding defendant before Denise J. disappeared.

Estelle Fields, Denise J.'s legal guardian, testified that she spoke with a youth officer on August 3, 1988 regarding Denise J.'s disappearance. Fields denied telling this officer that Denise J. had previously run away from home and denied that Denise J. had ever run away from home. Fields also denied telling the officer that the only interest Denise J. had was boys and that Denise J. was a problem child.

15

Officer David Kaddigan, testified that on August 7, 1988, he canvassed the area of 105th and State. Officer Kaddigan showed a photograph of Denise J. to two women who told him that they lived at 10537 S. State. According to Officer Kaddigan, these women stated that they saw Denise J. on August 2, 1988. The trial judge ultimately struck this testimony as hearsay.

Youth Officer Daniel Gryzb testified that he was conducting a follow-up investigation on a missing twelve year old. Officer Gryzb testified that he spoke with Estelle Fields, who told him that Denise J. was a problem child. Officer Gryzb denied that Fields also indicated that Denise J. was interested in boys or men.

Another Youth Officer assigned to the missing persons case, Donna Padgurskis, testified that Fields told her that Denise J. had occasionally socialized with older men or boys. However, Fields also told Officer Padgurskis that Denise J. socialized with girls and was not sexually active. According to Officer Padgurskis, Fields stated that Denise J. had previously gone to her grandfather's home without Fields' permission. However, Fields did not tell Officer Padgurskis that Denise J. was a problem child.

Hendricks, 253 Ill.App.3d at 80-88.

Following a bench trial, petitioner was found guilty of murder, criminal sexual assault, aggravated kidnapping and concealment of a homicidal body. (TR. 1636) See

16

Hendricks, 253 Ill. App. 3d at 90-2. Petitioner's motion for a new trial was denied. (TR. 1531) In his appeal, petitioner claimed that (1) court erred in denying his motion to quash arrest and suppress evidence, (2) he was not proven guilty beyond a reasonable doubt, (3) his natural life sentence was excessive, and (4) section 5-8-1(a)(1) violates his constitutional rights. (P.C. 24, S.C.I 2-22) This Court rejected petitioner's arguments and affirmed his convictions and sentences. See Hendricks, 253 Ill. App. 3d at 90-2.

On February 24, 1994, petitioner filed a *pro se* petition requesting post-conviction relief alleging the same four issues argued on direct appeal. (F.C. 15-32) On March 21, 1994, the petition for post-conviction relied was summarily dismissed. (P.C. Vol. I 34) This Court then affirmed that ruling on November 21, 1994. (P.C. 41-43) People v. Hendricks, No. 1-95-1570(1st Dist., November 21, 1994) (unpublished order pursuant to Rule 23).

On April 19, 1994, petitioner filed a second *pro se* petition for post-conviction relief. Although it was a "Xerox copy" of his first petition and alleged the same issues. (P.C. 8-11), the trial court appointed the Public Defender's Office to represent petitioner on July 27, 1994, because more than 90 days had passed since defendant filed his second pro se petition. (P.S.R. 5-10, R.A3) The trial court granted the People's motion to dismiss the second petition based on *res judicata* and successive petitions. (S.C. II 24 – 26, P.C. 8-11) Petitioner appealed. (P.C. 41-43) This Court held that the second petition was successive but remanded the matter for compliance with Supreme Court Rule 651(c)(S.C. II 29-30)(People v. Hendricks, No. 1-95-0474(1st Dist., November 18, 1996) (unpublished order pursuant to Rule 23).

17

On remand, attorneys from the Public Defender's Office took a number of continuances to review petitioner's file, the court recorder and confer with petitioner in order to amend petitioner's petition. (R. E1-2, F1, G3, I2, J2-3, K1-3, L3. N3-4, M1, O3, NN4-5, PP4, OO3-5, XX3) Between March 1997 and October 2003, petitioner was represented by three separate attorneys from the Public Defender's Office. (R. E1-2, F1, G3, I2, J2-3, K1-3, L3. N3-4, M1, O3, CC3, PP3-5, XX3-5, S.C. II 77-78) Each successive attorney reviewed petitioner's claims. Petitioner filed three *pro se* "Motion to Remove Counsel Request for New Counsel Other than the Public Defender's Office." (S.C. II 31-34, 37-42, 72) Each request was denied. (R. CC3, PP3-5)

In addition to filing the Rule 651(c) certificate, petitioner filed supplemental petition alleging the trial court improperly denied his motions for substitution of post-conviction counsel, his sentence was void and that his sentence violated Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct 2348 (2000) (C. 45). The court granted the People's motion and dismissed the petition in its entirety. (R. XX3) Petitioner now appeals.

18

**ARGUMENT**

**I.**

**THE COURT PROPERLY DISMISSED PETITIONER'S POST-CONVICTION PETITION FOR NEW COUNSEL WHERE THE RECORD SHOWS THAT POST-CONVICTION COUNSEL COMPLIED WITH THE REQUIREMENTS OF ILLINOIS SUPREME COURT RULE 651(c), AND NO MERITORIOUS ISSUES EXISTED**

Petitioner maintains that the dismissal of his post-conviction petition should be reversed because his appointed counsel failed to provide reasonable assistance and because the trial court improperly denied his request for new counsel. (Pet Brf. 16-29) Petitioner's claim must fail, however, because the record affirmatively shows that post-conviction counsel afforded petitioner a "reasonable level of assistance" as provided by Rule 651(c). People v. MacNeal, 194 Ill.2d 135, 142, 742 N.E.2d 269 (2000). Therefore, the trial court properly rejected petitioner's claims.

The right to counsel in post-conviction proceedings is not a constitutional right but rather wholly statutory. See 725 ILCS 5/122-4 (West 2002). The post-conviction petitioners are entitled only to the level of assistance provided by the Act. People v. Turner, 187 Ill. 2d 406, 719 N.E.2d 725 (1999); People v. Flores, 153 Ill.2d 264, 276, 606 N.E.2d 1078 (1992). It is well settled that the Act requires counsel to provide a "reasonable level of assistance" to petitioner in post-conviction proceedings. Turner, 187 Ill. 2d 406, People v. Owen, 139 Ill.2d 351, 364, 564 N.E.2d 1184(1990). Illinois Supreme Court Rule 651(c) outlines the specific duties of appointed counsel in post-conviction proceedings. The rule requires that the record in post-conviction proceedings demonstrate that appointed counsel "has consulted

19

with petitioner either by mail or in person to ascertain his contentions of deprivation of constitutional rights, has examined the record of the proceedings at trial, and has made any amendments to the petitions filed pro se that are necessary for an adequate presentation of petitioner's contentions." Ill. Sup. Ct. R. 651(c).

Here, petitioner received a reasonable level of assistance during the post-conviction proceedings as required by the Act. Upon remand, petitioner was represented by three different attorneys from the Public Defender's Office. Each of the three attorneys, reviewed the trial record and communicated with petitioner to identify any constitutional issues. (R. E1-2, F1, G3, I2, J2-3, K1-3, L3. N3-4, M1, O3, P3, S3, T3, X3, NN3-5, PP3-5, OO3-5, UU3-5, XX3) APD Branch filed a supplemental petition on petitioner's behalf and APD Huge filed a Rule 651(c) certificate. (S.C. II 82) The certificate stated that in compliance with Rule 651(c), APD Huge had (1) "consulted with petitioner Jerome Hendricks by mail and ascertained his contentions of deprivations of constitutional rights, (2) having inherited Hendrick's file previously worked on by at least two different Assistant Public Defenders, I have reviewed his petition, supplemental petition and trial transcripts, and (3) petitioner's pro-se petition and supplemental petition filed by previous counsel adequately present his claims of constitutional deprivation." (S.C. II 82) Therefore, petitioner received reasonable assistance under the Act.

Defendant maintains that the attorneys failed to familiarize themselves with the record in this case. (Pet. Brf. 22-24) However, rule 651(c) requires post-conviction counsel only to examine "as much of the transcript as necessary to adequately present and support those constitutional claims raised by the petitioner." People v. Davis, 156 Ill.2d 149, 619

20

N.E.2d 750 (1993). "To require counsel to examine portions of the record which have no relevance to petitioner's claims would be an exercise in futility." People v. Turner, 187 Ill. 2d 406, 410, 719 N.E.2d 725 (1999). Here, the trial and post-trial transcript are in excess of 1,800 pages. Each of the three attorneys informed the court that they had reviewed the relevant portions of the transcript. (R. P3, S3, NN3, S.C. II 82) APD Branch informed the court that she was "very well versed in his case" and that she had read all but one part of the transcript. (R. NN3) Therefore, each of the attorneys reviewed the transcript to afford petitioner reasonable representation under the Act.

Petitioner also alleges that the attorneys failed to consult with him as required by Rule 651(c). (Pet. Brf. 19, 27-28) However, under Rule 651(c), appointed counsel is not required to consult with petitioner a certain number of times. People v. Stewart, 121 Ill.2d 93, 103, 520 N.E.2d 348 (1988). In fact, Rule 651(c) merely requires that appointed counsel consult with petitioner to ascertain his constitutional claims, but there is no reason as a matter of law why this cannot be accomplished in a single meeting with defendant. See Stewart, 121 Ill.2d at 103. Here, each of the three APDs communicated with petitioner in person, by phone and by mail. (R. P3, S3, S.C. II 45-46, 74, 76, 77)

Contrary to petitioner's claims, APD Huge's representation was not hampered by the court's stringent time constraints upon him. (Pet. Brf. 27) See People v. Johnson, 232 Ill.App.3d 674, 678, 597 N.E.2d 1258 (5th Dist. 1992)(there is presumption that post-conviction counsel did what he attested in the certificate). In fact, APD Huge asked the court for a continuance because he had written a letter to petitioner and had not gotten a response. He went on to explain that he needed to fully communicate with petitioner in

21

order to file the Rule 651(c) certificate. The trial court agreed and stated "well, in filing the certificate, requires that the counsel fully inform his client and receive from his client all the information that this available so that the certificate has significance and meaning rather than just being a piece of paper filed in court." (R. UU4)

Petitioner also claims his attorneys failed to identify any meritorious issues that could have been set forth in an amended petition. (Pet. Brf. 19-20, 24-25, 29, S.C. II 73) However, post-conviction counsel is not required to amend a defendant's pro se petition to include new issues. People v. Speitzer,143 143 Ill.2d 210, 221, 572 N.E.2d (1991) Moreover, petitioner never asserts what, if any, meritorious claim could have been raised on his behalf. "Post-conviction counsel is not required to comb the record for issues not raised in the defendant's *pro se* post-conviction petition." People v. Rials, 345 Ill. App. 3d 636, 642, 802 N.E.2d 1240 (1st Dist. 2003). Post-conviction counsel is only required to investigate and properly present the *petitioner's* claims. Counsel's responsibility is to adequately present those claims which the *petitioner* raises. People v. Davis, 156 Ill.2d 149, 619 N.E.2d 750 (1993)(emphasis in original).

The case of People v. Rials, is instructive. In Rials, the petitioner filed a post-conviction petition attacking the constitutionality of his sentence and generally citing to several constitutional amendments. Rials, 345 Ill. App. 3d 642. Post-conviction counsel was appointed. Counsel did not amend the *pro se* petition but filed a Rule 651(c) certificate of compliance, indicating that the petition adequately presented the petitioner's claims. Rials, 345 Ill. App. 3d 642. The court granted the People's motion to dismiss. Rials, 345 Ill. App. 3d 642. On appeal, defendant contended that he was denied his right to reasonable

22

assistance of counsel because appointed post-conviction counsel failed to raise a meritorious issue. Rials, 345 Ill. App. 3d 641. The court affirmed the trial court and held that post-conviction counsel was not required to review the record to ascertain any potential claim of error not raised in the original petition or to amend the petition to include these claims; her failure to do so was not a breach of any of her Rule 651(c) obligations. Rials, 345 Ill. App. 3d 643.

