CASE NO. _O8cv1589_

ATTACHMENT NO. _2_

EXHIBIT _____

TAB (DESCRIPTION) _____

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

STATE OF ILL
_____
Plaintiff-Petitioner,

v.

JEROME HENDRICKS
_____
_____
Defendant-Respondent.

**FILED**

NOV 23 1999

AURELIA PUCINSKI
CLERK OF THE CIRCUIT COURT
CRIMINAL DIVISION

P.C
No. 88-12517

The Honorable

LEO HOLT
_____,

Judge Presiding.

6TH DIST.    NOTICE OF FILING

TO:

Clerk of The Court
16501 S. Kedzie
Markham, IL 60426

PLEASE TAKE NOTICE that on or before the __4__ day of __March__
19__97__, I shall file with the Clerk of the Circuit Court of __Cook__
County, Illinois, the attached Plaintiff-Petitioner's
__MOTION FOR BAR ASSOCIATION ATTORNEY__
a copy of which is hereby served upon you.

By: Jerome Hendricks
Register Number N-53807
Post Office Box 711,
Menard, Illinois  62259

CERTIFICATE OF SERVICE

I, Jerome Hendricks , being duly sworn upon my oath
depose and state that I have served copies of the foregoing to the person named
above by placing such copies in the U.S. Mailbox at the Menard Correctional
Center, on the __4__ day of __March__ , 19__97__; postage
prepaid.

Jerome Hendricks
Affiant/

Subscribed and Sworn To Before

Me This __7__ Day of __March__ , 19__97__.

_____
NOTARY    PUBLIC    SEAL

38.

STATE OF ILLINOIS )
                  ) SS.
WILL COUNTY       )

**FILED**

NOV 23 1999

AURELIA PUCINSKI
CLERK OF THE CIRCUIT COURT
CRIMINAL DIVISION

### AFFIDAVIT OF SERVICE

I, <u>JEROME HENDRICKS</u>                    , being first duly sworn upon

my oath depose and state that I have served a copy of (<u>TWO</u>)

_____

to the person named below:

<u>MARKHAM CIRCUIT COURT CLERK.</u>

_____

_____

_____

by depositing the same in an envelope addressed to the person named

above and giving such envelope to a Stateville Correctional Center

Officer to affix proper first-class postage thereto and immediately

place such envelope in the United States Mailbox on this <u>12th</u>  day

of _____<u>OCT</u>_____, 199<u>9</u> .

Affiant) _J. Hendricks_____

Subscribed and Sworn To Before Me

This _12th_ Day of _October_____, 199<u>9</u> .

_Edmund Victor Butkiewicz_____
NOTARY              PUBLIC                    SEAL

```
..................................
:      OFFICIAL SEAL             :
: EDMUND VICTOR BUTKIEWICZ       :
: NOTARY PUBLIC, STATE OF ILLINOIS :
: MY COMMISSION EXPIRES 1-7-2002 :
..................................
```

PEOPLE VS. HENDRICKS,
PC.NO.88-12517

**FILED**

NOV 23 1999

6thDIST CLERK OF COURTROOM **AURELIA PUCINSKI**
MARKHAM, ILL.                  CLERK OF THE CIRCUIT COURT
                                           CRIMINAL DIVISION

THE HONORABLE, LEO HOLT.
JUDGE PRESIDING,


IAM J. HENDRICKS; THE REASON FOR THIS LETTER, IS THAT IN 1997, march. I BROUGTHFORTH TO

THIS COURT, A MOTION FOR APPOINTMENT OF COUNSELOR, OTHER THEN A PUBLIC DEFENDER.

THIS MOTION WAS NEVER ANSWERED, NOR ACTED UPON. AND I WAS APPOINTED A PUBLICDEFENDER,

NOW THE COUNSELOR THAT I HAVE HAS A CONFLICT OF INTREST, THIS COUNSELOR IS NOT

DOING ANYTHING FOR THE CASE, WHICH HE HAS HAD THIS CASE FOR TWO YEARS AND NOW THIS

COUNSELOR JERRY NAMINI IS NOW GOING DOWN TO THE TRIALCOURT, SO HE NOW WANT TO RUSH THE

PROCEEDURES OF MY APPEAL. THIS IS TOTALLY UNFAIR FOR THIS COUNSELOR TO NOW PUT ANY THING

TOGETHER ON THIS CASE WITH THE TIME I HAVE, THIS CASE WAS SENT BACK BECAUSE A COUNSELOR

DID NOT GIVE ME A FAIR FIGHTING CHANCE,


I SHOULD BE APPOINTED COUNSEL OUTSIDE THE PUBLIC DEFENDERS OFFICE TO FIGHT MY CASE.

ATTACH IS ANOTHER COPY OF APPOINTMENT OF COUNSELOR OTHER THEN THE PUBLIC DEFENDERS

OFFICE.

WITH THIS I DO LOOK FOR A RESPOND UPON THIS MOTION, AND A COPY OF THE MOTION THAT WAS

SENT TO THIS COURT IN MARCH OF 1997.


                              ∨

                   SIGN.
                      NO. N-53807.

                   p.o. box. 112

                   STATEVILLE, ILL. 60434.

                        40.

FILED

DEC 3 0 1999

AURELIA PUCINSKI
CLERK OF CIRCUIT COURT

STATE OF ILLINIOS;
    Plaintiff, ·

)
)
)
)
-v-                                    )
                                       )    Case No: _6822_-88-12517
                                       )
                                       )
JEROME HENDRICKS.        ,             )
    Defendant(s)                       )

### MOTION FOR APPOINTMENT OF COUNSEL

NOW COMES JEROME HENDRICKS         , the plaintiff, abd moves this
Honorable Court for an order appointing counsel to represent him in the instant
cause. POSTCONVICTION - OTHER THEN, PUBLIC DEFENDER

In support of his motion, plaintiff submits as follows: ·

1.    That he is presently a prisoner in the State of Illinois, currently
incarcerated at the Stateville Correctional Center, P.O. Box-112, Joliet, Illinois
60434.

2.    That he is without sufficient funds or other assets with which to pay
an attorney to represent him in this action, or to pay the cost of these proceedings.

3.    That this action contains complex legal issues which plaintiff, a layman,
cannot properly address due to his lack of formal legal training and inexperience.

4.    That based on the foregoing, plaintiff's access to the court will not be
meaningful, effective or adequate without assistance of counsel to represent him.

WHEREFORE, plaintiff prays that counsel be appointed to represent him in
this action.

Respectfully Submitted,

/S/ J. Hendricks

41.

MOTION TO HONORABLE LEO HOLT ROOM# 104
BRIEF -ARGUEMENT FOR COUNSELOR:OTHER THEN THE PUBLIC DEFENDERS OFFICE.


J, HENDRICKS, POST CONVICTION #6822
THIS IS A ARGUEMENT IS THAT THE ILL APPELLATE COURT SENT MY

POST CONVICTION BACK TO THE CIRCUIT COURT, BECAUSE THE PUBLIC
DEFENDERS OFFICE MIS HANDLED MY POST CONVICTION IN THE START.

NOW THE PUBLIC DEFENDER THAT IS HANDLING THE CASE NOW IS SHOWING
THAT HE CAN NOT HANDLE THIS CASE  TO  THE BEST THAT HE IS
SUPPOSE TO DEAL WITH MY CASE. NOW THIS COUNSELOR IS SUPPOSE TO
RETURN TO THE CIRCUIT COURT LEVEL. AND THIS IS KNOW AIDE TO ME

WE  HAVE HAD MANY OF ARGUEMENTS UPON THE FIGHT OF MY CASE.

INWHICH HE HAD TOLD ME THAT HE WAS REQUEST TO GET OFFF MY CASE,

I''VE SENT TO THIS COURT TWO COPIES OF A MOTION TO HAVE ANY THING
OTHER THEN PUBLIC DEFENDER. SO AT THIS TIME I WOULD LIKE TO HEAR
SOMETHING UPON THIS MOTION.


J Hendricks

42.



**THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**Criminal Division**
**2650 S. California**
**Chicago, Illinois 60602**
**(773) 869-3140**

AURELIA PUCINSKI
Clerk of the Court

DATE: *1-5-00*

TO: *Mr. Hendricks*

CASE NO. # *88-12517*

PLEASE BE ADVISED THAT THE CLERK'S OFFICE IS IN RECEIPT OF YOUR INQUIRY DATED: *12-30-99*

ADDITIONAL INFORMATION IS REQUIRED IN ORDER TO PROCESS YOUR REQUEST. WE ARE RETURNING YOUR CORRESPONDENCE FOR THE REASON(S) LISTED BELOW:

{ X }    CASE NUMBER MUST BE INCLUDED.

{   }    CASE NUMBER GIVEN AND NAME DO NOT MATCH.

{   }    THE REFERENCE NUMBER THAT WAS PROVIDED IS INCORRECT, PLEASE PROVIDE US WITH THE CORRECT CASE NUMBER.

{ X }    IF CASE NUMBER IS NOT AVAILABLE, YOU NEED TO SEND US YOUR FINGERPRINT NUMBER (IR#), DATE OF BIRTH, NAME WITH CORRECT SPELLING (PRINT) USED WHEN ARRESTED, ALONG WITH THE DATE OF ARREST IN ORDER FOR US TO DO A NAME SEARCH TO FIND THE CASE NUMBER.

{   }    PLEASE EXPLAIN YOUR PURPOSE FOR THE REQUEST.

{   }    YOUR REQUEST HAS BEEN FORWARDED TO/OR CONTACT THIS AGENCY:

STATE'S ATTORNEY OFFICE
RICHARD J. DALEY CENTER
ROOM 500 - 5TH FLOOR
CHICAGO, ILLINOIS 60602

CRIMINAL DIVISION (FELONY)
2650 SOUTH CALIFORNIA-ROOM 526 A
CHICAGO, ILLINOIS 60608

PUBLIC DEFENDERS OFFICE
69 W. WASHINGTON
CHICAGO, ILLINOIS 60602

STATE'S ATTORNEY OFFICE
2650 SOUTH CALIFORNIA 11 D 54
CHICAGO, ILLINOIS 60608

COURT REPORTER'S OFFICE
2650 S. CALIFORNIA AVENUE
CHICAGO, ILLINOIS 60608

{   }    YOUR PETITION HAS BEEN FILED: _____

{   }    OTHER/COMMENTS: _____

PLEASE RETURN YOUR REQUEST WITH THE ABOVE **CORRECT** INFORMATION AND WE WILL THEN BE ABLE TO FURNISH ANY RECORDS THAT ARE AVAILABLE.

RESPECTFULLY,

*Aurelia Pucinski*
AURELIA PUCINSKI
CLERK OF THE COURT

43.



JACK NEVEN
DEPUTY CLERK #RM 119
AM CIRCUIT COURTS; 6TH DIST
SO. KEDZIE
; IL. 60426.

AURELIA
CLERK OF THE
CIRCUIT
JAN 23  10 4

44.

STATE OF ILLINOIS        )
                         )   SS
COUNTY OF COOK           )

Johnny Davis
FILED
MAR 13 2001
DOROTHY BROWN
CLERK OF CIRCUIT COURT

IN THE CIRCUIT COURT OF COOK COUNTY
CRIMINAL DIVISION

JEROME HENDRICKS,                )
          Petitioner,            )   INDICTMENT NO. 88 CR 12517
                                 )
     -vs-                        )
                                 )
                                 )
PEOPLE OF THE STATE OF ILLINOIS, ) Honorable Judge LEO E. HOLT,
                                 ) Presiding.
          Respondent.            )

## MOTION FOR CONTINUANCE

NOW COMES the petitioner, JEROME HENDRICKS, by his attorney, RITA A. FRY, Public Defender of Cook County, through her Assistant, MARIENNE BRANCH, and moves this Honorable Court to grant his Motion for Continuance. In support thereof, Counsel for Petitioner states that:

1. On the last court date, December 13, 2000, this court ordered the undersigned to file a supplemental petition for Post-Conviction Relief or a response to the Motion to Dismiss of the State on this court date, March 13, 2001.

2. By the last court date, counsel for Mr. Hendricks had:

   • spoken with him regarding his issues;

   • read most of the file and outlined possible areas to follow-up;

   • ordered and received the trial file;

   • sought to acquire the appellate briefs without

45.

success; and,

- sought to acquire the police reports without success.

3.    The above progress revealed that there may be an *Apprendi* issue in this case and counsel for Mr. Hendricks believes a more persuasive argument will be formed on his behalf when the Supreme Court of Illinois makes a decision which may be dispositive of this issue.

4.    Between the last and this court date, counsel for Mr. Hendricks has been under deadlines which resulted in five (5) cases disposed, two (2) cases set for evidentiary hearings (within a week in one case and less than two (2) months in another)and two (2) cases set for argument on the Motion To Dismiss of the State (one in less than a month, the other in less than two (2) months)

5.    Because of the foregoing, the undersigned cannot certify to this court that she has complied with Illinois Supreme Court Rule 651(c). While the Public Defender was appointed to this case in March of 1997 and there are only nine (9) cases (out of thirty six (36)) to which this Assistant Public Defender was appointed before Mr. Hendrick's case, the appointment of the Public Defender to those nine (9) cases ranges from two (2) months earlier to four (4) years earlier. The obligation to comply with Illinois Supreme Court Rule 651(c) applies to those clients as well.

6.    In this case there is no substantive difference between filing a supplemental Petition for Post-Conviction Relief or a

*46.*

response to the Motion To Dismiss of the State because, for counsel for Mr. Hendricks to be able to address the issues raised by the State, she would, in effect, have to achieve full compliance with Illinois Supreme Court Rule 651(c). To do this would necessitate that she neglect not only previously filed cases, but also those which are in the final stages of the Post-Conviction process.

WHEREFORE, petitioner, JEROME HENDRICKS, respectfully requests that this Honorable Court grant a continuance to September 5, 2001

Respectfully submitted,

Rita A. Fry
Public Defender of Cook County

BY MARIENNE BRANCH
Assistant Public Defender

Attorney #30295
Rita A. Fry, Cook County Public Defender
Marienne Branch, Assistant Public Defender
69 W. Washington, 17th Floor
Chicago, Il 60602
(312) 603-8300

47.

STATE OF ILLINOIS     )
                      )  SS
COUNTY OF COOK        )

IN THE CIRCUIT COURT OF COOK COUNTY
CRIMINAL DIVISION

JEROME HENDRICKS,        )
                         )
          Petitioner,    ) INDICTMENT NO. 88 CR 12517
                         )
          -VS-         )
                         )
                         )
PEOPLE OF THE STATE OF ILLINOIS, ) Honorable JUDGE HOLT
                         ) Presiding.
         Respondent.  )

## NOTICE OF FILING AND CERTIFICATE OF SERVICE

TO:  Joe Nigro, ASA
     Cook County States Attorney's Office
     Assistant State's Attorney
     Special Remedies Unit
     2650 S. California
     Chicago, Illinois   60608

PLEASE TAKE NOTICE that on June 25, 2001, I filed with the Clerk of the Circuit Court of Cook County, Chicago, Illinois, Criminal Division, **Petitioner's Partial Supplemental Petition for Post Conviction Relief** a copy of which is attached hereto, which I certify that I caused to be served upon you by hand delivery, on June 25, 2001.

                    Respectfully submitted,
                    Rita A. Fry
                    Public Defender of Cook County

                    BY: MARIENNE BRANCH
                    Assistant Public Defender

ATTORNEY NO. 30295
Rita A. Fry, Cook County Public Defender
69 West Washington - 17th Floor
Chicago, Illinois   60602
(312) 603-8300

**IN THE CIRCUIT COURT OF COOK COUNTY**
**COUNTY DEPARTMENT - CRIMINAL DIVISION**

JEROME HENDRICKS,                           )
           Petitioner,                )
                      )     NO.  88 CR 12517
    vs.                                     )
                      )     Judge Holt,
PEOPLE OF THE STATE OF ILLINOIS,            )     Presiding.
           Respondent.                )

## SUPPLEMENTAL POST-CONVICTION CLAIM UNDER
### *APPRENDI V. NEW JERSEY*

NOW COMES, the petitioner, JEROME HENDRICKS, through his attorney, RITA A. FRY, the Public Defender of Cook County, Illinois, by her able Assistant, MARIENNE BRANCH, and presents this supplemental claim to the previously filed *pro se* petition for Post-Conviction Relief pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122 - 1 et seq.

In support thereof, Mr. Hendricks states as follows:

1. Following findings of guilty, Jerome Hendricks was sentenced on August 26, 1991 to the following terms in the Illinois Department of Corrections:

    ▸       natural life for 1st degree murder,

    ▸       thirty (30) years for Aggravated Criminal Sexual Assault (ACSA),

    ▸       five (5) years for concealment of a homicidal death and

    ▸       fifteen (15) years for aggravated kidnaping (R. 1716 and 1717).

In doing so, this Honorable Court found that the murder of Denise Johnson was exceptionally brutal and heinous, indicative of wanton cruelty and that it was committed in the course of another felony (aggravated kidnaping). (R. 1713 and 1714). This court also found that exceptions to the consecutive sentencing statute (IRS Ch. 38, TP 1005-8-4 (a)) applied and ordered that the sentences on the convictions for ACSA, concealment of a homicidal death and aggravated kidnaping run consecutive to the sentence on the conviction for 1st degree murder. (R. 1716 and 1717). In addition, the court found that consecutive sentencing was required to protect the public from further criminal conduct by Mr. Hendricks (IRS Ch. 38, TP 1005-8-4(b)) (R. 1713).

