CASE NO. _____O8cv 1589_____

ATTACHMENT NO._____6_____

EXHIBIT _____

TAB (DESCRIPTION) _____

1    it's not in the position of charting new waters,

2    the suggestion is, in fact, that the Court

3    wouldn't be charting new waters, contrary to the

4    case, but, in fact, going to the waters that have

5    never been discovered.

6    THE COURT:  Well, I think, to the contrary,

7    that the law in Illinois in this regard is pretty

8    well settled, that if the State elects to treat

9    this matter as a capital offense, one which would

10   make the defendant eligible for a capital

11   sentencing hearing if found guilty of first degree

12   murder, then, the jury is to be Witherspooned at

13   the outset.  And the only way to avoid that is by

14   the defendant exercising, again, his pure right to

15   waive a jury at sentencing hearing,  which he

16   has a right to do.

17   And I understand the difficulty with the

18   choice, but your motion to bar or to postpone

19   Witherspoon is denied.

20   MS. PLACEK:  One thing:

21   In rereading the transcripts this

22   weekend involving the motions that were had by

23   previous Counsel, at the end of that motion, the

24   Assistant State's Attorneys -- not these two

10

1    gentlemen, but others --  in fact stated that at

2    that time there was a likely possibility that, in

3    fact, there would be a request made by the State,

4    should a finding of guilty on first degree murder

5    in the accompanying eligibility phase, that the

6    State would in all probability ask for the death

7    penalty.

8            To formalize the record, Judge, what I

9    would be asking at this time is I would be asking

10   for an affirmative statement by the State's

11   Attorney.

12        THE COURT:  Mr. Murphy.

13        MR. MURPHY:  Judge, I thought it was very

14   clear to the defendant.

15            But if it is not, we are treating this

16   case as a capital case.

17        MS. PLACEK:  That means there will be such a

18   request at the end?

19        THE COURT:  I don't know whether it means

20   that or not.

21            It may very well be at the conclusion

22   of the State's case, even with a finding of

23   guilty, that the State may elect not to proceed to

24   the capital sentencing.

11

1          That is a prerogative up until -- at

2     any point.

3          MS. PLACEK:  You see, that's the problem I

4     have with the Witherspooning issue, Judge.

5          THE COURT:  We'll cross that at the

6     appropriate time.

7          But you certainly don't want the State

8     to be bound by its pre-trial determination that

9     they'll seek the death penalty, and not be in a

10    position to back away from that without having

11    committed error.  That would seem to me to be a

12    rather peculiar position for the Defense to be

13    in.

14         MS. PLACEK:  The peculiarity of the defense's

15    position, unless I get a firm affirmative, is the

16    fact that, number one, in denying my previous

17    motion, that, in fact, we have, so-to-speak, a

18    bifurcated jury, one as to guilt or innocence,

19    just for purposes of the record in clarity, and

20    also as to the Witherspooning issue.  And the

21    State, so-to-speak, being able to have the

22    ultimate decision after the case, I am forced to

23    make the decision dealing with Witherspooning not

24    fully --  not fully informed.

12                       374

1          Now, I understand that the Court is

2    saying, and I understand what it interprets the

3    State as saying, that it seems they might ask for

4    the death penalty;  so, therefore, we have the

5    discretion of requesting Witherspooning.  But then

6    again, they might not.

7          The point I'm having is that I'm forced

8    to advise my client, considering the Court's last

9    ruling, without being fully informed.

10         THE COURT:   That's the nature of the Illinois

11   Death Penalty Statute.

12         MS. PLACEK: And that's why I believe it's

13   before the Illinois Supreme Court.

14         THE COURT:   Well, it's been before the

15   Illinois Supreme Court on that ground for

16   arguments very similar to it a number of different

17   times.

18         The first time that it was there, if not

19   the first, near the first, in Ex. Rel. Carey

20   Versus Cousins.  The Court decided on that very

21   issue that you're talking about, four-three.

22         MS. PLACEK:   That's correct, Judge.

23         THE COURT:   And have not seen fit to deal

24   with it since then, or when it has dealt with it,

13

1    has consistently said that the State is not

2    obliged to tell the defense prior to the actual

3    entry into a hearing -- a capital sentencing

4    hearing, that it seeks the death penalty.

5          So, that being the case, it seems to me

6    that up until they actually commence the hearing,

7    they have the option to abandon. But that does

8    not preclude Witherspooning at this stage, because

9    the defendant is ostensibly eligible.

10         With all due respect to the Court, and

11   not meaning to go on with the argument, in Ex.

12   Rel. Carey Versus Cousins, the case did not deal

13   with the specific issue that I'm speaking of.

14         Just for the record, the issue that I'm

15   speaking of, Judge, is that as an attorney I have

16   to be able to advise my client competently, and

17   with all information in order for the 8th and for

18   the 14th Amendments to come into play.

19         I'm stating to this Court that since the

20   ambiguity, which again was not addressed in the

21   case cited by the Court, has come up in this case,

22   since the Court has made a ruling, and not wishing

23   to flatter myself, has concurred, in fact, with

24   the Defense's theory that a Witherspoon jury is.

14                        376

1    in fact, a guilty prone jury, I am, so-to-speak,

2    between a rock and a hard place, because the

3    unbounded discretion of the State limits my

4    client's right to be fully advised intelligently

5    by Counsel.

6        THE COURT:  Let me suggest to you, Ms.

7    Placek, that I have not concurred with you in

8    terms of my concurrence meaning that the law is as

9    we --  you state it being.

10        What I'm saying to you is that my

11   understanding is, which is personal, that there

12   are no studies which even remotely suggest that a

13   Witherspoon jury is not a death prone jury, while

14   there are a proliferation of studies that suggest

15   that a Witherspoon jury is a guilt prone jury.

16   But Illinois does not accept that as being any

17   inhibitor whatsoever of Witherspooning.

18        MS. PLACEK:   I will suggest it's never been

19   addressed in Ex. Rel. Carey versus Cousins.

20        And I am, again, allowing the Court to

21   go through those uncharted waters and set new

22   grounds, not limited by anyone, Judge.

23        THE COURT:  I think the cases in Illinois are

24   sufficiently close, if not in one case, when you

377

15

1    put them together, Carey Versus Counsins, Daley

2    Versus Hepp, People versus Lewis, and the

3    proliferation of other cases, leads one, it seems

4    to me, inescapably to the conclusion that not only

5    is Witherspooning permissible, but is a must, is a

6    must.

7           I come to the conclusion that I abdicate

8    the function of applying the law, if at this stage

9    I sua sponte decide not to Witherspoon this jury.

10          And I believe that given time and an

11   inclination so to do that the Supreme Court would,

12   under its supervisory power, order me to

13   Witherspoon this jury, if the State could get

14   to the Supreme Court in time to do it.

15          But I'm not going to --  I believe that

16   to be the status of the law.  I'm going to

17   Witherspoon the jury.  And if it's error, that

18   proposition can be dealt with at some future time.

19   But as I read the law right now, I don't have a

20   choice.  I don't have a choice.

21          What's the next motion?

22      MS. PLACEK:   Based on the State's --  Or

23   based on the State's ambiguity to make a firm

24   decision, based on the Court's ruling in this

16                    378

1    matter, based on the decisions previously cited

2    stating -- Strike that -- not the decisions, but

3    surveys and findings stated as to guilt prone, and

4    based on, again, the exception that we are taking

5    to the Court's ruling, we would be at this time,

6    although feeling limited to truly advise our

7    client and have him fully exercise his right to

8    process, we are prepared now to answer the Court's

9    question.

10           MR. MURPHY:  Judge, perhaps I can help

11   Counsel here.

12           If I didn't make myself clear --  I

13   thought I did to Counsel previous to this.  If the

14   defendant is convicted, and if he's eligible, we

15   will be seeking the death penalty.

16           If that is not clear enough, I don't

17   know any other way to express it.

18       THE COURT:  Well, what she's complaining

19   about, and no matter what you say at this point,

20   it is still ambiguous, at least to the extent that

21   next week you could change that position without

22   any penalty whatsoever.  And during the course of

23   the trial you may, for any number of reasons, have

24   occasion to rethink the propriety of that request

17                    379

1    and simply fail to ask for it.

2              And that's the kind of situation that

3    Counsel speaks of.

4         •    And I suggest that that does not worsen

5    her position in any way whatsoever.

6              As a matter of fact, it probably is to

7    the advantage of the defendant, but that's neither

8    here nor there for me to decide.

9              What's our next motion?

10        MS. PLACEK:   I was suggesting, Judge, that we

11   are able to answer the Court's question, based on

12   the fact that we have a signed waiver at this

13   time, Judge.

14        THE COURT:   I wil take his jury waiver on the

15   sentencing phase at a later time.   You may hold it

16   now.

17             What's our next motion?

18        MS. PLACEK:   The State has several motions

19   they filed, Judge, I believe.

20        THE COURT:   What do you want to discuss?

21        MR. MURPHY:   Judge, we filed a motion to

22   inform the Defense of our intention to proceed on

23   the basis of felony murder theory.

24             That motion was filed on January 14th,

1    1991.  Specifically, I think it's stated in the

2    motion there are various felonies which the

3    defendant is charged with, which are not

4    specifically made as counts in the felony murder

5    charge.

6            There are only two counts of felony

7    murder, one is based on criminal sexual assault,

8    the other is based on kidnapping.

9            There are other felonies, Judge, which

10   are included in the Indictment, and specifically,

11   Judge, I'm concerned with Count 10, Judge,

12   aggravated criminal sexual assault.  And we do not

13   wish to be precluded from arguing that as a theory

14   of prosecution, and a theory under the felony

15   murder count statute.  We wish to be able to

16   proceed on that basis.

17        THE COURT:  Defense?

18        MS. PLACEK:  Any way, Judge, be that as it

19   may, we would take exception to the rule.  We

20   would suggest that the cases cited by Counsel, I

21   don't know whether the Court has a copy of the

22   motion, but it in fact deals with a case where the

23   State charged merely first degree murder, but

24   evidence, in fact, during the trial came out where

19                    381

1    there was an involvement with a possible felony

2    murder.   And that, as a matter of fact, takes up

3    one of my motions in limine.

4           I would ask that the State be limited

5    only to those felonies, in fact, charged within

6    the four corners of the indictment.

7           The suggestion to allow them such a

8    scatter-gun approach would, in fact, suggest that

9    the defendant has to -- and again in such a case

10   where the evidence of sexual assault is

11   speculative, at best, and circumstantial at least

12   because of supposed disrobed clothing, since, in my

13   pathology, I have no other evidence of same.

14          But, again, allowing them this sort of

15   scatter-gun approach would allow them the latitude

16   of conjection, not only the latitude of

17   conjection, but the latitude of, quite frankly,

18   surprise; since, in fact, specifically it doesn't

19   state as to the situation, and I'm speaking of the

20   factual situations, that would give rise to these

21   additional felonies.

22       THE COURT:  Mr. Murphy, what's the name of

23   the case that you are relying on?

24       MR. MURPHY:  Judge, there are two cases that

20                 362

1    I relied on, which are stated in the motion.

2              One is People versus Wilson, which can

3    be found at 61 Ill. Ap. 3d, 1029, 378 NE 2d.

4    That's a 1978 case, your Honor.

5              I'm also relying on People versus Allen,

6    which is a Supreme Court case found at 56 Illinois

7    2d 536.

8              Your Honor, I believe the cases address

9    that issue.

10             The only question is, Counsel makes a

11   comment about surprise. Well, Judge, this motion

12   was filed almost three weeks ago.

13        MS. PLACEK: I'm not commenting about the

14   surprise of the motion, not meaning to cut Counsel

15   short. I'd be asking for specificity, that's what

16   I'm speaking of, Judge.

17        THE COURT: That motion is taken under

18   advisement. And I will try and rule on it either

19   before the close of the day, or tomorrow.

20        MR. MURPHY: Judge, if it would be of more

21   assistance to Counsel, as far as that's concerned,

22   with regard to the specificity, I'm primarily

23   concerned with Count 10.

24        MS. PLACEK: This doesn't, quite frankly --

21                         383

1          THE COURT:    That's not the level of

2     specificity that she's talking about.

3          But we will deal with that if I grant

4     the motion.

5          You have a motion for the introduction

6     of other crime evidence?

7          MR. MURPHY:    Judge, I did file a motion with

8     respect to that.    I'm not sure how the Court wants

9     to handle that procedurally.    We filed a motion --

10          THE COURT:    Let me suggest to you what I

11     think is going on.

12          If I'm in error, you're free to

13     interrupt me, and I will hear you.    But I think I

14     have somewhat of a notion of what we are talking

15     about.

16          It is my understanding that you intend

17     to show that at some prior time a few years before

18     this occurrence, that the defendant was involved

19     in an occurrence which resulted in a finding of

20     guilty after a trial that resembles, in some

21     respect, this occurrence.