Here, in contrast to petitioner's arguments on appeal, the APDs assigned to represent him were not required to scour the record for any potential claim of error or to amend the petition to include these claims. Counsel is only obligated to amend the petitioner's *pro se* petition where it is necessary to adequately present the claims petitioner had already raised in the petition and, while counsel may add new claims, he is not required to amend petitioner's *pro se* post-conviction petition to include new issues. Rials, 345 Ill. App. 3d 643.

Further, successive pro se petition at issue in the instant case was an exact Xerox copy of petitioner's first petition, and this Court had already decided that all of the claims were bared by *res judicata*. (R. C4-9, P.S.R. A4) See People v. Hendricks, No. 1-95-1570(1st Dist., November 21, 1994) (unpublished order pursuant to Rule 23).

In addition, petitioner claims that his attorneys' inaction caused "significant procedural hurdles" such as timeliness and restrictions on successive filings should he wish to file a meritorious issue in a future post-conviction petition. (Pet. Brf. 29) However, such an argument completely overlooks the fact that the instant petition was a successive filing and that he has already had the benefit of a timely post-conviction review by both this Court

23

and the trial court. Furthermore, none of the attorneys or petitioner have found a violation of petitioner's constitutional rights. Thus, the existence of a meritorious issue is purely speculative.

Petitioner further alleges that his attorneys failed to fully investigate his claims. (Pet. Brf. 19, 29) Petitioner maintains that his attorneys failed to locate witnesses he identified. (Pet. Brf. 19) However, the record indicates that petitioner's attorneys attempted to locate the witnesses petitioner wanted interviewed but were unsuccessful. (R. P3) Investigators were assigned to locate the witnesses but the investigator also was unable to locate them. (R. P3, S3) Then, when APD Namini indicated that he had finalized the issues and was ready to file a supplemental petition, petitioner brought witnesses for him to locate. (R. X3) Petitioner has not provided the names or affidavits from any witnesses who may have supported his case. People v. Treadway, 245 Ill.App.3d 1023, 1025, 615 N.E.2d 887 (1993)(petitioner must attach affidavit of such witnesses and explain the significance of their testimony). Thus, the attorneys' investigation constituted reasonable assistance under the circumstances.

Petitioner further asserts that APD Huge never reviewed or followed up on his predecessors' work. (Pet. Brf. 29) However, the certificate specifically states he reviewed petitioner's file, including the work of his two predecessors, the petition, the supplemental petition, and transcripts and he determined that the petition and supplemental petition adequately presented petitioner's claims. (Pet. Brf. 29, S.C II 81) Post-conviction counsel is not required to add new claims to petitioner's *pro se* petition and does not need to include every possible claim. It is reasonable to assume that APD Huge did not amend the petition

24

to include any additional claims or redraft the existing issues because no meritorious issues existed. Therefore, petitioner received reasonable assistance and all the attorneys were in substantial compliance with Rule 651(c).

Finally, petitioner alleges that his attorneys had a conflict of interest that precluded them from fully representing his interests. (Pet. Brf. 20-24) Petitioner relies on two letters sent to him by counsel to support his claims. (Pet. Brf. 21-24, S.C. II 76-78)  Contrary to petitioner's claims, it is apparent from the letters from APD Branch to petitioner that APD Branch provided reasonable assistance to petitioner and did not have a conflict of interest. (Pet. Brf. 24-28)(S.C. II 74, NN4-5, PP6-8) The correspondence between APD Branch and petitioner shows that APD Branch reviewed petitioner's file and corresponded with petitioner. (S.C. II 74, 76, 77-78, NN4-5, PP6-8) The letters show that they discussed the issues raised by petitioner's case. (S.C. II 74, 76, 77-78) Petitioner further alleges the supplemental petition based on Apprendi v. New Jersey was inadequate because the issue had been rendered moot. (S.C. II 48-50)  The August 13, 2001, letter follows up on a previous conversation between APD Branch and petitioner wherein APD Branch explained how the decision in People v. Vida negated the supplemental petition she filed. (S.C. II 76) APD Branch explained that she still filed the supplemental petition "to protect [petitioner's] *habeas corpus* rights." (S.C. II 76) She goes on to tell petitioner that she is "sensitive to any spark of hope that [was] extinguished" and the letter concludes with a post-script thanking petitioner for his "appreciation" of her work. (S.C. II 76) She vows to continue to look into review of petitioner's case.  The November 26, 2001 letter is also a response to a conversation between petitioner and APD. (S.C. II 77) In a sensitive but firm letter, APD

25

Branch again explains the shortcomings of petitioner's case and the lack of meritorious issues to present. (S.C. 77-78) APD Branch explained to petitioner that his original constitutional claims had already been addressed by the court and that he would need to go in a different direction. (S.C. II 77-78) APD Branch was straightforward with petitioner that "not every case was a winner" and that she "did not have much to work with." Despite her efforts, APD Branch told the trial court that petitioner "seems to misunderstand the process." (R. PP4) APD Branch states that she even sought a second opinion by speaking with her supervisors regarding petitioner's case on numerous occasions. (R. NN4-5, PP3-8, S.C. II 77-78) Therefore, APD Branch's representation was beyond reasonable assistance contemplated by the Act.

The trial court granted the People's motion to dismiss the petition and this Court can affirm the trial court's ruling on any grounds that support the trial court's ruling. People v. Thompkins, 121 Ill.2d 401, 428, 521 N.E.2d 38 (1998) Further, the dismissal of petitioner's post-conviction petition without an evidentiary hearing is reviewed *de novo*. People v. Williams, 205 Ill.2d 559, 570, 793 N.E.2d 632 (2002) Accordingly, even if Illinois Supreme Court Rule 651(c) had not been complied with, it would be harmless, where the petitioner would have been dismissed without an evidentiary hearing on other grounds. In this case, as shown above, petitioner failed to make a substantial showing of the denial of a constitutional violation. Thus, the petition would have been dismissed without an evidentiary hearing on his merits. Because this Court can affirm the trial court's ruling on any grounds, this Court should affirm the dismissal of petitioner's post-conviction petition.

26

Petitioner argues in the alternative that the trial court should have inquired further into his motions for new counsel. (Pet. Brf. 30) However, petitioner admits that the trial court did inquire into petitioner's third motion to remove counsel. (Pet. Brf. 31) The first two motions were boilerplate motions and dismissed by the trial court. The third motion expressed communication problems and general dissatisfaction with his attorney. After reviewing the motion and conferring with counsel, the trial court still denied the motion stating, "I do not feel that a change of his attorney is justified under the circumstances." (R. PP5) Like the constitutional right, the statutory right to counsel does not include the right to representation by counsel of the petitioner's choosing, or by counsel with whom petitioner has an amicable rapport. People v. Hardin, 217 Ill.2d 289, 840 N.E.2d 1205 (2005). Thus, the motions were properly denied.

Petitioner's reliance on People v. Moore, 207 Ill.2d 68, 78, 797 N.E.2d 631 (2003), is misplaced. Moore involved a trial court's failure to inquire into ineffective assistance of counsel at trial and effective assistance of counsel under the sixth amendment. The right to counsel for post-conviction proceedings is statutory, not constitutional, and thus post-conviction counsel is not held to the same standards required in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984)(stating the standard of review for claims regarding effective assistance of counsel and trial under the sixth amendment). Therefore, Moore is inapplicable to the present case.

Petitioner also relies on People v. Hardin, 353 Ill. App. 3d 522, 818 N.E.2d 1246(2[d] Dist.2004), aff'd, 217 Ill.2d 289, 840 N.E.2d 1205 (2005). (Pet. Brf. 31) However, Hardin actually supports the People's position. In Hardin, the defendant alleged in his post-

27

conviction petition that his public defender at trial was ineffective. Hardin, 217 Ill.2d at 291.
In his letter to the court, the defendant used the phrase "conflict of interest" but failed to set
forth any facts to establish actual conflict of interest.   Instead, the petitioner alleged
problems communicating and general dissatisfaction with his attorney and brought a motion
for new counsel based on conflict of interest. Hardin, 217 Ill.2d at 291. The appellate court
affirmed the trial court's dismissal of the petition, holding the defendant did not trigger a
duty in the trial court to inquire as to whether there was any actual conflict of interest.
Hardin, 217 Ill.2d at 297. The Illinois Supreme Court affirmed.  Hardin, 217 Ill.2d at 305.
The Court reasoned that there was no evidence to suggest that the attorney was unwilling to
pursue an ineffective assistance claim and that the attorney had complied with the
requirements of Rule 651(c).  Hardin, 217 Ill.2d at 305

In the instant case, petitioner has not plead facts to establish a "conflict of interest."
Nor does he claim ineffective assistance of trial counsel.  Petitioner is disgruntled with his
attorney.   Similar to Hardin, petitioner's communication and general dissatisfaction were
attributable to "unrealistic expectations" made on his attorney, not a conflict of interest. See
Hardin, 353 Ill. App. 3d at 528. As stated above, petitioner's attorney's provided reasonable
assistance in compliance with Rule 651(c). Thus, petitioner's motions for new counsel were
properly denied.

In sum, petitioner's attorneys met the requirements of Rule 651(c).  Post-conviction
counsel is not required to add new claims to petitioner's *pro se* petition and does not need to
include every possible claim.  The trial court properly dismissed petitioner's successive
post-conviction petition. This Court should affirm that ruling.

## II.

### PETITIONER HAS WAIVED HIS CHALLENGE TO HIS CONSECUTIVE SENTENCES BY FAILING TO INCLUDE IT IN HIS POST-CONVICTION PETITION.

Petitioner contends that pursuant to People v. Palmer, 218 Ill. 2d 148, 843 N.E.2d 292 (2006), his consecutive sentences should be modified to concurrent sentences. (Pet. Br. 34-35) ·Petitioner acknowledges that he has waived this issue by failing to include it in his post-conviction petition, but claims that he may raise it for the first time on appeal because the imposition of a sentence to be served consecutively to a natural life sentence is a void order which can be challenged at any time.

In response, the People point out that this Court may not consider petitioner's arguments as he failed to include the claim in post-conviction petition which was presented to the trial court. In fact, nowhere in the instant post-conviction petition did petitioner ever even insinuate he was improperly sentenced to consecutive sentences. Accordingly, petitioner is precluded from raising such a claim on appeal from the dismissal of that petition. See People v. Lee Jones, 211 Ill. 2d 140, 809 N.E.2d 1233 (2004) (holding that under 725 ILCS 5/122-3, defendants may not raise new claims on appeal from the summary dismissal of a post-conviction petition). See also People v. McNeal, 194 Ill. 2d 135, 147, 742 N.E.2d 269 (2000) (It is well established . . . that the defendant may not add an issue to the case while the matter is on review.); People v. Williams, 52 Ill. 2d 466, 468, 288 N.E.2d 353 (1972) (stating that an argument not raised in the post-conviction petition "cannot be advanced on appeal").