The United States Supreme Court held that, "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be . . . proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435 AT 455 (2000).The Illinois Appellate Court held that *Apprendi* applies to life sentences in murder cases

*49.*

and also that the prescribed maximum penalty for murder did not include life imprisonment when the defendant killed only one (1) person. People v. Lee, 318 Ill App. 3d 417, 743 N.E. 2d 1019 (1st Dist. 2000); see also People v. Joyner, 317 Ill. App. 3d 93, 739 N.E. 2d 594 (2d Dist. 2000).

Thus, because the murder of Denise Johnson was not proved beyond a reasonable doubt to be exceptionally brutal or heinous, indicative of wanton cruelty or to have been committed in the course of another felony, aggravated kidnaping, Mr. Henrick's sentence to natural life violates the Illinois and the United States constitutions and he must therefore be re-sentenced to between twenty (20) and sixty (60) years imprisonment.

Again, the factors this Court considered when imposing consecutive sentences on Mr. Hendricks were neither proved beyond a reasonable doubt nor included in his indictment.

While it is true that the Illinois Supreme Court held that *Apprendi* does not apply to consecutive sentences, that Court acknowledged that *Apprendi* could be construed to apply to those cases where the "real world" time to which a defendant was sentenced increased that sentence. (People v. Wagener, Docket #88843 (2000)) slip opinion at 15. This is particularly so in a case such as this where the natural life sentence is unconstitutional and, by law, Mr. Hendricks will be re-sentenced to a determinate term of years. But more importantly, the United States Supreme Court has not excluded consecutive sentences from *Apprendi*.

WHEREFORE, Petitioner, Jerome Hendricks, respectfully and hopefully prays that this Honorable Court grant him the following relief on this supplemental claim:

1.    that this court vacate his sentence and grant a new sentencing hearing which complies with Apprendi v. New Jersey, and/or

2.    any other relief that this Court deems just.

Respectfully Submitted,

RITA A. FRY
Public Defender of Cook County

BY: _____
       Marienne Branch
       Assistant Public Defender

Attorney No. 30295
Rita A. Fry, Cook County Public Defender
Marienne Branch, Assistant Public Defender
69 West Washington, Suite 1700
Chicago, Illinois  60602
(312) 603-8300

2

5 b.

We have another inmate in the Illinois penitentiary system that is similarly situated, who strives at every opportunity to be released. And I take that to mean that one does not accommodate one's self to penitentiary life to the extent that the desire to be free abates entirely. It's always an aspiration because it's consistent, I believe, with the human personality.

Having said all those things, when you turn to look at this defendant, the crime of which he's found guilty of, it is clear, it seems to me, that he clearly represents a defendant that society cannot tolerate in our midst.

It clearly seems to me that he represents, and likely will continue to represent, certainly to the extent where society ought not run the risk of being the kind of person who ought never be allowed outside of the institution.

The defendant, in addition to being eligible for capital punishment by virtue of having committed an offense, or committed the offense of murder while committing the felony offense of aggravated kidnapping, also is eligible by virtue of the fact that his crime is one which meets the definition of

being exceptionally heinous and brutal, indicative of wanten cruelty, which qualifies him for a natural life sentence and/or imposition of the death penalty.

The definition of brutal, as used in the context that I just used it, according to People versus Lucas, is defined to mean grossly ruthless, devoid of mercy or compassion, cruel and cold blooded. And the term "heinous" is defined also by People versus Lucas, means shockingly evil, grossly bad, enormously and flagrantly criminal.

And it seems to me that this defendant's crime meets the definitions. And so it is the Court's intention not to mitigate the punishment of this defendant, but to take the opportunity, as I view it, to extract from him the retribution that I think society is entitled to. And in doing that it strikes me that that is inconsistent with taking his life and short circuiting the retribution that I think we are entitled to.

Were it within my personal provence to do, I would try as nearly as is humanly possible to make certain that the defendant enjoyed a long life, and as he goes through the aging process that is

associated with a long life, and begins to find the deterioration of body that is accompanied with aging.

I would provide him with the very best medical care available so that I could extend his life for as long as possible. During all that period of time he would know that he is an unacceptable member of our society, that he's never going to reenter society, that all of the things which go to make up life as we understand it in view of--and given the differences in how we individually approach life, nonetheless there are some things which are consistent with it, and one of them, or several of them, are the right to enjoy the companionship of friend and family, to have love and nurchering and caring, to be able to make decisions about one's life on a minimal basis at least, that are unaffected by the will of others.

Be able to come and go limitedly as one pleases. To make those kinds of fundamental decisions on a day to day basis. All of that he will not be permitted to do. And to know that no matter what else happens the certainty of his life is that day after day, week after week, month after month, year

after year, decade after decade, he will be in the Illinois State Penitentiary until he dies. Hopefully, of old age.

And so it is the judgment and sentence of the court that on Count One of the indictment charging the defendant with the offense of first degree murder, that the defendant be sentenced to a term of natural life in the Illinois Department of Corrections. The provisions of Section 1005-8-4(b) require the Court to impose consecutive-- To impose concurrent sentences on a defendant who is found guilty of multiple offenses; to impose concurrent sentences unless one of the offenses for which the defendant was convicted was a Class X or Class One Felony, and the defendant inflicted severe bodily injury or where the defendant was convicted of a violation of Section 12.13 or 12-14 of the code.

On Count 10 of the indictment charging the defendant with the offense of aggravated criminal sexual assault, the defendant is sentenced to a term of thirty years in the Illinois Department of Corrections, said sentence to run consecutive with the natural life sentence imposed in Count One.

On Count 12 of the indictment charging

the defendant with the offense of concealment of a homicidal death, the defendant is sentenced to a term of five years in the Illinois Department of Corrections, said sentence to run concurrent with the sentence imposed on Count 10, the aggravated criminal sexual assault count, and consecutive with the sentence imposed on Count One.

On Count 14, the aggravated kidnapping offense, the defendant is sentenced to a term of fifteen years in the Illinois Department of Corrections, said sentence to run concurrent with the sentence imposed on Counts 12 and 12, the aggravated sexual assault count, and the concealment of a homicidal death count, and consecutive with the sentence imposed on Count One, the first degree murder count.

The mittimus is to issue. Mr. Hendricks, you have a right to appeal from the judgment and sentence of the Court. In order to do that you must, within thirty days from today's date, file with the clerk of the court a written notice of appeal.

If you are indigent and cannot afford counsel, I will appoint an attorney to represent you without any cost to you whatsoever to assist you in

1747    55

Docket No. 88843–Agenda 6–November 2000.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. MICHAEL WAGENER, Appellant.

JUSTICE FREEMAN delivered the opinion of the court:

Defendant, Michael Wagener, was charged with first degree murder (720 ILCS 5/9–1(a) (West 1994)) and concealment of a homicidal death (720 ILCS 5/9–3.1 (West 1994)). After a bench trial in the circuit court of Cook County, he was found guilty but mentally ill of both offenses. The court imposed consecutive prison sentences of 50 years for his murder conviction and 5 years for his conviction of concealment of a homicidal death. The appellate court affirmed. No. 1–98–1561 (unpublished order under Supreme Court Rule 23). We granted defendant leave to appeal (177 Ill. 2d R. 315), and affirm his convictions and sentence.

BACKGROUND

Defendant does not challenge the sufficiency of the evidence of his guilt, nor does he contend that the circuit court's conclusion that he was guilty but mentally ill, rather than legally insane, was against the manifest weight of the evidence. Accordingly, we will set out only the facts relevant to the issues raised in this appeal. For context, we note that the State proved the following facts in its case in chief. On December 2, 1994, defendant fatally bludgeoned and strangled his wife, Mary, in their home in Chicago. He wrapped her body in plastic and hid it under the back porch of the house. He then drove to Menominee, Wisconsin, with his daughter, Ashley, where he checked into a hotel using an assumed name and address. He was arrested at the hotel on December 5. While in police custody, he gave a statement in which he admitted killing his wife and secreting her body at their house.

Defendant's trial strategy was an insanity defense. See 720 ILCS 5/6–2 (West 1994). He called his two sisters as witnesses. Both stated that defendant blamed the September 1989 loss of his job at a major Chicago law firm on a conspiracy to "ruin his life." Defendant believed that people were putting chemicals in his work

**FILED**

JUN - 1 2001

area so that he would itch and sneeze all day; "messing with" papers in his office and talking about him behind his back; "doing things" to his telephone; and following him. In subsequent conversations, defendant stated that the firm had "enlisted the CIA, the FBI, the post office, just about everybody to continue to ruin his life." He believed that there were listening devices in his house and spent thousands of dollars to have the house "debugged" multiple times. His sisters tried to get defendant psychological help, but he refused.

Defendant was also extremely overprotective of his children and fearful for their safety. When his son, Richard, died of sudden infant death syndrome in February 1994, defendant believed his wife had killed the child and he became very depressed. Although defendant and his wife began to go to marriage counseling in the summer of 1994, defendant remained depressed and continued to believe that his wife had killed their son.

One of defendant's sisters, Cathy Michiels, had several telephone conversations with defendant on December 3, 1994, the day after the murder. In the course of the conversations, defendant told her that his daughter was with him and was all right, but when Michiels asked him if he had hurt his wife, he told her "it was bad, that it was very bad, it was extreme." Defendant told Michiels that his wife had confessed to killing their son. Defendant told Michiels that he needed a lawyer. Michiels referred him to Thomas Gooch, an Illinois attorney.

Michiels was subsequently contacted by a different attorney, who told her that defendant wanted Michiels to come to Menominee and get Ashley before defendant turned himself in. Michiels contacted Gooch to ask if he knew anything about the arrangement. Michiels testified that Gooch told her that "he was aware of it, that he thought that [defendant] was—that it wasn't really an attorney that called him. He thought it was [defendant] pretending, you know, to be an attorney and he wasn't driving up to Menominee so he had contacted the Chicago Police Department and called them." Michiels did drive to Menominee to take custody of Ashley.

During cross-examination, the State asked Michiels, over objection, about another conversation she had with attorney

-2-

51.

Gooch. Michiels denied recalling that Gooch had told her that defendant had "asked him what the punishment was for committing a capital crime and crossing state lines." However, she admitted that it was possible that she had so told a police officer.

The defense also called three expert witnesses on the topic of defendant's sanity. Drs. Larry Heinrich, Marvin Schwarz, and Matthew Markos all testified that at the time of the crime defendant was insane—he could not appreciate the criminality of his offense, nor could he conform his conduct to the requirements of the law. Each believed that defendant had a delusional psychotic disorder, and that he had killed his wife because he believed his wife meant to kill Ashley, just as he believed she had killed their other child.

Each expert testified that he had reviewed the police reports generated in connection with the case. One of these reports contained the statement with which the State had cross-examined Michiels—that attorney Gooch had told her that defendant had asked him about the penalty for committing a capital crime and then crossing state lines. The State cross-examined all of the defense experts with this statement, over defendant's continuing objection to the line of questioning.

In rebuttal the State presented an expert, Dr. Carl Wahlstrom. Dr. Wahlstrom agreed with the defense experts that defendant was suffering from a "persecutory" type of delusional disorder. However, he testified that defendant was sane at the time of the crime. One of the reasons for his conclusion was defendant's ability to "very carefully conceal the crime." Specifically, Dr. Wahlstrom relied in part on the fact that when defendant arrived in Menominee, "he contacted an attorney regarding the issue of having—regarding everything that is involved and the commission of two [sic] capital crimes."

The court found defendant guilty but mentally ill of first degree murder and concealment of a homicidal death. At a subsequent hearing, defendant was sentenced to consecutive terms of 50 years' imprisonment for his murder conviction and 5 years' imprisonment for his concealment conviction. The appellate court affirmed. No. 1–98–1561 (unpublished order under Supreme Court Rule 23). We granted defendant leave to appeal. 177 Ill. 2d R. 315.

-3-

58.

ANALYSIS

Defendant argues that his conviction should be reversed for violations of his attorney-client privilege. In supplemental briefing, defendant contends that his sentence should be vacated because section 5–8–4(b) of the Unified Code of Corrections (730 ILCS 5/5–8–4(b) (West 1994)), under which his sentences were made consecutive, is unconstitutional.

## 1. Attorney-Client Privilege

Defendant first contends that he is entitled to a new trial. He argues that his conversation with attorney Gooch was protected by the attorney-client privilege, and that the disclosure in the police report that he had asked attorney Gooch about the penalty for committing a capital crime and crossing state lines breached his privilege. He maintains that the State's use of this evidence at trial constituted reversible error. Although the State does not admit that the statements to attorney Gooch were privileged, it contends that assuming that they were initially privileged, defendant waived the privilege. We agree.

We assume, *arguendo*, that defendant's conversation with attorney Gooch was privileged at the time it occurred. We also assume that the privilege remained intact despite the disclosure by Gooch to defendant's sister, her subsequent disclosure to the police, and the recording of that statement in the written report. Indeed, the State does not maintain that any privilege which might have attached to defendant's statement was waived by any of these acts. Instead, the State asserts that defendant waived any privilege by giving the police report containing the statement to his *testifying* expert witnesses.

We begin with the general rule that experts may be cross-examined for the purpose of discrediting their testimony, as well as to ascertain which factors were taken into account and which were disregarded in arriving at these conclusions. *People v. Williams*, 181 Ill. 2d 297, 329 (1998). Opposing counsel is allowed to cross-examine an expert with respect to material which he has reviewed but upon which he did not rely. *People v. Page*, 156 Ill. 2d 258, 275 (1993), quoting *People v. Pasch*, 152 Ill. 2d 133, 179

-4-

59.

(1992). Indeed, counsel may venture *beyond* the facts supported by the record in inquiring as to what changes of conditions would affect his opinion. *Williams*, 181 Ill. 2d at 329; *Page*, 156 Ill. 2d at 275; *Pasch*, 152 Ill. 2d at 179. Thus the general rule would allow the State to cross-examine the experts with the content of a report included among the materials which they considered in forming their opinions.

Defendant does not dispute the above law, but contends that general rules regarding cross-examination of experts are beside the point in this case. He contends that it is irrelevant that the police report containing his statement was supplied to the psychiatric experts testifying for the defense because the statement was still privileged. Defendant argues that "in insanity cases the attorney-client privilege applies to information received by the defense mental health experts in the same manner as it does to the defendant's attorney." He relies on this court's opinion in *People v. Knuckles*, 165 Ill. 2d 125 (1995). There, this court extended attorney-client privilege to communications between a defendant and a psychiatric expert, in order to "accord the common law attorney-client privilege the scope necessary to meet the complexities of modern legal practice." *Knuckles*, 165 Ill. 2d at 135.

However, *Knuckles* distinguished between testifying and nontestifying experts. Communications between a defendant raising an insanity defense and a psychiatric expert are protected by the attorney-client privilege only so long as "the psychiatrist will not testify and the psychiatrist's notes and opinions will not be used in the formulation of the other defense experts' trial testimony." *Knuckles*, 165 Ill. 2d at 140. Contrarily, the privilege is waived "with respect to the testimony and reports of those experts who are identified by the defense as witnesses who will be called to testify on behalf of the defendant at trial, or whose notes and reports are used by other defense experts who testify." *Knuckles*, 165 Ill. 2d at 139.

Thus *Knuckles* is of no help to defendant. Drs. Heinrich, Schwarz and Markos all testified at trial. Thus, the attorney-client

privilege between them and defendant was waived.[1] *Knuckles*, 165 Ill. 2d at 139. Because the communication had been revealed to these persons with whom the privilege was waived, defendant waived the privilege entirely. See *Profit Management Development, Inc. v. Jacobson, Brandvik & Anderson, Ltd.*, 309 Ill. App. 3d 289, 299 (1999) ("[a]ny disclosure by the client is inherently inconsistent with the policy behind the privilege of facilitating a confidential attorney-client relationship and, therefore, must result in a waiver of the privilege"); *People v. Childs*, 305 Ill. App. 3d 128, 136 (1999) (same); *Fidelity & Casualty Co. v. Mobay Chemical Corp.*, 252 Ill. App. 992, 1000-01 (1992) (same).

Defendant relies on *Regan v. Garfield Ridge Trust & Savings Bank*, 220 Ill. App. 3d 1078 (1991), for the proposition that a party does not waive the protection of the attorney-client privilege by calling a witness who does not testify as to privileged matters. In *Regan*, the plaintiff called his prior attorney as a witness to testify regarding the attorney's dealings with defendants and their lawyers. When defendants attempted to cross-examine the attorney regarding conversations with his client, the attorney refused to answer, asserting attorney-client privilege. The appellate court agreed with the trial court that the privilege had not been waived. *Regan*, 220 Ill. App. 3d at 1090-91.