22          And you intend to show that prior --

23     the circumstances of that prior involvement.    Am I

24     correct, generally?

22

1          MR. MURPHY:   Judge, generally, that's

2     correct.

3              There's actually two incidents, one was

4     the conviction, which --  this is a conviction for

5     aggravated criminal sexual assault and kidnapping.

6     That is already in the Answer to Discovery we

7     filed some time ago under the section for proof of

8     other crimes.

9              We filed a motion to also include

10    another case, separate and distinct case from the

11    matter in which the defendant was convicted on,

12    which is also on his criminal history sheet, which

13    has been tendered.  So, there are two separate

14    matters, Judge.

15         THE COURT:   How long before the occurrence in

16    question, or how long before August 1st, 1988, did

17    these others occur?

18         MR. MURPHY:   Judge, they both occurred in the

19    summer of 1984.   One on --

20         THE COURT:   At least four years prior to this

21    occurrence?

22         ·MR. MURPHY:   Yes, Judge.

23         THE COURT:   How --  What purpose are you

24    showing these other occurrences?  For what

385

23

1    purpose?

2        MR. MURPHY:   Judge, there are a number of

3    reasons that we are seeking to introduce the

4    evidence in these other matters.   Primarily, it

5    would be for the purpose of intent, lack of

6    consent on the part of the victim, identification,

7    common design and modus operandi.

8            And, your Honor, I have an argument

9    prepared in relation to these cases whenever the

10   Court wants to hear that.

11       MS. PLACEK: With all due respect to Counsel,

12   and again holding the rap sheet of the defendant

13   -- and I know this matter was touched on heavily

14   during the motion.   I have -- and I don't believe

15   since I'm reading by CB number, not only

16   indictment number -- I have September 1984, only

17   one conviction dealing with a case 84 10287 under

18   CB No. 192095.

19           With due respect to the Court, and due

20   respect to the Assistant State's Attorney, that's

21   a matter I have become well aware of, because that

22   was dealt with during part of the motion under a

23   -- when we raised Discovery.

24           We have no knowledge of any other

24                              386

1   conviction for any other sex case that this

2   defendant --

3        THE COURT:  He's not claiming a conviction

4   for any other sex case.  He says that the

5   defendant was involved in another occurrence,

6   which may have been uncharged, that he's permitted

7   to show.  That's what he's saying.

8        MS. PLACEK:  Well, with due respect to the

9   State, and again, I have received no information.

10       THE COURT:  I'm not concerned about the

11  information that you have at this time.  I'm

12  trying to get a -- to approach it in another

13  respect.

14            My problem is, obviously, remoteness and

15  how it tends to show that which is permissible to

16  be shown by other crime evidence as distinguished

17  from a propensity to commit crime.  And secondly,

18  whether or not the prejudicial affect of showing a

19  crime that remote outweighs its probative value.

20       MR. MURPHY:  Judge, one explanation I can

21  give you is the second matter in which the

22  defendant was convicted on.

23            Our information is that it occurred on

24  September 3rd, 1984.  It's also our information

25

337

1   that the defendant was in jail from the date of

2   that offense, in custody, until his release,

3   because he was convicted on that matter on April

4   25th, 1988.

5       MS. PLACEK:  Since I was supplied the rap

6   sheet, which I attempted to go -- and never

7   supplied --  and again, because I office at 26th

8   Street, Mr. Lufrano has been accepting Discovery

9   and has been trying to get me everything through

10  inter-office mail, I would suggest, Judge, that

11  this is the last rap sheet that both --

12      THE COURT:  Miss Placek, I'm not interested

13  in his rap sheet at this point, and whether or not

14  the occurrence that is uncharged appears on that

15  rap sheet.  That's not the issue.

16      MS. PLACEK:  I understand.

17          But now Counsel is now saying there's a

18  second matter of conviction.

19      THE COURT:  No, he's not.  He says there's a

20  prior conviction, and he has a prior uncharged --

21  perhaps uncharged similar act.  And that's what

22  we're dealing with.

23      MS. PLACEK:  Fine, Judge.

24      MR. MURPHY:  Judge, perhaps if it's of any

338

26

1    assistance to Counsel along that line, I know the

2    Court is eager to move along.   That other matter

3    is on the rap sheet of the defendant in Counsel's

4    possession.   It was charged as a battery, and it wa

5    SOL'd.   And that is indicated on the rap sheet

6    that she has in her hand.

7          MS. PLACEK:   That's fine, Judge.

8             Judge, Counsel is now saying manner,

9    mode, exactly to the fingerprint test of the

10   Illinois law, and I agree with the Court it's not

11   only separated by time, but the separation becomes

12   even greater when we have a non-convicted battery

13        THE COURT:   Well, the fact that he's not

14   convicted of it is not very relevant for my

15   purposes, at any rate.

16             It may be relevant for you to show that

17   to the fact-finder, if, in fact, the State is

18   permitted to bring it out.   But in the analysis

19   that I'm trying to go through, it does not make

20   any difference whether he was convicted or ever

21   charged with it.

22             My problem is remoteness and the

23   prejudicial effect of it, and what is sought to be

24   shown by it.   And if all that we are trying to

389

27

1    show is modus operandi, then that so-called

2    signature crime, you're going to have to show me

3    either by -- presentation how the defendant's

4    signature is connected with those occurrences.

5              And if we're talking about identity and

6    intent, my initial reaction is it's too remote to

7    show identity and intent.

8              Proximity in time, proximity in place

9    cannot be shown by a crime that was four years

10   old.  And thus, it looks -- it begins to look like

11   what the Courts have always condemned, the

12   utilization of a prior crime for its prejudicial

13   effect as opposed to its probative effect.

14             And, as I have said a number of times,

15   it's very difficult for me to rule in limine on

16   these kinds of questions.

17             The two of you know far better than I

18   know at this point or may have ever known as to

19   what you expect your evidence to show.  And it is

20   only when a firm evidentiary basis has been laid

21   am I anywhere close to being able to rule

22   correctly on this issue.

23             Consequently, I'm going to at this point

24   bar the State from introducing other crime

1    evidence.

2         When the State has laid the proper

3    predicate and feeling that it has put in the

4    proper foundational basis to bring forth the

5    evidence that it seeks to introduce, the issue can

6    then be brought back to my attention.  And I will

7    rule at that time definitively whether or not you

8    will be permitted to show the other crimes.  And I

9    will be in a position, hopefully, to have a

10   factual basis on which I can rule.

11        Now, I invite your attention to one or

12   two of the other cases that were tendered to me in

13   connection with another matter that I have under

14   consideration, which talks about remoteness and

15   how that affects the admissibility of other crime

16   evidence.

17        And this clearly is remote. It's four

18   years old, and it does not, in my judgment,

19   qualify for any purpose at all, except, perhaps,

20   modus operandi, signature crime.

21        But the signature has to be clearly

22   written and not ambiguous and not speculative, and

23   it must be so clear that reasonable minds would

24   say that he who committed the first necessarily or

29

391

1    more probably than not is involved in the

2    commission of the second.    That's what modus

3    operanti proves.    And that's the standard that

4    we're going to go by.

5              What's our next motion?

6         MR. MURPHY:    Judge, the People would make a

7    motion in limine with regard to the Rape Shield

8    Act, which is under Chapter 38, Section 115-7. And

9    in particular, Judge, we would be asking the Court

10   to order the Defense not to elicit any evidence

11   regarding the victim's prior sexual activity or

12   reputation for sexual activity, or make any

13   inference with regard to her prior acts of sexual

14   activity.

15             That area is protected under the Rape

16   Shield Act, although we feel there is no evidence

17   in any event.    Clearly, the Statute and the case

18   law states that this type of evidence is not

19   relevant and is improper for the Defense to elicit

20   in a case such as this.

21        THE COURT:    Ms. Placek.

22        MS. PLACEK:    With all due respect, Judge, the

23   Rape Shield Act goes as to the living people.

24   This young lady is deceased.

     30

                    302

1          Unless the Court grants our motion in

2     limine or in the alternative our motion as to

3     Brady material integrally a part of the Defense

4     case and strategy in this matter, because to

5     refresh the Court's memory, and not allowing the

6     Court to rule in a vacuum, the Defense made an

7     allegation during the hearing for the Motion to

8     Quash the Arrest that, in fact -- or rather --

9     strike that.

10          The State made an allegation that, in

11    fact, the reason that the defendant was

12    voluntarily asked to go to the station was because

13    he was the last person to see the victim alive;

14    that he was, in fact, characterized as her boy

15    friend and/or lover.

16          And secondly, Judge, that this pointed

17    to him as the only one who would be in a position

18    to do this.

19          We brought out, and again this will be

20    spoken to later in our Brady motion, that there

21    was one -- that this young lady was not --  let me

22    put it this way, exactly naive; that she and her

23    then guardian had many fights over the men that she

24    had, again, lessening the motive of my client to

31

333

1   possibly be the -- strike that -- lessening --

2   yeah, that's right, the motive of my client to be

3   the possible one who did this;  that her guardian

4   knew that there were many men --  and I'm using

5   the word, men -- that she went with;  that there

6   was a stepfather who, in fact, she often ran to

7   when she had fights with this legal guardian and

8   stayed at his apartment, viciating the fact that,

9   in fact, my client was the last one to see her

10  alive.

11          And not only that, and again,

12  minisculily touching on my Brady motion, the fact

13  that my client was not the last one to see her

14  alive;  that there was a report that she was seen

15  and to put it quite mildly, in a disreputable

16  section of the city soliciting, and that in fact,

17  the guardian and the police went out looking for

18  her days after my client was last seen with her.

19          Threfore, Judge, I would suggest that

20  not only is the Rape-Shield Act not designed to

21  protect this matter, but, I'm speaking of a

22  murder, it's rather suggested and was passed to

23  prevent embarrassment to prosecutrix in rape

24  cases.

32

1          But I would suggest that the probative

2    value, as stated by myself and can he sbown to this

3    Court as part of the motions' transcript, far

4    outweighs any attempt for the State to hide the

5    true character of the victim in this case, Judge.

6          MR. BRADY:  Judge, in response.

7          First of all, there's two reasons this

8    should not be elicited.  One, again, under the

9    Rape-Shield Act it's improper.

10         THE COURT:  Let me answer Miss Placek's

11   argument, which seems to have some degree of

12   attraction as far as I'm concerned, that the Rape-

13   Shield Act is designed to protect living persons,

14   and we should not apply the act beyond the

15   protection that it was designed for.

16         It seems to me that that analysis, that

17   is to say, that the Act was designed to protect

18   living persons from harrassment and embarrassment,

19   and that, obviously, is not the case with this

20   particular young lady, as Miss Placed says.

21         Unfortunately, Denise Johnson is beyond

22   any embarrassment or humiliation that we can

23   impose on her.  But yet, the defendant has a due

24   process right to put before the trier of fact the

33                        395

1    relevant evidence.

2          And I'm not saying that this evidence is

3    relevant, but I am trying to get you to

4    articulate, if you can, or if you care to, the

5    reach that you think the Rape-Shield Act has.

6          MR. MURPHY:  Judge, I don't know.  I would

7    have to read a little bit about it.

8          The question has never come up, and I

9    really don't know the answer to that question.

10         But nonetheless, Judge, even if you put

11   that question aside, the next question with

12   respect to that evidence is relevance.

13         Counsel made reference to, in her

14   response to our motion, something about the

15   victim's character.  Well, Judge, what does that

16   have to do with what did or didn't happen this

17   particular night, any evidence about her past

18   activity, which we submit there is none?

19         I know that's neither here nor there for

20   purposes of this motion; but nonetheless, Judge,

21   what does that have to do with this particular

22   case, except to prejudice the jury against the

23   victim and plant a seed in their mind something

24   about the victim and have them, perhaps, not make

34

1  a decision based on the evidence?

2      THE COURT:  That, again, is a question that I

3  can't answer, because I don't know the evidence,

4  except as I recall some of it from the hearing on

5  the motion.

6          I, again, am pretty much aware that

7  there was an allegation that the defendant was the

8  last person to be seen with the victim alive.

9  There's also some contradiction of that.   There

10  is some contradiction of that, and it arises out

11  of the asserted, if not proven, propensity for

12  loose conduct, is the best word I could use to

13  describe what the Defense ascribed to the victim

14  in this case.

15          Now, whether that's going to ever become

16  relevant, I'm not able to determine, based on what

17  I know about the facts of this case at this point.

18  But should it become relevant, I don't think that

19  the Rape-Shield Act would prohibit its

20  introduction necessarily.

21          Now, I'm fully aware that you can't --

22  even --  even under my analysis of the Rape Shield

23  Act, we're not going to go into an excursion of

24  this young girl's background for sagacious reasons

35

1   or pure interest or anything of that nature.

2   We're going to -- if at all, deal with that which

3   is relevant to the defendant's right to defense,

4   and bring relevant circumstances before the jury.