29

Of course, the People recognize that section 122-3 is not an ironclad bar to attempts to litigate claims not raised in the original or an amended petition. People v. De La Paz, 204 Ill. 2d 426, 433, 791 N.E.2d 489 (2003) (noting that the State failed to assert the defendant's failure to include the issue in his petition). However, in People v. Tremaine Jones, 213 Ill. 2d 498, 821 N.E.2d 1093 (2004), the Illinois Supreme Court made clear that it alone has the supervisory authority to override a defendant's failure to raise a post-conviction claim in the trial court and consider the merits of the new claim on appeal. The Court explained:

> In People v. De La Paz, 204 Ill. 2d 426, 791 N.E.2d 489 (2003), we were confronted with a case where the issue presented, the application of Apprendi to cases on collateral review, had not been included in the defendant's initial postconviction petition but, rather, was raised for the first time on appeal. We acknowledged the general principles surrounding the waiver rule, namely, that it is not jurisdictional. We then noted that the State had waived the waiver argument and addressed the merits of the Apprendi issue on that basis alone. See De La Paz, 204 Ill. 2d at 433. We hasten to add here that even had the State not waived the waiver, the extraordinary circumstances surrounding the Apprendi issue, i.e., the numerous conflicting opinions among the districts, would have led us to address the issue under our supervisory authority, which is an approach this court has taken in the past in postconviction cases where an issue is raised on appeal that had not been included in the initial petition. See Davis, 156 Ill. 2d 149 at 160 (reaching

30

issue not raised in postconviction petition under supervisory authority); see

also <u>McDunn v. Williams,</u> 156 Ill. 2d 288, 300-04, 620 N.E.2d 385 (1993)

(explaining nature of this court's supervisory authority). Our appellate court,

however, cannot similarly act. As we have repeatedly stressed, the appellate

court does not possess the supervisory powers enjoyed by this court (see Ill.

Const. 1970, art. VI, § 16 ("General administrative and supervisory authority

over all courts is vested in the Supreme Court"); <u>Marsh v. Illinois Racing

Board,</u> 179 Ill. 2d 488, 498, 689 N.E.2d 1113, 228 Ill. Dec. 692 (1997)

(noting that appellate court does not possess this court's supervisory powers))

and cannot, therefore, reach postconviction claims not raised in the initial

petition in the manner that we did in cases such as <u>Davis.</u> 213 Ill. 2d at 506-

07.

The Court then concluded:

<u>Our detailed discussion of this issue is intended to stress that our appellate

court is not free, as this court is under its supervisory authority, to excuse, in

the context of postconviction proceedings, an appellate waiver caused by the

failure of a defendant to include issues in his or her postconviction petition.</u>

<u>Id.</u> at 508 (emphasis added).

Therefore, because petitioner did not include any challenge to the consecutive nature

of his sentences in his successive post-conviction petition, it is clear that petitioner's

arguments may not be considered by this Court.

Apparently recognizing that this claim is not properly before this Court, petitioner attempts to argue that his consecutive sentences are void under Palmer and that therefore this Court has the authority to correct them. However, petitioner is wrong in his belief that Palmer prohibits consecutive sentences in cases such as the instant one. In Palmer, the Illinois Supreme Court held that because it was physically impossible to serve consecutive sentences of natural life imprisonment, the legislature did not intend for the consecutive sentencing statute (730 ILCS 5/5-8-4) to apply to such situations. 218 Ill. 2d at 164. The Court explained:

> It belabors the obvious to state that at the conclusion of a defendant's first natural-life sentence, his life is over. Further, the Department of Corrections cannot enforce an order imposing another natural-life sentence consecutive to it. Thus, consecutive natural-life sentences cannot follow in a series right after one another. Defendant cannot serve two natural-life sentences in sequence, nor will the total amount of two or more natural-life sentences ever be more than defendant's one life. There is only one way in which a defendant can serve the sentences, with his one life. Therefore, the sentences may not be consecutive, but must be concurrent because concurrent sentences are sentences which operate simultaneously. Black's Law Dictionary 1393 (8th ed. 2004).

Moreover, the purpose of the consecutive sentencing statute is not furthered by consecutive natural-life sentences. "By enacting the mandatory

32

consecutive sentencing provision of section 5-8-4(a), the legislature sought to punish the commission of triggering offenses more harshly than the commission of other crimes. [Citation.] This legislative intent would be defeated if the triggering and nontriggering offenses were treated in a like manner." People v. Curry, 178 Ill. 2d 509, 538, 687 N.E.2d 877 (1997). Here, the disparate treatment of triggering and nontriggering offenses is not at issue; therefore, our decision is consistent with Curry. Absent the death penalty, it is not possible to punish defendant more harshly. It is also clear that, by means of the Habitual Criminal Act, the legislature expressed the intent that habitual criminals, like defendant, are not capable of being rehabilitated, and should therefore be removed permanently from society. A consecutive natural-life sentence cannot advance that goal.

Id. at 167-68.

Unlike Palmer, petitioner here was not sentenced to consecutive natural life sentences. Rather, he was sentenced to a term of 30 years for aggravated criminal sexual assault, 15 years for aggravated kidnapping, and 5 years for concealment of a homicidal death to run concurrent to each other but to be served consecutively to a term of natural life for murder. (P.C. 23, TR.R. 1716-10) Moreover, because the aggravated criminal sexual assault and aggravated kidnapping convictions were the triggering offenses under section 5-8-4(a) rather than the murder conviction (see People v. Whitney, 188 Ill. 2d 91, 99-100, 720 N.E.2d 225 (1999) (holding that because murder was not a Class X or Class 1 offense, it

33

could not be a triggering offense under section 5-8-4(a))), the sentence for those offenses must be served "prior to, and independent of, any sentences imposed for nontriggering offenses." Curry, 178 Ill. 2d at 539. Since it is physically possible for petitioner to complete his sentence for those offenses before he begins serving his natural life sentence for murder, it is clear that the consecutive sentences were properly imposed. Any other conclusion would defeat the legislature's intent of "punish[ing] the commission of triggering offenses more harshly than the commission of other crimes" because the sentences for aggravated criminal sexual assault and aggravated kidnapping would effectively be subsumed by the murder sentence.

Therefore, for all the foregoing reasons, the People respectfully request that this Court reject petitioner's arguments and affirm the trial court's ruling denying leave to file a successive post-conviction petition.

34

## III.

**THE UNITED STATES SUPREME COURT'S DECISIONS IN <u>APPRENDI V. NEW JERSEY</u> AND <u>RING V. ARIZONA</u> DO NOT APPLY RETROACTIVELY TO CONVICTIONS WHICH WERE FINAL PRIOR TO THEIR ISSUANCE.**

Petitioner asserts that his natural life sentence for first degree murder is unconstitutional pursuant to <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S. Ct. 2348 (2000) and <u>Ring v. Arizona</u>, 536 U.S. 584, 122 S. Ct. 2428 (2002), and that the trial court erred in denying his successive post-conviction petition challenging that sentence. However, in <u>People v. De La Paz</u>, 204 Ill. 2d 426, 791 N.E.2d 489 (2003), the Illinois Supreme Court addressed the question of whether <u>Apprendi</u> should be applied retroactively to criminal cases in which direct appeals were exhausted before <u>Apprendi</u> was decided and concluded that <u>Apprendi</u> should not be taken outside the general rule barring retroactivity. <u>Id.</u> at 433, 434. Since petitioner's convictions became final shortly after this Court affirmed his convictions and sentence on direct appeal in 1993 (<u>People v. Hendricks</u>, 253 Ill.App.3d 79, 625 N.E.2d 79(1st Dist. 1993), petition for leave to appeal denied December 1, 1993 (No. 76244) (see <u>Griffith v. Kentucky</u>, 479 U.S. 314, 321 n.6, 107 S.Ct. 708, 712 n.6 (1987) ("Final" has been defined in the retroactivity context as "'a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.'")), it is clear that neither <u>Apprendi</u> nor its progeny applies in this case. Accordingly, the People respectfully request that this Honorable Court reject petitioner's arguments and affirm the trial court's ruling

35

dismissing his successive post-conviction petition. See also People v. Lee, 207 Ill. 2d 1, 5, 796 N.E.2d 1021 (2003) (holding that the trial court properly dismissed the petitioner's successive petition because De La Paz demonstrated that he could not satisfy the prejudice prong of the cause and prejudice test).

Moreover, even if Apprendi did apply retroactively, Apprendi still would not apply to the instant case because petitioner was found eligible for the death penalty. See People v. Ford, 198 Ill. 2d 68, 73-74, 761 N.E.2d 735 (2001). Accordingly, the People respectfully request that this Honorable Court reject petitioner's arguments and affirm the trial court's ruling.

Nevertheless, petitioner contends that the trial court improperly denied his petition because Apprendi and its progeny were substantive decisions rather than procedural (Pet. Br. 37), the Illinois Supreme Court wrongly decided De La Paz (Pet. Br. at 42), and because he was not properly found eligible for the death penalty. (Pet. Br. at 42)

In the present case, the trial court properly found petitioner eligible for the death penalty beyond a reasonable doubt. (TR.R. 1628) Following a bench trial and sentencing hearing, the trial court found petitioner was guilty of murder, over the age of 18, and the victim in this case was killed in the course of another felony aggravated criminal sexual assault as well as aggravated kidnapping. (TR.R. 1618) The court found either conviction would trigger eligibility. (TR.R. 1618) Specifically, the court found petitioner is:

eligible for the death penalty in a number of different ways, it seems to me.

He's been found guilty of a felony murder which is a qualifier. He qualifies

by virtue of the fact that murder in this case was committed in what might—
can only be characterized, it seems to me, as exceptionally heinous and brutal
indicative of wanton cruelty...there are no statutory mitigating circumstances
that the Court can point to in this case. (TR.R. 1696)

However, the court sentenced petitioner to a term of natural life, with a term of 30
years for aggravated criminal sexual assault, 15 years for aggravated kidnapping, and 5 years
for concealment of a homicidal death to run concurrent to each other but to be served
consecutively to a term of natural life for murder. (P.C. 23, TR.R. 1710). (TR.R. 1716)

Moreover, petitioner's other arguments challenging his natural life sentence based
upon <u>Apprendi</u> and its progeny are similarly devoid of merit as the Illinois Supreme Court
has expressly rejected identical claims.

Contrary to petitioner's protestations in <u>De La Paz</u>, the court expressly held that the
mandate of <u>Apprendi</u> is a rule of criminal procedure and not one of substantive criminal law.
The court stated:

Petitioner does not argue that retroactive application of Apprendi is
authorized under the first Teague exception. Nor would such an argument be
persuasive, if made-Apprendi did not "decriminalize" any conduct. <u>The case
dealt solely with procedural, not substantive, law.</u>

Accordingly, if Apprendi is to be applied retroactively, it can only be
because the rule announced in that case falls within the second Teague
exception. We conclude that this is not the case. Thus, Apprendi should not

37

be taken outside the general rule barring retroactivity.  204 Ill.2d at 434
(emphasis added)(citations omitted).

Despite this clear and unequivocal holding, petitioner further argues that under
Schriro v. Summerlin, 542 U.S. 348, 124 S. Ct. 2519 (2004) and the Illinois Supreme Court's
decision in People v. Swift, 202 Ill. 2d 378, 781 N.E.2d 292 (2002), Apprendi and Ring
must be applied retroactively since they resulted in a substantive change in Illinois law. (Pet.
Br. 37-39)  However, Schriro plainly held that "Ring announced a new procedural rule that
does not apply retroactively to cases already final on direct review." Schriro, 124 S. Ct. at
2526.

Moreover, petitioner is wrong when he claims that the Illinois Supreme Court erred in
De La Paz (Pet. Br. at 42), because Schriro demonstrates that that the Illinois Supreme Court
properly held that Apprendi does not apply retroactively. In Lucien v. Briley, 213 Ill.2d 340;
821 N.E.2d 1148 (2004), the court rejected the defendant's argument that De La Paz was
wrongly decided. The Lucien court stated:

Because Ring is simply an application of Apprendi, the conclusion that Ring
is not retroactive applies to Apprendi as well. Thus, contrary to plaintiff's
suggestion, De La Paz was correctly decided.

Id., 213 Ill.2d at 340. See also People v. Schrader, 353 Ill. App. 3d 684, 695; 820
N.E.2d 489 (2004) (stating that the issue of whether Ring is retroactive in Illinois is governed
by the same analysis as that which has been conducted with respect to Apprendi). As the

Illinois Supreme Court has ruled definitively on this matter, this Court must follow that decision.