*Regan* is distinguishable because, in the instant case, the waiver did not depend on the substance of the witnesses' testimony. The mere fact *that they testified* waived attorney-client privilege between them and defendant. *Knuckles*, 165 Ill. 2d at 139. While we agree with *Regan* that the attorney-client privilege is not waived by simply calling an attorney as a witness to matters not involving the privilege, the attorney-client privilege between a defendant and a psychiatric expert depends upon the expert's not testifying *at all*. Once this fact changes, the privilege is waived. *Knuckles*, 165 Ill. 2d at 139-40. Accordingly, the privilege was

---

[1]Neither party raises any argument regarding whether the privilege was waived when defendant's trial counsel initially listed the experts as testifying witnesses, or remained intact until the experts actually took the stand. Accordingly, we express no opinion on this question.

61.

waived in its entirety with respect to all information defendant had shared with the experts, just as it would be by the voluntary revelation of a privileged communication to any person with whom the privilege was not shared. See *Profit Management Development*, 309 Ill. App. 3d at 299; *Childs*, 305 Ill. App. 3d at 136; *Fidelity & Casualty Co.*, 252 Ill. App. 3d at 1000-01.

In his opening brief to this court, defendant argues that the privilege could not have been waived by attorney Gooch's disclosure to defendant's sister. He bases this contention on statements in various cases that a client will not be held to have waived the privilege through an unauthorized disclosure by his counsel. See, *e.g., Himmelfarb v. United States*, 175 F.2d 924 (9th Cir. 1949); *Mendenhall v. Barber-Greene Co.*, 531 F. Supp. 951 (N.D. Ill. 1982); *Chavez v. Watts*, 161 Ill. App. 3d 664 (1987); *People v. Mudge*, 143 Ill. App. 3d 193 (1986); 8 J. Wigmore, Evidence §2325 (McNaughton rev. ed. 1961). However, as previously noted, the State does not argue that Gooch's disclosure constituted a waiver of the privilege.

Moreover, as the State notes in response, this rule does not vitiate the waiver which occurred in this case when defendant's *trial* counsel disclosed the information to the testifying expert witnesses. The very section of Wigmore upon which defendant relies states that

> "[s]ince the attorney has implied authority from the client *** to make admissions and otherwise to act in all that concerns the management of the cause, all disclosures (oral or written) *voluntarily* made to the opposing party or to third persons in the course of negotiations for settlement, or in the course of taking adverse steps in litigation *** are receivable as being made under an implied waiver of privilege, giving authority to disclose the confidences when necessary in the opinion of the attorney. This is so unless it appears that the attorney has acted in bad faith toward the client." (Emphasis in original.) 8 J. Wigmore, Evidence §2325 (McNaughton rev. ed. 1961).

This clearly supports the State's position that trial counsel's disclosure of the information waived whatever privilege may have existed. See also American Bar Association Section of Litigation,

*The Attorney-Client Privilege and the Work-Product Doctrine*, at 165 (3d ed. 1997) ("[a]lthough the client is the holder of the privilege, it is ordinarily the lawyer's obligation to claim the privilege on the client's behalf, even in the client's absence. Indeed, in most instances, it is through actions taken (or not taken) by counsel that courts find a waiver has occurred"). This court has previously allowed trial counsel to waive a client's privilege. See *People v. Newbury*, 53 Ill. 2d 228, 234-35 (1972) (attorney waived client's physician-patient privilege by questioning physician on direct examination). See also *People v. Kliner*, 185 Ill. 2d 81, 118 (1998) (in the course of litigation, "[a] defendant is bound by the acts or omissions of his counsel"); *cf. People v. Segoviano*, 189 Ill. 2d 228, 240 (2000) ("[t]he only trial-related decisions over which a defendant ultimately must have control are: whether to plead guilty; whether to waive a jury trial; whether to testify in his own behalf; whether to appeal; and whether to submit a lesser-included offense instruction").

All of the authorities upon which defendant relies refer to unauthorized or inadvertent disclosure. In this case defendant has not even argued that the disclosure by trial counsel to the expert witnesses was either unauthorized or inadvertent, and it was defendant's burden to so establish. *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn, Inc.*, 132 F.R.D. 204, 207 (N.D. Ind. 1990); *cf. United States v. Bump*, 605 F.2d 548, 551 (10th Cir. 1979).

Any attorney-client privilege which might have protected the conversations between defendant and attorney Gooch was waived by the disclosure of the statement to defendant's testifying expert witnesses. Accordingly, we need not reach the State's alternative arguments that the statements were not privileged and that any error in their admission was harmless.

## II. Constitutionality of Defendant's Sentence

Defendant contends in the alternative that his sentences must run concurrently, rather than consecutively. While this case was pending on appeal, the United States Supreme Court decided *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S.

-8-

63.

Ct. 2348 (2000). This court allowed the parties to submit supplemental briefs on the constitutionality of defendant's consecutive sentence pursuant to section 5–8–4(b) of the Unified Code of Corrections (the Code) (730 ILCS 5/5–8–4(b) (West 1994)) in the wake of *Apprendi*.

Before addressing its merits, the State contends that defendant has waived his argument by failing to raise it at trial, even though *Apprendi* was not decided until more than two years after defendant's trial. The State contends that the recent vintage of *Apprendi* is irrelevant because "the cases which were the precursors to *Apprendi* *** addressed the same general issue of enhanced penalties based upon facts presented at sentencing." The State further contends that defendant should not be allowed to rely upon the rule that a party may challenge the constitutionality of a statute at any time because "the statute under which defendant was sentenced has not been declared unconstitutional on its face. Therefore, the void ab initio [*sic*] doctrine *** is inapplicable. At worst, section 5–8–4(b) may be unconstitutional only *as applied to* a particular case, but the void ab initio [*sic*] doctrine has never been applied to such situations." (Emphasis in original.)

Defendant's argument is not waived. First, a party may challenge the constitutionality of a statute at any time. See, *e.g.*, *People v. Wright*, 194 Ill. 2d 1 (2000). We reject the State's argument, made without benefit of authority, that defendant falls outside of this rule because the statute "has not been declared unconstitutional on its face." The State appears to contend that a party may only challenge a statute which has *already* been declared facially unconstitutional. We decline to so hold.

Additional support for the conclusion that defendant has not waived the argument may be found in *People v. Williams*, 179 Ill. 2d 331 (1997). There, a defendant challenged on appeal a sentence imposed pursuant to a guilty plea. The State contended that defendant should be barred from challenging his sentence on appeal because he had not moved to withdraw his guilty plea in the trial court. We found the argument was not waived, because the defendant was arguing that the court had imposed a sentence for which it lacked statutory authority, rather than merely that his sentence was excessive. We held that the rule requiring a defendant

64

-9-

to withdraw a guilty plea before arguing that a sentence was excessive would not "bar defendant's claim that his sentence was void because it does not conform with the statute." *Williams*, 179 Ill. 2d at 333. See also *People v. Wilson*, 181 Ill. 2d 409, 413 (1998) (defendant's argument that his sentence "violated statutory requirements" could be considered regardless of whether defendant had moved to withdraw his guilty plea).

Accordingly, we will address the merits of defendant's due process claim.

Section 5–8–4(b) of the Code allows the trial court to impose consecutive sentences in certain cases. At the time of defendant's offenses, it provided:

> "The court shall not impose a consecutive sentence except as provided for in subsection (a) unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." 730 ILCS 5/5–8–4(b) (West 1994).

The parties agree that the trial court imposed consecutive sentences on defendant pursuant to section 5–8–4(b), based on a finding that consecutive sentences were required to protect the public from defendant. Defendant contends that his sentence is void because he was entitled, as a matter of due process, to have a jury, rather than the court, make this finding. He relies, as previously noted, on the Supreme Court's opinion in *Apprendi*.

In *Apprendi*, the Court considered three New Jersey statutes. One statute classified the possession of a firearm for an unlawful purpose as a "second degree" offense. Another statute provided that a second degree offense was punishable by imprisonment for "between five years and 10 years." A third statute, which the New Jersey Supreme Court labeled a "hate crime" statute, authorized an extended term of between 10 and 20 years' imprisonment for a second degree offense if the trial judge found by a preponderance of the evidence that "[t]he defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals

65

because of race, color, gender, handicap, religion, sexual orientation or ethnicity." The defendant was sentenced to 12 years' imprisonment for possession of a firearm because the trial court found that defendant had violated the hate crime statute.

The Court found that the "hate crime" statute violated due process. Specifically, the Court extended to state statutes its prior holding that in federal statutes " 'any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.' " *Apprendi*, 530 U.S. at 476, 147 L. Ed. 2d at 446, 120 S. Ct. at 2355, quoting *Jones v. United States*, 526 U.S. 227, 243 n.6, 143 L. Ed. 2d 311, 326 n.6, 119 S. Ct. 1215, 1224 n.6 (1999). See also *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63 ("[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt").

The State contends that *Apprendi* does not apply to this case because no additional factual findings beyond the facts of defendant's convictions were required for defendant's sentences to be made consecutive. The State relies on section 9-3.1 of the Criminal Code, which defines the offense of concealment of homicidal death, the second of the two offenses of which defendant was convicted. Subsection (b) of that statute provides:

> "Nothing in this Section prevents the defendant from also being charged with and tried for the first degree murder, second degree murder or involuntary manslaughter of the person whose death is concealed. If a person convicted under this Section is also convicted of first degree murder, second degree murder or involuntary manslaughter, the penalty under this Section shall be imposed separately and in addition to the penalty for first degree murder, second degree murder or involuntary manslaughter." 720 ILCS 5/9-3.1(b) (West 1994).

The State contends that the last sentence of this section requires the trial court to impose consecutive sentences when a defendant is convicted of both concealment of a homicidal death and first degree murder, second degree murder, or involuntary

-11-

66.

manslaughter. To construe the statute otherwise, the State contends, would render the phrase "in addition to" mere surplusage. Thus, the State argues, there is no *Apprendi* issue in this case because the trial court did not have to make any factual findings in order for the sentences to be consecutive.

We disagree. The State's position has been unanimously rejected by our appellate court, which has held that the "separately and in addition to" language is simply intended to clarify that a conviction for concealment of a homicidal death does not merge into a murder conviction. See, *e.g.*, *People v. Dover*, 312 Ill. App. 3d 790 (2000); *People v. Gil*, 125 Ill. App. 3d 892 (1984); *People v. Schlemm*, 82 Ill. App. 3d 639 (1980). We agree with this construction. As these cases have noted, section 5–8–4 of the Code of Corrections governs whether sentences are to be served consecutively. Moreover, section 5–8–4 shows that the legislature uses the word "consecutive," rather than the more ambiguous phrase "in addition to," when it intends that the sentences be served consecutively. Although this construction can be understood as rendering the "in addition to" language redundant, we note that the legislature has twice amended section 9–3.1 since the decisions in *Gil* and *Schlemm* (see Pub. Act 84–1308, art. III, §23, eff. August 25, 1986; Pub. Act 84–1450, §2, eff. July 1, 1987), but has left intact the "separately and in addition to" language. "[T]his court presumes that the legislature knew of the prior interpretation placed on its language by judicial decision," and "[w]here terms used in a statute have acquired a settled meaning through judicial construction and are retained in subsequent amendments, they are to be understood as previously interpreted by the courts unless the legislature clearly indicates a contrary intention." *Carver v. Bond/Fayette/Effingham Regional Board of School Trustees*, 146 Ill. 2d 347, 353 (1992). We find that section 9–3.1 does not mandate consecutive sentences.

However, we affirm defendant's sentence in this case. Our appellate court is sharply divided on the question of whether *Apprendi* concerns are raised by consecutive sentencing, where the sentences for the individual crimes remain within the statutory range. Compare *People v. Lucas*, No. 1–99–2623, slip op. at 6–7 (March 21, 2001); *People v. Hayes*, 319 Ill. App. 3d 810, 820

67

(2001); *People v. Maiden*, 318 Ill. App. 3d 545, 550 (2001); *People v. Primm*, 319 Ill. App. 3d 411, 428 (2000); *Sutherland*, 317 Ill. App. 3d 1117, 1131 (2000) (all finding section 5–8–4(a) of the Code constitutional and affirming defendants' consecutive sentences thereunder), with *People v. Mason*, 318 Ill. App. 3d 314, 320 (2000); *People v. Harden*, 318 Ill. App. 3d 425, 428 (2000); *People v. Waldrup*, 317 Ill. App. 3d 288, 300 (2000); *People v. Carney*, 317 Ill. App. 3d 806, 813 (2000); *People v. Clifton*, Nos. 1–98–2126, 1–98–2384 cons., slip op. at 55 (September 29, 2000) (all finding section 5–8–4(a) unconstitutional and vacating consecutive nature of defendants' sentences thereunder). Those decisions which have struck down section 5–8–4(a) of the Code have focused on the fact that consecutive sentencing increases the actual amount of time a defendant will spend in jail, and reasoned that *Apprendi* commands that any fact which in reality increases the amount of time spent in jail should be submitted to a jury and proven beyond a reasonable doubt. The majority of the decisions upholding the statute have reasoned that *Apprendi* concerns are not raised unless "the [maximum] penalty for *a crime*" (emphasis added) (*Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63) is increased, and since consecutive sentences remain discrete sentences, none of the penalties for any individual crime has been increased.

Initially, we note that *Apprendi* explicitly disclaimed any holding regarding consecutive sentencing. There the State noted that defendant had pled guilty to two counts of unlawful possession of a firearm, as well as a single count of unlawful possession of an antipersonnel bomb. The State argued that defendant could have been given consecutive sentences on the two convictions for unlawful possession of a firearm, and thus received the same 12-year term of imprisonment as he in fact received on the single unlawful possession count under the hate crime statute. The Court refused to address this argument, stating:

> "The constitutional question, however, is whether the 12-year sentence imposed on count 18 [the unlawful possession of a firearm count which was found to be a hate crime] was permissible, given that it was above the 10-year maximum for the offense charged in that count.

$\ell\ \mathscr{S}$.

The finding is legally significant because it increased–indeed, it doubled–the maximum range within which the judge could exercise his discretion, converting what otherwise was a maximum 10-year sentence on that count into a minimum sentence. The sentences on [the other two convictions] have no more relevance to our disposition than the dismissal of [several other charges against the defendant]." *Apprendi*, 530 U.S. at 474, 147 L. Ed. 2d at 445, 120 S. Ct. at 2354.

Thus, it is clear that the decisions holding that consecutive sentencing triggers *Apprendi* concerns are extending that case beyond its facts, as indeed the seminal case in that line acknowledged. See *Clifton*, Nos. 1–98–2126, 1–98–2384 cons., slip op. at 51-52 (rehearing pending).

The decisions of our appellate court finding that consecutive sentencing does not raise *Apprendi* concerns are supported by the only reported United States circuit court decision on this topic. See *United States v. Cruz*, ___ F.3d ___, ___ (2d Cir. February 13, 2001) ("[t]he district court's use of section 5G1.2(d) [of the United States Sentencing Guidelines to sentence defendant consecutively] did not result in a sentence on any one count above the maximum available on that count *** and so did not violate *Apprendi*"). Accord *United States v. Moreno*, No. S3 94 Cr. 0165 (S.D.N.Y. December 14, 2000) (holding that *Apprendi* did not prohibit consecutive sentencing even though court, not jury, made finding prerequisite to consecutive sentencing regarding quantity of drugs involved). See also *United States v. Henderson*, 105 F. Supp. 2d 523, 536-37 (S.D.W.V. 2000). Several other federal circuits have implicitly reached the same conclusion by finding no plain error in sentencing even though individual sentences exceeded the maximum allowable sentence based on the facts found by the jury–in violation of *Apprendi*–because on remand the sentences could be made consecutive to reach the same total sentence. See *United States v. Parolin*, 239 F.3d 922, 930 (7th Cir. 2001); *United States v. Sturgis*, 238 F.3d 956, 960 (8th Cir. 2001); *United States v. Page*, 232 F.3d 536 (6th Cir. 2000).

We find that *Apprendi* concerns are not implicated by consecutive sentencing. It is a settled rule in this state that

sentences which run consecutively to each other are not transmuted thereby into a single sentence. *People v. Jones*, 168 Ill. 2d 367, 371-72 (1995); *People v. Kilpatrick*, 167 Ill. 2d 439, 446-47 (1995); *Thomas v. Greer*, 143 Ill. 2d 271, 278-79 (1991) [2] Because consecutive sentences remain discrete, a determination that sentences are to be served consecutively cannot run afoul of *Apprendi*, which only addresses sentences for individual crimes. Accordingly, section 5–8–4(b) of the Code passes constitutional muster.

We recognize that *Apprendi* contains isolated statements which on their face might appear to support the conclusion that the jury must find beyond a reasonable doubt each and every fact which might have any real-world impact on the length of time the defendant might spend in prison. For instance, the Court stated:

> "If a defendant faces punishment beyond that provided by statute when an offense is committed under certain circumstances but not others, it is obvious that both the loss of liberty and the stigma attaching to the offense are heightened; it necessarily follows that the defendant should not–at the moment the State is put to proof of those circumstances–be deprived of protections that have, until that point, unquestionably attached." *Apprendi*, 530 U.S. at 484, 147 L. Ed. 2d at 451, 120 S. Ct. at 2359.

See also *Apprendi*, 530 U.S. at 494, 147 L. Ed. 2d at 457, 120 S. Ct. at 2365 ("the relevant inquiry is one not of form, but of effect–does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?").