5   And that's the extent of it.

6           And again, I can't answer your question,

7   nor can I rule on your motion without further

8   background.

9           Mr. Cassidy.

10      MR. CASSIDY:  From our last trial we did

11  together, we had a lot of sidebars in certain

12  areas.

13      THE COURT:  We may have some more.

14      MR. CASSIDY:  We make an objection -- and the

15  witness is on the stand, and we object.  And

16  there's an inference there where the jury says:

17  What's the State trying to hide?  We want to avoid

18  that in this case.

19          Counsel stepped up and told you there

20  was evidence that she was out prostituting in an

21  area of Harvey or in this area of Chicago.  That's

22  what she told you.

23          We have no information to that effect.

24  There's nothing in the police reports that this

36                398

1    girl was ever sleeping with other men, ever had

2    sex with another man, nothing at all.  This is

3    total innuendo.

4            We don't want to be put in the

5    position that we have to sit here and make

6    objection after objection to questions about her

7    possible prior conduct, when there is no prior bad

8    history on her part, if you want to call it bad

9    history.

10    THE COURT:  Are you going to postulate the

11    proposition that this defendant was the last

12    person to be seen with this young girl alive?

13    MR. CASSIDY:  Yes.

14    THE COURT:  Then, he has a right to meet

15    that.

16    MR. CASSIDY:  Yes, he does.

17    THE COURT:  If it is the theory that she was

18    seen subsequent to being with him involved in

19    whatever activity she may have been involved in,

20    the fact that the activity may be illegal or

21    immoral wouldn't prohibit him from showing that.

22            Suppose he says that she was seen after

23    being with me, she was seen playing little league

24    baseball.  You certainly would allow that.

37

1           Now, the fact that he may show that she

2   was seen prostituting some place is not going to

3   bar it simply because the evidence --  the conduct

4   that she was engaged in is immoral or illegal.

5   That's all I'm saying.

6           And I don't know what the evidence is

7   going to show.  If it's pure speculation and if it

8   lacks any foundation for admissibility on other

9   bases, that's a different thing.  But on pure

10  relevance grounds, it may very well become

11  relevant, and we will have to see.

12          You say it isn't relevant.  The Defense

13  says it is relevant.  And I'm in no position to

14  answer that as a matter in limine.  Perhaps when

15  we get into this, I will be able to answer it.

16      MR. MURPHY:  Judge, we do have another

17  motion, but the only motion --  the only thing

18  this is regarding is sexual activity.  This is

19  all we're focusing on.

20          The motion is with respect to sexual

21  activity of the victim with other men, her

22  reputation for sexual activity with other men, or

23  any inference --

24      THE COURT:  Well, her reputation of sex with

38                          490

1   other men, I would not think is relevant.

2        MS. PLACEK:  What came out during the motion

3   and what's alleged in the police report, and I'm

4   somewhat surprised, suggests and then gives the

5   street address in Chicago where I got this

6   information, I got it from the General

7   Supplementary Report.  But irrespective of that, the

8   problem is there was an allegation and there was

9   an argument made by their brother State's

10  Attorneys during the motion -- during the

11  argument on the motion to quash the arrest that,

12  in fact, he was the one.

13       And when I speak of he, I'm speaking of

14  the defendant, was the only one who was bothering

15  her romantically or sexually, if you will.

16  Therefore, he was the one who was last seen with

17  her; therefore, he was the one who, in fact, did

18  this rape murder.

19       I'm suggesting to the Court that in our

20  figuring out from the information we received and

21  the information that we have contained within the

22  street files, and that's what was brought forward

23  to the motion, that the State should not only be

24  precluded in opening statements from making a

39                        401

1   false comment that he was the last one seen with

2   her, or making the statement that he was possibly

3   -- and again I'm referring to the testimony in

4   the motion of her guardian that he was the only

5   one who was romantically interested or dating her

6   at that time, Judge.

7        THE COURT: Well, again what becomes relevant

8   depends upon the progress and the direction that

9   the evidence takes.

10       If the State makes attributions about

11  the defendant's conduct, it may also make

12  rebuttal.  Matters which would not have been

13  relevant otherwise can become relevant at any

14  moment the State says, if the State attributes to

15  the defendant conduct that requires --  well,

16  let's --  If the State attributes to the defendant

17  conduct which can be refuted but must necessarily

18  involve conduct by the victim, which is either

19  protected by the Rape-Shield Act, or is otherwise

20  not admissible in the defense case in chief, then,

21  it may very well become relevant.

22       And all I'm saying to you primarily is,

23  as in most instances when we are talking about

24  matters in limine, is that I can rule

46

1   definitively, and I'm not about to bar the State

2   or you from making statements in your opening.

3          I would hope that one would be cognizant

4   of the fact that what you say in opening can come

5   back to hurt either side.

6          I'm going to, of course, repeatedly tell

7   the jury that your statements are not evidence.

8   And you can do, therefore, with your opening

9   statements, what you choose primarily, because,

10  again I'm not able to tell what the evidence is

11  going to be.

12         MS. PLACEK:  With all due respect, Judge, I

13  in my motion in limine, wish to preclude the State

14  from doing that.

15         THE COURT:  I'm not going to do that.

16         There is no way that I can preclude the

17  State from telling the jury what the evidence is

18  going to be, unless I know beforehand that it is

19  clearly impermissible.  And I don't know what the

20  evidence is this case is going to be.

21         MS. PLACEK:  Which brings us to an

22  interesting --

23         THE COURT:  And the same is also true for

24  you.

                        403

41

1          I can't tell what your evidence is going
2    to be, if any. You're not required to put on any.
3    But if you decide to put on evidence, there's no
4    way I can tell you what it is.
5          That is one of the reasons why I'm not
6    going to grant the motion of the State under the
7    Rape Shield Act. I can't tell yet. It splits
8    both ways, and we'll have to see how it goes
9    along.
10         But you can't try the case to me
11   piecemeal and ask me to rule on every piece of
12   evidence that you anticipate being proffered by
13   the State, or the State by the defense. We'll
14   have to try the case before the jury, and we'll
15   rule on the evidence as we hear it together
16   in court.
17      MS. PLACEK: One interesting thing, though,
18   Judge, comes up. Judge, in reading the
19   professional code of ethics, the Prosecutor --
20   there was always an old saying that the Defense
21   lawyer can never commit reversible error, the
22   Prosecutor said. The A.R.D.C. seems to take a
23   different view of it. And specifically I'm
24   speaking of the argument of the defendant being

42

1    the last person to see her alive.

2            And in regards to the canon of ethics

3    newly adopted by the Attorney Registration and

4    Disciplinary Commission, number one, that a

5    Prosecutor, when having evidence to the contrary

6    cannot knowingly mislead the trier of fact or, in

7    fact, it then becomes a violation of his

8    professional responsibility.

9            I suggest, Judge, unless the Prosecutor

10   -- and it was not brought out, again, during the

11   motion, so I must see it as true and correct, can

12   refute the fact that there was a statement, it was

13   both cross and direct, that this person was seen

14   alive after the date and time with the defendant

15   she was seen with other people.

16           There was cross examination of Officers

17   involving that.  And there was not only the cross

18   examination of officers, but, in fact, the

19   guardian was picked up and taken to the area where

20   she was to look for her by the police.  The

21   ethical standards require that these Prosecutors,

22   unless they wish to violate their professional

23   ethics, refrain from, in fact, making that

24   statement in opening statements, and not only

43                      405

1    when they know to the contrary and have never

2    disavowed the police reports containing that

3    statement, Judge.

4         THE COURT:  Miss Placek, I'm sure you are

5    aware of the holding in People versus Himmel

6    (phonetic spelling) that includes you, that

7    includes Mr. Lufrano, that includes me, that

8    includes Mr. Simpson, and that includes Mr.

9    Cassidy.

10           So, we are all bound by the Code of

11   Professional Responsibility.  And I'm going to

12   make certain that the Code governs everybody by

13   saying to you that you have recourse from that.

14   That does not mean that I'm going to preclude or

15   try to enforce the Code of Professional

16   Responsibility.  I'm going to leave that to the

17   A.R.D.C.

18        MS. PLACEK:  The police said that she was

19   seen after the --

20        THE COURT:  Miss Placek, this is not a Q and

21   A between you and the State's Attorney.

22        MS. PLACEK:  I just want to plea my standards

23   so I know what action I have to take.

24        THE COURT:  Are there any other motions we

44                        406

1   have to deal with?

2       MR. MURPHY:  Judge, I know by making this

3   motion, apparently, we have opened a door to a

4   Pandora's box of issues.  But, again, Judge, I

5   don't think it's a complicated motion.

6       And I know it's difficult for the Court

7   to rule in matters in advance before hearing the

8   evidence, but, Judge, what we're referring to is

9   evidence of prior sexual activity between the

10  victim and other men.

11      How in any way can that be relevant to

12  anything that's at issue in this trial?

13      THE COURT:  Probably isn't, Mr. Murphy.  And

14  if it is not relevant, it will not come before the

15  jury.

16      On the other hand, I can't tell.  And

17  what you're asking me to do is to accept your

18  assertion, which I would be most happy to do,

19  except that I have a contra assertion coming from

20  the Defense, which I'd like to accept, but I'm

21  reluctant to do.

22      And so, I don't know.  I have no way of

23  choosing between the two of you who is more nearly

24  accurate as to what the evidence is going to show.

45                  417

1          As we begin the hearing, it will become
2    more clear to me as to which way I should rule,
3    and that doesn't put an undue hardship on either
4    of you, because both of you -- and I see by the
5    size of your file, your respective files, that I
6    could be studying your file for weeks without
7    knowing what your evidence is going to look like.
8          So, you know, you know, and when it
9    unfolds, I will know, and I will try to rule and
10   rule carefully and accurately as I can.
11       MR. MURPHY:  Judge, we're just asking, and
12   apparently it's impossible.  Even if you assume
13   that everything the Defense Counsel has stated is
14   accurate, how in the world could there be any
15   relevance to that?
16       THE COURT:  I don't know.
17       MR. MURPHY:  The parties involved don't have
18   a right to have a motion in limine with respect to
19   evidence which is irrelevant.
20       THE COURT:  You have a right to bring the
21   motion, Mr. Murphy, and you have exercised it.
22   And I have a right to refuse or decline to rule on
23   it until I am in a better posture.  And that's the
24   right that I'm exercising.

46                        408

1          If that is frustrating to you, I

2    empathize with you.  It's frustrating to me, too,

3    and I empathize with you.

4          But I do not intend to try the case in

5    limine.  And I think that's a fair position to

6    take with both sides.

7          I will hear you evidence, and if I

8    determine it's not admissible, I will not permit

9    it.

10          I'm going to send for the jury.

11          Have I ruled on all of your motions or

12    discussed all of your motions?

13    MR. MURPHY:  I had two other motions.

14          One, with respect to any evidence

15    regarding the victim Denise Johnson being a

16    runaway.

17          I also had another motion about the

18    victim being seen the next day, because based on

19    my understanding, that's at least double-hearsay.

20          In view of the Court's ruling, it would

21    be fruitless at this point to make those motions.

22    THE COURT:  Pretty much.

23    MR. MURPHY:  I would indicate to this Court

24    there is also potential for prejudice to the

47                        409

1    State.    The jurors could hear allegations that

2    are not evidence and can have a very prejudicial

3    effect on the State.

4          And I think it's important, if we can,

5    to try to resolve some of these matters before the

6    evidence is heard, if it has no relevance.

7        MS. PLACEK:   I would agree with Counsel,

8    because there are also matters --   The Court has

9    made a statement as to the other crimes rule.   Two

10   of our motions in limine -- in reading the file and

11   studying the evidence in this case, it would be

12   the suggestion of the Defense that the State is

13   unable to present a case.   And thus, we want to

14   know where we stand.

15       THE COURT: Well, listen, let me say this to

16   you.   I'm not going to go back and forth with

17   this conversation all afternoon.

18          I have indicated to you as clearly as I

19   can that all motions in limine are not susceptible

20   to definitive rulings.

21          If you want me to rule, I will take the

22   most conservative position that is possible to

23   take and deny the motion in limine on both sides,

24   and we will proceed to a hearing.

48                        410

1          It is valuable in a significant kind of

2     way to have a motion in limine presented to the

3     Court.   That does not mean that the Court is able

4     to rule on them as definitively as you might like

5     for it to be.

6          These are difficult issues of evidence.

7     And they cannot be ruled upon in a vacuum.   And I

8     will not be forced to rule, or if I do, the

9     ruling is going to be in the most conservative

10    way.   It's subject to review in all points,

11    anyway.   So my ruling at this point is not

12    binding on anybody.

13         It certainly is not binding on me. And I

14    can reverse it, reconsider it at an appropriate

15    time in any event.

16         And so, it's really a guideline that I'm

17    not able to help you with at this point.