Finally, in response to petitioner's claim that he was not properly found eligible for the death penalty, the People point out that defendant's arguments are not properly before this Court because no such claim was ever raised in his successive post-conviction which is the subject of this appeal, or in his initial post-conviction petition. Instead, the sole claim in his supplemental petition, which was entitled to Motion to Vacate Unconstitutional Sentence was that his natural life sentence violated <u>Apprendi</u>. (C. 20-29) Nowhere in this pleading does petitioner ever claim as he does now that the finding of death penalty eligibility was improper because the trial court misapprehended the law regarding death eligibility . . . [and] mistakenly assumed that the jury's general verdicts for murder and aggravated kidnapping were alone sufficient to support a finding of death eligibility. (Pet. Br. at 48). Accordingly, petitioner is precluded from raising such a claim on appeal from the dismissal of that petition. See <u>People v. Lee Jones</u>, 211 Ill. 2d 140, 809 N.E.2d 1233 (2004) (holding that under 725 ILCS 5/122-3, defendants may not raise new claims on appeal from the summary dismissal of a post-conviction petition). See also <u>People v. McNeal</u>, 194 Ill. 2d 135, 147, 742 N.E.2d 269 (2000) ("It is well established . . . that the defendant may not add an issue to the case while the matter is on review.); <u>People v. Williams</u>, 52 Ill. 2d 466, 468, 288 N.E.2d 353 (1972) (stating that an argument not raised in the post-conviction petition "cannot be advanced on appeal").

Of course, the People recognize that section 122-3 is not an ironclad bar to attempts to litigate claims not raised in the original or an amended petition. De La Paz, 204 Ill. 2d at 433 (noting that the State failed to assert the defendant's failure to include the issue in his petition). However, in People v. Tremaine Jones, 213 Ill. 2d 498; 821 N.E.2d 1093 (2004), our Supreme Court made clear that it alone has the supervisory authority to override a defendant's failure to raise a post-conviction claim in the trial court and consider the merits of the new claim on appeal. The Court explained:

In People v. De La Paz, 204 Ill. 2d 426, 791 N.E.2d 489 (2003), we were confronted with a case where the issue presented, the application of Apprendi to cases on collateral review, had not been included in the defendant's initial postconviction petition but, rather, was raised for the first time on appeal. We acknowledged the general principles surrounding the waiver rule, namely, that it is not jurisdictional. We then noted that the State had waived the waiver argument and addressed the merits of the Apprendi issue on that basis alone. See De La Paz, 204 Ill. 2d at 433. We hasten to add here that even had the State not waived the waiver, the extraordinary circumstances surrounding the Apprendi issue, i.e., the numerous conflicting opinions among the districts, would have led us to address the issue under our supervisory authority, which is an approach this court has taken in the past in postconviction cases where an issue is raised on appeal that had not been included in the initial petition. See Davis, 156 Ill. 2d 149 at 160 (reaching

40

issue not raised in postconviction petition under supervisory authority); see also <u>McDunn v. Williams,</u> 156 Ill. 2d 288, 300-04, 620 N.E.2d 385 (1993) (explaining nature of this court's supervisory authority). Our appellate court, however, cannot similarly act. As we have repeatedly stressed, the appellate court does not possess the supervisory powers enjoyed by this court (see Ill. Const. 1970, art. VI, § 16 ("General administrative and supervisory authority over all courts is vested in the Supreme Court"); <u>Marsh v. Illinois Racing Board,</u> 179 Ill. 2d 488, 498, 689 N.E.2d 1113, 228 Ill. Dec. 692 (1997) (noting that appellate court does not possess this court's supervisory powers)) and cannot, therefore, reach postconviction claims not raised in the initial petition in the manner that we did in cases such as Davis.

<u>Jones,</u> 213 Ill. 2d 498 at *13-14.  The Court then concluded:

Our detailed discussion of this issue is intended to stress that our appellate court is not free, as this court is under its supervisory authority, to excuse, in the context of postconviction proceedings, an appellate waiver caused by the failure of a defendant to include issues in his or her postconviction petition.

<u>Jones,</u> 213 Ill. 2d 498 at *15 (emphasis added).

Therefore, because petitioner did not include any challenge to the trial court's finding of death penalty eligibility in his successive post-conviction petition, it is clear that petitioner's arguments may not be considered by this Court.

41

For all the foregoing reasons, the People respectfully request that this Honorable Court reject petitioner's arguments and affirm the trial court's ruling dismissing his successive post-conviction petition.

## CONCLUSION

The People of the State of Illinois respectfully request that this Honorable Court affirm the trial court's dismissal of petitioner's successive post-conviction petition.

Pursuant to People v. Nicholls, 71 Ill. 2d 166, 374 N.E.2d 194 (1978) and relevant statutory provisions 725 ILCS 5/110-7(h)(West 2004) and 55 ILCS 5/4-2002.1 (West 2004), the People of the State of Illinois respectfully request that this Court grant the People costs and incorporate as part of its judgment and mandate a fee of $100.00 for defending this appeal. In addition, pursuant to People v. Agnew, 105 Ill. 2d 275, 473 N.E.2d 1319 (1985) and 55 ILCS 5/4-2002.1 (West 2004), the People respectfully request that this Court also grant the People an additional fee of $50.00 in the event oral argument is held in this case.

Respectfully Submitted,

RICHARD A. DEVINE,
State's Attorney,
County of Cook,
Room 309 - Richard J. Daley Center,
Chicago, Illinois 60602

Attorney for Respondent-Appellee

JAMES E. FITZGERALD,
ALAN J. SPELLBERG,
CRISTIN DUFFY,
Assistant State's Attorneys.
Of Counsel.

## CERTIFICATE OF COMPLIANCE

I certify that this brief conforms to the requirements of Rules 341 (a) and (b). The length of this brief, excluding the appendix, is 43 pages.

By: _____

ALAN J. SPELLBERG,
Assistant State's Attorney

**File Date:** 5-29-2008

**Case No:** 08cv1589

**ATTACHMENT #** _____

**EXHIBIT** N - Q _____

**TAB (DESCRIPTION)**

_____

No. 1-06-2093

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Respondent-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 88 CR 12517. |
| | ) | |
| JEROME HENDRICKS, | ) | Honorable |
| | ) | Wilber E. Crooks, |
| Petitioner-Appellant. | ) | Judge Presiding. |

---

## REPLY BRIEF AND ARGUMENT FOR PETITIONER-APPELLANT

MICHAEL J. PELLETIER
Deputy Defender

CAROLINE E. BOURLAND
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR PETITIONER-APPELLANT

RECEIVED
ORIGINAL APPEALS

JAN - 5 2007

309 RICHARD J. DALEY CENTER
STATE ATTORNEY'S OFFICE

EXHIBIT N

I.    **The trial court erred in denying Jerome Hendricks' *pro se* motions for substitution of counsel where the motions contained detailed and specific allegations of the neglect of his case by the assistant public defenders assigned to represent him, further supported by the demonstrable neglect that the trial court witnessed over the 7-1/2 year period that the Post-Conviction Unit of the Public Defender's Office represented Hendricks.**

   A.    <u>The trial court erred in failing to appoint Hendricks new counsel where it was glaringly apparent that the assistant public defenders from the Post-Conviction Unit were wholly neglecting Hendricks' claims of constitutional deprivations.</u>

Following a remand by this Court for post-conviction counsel's failure to comply with Rule 651(c) on November 18, 1996, Jerome Hendrick's post-conviction petition languished in the trial court until October 15, 2003, when a 651(c) certificate was filed and the trial court granted the State's motion to dismiss. While the petition languished, Hendricks filed three *pro se* motions to remove the Post-Conviction Unit of the Public Defender's Office ("Post-Conviction Unit") from his case. (S.C. II 31-34, 37-42, 72-78) Because these motions contained detailed and specific allegations of neglect and were substantiated by the trial court's own observations of the neglect of the various assistant public defenders appearing on Hendricks' behalf, the trial court erred by failing to appoint Hendricks new counsel.

The State avoids this issue by attempting to frame its argument as whether or not post-conviction counsel complied with Rule 651(c). (St. Br. 19) However, this is not the proper argument to resolve this issue. The thrust of Hendricks' appeal is that his *pro se* claims of the neglect of his case, coupled with the observably unreasonable performance of the attorneys periodically appearing in court on his behalf, adequately presented good cause to appoint new counsel. Hendricks' substantiated allegations that his constitutional claims were being neglected warrant that this case be remanded to the trial court for second stage

-1-

proceedings with counsel who will not neglect his claims.

In the context of criminal trials, a trial court must grant a motion for new counsel upon a showing of good cause, such as when the attorney is performing deficiently. *People v. Royark*, 215 Ill. App. 3d 255, 256 (3rd Dist. 1991); *People v. Wanke*, 303 Ill. App. 3d 772, 782 (2nd Dist. 1999). In order to substantially comply with Illinois Supreme Court Rule 651(c) (West 1994) ("Rule 651(c)") at the second stage of post-conviction proceedings, appointed post-conviction counsel must consult with the petitioner about his or her complaints, examine as much of the trial transcript as is necessary to adequately present and support those claims, shape the claims into proper legal form, and present the claims before the court. *People v. Davis*, 166 Ill. 2d 149, 163-64 (1993). Thus, because a post-conviction petitioner is entitled to reasonable assistance from appointed post-conviction counsel, *People v. Hardin*, 217 Ill. 2d 289, 299 (2005), a trial court should appoint the petitioner new counsel when post-conviction counsel is providing unreasonable performance, that is, when counsel is consistently unprepared and it is evident that the attorney is not complying with Rule 651(c). *See, e.g., People v. Lyons*, 46 Ill. 2d 172, 174 (1970). Here, an examination of the totality of the proceedings below shows that Hendricks' allegations presented good cause for the appointment of new counsel.

The first attorney assigned to represent Hendricks, Jerry Namini, indicated on several occasions that, from his consultations with Hendricks, he identified several witnesses he hoped to locate and several claims he wanted to place in an amended petition. (R. J2, P3, S3) However, Namini could not dedicate as much time to Hendricks' petition as he would have liked, and he eventually transferred the petition to another attorney in the Post-Conviction Unit. (R. T5, X4)

Under Rule 651(c), the attorneys from the Post-Conviction Unit were required to meet with Hendricks to ascertain his contentions and file an amended petition including those claims that were meritable. *People v. Hawkins*, 44 Ill. 2d 266, 298-99 (1970). Thus, in light of Namini's indications that he had identified claims and was working on an amended petition, the trial court should have been expecting that petition to be filed by whomever the case was transferred to. Yet, after Namini's representation of Hendricks terminated, that petition, including the claims he had been writing and the witnesses he had been trying to locate, was never again mentioned.

The State asserts that the failure of the successive post-conviction attorneys to obtain affidavits from these witnesses or include them in an amended petition stems from the fact that Namini could not locate the witnesses, not the result of neglect. This assertion is unwarranted. (St. Br. 24) The record instead indicates that Namini and his investigator remained in the process of locating these witnesses before Namini was transferred off the case. (R. P3) The last representation made by Namini was that, in addition to the issues he was ready to finalize before his departure, Hendricks had provided him with further issues that Namini believed sufficiently meritable to warrant investigation. (R. X3) The record does not reveal what happened to this work, but only that the attorneys who followed Namini never presented it to the trial court. The fact that the various attorneys who were assigned to represent Hendricks following Namini's departure did not mention these witnesses does not suggest that those witnesses do not exist, but confirms Hendricks' claims that the attorneys were neglecting his case.

Following Namini's departure, Marienne Branch was assigned to Hendricks' petition. Instead of responding to Hendricks' argument that good cause existed to remove

-3-

Branch and the Post-Conviction Unit from Hendricks' case, the State attempts to demonstrate that Branch's representation went "beyond reasonable assistance." (St. Br. 25-26) This misses the point. Hendricks asked for Branch to be removed from his representation because she was neglecting his case and ignoring his claims. (S.C. II48-50) Regardless of any actions Branch did take, the issue here is whether Hendricks' claims that she was ignoring his claims and refusing to place them in an amended petition demonstrated good cause to remove her. In any event, Branch's performance could hardly be described as reasonable.