---

[2] Defendant contends that this court has "recognized that an order requiring a defendant to serve a sentence consecutively instead of concurrently 'was in a very real sense an increase in the length of his sentence,' " citing *Kilpatrick*, 167 Ill. 2d at 444. First, such a statement would have been *dictum*, because such an order was not before us in *Kilpatrick*. More importantly, this court did not make the statement to which defendant refers. We were merely quoting from an appellate court case, *People v. Muellner*, 70 Ill. App. 3d 671, 683 (1979), which had dealt with a different aspect of the statute under consideration. We did not adopt this statement.

However, these statements cannot be taken out of context. The issue in *Apprendi* was "whether the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for *an offense* from 10 to 20 years be made by a jury on the basis of proof beyond a reasonable doubt." (Emphasis added.) *Apprendi*, 530 U.S. at 469, 147 L. Ed. 2d at 442, 120 S. Ct. at 2351. *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63 ("[o]ther than the fact of a prior conviction, any fact that increases the penalty for *a crime* beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt" (emphasis added)). The Court specifically stated that consecutive sentencing was "not relevant" to the "narrow issue" under consideration. *Apprendi*, 530 U.S. at 474, 147 L. Ed. 2d at 445, 120 S. Ct. at 2354.

We are bound to follow the United States Supreme Court's interpretation of the Constitution of the United States. *People v. Gersch*, 135 Ill. 2d 384, 398 (1990); *People v. Loftus*, 400 Ill. 432, 436 (1948). See also *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304, 4 L. Ed. 97 (1816). But we are not bound to extend the decisions of the Court to arenas which it did not purport to address, which indeed it specifically disavowed addressing, in order to find unconstitutional a law of this state. This is especially true where, as here, to do so would require us to overrule settled law in this state. See *Jones*, 168 Ill. 2d at 371-72; *Kilpatrick*, 167 Ill. 2d at 446-47; *Thomas*, 143 Ill. 2d at 278-79 (sentences retain their discrete character even if they are to be served consecutively). Each of defendant's individual sentences was within the statutory range established by the legislature. This is all that *Apprendi* requires.

## CONCLUSION

For the reasons above stated, we affirm the judgment of the appellate court, which affirmed defendant's convictions and sentence

*Affirmed.*

7/.

STATE OF ILLINOIS )
COUNTY OF COOK )SS.
)

IN THE 6TH DISTRICT CIRCUIT COURT
OF COOK COUNTY ILLINOIS

**RECEIVED**

JEROME HENDRICKS )          POST CONVICTION,
PLAINTIFF )          CASE NO.#6822
        JAN 3 1 2002
V.                )
        CLERK OF THE CIRCUIT COURT
PEOPLE OF THE STATE CRIMINAL DIVISION   PRESIDING JUDGE,
OF ILLINOIS, )          HONORABLE LEO HOLT.
DEFENDANT )

---

## MOTION TOREMOVE COUNSEL FROM PRESIDING CASE
## REQUEST FOR NEW COUNSEL OTHER THAN
## PUBLIC DEFENDERS OFFICE.

---

        Now comes the plaintiff Jerome Hendricks, and respectfully
moves this Honorable Court for an order to have present Counsel
residing over this case to be removed, and to be appointed Counsel
other than the Public Defenders Post-Conviction Unit.
In support of Motion,
1) I am presently a prisoner in the State of ILL. at the
   Stateville C.C.
   P.O. Box 112
   Joliet, ILL. 60434
2) I am an indigent person without any funds or any assets with
   which to pay an attorney to represent him in this action or to
pay the proceeding cost.
3) That this action contains complex legal training and experience,
   issues which Plaintiff can not properly address.
4) That based upon the foregoing procedures, the plaintiff access
   to the Court will not be meaningful, effective nor adequate
   without assistance of Counsel to represent Plaintiff.

Wherefore Plaintiff now prays that this Court remove present
Counsel and appoint Counsel other than the Public Defenders of
the Post-Conviction Unit.

                                Respectfully
                                submitted by,

                                _J. Hendricks_
                                Jerome Hendricks

72.

----------------------------------------------------------------
    Argument to have Counsel removed because of conflict of Interest, and ineffectiveness.
----------------------------------------------------------------

<u>Brief history of my Post Conviction proceedings, and the ineffectiveness of Counsel</u>

    I was appointed Counsel (Public Defender) during the filing of my first Post Conviction Petition. That Counsels name being Diane Slocumb, who failed to prepare an amendment to my Post Conviction petition, in which I constantly explained to this Counsel (Diane Slocumb) that the Post Conviction Petition which was filed was res judicata and that I do have constitutional violations and meritable issues to be argued on a amended petition if put forth. This Counselor (Diane Slocumb) took the res judicata petition before the Court and stated this was a Succesive Post Conviction. The Appelate Court vacated-remand, back to the Circuit Court under the Supreme Court Rule 651(C) and to have a succesive Post Conviction Petition prepared and Counsel to be appointed to prepare Plaintiffs Petition. During this proceeding the Plaintiff requested to the Court that he not be appointed an attorney of the Public Defender Office to represent him on these issues due to the conflict of interest and ineffectiveness.
The Law states: "If the Counsel of a particular office is found ineffective, then that Counsel nor their respective office can no longer represent the Defendant." See, People v. Cano, 220 Ill. App.3d. 725, 581 N.E. 2d 236, (1st Dist.1991). Where this Defendant filed a ARDC complaint against trial Counsel and raised allegations about Counsel in a Pro-sé Post Conviction Petition and the Trial Court ordered Counsel Supervisor in the Public Defenders Office to argue a motion. In the Plaintiff case the Appellate Court sent this case back to the Circuit under a Supreme Court Rule of 651(C) and the Circuit Court requested another Counselor from the Public Defenders office.

Submitted by,

Jerome Hendricks

73.

```
------------------------------------------------------------------
            Argument to have Counsel removed because of conflict
            of interest, and ineffectiveness.
------------------------------------------------------------------
```

### Arguement.

<u>In bringing this Counselor (Marienne Branch) to represent Plaintiff</u>
has set the stage for a continuance of a conflict of interest
between the Plaintiff and the Public Defenders office. Asst.
Public Defender Marienne Branch was appointed to represent Plaintiff
in preparing a Succesive Post Conviction Petition ordered by the
Circuit Court. Plaintiff requested to appointed Counselor (Marienne -
Branch) to put forth issues that were pertinent for my Post
Conviction. Plaintiff tried to explain to Counsel that there
never was a Succesive Post-Conviction Petition ever filed and
that the previous attorney that represented my Post Conviction
Petition (Diane Slocumb) was in error filing the same Petition to
the Court stating that it was a Succesive Petition. Plaintiff
requested that present Counsel (Marienne Branch) investigate the
case to prepare a Succesive Post-Conviction Petition.

See: People v. Perez 148 Ill. 2d. 168, 592 N.E. 2d. 984 (1992).
During a phone conversation on November 20th, 2001 approxiamately
2:45-3:00 p.m. Plaintiff asked Counsel what took place during a
November 15th,2001 Court date, and if they (Plaintiff and Counsel)
could look over some issues and put them forth in an amendment on
Plaintiffs behalf. Counsel (M.Branch) would not listen to Plaintiff
and repetitiously requested that Plaintiff "Shut up." Counsel did
not allow Plaintiff to raise or request any issues on his behalf.
Counsel became very belligerent and called me "Nuts" and stated
Plaintiff was a "Fool." When the Plaintiff finally was allowed to
proceed Plaintiff tried to correct the Counsel after she made an
error in judgment stating that "I (Plaintiff) stated that I did
this." I proceeded to explain that I (Plaintiff) never made such
statements in or out of Court and that she (Counsel) should go
and review the Trial records, I (Plaintiff) was again told by
Counsel to "Shut up! I know I did this Murder, and that I (Plaintiff)
don't have a leg to stand on on appeal, and that I (Plaintiff) am
wasting my time, and how awful this crime was."

This Counsel has placed her personal feelings and thoughts toward
the nature of my case, which in turn has seem to stop her from
doing anything in regards to Plaintiff case. See: People v.Falls,
235 ILL. App.3d, 558, 601 N.E. 2d, 1276 (1st Dist. 1992). Plaintiffs
Counsel is unwilling to do her best because of personal feelings
in this case. Counsel claims she didn't have to prepare a
Succesive P.C. Petition for Plaintiff because "It is a waste of
time" and that Plaintiff had already put forth a Second P.C.
Petition. Plaintiff argued to appointed Counsel that Plaintiffs
previous Counsel (Diane Slocum) was in error for stating to the
Courts that my first Post Conviction Petition was Plaintiffs
second and filed it as such. Plaintiff never filed a Second or
Succesive Post Conviction Petition. If Plaintiff had filed a
second or Succesive Post Conviction Petition why then would the
Appelate Court vacate-remand back to the Circuit Court and the
Circuit Court appoint Plaintiff new Counsel to prepare a Second
or Succesive Post Conviction Petition?

## ARGUMENT CONT.

See: People v. Truly 230, ILL. APP 3d 948, 595 N.E. 2d 1230 (1st
Dist. 1992).
See: People v. Blommaert 237 ILL. App.3d 811, 604 N.E. 2d.1054
(3rd Dist. 1992)

In June of 2001 Counsel stated to Plaintiff that she
(Counsel) would put forth a Supplemental Claim in the Court under
Apprendi on Plaintiff behalf. Two months later August 2001 I
received a letter from Asst. Public Defender Marienne Branch
(appointed Counsel) That Apprendi requires that the Aggravating
Factors be proven beyond a reasonable Doubt, but it does not
require that the Jury do the finding. Plaintiff tried to elaborate
his interpretation of the Apprendi ruling to appointed Counsel
that the ruling does mean that the Jury must determine this if a
Jury Trial has been selected. Counsel later express to me about a
case called People v. Vida and it's decision ruling on June 22,
2001.
In People v. Vida the Court held that the regular term for Murder
does include a life sentence, Counsel also stated "I have not
read the case as of yet." And deriving judgment from Vida decision
that it would prohibit her (Counsel) from filing a Supplemental
Claim. Plaintiff read People v. Vida case and tried to discuss
issues with Counsel which in turn only insued into an argument
that lead Counsel to once again tell Plaintiff to "Shut up!" and
tell Plaintiff that "I don't know what I am talking about."
Plaintiff explained to appointed Counsel that if she would spend
more time on the merits of the case than telling her client to
shut up maybe things can get accomplished. See: People v. Howard
232 ILL. App. 3d. 386, 597, N.E. 2d. 703 (1st Dist 1992). Appelate
Courts statement of Counsel incompetency of clients case. There
is a total showing of a conflict of interest and that this Counsel
which has been appointed from the Public Defenders office is
ineffective. See: U.S. v. Martin 965 F. 2d. 839 (10th Cir. 1992)
Plaintiff therefore prays that this Honorable Court would grant
Motion to dismiss Counsel for the above mentioned reasons and
appoint out-side Counsel to represent Plaintiff in Court proceedings
to have any kind of fighting chance in The Courts. See: People v.
Almodoval, 235 Ill. APP.3d.184, 601 N.E. 2d.853 (1st Dist 1992)

I pray that the Court would Honor the merits of this Motion and
appoint out side Counsel for representation.

NOTARY
SIGN -----------

State of ___ County of ___
signed before me on this ___ day
of ___ 20___ by ___
Notary Public ___

SIGNATURE,
--------------------

JEROME HENDRICKS

"OFFICIAL SEAL"
Joann M. Dombrow
Notary Public, State of Illinois
My Commission Expires 12/18/02



office of the
## COOK COUNTY PUBLIC DEFENDER

POST CONVICTION UNIT • 69 WEST WASHINGTON • 17TH FLOOR • CHICAGO, IL 60602 • (312) 603-8300

**Rita A. Fry • Public Defender**

August 13, 2001

Jerome Hendricks
Reg. No. N-53807
Stateville Correctional Center
P.O. Box 112
Joliet, Illinois 60434

Dear Mr. Hendricks:

Thank you for your kind and understanding note. Your comments reflect a refreshing depth of understanding and self reflection.

*Apprendi* requires that the aggravating factor be proven beyond a reasonable doubt. It does not require that it be done before a jury.

On June 22, 2001, the decision in *People v. Vida* was published and it held that the regular term for murder does include a life sentence. I do not yet have a copy of this case and, in fact, we have not yet had an opportunity to discuss it as a unit. I was advised however that your natural life sentence is within the law because you were found to be eligible for the death penalty. This would "moot" the argument that the aggravating factor was not proved beyond a reasonable doubt.

I regret any false hope I raised in you with the supplemental claim. As you can see by the dates, *People v. Vida* was published at the same time I was filing your claim. As I stated in the cover letter to your copy of the supplemental claim, it was filed to protect your federal *habeas corpus* rights. Because the law on the application and interpretation of *Apprendi* is far from settled, only so important and singular a right can override professional prudence. While I know you didn't think *Apprendi* was a "get out of jail free" card, I am sensitive to any spark of hope that is extinguished. This piece is one of several I will analyze before I certify to the court that my review of your file is complete. As I progress, I will advise you of the same. Right now, I have several deadlines to meet so it will be a bit before I finish my substantive review of your case. Until then, hang in there and keep the faith.

Very Truly Yours,

Marienne Branch
Assistant Public Defender

MB/smb
08.10.01

P.S.    Your appreciation of my work means a lot to me. Thank you.



76.
Printed on Recycled Paper



office of the
## COOK COUNTY PUBLIC DEFENDER

POST CONVICTION UNIT • 69 WEST WASHINGTON • 17TH FLOOR • CHICAGO, IL  60602 • (312) 603-8300

**Rita A. Fry • Public Defender**

November 26, 2001

Jerome Hendricks
Reg. No. N-53807
Stateville Correctional Center
P.O. Box 112
Joliet, Illinois   60434

Dear Mr. Hendricks:

I regret that our conversation of November 20, 2001 caused you such distress. I especially regret it because it occurred right before a holiday. Perhaps I could have been more sensitive to your reception of such bad news. It is difficult to tell a client what he does not want to hear and I wish were not true. In time, I'm sure I will get better at this difficult part of my job. If it's any comfort to you, I feel I learned a lot from our conversation about what not to do when conveying bad news.

I reviewed your file again and consulted with my supervisor regarding some of the things you explained to me. I will write to you as soon as we complete this review.

Whether our review will change anything about the conclusions I conveyed to you, the fact remains that all litigation must, by law, come to an end. This case will not go on forever. It is also an unfortunate fact of life that there is not a right for every wrong. Every case isn't a winner.

Finally, you must accept responsibility for any errors you made in the filing. The rules governing this are spelled out clearly for inmates. A post-conviction addresses issues that were **not** addressed at trial or on appeal. Your first (and second) post-conviction(s) merely repeat issues from the appeal of your trial. Because you did not make any other claims, there is, quite simply, nothing to work with.

It is a dangerous proposition to compare one self with others. Even in the most closely matched circumstances. I suspect the individuals with whom you compared yourself in our conversation where with you only a couple of gross similarities: you are incarcerated men. This is hardly a basis for a comparison which would cause you to become as distressed as you seemed to be when we spoke. I urge you to look to yourself. Neither I nor Ms. Slocum nor Judge Holt nor the criminal justice system in

77.

general are out to get you as you stated. Bad things do happen in life and many times there is no redress for them. I think we all have a hard time coming to terms with that reality. But come to terms with it we must if we are to go on with this life with some degree of peace.

I encourage you to find that peace within so that you can bear whatever life throws at you.

Peace,

Marienne Branch

Marienne Branch
Assistant Public Defender

MB/smb
11.21.01

STATE OF ILLINOIS    )
                        )SS.
COUNTY OF COOK     )

502 **FILED**
TIME ____
MAY 2 2 2002  AM PM
Dorothy Brown
Clerk of the Circuit Court
Criminal Division
Clerk Signature

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT   -   CRIMINAL DIVISION

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS )<br>Plaintiff-Respondent ) | |
| )| CASE NO. 88CR-12517 |
| vs.       ) | THE HONORABLE LEO HOLT |
| )| Judge Presiding |
| JEROME HENDRICKS    ) | |
| Defendant-Petitioner ) | |

## MOTION TO DISMISS
## SUPPLEMENTAL POST-CONVICTION PETITION

Now come the Respondent, People of the State of Illinois, by and through Richard A. Devine,

State's Attorney of Cook County, and John Haskins, Assistant States Attorney, and respectfully

moves this Honorable Court to strike the petition for post-conviction relief and to dismiss the

proceedings for the following reasons:

    1.  On June 21, 2001, The petitioner Jerome Hendricks filed this supplemental post-

conviction petition. This was this petitioner's first post-conviction petition in this case. The

petitioner was found guilty of the offenses of murder, aggravated criminal sexual assault,

concealment of a homicide and aggravated kidnapping by Judge Leo Holt on November 21, 1991

and was sentenced to natural life for murder, thirty (30) years for aggravated criminal sexual assault,

fifteen (15) years for aggravated kidnapping and five (5) years for concealment of a homicide.

1

79.