18         What motions do you have, Ms. Placek,

19    that have not been ruled on?

20    MS. PLACEK:   We have a motion to dismiss

21    loosely based on a Brady violation, Judge.

22         I apologize.   This is the first time

23    that the State would be getting a copy of this,

24    Judge, and that's my fault.   I apologize because

49                    411

1    I have been on trial for two weeks.

2        THE COURT: Have you had an opportunity, Mr.

3    Murphy, to read the motion?

4        MR. MURPHY: Yes, Judge.

5        THE COURT: You care to expand on it?

6        MR. PLACEK: Yes, Judge.

7           Respectfully, Judge, and referring the

8    Court's attention to the motion, one of the basis

9    for probable cause in this case was constantly

10    that the defendant was, and I quote specifically

11    from -- I quote specifically from the motion and

12    from police reports, that he was the best suspect

13    because he was the last person to see her alive.

14           I would point out that it was suggested

15    during the testimony brought out by the State,

16    rebutted by cross examination, that he was not

17    only the best suspect, but the best suspect

18    necessarily came from the point that all

19    information pointed that he, the defendant, was

20    the last person to see this victim alive.

21           My suggestion to the Court is that this

22    is all through the formal reports, in the

23    so-called street files, Judge. And again,

24    referring your attention to both the cross

50

1    examination of the matter, of the police officers,
2    of the youth officer, and also, Judge, to the
3    State linking this as a vital piece of evidence,
4    that it states that a person, in fact, gave them
5    information that she was on a certain street;
6    that the person --  And again, I'm speculating,
7    but it was known at the time.
8            If the Court looks at
9    the motion, I believe, if memory serves me right,
10   there was an objection when Defense Counsel
11   attempted to inquire of the police officer who
12   took the report as to who that person was.
13           In other words, to aid us in the
14   investigation, I believe the Court sustained on
15   the ground of relevancy as to the motion.
16           Since then we, through our
17   investigations have been unable to find this
18   person.  This is one of the reasons why we have to
19   speak --  to argue so vociferously, if not
20   boringly to this Court to this one issue.
21           We feel, as shown both in the police
22   report --  and again, I'm speaking of the major
23   reports and in the motion, this is the major
24   linchpin in the State's theory of the case, since

51

1   we know there's information that directly

2   contradicts that, not only directly contradicts

3   that, but since, in fact, this information was in

4   the care and custody of the government, if you

5   will, through their agents, the police, since in

6   fact we can't find that anonymous source, because,

7   again, our problems is the police wishes neither

8   to disclose a juvenile or a confidential

9   informant.

10          Our suggestion is that we have a real

11  problem combatting the fact that this defendant,

12  even though untrue, according to report, not

13  disavowed by the State, was the last person to see

14  the girl alive.

15      THE COURT: State.

16      MR. MURPHY:  Can we have a few moments,

17  Judge?

18      THE COURT:  Mr. Hendricks, would you step up

19  here with your jury waiver, while the State is

20  considering that other matter?

21      MS. PLACEK:  Your Honor, for purposes of the

22  record, we would be submitting a modified jury

23  waiver, since there is nothing specifically

24  dealing with sentencing.

52                    414

1      THE COURT:  Mr. Hendricks, your attorney

2   informs me that you desire to waive your right to

3   a jury at a sentencing hearing, if a sentencing

4   hearing becomes necessary in this case.

5          Is that correct, sir?

6      THE DEFENDANT:  Yes, sir.

7      THE COURT:  Before I can permit you to do

8   that, Mr. Hendricks, I am obligated to inform you

9   of certain rights that you have, determine that

10  you understand your rights, and that you are

11  waiving your rights freely and voluntarily.

12          Now, if at any time during the course of

13  our conversation you should change your mind and

14  decide you do not wish the Court to hear the

15  sentencing hearing if one becomes necessary, if

16  you will bring that to my attention I will

17  discontinue the conversation with you, and your

18  matter will be set for hearing before the jury,

19  if such a hearing becomes necessary.

20          Also, if I say something to you that you

21  don't understand, if you bring that to my

22  attention, I will restate it or rephrase it, until

23  you do understand.

24          Mr. Hendricks, in the event that the

53

1   jury should return a verdict finding you guilty of

2   the offense of first degree murder, and if the

3   State elects to proceed toward a capital

4   sentencing hearing, you have a Statutory right to

5   have the hearing held before a jury.

6           A jury is composed of 12 persons who

7   reside in Cook County.  They would be selected by

8   your attorney and the State's Attorney, and it

9   would become their obligation to listen to all the

10  evidence adduced by the State in support of the

11  proposition that you are eligible for a capital

12  sentence, and that there are no mitigating factors

13  sufficient to preclude the imposition of the death

14  penalty.

15          During the first phase of the sentencing

16  hearing, the State would be required to prove

17  beyond a reasonable doubt that there exists one or

18  more Statutory aggravating factors which makes you

19  eligible for the imposition of the death penalty.

20          Your attorney would be given an

21  opportunity to cross examine each and every

22  witness called on behalf of the State, with a view

23  towards bringing out facts favorable to you.

24          You also have a right to call witnesses

5 4                     416

1    on your own behalf. And I will assist you in that

2    regard by issuing subpoenas to compel the

3    attendance of witnesses on your behalf.

4         You, yourself, have a right to testify if

5    you so desire.   On the other hand, if you choose

6    not to testify for any reason whatsoever, the jury

7    will not be permitted to take that into

8    consideration in determining whether or not the

9    State's evidence proved that you are eligible for

10   a capital sentencing beyond a reasonable doubt.

11        After the jury has heard the evidence,

12   the arguments of the attorneys and my instructions

13   as to the law that applies to this hearing, the jury

14   will retire to deliberate and determine whether or

15   not the State's evidence proved beyond a

16   reasonable doubt that you were eligible for a

17   capital sentencing.

18        Before the jury would be premitted to

19   return a verdict finding you eligible for a

20   capital sentencing, all twelve jurors, each one,

21   must agree that the State's evidence proved that

22   you are eligible for a capital sentencing, beyond

23   a reasonable doubt.

24        Should the jury return such a verdict

55                         417

1    finding you eligible for a capital sentencing, the
2    case would then proceed to the second phase of the
3    sentencing hearing.
4        In that phase of the sentencing hearing,
5    the issue before the jury would be whether or not
6    there are any mitigating circumstances sufficient
7    to preclude the imposition of the death penalty.
8        At that point the State would call
9    witnesses, and your attorney, again, would be
10   given an opportunity to cross examine each and
11   every witness called on behalf of the State, with
12   a view toward bringing out facts favorable to you.
13       Do you have a question?
14   THE DEFENDANT:  That would be a second chance
15   to see if they wanted to keep it forward?
16       THE COURT:  Yes.
17       After having found you eligible for
18   capital sentencing, the jury would then be
19   required to determine whether, in fact, the death
20   penalty should be imposed, or stated different,
21   whether there were any mitigating factors
22   sufficient to preclude the imposition of the death
23   penalty.
24       And during that phase of the hearing,

56

1    your attorney, again, would be given the

2    opportunity to cross examine each and every

3    witness called on behalf of the State, with a view

4    toward bringing out facts favorable to you.

5            You would also have a right to call

6    witnesses on your own behalf.  And again, I would

7    assist you in that regard by issuing subpoenas to

8    compel the attendance of witnesses on your behalf.

9            You, yourself, would have a right to

10   testify if you so desire.  Again, on the other

11   hand, if you chose not to testify for any reason

12   whatsoever, the jury would not be permitted to

13   take that into consideration in determining

14   whether or not the State's evidence proved that

15   there were no sufficient mitigating factors to

16   preclude the imposition of the death penalty.

17           Before the jury would be permitted to

18   return a verdict sentencing you to death, all

19   twelve jurors must agree that there are no

20   sufficient mitigating factors sufficient to

21   preclude the imposition of the death penalty.

22           If one juror does not agree, then the

23   death penalty could not be imposed, and the Court

24   would proceed to sentence you in accordance with

57                        419

1    the law made and provided for the offense for

2    which you have been found guilty.

3              Do you understand?

4         THE DEFENDANT:  Yes, sir.

5         THE COURT:  On the other hand, Mr. Hendricks,

6    if you waive your right to jury at the sentencing

7    hearing, then, I, and I alone, will determine

8    whether the State's evidence proves beyond a

9    reasonable doubt that you are eligible for a

10   capital sentence.

11             And I, and I alone, will determine

12   whether or not there is sufficient evidence to

13   preclude the imposition of the death penalty.

14             Do you understand?

15        THE DEFENDANT:  Yes, sir.

16        THE COURT:  Does your signature appear on

17   this jury waiver?

18        THE DEFENDANT:  Yes, sir.

19        THE COURT:  When you signed that document,

20   was it your intention to give up and waive your

21   right to a sentencing hearing by a jury?

22        THE DEFENDANT:  A   Yes.

23        THE COURT:  Has anyone forced you, threatened

24   you, or coerced you in any way to cause you to

58                    420

1   waive your right to a jury at the time of

2   sentencing?

3        THE DEFENDANT:  A   No, sir.

4        THE COURT:  Are you waiving your right to

5   hearing by jury freely and voluntarily?

6        THE DEFENDANT:  A   Yes, sir.

7        THE COURT:  Then, let the record reflect that

8   the defendant has been advised of his Statutory

9   Right to a hearing by jury to determine his

10   eligibility for capital sentencing, and to

11   determine whether or not there are any mitigating

12   factors sufficient to preclude the imposition of

13   the death penalty.

14        The Court finds that he understands his

15   right, and that he is waiving his right freely and

16   voluntarily.

17        Mr. Hendricks, you and your Counsel may

18   return to Counsel table.

19        Mr. Murphy, are you prepared to answer

20   Counsel's motion to dismiss?

21        MS. PLACEK:  Judge, for purposes of the

22   record, I am giving Counsel our police report,

23   which was tendered by the State, which they are

24   saying they never saw before.

**421**

59

1          THE COURT:   Are you prepared to answer Miss

2    Placek's motion?

3          MR. MURPHY:   Judge, first of all, I'd ask --

4    the Court has a copy of the motion.

5              I'd ask the Court to look at --  It's a

6    one page police report on which the motion is

7    based.

8              I would indicate that I have never seen

9    this report before today, and I --

10         MS. PLACEK:   Well, I suggest that I also give

11   Counsel the other page that's specificially of

12   Mrs. Field, which explains that Denise had the

13   habit of socializing freely with older boys and

14   older men.

15         THE COURT:   Mr. Murphy, the argument that you

16   have not seen the report is of no significance to

17   me.

18              A Brady violation does not depend upon

19   the good faith or bad faith of the Prosecutor.

20   The question simply is one of whether or not this

21   is material that should have been disclosed to the

22   defendant that was, in fact, not disclosed, and

23   the consequences of such a violation.

24         MS. PLACEK:   For purposes of the record, I

60                    432

1    got it from the State's Attorney.

2               I would point out that this was used

3    extensively.  I got this as part of Discovery from

4    the office of the State's Attorney.

5               I would also point out that this was

6    used extensively and referred to and moved by us,

7    that copy, specifically, as a Defendant's Exhibit

8    as part of the motion.

9               The idea that they haven't seen it

10   before, Judge, I have no idea why.  I would

11   suggest perhaps Counsel would like to look at our

12   file and see whether or not their brother State's

13   Attorneys hadn't passed on the report.

14               But this is what I was speaking of,

15   specifically about the right of the State's

16   Attorney when --  and the report that I was

17   referring to disavowing.

18        THE COURT:  Let him respond, Ms. Placek.  Let

19   him respond, if he chooses to.  It's Brady

20   material.

21        MR. MURPHY:  Judge, I'm going to ask for a

22   few more moments, if I can.

23        THE COURT:  Gentlemen, I'm going to send for

24   the jury.  It is --

423

61

1    MS. PLACEK: Judge, with all due respect, and
2  I think Counsel might agree with me, I'm free --
3  there are no --  Excuse me, I'm free, and whether
4  you want me or not, I'm yours for however this
5  takes.
6        I would not start a first degree murder
7  at this time, especially when Counsel --  I have
8  not had the benefit, like Counsel has mentioned,
9  of trying before you.
10        If they haven't seen this, then I would
11  suggest a lot of their other argument, since this
12  is part of the linchpin of several of our motions
13  -- I don't know whether Counsel would agree, but--
14    THE COURT: It is not necessary for me to
15  resolve that motion prior to commencing an
16  introduction of this case to a jury.
17        Meanwhile, they need time to look at it,
18  fine, they can look at it.  But I'm not going to
19  sit here wasting time while they look at that
20  document, when we can be doing some other things.
21  And if it turns out that your motion has substance
22  and that under the provisions of 114-1 I can
23  dismiss this case, it's gone.  That's all there is
24  to it.