In its present attempt to defend Branch's representation, the State adopts the position of the attorneys below; that is, that appointed post-conviction attorneys are only required to comply with Rule 651(c) with respect the claims presented in the written, *pro se* petition, and nothing more. The State asserts that Branch was not required to "scour" through the record (St. Br. 23), and that "Post-Conviction counsel is not required to add new claims to [a] petitioner's *pro se* petition and does not need to include every possible claim." (St. Br. 28) The State's assertion grossly exaggerates Hendricks' argument. Hendricks argues that the trial court erred in denying him new counsel because his attorneys were not complying with Rule 651(c) by shaping his own claims of constitutional deprivations into cognizable legal form, not because they were not scouring through the record to search for each and every possible claim. Rule 651(c) requires that post-conviction counsel meet with a petitioner to ascertain the petitioner's contentions and file an amended petition that includes those claims that are potentially meritable. *Hawkins*, 44 Ill. 2d at 298-99. Here, the record contains overwhelming evidence that the Post-Conviction Unit was not focused on its duty to shape Hendricks' personal claims into cognizable legal form.

-4-

The State fails to appreciate the degree to which Branch neglected her representation of Hendricks. During the years that Branch was assigned to represent Hendricks, she failed utterly to even familiarize herself with even the basics of his case. The State correctly notes that, on February 20, 2002, Branch indicated that she was "very well versed in his case." (St. Br. 21) The State incorrectly notes that Branch indicated that she read "all but one part of the transcript." (St. Br. 21) Branch indicated to the trial court on numerous occasions that she did not have time to read the record, and, indeed, that she did not believe that Rule 651(c) required her to do so. (Def. Br. 20-26) On the date cited by the State, Branch certainly did not indicate that she had read "all but one part of the transcript." (St. Br. 21) Instead, Branch stated, I'm very well versed in his case, except for the one - - this one part not having read the transcript yet." (R. NN3)

Moreover, immediately after Branch contended that she was well versed in the case, she needed to ask the trial court to remind her what sentence Hendricks had received. (R. NN3) Branch's inability to recall that her client had been sentenced to natural life in prison does tend to belie her claim that she was well versed in his case. In light of Hendricks' allegation in his motion for new counsel that Branch was doing nothing for his case (S.C. II 74), Branch's letter to Hendricks indicating her position that his petition gave her "nothing to work with," and Hendricks' explanation of the phone calls that occurred between them (Def. Br. 23-25), Branch's representations in court indicating neglect provided good cause to remove her. Because Branch asserted that the problems she held toward Hendricks' petition were shared by her office (R. NN4-5, PP7-8), good cause existed to remove the Post-Conviction Unit entirely as well.

The State suggests that the fact that Branch filed a document entitled "Supplemental

-5-

Post-Conviction Claim Under *Apprendi v. New Jersey*" indicates that Branch provided reasonable assistance. (St. Br. 20) However, the filing of this document does not negate Hendricks' allegation that she was neglecting his claims. Although Namini had been "in the process of writing" a supplemental petition that contained at least three issues before transferring the case to Branch (R. J2, L3, P3, S3, T5), this supplemental claim was the only substantive document ever filed on Hendricks' behalf. The *Apprendi* claim was the sole issue within that petition. Additionally, less than two months after Branch filed this document, she conceded the claim as moot based upon a case decided around the same time that the petition was filed. (S.C. II76)

Hendricks and the State agree that *People v. Rials*, 345 Ill. App. 3d 636 (1st Dist. 2003), is instructive. In *Rials*, 345 Ill. App. 3d at 642, this Court carefully explained the role of appointed post-conviction counsel, holding, "post-conviction counsel is not obligated to examine the entirety of the defendant's trial transcript and is only required to examine as much of the transcript as is necessary to adequately present and support those constitutional claims raised by the defendant." However, this Court never limited this duty to written claims, but instead requires only that the petitioner specifically inform the attorney in some fashion of the claims he hopes to present. Once the defendant relates to his attorney the identity of the witnesses and his contentions of constitutional deprivations, counsel has "a duty to attempt to contact those witnesses to obtain affidavits for the purpose of shaping the allegations in the petition into appropriate legal form." *Id.* at 642-43, citing *People v. Moore*, 189 Ill. 2d at 542-43.

Here, after Namini concluded his representation of Hendricks, the only status of the claims raised by Hendricks was presented to the trial court by Hendricks himself in his *pro*

-6-

*se* motions. On January 31, 2002, Hendricks informed the trial court that he knew the claims within the petition he originally filed were barred by *res judicata*, but that he did have meritable claims to present in an amended petition. (S.C. II 73) Hendricks attempted to present these claims to attorneys in the Post-Conviction Unit, but they refused to include the claims. (S.C. II 73) Hendricks attached to his motion support for his allegation; a letter from Branch informs Hendricks of her position that she had "nothing to work with" because Hendricks made an error in filing. (S.C. II 77)

The State's final argument is that the 651(c) certificate filed by Lindsay Huge, the final attorney from the Post-Conviction Unit to maintain some responsibility over Hendricks' petition, indicates that Hendricks received reasonable assistance below. (St. Br. 20) This argument is not persuasive. After the denial of Hendricks' third and final motion for the appointment of new counsel, Hendricks' petition languished for an additional 16 months before coming to resolution. Branch did not again appear in court. Huge began his representation of Hendricks on March 13, 2003, almost 10 months later, when he indicated that he had been "newly assigned" to represent Hendricks. (R. SS5) On that date, the trial court informed Huge that, if he did not file a 651(c) certificate within 30 days, he would get two more continuances, with time frames of two weeks and one week, and he would then "be held day to day until it is filed." (R. SS6) The State's assurance that these time constraints would not hamper Huge fails to appreciate that the trial court was not merely imposing time constraints. (St. Br. 21) The trial court never instructed Huge to meet with Hendricks and ascertain his claims of constitutional violations, but instead demanded Huge to file a 651(c) certificate. (R. SS6) Additionally, the punishment proposed by the trial court for a failure to comply with those timelines, being held in contempt on a daily basis,

-7-

served as sufficient motivation to complete a 651(c) certificate and dispose of Hendricks'
petition as quickly as possible, even if the claims that had been neglected now required time
to be prepared in proper legal form. The trial court's ultimatum indicates that, by this point,
even the trial court had forgotten that the purpose of appointing counsel to a petitioner at
the second stage of proceedings is to comply with Rule 651(c) by ensuring that the
petitioner's claims are adequately presented before the court, not just to file a certificate.

Huge ultimately complied with the trial court's order and filed a 651(c) certificate.
However, as explained in more detail in Hendricks' opening brief (Def. Br. 27-29), this
certificate does not cure the trial court's error in failing to appoint Hendricks new counsel.
As the State acknowledges (St. Br. 21), the mere filing of a 651(c) certificate only creates
a presumption of compliance with Rule 651(c), and that presumption can certainly be
rebutted by the record. *People v. Johnson*, 232 Ill. App. 3d 674, 678 (5th Dist. 1992). Here,
the record rebuts the claims made by Huge in his certificate.

Huge placed the 651(c) certificate on file on July 13, 2003 and indicated, "We'll
stand on the post-conviction petition." (R. WW2) As the State was not present on that date,
the certificate was not accepted by the court until October 15, 2004. (R. WW2-4) In that
651(c) certificate, Huge averred that he had consulted with Hendricks by mail and
ascertained his contentions. (S.C. II 82) Hendricks and the State agree that, on May 21,
2003, Huge requested a continuance so that he could "fully" communicate with Hendricks.
(Def. Br. 28, St. Br. 21) Thus, Huge had already prepared the 651(c) certificate and
indicated that it was ready to be filed well before he ever consulted with Hendricks. (R.
WW2, UU3) Moreover, the information that Huge wanted to "fully communicate" to
Hendricks concerned a recent Supreme Court case on *Apprendi*, the claim for which Branch

had already conceded as moot. (R. UU3)  Thus, Huge's assertion in that certificate that the

*pro se* petition and *Apprendi* claim adequately presented Hendricks' claims is disingenuous.

Without a consultation with Hendricks, Huge could not assert that the existing petition

adequately presented Hendricks' claims.  It must be remembered that Hendricks requested

new counsel for the very reason that the attorneys in the Post-Conviction Unit were not

listening to his claims.  The record suggests that Huge continued with this pattern of neglect.

Huge gave no indication orally or in the 651(c) certificate that he had examined, or was even

aware of, the claims and witnesses that Namini had been working on.

Hendricks presented the trial court with overwhelming evidence that the Post-

Conviction Unit was neglecting his post-conviction petition.  Hendricks' motions were

substantiated by the failure of the Post-Conviction Unit to advance Hendricks' petition in

a reasonably timely fashion, as well as the attorneys' own admissions in court that they were

not complying with Rule 651(c).  Yet, the trial court failed to appoint Hendricks new

counsel in the face of this neglect.  Accordingly, to ensure that Hendricks does receive the

level of assistance guaranteed by the Post-Conviction Hearing Act, this Court should vacate

the trial court's denial of his petition and remand for further proceedings with new counsel.

*Lyons*, 46 Ill. 2d at 174.

B.     In the alternative, this Court should remand this case with instructions to the trial court to make adequate inquiries into Henricks' *pro se* motions for counsel other than the Public Defender's Office.

A trial court must make adequate inquiries when a defendant alleges that his

appointed counsel is neglecting his case.  *People v. Moore*, 207 Ill. 2d 68, 78 (2003).  The

State notes correctly, as Hendricks explained in his opening brief (Def. Br. 30-31), that

*Moore* pertained to a motion for a new trial.  However, the same method of inquiry is

available here. The Post-Conviction Hearing Act guarantees an incarcerated individual in a post-conviction proceeding to the reasonable assistance of conflict-free counsel. Hendricks alerted the trial court on three occasions that his rights were being compromised. Thus, the trial court should have taken steps to determine whether Hendricks was being denied his statutory right to reasonable assistance of counsel. Instead, the trial court ignored Hendricks' first motion, denied his second without inquiry or explanation (R. CC3), and only explained the reason for its denial of Hendricks' thrid motion after the Public Defender's Office indicated that it did not oppose Hendricks' motion. (R. PP4)

The State defends the trial court's actions with respect to Hendricks' first two motions for new counsel by blindly asserting that they "were boilerplate motions." (St. Br. 27) However, Hendricks' *pro se* motions were not "boilerplate," but contained detailed and specific allegations of the mistreatment and neglect of his case as well as a conflict of interest. (S.C. II 33, 37-42) Even if the motions had been "boilerplate," the trial court still had a duty to inquire further into the factual matters underlying Hendricks' claims. *Id.* at 77-78.

Concerning Hendricks' third motion, the State mischaracterizes both the allegations contained within the motion as well as the reasons for the trial court's denial of the motion. First, the State argues that the motion expresses "communication problems and general dissatisfaction with his attorney." Actually, Hendricks alleged in detail that a conflict of interest with the Post-Conviction Unit was causing the attorneys within that unit to neglect or mistreat his case. (S.C. II 73-74) The "communication problems" to which the State refers to involved Hendricks' description of a phone call between himself and Marienne Branch, his current attorney, whereby she told him that she did not have to prepare any

-10-

amendments to his petition because it would be a waste of time, corroborated by a letter from Branch to Hendricks confirming her position. (S.C. II 74, 77-78) The "general dissatisfaction" that Hendricks expressed concerned his fear that Branch's personal beliefs were preventing her from doing anything toward his case. (S.C. II 74) These allegations certainly warranted inquiry by the trial court.