Aggravated criminal sexual assault, concealment of a homicide and aggravated kidnapping to run concurrent to each other and consecutive to the murder. The case was affirmed by the First District Appellate Court on November 21, 1994. In this pro se post-conviction petition, the petitioner alleges that his natural life sentence is void abinitio based upon the recent decision of the United States Supreme Court in Apprendi v. New Jersey which was decided on June 26, 2000.

Petitioner also submits that any delay in filing this petition for post-conviction relief is not due to his "culpable negligence" but is the result of the timing of the Apprendi decision on which the petitioner relies to bring this action.

The petitioner also alleged that based on Apprendi that his natural life sentence is void abinitio because the court found the murder to be brutal and heinous. The petitioner also alleges that because Apprendi makes his sentence unconstitutional is also makes the sentence void abinitio.

2. The petitioner's allegation that his natural life sentence is void is merely an erroneous conclusional allegation. The petitioner's extended term sentence is not void. Furthermore, Apprendi does not apply retroactively to the petitioner's case, because the petitioner's case was on collateral review at the time Apprendi was decided. The Illinois Appellate Court, First District, First Division, in People v. Kizer, Appellate Number 1-99-0733, opinion dated December 26, 2000, held that Apprendi should not be retroactively applied under the Illinois Post-Conviction Hearing Act. Apprendi does not apply retroactively to cases on collateral review. People v. Kizer, supra. In Talbot V. Indiana the United States Court of Appeals, Seventh Circuit, stated in pertinent part as follows:

> Apprendi does not state that if applies retroactively to other cases on collateral review. No other decision of the Supreme Court applies Apprendi retroactively to cases on collateral review...If the Supreme Court ultimately declares that Apprendi

2

applies retroactively on collateral attack, we will authorize successive collateral review of cases to which Apprendi applies. Until then prisoners should hold their horses and stop wasting everyone's time with futile applications. Talbot v. Indiana, 226 F.3d 866, 869 (7th Cir. 2000).

WHEREFORE, the respondent prays that an order be entered by this Honorable Court, striking the supplemental petition for post-conviction relief of the petitioner Jerome Hendrick, and dismissing the proceedings.

Respectfully submitted

RICHARD A. DEVINE

State's Attorney of
Cook County, Illinois

By: _____
John Haskins
Assistant State's Attorney

3

8/

STATE of ILLINOIS )
) SS **FILED IN OPEN COURT**
COUNTY of COOK )

IN THE CIRCUIT COURT of COOK COUNTY
CRIMINAL DIVISION

JEROME HENDRICKS )
)
Petitioner, )
) Indictment No. **88–CR–12517**
— vs — )
)
PEOPLE of the STATE of ILLINOIS )
)
Respondent. )

## C E R T I F I C A T E

I, Lindsay Hugé, Assistant Public Defender of Cook County, certify in accordance with Rule 651 (c) of the Illinois Supreme Court that:

1. I have consulted with petitioner Jerome Hendricks by mail and have ascertained his contentions of deprivation of constitutional rights.

2. Having inherited Hendrick's file previously worked on by at least two different Assistant Public Defenders, I have reviewed his petition, supplemental petition and trial transcripts.

3. Petitioner's pro–se petition AND supplemental petition filed by previous counsel adequately present his claims of constitutional deprivation.

_____

Lindsay Hugé
Assistant Public Defender

82.

**STATE OF ILLINOIS**
**COUNTY OF COOK** } SS

I,    DOROTHY BROWN    Clerk of the Circuit Court of Cook County, in said County and State, and Keeper of the Records and Seal thereof, do hereby certify the above and foregoing to be a true, perfect and complete copy of ... A (ONE) VOLUME SUPPLEMENTAL RECORD CONSISTING OF CERTAIN DOCUMENTS, ONLY. NO PRAECIPE HAVING BEEN FILED PURSUANT TO THE NOTICE OF APPEAL FILED IN THE APPELLATE COURT UNDER APPELLATE COURT NO. 05-1223

In a certain cause ............... LATELY ................................. pending in said Court, between The People of the State of Illinois................... WERE ..............., Plaintiffs and ............... HENDRICKS, JEROME ................... WAS ............, Defendant ....

Witness:    DOROTHY BROWN

Clerk of the court, and the Seal thereof, at Chicago

In said County, APRIL   20, ............,2006

*Dorothy Brown* l PR —
Clerk

DOROTHY BROWN     , CLERK OF THE CIRCUIT COURT OF COOK COUNTY

*83.*

# Transcript of Record
# Appeal
# to

_____ APPELLATE    **Court of Illinois**

_____ FIRST    **District**

**Circuit Court No.** ____ 88 CR 12517 _____

**Trial Judge** _____ LEO E. HOLT _____

**Reviewing Court No.** ____ 06-2093 _____

_____ THE PEOPLE OF THE STATE OF ILLINOIS _____

## vs.

_____ JEROME HENDRICKS _____

**FILED**
APPELLATE COURT 1st DIST.

JAN 0 8 2007

STEVEN M. RAVID
CLERK

# from
# CIRCUIT COURT
# of
# COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CRIMINAL DIVISION

ONE VOLUME

S.C. Vol III
COMMON LAW RECORD

**DOROTHY BROWN,**
**Clerk of the Circuit Court**

Per _____ DB/NJD _____
**Deputy**

(Rev. 1/17/01) CCCR 0310

2152
PLACITA          This form replaces CCM1-150A8          (Rev. 12/7/00) CCG 0076

## UNITED STATES OF AMERICA

**STATE OF ILLINOIS**    **SS:**

**COUNTY OF COOK**

PLEAS, before the Honorable     **LEO E. HOLT**

one of the Judges of the Circuit Court of Cook County, in the State of Illinois, holding a branch

Court of said Circuit Court, at the Court House in said County and State,

on          **OCTOBER  15** ,  **2003**

PRESENT: The Honorable     **PAUL P. BIEBEL, JR.**
                                        Judge of the Circuit Court of Cook County

STATE'S ATTORNEY     **RICHARD A. DEVINE**

SHERIFF     **MICHAEL F. SHEAHAN**

,CLERK.     **DOROTHY BROWN**

Attest:

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

THE PEOPLE OF THE STATE OF ILLINOIS VS.

Hendricks, Jerome

CA
NO. 06 CR 12517

| DATE | PAPERS FILED |
|------|--------------|
| | INDICTMENT/INFORMATION FILED IN THE CLERK'S OFFIC |
| | PRES. JUDGE ASSIGNMENT DATE: _____ |
| | BAIL PREVIOUSLY SET $ |
| | |
| | |
| | |
| | |

| DATE | JUDGE | ORDERS ENTERED |
|------|-------|----------------|
| | | NO ARRAIGNMENT |
| | | ASSIGNED TO JUDGE _____ |
| | CLERKS OFFICE | NOTICE OF APPEAL FIELD 7-18-06 |
| | | NOTICE OF APPEAL MAILED 7-18-06 |
| | | APPELATE HEARING DATE ASSIGNED BEFORE |
| | | PRESIDING JUDGE 7-21-06 |
| 7-21-06 | PAUL P. BIEBEL, JR | ☒ STATE APPELLATE DEFENDER |
| | | ☐ PUBLIC DEFENDER |
| | | ☐ OTHER |
| | | APPOINTED TO REPRESENT THE DEFENDENT ON THE APPEAL |
| | | ☒ FREE REPORT OF PROCEEDINGS, ALLOWED |
| | | |
| | | |
| | | |
| | | |
| | | |

(Rev. 7/7/95) CCCR 0605

2

(OVE

## NOTICE OF NOTICE OF APPEAL

TO: HONORABLE LISA MADIGAN
ATTORNEY GENERAL OF ILLINOIS
SPRINGFIELD, ILLINOIS 62706

HONORABLE RICHARD A. DEVINE
STATE'S ATTORNEY OF COOK COUNTY
DALEY CENTER- ROOM 573
CHICAGO, ILLINOIS 60602

STEVE RAVID
CLERK OF THE APPELLATE COURT
160 N. LASALLE 14TH FLOOR
CHICAGO, ILLINOIS 60601

IN RE:                    PEOPLE OF THE STATE OF ILLINOIS
                                    .VS.

                          _Hendricks Jerome_

CASE NUMBER:              _88CR12517_

YOU ARE HEREWITH NOTIFIED PURSUANT TO RULE 606E OF THE ILLINOIS
SUPREME COURT; EFFECTIVE JANUARY 1, 1967, A NOTICE OF APPEAL WAS FILED
WITH THE CLERK OF THE CIRCUIT COURT OF COOK COUNTY, CRIMINAL DIVISION,
ON _7-18-06_

SUBMITTED BY: _Dorothy B_
        CLERK OF THE CIRCUIT COURT OF COOK COUNTY


STATE OF ILLINOIS)
                        ) SS
COOK COUNTY        )


I, DOROTHY BROWN, CLERK OF THE CIRCUIT OF COOK COUNTY, COUNTY
DEPARTMENT, CRIMINAL DIVISION, CERTIFY THAT THE FOREGOING NOTICE AND
COPY OF THE NOTICE OF APPEAL ATTACHED THERETO WAS SERVED UPON EACH
OF THE ABOVE NAMED PERSONS BY PERSONAL SERIVCE AND/OR BY DEPOSITING
SAME IN THE UNTIED STATES MAIL DEPOSITORY IN A SEALED ENVELOPE, FIRST
CLASS POSTAGE PRE-PAID, ADDRESSED TO THE NAMED PERSONS
ON _7-18-06_


_____
        CLERK OF THE CIRCUIT COURT OF COOK COUNTY

3

IN THE CIRCUIT COURT OF COOK COUNTY

CRIMINAL DIVISION

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | IND./INF. No. 88 CR 12517 |
| | ) | |
| Respondent-Appellee, | ) | |
| | ) | Trial Judge: Wilbur E. Crooks |
| -vs- | ) | |
| | ) | Trial Atty: |
| Jerome Hendricks | ) | |
| | ) | Type of Trial: Hearing |
| Petitioner-Appellant. | ) | |

## NOTICE OF APPEAL

An appeal is taken to the Appellate Court, First District:

Appellant(s) Name:  Jerome Hendricks

Appellant's Address:  Illinois Department of Corrections

Appellant(s) Attorney:  Office of the State Appellate Defender

Address:  203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601

Offense of which convicted:  first degree murder, aggravated criminal sexual assault, etc.

Date of Judgment or Order:  October 15, 2003

Sentence:  natural life

If appeal is not from a conviction, nature of order appealed:

Dismissal of Post-Conviction Petition

MICHAEL J. PELLETIER
Deputy Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472
COUNSEL FOR PETITIONER-APPELLANT

## NOTICE OF APPEAL FILED PURSUANT TO SUPREME COURT ORDER

4

No. 102865

IN THE

SUPREME COURT OF ILLINOIS

---

| | | |
|---|---|---|
| JEROME HENDRICKS, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| vs. | ) | Motion for supervisory order |
| | ) | |
| HON. MARGARET O'MARA FROSSARD, | ) | |
| Justice of the Appellate Court, First District, | ) | |
| et al., etc., | ) | |
| | ) | |
| Respondents. | ) | |

---

## O R D E R

This cause coming to be heard on the motion of the movant, due notice having been given to the respondents, and the court being fully advised in the premises;

IT IS ORDERED that the motion for supervisory order is <u>allowed</u>.  In the exercise of this court's supervisory authority, movant is allowed to file a notice of appeal instanter from the order of October 15, 2003, dismissing his second post-conviction petition after remand.

Order entered by the Court.



**FILED**

JUL 1 1 2006

**SUPREME COURT CLERK**

5

MIKE P
BOURLAND
SUSAN
TAMMY



RECEIVED
JUL 1 4 2006
DOCKETING DEPARTMENT
State Appellate Defender
1ST DISTRICT

# SUPREME COURT OF ILLINOIS
SUPREME COURT BUILDING
SPRINGFIELD 62701
July 11, 2006

**JULEANN HORNYAK**
CLERK OF THE COURT
(217) 782-2035

TELECOMMUNICATIONS DEVICE
FOR THE DEAF
(217) 524-8132

**FIRST DISTRICT OFFICE**
20TH FLOOR
160 N. LASALLE ST.
CHICAGO 60601
(312) 793-1332

TELECOMMUNICATIONS DEVICE
FOR THE DEAF
(312) 793-6185

Mr. Michael J. Pelletier
State Appellate Defender
203 North LaSalle Street, 24th Floor
Chicago, IL 60602

  In re: Jerome Hendricks, movant, v. Hon. Margaret O'Mara Frossard, Justice
  of the Appellate Court, First District, et al., etc., respondents.
  No. 102865 (Appellate Court, First District, No. 1-05-1223)

Dear Mr. Pelletier:

  Enclosed is a certified copy of an order entered today by the Supreme Court
of Illinois.

        Very truly yours,

        *Juleann Hornyak*

        Clerk of the Supreme Court

JH:ssl
Enclosure
cc: Appellate Court, First District
  Hon. Lisa Madigan
  Hon. Richard A. Devine
  Hon. Sheila M. O'Brien
  Hon. Michael J. Gallagher
  Hon. Margaret J. O'Mara Frossard
  Hon. P. Scott Neville, Jr.

FILED
CR-526-12
JUL 1 8 2006
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

6

Form 16

# State of Illinois
# Supreme Court

I, JULEANN HORNYAK, *Clerk of the Supreme Court of the State of Illinois, and keeper of the records, files and Seal thereof do hereby certify the foregoing to be a true copy of an order entered July 11, 2006, in a certain cause entitled:*

| | | |
|---|---|---|
| *Jerome Hendricks,* | ) | |
| | ) | |
| *Movant* | ) | *Motion for Supervisory Order* |
| | ) | *1-05-1223* |
| *No. 102865*     *v.* | ) | *88CR12517* |
| | ) | |
| *Hon. Margaret O'Mara Frossard, Justice of the* | ) | |
| *Appellate Court, First District, et al., etc.,* | ) | |
| | ) | |
| *Respondents* | ) | |

*filed in this office on the 7th day of June A.D. 2006.*

*IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed the Seal of said court this 11th day of July, 2006.*

*Juleann Hornyak*

                              *Clerk,*

*Supreme Court of the State of Illinois.*



FILED
CR-526-12
JUL 18 2005
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

7

(Rev. 2/18/93) CCCR-56

STATE OF ILLINOIS } ss
COUNTY OF COOK

I,   DOROTHY BROWN   Clerk of the Circuit Court of Cook County, in said County and State, and Keeper of the Records and Seal thereof, do hereby certify the above and foregoing to be a true, perfect and complete copy of ... A (ONE) VOLUME SUPPLEMENTAL RECORD CONSISTING OF CERTAIN DOCUMENTS, ONLY.  NO PRAECIPE HAVING BEEN FILED PURSUANT TO THE NOTICE OF APPEAL FILED IN THE APPELLATE COURT UNDER APPELLATE COURT NO.   06-2093.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

In a certain cause . . . . . . . . . . . .   LATELY   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . pending in said Court, between The People of the State of Illinois . . . . . . . . . . . . . . . .   WERE   . . . . . . . . . . . . . . . . . . . ., Plaintiffs and . . . . . . . . . . . . . . . . . .   JEROME HENDRICKS   . . . . . . . . . .   WAS   . . . . . . . . . . . . . ., Defendant . . .

Witness:   DOROTHY BROWN

Clerk of the court, and the Seal thereof, at Chicago In said County, . . . . . . .   . . AUGUST  4 . 20 06 . .

*Dorothy Brown* /AP
Clerk /DB/NJD

DOROTHY BROWN   , CLERK OF THE CIRCUIT COURT OF COOK COUNTY

8

# Transcript of Record
## Appeal
## to

_____APPELLATE_____ **Court of Illinois**

_____FIRST_____ **District**

**Circuit Court No.** _88 CR 12517_____

**Trial Judge** _WILBUR   CROOKS_____

**Reviewing Court No.** _~~appeal~~ 06-2093_____

PEOPLE OF THE STATE OF ILLINOIS
_____

**vs.**

FILED
APPELLATE COURT 1st DIST.

JAN 0 8 2007

JEROME   HENDRICKS
_____

STEVEN M. RAVID
~~CLERK~~

# from
# CIRCUIT COURT
## of
# COOK COUNTY,  ILLINOIS
### COUNTY DEPARTMENT, CRIMINAL DIVISION

REPORT OF PROCEEDINGS ONLY..

**DOROTHY BROWN,**
**Clerk of the Circuit Court**

**Per**  DB/JF

**Deputy** _____

(Rev. 1/17/01)  CCCR 0310

1    STATE OF ILLINOIS  )
                  ) SS:

2    COUNTY OF C O O K  )

3

          IN THE CIRCUIT COURT OF COOK COUNTY

4          COUNTY DEPARTMENT-CRIMINAL DIVISION

5    THE PEOPLE OF THE    )
    STATE OF ILLINOIS    )

6                  ) NO. 88 CR 12517
                  )

7    VERSUS          )
                  )

8    JEROME HENDRICKS and  )  CHARGE:  Murder
    JULIUS CLAYBORN      )

9              REPORT OF PROCEEDINGS

10

11          BE IT REMEMBERED that on the 29th day of

12    March A.D. 1989, this cause came on for

13    hearing before the Honorable ____ E. Holt

14    Judge of said Court.

15

16    APPEARANCES:

17          HON. RICHARD M. DALEY,
              State's Attorney of Cook County, by

18          MR. CHARLES BOSKEY,
              Assistant State's Attorney,

19              appeared for the People;

20          MS. SHELBY KEISMAN and
          MR. ISIAH GANT,

21              Assistant Public Defenders,
              appeared for the Defendant.

22

    BEVERLY HOOKER, C.S.R.,

23    Official Court Reporter

24

1

I N D E X

1   ... OF HEARING: .........................