424

6 2

1              I doubt very seriously --   Well, I

2    don't know whether that's the case or not.  But

3    the curative power does not reach all the way to

4    the ultimate extreme of dismissing this case.

5              There are other ways in which we can

6    deal with that.  But the probabilities are that

7    this case is not going to get dismissed, so, we

8    might as well get started with it.

9         MS. PLACEK:  Before we get started, Judge,

10   give me five minutes.

11        THE COURT: I'm going to give you probably

12   more than that, since it's going to take more than

13   five minutes to get a jury down here.

14        MR. CASSIDY: I think we're ready to deal with

15   the motion.

16        THE COURT:  Is it Brady material?

17        MR. CASSIDY:  Should it have been tendered to

18   the Defense?

19        THE COURT:  Right.

20        MR. CASSIDY: It's possibly relevant.

21             Sure, it should have been given, but she

22   acknowledged receipt of it.

23        THE COURT:  Is it Brady material, not

24   something that you should give to her, but does

6 3                        425

1    the law require that you transmit that document to

2    her under pain of sanctions consistent with Brady

3    versus Maryland in your judgment?

4         MR. CASSIDY:  Judge, what's the question?

5              She tendered to us.

6         THE COURT:  The question is whether or not

7    that document should have been tendered to the

8    Defense under Brady versus Maryland, or the

9    imposition of sanctions consistent with brady be

10   imposed?

11        MR. CASSIDY: I'd say yes, Judge.

12        THE COURT:  All right.

13             Now, from what I understand, she's

14   saying, not that she is unaware of the existence

15   of the document, but an underlying person whose

16   identity is not ascertainable to her is relevant

17   to her defense, and should have been disclosed.

18   Not simply that piece of paper, but the identity

19   of the person that would be necessary for her to

20   appear in court.  That person's identity should

21   have been disclosed.  Do you agree?

22        MR. CASSIDY:  You're assuming that that

23   person's identity was known.

24             THE COURT:  Answer the question.

426

6 4

1           If the identity of the person was known,
2    should it have been disclosed?
3           MR. CASSIDY: If requested to, yes; if known,
4    yes.
5           THE COURT:  Is it your contention that you
6    don't know, not you, not your office, but law
7    enforcement people of the State of Illinois do not
8    know who they are talking about in that document?
9           MR. CASSIDY: Well, read the document.  I just
10   read the document.
11          THE COURT: I'm asking you, Mr. Cassidy, for
12   your help, if you will.
13          MR. CASSIDY:  Sure.
14          THE COURT:  You take the position that the
15   law enforcement people don't know who that person
16   is?
17          MR. CASSIDY:  Right.
18          MS. PLACEK:  Well, that's strange. Because it
19   speaks of the R.Y.C., which was discovered on the
20   motion as the Youth Officer, developed the
21   information from an anonymous source residing at
22   10537 South State.
23               So, the police officer talked to the
24   person, Judge.

65                        427

1      THE COURT:  Miss Placek, if you will give me

2  an opportunity, I will let you respond in any way

3  you choose.

4           Does Brady require you to come in

5  possession of that information, or can you simply

6  by denial and neglect, avoid the consequences of

7  Brady?

8           I don't mean you, personally, but I mean

9  anybody in the chain of law enforcement, from the

10 lowest patrol officer to the Attorney General of

11 the State.

12 Can they simply ignore this piece of evidence?

13     MR. CASSIDY:  Not if it was known to them,

14 Judge.

15     THE COURT:  Not if what was known to them?

16     MR. CASSIDY: If there's a police report made

17 and the police report indicates there's a known

18 person out there who saw the defendant, then, we

19 have a duty to tell them about it.  But that's

20 not the case here.

21     THE COURT:  You have a duty also to put

22 yourself in a position to know the identity of

23 that person.

24     MR. CASSIDY:  Under your scenario, yes.

66                          428

1    THE COURT:  Now, you have a police officer

2    who is acknowledging the existence of an address

3    of an informant who resides at a specific

4    address.

5    MR. CASSIDY:  Incorrect.

6    THE COURT:  Then, I need to read the report.

7    If you will just give it to me, I will read it.

8    MS. PLACEK:  You got it, specifically the

9    yellow'd out part by myself, Judge.

10    THE COURT:  Mr. Cassidy, the officer who is

11    the author of this report is telling us that he

12    developed information from an anonymous source who

13    resides at a very specific address, gave him

14    information that the victim was seen on a specific

15    date at a specific time, at a specific place.

16    That anonymous source has to be, it

17    seems to be a reasonable conclusion, at least I

18    conclude, and you tell me in what way it is not

19    reasonable that that anonymous source has to be

20    known to this police officer, because he knows

21    where that person lives, and can --  Well, that's

22    what he says.  He says the anonymous source

23    resides at 10537 South State.

24    And if he doesn't know the person by

67

1    name, that would not preclude him from making

2    efforts to find out who it is.  He can recognize

3    that person, I would assume.

4         MR. CASSIDY: Sounds to me, Judge, in all due

5    respect to your Honor, that he might have gotten a

6    phone call from a person who says I live at 10537

7    State.  And if there is such an address and

8    there's a house there, that could have been

9    easily an inference to draw from that report.  It

10   doesn't say it's a confidential informant.

11        THE COURT:  Who is the author of this report?

12        MR. CASSIDY:  Has to be somebody by the name

13   of D. Kaddigan (phonetics), by reading the bottom

14   of the police report.

15             I mean, Judge, you know, there's a big

16   difference between a confidential informant and an

17   anonymous source.  An anonymous source is not

18   someone who is identifiable.

19        THE COURT:  When the anonymous source is said

20   to reside at a specific place, that's different

21   than just an anonymous source.

22             In any event, it cannot be resolved

23   without the author of this report coming in and

24   telling us what he means in this document.  Bring

68                              430

1   him in.

2      MR. CASSIDY: I wonder if Counsel made any

3   attempts, since she just tendered that report to

4   us, whether she's talked to the officer, or

5   subpoenaed him, or attempted to talk to him.

6      MS. PLACEK:  It's not my duty, number one,

7   Judge.

8       Counsel was present during the motion.

9   He would have known.  It was brought up during the

10   motion, Judge.

11       Not only that, but this knowledge was

12   had by every one of the Chicago Police Officers

13   who testified during the motion.

14      MR. MURPHY:  Judge, Officer Kaddigan never

15   testified in this motion.

16      THE COURT:  Well, bring this officer before

17   the Court.  Let's find out what he means before we

18   go any further with it.

19       If it appears as though that person is

20   known to the officer by some means, then we have

21   to deal with it.  But we're not going to leave it

22   in a position that we don't know what he's talking

23   about.  It sounds like he does know what he's

24   talking about.

1          Gentlemen, I'm going to send for a jury.

2     MS. PLACEK:  With all due respect --

3     THE COURT:  I'm going to send for a jury, and

4  I'm going to open up this case by telling the jury

5  what's involved in it, the opening address to the

6  jury, the identification of the parties to this

7  litigation, at which time I suspect it will be

8  close to 4:30 or thereafter.

9          And I'm going to send the jury home

10 until tomorrow, late morning.

11         What time can we start, Ms. Vrodolyk?

12 At which time we will start the jury selection

13 process in this case.

14    MS. PLACEK:  I can be here at 9:00, Judge.

15    THE COURT:  You can't he here at 9:00.

16    MS. PLACKE:  Trust me, Judge.  I can get up

17 in the morning.

18    THE COURT:  All right.

19         I'm going to read to the jury the

20 Indictment in its present form, and that includes

21 the Counts which you have asked leave to amend.

22 I'm going to read them to the jury in their

23 present form.

24         If I grant leave to amend the

70                      432

1    Indictment, we'll deal with that in the

2    instructions to the jury.  But I'm going to tell

3    the jury specifically each count that he's charged

4    with, what he's charged with.  I'm going to read

5    to the Jury the State's Answer to Discovery.

6            May I secure the file again, Ms.

7    Vrodolyk?

8            There are several Answers to Discovery

9    in this file.  There's an Answer to Discovery,

10   there's a Supplemental Answer to Discovery.  And

11   can't tell whether the Supplemental Answer adds

12   new witnesses or deletes witnesses.

13       MR. MURPHY: It adds new witnesses, Judge.

14   Those are witnesses in addition to the witnesses

15   that are listed on the original Answer to

16   Discovery.

17       THE COURT:  So, I'd read both the Answer to

18   Discovery and the Supplemental  Answer to

19   Discovery, as it pertains to the list of

20   witnesses.

21           That's as far as we'll go with the jury.

22           Tomorrow, I will order them all back.

23   At 11:00 o'clock we will proceed with the jury

24   selection process.

71                            433

1          MS. PLACEK:   The Defense would have no

2   problem with swearing in a panel, Judge.   It's

3   still relatively early, if the Court is going to

4   pick.

5          THE COURT:   I am not going to do that.

6              Court's in recess.   Please bring up a

7   jury.

8

9                        (Thereupon, a short recess

10                        was taken, after which the

11                        following proceedings were had:)

12

13

14

15

16

17

18

19

20

21

22

23

24

72                      434

1       MR. MURPHY:  Judge, may I address the Court?

2       THE COURT:  Yes.

3       MR. MURPHY:  Counsel made this motion to

4    dismiss, and obviously we haven't had a lot of

5    opportunity to reflect on it.

6          The Court asked us specific questions

7    with regard to whether or not the information

8    contained in the police report is Brady material.

9    We took a brief recess, we had an opportunity to

10    review the materials which are in this report.

11    And, your Honor, upon further review, it's our

12    position that this is not Brady material.

13       THE COURT:  Why not?

14       MR. MURPHY:  Your Honor, first of all, this

15    motion was in the possession of the Defense.  It

16    was raised before the beginning of this trial,

17    because the Defense had that report in their

18    possession and had a question about its contents.

19          Number two, your Honor, whatever our

20    theory of the case is, if the case is primarily

21    based upon the statement of the defendant, whether

22    the defendant is seen a day, two days, three days

23    after, to our knowledge, she disappeared, that's

24    evidence that the Defense may elicit --  certainly

73

1    may bring out during the course of this trial.

2              Your Honor, what the Defense is trying

3    to do here, I believe, is trying to force either

4    the State's Attorney's office or this Court to

5    conduct an investigation.

6              They can call Officer Kaddigan.  They

7    knew his name, they could contact him and ask him

8    if they were looking for any information.

9              There's been no indication that the

10   Defense has done anything in this case.  If they

11   have some theory that the police are trying to

12   conspire, or the State's Attorney's office is

13   trying to conspire to convict this defendant and

14   not give them certain information, they had that

15   report in their possession, Judge.

16             They had the information that's

17   contained in that report.  And how that equals a

18   Brady violation, Judge, we fail to see, really.

19       .   THE COURT:  It isn't the report, that

20   document, that is the subject matter of the

21   complaint.  It's the identity of the anonymous

22   source that we're talking about.

23             My understanding, which may be

24   incorrect, is that that anonymous source claims to

74                    436

1  have seen the victim after the date that you claim

2  the victim was killed.

3          Now, that's going to seem to me to

4  become relevant.  And it is not the issue of

5  whether or not the State's Attorney is conspiring

6  with anyone.  That --  That might be, or seem to

7  be part of the allegation, but that's irrelevant,

8  because it is not relevant whether or not the

9  State's Attorney's office inadvertently or

10  advertently omitted to tender the Brady material,

11  if, in fact, it is Brady material, but was it

12  relevant material to the defendant's defense, and

13  did the State do what it could do to ascertain the

14  identity of that person so the defendant could

15  know?

16          Otherwise, you're going to be confronted

17  with --  or the Court and the Defense are going to

18  be confronted with your objection to the author of

19  that document, about his conversation with the

20  source on the ground that it's hearsay.  And the

21  more perfect evidence, obviously, is to have the

22  source in court.

23          But the State is the only one who knows

24  who the source is, the identity of the source.

75                       437

1    That's what makes it Brady material, if at all.

2            And I'm not saying to you definitively

3    that it is Brady material.   It looks like it.   It

4    looks like it.

5            And that's why I said bring the officer

6    in.  We'll find out what his knowledge is, and

7    what he meant by that statement.

8            But it seems as though he has some

9    information about that source that would lead to

10   the disclosure of the identity;  and if so, the

11   Defense needs to know that so they can subpoena

12   the person so as to overcome your objection of his

13   -- this is clearly the objection you're going to

14   make.  And then I have to decide whether or not

15   Chambers versus Mississippi is applicable to it.

16           And so, I'd like to avoid the more

17   difficult question by answering the obviously easy

18   question.

19       MR. MURPHY:  Judge, first of all, we don't

20   know, obviously --  I don't think we could say

21   with certainty when the victim died.

22       THE COURT:  I know.  But you're going to do

23   your best to predicate a time of death, and the

24   Defense has a right to try to meet that, Mr.

76                    438

1    Murphy.  And it isn't dependent upon your

2    completeness of your theory of the case.