Second, the State contends that the trial court simply stated, "I do not feel that a change of his attorney is justified under the circumstances." (St. BR. 27) In fact, the trial court acknowledged the length of time that the case had been pending without resolution. (R. PP4) However, instead of making adequate inquiry into the cause of the delay or asking Hendricks to further explain his claims, the trial court denied the motion because it felt that changing counsel at that point would only exacerbate the problem. (R. PP4) Similarly, the trial court determined that Hendricks did not have a constitutional right to post-conviction counsel without considering Hendricks' statutory right to reasonable assistance from post-conviction counsel.

The trial court also ignored its own observations of neglect. At the time of Hendricks' motion, six years had elapsed since the petition was remanded. Additionally, Branch explained that the appellate court's mandate had caused a "problem" in her office because it did not comport with their view of the Post-Conviction Hearing Act or the duties required of post-conviction counsel under Rule 651(c). (R. PP6-8)

In *People v. Hardin*, 217 Ill. 2d 289, 299-300 (2005), the Illinois Supreme Court held that the distinction between a constitutional right to counsel and the statutory right to counsel makes no difference, and that a post-conviction attorney must be as conflict-free as a trial attorney. Two other aspects of *Hardin* are instructive. First, the Court affirmed the

-11-

decision of the appellate court's decision, which held that a trial court must make inquiry when a defendant alleges a conflict or interest or an unreasonable performance from an attorney at an early stage of the post-conviction proceedings. *People v. Hardin*, 353 Ill. App. 3d 522 (2nd Dist. 2004). Here, Hendricks alerted the trial court to a possible conflict of interest and a mishandling of his petition on three separate occasions, the first of which occurred before the Post-Conviction Unit had even been appointed. Yet, no inquiry was made.

Second, the Illinois Supreme Court ultimately affirmed the trial court's denial of the motion for new counsel because the petitioner had not alleged that the conflict of interest caused his post-conviction attorney to perform unreasonably. *Hardin*, 217 Ill. 2d at 305. As explained in Argument A, *supra*, Hendricks provided the court with specific and detailed examples of the unreasonable manner in which the Post-Conviction Unit was handling his petition, which were corroborated by the attorneys' own appearances and representations before the court. Because the trial court could only make a reasoned determination of the merits Hendricks' motions after an investigation into whether Hendricks provided his attorneys with claims, and whether his attorneys were neglecting those claims, the trial court's failure to conduct that investigation was in error. Accordingly, if this Court does not reverse the dismissal of Hendricks' petition, this Court should remand this matter to the trial court for the required preliminary inquiry into his claims and the appointment of alternative counsel to look into the merits of his *pro se* motions. *Moore*, 207 Ill. 2d at 78.

**II.    Jerome Hendricks' consecutive sentences of a 30-year term, 15-year term, and a 5-year term are void because the trial court imposed these sentences along with the current sentence of nature life for murder; therefore, this Court should modify the sentences to run concurrently with the natural life term.**

Additional sentences that run consecutively to a natural life sentence are void and

-12-

may instead only be imposed concurrently to the sentence for natural life. *People v. Palmer*, 218 Ill. 3d 148, 167-70 (2006). Thus, this Court must vacate the consecutive nature of Jerome Hendricks' 30-year, 15-year, and five-year sentences and modify all of his sentences to run concurrently. (Def. Br. 34) The State argues that: (1) *Palmer* only applies to situations where a defendant receives multiple natural-life sentences (St. Br. 32-34); and (2) Hendricks has forfeited his right to attack the inaccurate mittimus. (St. Br. 29-31)

Both of the State's arguments fail. First, the State's argument that *Palmer* is only applicable to multiple sentences of natural life imprisonment is in direct contravention of this Court's holding in *People v. Dixon*, 366 Ill. App. 3d 848 (1st Dist. 2006). There, this Court held that the rationale of *Palmer* applies with equal force when a defendant is sentenced to terms of years that are imposed consecutively to a natural-life sentence. *Id.* at 856. Just as the State acknowledges that it is impossible for a defendant to serve two natural-life sentences in one life (St. Br. 32), this Court held that it is equally impossible for a court to enforce any sentence imposed consecutive to a natural life sentence. *Id.* Accordingly, this Court ordered that the defendant's 30-year sentence for armed robbery must run concurrently to his natural life sentence for murder. *Id.* Thus, under *Palmer* and *Dixon*, Hendricks' consecutive sentences are void and all of the sentences imposing terms of years must be modified to run concurrently to the natural life sentence.

In *Dixon*, this Court also recited the established law in Illinois that a void sentence is never subject to forfeiture by a defendant. *Id.* at 855. There, just as in the instant case, the defendant did not raise his *Palmer* claim at his sentencing hearing or in the postsentencing motion. *Id.* However, this Court noted, "'It is well established that a sentencing judge cannot impose a penalty not otherwise allowed by the sentencing statute

-13-

in question.'" *Id*, quoting *Palmer*, 218 Ill. 2d at 154.

The State's reliance on *People v. Jones*, 213 Ill. 2d 498 (2004) (St. Br. 29-31), is misplaced because *Jones* did not propose that a defendant can ever forfeit his right to correct a void sentence. In *Jones*, 213 Ill. 2d at 505-08, the Illinois Supreme Court held only that a post-conviction petitioner may not claim that he or she received inadequate sentencing admonishments for the first time on the appeal of a post-conviction petition if the claim was not included in the *pro se* or amended petition filed with the circuit court, and that an appellate court may not use the fundamental fairness exception to the waiver rule as a means to consider an issue not preserved in the original or amended petition.

Thus, *Jones* has no relevance to the instant situation. Instead, the Court's more recent decision in *Palmer*, 218 Ill. 2d 148, is controlling. A void sentence may be challenged at any time, including the appeal of the dismissal of a post-conviction petition. *Id*. at 154; *Dixon*, 366 Ill. App. 3d at 855. This Court must order that Hendricks' void sentence be corrected so that all of the sentences imposing terms of year run consecutively to Hendricks' sentence of natural life in prison.

## III.    The holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), applies retroactively to invalidate Jerome Hendricks' natural-life sentence.

The State argues that in *People v. De la Paz*, 204 Ill.2d 426 (2003), the Illinois Supreme Court already held that *Apprendi*'s effect on the statutory aggravating factors required to impose an extended-term sentence for murder in Illinois is purely procedural for the purpose of determining whether the rule is retroactive under *Teague v. Lane*, 489 U.S. 299 (1989). (St. Br. 37-38) The Court did note at the outset of that decision that it could not fathom an argument that the *Apprendi* rule could meet *Teague's* first exception because *Apprendi* "did not 'decriminalize' any conduct," but "dealt solely with procedural, not

-14-

substantive law." *De la Paz*, 204 Ill.2d at 434. However, as the United States Supreme Court observed in *Schriro v. Summerlin*, rules considered "substantive" for *Teague* purposes are not limited to rules that fall under *Teague*'s first exception. *Summerlin*, 124 S.Ct. 2519, 2522-23 & n.4 (2004). For example, a "decision that modifies the elements of an offense is normally substantive rather than procedural," although such a decision may not decriminalize any conduct. *Id.* at 2524.

Jerome Hendricks has argued that, because *Apprendi*'s effect on the Illinois sentencing scheme at issue here did not merely change whether a judge or jury decides whether an aggravating factor exists, but also modified the elements of the greater offense of an enhanced murder by requiring those elements to be proven beyond a reasonable doubt, *Apprendi*'s rule did effect a substantive change on the statute. (Def. Br. 38-41) In *De la Paz*, the Illinois Supreme Court limited its consideration to whether the *Apprendi* rule was a "watershed rule of criminal procedure," and thus fell into *Teague's* second exception, and did not address whether any aspect of the *Apprendi* decision had a substantive effect on Illinois' sentencing scheme for murder. *De La Paz*, 204 Ill.2d at 434-39.[1]

The State also ignores a critical distinction between the U.S. Supreme Court's holding in *Summerlin* and the issue presented in this case. In *Summerlin*, the Court did not conclude that the only effect that *Apprendi*'s holding *could* have on a state statute is procedural. Rather, the Court concluded that the only effect *Apprendi*'s holding *did* have on *Arizona's* capital sentencing scheme was procedural. *Summerlin*, 124 S.Ct. at 2523-24. This is because, unlike the aggravating factor at issue in the instant case, Arizona's death

---

[1] In *De La Paz*, the defendant had been convicted of robbery and sentenced to an extended term sentence based on his prior convictions and the age of the victim.

penalty eligibility factors already had to be proven beyond a reasonable doubt at the time *Apprendi* was decided. *Id.* Thus, the only change wrought by *Apprendi* to the Arizona capital sentencing statutory scheme was to require that those factors be found by a jury rather than by a judge. *Id. Apprendi*'s effect on the Illinois statutory scheme at issue in this case is broader. Not only did *Apprendi* change *who* decides whether the aggravating factor exists, but it also elevated the burden of proof by which the State must prove that element to exist. *People v. Swift*, 202 Ill.2d 378, 392, 781 N.E.2d 292 (2002).

Thus, neither *Summerlin* nor *De La Paz* addressed whether a rule that has elevated the burden of proof for an element from a preponderance standard to a "beyond a reasonable doubt" standard constitutes "substantive" change for *Teague* purposes. However, in *Summerlin*, the Court did provide guidance for distinguishing between procedural and substantive rules. The Court explained that, while the failure to retroactively apply a new *procedural* rule will "merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise," 124 S.Ct. at 2523, the failure to retroactively apply a *substantive* rule will "necessarily carry a significant risk that a defendant stands convicted of 'an act that the law does not make criminal' *or faces a punishment that law cannot impose upon him.*" *Id.* at 2522 (emphasis supplied). Certainly a rule that increases the quantum of proof necessary to sustain a conviction on a particular element significantly reduces the risk that a defendant will be subjected to an increased "punishment that the law cannot impose." *Apprendi* had precisely this effect on the Illinois statute at issue in this case, *see Swift*, 202 Ill.2d at 392, and, per the definitions given in *Summerlin*, should be considered substantive, and therefore retroactive, for that reason.

The State also cites to *Lucien v. Briley*, 213 Ill. 2d 340 (2004), for support that the

-16-

Illinois Supreme Court has definitively ruled that *De La Paz* was not wrongly decided. (St. Br. 38-39) However, the State's reliance on *Lucien* is misplaced. Neither the defendant in *Lucien* nor in *De La Paz* argued that *Apprendi*'s rule effected a substantive change on Illinois law, and, thus, neither decision resolves the issue presented by Hendricks. *See Lucien*, 213 Ill. 2d 340. While *Lucien* concluded that *Apprendi*'s *jury requirement* is not a substantive rule, the *Lucien* court did not address whether the "beyond a reasonable doubt" requirement effected a substantive change. *Id.* at 347-48. Also, though the court found in *De La Paz* that *Apprendi* cannot satisfy the fundamental fairness requirement of *Teague*'s second, "watershed rule," exception, in doing so, the court focused only on *Apprendi*'s application of the Sixth Amendment's jury trial right to penalty-increasing elements, rather than the application of the reasonable doubt standard. *De La Paz*, 204 Ill.2d at 437. For these reasons, neither *De La Paz* nor *Lucien* resolves there issues presented here.