2   DATE OF HEARING:  February 27, 1990...............

3      OPENING STATEMENT BY MR. PLACER...............

4      OPENING STATEMENT BY MR. KONKOWSKI.............

5      WITNESSES:              DX       CX       RDX     RCX

6         JEROME HENDRICKS    75        55       96

7         LAURENCE NITSCHE    90        137      157

8   DATE OF HEARING:  March 7, 1990. .................

9   DATE OF HEARING:  March 13, 1990................

10  DATE OF HEARING:  March 29, 1990 .............

11     WITNESSES:              DX       CX       RDX     RCX

12        JAMES C. HILL       152       180      196

13        DET. MICHAEL BAKER  207       230      ...

14  DATE OF HEARING:  May 31, 1990...................

15     WITNESSES:              DX       CX       RDX     RCX

16        DAVID HENDRICKS HALLEY 260    20...

17        PAULINE HENDRICKS   270       20...

18        ALBERT WOLF         200       205

19     OPENING ARGUMENT BY MR. PLACER....

20     CLOSING ARGUMENT BY MR. KONKOWSKI.....

21     CLOSING ARGUMENT BY MR. PLACER.....

22  DATE OF HEARING:  June 27, 1990..................

23  DATE OF HEARING:  January 14, 1991.....

24  DATE OF HEARING:  February 7, 1991.....

```
1    ... OF HEARING:  February 5, 19.............   ...
2    DATE OF HEARING:  February 6, 19.....  .......... ..
3    DATE OF HEARING:  February 7, 19.1 .........  ....  ....
4       OPENING STATEMENT BY MS. PLACKE..............  ...
5          WITNESSES:          DX        CX        RDX       RCX
6          MICHAEL GATFO     533       542       54.
7          YOLANDA HILL      547       57.       5..       ..
8          LAWRENCE NITCHE  60.       .1.
9    DATE OF HEARING:  February 8, 1981.....  .......... ..
10         WITNESSES:          DX        CX        RDX       RCX
11         DAVID KADDIGAN    65.       ..7       65.
12   DATE OF HEARING:  February 1., ..1 .........  ....  ....
13         WITNESSES:          DX        CX        RDX       RCX
14         CAROLYN STRONG    66.       ...
15         JEROME WALKER     71.       ...       ...
16         ROBERT TOVAR      7..
17   DATE OF HEARING:  February 12, 1981.........  .....  ...
18         WITNESSES:          DX        CX        RDX       RCX
19         ROBERT TOVAR      707       709
20         HAALING JOHNSON   ...       ...
21         JAMES HILL        7..       ...
22         JOHN HASEL        79.       83.       ...  ...
23         MICHAEL BAYER     79.       ...       ...  ...
24
```

1    THE CLERK:  Julius Clayborn and sheet four,
2    line one, Jerome Hendricks, in custody.
3    MR. GANT:  If the Court please, before you
4    stand Jerome Hendricks.  I am Isiah Gant.  Mr.
5    Hendricks is represented by Randolph Stone, the
6    Public Defender of Cook County.  I am here as an
7    Assistant Public Defender on his behalf.
8    MS. KEISMAN:  This is Julius Clayborn to my
9    immediate right.  He is represented by myself,
10   Shelby Keisman, Assistant Public Defender, and
11   Michael Morrisey, Assistant Public Defender.
12   THE COURT:  Because there are motions in some
13   respects identical and in some respects very, very
14   similar in both of these cases, I have made the
15   decision to consolidate for the purposes of
16   argument and ruling on these pretrial motions.
17   Does anyone have any objection?
18   MS. KEISMAN:  No.
19   MR. BOSKEY:  No.
20   MR. GANT:  I do not.  However, when I filed
21   these motions, there's one that didn't get in the
22   file, which is similar to one Ms. Keisman has
23   filed.  It's a motion to declare the death penalty
24   unconstitutional.

**2**

1          MR. BOSKEY:  Mr. Gant showed it to me.  I

2     have no objection to it being filed today.

3          THE COURT:  What I suggest we do, because it

4     seems to me that the motion to compel disclosure,

5     which both sides have filed and raised basically

6     the same arguments, is to extent controlling on

7     some of the other motions that have been filed,

8     and so I would like to hear your arguments on that

9     one, because it will save us some time, depending

10    on how I rule on that.

11          The Defendants and Counsel may all be

12    seated at Counsel's table, and I would hear both

13    the Defense's and the State's argument on that

14    motion, as it applies to both Defendants.

15          MS. KEISMAN:  On December 14th I filed a

16    motion to compel the prosecution to disclose, and

17    also a motion to preclude the special procedures

18    necessary for capital sentencing.  That was

19    attached with a memorandum, that was filed on

20    December 14th of 1988.

21          On March 13th of 1989 I filed four

22    motions with the Court.  These four motions

23    supercede the motion that was filed on December

24    14th of 1988.  It somewhat incorporates that

3                          **3**

1   motion and makes a few changes. You can disregard

2   the motion filed on December 14th and consider the

3   four motions that were filed on the 13th.

4       THE COURT: You will have to tell me the

5   title of the motions.

6       MS. KEISMAN: The motion that was filed

7   December 14th, I will show you a copy. It's

8   probably got the longest title. It's motion to

9   compel the prosecution to disclose whether it

10  will request a death penalty hearing if the

11  Defendant is convicted of murder, and motion to

12  preclude the special procedures necessary for

13  capital sentencing.

14      THE COURT: So that one, we will -- he is

15  merged into the others that are filed, is that

16  correct?

17      MS. KEISMAN: Yes, Judge. I shortened

18  the title and hopefully made it more clear.

19      THE COURT: Did you also file a motion to --

20  you filed a motion to compel the disclosure.

21      MR. GANT: Yes.

22      THE COURT: The Defendants may be seated, and

23  I will hear your arguments in any order that you

24  desire to present them to me in terms of who's

4                          **4**

1    going to proceed first.

2            Mr. Gant, these are Defense motions.

3    You may proceed, or however you want to do it.

4        MR. GANT:  If the Court please, I would defer

5    to Ms. Keisman for the similar motion.

6        MS. KEISMAN:  Judge, I am going to address

7    the motion, compel the prosecution as that first

8    motion.  I will be brief on this on what I have to

9    say because I think there's some overlapping

10   issues regarding all the motions.  But I guess the

11   most important thing I could say at this point is

12   -- would be that the other issues need not be

13   addressed if Your Honor grants the motion to

14   compel the prosecution, and they say no, we are

15   not seeking the death penalty.

16           I don't think I have to emphasize the

17   importance of defending a capital case.  There's a

18   lot that needs to be done.  There is a lot of

19   work.  And there's also a lot of motion.  A lot of

20   things will be necessary to protect Mr. Clayborn's

21   rights.

22           In terms of fairness, Mr. Clayborn needs

23   to know if he is facing a potential capital

24   sentence in this case.  In terms of notice, Mr.

**5**

1    Clayborn is entitled to know whether he's facing
2    a potential capital case sentence in this case.
3    In terms of preparation, in terms of what goes on
4    in this courtroom, I think the Court is entitled
5    to know whether this is going to be a case that
6    will be conducted with the special procedures
7    that are necessary for a capital case.  Are we
8    going to have a jury?  Is the jury going to be
9    Witherspoon?  Things like that.  There are
10   motions, maybe close to, up to a dozen motions, I
11   will be prepared to file if this were a capital
12   case.  I would not want to take up everybody's
13   time doing those motions if there is clearly no
14   intention to seek the death penalty in this case.

15           My written motion really does speak for
16   itself.  There's a lot of things I would like to
17   do for Mr. Clayborn that won't be necessary if
18   this is not going to be a capital case, Judge.  I
19   don't see the unfairness or the inequity in saying
20   to the State, Mr. State's Attorney, do you intend
21   to seek the death penalty in this case.  I don't
22   see that that puts them in any disadvantage.  I
23   don't see that makes them force their hands for
24   something they shouldn't have to.  I don't see the

6

**6**

1    inequity in it.

2          All the factors seem to point to the

3    bottom line that we should all know what this case

4    is about at the earliest possible moment.  For

5    that reason, Judge, we are asking now to know

6    whether we need to go on any further, or whether

7    we may proceed as we would in any other case.

8    Thank you.

9          THE COURT:  Mr. Boskey.

10          MR. BOSKEY:  Judge, a brief response.  I

11    believe we addressed this issue once before on

12    another case before Your Honor.  My understanding

13    of various Supreme Court decisions that have

14    scrutinized death penalty statutes continuously

15    for several years, one of the later cases, People

16    vs. Gaines, 109 Illinois 2nd page 514, again

17    addressed the issue on whether or not the

18    Defendant or defense is entitled to pretrial

19    notice, whether or not the State will seek the

20    death penalty.  Again the Supreme Court indicated

21    that there was no constitutional requirement that

22    the Defendant have pretrial notice that the State

23    would seek the death penalty if there should be a

24    finding of guilty of murder.  That again would be

7

1   the State's argument, that they are not entitled

2   to that pretrial notice.  The only notice they

3   are required to have is that the case is before

4   Your Honor that encompasses both Mr. Hendricks and

5   Clayborn as they sit here today, they are

6   potentially death penalty statute, they are

7   potential death penalty cases.  They are on notice

8   that they are potentially death penalty cases.

9   And I don't believe constitutionally they have to

10  receive anymore information than that.

11          It would be our argument that they are on

12  notice that they are potential death penalty cases

13  and constitutionally I don't believe we are

14  required to give any further information at this

15  point.  I would rest at that.  And rest on all the

16  various Supreme Court cases that I know Your Honor

17  is aware of.

18          THE COURT:  Response?

19      MS. KEISMAN:  I would defer to Mr. Gant at

20  this time.

21      MR. GANT:  Your Honor, I think that all of us

22  who engage in defending capital cases are well

23  aware there is in fact lesions of case law that

24  say the State is not obligated to notify us, being

8

1   the Defense, whether or not they intend to seek

2   the death penalty.

3          But there is however the small provision

4   in the Constitution of the United States, as well

5   as the Constitution of the State of Illinois, that

6   talks about due process.  And I think it was Felix

7   Frankford who said that due process is all about

8   what is fair.  The appearance of being fair.  And

9   I suggest to Your Honor due process would be

10  served well if you were to enter an order

11  directing the State to say now, to say whether

12  or not they are going to seek the death penalty

13  sentencing phase should the Defendants in these

14  two cases be convicted.  I'm talking about

15  fairness.  The State is not prejudice in any

16  manner by telling us right now whether or not

17  they intend to do it.

18         And there's at least one good reason

19  other than judicial economy for them having to do

20  this.  It's not uncommon, Judge, in terms of

21  preparation that a lawyer has to go through in a

22  death penalty case that in your preparation for a

23  possible sentencing phase, your theory in that

24  portion of the bifurcated trial might well be

1    different or inconsistent than the Defense you

2    have taken in terms of guilt and innocence.  If

3    you know from the very beginning there is in fact

4    a possibility that the State will seek the death

5    penalty if the Defendant is convicted, at least in

6    terms of preparation on behalf of the Defense,

7    you can certainly avoid that charge that we so

8    often get about being ineffective, if you know up

9    front that there is the possibility of death or

10   death hearing.  You can then prepare you case

11   consistent with the dictates, I suggest to you, of

12   the Cannons of Ethics, Judge.  We can then sit

13   down and prepare a Defense of knowing this is the

14   way we must go, because if there is a finding of

15   guilty, there will be a death hearing.

16          I suggest the State is not hurt if they

17   tell us now, in no way.  For that reason, Judge,

18   due process reason, they ought to be directed.

19      MR. BOSKEY:  May I clarify one thing?  As

20   I sit here today, I don't have the authority --

21   and just to differ with Counsel -- whether or not

22   I will seek the death penalty on either of

23   these people.  I cannot say I have the authority

24   to say that as I sit here today.

**10**

1      THE COURT:  Well, Mr. Boskey, I don't think

2  the decision that I am called upon to make in any

3  respect returns upon your individual

4  understanding of the course of this case.  We are

5  talking about the State's Attorney of Cook County

6  and -- or even better than that perhaps the

7  administration of criminal justice systems in

8  Illinois, which has nothing to do with you

9  personally.  I understand full well that you

10  might not be personally in a position to make any

11  decisions in regard to the ultimate procedures

12  that this case will take.  I fully understand

13  that.

14      This case -- this motion bothers me.  It

15  bothers me considerably.  It bothers me for a lot

16  of reasons.  And I suspect really the more

17  significant reason is because I believe that it is

18  fundamentally unfair from a constitutional point

19  of view not to tell the Defendant what the name of

20  the game is.

21      And I'm fully aware that the Illinois

22  Supreme Court, in a 4 to 3 decision, has held that

23  the Illinios death penalty statute in face of

24  the argument that's being made to me is

**11**

11

1    constitutionally valid.  I'm also aware that in

2    the change of the Court personnel, where the

3    personnel of the Court then was four Justices

4    who believed these statutes to be unconstitutional,

5    nonetheless, would not review the earlier

6    decisions in that regard, because of the

7    doctrine of stare decisis.  And I must tell you

8    that I don't quite understand that.  The highest

9    Court in the State, or the highest Court in the land,

10   judiciously reviews its own decisions to correct

11   itself and to correct a mistake in the law.

12   Illinois has chosen -- and I'm not in a position

13   to do more than express my observations about what

14   the Illinois Supreme Court has done -- but

15   nonetheless they have chosen not to review this

16   statute which I believe is unconstitutional.

17   That's not a belief that's unique to me.  Justice

18   Ryan in his dissent in People ex rel Carey vs.

19   Cousins, announced that in his opinion, the failure

20   to give the Defendant any notice at all rendered

21   the statute unconstitutional.

22        And Justice Simon in People vs. Lewis,

23   adopted the thinking of Justice Ryan.  And he

24   also was of the opinion that provision rendered the

**12**

1    statute unconstitutional.  So you have four

2    Justices of the Illinios Supreme Court who believe

3    the statute is unconstitutional, but nobody will

4    of yet do anything about it.  It's a frightening, to

5    me frightening, that a person might be put to

6    death under this statute which the majority of the

7    Supreme Court believes to be unconstitutional.

8           Every lawyer, Defense lawyer or

9    prosecutor that I have had occasion to speak to

10   that has been involved in a capital case knows

11   very clearly and very certainly that a capital

12   case is very different with every respect than any

13   other case.  Its impact upon the system, the

14   lawyers who are involved with it, the jurors who

15   must hear it, the Defendant and his family, the

16   victims of the alleged crime and family, everybody

17   is tremendously impacted by this critical decision

18   in more ways than I can probably enunciate.  Insofar

19   as the Defendant is concerned, the impact is

20   immediate.  It determines and weighs upon every

21   single decision that he or she must make in the

22   preparation of the case for trial and the trial of

23   the case, and everything else.  And the decisions

24   that are made as a pretrial matter, if they are

1    made in a vacuum, tend to be wasteful, time

2    consuming, unnecessary, and extremely costly.

3    Which is why for the most part the death penalty

4    cases in Cook County, to my personal observation

5    at least, and I'm safe in saying that I'm right,

6    for the most part most capital cases are tried by

7    governmental lawyers.  Or lawyers who have been

8    appointed by the Court.  Because those Defendant's

9    are economically incapable of retaining a lawyer

10    to represent them in a capital case.  Even though

11    there might be lawyer who will take the case

12    absent a capital sentencing possibility.  So the

13    very right of a Defendant to Counsel of his choice

14    becomes involved immediately when there's a

15    capital possibility.

16          And it never stops.  It never ceases

17    until the last day, the last sentence is uttered

18    in open court on the trial court level for that

19    Defendant.

20          All of those decisions flow from the

21    decision to convert a murder into a capital

22    murder.  And it is inconceivable to me that the

23    laws will keep the Defendant in the dark about

24    that until it's too late for him to meaningfully

**14**

14

1   protect himself.  It boggles my mind.  But, that's

2   what I understand the law is.

3          Now, the question of whether or not

4   based upon due process grounds I can overrule

5   in effect the Illinois Supreme Court is doubtful.

6   While due process is exactly what Mr. Gant says it

7   is in some senses, the fundamental fairness and

8   the appearance of fundamental fairness, yet it is

9   not out there in a vacuum.  And I can't use that

10  concept to simply disregard the clear holdings in

11  cases which have been decided by the Supreme Court

12  of Illinois.  I am bound by that, by those

13  decisions whether I agree with them or not.  And I

14  don't agree with them in any respect insofar as

15  keeping the Defendant in the dark.