3         The Defense has some right to introduce

4    evidence also.  And where that evidence and the

5    ability of them to adduce it lies within the

6    knowledge of the State, then, it should be

7    disclosed.

8         MR. MURPHY:  But, Judge, I might add, too, at

9    this particular point, this case is --  according

10   to what my information is, the defendant was in

11   custody or at least was at the police station

12   around August 8th -- August 9th, 1988.  This case

13   has been on the call for in excess of two years.

14   I don't know how long the Defense has been in

15   possession of this report.

16        It's interesting that their question

17   would come up literally minutes before we begin

18   jury selection, and certainly it has never been

19   raised to myself or to Mr. Cassidy at any time

20   before.this.  And I have been in the courtroom

21   since May of this year.

22        THE COURT:  That is not going to inhibit us

23   from inquiring into the knowledge of that police

24   officer.


7 7                    **439**

1          It may very well be that this issue will
2    go away, but I'm going to find out what he knows,
3    and who this person is, if he can tell us, and
4    what conversations he had, and what predicated
5    him, what motivated him to write that specific
6    language in his report.
7          MS. PLACEK:  We would ask that the police
8    officer be made the Court's witness, not informed
9    as to the specifics, Judge, or prepared,
10   so-to-speak.
11         I'm not blaming these gentlemen, Judge,
12   and I am not impugning any improper conduct.  But
13   in my experience, sometimes police officers --
14         THE COURT:  I'm not going to order the
15   lawyers not to talk to witnesses.  And I will
16   assess the credibility of the witnesses based upon
17   the evidence that is adduced at that time.  But
18   I'm not going to order either side not to talk to
19   witnesses.  That seems to be sufficient on that
20   issue.
21         You can have the police officer here
22   tomorrow.  We'll make that inquiry.  And at least
23   it is conceivable that the whole issue will go
24   away or be resolved without having to make a

440

1   major, major issue out of this limited inquiry.

2        MR. MURPHY:   Judge, I understand the Court's

3   ruling.

4            I would just also indicate at this point

5   we have no idea what the availability of this

6   officer is, if any.  We have never tried to reach

7   him.

8        THE COURT:   If he's unavailable, Mr. Murphy,

9   then we will deal with the consequences of that as

10  Chambers versus Mississippi impacts it.  We can

11  overcome those problems.

12           We have to first determine whether or

13  not he's going to be available before we can reach

14  that step.

15       MS. PLACEK:   With all due respect to the

16  State, Judge, the State didn't have some of the

17  reports that were tendered.  We only have

18  exculpatory statements by the Defendant.  I take

19  it no inculpatory statements popped up.  There was

20  a statement made that we're relying on -- relying

21  on a statement made by the defendant.

22       THE COURT:   Ms. Placek, I'm not going to go

23  into the discovery that has been interchanged

24  between you.  It's not my role to make certain

79                     **441**

that discovery has properly been tendered by both sides.

(Thereupon, the following proceedings were had in the presence and hearing of the prospective jurors)

(Venire sworn)

THE CLERK: Hugh Miles. Linda Palarzik. Nadine Bird. Hattie Mae Griffin. Anthony Slaton. Kevin Max. Ida Worland. James Hyer. John Zeeler. Stephanie Boone. Sandra Cashana. Warren Pluton. Alvin Turner. Steven Klean. (All names spelled phonetically).

(Thereupon, there was a rotation of Official Court Reporters)

1 STATE OF ILLINOIS      )
                         )      ss:
2 COUNTY OF C O O K      )

3           IN THE CIRCUIT COURT OF COOK COUNTY
            COUNTY DEPARTMENT-CRIMINAL DIVISION
4
  THE PEOPLE OF THE       )
5 STATE OF ILLINOIS       )
                          )      Case No.  88 CR 12517
6     -VS-                )
                          )      Charge:  Murder
7 JEROME HENDRICKS.       )

8                 REPORT OF PROCEEDINGS

9          BE IT REMEMBERED that the above-entitled

10 cause came on for hearing before the Honorable LEO E.

11 HOLT, Judge of said court, on the 5th day of

12 February, 1991.

13      PRESENT:

14          HON. JACK O'MALLEY,
               State's Attorney of Cook County, by:
15          MR. JOHN MURPHY, and
            MR. SCOTT CASSIDY,
16             Assistant State's Attorneys,
               on behalf of the People;
17
            MR. RANDOLPH STONE,
18             Public Defender of Cook County, by:
            MR. VINCENT LUFRANO, and
19          MS. MARIJANE PLACEK,
               Assistants Public Defender,
20             on behalf of the Defendant.

21

22
  Nicola Peel Vogelgesang
23 Official Court Reporter
   16501 S. Kedzie Parkway
24 Markham, Illinois 60426

443

1

1      THE CLERK:  Sheet 5.  Line 15.  Jerome Hendricks in

2  custody.

3      MR. COLEMAN:  Could we pass this matter so I can

4  get Mr. Murphy?

5      THE COURT:  Pass.

6      MS. PLACEK:  By the way, Judge, there were no

7  phones that called out yesterday, Judge.

8      THE COURT:  Mr. Hendricks, we'll call you right

9  back.

10                      (Case passed.)

11      THE CLERK:  Sheet 5.  Line 15.  Jerome Hendricks.

12  In custody.

13      THE COURT:  Good afternoon.

14      MS. PLACEK:  Good afternoon, Judge.

15      THE COURT:  Nice to see you.

16      MS. PLACEK:  Nice to be seen.  Judge Karnezis would

17  not let me out of the courtroom yesterday.  I'm ready as

18  soon as we dispose of several motions.

19      THE COURT:  I'm going to -- What motions in limine

20  do you have?

21      MS. PLACEK:  There would be -- there's a Brady

22  motion, Judge, that we were just turned over -- certain

23  material just got to me.  It was given to Mr. Lufrano as

24  to army records as to certain GF's we may or may not

                        444

2

1 have.  There's a motion in limine.

2     THE COURT:  G --

3     MS. PLACEK:  Again, progress reports.  And there's

4 a motion dealing with other crimes, other bad acts.  And

5 just a motion for clarification as to why certain things

6 were turned over to us obviously at the request of the

7 State's (inaudible).

8     THE COURT:  Have you and Mr. Hendricks made a

9 decision as to how you're going to handle --

10     MS. PLACEK:  Not as yet, Judge.

11     THE COURT:  Do you think you will be prepared to

12 make that decision by 1:30?

13     MS. PLACEK:  Definitely, yes, Judge.  Oh, yes.

14     THE COURT:  All right.  I'm going to recess court

15 for the noon hour.  We will reconvene at 1:30.

16 Hopefully, we can resolve the pretrial motions that

17 counsel has just mentioned.  And depending upon what

18 decision is made in regard to the witness and possible

19 Witherspooning of this jury, which should be, if the

20 jury is going to be Witherspooned, then counsel and the

21 Court will either in open court or in chambers lay out

22 the method for the impaneling of this jury.

23         If the jury is not going to be Witherspooned,

24 then we will proceed in the normal method that we

3                          415

1 impanel a jury, Miss Placek, and do it on that --

2     MS. PLACEK:  I understand.

3     THE COURT:  Mr. Lufrano can help, and I will

4 further elucidate.

5     MS. PLACEK:  No, Judge.  I think I know the Court's

6 methods.  We, of course, if there is a determination to

7 Witherspoon, we'd be asking for an in camera.

8     THE COURT:  I'm sure you are.  We'll take those

9 problems up at 1:30.

10     MR. MUPRHY:  We also filed two motions which have

11 been placed in the court file, tendered to the defense.

12     MS. PLACEK:  They were.

13     THE COURT:  I just went through the court file, and

14 I find no answer to discovery

15     MS. PLACEK:  Mr. Lufrano brought that up, Judge.  I

16 have a stamped copy of an answer that I filed and I

17 brought to supplement the court file.  The only thing

18 that was -- the only statement I would make, Judge, is,

19 of course, we would call whatever witnesses who were

20 listed either in the police report or who in fact were

21 called by either side during the pendancy of the motion.

22 Other than that, Judge.

23     THE COURT:  You don't need to find it at this

24 particular point in time.  I would simply remind you of

4

1  the obligation that counsel has to make the record

2  reflect the filings and to be accurate.

3       MS. PLACEK:  Yes, Judge.

4       THE COURT:  That's counsel's responsibility.  And

5  so I will, you know, hold to you that responsibility.

6       MS. PLACEK:  No problem.

7       THE COURT:  No problem with that.  So we'll see you

8  at 1:30.

9       MS. PLACEK:  No problem

10      MR. MUPRHY:  Could I ask for a copy to the answer,

11 too?

12      THE COURT:  See you at 1:30

13      MS. PLACEK:  Thank you.

14      THE COURT:  Court's in recess until 1:30 p.m..

15                        (Case passed.)

16      THE CLERK:  Sheet 5.  Line 15.

17      MS. PLACEK:  May the defendant be seated, Judge?

18      MR. MUPRHY:  Judge, initially make a motion to

19 amend certain counts of the indictment to conform with

20 the statutory requirements.

21      THE COURT:  All right, I have the indictment before

22 me.  Which count are you referring to?

23      MR. MUPRHY:  Judge, count 3.  First degree murder.

24 Based on a kidnapping.  People would seek to amend or to

447

5

1 insert between "kidnapping" and "strangle" the

2 subsection -- the section chapter, Chapter 36 Section

3 10-1-a (1).

4       MS. PLACEK:  Although I can't state surprise,

5 Judge, I would state that there would be an objection if

6 this goes into the realm of substantive rather than a

7 procedural defect, Judge.

8       THE COURT:  State?

9       MR. MUPRHY:  Judge, what we're doing, merely is

10 giving the defendant notice as to exactly what section,

11 what section of Chapter 38, what particular section the

12 kidnapping is based on.  Which in fact is part of the

13 indictment.  This count 13.  It's the same charge.

14       THE COURT:  Well, from my view, and perhaps

15 incorrectly, but from my view, delineating the

16 kidnapping statute is unnecessary to this indictment.

17 It's surplusage.  This indictment as it is, as it is

18 laid, in the Courts's view, is sufficient.

19 Consequently, amending it for the purposes of adding the

20 statutory section for kidnapping is surplusage, also.

21 Consequently, I'm going to allow it.  What is that

22 section?  Ten dash?

23       MR. MUPRHY:  Your Honor, it's Section 10 dash one

24 dash A parentheses one.

<center>448</center>

6

1    THE COURT:  All right.  What other count of the

2 indictment?

3    MR. MUPRHY:  Your Honor, we'd also be seeking leave

4 to amend count four to include -- that's also a first

5 degree murder based on other felony.  We would seek

6 leave to insert between "criminal sexual assault" and

7 "strangled" also Chapter 38 Section 12 dash 13-a (1).

8    THE COURT:  Miss Placek?

9    MS. PLACEK:  There would be an objection based on

10 -- No argument based on the Courts reviewing.

11    THE COURT:  The same applies to count four as the

12 basis for allowing the amendment for count 3.  It will

13 be allowed.  State?

14    MR. MUPRHY:  Judge, in addition to that, there are

15 a number of counts which allege the use of force and by

16 threat of force.  We would seek leave to amend that

17 language to "use of force or by threat of force," which

18 is consistent with the statutory language, Chapter 38.

19 That would be count five, Your Honor.  In other words,

20 Judge, we would seek leave to strike "and," where it

21 indicates "by use of force and by the threat of force,"

22 instead of its place, "or."

23    THE COURT:  Miss Placek?

24    MS. PLACEK:  Judge, it struck me that it would be

7                              449

1  somewhat ridiculous to object to an and/or being

2  changed.  Suggestion, Judge, unless Counsel is saying

3  that this was not an oversight or typographical error

4  but rather that that was in fact willfully put down by

5  his office.

6      THE COURT:  Are you asking to strike the word "and"

7  and insert "or," or are you adding?

8      MR. MUPRHY:  Yes, Judge.  We're seeking leave to

9  strike the word "and" and insert in its place "or."

10     THE COURT:  You say that that is a formal or

11 informal omission?

12     MS. PLACEK:  I'm saying that basically, when

13 reading same indictment, I have problems as counsel.

14 I'm asking that in fact, and I'm asking a question of

15 the Court to ask counsel, if in fact by moving for this

16 amendment is he not, is he admitting in fact that this

17 was somewhat out of the category of oversight by his

18 office, and in fact a willful distinction was made at

19 the time of in fact the typing of the indictment?

20     THE COURT:  Well, it's no way for him to know.

21     MS. PLACEK:  I would just suggest, Judge, that

22 imputed knowledge of the office.  In other words,

23 knowledge of one is knowledge of all.  Would in fact

24 respectfully disagree.  And this is why I'm asking the

450

8

1  question before any argument is made.