The State also relies upon *People v. Ford*, 198 Ill. 2d 68, 73-74 (2001), to argue that *Apprendi* does not apply to the instant case because Hendricks was found eligible for the death penalty. (St. Br. 36) Yet, *Ford* does not apply to the instant case because the trial court below never made a valid death eligibility finding. (Def. Br. 46-48) Specifically, although the trial court reasoned that Hendricks was eligible for the death penalty because the decedent was killed in the course of another felony, the trial court never determined, or even considered, whether Hendricks acted with the intent to kill the decedent, which is a necessary element under Ill. Rev. Stat., ch. 38, sec. 9-1(b)(6) (West 1988). (Def. Br. 46-48) The State does not contend that the trial court ever found that Hendricks acted with the intent to kill the decedent. Instead, the State concludes, without any supporting authority, that the trial court's finding that Hendricks was eligible for the death penalty was proper

-17-

because "the trial court found [P]etitioner was guilty of murder, over the age of 18, and the victim in this case was killed in the course of another felony[,] aggravated criminal sexual assault[,] as well as aggravated kidnapping [*sic*]." (St. Br. 36)  However, contrary to the State's baseless conclusion, legal authority clearly requires that, in addition to the elements cited by the State, the trial court also find that "the defendant acted with the intent to kill the murdered individual or with the strong knowledge that his acts created a strong probability of death or great bodily harm..." Ill. Rev. Stat., ch. 38, sec. 9-1(b)(6)(a)(i)(ii), (b),(c) (1988). Because the trial court never considered this element, the trial court never made a valid death eligibility finding, and *Ford* is inapplicable.

Finally, the State argues that Hendricks has forfeited his right to support or defend his position because he did not specifically allege that he was not properly found eligible for the death penalty below. (St. Br. 39-41)  However, this argument fails. As the State recognizes (St. Br. 18), Hendricks did file a supplemental post-conviction petition below alleging that his sentence was void and in violation of *Apprendi*. (C. 45)  Hendricks continues to maintain that his sentence violates *Apprendi*. Under *People v. Jones*, 213 Ill. 2d 498, 505-07, cited by the State (St. Br. 40), where an issue is included in a supplemental post-conviction petition, the issue is preserved for appeal. The issue here was preserved. Hendricks has not forfeited his right to dispute the State's argument that *Apprendi* does not apply to this case because the trial court found Hendricks eligible for the death penalty. (St. Br 26)  For all the foregoing reasons, Hendricks respectfully asks this Court to vacate his natural-life sentence and remand the cause for re-sentencing to a term not to exceed 60 years' imprisonment.

-18-

## CONCLUSION

For the foregoing reasons, Jerome Hendricks, Petitioner-Appellant, respectfully requests that this Court reverse the denial of his post-conviction petition and remand this matter for further proceedings and the appointment of new counsel. In the alternative, Hendricks requests that this Court remand this matter so that the trial court can inquire into Hendricks' *pro se* claims of a conflict of interest and unreasonable representation. Additionally, Hendricks asks this Court to modify his sentence so that all of his term-of-year sentences run concurrent to his sentence for natural life. Finally, Hendricks requests that this Court vacate his natural-life sentence and either re-sentence him to a term of 60 years or remand for re-sentencing to a term not to exceed 60 years.

Respectfully submitted,

MICHAEL J. PELLETIER
Deputy Defender

CAROLINE E. BOURLAND
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR PETITIONER-APPELLANT

-19-

## CERTIFICATE OF COMPLIANCE

I, Caroline E. Bourland, certify that this brief conforms to the requirements of Supreme Court Rule 341(a) and (b).  The length of this brief, excluding the appendix is 2 pages.


CAROLINE E. BOURLAND
Assistant Appellate Defender

NOTICE

The text of this order may be changed or corrected prior to the time for filing of a Petition for Rehearing or the disposition of the same.

FOURTH DIVISION
APRIL 26, 2007

No. 1-06-2093

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| v. | ) | No. 88 CR 12517 |
| JEROME HENDRICKS, | ) | Honorable Wilber E. Crooks, |
| Defendant-Appellant. | ) | Judge Presiding. |

## O R D E R

This is an appeal from an order of the circuit court of Cook County dismissing a successive postconviction petition filed by petitioner Jerome Hendricks.

The record on appeal discloses that following a bench trial in the circuit court of Cook County, Hendricks was found guilty of first degree murder, aggravated criminal sexual assault, concealment of a homicidal death and aggravated kidnaping. The trial court found defendant eligible for the death penalty, but sentenced him to natural life in prison for the murder, with sentences of 30 years for the aggravated criminal sexual assault, five years for the concealment of a homicidal death, and 15 years for the aggravated kidnaping, to be served concurrently to each

other, but consecutive to the natural life sentence. This court affirmed his conviction and sentence in People v. Hendricks, 253 Ill. App. 3d 79 (1993).

On February 24, 1994, Hendricks filed a petition for postconviction relief, raising the same arguments raised in his direct appeal. The trial court summarily dismissed the petition on March 21, 1994. On November 21, 1994, this court affirmed the trial court's dismissal of the petition.

Meanwhile, on April 19, 1994, Hendricks filed a successive pro se postconviction petition, raising the same arguments raised in his direct appeal and in his initial postconviction petition. On September 16, 1994, the trial court advanced the petition to the second stage of the proceedings contemplated by the Post-Conviction Hearing Act. On December 16, 1994, the State moved to dismiss the second petition on grounds of res judicata and waiver; the trial court granted the motion to dismiss.

On November 18, 1996, this court entered an order vacating the dismissal of the second petition and remanding the case in order that petitioner's counsel could comply with Rule 651(c).

From March 1997 through October 2003, the matter was continued on a number of occasions, as three different assistant public defenders handled petitioner's case. During the same period Hendricks filed three motions seeking the appointment of counsel from a bar association, alleging a conflict of interest. Hendricks does not identify any ruling on the first two motions, but the trial court denied the third such motion and Hendricks continued to be represented by the public defender. In 2001, one of petitioner's counsel filed a supplemental postconviction claim based on Apprendi v. New Jersey, 530 U.S. 66, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). The

1-06-2093

Rule 651(c) certificate was filed on July 30, 2003. On October 15, 2003, the trial court file stamped the Rule 651(c) certificate and dismissed the case.

On February 15, 2005, Hendricks filed a motion to vacate an adverse judgment, stating that he had not received notice of the October 15, 2003, dismissal until January 3, 2005. The trial court denied the petition, but on July 11, 2006, the Illinois Supreme Court issued a supervisory order allowing Hendricks to file a notice of appeal to this court from the dismissal of the successive postconviction petition.

On appeal, Hendricks argues that: (1) the trial court erred in denying his motions for substitution of counsel; (2) his sentences for aggravated criminal sexual assault, concealment of a homicidal death and aggravated kidnaping cannot be consecutive to the murder sentence; and (3) his natural life sentence is void under Apprendi. This court will address each argument in turn.

I

Illinois courts have allowed a successive postconviction petition to go forward only when the proceedings on the initial petition were "deficient in some fundamental way." People v. Szabo, 186 Ill. 2d 19, 23 (1998); People v. Flores, 153 Ill. 2d 264, 273-74 (1992). This limitation on the circumstances in which successive petitions are allowed is designed to achieve a balance between society's interest in the finality of criminal convictions and the individual defendant's interest in vindicating constitutional rights. People v. Szabo, 186 Ill. 2d at 23 Flores, 153 Ill. 2d at 274. Post-conviction relief is limited to constitutional deprivations occurring at trial or sentencing. 725 ILCS 5/122-1(a) (West 1994). Moreover, because there is no constitutional right to counsel in post-conviction proceedings (Pennsylvania v. Finley, 481 U.S. 551, 555, 107 S. Ct.

3

1-06-2093

1990, 95 L. Ed. 2d 539 (1987)), postconviction petitioners are entitled only to the level of assistance provided in the Act. People v. Turner, 187 Ill. 2d 406, 410 (1999). Thus, for example, "post-conviction counsel is not required to comb the record for issues not raised in the defendant's pro se post-conviction petition." People v. Helton, 321 Ill. App. 3d 420, 424-25 (2001).

In this case, Hendricks has not shown that the proceedings on his initial petition were deficient in any way, let alone that they were deficient in some fundamental way. Hendricks admits that his second petition was identical in substance to his first petition. Nor does Hendrix allege a fundamental deficiency in the first proceedings in any of his motions for substitution of counsel. Indeed, Hendricks points to no such deficiency in his brief before this court. Counsel for his successive postconviction petition were not required to scour the record for evidence outside petitioner's claims, which this court has already ruled were barred by res judicata and waiver in his first postconviction proceedings. The record does reflect that postconviction counsel supplemented his petition with a claim under the then-recent case of Apprendi.

Nevertheless, Hendricks claims that under People v. Lyons, 46 Ill. 2d 172 (1970), the trial court erred in failing to substitute new counsel or to make adequate inquiries into his allegations. However, a reading of Lyons reveals not only that it addressed an initial postconviction petition, but also that the trial court made no inquiry into the cause for the delay in preparation and documented them in the record. Lyons, 46 Ill. 2d at 175. In contrast, as is amply documented in petitioner's own brief, the trial court repeatedly made inquiries of the various counsel as to the status of their progress. Indeed, the trial court ultimately set ever-shorter continuances to ensure that the Rule 651(c) certificate was filed.

4

1-06-2093

This is not to say that the public defender's postconviction unit should not be embarrassed by its performance in this matter, beginning with the failure to file the Rule 651(c) certificate in the first instance. Given the duplicative nature of petitioner's second petition, it should not have taken over five years for counsel to discover whether the initial postconviction proceedings were fundamentally deficient and prepare the proper paperwork, including the certificate. Indeed, these matters should have been known to counsel when the successive petition was dismissed. However, given that Hendricks has made absolutely no showing that his first postconviction proceedings were fundamentally deficient, this court cannot conclude that his legal rights were prejudiced by counsels' delay in filing the Rule 651(c) certificate in this case. Hendricks complains of the procedural hurdles imposed by the Act, but these requirements would be imposed on any successive petition, including this one. Moreover, the general time limit for filing a third petition ran before the delay on remand to the trial court. Accordingly, we cannot conclude that the trial court's refusal to appoint outside counsel warrants reversing the trial court's dismissal in this case.

II

Hendricks next argues that his sentences for aggravated criminal sexual assault, concealment of a homicidal death and aggravated kidnaping cannot be consecutive to the natural life sentence for murder, citing People v. Palmer, 218 Ill. 2d 148 (2006) and People v. Dixon, 366 Ill. App. 3d 848 (2006).

The State first responds that the issue has been waived by petitioner's failure to raise the issue in his petition. Generally, any claim of substantial denial of constitutional rights not raised in an original or amended postconviction petition is waived. 725 ILCS 5/122-3 (West 2004).

5

1-06-2093

However, "[a] void order may be attacked at any time or in any court, either directly or collaterally." People v. Thompson, 209 Ill. 2d 19, 27 (2004). A sentence imposed without statutory authority is not subject to a defendant's forfeiture. Palmer, 218 Ill. 2d at 154. See also People v. Arna, 168 Ill. 2d 107, 113 (1995). Further, an argument that an order or judgment is void is not subject to waiver and may be raised for the first time on appeal from the dismissal of a postconviction petition because this argument "does not depend for its viability on his postconviction petition." Thompson, 209 Ill. 2d at 27. A sentencing judge cannot impose a penalty not otherwise allowed by the sentencing statute in question. Palmer, 218 Ill. 2d at 154. Additionally, "courts have an independent duty to vacate void orders." Thompson, 209 Ill. 2d at 27. Accordingly, defendant's argument is not waived.

In Palmer, the defendant received seven natural life sentences, to run consecutively. In addressing the consecutive nature of his sentences, the Palmer court recognized the impossibility of serving consecutive natural life sentences both according to natural law and within the plain meaning of the consecutive sentencing statute. 730 ILCS 5/5-8-4(a) (West 2004); Palmer, 218 Ill. 2d at 164. "This impossibility is based on the critical distinction between a term of natural-life imprisonment and that of a term of years, namely, the particular sentences' potential for release of defendant." Palmer, 218 Ill. 2d at 164. Unlike a term of years, the Code provides that "[n]o person serving a term of natural life imprisonment may be paroled or released except through executive clemency." 730 ILCS 5/3-3-3(d) (West 2004). The Palmer court further explained that its previous decisions had failed to acknowledge the impossibility of serving and enforcing sentences consecutive to death or life without parole. Palmer, 218 Ill. 2d at 165.