16         And, it is not true, respectfully, Mr.

17  Boskey, that a Defendant can look at the indictment

18  and/or the statute or indeed at the facts of the

19  case and determine prior to trial whether or not

20  he has in fact a capital case.  He may be able to

21  look at the statute and the indictment and his

22  understanding of the facts that there is the

23  potential for it to become a capital case, but he

24  never knows what the real name of the game is

15

**15**

1   until it is much too late for him to meaningfully

2   protect himself.  And with that problem, of

3   course, whatever he fails to do in the trial court

4   level by pretrial motions may constitute a

5   waiver on appeal.

6           And so he's trapped in between a rock

7   and a hard place of having to go forward with a

8   multiplicity of motions that are totally moot if in

9   fact the case is not going to be tried as a

10  capital case.

11          In order to ensure that he has a perfect

12  record if in fact a death sentence needs to be

13  reviewed.

14          It is fundamentally unfair, it seems to

15  me, to Witherspoon a jury that may not be called

16  upon to decide the issue of life or death.  And

17  I'm fully aware that the United States Supreme

18  Court has held that Witherspooning does not create

19  an unconstitutional conviction prone or death

20  prone jury.  I'm aware that the Supreme Court has

21  said that.  They have said that in the face of all

22  the psychological studies that come to the

23  opposite conclusion.  And in the face of no study

24  that I'm aware of that comes to the conclusion

16

**16**

1    that Witherspoon does not produce a conviction

2    prone or death prone jury.  All the studies say it

3    does.  And yet the Supreme Court has said that

4    even if it does, it is not reached the level of

5    constitutional impermissability.

6           But, it seems to me that those of us who

7    have labored in the trial court with that

8    problem know full well that that's a fiction that

9    we utilize in the law and that the realities are

10   that you produce a jury that is askew insofar as

11   opinions in regard to capital punishment as they

12   exist in the larger community.  So it seems to me

13   that of course if we knew that it was not going

14   to be a death case, we would not permit the

15   Witherspooning of the jury.  And there's nothing

16   after the jury has been Witherspooned and a

17   conviction had for the State to say we are not

18   going to at this time seek a death penalty

19   hearing.  And then to say that the Defendant has

20   not in any way been disadvantaged, I think is to

21   close our eyes to the reality in defference to

22   form.

23           Now, having said all that, I say it

24   because if this case requires review at least the

**17**

1  Supreme Court will know what one less surprise

2  judge has thought about this for whatever it is

3  worth.  I think the statute is unconstitutional.

4  I think it is unfair.  I think it offends my

5  constitutional sense of due process.  It offends

6  my concept of just basic fairness as what is

7  right in terms of relationships that we have with

8  fellow human beings.  Not to let them know what

9  the name of the game is.

10         As early on as possible so that he can

11  really have the effective assistance of Counsel.

12  And Counsel cannot, it seems to me, be effective

13  unless they know the name of the game.  And one

14  half of the participants at least is in a position

15  to know from the outset what the probabilities are

16  going to be.  While the Defendant must guess all

17  the way.  And given the number of potential

18  Defendants who have been found guilty in Cook County

19  without the invocation of a death penalty hearing,

20  it is facetious to suggest that the Defendant

21  read the statute in indictment and he or she can

22  determine ahead of time whether or not they have a

23  capital case on their hands.  That just simply is

24  not the case.  And they are entitled to more

**18**

1   notice, it seems to me, than that.

2         But as I say, faced with Carey versus

3   Cousins and faced with People versus Lewis and

4   faced with People versus Gaines, I am not certain

5   that there's anything that I can do.

6         I took a look at People versus Buckley.

7   I believe it is out of DuPage County. To see

8   whether or not the Court's inherent power to

9   control the court call gave me any assistance in

10   ordering the State to make this disclosure. I

11   concluded that it did not. I conclude that it did

12   not because if the State declined to disclose, I

13   don't know what I can do. I could possibly,

14   preclude a death penalty hearing. And it seems to

15   me the status of the law now, I would promptly be

16   reversed. I would think that if I did that, the

17   State would seek an original mandamus and

18   undoubtedly would be given leave to file it. My

19   sense is that the Supreme Court would very shortly

20   remand it and order me to conduct a death penalty

21   hearing. So that's a useless procedure.

22         But I'm deeply concerned that I may be

23   compelled to sit here and listen to motions as

24   complex as these are. They are complex. At least

1    they are complex to me.  And cause me to do some

2    degree of agonizing and research to try to figure

3    out some of the issues and the laws that applies

4    to some of the motions that have been filed before

5    me, only to find that I have been spinning my

6    wheels because I don't have a capital case on my

7    hands.

8          Or the converse is equally devastating

9    too.  If I have a jury in the box that returns a

10    verdict of guilty and the guilty is of first

11    degree murder and the State's Attorney then asks

12    me to invoke the death penalty hearing phase and

13    Defense says, Judge, we are not ready; we want to

14    file motions for discovery; we want to investigate

15    the State's witnesses that will be called to testify

16    in this hearing; we want to go out and get

17    witnesses of our own; and there's a whole category

18    of things that must be done; we have not done them

19    because we did not know we were in that situation.

20    That's a reasonable position, it seems to me, for

21    Defense to take.  Unless I'm to say to them, you

22    should have spent thousands of dollars in

23    pretrial preparation for hearing that we did not

24    know we were going to have.  So then, I have to do

**20**

1    what with the jury, discharge that jury and

2    impanel another one, or send that jury home for a

3    month or two or whatever time period it takes to

4    allow the Defense become prepared for the hearing,

5    or to compel the defendent to go into a hearing

6    with his lawyer saying he's not prepared for it.

7    Which hearing could result in life or death of the

8    Defendant.

9        All of those things do oviate or

10    certainly ameliorate to a large extent if we knew

11    beforehand what the name of the game was. Those

12    are the things that bother me about this provision

13    of the statute. But I'm compelled, as reluctant

14    as I am, I'm compelled however, to deny the motion

15    of the Defendants to compel the State to disclose

16    whether or not they intend to seek the death

17    penalty if the Defendant is found guilty of the

18    offense of first degree murder.

19        Now, Ms. Keisman, your motion to -- I

20    think it is to declare the -- Your motion to

21    preclude the death penalty procedures to which you

22    have attached the opinion of Menard versus

23    Cartwright, I would like to hear from you on that

24    motion.

21

21

1           Mr. Gant, I don't believe you filed such

2     a motion.

3           MR. GANT:  I did, Your Honor.

4           THE COURT:  You did?

5           MR. GANT:  Yes.

6           THE COURT:  On the same grounds?

7           MR. GANT:  Same grounds, Your Honor.  I have

8     an extra copy, Your Honor.

9           THE COURT:  Yours is not predicated on the

10    same ground, I don't think, but you have filed a

11    motion to preclude the death penalty procedure,

12    but it is not based upon the holdings --

13          MR. GANT:  I'm sorry.  Not specifically, it

14    is not.

15          THE COURT:  I would like to hear from you,

16    Ms. Keisman, on your motion to preclude.

17          MS. KEISMAN:  Judge, I guess initially I

18    should say it is kind of a strange position to be

19    in here.  We are back where I was nine months ago,

20    left with not really knowing this is a death case

21    or not. I'm going to assume it's a death case.

22          THE COURT:  I think you have to.

23          MS. KEISMAN:  I have to assume it's a death

24    case.  I have a copy of the indictment which

1    charges Mr. Clayborn in two counts.  The first

2    count is the offense of first degree murder, and

3    it states, he without lawful justification

4    intentionally and knowingly beat and killed Tamar

5    Nelson with his hands, a violation of Chapter 38.

6         The second count of the indictment also

7    states that he is charged with the offense of

8    first degree murder, in that he without lawful

9    justification beat and killed Tamar Nelson with

10    his hands, knowing that such beatings with his

11    hands created a strong probability of death, or

12    great bodily harm to Tamar Nelson, in violation

13    of Chapter 38.

14         The Chapter 38 death penalty section,

15    section 9-1, contains a variety of phases that

16    would make any murder a potential capital case,

17    creating various aggravating factor.

18         There's nothing in the four corners of

19    these two pages which indicates to me that this is

20    a death case.  There's nothing on these two pages

21    which says there is an aggravating factor here as

22    contained in the statute.  And we are going to

23    tell you what that aggravating statute is.  We are

24    going to put you on notice of what that

1   aggravating provision is.  It's not in the
2   indictment.  It's a plain murder indictment.
3          So, I get the discovery and I read the
4   police reports, and I see that the victim in this
5   case is an infant, 18 months old.  And I go to
6   Chapter 38 and I read over the aggravating
7   factors, and I see that there is a provision that
8   says if the victim is under 12 years of age, and
9   the murder is accompanied by exceptionally brutal
10  or heinous behavior indicative of wanton cruelty,
11  this is a potential death case.  That is an
12  aggravating factor.
13         So, I go back to the indictment and I
14  don't see anything in the indictment.  I don't see
15  that she's under 12 years of age.  I don't see
16  what was brutal, what was heinous.  What shows
17  wanton cruelty.  I don't see anything in there.
18         So I say to myself, well, is this a
19  death case?  I don't know .  And I look back at
20  the record and I see that when Mr. Clayborn came
21  into Court for the first time after his arrest,
22  he was brought before a Judge for purposes of
23  setting a bond, and for purposes of having a
24  preliminary hearing.  And the State says, we are

**24**

24

1    not ready for a preliminary hearing.  And the

2    Defense say we are.  And the matter is continued

3    and within the 30 day time period, Mr. Clayborn is

4    indicted.  So there is no preliminary hearing.

5    There is no opportunity to find out what this

6    case is about.

7              But there is one thing that I do know.

8    I know that Mr. Clayborn is given a bond.  He's

9    given a $500,000 bond.  Under that statute the

10   State is entitled to ask for a no bail order in a

11   potential capital case.  And apparently they did

12   so here, initially, in Mr. Clayborn's first

13   appearance.  And we, on behalf of Mr. Clayborn,

14   objected to that request.  First of all on grounds

15   of notice.  We need some notice of this request.

16   And our objection was noted and sustained and the

17   issue was never litigated.  Mr. Clayborn has a

18   bond.  He has a $500,000 bond, Judge.  He has

19   always had that bond.  The State has never asked

20   for a no bail order.

21             When I look back on this case and I see

22   that, I say to myself, well, maybe this isn't a

23   death case.  If this was a death case, they should

24   have asked for the no bail order.  They didn't.

1    They should be collaterally estopped now from

2    coming in and saying this is a death case.  What's

3    been happening for the last nine months?  So as we

4    are here today, I say, well, it seems it's going

5    to be a death case.

6              So, how am I going to defend Mr.

7    Clayborn?  And I read through the police reports.

8    And yes, it is clear the victim was under twelve

9    years of age.  But now I'm left to guess what

10   could possibly constitute exceptionally brutal or

11   heinous behavior indicative of wanton cruelty.

12   What is that?  I read the police reports.  They

13   are brief.  There's maybe twelve, fifteen pages of

14   police reports.  There's some medical reports.

15   And I look at the indictment.  That doesn't tell

16   me what the factors are.

17             What do I have to defend against?  What

18   actions did Mr. Clayborn specifically take that

19   were exceptionally brutal or heinous indicative of

20   wanton cruelty?  I don't know, Judge.  It's the

21   same issue as was raised in the motion to compel.

22   It's due process.  It's fundamental fairness.  We

23   must be prepared to defend this case.  There's

24   nothing that puts us on notice on what we are to

1   defend against.

2           I attached the case of Menard versus
3   Cartwright, found at 486 U.S., no page cite, 100
4   Lawyers Edition, 2nd 372.  That's a 1988 case,
5   June of 1988 decided by the United States Supreme
6   Court where they reviewed an aggravating
7   circumstance provision of Oklahoma death penalty
8   statute.  And the United States Supreme Court felt
9   that the term, especially heinous, atrocious, or
10  cruel murders was unconstitutionally vague under
11  the Eighth Admendment.

12          Without being facetious, Judge, if the
13  Supreme Court doesn't know what it is, how are we
14  supposed to know what it is?  I think there's some
15  serious doubt as to whether the State can come in
16  under this provision, under an indictment like
17  this, and ask for the death penalty.  They have
18  got the advantage of Witherspoon jury, of a death
19  qualifying jury, of a conviction prone jury.  They
20  had the advantage or the leverage, I should say,
21  of preventing us from any thought of a negotiation
22  in this case because of leverage they have by
23  being able to say this is a potential death case.
24          I think -- I have also attached the

1   citing which Your Honor referred to regarding the

2   conviction prone jurors, the death qualification

3   process.  All of that is tied into the indictment

4   and the lack of notice this indictment gives to

5   us.

6              Many jurisdictions including California,

7   and I cited the cases in my memorandum, provide

8   that the -- Or mandate that the charging

9   instrument set forth the aggravating factors that

10   the State is seeking for death.  Illinois does not

11   require that.  In those jurisdictions where the

12   aggravating factors are supposed to be in the

13   indictment, defense counsel has the opportunity to

14   come in pretrail and attack the indictment, the

15   sufficiency of the indictment as in any other

16   case.  The statute sets our reasons to attack a

17   motion to dismiss an indictment.

18              We can't do it here.  We can't do it

19   here because of the qualifying factors, the

20   aggravating factors are not in there.  I can't

21   come in and say this is a defective indictment

22   because it is not in there.

23              I think Your Honor has the authority to

24   say to the State, you have to tell them, you have

28

1   to give them notice of what they are to defend

2   against.  I have no notice.  I don't know what the

3   facts are that will support exceptionally brutal

4   or heinous behavior indicative of wanton cruelty.

5   How can I defend the case without negligence of

6   those specific facts, Judge?  It's the same issue.

7   It's fundamental fairness.  It's due process.

8   This goes one step further because now we are

9   dealing with the piece of paper that supposed to

10  be the charging instrument.  It is supposed to put

11  the Defendant on notice.  We are not.  We are

12  still in the dark.

13          Based upon the case that the United

14  States Supreme Court has set down, and based on

15  the memorandum I attached, I know you reviewed it

16  carefully, I am asking you to ask the State to

17  tell the Court what evidence they have that would

18  support seeking the death penalty in this case.

19  And to determine whether the State actually has

20  such a good faith basis for asking for the death

21  penalty in this case.  Thank you.

22      THE COURT:  Mr. Gant.

23      MR. GANT:  Your Honor, insofar as Ms.

24  Keisman's comments are applicable to my motion, I

**29**

1   have nothing further. I will stand on my motion.

2        THE COURT: Mr. Boskey.

3        MR. BOSKEY: Thank you. I will try to be

4   brief. As to Ms. Keisman's argrument as to the

5   vagueness of the statute or the section of the

6   statute that charges Mr. Clayborn, the very issue

7   was decided by a recent Illinois Supreme Court

8   case, People vs. Odle. I don't have a cite

9   published. I don't have a cite. I do have a

10  slip opinion for Your Honor. But the Supreme

11  Court addresses the very issue, and addresses the

12  Illinois statute and compares it in relation to

13  the statute that was found unconstitutional in

14  the case cited by Counsel. And it was -- The

15  Supreme Court of Illinois did rationalize it, and

16  did differentiate it, and did uphold Section

17  9-1-B7 of the Illinois statute holding in this very

18  statute if you are charged with murder and it is

19  found in the aggravating factors that the victim

20  is 12 years and under, indicative of wanton

21  cruelty, was sufficient constitutionally and did

22  uphold that section of the statute.

23        Again, the issue was addressed by the

24  Illinois Supreme Court. Whether or not there is

**30**

1    notice, Judge, I believe -- obviously the

2    Defendant has been put on proper notice that this

3    is potentially a capital case, and why it is a

4    potential capital case, because of the mere

5    existence of Ms. Keisman to represent him.

6    The murder task force is assigned to represent

7    him.  Obviously that is sufficient to be put on

8    notice.

9         THE COURT:  Oh, Mr. Boskey.

10        MR. BOSKEY:  I didn't mean that to be silly.

11   I wouldn't do that.  Your Honor knows me.

12             Obviously from the discovery and the

13   nature of the charges and who was the murder

14   victim, that the Defendant and Counsel has been

15   put on notice of what the aggravating factor is.

16   It doesn't have to be in the indictment itself,

17   as the Courts have held.  And the aggravating

18   factor part of the 12 year old or younger, and

19   the brutal and heinous and indicative of wanton

20   cruelty, but it does not have to be specific in

21   the indictment as Odle has held.

22             I didn't mean to be contrite and I would

23   not do that.  I believe the Defendant has been put

24   on proper notice to defend himself in what he is

31                    **31**

1   being charged with and would be charged with.

2          As to the argument of whether a

3   Witherspoon jury is again pro State or not, again,

4   Your Honor, it refers to -- and Counsel refers to

5   the various studies, and I refer to it, as Your

6   Honor did earlier, to the various Supreme Court

7   cases that have held that.  Constitutionally, the

8   Witherspoon jury is not pro State or pro

9   conviction.  And I rest on the Supreme Court cases

10  that hold thusly.

11         With that, Judge, other than again

12  having a copy of Odle for Your Honor, I would

13  again ask that Your Honor, this motion be denied

14  also.

15         Does Your Honor want it?

16    THE COURT:  Yes, I do.  Thank you very much.

17  Response.

18    MS. KEISMAN:  Your Honor, under Chapter 38

19  section 11-3A, it states a charge shall be in

20  writing and allege the commission of the offense

21  by stating the name of the offense, citing the

22  statutory provision, setting forth the nature and

23  elements of the offense charged, the date, and the

24  count, the name of the accused, or any other name,

**32**

32

and the time as definitely as can be done.