2      THE COURT:  The problem that I have, and I don't

3  know whether we're articulating the same thing or not,

4  Miss Placek, is that to change the word "and" and add

5  the word "or," is to change the substance of the

6  indictment, which cannot be done by an amendment.

7      MS. PLACEK:  I understand, Judge.  And that's what

8  exactly I was looking for the question of counsel.

9      THE COURT:  Well, it wouldn't make any difference

10 what position his office takes.  If in fact one is

11 unable to determine other than by the language of the

12 indictment what the grand jury intended to charge.  And

13 we can't charge -- the State's Attorney cannot charge

14 this defendant at this point.

15     MS. PLACEK:  I understand, Judge.

16     THE COURT:  The grand jury has charged him, and if

17 they charge him improperly, only the grand jury can

18 straighten that out.

19     MS. PLACEK:  No, Judge.  I have a full

20 understanding of that.  What I'm suggesting to the

21 Court, Judge, is that there's a reason I was looking for

22 a commitment, Judge, before argument was to be made.

23 But since the Court seems to have committed the State,

24 I, of course, would now -- I would suggest that the

451

9

1 language the Court used committed the State as that,

2 quite frankly, this was not in the language of a mere

3 oversight, but a willful matter, my suggestion would be

4 that I would not only have strenuous objection, but

5 depending on the evidence as proven at trial, a probable

6 later motion as to that indictment.

7       THE COURT:  Mr. Murphy, I'm going to hold count

8 five in abeyance.

9       MS. PLACEK:  I think counsel was dealing, Judge,

10 with respect to counts five, six, and seven.

11       THE COURT:  Is that correct, Mr. Murphy?

12       MR. MUPRHY:  Judge, actually, the same -- I would

13 make the same motion with respects to respect to five,

14 six, seven, eight, and nine.

15       MS. PLACEK:  We would --

16       MR. MUPRHY:  Also count eleven.

17       MS. PLACEK:  Judge, proffer same exception as

18 previously stated, Judge.  And ask for a ruling on same.

19       THE COURT:  All right, I'm going to hold -- take
   them under advisements until I have had an opportunity,
20 until I have had an opportunity to check some of the
   authorities and see what if any guidance I can get from
21 that.  I have a feeling -- Well, we will see what that
   amounts to.
22                          (Whereupon, a rotation of
                            Court Reporters occurred.)

23

24


                        452

10

(WHEREUPON the following
proceedings were taken by
Ms. Rella Jordan, Official
Court Reporter:)

THE COURT: Good afternoon, ladies and
gentlemen, I am Judge Leo Holt, I am one of the
judges of the Circuit Court of Cook County.

You have been called here today to sit as
jurors in the case of the People of the State of
Illinois versus Jerome Hendricks.

I want to talk to you at this time about
some basic principles of the law that apply to all
criminal cases. This will help you follow the law
and the evidence in this case. These are not your
final and complete instructions, those will come
after you have heard all the evidence and the
final arguments of the lawyers.

When the time comes for giving
instructions, I will read them to you and you will
get them in writing along with verdicts for your
consideration.

You must follow the law as I give it to
you. You may not, I repeat, you may not use your
own idea of what the law is or ought to be.

1      The defendant in this case, Jerome

2   Hendricks, is charged with the offenses of first

3   degree murder, aggravated criminal sexual assault,

4   criminal sexual assault, kidnapping, aggravated

5   kidnapping and unlawful restraint.

6      More specifically it is charged that the

7   defendant, Jerome Hendricks, on or about August 1,

8   1988, at and within the be County of Cook, State

9   of Illinois, committed the offense of first degree

10  murder, in that he without lawful justification

11  intentionally and knowingly strangled and killed

12  Denice Johnson in violation of Section 38 - 1-1 A.

13  of the Criminal Code of the State of Illinois.

14      It is further charged that the defendant

15  committed the offense of First Degree Murder in

16  that on or about August 1, 1988 at and within the

17  County of Cook, State of Illinois, the defendant,

18  Jerome Hendricks, committed the offense of First

19  Degree Murder in that he, without lawful

20  justification strangled and killed Denise Johnson

21  knowing that such strangling created a strong

22  probability of death or great bodily harm to

23  Denise Johnson in violation of Chapter 38 Section

24  9-1-A 2 of the criminal code of the State of

1    Illinois.

2           It is further charged that Jerome

3    Hendricks committed the offense of First Degree

4    Murder, in that on or about August 1, 1988 at and

5    within the County of Cook, State of Illinois, he

6    committed first degree murder in that without

7    lawful justification while committing a forcible

8    felony, to-wit, kidnapping, strangled and killed

9    Denise Johnson in violation of Chapter 38, Section

10   9-1-A. 3 of the criminal code of the State of

11   Illinois.

12          It is further charged that Jerome

13   Hendricks committed the offense of First Degree

14   Murder in that on or about August 1, 1988 at and

15   within the County of Cook, State of Illinois, he

16   committed the offense of First Degree Murder in

17   that without lawful justification while committing

18   a forcible felony, to-wit, criminal sexual

19   assault, strangled and killed Denise Johnson in

20   violation of Chapter 38, Section 9-1-A. 3 of the

21   criminal code of the State of Illinois.

22          It is further charged that Jerome

23   Hendricks committed the offense of aggravated

24   criminal sexual assault in that on or about August

1  1, 1983 at and within the County of Cook, State of

2  Illinois, Jerome Hendricks committed the offense

3  of aggravated criminal sexual assault in that he

4  committed an act of sexual penetration upon Denise

5  Johnson, to-wit: contact between Jerome Hendricks'

6  penis and Denise Johnson's vagina, by the use of

7  force and by the threat of force and Jerome

8  Hendricks used an object, to-wit, shoe lace

9  fashioned or utilized in such a manner as to lead

10  Denise Johnson under the circumstances reasonably

11  to believe it to be a dangerous weapon in

12  violation of Chapter 38, Section 12-14-A, paren.

13  1 of the criminal code of the State of Illinois.

14         It is further charged that Jerome

15  Hendricks committed the offense of aggravated

16  criminal sexual assault in that on or about August

17  1, 1983 at and within the County of Cook, State of

18  Illinois, Jerome Hendricks committed the offense

19  of aggravated criminal sexual assault in that he

20  committed an act of sexual penetration upon Denise

21  Johnson, to-wit, contact between Jerome

22  Hendricks's penis and Denise Johnson's vagina by

23  the use of force and by the threat of force and

24  caused bodily harm to Denise Johnson by strangling

1    her in violation of Chapter 38, Section 12-14 A.
2    Paren. 2 of the Criminal Code of the State of
3    Illinois.
4           It is further charged that Jerome
5    Hendricks committed the offense of aggravated
6    criminal sexual assault in that on or about August
7    1, 1988 at and within the County of Cook, State of
8    Illinois, he committed the offense of aggravated
9    criminal sexual assault in that he committed an
10   act of sexual penetration upon Denise Johnson
11   to-wit. contact between Jerome Hendricks's penis
12   and Denise Johnson's vagina by the use of force
13   and by the threat of force and Jerome Hendricks
14   acted in such a manner, to-wit. strangling her as
15   to endanger the life of Denise Johnson in
16   violation of Chapter 38, Section 1-14- A. 2 of the
17   criminal code of the State of Illinois.
18          It is further charged that Jerome
19   Hendricks committed the offense of aggravated
20   criminal sexual assault in that on or about August
21   1, 1989 at and within the County of Cook, State of
22   Illinois, he committed the offense of aggravated
23   criminal sexual assault in that he committed an
24   act of sexual penetration upon Denise Johnson

1    to-wit, contact between Jerome Hendricks's penis

2    and Denise Johnson's vagina by the use of force

3    and by the threat of force and the criminal sexual

4    assault was perpetrated during the course of the

5    commission of a felony of First Degree Murder by

6    Jerome Hendricks in violation of Chapter 38,

7    Section 12-14-A. 4 of the criminal code of the

8    State of Illinois.

9              It is further charged that Jerome

10   Hendricks committed the offense of aggravated

11   criminal sexual assault in that on or about August

12   1, 1988 at and within the County of Cook, State of

13   Illinois, he committed the offense of aggravated

14   criminal sexual assault in that he committed an

15   act of sexual penetration upon Denise Johnson,

16   to-wit, contact between Jerome Hendricks's penis

17   and Denise Johnson's vagina by the use of force

18   and by the threat of force and the criminal sexual

19   assault was perpetrated during the course of the

20   commission of the felony of aggravated kidnapping

21   by Jerome Hendricks, in violation of Chapter 38

22   Section 12-14-A. 4 of the criminal code of the

23   State of Illinois.

24              It is further charged that he committed

1    the offense of aggravated criminal sexual assault

2    in that on or about August 1, 1988 at and within

3    the County of Cook, State of Illinois, he

4    committed the offense of aggravated criminal

5    sexual assault in that he was 17 years of age or

6    over and committed an act of sexual penetration

7    upon Denise Johnson, to-wit, contact between

8    Jerome Hendricks' penis and Denise Johnson's

9    vagina and Denise Johnson was under 13 years of

10    age when the act of sexual penetration was

11    committed in violation of Chapter 38, Section

12    12-14-B. 1 of the criminal code of the State of

13    Illinois.

14    It is further charged that he committed

15    the offense of criminal sexual assault in that on

16    or about August 1, 1988 at and within the County

17    of Cook, State of Illinois, he committed the

18    offense of criminal sexual assault in that he

19    committed an act of sexual penetration upon Denise

20    Johnson, to-wit, contact between Jerome

21    Hendricks's penis and Denise Johnson's vagina by

22    the use of force and by the threat of force in

23    violation of Chapter 38, Section 12-13-1, Paven 1

24    of the criminal code of the State of Illinois.

It is further charged that he committed the offense of concealment of a homicidal death in that on or about August 1, 1988 at and within the County of Cook, State of Illinois, he committed the offense of concealment of a homicidal death in that he concealed the death of Denise Johnson to-wit, by hiding her body in an enclosed garage with garbage bags over her body knowing that Denise Johnson had died by homicidal means in violation of Chapter 38, Section 9-31 A. of the criminal code of the State of Illinois.

It is further charged that he committed the offense of kidnaping in that on or about August 1, 1988, at and within the County of Cook, State of Illinois, he committed the offense of kidnapping in that he knowingly and secretly confined Denise Johnson against her will in violation of Chapter 38, Section 10-1A paren. 1 of the criminal code of the State of Illinois.

It is further charged that he committed the offense of aggravated kidnapping in that on or about August 1, 1988 at and within the County of Cook, State of Illinois, he committed the offense of aggravated kidnapping in that he knowingly and

secretly confined Denise Johnson, a child under
the age of 13 years, against her will in violation
of Chapter 38, Section 10-2 A. Paren. 2 of the
criminal code of the State of Illinois.

It is further charged that he committed
the offense of aggravated kidnapping in that on or
about August 1, 1988 at and within the County of
Cook, State of Illinois, committed the offense of
aggravated kidnapping in that he knowingly and
secretly confined Denise Johnson against her will
and inflicted great bodily harm, to-wit, strangled
her in violation of Chapter 38, Section 10-2 A. 2
of the criminal code of the State of Illinois

It is further charged that he committed
the offense of aggravated kidnapping in that on or
about August 1, 1988 at and within the County of
Cook, State of Illinois, committed the offense of
aggravated kidnapping in that he knowingly and
secretly confined Denise Johnson against her will
and committed a felony, to-wit, first degree
murder in violation of Chapter 38, Section 10-2 A.
3 of the criminal code of the State of Illinois.

It is further charged that he committed
the offense of aggravated kidnapping in that on or

1    about August 1, 1988 at and within the County of

2    Cook, State of Illinois, he committed the offense

3    of aggravated kidnapping in that he knowingly and

4    secretly confined Denise Johnson against her will

5    and committed a felony, to-wit, aggravated

6    criminal sexual assault upon her in violation of

7    Chapter 38, Section 10-2 A, Parag. 3 of the

8    criminal code of the State of Illinois.

9           It is further charged that he committed

10   the offense of unlawful restraint in that on or

11   about August 1, 1988 at and within the County of

12   Cook, State of Illinois, he committed the offense

13   of unlawful restraint, in that he knowingly,

14   without legal authority detained Denise Johnson in

15   violation of Chapter 38, Section 10-3 A. of the

16   criminal code of the State of Illinois."

17          The charge in this case is contained in

18   what is called an indictment.

19          You must remember that an indictment is

20   not to be considered as any evidence against the

21   defendant, nor does the law allow you to infer any

22   presumption of guilt against the defendant simply

23   because he has been indicted.

24          In other words, the expression, "Where

1  there is smoke there is fire," has no place in a
2  court of law.

3       The indictment is merely the formal way
4  in which a defendant is placed on trial.  Under
5  the law, a defendant is presumed to be innocent of
6  the charges against him.  This presumption remains
7  with him throughout every stage of the trial and
8  during your deliberations on the verdict, and is
9  not overcome unless from all the evidence in the
10 case you are convinced beyond a reasonable doubt
11 that the defendant is guilty.