6

1-06-2093

Further, Palmer reasoned that it "belabors the obvious to state that at the conclusion of a defendant's first natural-life sentence, his life is over." Palmer, 218 Ill. 2d at 167. The Illinois Department of Corrections cannot enforce an order imposing another natural life sentence consecutive to it and thus, consecutive natural life sentences cannot follow in a series one after another. Palmer, 218 Ill. 2d at 167. "Defendant cannot serve two natural-life sentences in sequence, nor will the total amount of two or more natural-life sentences ever be more than defendant's one life. There is only one way in which a defendant can serve the sentences, with his one life." Palmer, 218 Ill. 2d at 167-68. Additionally, "[a]bsent the death penalty, it is not possible to punish a defendant more harshly." Palmer, 218 Ill. 2d at 168. Lastly, the Palmer court held that a defendant's actual sentence was governed by the laws of nature, regardless of whether a trial court imposed his sentence consecutively or concurrently. Because that defendant could only serve his natural life sentences concurrently, the Palmer court reversed the circuit court's imposition of consecutive natural life sentences and modified his sentences to run concurrently. Palmer, 218 Ill. 2d at 170.

Our supreme court has not addressed whether a term of years could be served consecutively to a natural life sentence, but in People v. Dixon, 366 Ill. App. 3d 848, appeal denied, 222 Ill. 2d 582 (2006), this court followed the logic of Palmer to hold that it was impossible to serve or enforce sentences consecutive to life without parole because there was only one way a defendant can serve a natural life sentence, with his one life. Dixon, 366 Ill. App. 3d at 856, citing Palmer, 218 Ill. 2d at 164. Thus, the court applied Palmer and vacated the consecutive nature of the defendant's sentences, ordering them to be served concurrently. Dixon, 366 Ill. App. 3d at 856.

7

1-06-2093

The State argues that under People v. Jones, 213 Ill. 2d 498 (2004), this court lacks the authority to address the issue for the first time on appeal, but Jones involved an issue of judicial admonishments, not the issue of a void sentence. Thus, we agree with Dixon and hold that the analysis and rationale of Palmer apply equally here. Accordingly, pursuant to Supreme Court Rule 615(b)(4) (134 Ill. 2d R. 615(b)(4)), we vacate the circuit court's order that defendant's sentences be served consecutively and modify his sentences to impose concurrent sentences.

III

Finally, Hendricks argues that his extended-term natural life sentence is invalid under the Supreme Court's decision in Apprendi. Hendricks acknowledges that our supreme court has already ruled that Apprendi does not apply retroactively to cases where--like his--the direct appeal was already decided before Apprendi was decided. People v. De La Paz, 204 Ill. 2d 426, 434 (2003); see Lucien v. Briley, 213 Ill. 2d 340, 347-48 (2004). Hendricks states he is preserving the issue for further review. However, under these circumstances, Hendricks cannot argue that this court may review the question de novo. This court is bound to follow the decisions of our supreme court on the issue. Moreover, the specific legal arguments raised by Hendricks here have been considered and rejected by this court in People v. Kelley, 366 Ill. App. 3d 676 (2006), and we find the reasoning of that opinion to be entirely sound.

For all of the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL, J., with QUINN, P.J., and NEVILLE, J., concurring.

8

NO. **104781**

# ORIGINAL

## IN THE ILLINOIS
## SUPREME COURT

PEOPLE ~~OF THE~~ STATE OF ILLINOIS

RESPONDENTS,

V.

JEROME HENDRICKS,

PETITIONER.

) PETITION FOR LEAVE TO APPEAL FROM THE
) APPELLATE COURT OF ILLINOIS, FIRST
) DISTRICT. NO. 1 - 06- 2093

)

) THERE HEARD ON APPEAL FROM THE CIRCUIT
) COURT OF ____COOK_____COUNTY,
) HONORABLE JUDGE: Wilber F.Crooks
)                    PRESIDING.

) CASE NO. 88 CR 12517


PETITION FOR LEAVE TO APPEAL



**FILED**

JUN 8 - 2007

**SUPREME COURT
CLERK**

BY *Jerome B. Hendricks*

PRO-SE.

N- 53807
Menard Correctional Center
P.o. Box 711
Menard, IL 62259

R - 042607
No RH

**EXHIBIT P**

IN THE ILLINOIS
SUPREME COURT

NO._____

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS<br>          RESPONDENTS,<br><br>V.<br><br>JEROME HENDRICKS,<br>          PETITIONER. | ) PETITION FOR LEAVE TO APPEAL FROM THE<br>) APPELLATE COURT OF ILLINOIS FIRST<br>) DISTRICT.  NO.  1-)06 - 2093<br>)<br>) THERE HEARD ON APPEAL FOR THE CIRCUIT<br>) COURT OF     COOK     COUNTY,<br>) HONORABLE JUDGE: Wilber E. Crooks<br>)             PRESIDING.<br>)<br>) CASE NO. 88 CR 12517<br>) |

PETITION FOR LEAVE TO APPEAL.

TO:  THE HONORABLE CHIEF JUSTICE AND THE ASSOCIATES JUSTICES OF THE SUPREME COURT
OF ILLINOIS.

MAY IT PLEASE YOUR HONORS:

I.

PRAYER FOR LEAVE TO APPEAL

Petitioner, Jerome Hendricks          , respectfully petitions this court to
exercise its sound judicial discretion and review a question of jurisdiction of a trial
court, circuit, granting him leave to appeal the decision of the Appellate Court,
    FIRST          , district.  This petition is brought under authority of Supreme
Court Rule 315.

IN THE ILLINOIS
SUPREME COURT

---

PEOPLE OF THE STATE OF ILLINOIS )

             RESPONDENTS, )     NO._____

                          )

   V. )

                          )

JEROME HENDRICKS, )

           PETITIONER. )

---

### MOTION TO PROCEED AS A POOR PERSON.

    NOW COMES, Jerome Hendricks_____, PRO-SE AND RESPECTFULLY REQUEST THIS
HONORABLE COURT FOR LEAVE TO PROCEED IN FORMA PAUPERIS IN THE ABOVE CAPTION.

    PETITIONER STATES THAT HE IS LEGALLY INDIGENT AND WITHOUT THE FUNDS OR MEANS
TO PAY COURT COST, GIVE SECURITY HEREOF, OR TO HIRE PRIVATE COUNSEL.

    PETITIONER HAS BEEN INCARCERATED SINCE Aug.1988 , AND NOT EMPLOYED AND DOES
NOT HAVE PROPERTY NOR STOCKS.

    WHEREFORE, PETITIONER PRAYS THAT THIS MOTION BE GRANTED.

DATE: 29 MAY 07             RESPECTFULLY SUMITTED,

                          /s/Jerome B. Hendricks

STATEMENT OF FACTS.

THE INSTANT APPEAL STEMS FROM THE APPELLATE COURT AFFIRMING, THAT THE PETITIONER WAS GIVEN FUNDAMENTAL FAIRNESS, THROUGH THE PUBLIC DEFENDERS OFFICE, REPRESENTING THE PETITIONER JEROME HENDRICKS, ON HIS POST CONVICTION PETITION. THAT SUBSITUTION OF COUNSEL AS WELL.

THE ILLINOIS APPELLATE COURT ERRED IN THE VACATING THE SENTENCE IN PART OF THE CONSECUTIVE SENTENCING.

THAT THE NATURAL LIFE SENTENCE SHOULD BE VOID UNDER THE CITE OF APPRENDI.

## ARGUMENT

The Illinois Appellate Court erred in denying the argument; That substitution
of counsel was not called for. That petitioner was given fundamental fairness
by the Public Defender Office representing petitioner. Even though it is said
that there is no- constitutional right to Counsel on a post- conviction pro-
cedding, ( Pennsylvania v. Finley ), 481 U.S.551, 555 107 S. Ct. In the instant
case the question is not about counselor being put on the case, THe question is
the counselor's that were appointed to the case for the post- conviction proceed-
ing for the petitioner were they exprience. Effective to prepare the petitioners
case. Post-Conviction counselor's duty is to defend what is put before them and
to amend any pro-se proceedings. The court appointed the Public Offeners Office
upon petitioner case to do just this, of which th P. D. Office put serval counsel-
ors on the petitioners post- conviction petition, within six or more years. Which
was a conflict of interest and caused the petitioner prejudice during the time
of the proceedings. Petitioner sent in his petition and was notified by the courts
so a copy was sent to the clerk office with a letter, stating that this is a
copy of the original petition . Wherefore the Clerk errored took the copy as
a second petition . Nevertheless the letter explain this was a copy of the or-
ignal . The Court acted on the petition (original) and took the copy as second
petition and denied the petition under frivious without merit, Once counsel was
on the post - conviction proceeding. It was explain to counsel what had taken
place on the petition, counsel went before Honorable Judge Holt and stated this
a duplicate of the original petition. Counsel ask trial court why am I here?
Counsel never tried to contact petitioner upon sevaral notifications explaining
the petition. Therefore Counsel was deficient and fundamental fairness was not
obtain. People v. Herron, 215 Ill. 2d Ct 187. The Appelate Court put a supreme
court violation 651(c) upon the case because of counselor's actions on the proc-
eedings, People v Cipe App 5 Dist 1974, 19 Ill. App. 3d. 432, 311, N.E. 2d. 721.
The petitioner went on to request sevaral times that this office was bias and

in dealing with his petition therefore a conflict of interest occurred.

## **CONCLUSION**

Wherefore, Petitioner Respectfully Request that this Honorable Court Grant his Petition FOR LEAVE TO APPEAL

/s/ J. Hendricks

## STATE OF ILLINOIS
### SUPREME COURT

At a Term of the Supreme Court, begun and held in Springfield, on Wednesday, the twenty-sixth day of September, 2007.

Present: Robert R. Thomas, Chief Justice
Justice Charles E. Freeman      Justice Thomas R. Fitzgerald
Justice Thomas L. Kilbride      Justice Rita B. Garman
Justice Lloyd A. Karmeier       Justice Anne M. Burke

---

On the twenty-sixth day of September, 2007, the Supreme Court entered the following judgment:

No. 104781

People State of Illinois,

    Respondent

    v.

Jerome Hendricks,

    Petitioner

Petition for Leave
to Appeal from
Appellate Court
First District
1-06-2093
88CR12517

The Court having considered the Petition for leave to appeal and being fully advised of the premises, the Petition for leave to appeal is DENIED.

As Clerk of the Supreme Court of the State of Illinois and keeper of the records, files and Seal thereof, I certify that the foregoing is a true copy of the final order entered in this case.

IN WITNESS WHEREOF, I have hereunto
subscribed my name and affixed the Seal
of said Court, this first day
of November, 2007.

*Juleann Hornyak*

Clerk,
Supreme Court of the State of Illinois



875 N.E.2d 1117 (Table)                                                                    Page 1
225 Ill.2d 651, 875 N.E.2d 1117 (Table), 314 Ill.Dec. 830
**(Cite as: 225 Ill.2d 651)**

People v. Hendricks
Ill. 2007.
(The decision of the Court is referenced in the
North Eastern Reporter in a table captioned
"Supreme Court of Illinois Dispositions of Petitions
for Leave to Appeal".)
                   Supreme Court of Illinois
                          People
                            v.
                     Jerome Hendricks
                       **NO. 104781**

                    SEPTEMBER TERM, 2007
                     September 26, 2007

Lower Court: No. 1-06-2093

Disposition: Denied.

Ill. 2007.
People v. Hendricks
225 Ill.2d 651, 875 N.E.2d 1117 (Table), 314
Ill.Dec. 830

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



EXHIBIT Q