The reason the law requires this is so that again we are put on notice of what we must defend.

Yes, the victim in this case was under 12 years old. I know that. What is it that was exceptionally brutal or heinous? What is it that makes this case show that Mr. Clayborn acted in such a way to exhibit wanton cruelty? When did he do what things? Where did he do those things? It's just as simple as the form of the charge. It's just as simple if you got an indictment that didn't set forth the charge, where it occurred, or when it occurred, you can come in and ask to dismiss this charge. Or even after the trial, we are moving in arrest of judgement. It was a defective indictment.

The reason we are allowed to do that is so we can defend the case. We don't get that far because it's not in the indictment.

Now, it comes to my attention through Mr. Boskey's argument about the Illinois Supreme Court case, but I don't think it changes the fact that the United States Supreme Court is unable to

**33**

1  define what is exceptionally brutal or heinous

2  behavior is.  That makes it still unclear as to that.

3  I don't see it changes things.  I think that State

4  still has to show us what the factors are.  And I

5  think they must show a good faith basis for asking

6  for death penalty in this case.  Thank you, Judge.

7      THE COURT:  This is another motion that gave

8  me some trouble.  Maybe People vs. Odle will

9  straighten it out.  I did not find Odle in my own

10  research.  And that may be because it's so recent

11  that I didn't.

12      I don't think that 111 has much to do

13  with the problem that we have here, because as I

14  understand the law in this area, the aggravating

15  factors or the precipitating factors that will

16  bring about a death penalty hearing, are not

17  required to be alledged in the indictment,

18  whatever aggravating factors they may be.  Which

19  perhaps is one of the problems with that statute,

20  but nonetheless our Court, our Supreme Court, has

21  consistently held to the best of my knowledge they

22  at any rate, that those factors need not be

23  alledged in the indictment.

24      What of course bothers me is whether or

1   not 9-1-B7, in the light of Menard vs. Cartwright,
2   was constitutionally void on its face.  And when
3   I read Cartwright or Menard, it would seem to me
4   -- and I did come to the conclusion that absence
5   some conduct by Illinois that 9-1-B7 is
6   constitutionally void.  The reason that I came to
7   that decision is because I could make no rational
8   distinction between the language of the Oklahoma
9   statute and that of the Illinois statute.
10  Oklahoma provided that if the death was
11  "especially heinous, brutal, and atrocious and
12  cruel".  Our statute says in addition to the age
13  limitation, especially brutal, especially heinous,
14  no, exceptionally heinous, brutal, indicative of
15  wanton cruelty.  Now that language is almost the
16  same and certainly for the purpose of trying to
17  grasp meaning from it, meaning that would be
18  sufficient to be applied in a even handed way, I
19  could not in my own mind make any distinction in
20  the language.  While I don't think it's so much
21  that the Supreme Court of the United States
22  couldn't define what the terms mean, as I
23  understood they found that it was not their
24  purview to define for the State what they mean in

1   their statutes.  And since Oklahoma has not

2   construed that language to narrow its scope and to

3   bring it into a constitutional permissible posture,

4   they avoided the death penalty in Menard.

5          On the other hand from a reading of the

6   opinion, it becomes very clear that had Oklahoma

7   made any narrowing construction of the statute it

8   could have perhaps rendered that language

9   sufficiently certain to avoid a declaration of

10  unconstitutionality.

11         And so I tried to make some

12  determination as to whether or not Illinois had

13  done so.  And I look not only at 91B7 but also at

14  1005-5-3.2, which is the extended term provision of

15  our statute, which carries the identical same

16  language.  When it talks about a Defendant being

17  susceptible to an extended term if the crime was

18  "exceptionally heinous, brutal, and cruel,

19  indicative of wanton cruelty."  And in reading those

20  cases I came to the conclusion that Illinois, the

21  statute of Illinois law in regard to that section

22  of the statute was hodgepodge.  That allowed me

23  not to be able to determine with certainty what it

24  was, that Illinois had defined these terms to me.

1   But rather it appeared to me on a case by case

2   basis, depending on whether or not the Court was

3   sufficiently offended by horrible conduct of the

4   Defendant, it fell within or without that

5   language.  Which of course was the precise reason

6   that the United States Supreme Court held the

7   language to be too vague to be applied in a death

8   case.  They talk in terms of runs through all the

9   death cases, I suppose.  That is that higher

10  degree of due process that is required in a

11  capital case than in others.  And because this

12  language was so loose the Court held that it

13  violated, not the due process clause of the

14  Fourteenth Admendment, but the Eighth Admendment,

15  cruel and unusual punishment provision.

16       So I had raised some questions which

17  perhaps the case that Mr. Boskey just tendered to

18  me will solve for me.  I am not certain.  But I

19  raised four questions that I was going to ask you

20  lawyers to further explore for me.  And you very

21  well may want to do that in spite of Odle.  I am

22  going to read Odle and maybe I will come to the

23  conclusion that I don't need any further

24  assistance, but you are welcome to assist me

further if you think it is necessary.  The

questions that I raise are 1), whether Illinois has

provided a constitutionally adequate narrowing

construction to section 9-1-B7.  2) is, has

Illinois contrued these terms as used in the

Section 1005-5-3.2, B2.  3), and if so, is the

construction consistent and constitutionally

adequate for death penalty aggravating factor.

That is there are a lot of cases under the

extended term provision.  And it is my general

belief-- Well, I expressed my belief or my

analysis of those cases, but yours may differ as

to whether or not the construction there is

adequate for utilization in a death penalty case

in view of the Eighth Admendment.  And finally, if

not, can the trial court construe the statute in

such a manner as to avoid a declaration of

unconstitutionality.  That is if it's a case of

first impression for me, must I either declare the

statute unconstitutional or can I define these

terms in such a way as to make them constitutional

and hopefully the Supreme Court will agree.

Otherwise, we are -- All this could be

avoided if the Defendant knew the name of the

1    game.  But those are the questions that I have.

2    And of course, running with that motion is

3    counsel's motion to preclude a death penalty

4    procedure based on that section of the statute.

5    And what it is saying to me as I understand it is

6    that I should hold as a matter of a pretrial

7    procedure conduct a hearing to determine what it

8    is the Defendant allegedly did, falls within the

9    constitutionally  permissable utilization of that

10   language.  That seems to have some merit of that

11   motion.  Given again, as I say when I read Odle

12   that position may fall away also.  But given the

13   breath of the language used, it is quite possible

14   that reasonable people can differ severely as to

15   whether or not conduct is exceptionally heinous

16   and brutal and indicative of wanton cruelty.  And

17   if that's the case whether or not the state should

18   be permitted to engage in the death penalty

19   procedures which start with Witherspoon, only to

20   find out that the aggravating factor is not

21   sufficient on its face to justify submitting it to

22   the jury.

23          So, I would then at that point after

24   hearing the State's case achieve in aggravation

1    direct the jury to sign a verdict to find the

2    Defendant is not eligible for the death penalty

3    because his conduct did not fall within the

4    constitutional permissable purview of that lineup.

5    And the harm to the Defendant seems to me to be

6    Payton.

7           And that's what I understand Counsel to

8    be asking me to do as a pretrial matter.  And as

9    I said, I think there's great merit in that,

10   particularly as I understood the status of this

11   provision in Illinois law.

12          Again as I said, I will read Odle to

13   determine whether or not that straightens out any

14   portion of my fuzziness.  I would invite and

15   encourage you to help me in making that

16   determination, being mindful of the fact that I am

17   considering and favoring ordering the State to put

18   on some evidence as a pretrial matter as to

19   whether or not the alleged crime in this case

20   could, by reasonable people, be distinguishable

21   from all other murders and said to be one which

22   was exceptionally heinous, brutal, and indicative

23   of wanton cruelty.  For if it is not, we will

24   avoid the death penalty procedure in all respects

1   including Witherspoon.

2          Now, I note that that rubs against the

3   grain to some extent.  And it may even rub against

4   some of the decided cases.  I have not found a

5   case, however, that suggests to me that I am

6   totally impotent in assisting the Defendant in

7   receiving that degree of due process which the

8   Court seems to suggest he has the right to.  The

9   highest standard of due process that our Courts

10  can award to him is what he is entitled to.  In

11  doing that it seem to me that knowledge

12  beforehand that the State will never get off the

13  ground, in the only aggravating factor that

14  appears to be relevant, that it can never get that

15  kite off the ground.  It would be fundamentally

16  unfair to involve ourselves in all of the other

17  death penalty procedures.

18         At any rate, that's your task, ladies

19  and gentlemen.  I'm going to hold in abeyance

20  ruling on the Defendant's motion to declare the

21  Illinois death penalty Section 9-1-B7 of the

22  Illinois revised statute unconstitutional.  And I

23  am going to hold in abeyance Julius Clayborn's

24  motion to preclude the death penalty procedures.

**41**

41

1          Now, as to Mr. Gant's motion to preclude

2     the death penalty procedures, his is somewhat

3     different.  And as I understand his motion, he

4     says to me that under the holding, Enmund vs.

5     Florida, that a Defendant cannot be sentenced to

6     death unless the State can prove that he intended

7     to kill the person who was killed in this case.

8     And he says that the State does not have any

9     evidence which would indicate the Defendant had an

10    intent to kill.  Therefore, I should preclude them

11    from envoking the death penalty procedures.

12          Mr. Boskey, I gave Mr. Gant an

13    opportunity to address that problem.  And he

14    waived and relied on the motion as presented.  Do

15    you have anything you would like to say?

16      MR.BOSKEY:  I would in brief comment, Judge.

17    Obviously the factors that Counsel would mention

18    would be something that we would have to prove in

19    Court.  And to do it on a pretrial motion, to say

20    that we don't have some evidence or not, I don't

21    think is proper.  It holds for facts in evidence

22    to be presented during the course of trial.  We

23    have alleged in the complaint before Your Honor

24    what the Defendant has done, intentionally and

42                           **42**

1   knowingly killed  the victim in this matter.  We

2   have also charged the aggravated criminal sexual

3   assault, which would be the death qualifier, if

4   you will.  I don't believe as a matter of law we

5   have to do anything further at this stage, Judge,

6   than to put the Defendant on notice what he's

7   being charged with, what we are in effect

8   expecting to prove, and to go further doing the

9   course of trial.  I don't think we are required by

10   any constitutional provision to do any more than

11   that at this stage.

12       THE COURT:  Mr. Gant.

13       MR. GANT:  I have no comment, Judge.

14       THE COURT:  All right.  I think that under

15   Enmund vs. Florida is distinguishable from Mr.

16   Hendricks.  To begin with, this Defendant is

17   charged with count one of the indictment with the

18   offense of first degree murder, in that he without

19   lawful authority strangled and killed Denise

20   Johnson.  Well that's count two.  In count one of

21   the indictment he's charged with unlawful

22   justification, intentionally and knowingly

23   strangled and killed.  He's charged with, in count

24   three, with the first degree murder, in while

1  committing a forcible felony, he kidnapped,

2  strangled, and killed.  In count four he's charged

3  with first degree murder, while committing a

4  forcible felony, to-wit criminal sexual assault.

5  He's charged with a number of sexual assaults and

6  aggravating kidnapping, and things of that nature.

7  Which if proven beyond a reasonable doubt would

8  bring him within the purview of Section 9-1-B7.

9  That is the aggravating factors.  And I don't

10  think it's true that Enmund, as I read it,

11  provided that the Defendant had to intend to kill.

12        What I read in Enmund and the quote I

13  would like you to consider, which comes from

14  People vs. Jones at 94 Illinois 2nd 275, at page

15  299, the Illinois Supreme Court says in Enmund vs.

16  Florida, the Supreme Court held that the Defendant

17  could not be put to death for two killings that

18  he did not commit and had no intention of

19  committing or causing.  The operative language

20  there is did not commit or had no intention of

21  committing.  The indictment in this case

22  straightforwardly and without ambiguity charges

23  this Defendant with having committed the offense

24  of first degree murder.  Which of course is

1   different altogether from the holding of Enmund.

2          There's also another case, and the name

3   of it is trying to escape me. It's a case out of

4   Arizona where two brothers broke their father and

5   another prisoner out of the Arizona State

6   Penitentiary. At some point in time while they

7   were fugitives, the father killed two people

8   without cause or provocation. And the Defendant

9   brothers did nothing. They were not involved in

10  the killing. And it doesn't appear they knew the

11  killing was going to take place. And in a classic

12  sense aided or abetted. Except that they had been

13  immensely involved in the original escape. And

14  the Supreme Court upheld the death sentence in

15  that case. Not withstanding the fact that there

16  was no intent on the part of those Defendants to

17  kill and no indication whatsoever that they had

18  been involved in the actual killing itself.

19         So I don't think that the argument in

20  the Hendricks case is well taken and consequently

21  his motion to preclude the death penalty

22  procedure is denied.

23         Now that then leaves insofar as the

24  Defendant Clayborn is concerned his motion to


45                         **45**

1   declare the Illinois death penalty statute

2   unconstitutional.  And I'm not certain that the

3   motion is distinguishable from the motion that

4   addresses itself to the question of 9-1-B7.  Is it?

5        MS. KEISMAN:  It doesn't include 9-1-B7,

6   Judge.  It attacks other provisions of the

7   statute.

8        THE COURT:  I will hear your argument on

9   this one.

10        MS. KEISMAN;  I waive argument and rest on

11   the allegation in the motion.

12        THE COURT:  The State.

13        MR. BOSKEY:  I would argue that the various

14   Illinois Supreme Court cases in the past few years

15   have upheld the constitutionality of the Illinois

16   statute.  I would rest on that.

17        THE COURT:  Yeah, the precedence is

18   overwhelming on me.  Unless I'm going to -- which

19   I'm not -- undertake to decide that the Illinois

20   Supreme Court has been consistently wrong.  I

21   would love an opportunity to do that.  But I guess

22   the only way for me to do that is to wind up as a

23   Justice of the Illinois Supreme Court, which I'm

24   not and doesn't look very fruitful for that

**46**

1    happening.  So I am constrained by the law to deny

2    your motion for -- To declare the death penalty

3    statute unconstitutional.

4          Now, Ms. Keisman, I think that takes

5    care of all the motions.  Am I correct?

6          MS. KEISMAN:  Yes.

7          THE COURT:  What's the status of discovery so

8    far as Mr. Clayborn is concerned?

9          MR. BOSKEY:  We have obviously been tendering

10   documents and what have you during the course of

11   this.  This is a motion to quash arrest.

12         MS. KEISMAN:  That's correct.

13         MR. BOSKEY:  We can perhaps set that for the

14   same date Your Honor is going to make your final

15   ruling on one motion pending.  Perhaps a date

16   convenient to Ms. Keisman.  Judge, perhaps Tuesday,

17   April 11th will be best for both our schedules and Ms.

18   Keisman.  She will be on trial the following week.

19         THE COURT:  By agreement?

20         MR. BOSKEY:  By agreement.

21         MS. KEISMAN:  Yes, Judge.

22         THE COURT:  By agreement as to Mr. Clayborn,

23   April the 11th.  With subpeonas for hearing on the

24   Clayborn's motion.

**47**

1                    (Thereupon, the case was passed

2                    and later recalled, at which

3                    time the following proceedings

4                    were had:)

5        THE CLERK:  People versus Jerome Hendricks.

6        THE COURT:  Mr. Gant, any remaining motions

7    which you have pending, you can address in any

8    order that you choose, informing us as to which

9    motion you are talking about before you proceed.

10       MR. GANT:  Very well, your Honor.

11            I will proceed on my motion that was

12   filed today.  A motion to declare the Illinois

13   Death Penalty Unconstitutional.

14       THE COURT:  Yes.  You did file that today,

15   didn't you?

16            Did you give me a copy of that motion?

17       MR. GANT:  Yes.

18       THE COURT:  Yes, you did.

19            I have it.

20       MR. GANT:  That motion is substantially

21   identical to the motion prepared on behalf of Mr.

22   Clayborn by Miss Keisman.

23       THE COURT:  You want to elaborate on your

24   motion at all?

48                          **48**

1          MR. GANT:  No.

2              I will stand on the motion.

3          THE COURT:  Mr. Boskey.

4          MR. BOSKEY: Again, Judge, briefly. as to the

5      constitutionality of the Death Penalty Statute has

6      been upheld by the various rulings of the Supreme

7      Court.

8              The Illinois Supreme Court has addressed

9      all the issues posed by Counsel in its -- in his

10     motion.

11             As to the sentencing hearing itself, as

12     to it was discretion on the part of the State's

13     Attorney.  We would rely on the various Illinois

14     Supreme Court rulings.  They have upheld the

15     constitutionality of the Death Penalty Statute.

16         THE COURT:  Mr. Gant, anything further?

17         MR. GANT:  No.

18         THE COURT:  The defendant's motion to declare

19     the Illinois Death Penalty Statute

20     Unconstitutional is denied.

21         MR. GANT:  Next, your Honor, is the motion to

22     prohibit death qualification of the jury in the

23     guilt/innocence stage of the trial.

24             THE COURT:   Since that would be particularly

49                          **49**