12      The State has the burden of proving the
13 guilt of the defendant beyond a reasonable doubt,
14 and this burden remains on the State throughout
15 the case.

16      The defendant is not required to prove
17 his innocence, nor is he required to present any
18 evidence on his own behalf.  He may rely on the
19 presumption of innocence.

20      You are the judges of the facts in this
21 case.  That is, you and you alone will determine
22 which witnesses to believe and how much weight to
23 give their testimony.

24      Part of my job is to tell you what

1    evidence you may hear and consider.

2            After you hear all the evidence, the

3    arguments of the lawyers, and my instructions on

4    the law, you will retire to the jury room to

5    determine your verdicts.

6            If you become convinced beyond a

7    reasonable doubt from all the evidence in the case

8    that the defendant is guilty as charged in the

9    indictment, it will be your duty to find him

10   guilty.

11           On the other hand, if after hearing all

12   the evidence you are not convinced beyond a

13   reasonable doubt of the defendant's guilt, it will

14   be your duty to find him not guilty.

15           Whatever verdict you reach, it will be

16   your own and you don't have to explain it or

17   justify it to anyone at any time.

18           It is essential that you not arrive at

19   any decisions or conclusions of any kind until you

20   have heard all the evidence, the arguments of the

21   lawyers and the law that applies to this case.

22           I will say that many times before this

23   trial has ended, because that is the best way to

24   ensure a fair trial for both sides.

1         During the trial, you will hear the

2    lawyers make objections. don't hold it against

3    either side when you hear objections.  The lawyers

4    are not trying to keep anything from you.  They

5    are doing their job and their duty, and the

6    objections help me and serve an important purpose

7    and that's to make sure you get only proper

8    evidence on the issues in this case.

9         The number of objections made or which

10    side has more objections sustained or overruled

11    must have no affect at all on your consideration

12    of the evidence.

13         The personalities of the lawyers are not

14    an issue in this case and should have no affect on

15    your verdict.

16         There will be times when I will excuse

17    you from the courtroom or we'll excuse ourselves

18    and go over to the side or in my chambers to

19    discuss a point of the law.  You should not let

20    that bother or annoy you.  The law requires that

21    these discussions be held out of your presence.

22    that is the law's way of being sure you hear only

23    proper evidence.

24         There may be recesses or delays although

1    we will keep those at a minimum.  At times we

2    might begin a few minutes later than we

3    anticipated.  The reason for that is that we have

4    other cases on our call having nothing to do with

5    this case or with this defendant.

6          We are using the time for a good purpose.

7    So don't feel your time is being wasted if you

8    have to wait for us.

9          At this time, I'm going to introduce to

10   you the participants in this litigation.

11         The People of the State of Illinois are

12   represented by Mr. Jack O'Malley, the State's

13   Attorney of County of Cook, by and through his

14   assistants, Mr. John Murphy.

15         MR. MURPHY:  Good afternoon, ladies and

16   gentlemen.

17         THE COURT:  And Mr. Scott Cassidy.

18         MR. CASSIDY:  Thank you, your Honor.

19         Good afternoon, ladies and gentlemen.

20         THE COURT:  The defendant is represented

21   by Ms. Marijane Placek.

22         MS. PLACEK:  How do you do, ladies and

23   gentlemen.

24         THE COURT:  And Mr. Vincent LuBiani.

1           MR. LuFRANO:  Good afternoon.

2           THE COURT.  And the defendant is

3      Mr. Jerome Hendricks.

4           THE DEFENDANT: (The defendant stands )

5           THE COURT:  Now, ladies and gentlemen,

6      shortly I'm going to read to you at this time a

7      list of names of the potential witnesses in this

8      case.

9           If you recognize any of these names as

10     persons you know, or may be acquainted with, when

11     you are individually questioned, if you will bring

12     that to my attention we will discuss it further at

13     that time.

14          The following persons may or may not be

15     called during the course of the trial of this

16     case:

17               "Stephanie Smith: Phyllis

18               Williams; Terry Davis; Kelly

19               Wallace; Russ Ewing.

20               "Doctor John Fitzpatrick.

21               "Robert Tovar; Mike Gatto,

22               personnel from South Shore

23               Hospital.

24               "Officer Cummings; Dr.

1          Kolmar, Doctor Cuesay, Edith

2          Cordini, C- O- R- D- I- N-

3          I-.

4      Caroline Strong.

5              "Personnel from Roseland

6          Community Hospital.

7              "Assistant State's Attorney

8          Anna Demacopoulas.

9              "Doctor Mae Jumbelic, J- U-

10         M- B- E- L- I- C-.

11             "Estelle Fields, Jeremy

12         Thomas.

13          ."Caroline McCoy, Paulette

14         Townsend, James Hall, Yolanda

15         Hill, Jesse Proctor, Jackie

16         Delaney.

17     Michael Walker, Leon Anderson.

18             And the following police

19         officers:          "Michael

20         Baker, Michael Roy and Jo Ann

21         Ryan, John, last name, Y- U-

22         C- A- I- T- I- S-; Albert

23         Wolff; J. McDonald's, A.

24         Wolff; Detective Minerts. T

1        Steller, T. McQue; Det.

2        Pasevento; T. Hughes; J.

3        Fassi, F- A- S- S- I-.

4          "C. Powell Moore; Kay Berry;

5        S.  Brownfield; Officer

6        McWeeny.

7          "A. Lazar, L. Kerkstran, and

8        personnel from the Chicago

9        Police Department Crime Lab

10       Tower."

11            Ladies and gentlemen, I will be asking

12   you some questions about yourselves and then the

13   lawyers will ask.  You must not feel we are trying

14   to embarrass you, put you on the spot or pry into

15   your personal affairs.  It is merely our way of

16   learning something about you so that the lawyers

17   can make informed decisions in the jury-selection

18   process.

19            Please be frank, complete and open in

20   your answers, that is the way to insure fairness

21   to both sides.

22            For those who are chosen as jurors, I

23   will give you this warning now and you will hear

24   it again.  Please do not discuss this case with

1   anyone, not your friends, your families or among
2   yourselves, and don't let anyone discuss it with
3   you until you retire to the jury room to
4   deliberate.  You may consider that an order of
5   this Court.  Any attempt to violate it should be
6   reported to me at once.
7           The fair thing to do is to wait until you
8   have heard everything before you begin discussing
9   the case among yourselves and that will be done
10  only in the jury room when you begin your
11  deliberations.  When deciding this case, you must
12  not allow sympathy or prejudice to influence your
13  verdict.
14          Our system of the law is based on the
15  principle that a jury will decide the case on the
16  law and on the evidence.  That is the oath you
17  will take as jurors and I know that you will be
18  faithful to it.
19          Now, ladies and gentlemen, it is 4:22
20  p.m..  You were told both prior to your coming to
21  the building today and again, perhaps, undoubtedly
22  so upon your arrival here at the courthouse that
23  our system of jury service is one day-one trial.
24          Each of you are now involved in one

1   trial.  And each of you belongs to me until this
2   jury has been impaneled, therefore, each of you is
3   required to report back here tomorrow and until we
4   have impaneled this jury in its entirety, each of
5   you has that as your obligation.
6          I'm going to ask each of you to return
7   here tomorrow at 11 a.m .  Those of you who are in
8   the jury box will please take the same seats in
9   the jury box that you now occupy.
10         Those of you who are in the spectator
11  seats may sit anywhere you so desire.
12         When you arrive at the courthouse, please
13  do not enter my courtroom.   I suppose we'll try
14  to have available for you a courtroom or one or
15  more jury rooms where you can be seated if the
16  Court is in session until we are ready to commence
17  the jury-selection process in this case, but in no
18  circumstances do I want you to come into my
19  courtroom until we are ready to proceed with the
20  jury-selection process in this case.
21         Again, we wish you a good evening, please
22  do not discuss the case among yourselves   or with
23  members of your family.  The sheriff has a check
24  for each of you before you leave tonight and we

1    will see you tomorrow morning at 11 a.m..

2             Have a good evening.

3             (Whereupon the following

4             proceedings were had out of

5             the presence of the jury:)

6         THE COURT:  Anything further?

7         MS. PLACEK:  We may still have several

8    motions in limine, Judge..

9         THE COURT:  I might indicate to Counsel

10   that consistent with my memorandum regarding jury

11   trial memorandum, I am entitled as of this day

12   instructions, which I do not have from either

13   side.

14             Ms. Placek?

15        MS. PLACEK:  Your Honor, very, very

16   briefly, in hopes to the point of going to other

17   motions in limine that we have had, as to other

18   motions in limine, the Court has made certain

19   rulings.  As I understand, we have a motion in

20   limine precluding the State from, in fact, dealing

21   with the house and garage where the victim was

22   found.

23             During the motion, there was an

24   allegation made by one of the police officers

1    specifically, and one of the civilian witnesses
2    also, that this house, this garage had, in fact,
3    lied empty since -- and I think now what is
4    referred to as the 1984 battery, and that, in
5    fact, this garage was the place where Jerome
6    Hendricks had committed what was charged and what
7    we have information was, a battery, and it had
8    lain empty because the people were so terrified
9    that they were forced to move out rather than live
10   next door to Jerome Hendricks.
11           When reading the transcript and defense
12   Counsel and myself and my co-counsel can only feel
13   unless we made the motion to preclude the State
14   from bringing this up during the sum and substance
15   of their case dealing with relevancy, that, in
16   fact, we would somehow be derelict in our duty and
17   we would be asking that the Court, in fact, limit
18   the State as to this issue.
19           THE COURT:  State?
20           MR. MURPHY:  Judge, I am not sure if I
21   understand exactly what the defense want from us
22           THE COURT:  She wants you to abstain or
23   refrain from putting in evidence that the persons
24   who lived in the house where the garage is

1    associated with moved out and left the garage in

2    what appears to be an abandoned condition because

3    they were afraid of the defendant.

4           MR. MURPHY:  Judge, I believe Counsel is

5    incorrect in that she is referring to the battery,

6    in fact, that was another case, indecent liberty

7    with a child that there was a finding of not

8    guilty.

9           Nonetheless, your Honor, we have no

10    intention of eliciting evidence along that line as

11    to people moving out in '84 and why they moved

12    out.

13           THE COURT:  That apparently solves that

14    problem.

15           MS. PLACEK:  The reason we brought this

16    up, Judge, State's Attorney Ronkowski stated that

17    this was a theory of relevancy brought in.  On

18    reliance of the State we will take their

19    representation.

20           The last thing subpoenaed by the State

21    and the last thing tendered to my co-Counsel in

22    this matter is, in fact, army records of the

23    defendant.  The reason that we are asking about

24    this, Judge, and I believe that my prior

1    predecessor did file a motion as to any
2    aggravation or mitigation that would be used in
3    the event it becomes necessary to go to a death
4    hearing, we would be just interested in knowing
5    since we could see no relevancy in going through
6    these records whether or not they were to be used
7    in the State's trial, so this can take the realm
8    of a motion to disclose.

9           THE COURT:  Ms. Placek, you and the State
10   can discuss that, no need for the Court to become
11   involved in that matter, unless it's sought to be
12   introduced in evidence in some form.  I'm not here
13   trying to clear up Discovery problems for you.

14          MS. PLACEK:  Very briefly, also, Judge,
15   along with the new Discovery that we have received
16   from the State, there was the complete prisoner
17   and jail record of the defendant.  Since force
18   doesn't seem to be indicated as to the motions,
19   since there is no acclamation nor any motion of
20   force put forward as to whatever, but there seems
21   to be an indication on the intake sheet when asked
22   whether or not the defendant used any drugs, the
23   answer by the defendant allegedly and written by
24   the worker was "cocaine."  Again this would take

475

1    the form of a motion in limine as to whether or

2    not the State was planning since we wondering why

3    subpoena to use this information as part of bad

4    acts or is the so-called broad brush.[]

5            THE COURT:  Again, Ms. Placek, it is not

6    within my province to try to educate you as to

7    what the possible theory of State's case is going

8    to be.  If the evidence is not material and

9    relevant and they seek to introduce it, you make

10   the proper objections and I will rule on it.

11           MS. PLACEK:  Thank you.

12           Next, Judge, we would further state that

13   as to the answering of ready this morning, we are

14   ready depending on what the Court rules on our

15   Brady motion and also depending on what is

16   elicited during the evidentiary hearing held

17   before trial tomorrow.

18           THE COURT:  I have no response to that.

19           Do you, Mr. Cassidy or Mr. Murphy?

20           MR. MURPHY:  No, Judge.

21           MR. CASSIDY:  No, Judge.

22           THE COURT:  Anything further?

23           MS. PLACEK:  No, Judge.

24           I'm finally quiet.