CASE NO. _____08cv1589_____

ATTACHMENT NO. _____7_____

EXHIBIT _____

TAB (DESCRIPTION) _____

1                THE COURT:  Order of court, February 4th

2                MS. PLACEK:  What time does the Court

3      want defense Counsel for evidentiary hearing,

4      Judge?

5                THE COURT:  Do you think you can have

6      that witness some time tomorrow?

7                If you can we'll hear him when we can get

8      to him.  If you can't have him here tomorrow, you

9      may be able to give us some indication as to

10     when he can be here and we may be able to more

11     effectively schedule him in for his convenience.

12               MR. MURPHY:  Judge, we will check

13     tonight.

14               Judge, as a matter of procedure, do you

15     want the officer to be here as a witness in court

16     or just to be available for the defense Counsel to

17     interview?

18               THE COURT:  It depends what becomes

19     necessary.  It may become necessary for us to

20     conduct a voir dire hearing to determine what is

21     meant on the statement, or he may be able to

22     satisfy Counsel on a one-on-one conversation and

23     he may be able to satisfy both of you and the

24     issue may become mute.  If not, we will conduct a

1        limited hearing to see if we can determine what

2        he's talking about.

3                    MS. PLACEK:  Irrespective, Judge, like I

4        said based on the court's ruling, I would be

5        answering ready.

6                    THE COURT:  9:30, tomorrow morning.

7                        (WHEREUPON the trial of this

8                        cause was adjourned and

9                        continued to tomorrow,

10                       February 6, 1991.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

STATE OF ILLINOIS )
) SS:
COUNTY OF C O O K )

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT-CRIMINAL DIVISION

THE PEOPLE OF THE )
STATE OF ILLINOIS )
) Indictment No. 88 CR 12517.
VS )
) Charge: Murder, etc.
JEROME HENDRICKS )

REPORT OF PROCEEDINGS

BE IT REMEMBERED that this cause came on to be

heard the 6th day of February, A. D. 1991, before

the Honorable LEO HOLT, Judge of said court.

APPEARANCES:

> HON. JOHN O'MALLEY,
> State's Attorney of Cook County, by
> MR. JOHN MURPHY and
> MR. SCOTT CASSIDY,
> Assistant State's Attorneys,
> appeared for the People;
>
> MR. RANDOLPH N. STONE,
> Public Defender of Cook County, by
> MS. MARIJANE PLACEK and
> MR. VINCENT LUFRANO,
> Assistant Public Defenders,
> appeared for the defendant.

J. P. Washington, CSR
Official Shorthand Reporter
2650 South California Avenue
Chicago, Illinois 60608

479

swl

1       THE CLERK:  Jerome Hendricks.

2                 (Defendant present.)

3       THE COURT:  You may be seated at counsel

4 table, Mr. Hendricks.

5           Lady and gentlemen, yesterday, I

6 took under advisement, the State's motion for leave

7 to amend certain counts of the indictment, counts

8 five through 11, I believe it was.

9           Am I right on that, Mr. Cassidy,

10 where the State wished to strike the word "and" and

11 add the word or insert a sentence of the

12 indictment, causing the indictment in each instance

13 to read: "By use of force or by threat of force"?

14      MR. CASSIDY:  Correct.

15      THE COURT:  And that is counts five through

16 11, inclusive.  I have had an opportunity to

17 consume some of the authorities on the issue, as

18 sparse as they are, and I have concluded that this

19 is a formal defect within the meaning of Section

20 111-5 of the Code and is subject to being amended.

21        Accordingly, see People versus Hayes

22 for that proper section, the citation to which I

23 don't recall right now.  If it comes of memory, I

24 will give the citation to Counsel; but, it is

430

1    People versus Hayes.

2              Accordingly, leave is granted to the

3    State to amend counts five through 11, inclusive.

4         MR. CASSIDY:  Judge, I don't think count 10

5    was one of them, but the other counts, five through

6    11 are all right.

7         THE COURT:  Count 10 doesn't seem to have been

8    included.  I am going to also ask you if you would

9    make the amendments as to those counts and as to

10   counts three and four, which were granted leave to

11   amend yesterday, if you would make the amendments

12   on the face of the indictment itself.

13   (Indicating.)

14        MR. CASSIDY:  Sure, Judge.

15        THE COURT:  Also, the court had under

16   advisement, the State's motion in limine in regard

17   to other crimes evidence.  And I was advised that

18   the other crimes evidence involved an ccurrence

19   which took place in 1984.

20        MR. MURPHY:  Two occurrences, Judge.

21        THE COURT:  And one, which took place at about

22   the same period of time, both of them approximately

23   1984.

24             This indictment alleges an

481

jpsw3

1    ccurrence, which took place in 1988, a time span of

2    approximately four years.  After consulting the

3    authority, I have come to the conclusion that in as

4    far as intent, identity, common design, that the

5    1984 cases or occurrences are too remote.

6              On the other hand, if there is a

7    sufficient similarity so as to meet the criteria

8    set forth by the cases for a show of modus

9    operandi, that may very well make the otherwise

10   remote occurrences admissible.

11             I am unable to tell, at this

12   juncture, whether or not there is a sufficient

13   similarity between the occurrences to rule

14   definitively as to whether it is admissible.

15             I presume that at the time that the

16   other crime evidence is sought to be admitted, I

17   will at least have a substantial factual basis of

18   what this occurrence is all about; and upon

19   certainly an offer of proof or under the bar

20   examination of potential witnesses as to the other

21   crimes, I will then be able to make a comparison to

22   determine whether or not there is suffer similarity

23   to allow the jury to hear the other crime evidence.

24             There is a case which the State

482

jpsw4

1    tendered to me, not in connection with this case,

2    but in connection with another case, the name of

3    which eludes me right now, but I can provide you

4    with that, also, which provides a fairly good

5    discussion regarding similarity and what must be

6    sought in order to establish similarity, sufficient

7    to meet the requirement for admissibility.

8            Mr. Murphy, you may know the case

9    that I am talking about but I can't think of it

10   right now.

11       MR. MURPHY:  Judge, I can't recall offhand.  I

12   know there were a large number of cases I tendered

13   on the other matter.

14       THE COURT:  In any event, Miss Placek, I will

15   give you the name and citation of the case when we

16   next reconvene.  I just, it won't come to my head

17   right now, although I read it just yesterday.  I

18   guess I must be slipping.  You can only keep so

19   much in your head.

20           In any event, there are some other

21   matters which are still under advisement that I'm

22   not able to resolve for you now.  I thought I would

23   give you that bit of information, so as to aid you

24   in the preparation of your case.

                        453

1           Mr. Murphy, is the witness that we

2      were talking about yesterday in regards to that

3      police report, is he available today?

4           MR. MURPHY:  No, Judge, he is not.  We expect

5      that he will be here tomorrow; he is off today.

6           MR. CASSIDY:  I called over there, Judge, he

7      wasn't working yesterday.  The person who answered

8      the phone believed that he would be working

9      tomorrow.

10          THE COURT:  I am going to take about a

11     two-minute recess.  I am going to ask the sheriffs

12     to allow the defendant to remain in open court and

13     to have the jury brought into the courtroom.  We

14     will reconvene and proceed with jury selection.

15          MS. PLACEK:  If it pleases the court, Judge,

16     the state's attorney has led me to believe that,

17     quite frankly, because of their negligence, I can't

18     try my case to the fullest.  We still have a Brady

19     violation outstanding.

20          Although these state's attorneys,

21     who claim that they didn't have five police

22     reports, which in fact were tendered at the Office

23     of the Public Defender last night, the absurdity of

24     claiming they didn't have it, as a unity, in fact

                        484

1    when one would imagine they would be somewhat

2    questioning about said reports if they were someone

3    dealing with the motion, these were the police

4    reports that were used.

5                So one would imagine that if one

6    read the transcripts in preparation for the motion,

7    one would find somewhat questioning as to these

8    reports.

9                My suggestion in this matter, Judge,

10   and I will put this in the form of a motion, is,

11   number one, because of the fact that the State, in

12   violation of the Brady Rule, after their admission

13   that Brady material is in fact contained within the

14   report --

15        MR. CASSIDY:  That is not true; we never said

16   that was Brady material.

17        MS. PLACEK:  Judge, may I be allowed to

18   finish?

19        THE COURT:  I will let you respond, fully,

20   until you have exhausted any response that you

21   want.

22        MR. CASSIDY:  Thank you.  She is mistating the

23   facts.

24        MS. PLACEK:  Judge, to refresh the court's

jpsw7

1    memory, the gentleman, when he said it the first

2    time he just spoke, he saw the material.   I

3    think -- What did you call me, Counsel?  What did

4    you call me?

5         THE COURT:  Miss Placek, please, address your

6    remarks to me.

7         MS. PLACEK:   I thought I heard Counsel refer

8    to me in a derogatory term.

9                   Your Honor, if it pleases the court,

10   the issue before the court, becomes, because of the

11   fact of the State's negligence, because of the fact

12   that it now stands at 11:30, because of the fact,

13   quite frankly, Judge, that Counsel, who argued and

14   interrupted my argument previous to the statement

15   stated to the court's questioning, that not only

16   the material claimed within the police report was

17   Brady material, but that the witness was in fact

18   Brady material to this court's questioning to the

19   fact; that I was here, approximately 9:00 o'clock,

20   for the 9:30 setting, and this is the first time I

21   have heard, I don't believe Mr. Lufrano may have

22   known something, he suggested to me that perhaps

23   the State couldn't get their witness today, but

24   irrespective of that, Judge, I can't select a jury

486

1    on that matter today unless I know exactly where I

2    am heading with the statement contained within the

3    report, unless the State is going to stipulate to

4    that report.

5        MR. MURPHY:  Are you finished, Counsel?

6        MS. PLACEK:  Quite well.

7        MR. MURPHY:  Your Honor, may I respond?

8        THE COURT:  Surely.

9        MR. MURPHY:  Judge, first of all, Counsel is

10   completely in error in stating that the State was

11   negligent.  It would appear, from the defendant's

12   own argument, Counsel's own argument, that she had

13   these reports in her possession at least at the

14   time of the motions.

15        Incredibly, Judge, if this is such

16   an important issue, it is interesting that the very

17   first time this comes up is on the eve of jury

18   selection.  If the Defense was so concerned about

19   finding out about this anonymous source, why did

20   they never file any motion in this courtroom,

21   allowing this case to pend for two years?

22        Judge, the State was not negligent,

23   in anyway.  That report was, according to their

24   admission, according to their argument, in their

487

1    possession; all the information contained in that

2    report was in their possession.

3                    There is no Brady violation here,

4    Judge.  It is ridiculous.

5        THE COURT:  You have anything further you care

6    to say, Miss Placek?

7        MS. PLACEK:  Yes, Judge.  I believe that there

8    was Brady material.  The court so ordered, in fact,

9    that the witness be produced in this matter, Judge,

10   because of the necessity of holding credibility,

11   both in opening statements and trial tactics.

12                   The State has deprived Mr. Hendricks

13   of in fact a vital issue.  I would point out in the

14   transcript, when this was in court, the court

15   sustained the objection dealing with this matter

16   during the motion.

17                   We attempted, we were unsuccessful,

18   we brought it to the court's attention.  There was

19   no objection as too timeliness.  And, quite

20   frankly, Judge, we are just asking the State to

21   live by the court's ruling as of yesterday.

22       MR. MURPHY:  Judge, that is a

23   misrepresentation as to what happened in the

24   motion.

488

1      THE COURT:  That is it, Mr. Murphy, otherwise,

2  we will be here the rest of the afternoon arguing

3  the case.

4      I don't know whether or not counsel

5  is interested in the court trying to fix blame.  If

6  you are, that is not going to happen; I am

7  unconcerned with fault.  What I am trying to do is

8  to assist the defendant in getting that which he is

9  entitled to, if he is entitled to it.

10      On the other hand, one cannot help

11  but agree that if this evidence was of such

12  magnitude, that it was never brought before the

13  court on a motion to cause the State to disclose;

14  although it has been apparently in Counsel's

15  possession at least a year and maybe longer; and

16  knowing the way in which it would impact on trial,

17  only when we commence jury selection, does the

18  court hear that there might have been some failure

19  to fully and adequately disclose.

20      I am going to conduct a hearing.

21  There are some other reasons why that approach is

22  appropriate, too:  Because Brady material, the

23  burden of showing a failure, that, one, it was

24  Brady material and, two, that there was a failure

489

1    to disclose is on the Defense.

2                   It is also necessary in many

3    instances that the defendant make a specific

4    request to disclose, in order to preserve for

5    error, any failure to disclose Brady material.

6                   None of those things have been done

7    in this case, which are not significant, in my

8    judgment.  If in fact there is something out there

9    that is of importance to the defendant and ought be

10   disclosed, I intend to have him get it and to try

11   and provide a reasonable opportunity for him to

12   make use of it.

13                  That, it seems to me, is consistent

14   with Brady.  And it is consistent with the

15   defendant's fundamental right to a fair trial.  On

16   the other hand, I am not going to indulge in the

17   ridiculous process of trying to fix blame between

18   adults who are professionals and where blame is not

19   an issue.

20                  And it wouldn't make any difference

21   where I found fault.  That does not resolve the

22   problem that the court has, nor does it aid the

23   defendant, which is the purpose of what we are

24   trying to do here and that is to put the defendant

jpswl2

1      in the best posture that he can be in to receive

2      materials which he is entitled to, if in fact he is

3      entitled to them.

4                          I am going to ask the sheriff to

5      bring in the jury.  Those persons who are seated on

6      the left side of the courtroom, on my left, will

7      please move to the right side of the courtroom, on

8      my right.  The jury will then occupy the other

9      portion of the courtroom.

10                         When the jury has been seated in the

11     jury box, then the court will reconvene, commence

12     jury selection.

13          MS. PLACEK:   Before you do, Judge, if it

14     pleases the court, because of the court's ruling,

15     because of the actions, whatever you want to say,

16     Judge, this case now takes on a different issue

17     which I have discussed, time and time again, with

18     my client, anticipating possibly certain rulings on

19     certain motions.

20                         We agree on certain rulings; we

21     disagree on others.  Because, with all due respect

22     and with exception taken to the court, in

23     dealing  --  And I take it that the court had

24     denied my motion for a continuance....

jpsw13

1          THE COURT:  If that is what you made.

2          MS. PLACEK:  Yes, Judge.

3          THE COURT:  If that was a motion for a

4     continuance, it is denied.

5          MS. PLACEK:  (Continuing.)  -- because this

6     case now takes the aspect of, quite frankly, the

7     Defense not knowing, because the State failed to

8     produce their witness until tomorrow, and I take it

9     that the court is proceeding with jury selection,

10    there is a real possibility that we might go into

11    evidence today, and I take it, since the State

12    answers ready, they have their witnesses here, and

13    since with a jury, the factual credibility of

14    Defense Counsel and what is needed to be shown from

15    the get-go, the simple strategy of the opening

16    statement has somewhat, has been handcuffed to this

17    defendant.

18               And, as I stated, Mr. Hendricks and

19    I have discussed this time and time again, what

20    happens, would happen if the court made certain

21    rulings.

22               And, also, as I stated yesterday, as

23    to the exceptions made when we asked the court to

24    limit the State from in fact arguing in opening

16

432

jpswl4

1    statement, the evidence dealing, where the court

2    ruled on certain motions in limine, although asking

3    them, as it is my understanding, to in fact lay

4    proper foundation during the evidenciary matter and

5    the court being an experienced trial lawyer,

6    knowing in fact that once it is heard, especially

7    from able counsel, and such articulation, once that

8    it is heard, often is hard to erase.

9                    The court, through its action and

10   its ruling, has turned this, that aspect of this

11   case to where defendant's strategy becomes, he must

12   fight it on the legal issues, therefore, for these

13   reasons stated, we are at this time prepared to

14   waive and we are answering ready.

15        THE COURT:  Send for the jury.

16        MS. PLACEK:  Judge, we are waiving the jury.

17        THE COURT:  You are waiving your right to

18   trial by jury?

19        MS. PLACEK:  That is exactly it.  Based on

20   rulings of the court, it now becomes a different

21   complexion.

22        THE COURT:  Mr. Hendricks, would you please

23   step up?

24                    (Short pause.)

493

1      THE COURT:  Your attorney informs me, Mr.

2   Hendricks, that you desire to waive your right to

3   trial by a jury and to be tried by the court.

4              Is that correct?

5      THE DEFENDANT:  Yes, sir.

6      THE COURT:  Before I can permit you to do

7   that, Mr. Hendricks, I am obligated to inform you

8   of certain rights that you have, determine that you

9   understand your rights and that you are waiving

10   your rights freely and voluntarily.

11              If, at anytime, during the course of

12   our conversation, you should change your mind and

13   decide that you do not wish to be tried by the

14   court, if you bring that to my attention, I will

15   discontinue the conversation with you and your

16   matter will be set for trial by a jury.

17              Also, if I say something to you that

18   you don't understand, if you bring that to my

19   attention, I will restate it or rephrase it until

20   you do understand it.

21              Do you understand?

22      THE DEFENDANT:  Yes, sir.

23      THE COURT:  Mr. Hendricks, you have a

24   constitutional right to a trial by a jury in this

494

jpswl6

1    case.  A jury is composed of 12 persons who reside

2    in Cook County.  They would be selected by your

3    attorney and the state's attorney.  And it would

4    become their obligation to listen to all the

5    evidence produced by the State, in support of the

6    charges against you.

7              Your attorney would be given an

8    opportunity to cross examine each and every witness

9    called on behalf of the State, with a view towards

10   bringing out facts favorable to you.

11             You also have a right to call

12   witnesses on your own behalf.  And I will assist

13   you in that regard by issuing subpoenaes to compel

14   the attendance of witnesses on your behalf.

15             You, yourself, have a right to

16   testify, if you so desire.  On the other hand, if

17   you chose not to testify, for any reason

18   whatsoever, the jury would not be permitted to take

19   that into consideration in determining whether or

20   not the State's evidence proved your case, proved

21   your guilt beyond a reasonable doubt.

22             After the jury has heard the

23   evidence, the arguments of the attorneys and my

24   instructions as to the law that applies to your

495

1    case, the jury would retire to deliberate and

2    determine whether or not the State's evidence

3    proved your guilt beyond a reasonable doubt.

4                 Before the jury would be permitted

5    to return a verdict finding you guilty, all 12

6    jurors, each one, must agree that the State's

7    evidence proved your guilt beyond a reasonable

8    doubt.

9                 Do you understand?

10    THE DEFENDANT:  Yes, sir.

11    THE COURT:  On the other hand, Mr. Hendricks,

12    if you waive your right to trial by a jury, then I,

13    and I alone, will determine whether or not the

14    State's evidence proved your guilt beyond a

15    reasonable doubt.

16                 Do you understand?

17    THE DEFENDANT:  I understand.

18    THE COURT:  Jury waiver?

19    MS. PLACEK:  Judge, for the purose of the

20    record, may I just ask the defendant one question

21    for the waiver?

22    THE COURT:  You may.

23    MS. PLACEK:  Thank you.

24                 Mr. Hendricks, I discussed what

406

jpsw18

1    would happen if the court made certain rulings; you

2    heard my representation?

3         THE DEFENDANT:  Yes.

4         MS. PLACEK:  Prior to waiving, correct?

5         THE DEFENDANT:  Yes, ma'am.

6         MS. PLACEK:  And you are making your waiver of

7    the jury, based on the representation I made to the

8    court, because we have discussed this many times,

9    correct?

10        THE DEFENDANT:  Yes.

11        MS. PLACEK:  It is on this condition that you

12   are making the jury waiver, correct?

13        THE DEFENDANT:  Yes.

14        MS. PLACEK:  Sign this.  (Indicating.)

15        THE COURT:  Mr. Hendricks, if you are saying

16   to me that you are waiving your right to trial by

17   jury only because of the rulings that the court has

18   made, I will not accept your jury waiver.

19        MS. PLACEK:  He is making  --

20        THE COURT:  Excuse me.

21             Your jury waiver must be freely and

22   voluntarily done.  It has nothing to do with

23   whether or not the court has made rulings that you

24   find proper or improper or anything of that nature.

jpswl9

1              It is solely your right to decide

2     which form you chose to be tried by.  And that is

3     so that you are not in a position to say, but for

4     the court's ruling, you would have not have waived

5     your right to a trial by jury; that is not what we

6     are talking about.

7              We are talking about whether or not

8     you wish the court to try your case or whether you

9     wish a jury to try your case.

10             Do you understand?

11        THE DEFENDANT:  Yes, sir.

12        THE COURT:  Execute the jury waiver if you

13    desire to waive your right to trial by a jury.

14        THE DEFENDANT:  I do, sir.

15                    (Short pause.)

16        THE DEFENDANT:  On the advise of counsel.

17        MR. MURPHY:  Judge, I would indicate for the

18    record, I believe Counsel whispered something to

19    the defendant, the defendant repeated it.

20        THE COURT:  She wasn't trying to hide it, she

21    said she told her client to let the record show

22    that he was waiving his right to trial by jury on

23    advise of Counsel.

24        MS. PLACEK:  That is correct, Judge, I said it

498

jpsw20

1    loud enough --

2        THE COURT:  The defendant has a right to

3    consult with his attorney, take that advise.  I

4    have no complaints on that.

5        MR. MURPHY:  All right, Judge.

6        MS. PLACEK:  Your Honor, for the purpose of

7    the record, in my presence and the court's

8    presence, Mr. Hendricks has in fact signed a jury

9    waiver.  I am tendering same to the court, asking

10   it become part of the record. (Indicating.)

11       THE COURT:  Does your signature appear on this

12   jury waiver form, Mr. Hendricks?  (Indicating.)

13       THE DEFENDANT:  Yes, sir.

14       THE COURT:  When you signed this document, was

15   it your intention to give up and relinquish your

16   right to a trial by a jury?

17       THE DEFENDANT:  Yes, it was, sir.

18       THE COURT:  Has anyone forced you, threatened

19   you or coerced you in anyway, including the court,

20   by anything that I have said or done, that caused

21   you to waive your right to trial by a jury?

22       THE DEFENDANT:  No, sir.

23       THE COURT:  Are you waiving your right to

24   trial by a jury, freely and voluntarily?

jpsw21

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Let the record reflect that the

3    defendant has been advised of his constitutional

4    right to trial by a jury.  The court finds that he

5    understands his right to trial by a jury and that

6    he is waiving his right to trial by a jury freely

7    and voluntarily.

8          MS. PLACEK:  Thank you, your Honor.  May the

9    defendant --

10          THE COURT:  The cause is recessed until 1:30.

11          MR. MURPHY:  Judge, may I address the court?

12          THE COURT:  Yes.

13          MR. MURPHY:  Judge, we are not ready to

14    proceed today as to a bench trial.  We anticipated

15    we would spend the whole day today selecting a jury

16    and consequently we have not had our witnesses, our

17    witnesses are not in the building.

18          THE COURT:  Are you able to get any of your

19    witnesses together for this afternoon?

20          MR. MURPHY:  Your Honor, I don't think we can

21    because most of the witnesses are working, are in

22    positions where it is difficult for us to reach

23    them.

24                  Judge, we may have one witness we

590

jpsw22

1    can put on, it was a witness who was here earlier

2    this morning.  I don't know if he is still here or

3    not.  I have to go upstairs and check.

4         THE COURT:  Well, if you can; otherwise, I

5    will continue this case until tomorrow but I don't

6    wants to keep Counsel here until 1:00 o'clock in

7    the afternoon.

8         MS. PLACEK:  I have no problem with that,

9    Judge.  I have kept the court waiting enough times,

10    waiting for me, and Counsel for the State, so I am

11    all right.

12         MR. MURPHY:  Judge, I can go upstairs.

13         THE COURT:  If we can start the trial today,

14    fine.  If we can't, then I will put it over until

15    tomorrow.  I understand that the reasonable

16    expectation was that we would not reach evidence

17    stage today and I didn't expect for that to happen

18    either, so we can just put it over, if we have to,

19    until tomorrow.  You can be ready by tomorrow?

20         MR. MURPHY:  Yes, Judge.

21         THE COURT:  All right, Mr. Sheriff, please

22    bring the jurors into open court.

23         MS. PLACEK:  Does the court wish to have us

24    present?

591

jpsw23

1          THE COURT:   Not unless you want to.

2          MS. PLACEK:   I prefer not to, Judge.

3          THE COURT:   You can take the defendant back to

4     the lockup.   Please, bring the jury in.

5                              (Whereupon the following

6                              proceedings were held

7                              within the presence and

8                              hearing of the prospective

9                              jurors.)

10          THE COURT:   Those ladies and gentlemen who are

11     in the jury box, can resume their seats in the jury

12     box momentarily, well, they can stay out there,

13     since they are out there anyway.

14                         Gentlemen, you may be seated.

15          MR. MURPHY:   Thank you, your Honor.

16          THE COURT:   Good morning, ladies and

17     gentlemen.

18                         Ladies and gentlemen, as you know, a

19     person charged with the commission of a criminal

20     offense has a constitutional right to a trial by a

21     jury.   He or she also has a right to waive the

22     constitutional right to trial by a jury and be

23     tried by the court.

24                         After consultation with his attorney

jpsw24

18

1    this morning, Mr. Hendricks has elected to waive

2    his right to trial by a jury and to be tried by the

3    court.

4              Consequently, your services as

5    jurors will not be needed and I am going to

6    discharge you from further jury service for this

7    term of your service.

8              When you leave here, after you have

9    received your compensation, such as it is, from the

10   sheriff, you are free to return to your respective

11   homes, places of business or wherever it is you

12   choose to go.

13             Before I discharge you from further

14   jury service, on behalf of the Chief Judge of the

15   Circuit Court of Cook County and the members of my

16   courtroom staff, which include my clerk, the deputy

17   sheriffs, the court reporter, the assistant state's

18   attorneys, and the defense lawyers, who are not

19   here presently, join in thanking you for your jury

20   service, notwithstanding the fact that you will not

21   be serving on a jury for a term.

22             Nonetheless, your service is an

23   invaluable, an indispensible part of our system of

24   justice.  It always sort of annoys me to find

jpsw25

1    people who make somewhat of an asserted effort,

2    from time to time, to avoid the obligation of jury

3    service.

4             And, yet, it is also true that

5    almost every person that I meet, who is old enough

6    to have an opinion about the criminal justice

7    system, in fact has one, pro or con.  And the

8    opinions that they express sometimes run the full

9    gamut, from extremely bad to extremely good.

10             And the fact of the matter is that

11   the system that we have and that we say we want to

12   preserve, is no better and can be no better than

13   the persons who have input into it, including

14   jurors.  Our system of law is predicated upon the

15   proposition that a jury will represent a cross

16   section of the community in which we reside.

17             That cross section relates to sex,

18   race, ethnicity, education, occupation,

19   geographical location.  All of those things are

20   part of the picture that should go into being a

21   representative jury.

22             And when people refuse to

23   participate in the jury service, they eschew that

24   mixture and dilute the administration of justice.

504

1    And so it is, no wonder that sometimes the results

2    that we receive are unsatisfactory to us, but at

3    the same time, many of us have neglected to perform

4    the simple task of service as jurors.

5              I am happy to say that you are not

6    one of those persons out there who find it is

7    extremely expedient to avoid this service.

8              It is for those reasons that I take

9    these few minutes to thank you for your service, to

10   hope that in the very near future, each of you will

11   be again called for jury service, that you will

12   respond and that you will have an opportunity to

13   serve on a jury.

14             It can be a very educational

15   experience, a very rewarding experience and a very

16   frustrating experience, all in one, at one time.

17   Those kinds of emotions can overcome you in your

18   jury service.

19             Those of you who have not had jury

20   service or those of you who have not had jury

21   service in a criminal courtroom will be surprised

22   as to how your attitudes and your perception of the

23   justice system can change, once you have served on

24   a jury.

                        505

19

1        Ladies and gentlemen, thank you for

2   your service.  You are free to leave.  You are

3   discharged from further jury service in this case.

4   Have a good afternoon.

5                      (Whereupon the proceedings

6                       in the above entitled cause

7                       were held in abeyance and

8                       called a later time the

9                       same day.)

10      THE CLERK:  Jerome Hendricks.

11                      (Defendant present.)

12      THE COURT:  Miss Placek, I am told that the

13   State can't procure any witnesses for today.

14      MR. CASSIDY:  Correct.

15      MS. PLACEK:  Fine, Judge.

16      THE COURT:  I might also inform you, Miss

17   Placek, that we will not likely hear evidence on

18   this case a Friday.

19      MS. PLACEK:  That is fine with me, Judge.

20      THE COURT:  It looks like we have a short call

21   tomorrow.

22      MS. PLACEK:  I have disappointed the court on

23   trial.  I would appreciate if we would start

24   tomorrow.

506

jpsw28

1          THE COURT:  Well, the question is what time.

2    I don't want to have you sit around here

3    needlessly.

4          MS. PLACEK:  I will serve, Judge, as I have

5    often said to you.

6          MR. CASSIDY:  The afternoon, 1:30 or so?

7          MS. PLACEK:  I take it though, the witness

8    spoke of coming in tomorrow, won't be coming in,

9    Judge?

10         THE COURT:  I don't know.  We will see what

11   tomorrow brings.

12         MS. PLACEK:  Then why don't we start a little

13   early for that witness?

14         THE COURT:  The problem that I am having

15   early, I would like to start you at 9:00 o'clock

16   but I have what may turn out to be some lenghty

17   hearings in the morning.  I will invite you in at

18   11:00 o'clock.

19         MS. PLACEK:  I will be here.

20         THE COURT:  But whether we can get you started

21   before the noon recess, I don't know.

22         MR. MURPHY:  Judge, I would ask you set it

23   over to after lunch.

24         THE COURT:  Set it at 1:00 o'clock and we can

20

1    start.  She will be here at 1:00 o'clock?

2         MS. PLACEK:  I will be here.

3         THE COURT:  By agreement.

4         MS. PLACEK:  Just so the court is clear:  We

5    are still making a request for the witness, Judge,

6    under the Brady motion.

7         THE COURT:  I am fully aware of that.

8              By agreement, February 7th.

9         MS. PLACEK:  Thank you, Judge.

10                        (Whereupon the proceedings

11                        in the above entitled cause

12                        were continued to the 7th

13                        day of February, A.D.

14                        1991.)

15

16

17

18

19

20

21

22

23

24

508

jpsw30

STATE OF ILLINOIS   )
                    )   SS:
COUNTY OF COOK      )


IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT-CRIMINAL DIVISION


THE PEOPLE OF THE     )
STATE OF ILLINOIS     )
                      )
     -v-              )        No.   88-CR-12517
                      )
JEROME HENDRICKS      )

REPORT OF PROCEEDINGS


BE IT REMEMBERED, that on the 7th day of February, A.D., 1991, this matter came on for hearing before the Honorable LEO HOLT, Judge of said Court.


APPEARANCES:

        HON. JACK O'MALLEY,
            State's Attorney of Cook County, By

        MR. JOHN MURPHY AND
        MR. SCOTT CASSIDY,
            Assistant State's Attorneys,
            on behalf of the People;

        MR. RANDOLPH STONE,
            Public Defender of Cook County, By

        MS. MARIJANE PLACEK AND
        MR. VINCENT LUPRANO,
            Assistant Public Defenders,
            on behalf of the Defendant.

1    THE CLERK:  Sheet 6, Line 1, Jerome Hendricks.

2    MR. MURPHY:  Could we have a few minutes?  Mr.

3  Cassidy will be down momentarily.

4    THE COURT:  It will be called momentarily.

5    MR. MURPHY:  He has been involved in this other

6  matter all morning and it will give me an opportunity

7  to speak to the witnesses.

8                         (Whereupon, there was a

9                         brief pause in proceedings.

10    THE COURT:  Are we ready now, Mr. Murphy?

11    MR. MURPHY:  Yes, Judge.

12    THE COURT:  State, I will hear your opening

13  statement.

14    MR. LUFRANO:  Before opening, there is a Brady

15  motion pending.

16    THE COURT:  I am fully aware of that and I am

17  fully aware of that since I was not duly advised to

18  the contrary that the witness that would be necessary

19  for that motion is not in Court.

20    MR. LUFRANO:  He is in Court, your Honor.  He

21  is present.

22    MR. MURPHY:  He is present.  We gave the

23  Defense Attorneys an opportunity to interview him.

24    MR. LUFRANO:  If I might address him, I did

510 3

talk to him.  While I was talking to him, Mr.
Murphy came in and in the middle, there were suggestions
as to the answers to my questions, so I cut the questions
short.

THE COURT:  What do you want me to do about
your failure to complete your interview?

MR. LUPRANO:  I don't know.  We would ask
that the evidentiary hearing commence and that the
Court call Mr. -- Call Officer Kaddigen as its witness.

We have filed a motion, there is
nothing in writing in response to it and the problems
with the report can be resolved by the Officer, himself.

MR. MURPHY:  Judge, I have no objection to
Counsel interviewing a witness and I take issue with
him saying that I suggested any answer to the
witness.

He has an opportunity to interview
that witness, we brought him here specifically for
the purpose of allowing the Defense Attorneys to
interview the witness and we object to anykind of a
deposition of a potential witness on this case.

THE COURT:  Well, I don't know whether it's
a deposition they are talking about, they are talking
about voir dire examination of a witness in order to

4

1    determine whether or not he is in possession of

2    Brady material.

3                      He is going to be called as a witness

4    today?

5              MR. MURPHY:  Not by us, Judge.

6              THE COURT:  How many witnesses do you have

7    that you intend to call today?

8              MR. MURPHY:  Judge, if there is enough time,

9    we hope to put five witnesses on today.

10             THE COURT:  Do you expect that to take all

11   of the balance of the court day?

12             MR. MURPHY:  I really don't know, Judge.  It

13   depends on -- It really depends on the length of the

14   cross examination and I can't anticipate that.

15             THE COURT:  What is the urgency, Mr. Lufrano,

16   of calling that witness at this time, particularly

17   since we are now involved in a bench trial and

18   particularly since I will give you whatever time you

19   need to perfect any investigation if I determine

20   that there is material that should be given to you.

21                      What is the urgency of it now?

22             MS. PLACEK:  If the Court please, one of the

23   reasons for the urgency in this matter stems from, first

24   of all, the originalness of the Brady motion.

512

5

1              We have asked for several

2    remedies, Judge, in fact to be had.  The remedies,

3    Judge, go all the way from dismissal to, in fact, a

4    motion in limine barring the State from using certain

5    material.

6              Your Honor, the proposition

7    presented by this witness --

8        THE COURT:  You are not answering my question.

9        MS. PLACEK:  I am about to, Judge.

10        THE COURT:  Please get to it.

11        MS. PLACEK:  The particular point that I am

12    making is strictly this, Judge.  In view of judicial

13    economy, quite frankly, if the best happened on

14    behalf of the Defendant, that is if the Court would

15    be so inclined to grant a Brady motion with the

16    ultimate remedy, there will be no need for calling any

17    other witnesses.

18             And secondly, Judge, one of the

19    reasons this motion, and I suggest, quite frankly,

20    be heard before the trial is simply this, or at

21    least a calling of this gentleman as a Court's witness,

22    is that there would be objections as to foundational

23    laying of what we, and I am speaking of the Defendant,

24    anticipates witnesses to testify in line with the

6

State's case.

This is based off of the motions which were heard before your Honor. It is for this reason that we would ask the Court that this witness be called first, since I know the Court is egar to move on this trial.

If, in fact, the Court chooses not to call this witness first and progress, because of the rather long schedule and because I have no wish to inconvenience him, what I essentially would be asking is that this Court instruct the witness to come back on a later date.

THE COURT: The witness is not going to be ex-cused from disclosing whatever information he has relative to this problem.

Can that witness be available tomorrow? That is the only work that we will be doing on this case tomorrow, anyway, and I will hear his testimony tomorrow as it relates to that one issue.

MR. CASSIDY: You are going to call him as a witness, Judge?

THE COURT: Someone is going to call him as a witness, I don't mean the Court's witness, but someone

7

514

1    is going to help establish the factual predicate for

2    what is meant by his statements in that police

3    report, whether it's Brady material or not.

4         MR. CASSIDY: Let me ask you this. Counsel

5    used the word urgency all of a sudden, this is

6    important. The Court already said they have known

7    about it before we knew about it. Since it's

8    urgent, the witness is here, we are ready and I can't

9    see the problem, let Defense Counsel talk to the

10   witness, let him hear what the witness has to say,

11   then let them bring in a motion.

12              Almost a year ago when they got the

13   report--

14        MR. LUFRANO: Objection to what we got a year

15   ago.

16        MR. CASSIDY: I think that would be the proper

17   thing to do. They want to have the witness deposed,

18   bring him out in open Court and have a deposition,

19   and I don't think, at this point, it's appropriate.

20              So I request they talk to the witness,

21   let them make the motion more specific.

22        MR. LUFRANO: If I might clarify the record.

23              Counsel is indicating that we had

24   it before they got it. He used the plural, we, I am

515

8

1    presuming he meant -- and I ask the record to reflect

2    that we, the two State's Attorneys here, prior

3    State's Attorneys are the people who tendered it out.

4         THE COURT:  Mr. Lufrano, it doesn't make any

5    difference one way or the other how that document

6    came into your possession.  You got it and nothing

7    was done with it until we got ready to go to trial.

8         MS. PLACEK:  Not exactly correct, Judge.

9         THE COURT:  Ms. Placek, please, if you wish to

10   interrupt me, that is all right, I will just let you tell

11   me what I want to say and I won't say anything in

12   response.

13        MS. PLACEK:  I apologize.  I withdraw.

14        THE COURT:  No motion has been filed to deal

15   with that problem until we were about to commence jury

16   selection.

17                  Therefore, I cannot consider it

18   to be of great urgency.  If it was, you should have

19   brought it up, it would seem to me you would have

20   brought it up quite some time ago.

21                  I don't understand, either, the

22   concept of you, have the witness available to you to

23   talk to, but you won't talk to him and you tell me

24   that that is because the State's Attorney was suggesting

9

the answers that the witness should make, and I

presume that you asked me, then, to resolve the

question of whether or not you are accurate in what the

State's Attorney was saying or whether the State's

Attorney is accurate in what he is saying, and I won't

go into that because I don't know how to do that.

If you have the burden on that

and you ask me to make that resolution, you failed,

because I find that, at best, that the evidence was

equally balanced.

Now, it seems to me that to

exercise what options you have and they all fall apart

on you, put we will proceed in another way, but now

you will assist the Court in resolving this problem,

which you have an obligation to do and until that is

done, we are going to proceed.

State, I will hear your opening

statement, if any.

MR. MURPHY:   Thank you, Judge.

Before I present opening argument,

may I release the Officer, then?

MS. PLACEK:   How can we be two places at

once, Judge, unless the State --

THE COURT:   Are you going to bring that Officer

10

517

1    back tomorrow for a possible hearing?

2         MR. MURPHY:  Judge --

3         THE COURT:  Then you can release him.

4         MR. CASSIDY:  To be interviewed first and

5    then --

6         THE COURT:  He is not going to be interviewed

7    today.

8         MR. CASSIDY:  I understand, Judge.  Just so

9    I can tell the Officer what the schedule is.

10        THE COURT:  He may be interviewed and he may

11   also be questioned in Court.

12        MR. CASSIDY:  What time, Counsel?

13        MR. PLACEK:  I was here at 10:00, Judge,

14   whatever time is convenient for the State.

15        THE COURT:  We have a big call.  1:00 o'clock.

16        MR. CASSIDY:  Okay.

17        THE COURT:  I will hear your opening statement,

18   Mr. Murphy.

19        MR. MURPHY:  Thank you, your Honor.

20

21

22

23

24

     11

OPENING STATEMENT

BY

MR. MURPHY:

MR. MURPHY:  Thank you, your Honor.

Your Honor, I believe the evidence in this case will show that on the date of August 1st of 1988 the victim in this case, Denise Johnson, was 12 years old.

On that date she went to her cousin's house, her cousin, Yolanda Hill, and also to her cousin Karlena McCoy's house to babysit.

The evidence will show that she was at the address of 11720 Princeton.  During that day of August 1st of 1988 she babysat for her cousin.

During the evening hours, at some point, she was sitting on the porch.  The evidence will show that while she was sitting on the porch, she was approached by an individual who we will identify as the Defendant, Jerome Hendricks.

That a conversation occurred between Denise Johnson and Jerome Hendricks.  I believe the evidence in this case will show that the Defendant, at this time, was attempting to come on to the victim.  The Defendant was told to leave the

12

519

1    porch.

2                    The evidence in this case will also

3    show that later that evening, the victim was seen

4    with the Defendant.

5                    Additionally, the evidence will

6    show that the victim was seen near the home of the

7    Defendant.

8                    The evidence will also show

9    in this case, Judge, that on the evening hours of August

10   1st of 1988, the victim disappeared.  Her family

11   and her friends looked for her that night, looked through --

12   looked for her in the early morning up to the early

13   morning hours of August 2nd.

14                    Police were contacted and she

15   was not found.

16                    The evidence, your Honor, will

17   also show on August 8th of 1988, approximately

18   seven days later, a body of a young female was found

19   in a garage.

20                    The evidence will show that

21   that garage is next door to where the Defendant lived

22   at the time.

23                    The evidence will also show

24   that that garage is behind an abandoned house, abandoned

13                    520

1   at the time.

2                    The evidence in this case will

3   show that the body that was recovered was, in fact,

4   the body of Denise Johnson and at the time, her body

5   was severely decomposed, that there were ligatures on

6   her body, there were ligatures which were, in fact,

7   her shoestrings, two shoestrings tied both of her

8   hands together behind her back.

9                    Another shoestring was around

10  her neck and also her top was tied around her neck

11  or the upper part of her neck as well, that her

12  pants were partially down.

13                   Later that day, your Honor,

14  the Defendant was questioned by Area 2 Detectives and

15  initially the Defendant told the police, claimed that

16  he had never seen the victim that night after 6:00

17  o'clock in the evening.

18                   the evidence will show that,

19  in fact, the Defendant told the police that he was

20  somewhere else at the time, that he had no contact with

21  the victim.

22                   Your Honor, you will hear during

23  this case that Area 2 Detectives listened to what

24  the Defendant said, checked his story and found that,

14                              521

1    in fact, it wasn't true.

2                    That the Defendant was confronted

3    with the fact that he had lied to the police

4    about his whereabouts on the night of August 1st of

5    1988 and that after the Defendant had been confronted

6    with the fact that he lied to the police, he then

7    changed his story and admitted that he was with the

8    victim.

9                    Your Honor will hear the

10   Defendant gives the police various stories at this

11   time.  One story, he was with the victim, but there

12   was no sexual contact.

13                   The Defendant then changed his

14   story and said that he was with the victim and that

15   there was sexual contact.

16                   The Court will then hear the

17   Defendant went from admitting there was sexual contact

18   to giving the police some detailed statement about

19   sexual encounters that he had with the victim, Denise

20   Johnson.

21                   Judge, you will hear ultimately

22   the Defendant gave the police and an Assistant State's

23   Attorney a statement which was put in writing and it was

24   signed by the Defendant.

532

15

1        May we have a moment, Judge?

2        Your Honor will hear during the

3   course of this trial, specifically about what

4   the Defendant said in that statement to the police and

5   to an Assistant State's Attorney and I submit to

6   your Honor when you hear that statement, you will

7   be able to make a number of determinations about

8   the Defendant's actions on that night and, your

9   Honor, I would like to indicate to you what I believe

10  a portion of that statement of fact says and I will

11  read from this statement.

12       Mr. Hendricks said at this one

13  point the girl wanted to pull on something, that it was

14  around her face as if she wanted him to ride her like

15  a horse.

16       Mr. Hendricks stated that he

17  didn't know what it was and it could have been a

18  rope or her shoelace.

19       Mr. Hendricks said that he did

20  not pull on it, though, because he didn't get into it.

21       Mr. Hendricks stated that she

22  had her hands balled up like she was despirate.

23       Mr. Hendricks stated he didn't

24  say anything to her and that he was grabbing her around

16

1   her waist and shoulder.

2        MR. LUPRANO:  Objection to reading what he

3   intends to put into evidence as an opening statement.

4        THE COURT:  Overruled.

5             This is what he expects the

6   evidence to show.

7        MR. MURPHY:  And in that statement, the

8   Defendant went on to state, Mr. Hendricks stated that

9   he had come and that he did come inside of the girl.

10             After he came, Mr. Hendricks stated

11  he pulled up his pants and left and that he did not

12  look back to see the girl.

13             He further stated that he knew

14  that she did not come out with him.

15             Mr. Hendricks further stated that

16  on Wednesday or Thursday, his family was complaining

17  about a smell coming from the garage and he thought

18  that the cat killed a rat.

19             Mr. Hendricks stated that he was

20  cleaning up around the yard and that he was going to

21  pull some garbage and branches in the garage, when he

22  went into the garage, Mr. Hendricks stated that he

23  saw something that looked like a body and went over

24  to see what it was.

17

He said that it was the same girl
that he had sex with and the shirt was still in the
same position, over her head.

Your Honor, I believe during the
course of this trial you will receive in evidence
a statement stating that, along with other information
about the night of August 1st of 1988.

And I submit, your Honor, that
at the conclusion of this trial, that you will
determine from the statement, from the evidence
about the Defendant's actions on the night of August
1st of 1988 and the various statements that the
Defendant gave to the police, that the Defendant did
commit the offenses for which he is charged.

One other point, your Honor.  I
would ask you in this case, and I know your Honor is
an experienced Judge and is experienced in the
laws of evidence, the rules of evidence, I ask your
Honor only to consider evidence in this particular
case, and I know you will, not what I believe the
Defense will do, which is attempt to attack the
victim, attack the police with evidence that doesn't
exist, and I am confident, your Honor, at the conclusion
of this trial, when you consider only the evidence
in this case, that your finding will be guilty.

18

Thank you.

THE COURT:  Ms. Placek?

OPENING STATEMENT

BY

MS. PLACEK:

MS. PLACEK:  Very briefly, your Honor, we already made our objections, what we feel is the factual limitations of this Court, matters dealing with the motion in limine, that being, quite frankly, often bench trials are considered by Defendants as somewhat of a slow plea to get to the Appellate Court to retry the motions.

Quite frankly, in the case of Jerome Hendricks, Judge, the Defendant waives no rights and waives nothing but the flag.

The issue in this case is somewhat exemplified by what the State just read, because the legal issue and written memorandum, which will be presented to the Court after the State's case, will show that, at best, the only thing that the State can convict Mr. Hendricks of is, quite frankly, criminal sexual abuse based upon the fact of having sex with a minor.

If I might be allowed to go into

19

the evidence and the argument, the evidence in this

case, and the memorandum dealing with it will

be, quite frankly, that the only thing that the State

has is, in fact, one, the disappearance of a young

girl.

Two, that, in fact, on August

8th the body of the young girl was found in a garage.

And as the State's Attorney stated, the garage was

next door to, in fact, the home of Jerome Hendricks.

Second, they have a statement

given by Mr. Hendricks.  Now, I am sure that the

State's Attorney, in no way, wishes to falsify or

mislead the Court on the evidence, but quite

frankly, the statement which was read, and the

statement which spoke of sexual intercourse and the

statement which, in fact, speaks of whatever action

Mr. Hendricks had with this young lady, speaks of

the date of August 1st, 1988.

The reason this becomes key is

because, as the Court knows, and what will be

stated in our memorandum, that in order for the

Court to find this Defendant guilty, the State must

establish the corpus delecti of the crime beyond a

reasonable doubt.

20

527

1    The simplicity of this matter

2 and the problem that the State will have is this.

3    No. 1, we believe the evidence

4 will show that this girl was a chronic run-away. The

5 reason this becomes valid is, first of all, because it

6 will viciate the issue that possibly Mr. Hendricks

7 was the last person to see this young lady alive.

8    We believe that we will show

9 that the police didn't even believe that Mr. Hendricks

10 was the last person to see this young lady alive because

11 a youth officer took a member of her family out days

12 after her alleged disappearance and went looking

13 for her.

14    Second, we believe that the

15 evidence will show that even if the Court was to

16 accept the signed statement in the light most favorable

17 to the State, it, one, speaks of no murder. Two,

18 it speaks of no dead person. Three, it speaks of no

19 kidnapping, a charge in the indictment. Four, it

20 speaks of no forced sex.

21    Therefore, the aggravated criminal

22 assault and felony murder, based upon the same,

23 must also fail.

24    Basically, the argument is this.

21

There is only one person who knew what happened at that garage and that person is dead.

There will be no one else from that witness stand who will talk about the instrumentality of the death of this girl.

We will ask the Court to take particular notice and pay particular attention to the fact, the evidence from the pathologist as to putrification and the date of death -- excuse me, Judge, I am on medication, I get very dry-mouthed and I get stumbling.

The point to that is that when the Court hears the evidence, when the Court, in fact, reads the law as suggested by the Defendant, the Court will see that the only thing that the Defendant can, in fact, be convicted of is the aggravated criminal sexual assault, based upon having sex with a minor.

Thank you, Judge.

THE COURT:  Call your first witness, State.

MR. CASSIDY:  The People would call Mike Gatto.

(Witness sworn.)

THE COURT:  You may be seated, sir.  That microphone is on.  If you pull it over in front of you,

529

22

1    speak directly into it, keep your voice up so

2    everyone will be able to hear you.

3                         You may proceed, Mr. Murphy.

4              MR. MURPHY:  Thank you, Judge.

530

23

1                       MICHAEL GATTO,

2     called as a witness herein, after having been first

3     duly sworn, was examined and testified as follows:

4                       DIRECT EXAMINATION

5                            BY

6                       MR. MURPHY:

7          Q      Would you please state your name and

8     spell your last name, please?

9          A      Mike Gatto, G-a-t-t-o.

10         Q      And, Mike, by whom are you employed?

11         A      Cook County Medical Examiner's.

12         Q      And how long have you been employed

13    there?

14         A      Nine years.

15         Q      And what position do you have there?

16         A      Chief X-Ray Tech.

17         Q      And could you describe what your duties

18    are as Chief X-Ray Tech?

19         A      Take care of the X-Ray Department,

20    take X-Rays.

21         Q      And, Mike, could you tell Judge Holt

22    what your education is in this area?

23         A      I graduated Henrotin Hospital in '80,

24    Cook County Radiology Department

                          581

      24

1        Q        And in addition to that background,

2   do you have any specialized training in the area of

3   taking X-Rays?

4        A        I keep up my CE credits on an annual

5   basis.

6        Q        And what was your major field in

7   college?

8        A        Science.

9        Q        Radiology?

10                Have you gone through any

11   particular courses in addition to your college

12   training?

13        A        Recently going to Morraine Valley

14   to receive my Bachelor's Degree.

15        Q        In what is that?

16        A        In Radiology.

17        Q        Now, Mike, have you ever attended any --

18   Strike that.

19                Were you on duty on the date of

20   August 9th of 1988?

21        A        Yes.

22        Q        And what was your assignment that date?

23        A        All X-Rays that came in that day.

24        Q        And you were working at the Medical

532

25

1     Examiner's Office, is that right?

2          A     Right.

3          Q     And on that particular day, did you

4     have an occasion to handle X-Rays of a particular

5     case?

6          A     The one in question, yes.

7          Q     What is the case number?

8          A     28 August '88.

9          Q     Could you tell Judge Holt what is the

10    name of the victim in this case?

11         MS. PLACEK:  Objection.

12         THE COURT:  Objection is sustained.

13         MR. MURPHY:  Q  Mike, is that 288 or 6288?

14         THE COURT:  Objection is sustained.  Leading.

15         MR. MURPHY:  May I approach, Judge?

16         THE COURT:  You may.

17         MR. MURPHY: Q  Mike, I am going to show you

18    what is marked as People's Exhibit No. 1 for

19    identification purposes.

20                   I ask you to look at this photo

21    and tell me if you recognize what is portrayed in

22    that photograph?

23                   What do you recognize that to be?

24         A     The deceased that I X-Rayed.

26                              533

1       Q       What is the case number on that

2   particular case?

3           MS. PLACEK:  Objection.  The exhibit speaks

4   for itself.

5           THE COURT:  Overruled.

6           THE WITNESS:  8262, August, '88.

7           MR. MURPHY:  Q  Does that photograph truly

8   and accurately portray the condition of the person

9   who you X-Rayed?

10          A       Yes.

11          Q       Thank you.

12                  Can you describe what you did

13  with reference to this particular victim?  Or person?

14          A       When they came in, I put her on the X-Ray

15  table, set up the equipment.

16          Q       What equipment did you set up?

17          A       General Electric X-Ray Unit.

18          Q       What did you do, then?

19          A       X-Rayed the body and then put the

20  cassettes or took the X-Ray cassettes into the darkroom

21  and processed the films.

22          Q       Now, Mike, could you describe the

23  X-Ray machine to Judge Holt?

24          A       G.E. X-Ray Unit, that is like an X-Ray

1    camera, that it takes the photographs or gives the

2    exposure to make the photographs.

3        Q        You made reference to a cassette.  What

4    is a cassette?

5        A        A cassette is a film holder that has

6    both the film and the I.D. blocker.

7        Q        And do you use an identification

8    assembly in this particular X-Ray machine?

9        A        Yes.

10        Q        Could you describe that to Judge Holt?

11        A        The I.D. plate is for name, case number

12    and our initials.

13        Q        And did you use one in each of the

14    X-Rays you took in this particular case?

15        A        Yes.

16        Q        And what is the purpose of using it,

17    an identification plate?

18        MS. PLACEK:  Objection.

19        THE COURT:  Overruled.

20        THE WITNESS:  So we know one case from

21    another, one deceased from another.

22        MR. MURPHY:  Q  Thank you.

23                        And what was the condition of

24    the X-Ray machine that you used on August 9th of

28                                5 3 5

1    1988?

2            A        Excellent.

3            Q        And how do you know that?

4            A        Well, every morning we use it and if it

5    has to make an X-Ray, if it doesn't work, it will not

6    come up with a suitable radiograph.

7            Q        Was it working properly that day?

8            A        Yes.

9            Q        And, in fact, in addition to that, is

10   your X-Ray machine periodically inspected?

11           A        Yes.  Annually the Illinois Department

12   of Safety comes out and checks it.

13           Q        Was that done in this particular

14   case?

15           A        Yes.

16           Q        And can you describe approximately how

17   many X-Rays you took?

18           A        I don't recall how many.

19           Q        Did you take more than one?

20           A        Yes.

21           Q        What did you do after you took the

22   X-Rays?

23           A        After we exposed the film to process

24   them, put them in the folder, put the name and number

29                                    536

1    and give them to the doctor.

2          Q       First of all, you take the actual

3    photographs of the person with the machine?

4          A       Yes, right.

5          Q       After you take the photographs, after

6    you took the photographs in this particular case,

7    what did you do?

8          A       After I, meaning the X-Rays?

9          Q       Yes, the X-Ray?

10          A       Took the cassettes into the darkroom,

11    took the film out of the cassettes, ran the film into

12    a processor.

13                  When they come out of the processor,

14    we put the films into a jacket.

15          Q       So, you develop the X-Rays, then, is that

16    correct?

17          A       Yes.

18          Q       And did you have any training in the

19    field of developing of X-Rays?

20          A       Yes.

21          Q       And where did you receive that

22    training?

23          A       Same school, Henrotin.

24          MR. MURPHY:  May I approach, Judge?

30

1          THE COURT:  You may.

2          MR. MURPHY:  Q  Mike, I am going to ask you to

3     look at what has been marked as People's Exhibit No. 2,

4     3 and 4 and 5.

5               I am going to ask you to look at

6     them one at a time.

7               First look at People's Exhibit

8     No. 2 and tell me if you recognize what that is?

9          A     Yes.

10         Q     What is it?

11         A     It's a post-mortem X-Ray of a pelvis.

12         Q     Do you recognize that particular X-Ray?

13         A     Yes.

14         Q     How do you recognize it?

15         A     By my initials and the case number.

16         Q     And can you tell the Court specifically

17    what it is that you see on there that causes you

18    to recognize that particular X-Ray?

19         MR. LUFRANO:  Objection.   Strike the

20    objection.

21         MR. MURPHY:  Q  You said your initials?

22         A     Yes.

23         Q     Where are your initials?

24         A     In the I.D. plate.

31

1    Q    What else is in the I.D. plate besides

2    your initials?

3    MS. PLACEK:  Objection.

4    THE COURT:  Overruled.

5    THE WITNESS:  The case number, name of the

6    deceased, the date of the examination and my initials.

7    MR. MURPHY:  Q  And what is that X-Ray of,

8    Mike?

9    MS. PLACEK:  Objection, not qualified to

10   read.

11   THE COURT:  What about that, Mr. Murphy?

12   MR. MURPHY:  I think he is qualified to

13   testify what it is.

14   MS. PLACEK:  He said it was an X-Ray.  There

15   is no dispute as to that.

16   THE COURT:  You are asking what is depicted

17   in there.  Is he qualified to be a person who is

18   capable of reading X-Rays?

19   MR. MURPHY:  Judge, I believe based on his

20   background, at this point, he is qualified to say what

21   is generally shown in the X-Ray.  I am not asking him

22   to interpret the X-Ray.

23   MS. PLACEK:  With all due respect, I think the

24   law in Illinois is that he might be able to take it, set

32

530

1  up the original foundation for whatever chain the

2  State is trying to use, but with all due respect to

3  the witness, I don't think he is qualified to read.

4      THE COURT:  As I understand it, Mr. Murphy,

5  it is outside of his area of expertise.

6      At this point he may have the

7  expertise, but I don't think that you have asked

8  enough questions to demonstrate it.

9      Objection sustained.

10      MR. MURPHY:  Q  Michael, I am also going

11  to ask you to look at the next X-Ray, that would be

12  what is marked as People's Exhibit No. 3.

13      Do you recognize that particular

14  X-Ray?

15      A    Yes.

16      Q    And how do you recognize that?

17      A    The same as the previous, it has the

18  same case number, the name, date and my initials.

19      Q    I am also going to ask you to look at

20  what is marked as People's Exhibit No. 4 for identification

21  purposes.

22      Do you recognize that particular

23  X-Ray?

24      A    Yes.

33

540

Q       And how do you recognize that?

A       Same way, same number, same date, same initials.

Q       Finally, I will ask you to look at what is marked as People's Exhibit No. 5 for identification purposes.

A       Same as the previous.

Q       Name, number, date, initials.

And, Mike, those four X-Rays that you are viewing, People's Exhibit 2, 3, 4 and 5, are those all X-Rays that you took on August 9th of 1988?

A       Correct.

Q       Of the victim who, or the individual who is portrayed in People's Exhibit No. 1?

MS. PLACEK:  Objection.

THE WITNESS:  Yes.

THE COURT:  Overruled.

MR. MURPHY:  Q  Is that correct?

A       Yes.

Q       Are those X-Rays, other than the People's Exhibit stickers that are on each of those X-Rays, are they in the same condition that they are in after you developed them?

34                       511

1      A      Yes.

2      Q      And do they, to your knowledge, truly

3  and accurately portray the victim's body, if I may,

4  when you took those X-Rays?

5      MS. PLACEK:  Objection, again, not qualified

6  to reading.

7      THE COURT:  Objection sustained.

8      MR. MURPHY:   Q  After you took the X-Rays

9  of the victim on Case No. 262 August, 1988,

10  or '88, what did you do with them?

11      A      After I did what?

12      Q      After you took them and developed the

13  film?

14      A      Hand them to the doctor.

15      Q      And she is the medical examiner in this

16  case?

17      A      Yes.

18      MR. MURPHY:  No further questions.

19      THE COURT:  Cross?

20      MS. PLACEK:  Very briefly, Judge.

21

22

23

24

35

CROSS EXAMINATION

BY

MS. PLACEK:

Q      You are not John, you are Mike, correct?

A      Correct.

Q      I am sorry, you were introduced as John.

A      That is okay.

Q      Let me ask you this.  In your job at the morgue, you don't take X-Rays of every person that comes in there or every dead person that comes in there, correct?

A      Correct.

Q      As a matter of fact, the only time that you are asked to take X-Rays is when there is a question of identification, isn't that correct?

A      No.

Q      Well, let me ask you this.

In this particular case -- Strike that.

Is one of the reasons that you are asked to take X-Rays is when there is a question of identification?

A      That is one of my jobs, yes.

MS. PLACEK:  That is all, Judge.

36

1          THE COURT:  Redirect?

2          MR. MURPHY:  No further questions, Judge.

3          THE COURT:  Thank you, Mr. Gatto, you may step

4    down, sir.

5                              (Witness excused.)

6          THE COURT:  Call your next.

7          MR. CASSIDY:  Yolanda Hill.

8          MS. PLACER:  Excuse me, may I ask the witness

9    one question?

10         THE COURT:  Yes.  Would you return for just

11   one quick question.

12                             (Witness resumed stand.)

13         MS. PLACER:  Q  I do beg your pardon.

14                  Do you know a gentleman by the

15   name of Dr. John Fitzgerald?

16         A      Yes.

17         Q      Who is Dr. John Fitzgerald?

18         A      The Consultant Radiologist for the Cook

19   County Radiologists.

20         MR. MURPHY:  I do have one question.

21

22

23

24                         544

     37

1                    REDIRECT EXAMINATION

2                    BY

3              MR. MURPHY:

4         Q       Mike, you testified that you saw your

5    markings on the exhibits, is that correct?

6         MR. LUPRANO:  Objection, beyond the scope of

7    cross.

8         THE COURT:  Overruled.

9         MR. MURPHY:  Is that correct, Mike?

10        THE WITNESS:  Yes.

11        MR. MURPHY:  Q  The markings that were on there

12   are your initials?

13        A       Yes.

14        Q       You customarily place your initials on

15   each and all X-Rays you take?

16        A       Yes.

17        Q       And your initials are on these X-Rays

18   the same as they are on any X-Rays that you take

19   yourself?

20        A       That is correct.

21        MR. MURPHY:  Nothing further, Judge.

22        MS. PLACEK:  I would like to correct myself.

23   When we say we both know Fitzgerald, it's Fitzpatrick?

24        THE WITNESS:  Yes.

MS. PLACEK:  I missed it, too.

THE COURT:  Thank you very much.

(Witness excused.)

THE COURT:  Call your next.

(Witness sworn.)

THE COURT:  You may be seated.

That microphone is  on.  If you will speak directly into it, keep your voice up, we will all hear you.

MS. PLACEK:  For the purpose of the record, there would, of course, be an objection as to the out of order taking of the last witness, but the rule of certainty applies, since this is a Bench.

THE COURT:  I didn't hear you.

MS. PLACEK:  There would be an objection as to foundation testimony of the last witness because he was taken out of order.

I feel I must make it on behalf of my client, but because this is a bench trial, of course, the rule of certainty would apply.

THE COURT:  The objection is overruled.

You may proceed.

39                    545

1          YOLANDA HILL,

2    called as a witness herein, after having been first

3    duly sworn, was examined and testified as follows:

4                   DIRECT EXAMINATION

5                   BY

6                   MR. CASSIDY:

7          Q        Can you please state your name and

8    spell your last name?

9          A        Yolanda Hill, last name is H-i-l-l.

10         Q        And how old are you, Ms. Hill?

11         A        23.

12         Q        And where do you live currently?

13         A        10530 South State.

14         Q        And on August 1st of 1988, where were

15   you living at this time?

16         A        11720 South Princeton.

17         THE COURT:  I am sorry?

18         THE WITNESS:  11720 South Princeton.

19         MR. CASSIDY:  Q  And is 117 South  Princeton

20   located in Chicago, Cook County, Illinois?

21         A        Yes.

22         Q        And how long have you lived there prior

23   to August 1st of 1988?

24         A        For four months.

40                          547

1      Q      And who else was living at this address,

2   Ms. Hill?

3      A      Karlena McCoy, my two kids and her two

4   kids.

5      Q      And what relationship was Karlena McCoy

6   to you?

7      A      Cousin.

8      Q      Was she living there prior to you moving

9   in there?

10      A      She had been living there.

11      Q      Did you know a person by the name of

12   Denise Johnson?

13      A      Yes, I did.

14      Q      And can you please tell his Honor,

15   Judge Holt, how do you know Denise Johnson?

16      A      Denise Johnson is my cousin.

17      Q      And what was her date of birth?

18   MR. LUFRANO:  Objection, hearsay.

19   THE COURT:  Overruled.

20   MR. CASSIDY:  Q  When was she born?

21      A      August 21st, 1975.

22      Q      She was 12 years old on August 1st of

23   1988?

24      A      Yes, she was.

41

Q      And when you say she was your cousin, how was she your cousin, in what way?

A      My mother's niece.

Q      She was your mother's niece?

A      Yes.

Q      And what is your mother's name?

A      Estelle Fields.

Q      On August 1st of 1988, who had Denise Johnson been living with?

Who was Denise living with?

A      My mother, Estelle Fields.

Q      And where were they living?

A      151 Morgan, Harvey.

Q      And did you see Denise sometimes?

A      Yes, I did.

Q      And how did you come to see Denise?

A      Denise come over to my house to babysit for me.

Q      Okay.  Babysit for your two kids?

A      Yes.

Q      Now, on August 1st of 1988, did Denise come over to your house that day?

A      Yes, she did.

Q      And about what time did she come to your

42

549

1  house?

2      A    9:00 o'clock.

3      Q    That would be in the morning?

4      A    In the morning.

5      Q    And did you have something to do that

6  day?

7      A    Yes, I went for a job interview.

8      Q    Now, when Denise came over to your

9  house, what was she wearing?

10      A    She was wearing a black tanktop, white

11  pants that come to her knees, white socks and some gym

12  shoes.

13      Q    Okay.

14      The color of the gym shoes, what

15  color were these gym shoes?

16      A    White.

17      Q    And these shorts that she was wearing,

18  how far did they go?

19      A    To her knee.

20      Q    The gym shoes, did the gym shoes have

21  a name brand on them?

22      A    Yes.

23      Q    What was the name brand on them?

24      A    Princess.

43  550

1      Q      And that was physically written on the

2  gym shoe, "Princess"?

3      A      Yes.

4      Q      Was there anything else on the gym shoes

5  written?

6      A      Yes, her name was.

7      Q      And her name would be what?

8      A      Denise.

9      Q      And where was the word "Denise," written

10  on these gym shoes?

11      A      On the left side.

12      Q      On the left shoe?

13      A      Yes.

14      Q      And where on the left shoe, Ms. Hill,

15  would it be?  Would it be on the inside or outside of

16  the shoe?

17      A      On the outside.

18      Q      What part of the shoe?

19      A      The outside of the shoe.

20      Q      On the outside of the shoe?

21      A      Yes.

22      Q      Okay.

23             But would it be on the instep of

24  the shoe, on the outside?

1      A      Yes, it would be.

2      Q      And do you recall what color, if you

3   recall?

4      A      Red ink.

5      Q      And how tall was Denise?

6      A      About five.

7      Q      About five feet?

8      A      Yes.

9      Q      A little bit under or little bit over?

10     A      Under.

11     Q      And approximately how much did she weigh?

12     A      About 100 pounds.

13     Q      Now, on August 1st of 1988, did you go

14   out to your job interview?

15     A      Yes, I did.

16     Q      Did you leave Denise there with your

17   children?

18     A      Yes.

19     Q      Did you return from your job interview?

20     A      Yes.

21     Q      And when you returned, did you return

22   to your house at 11720 Princeton?

23     A      Yes.

24     Q      Was Denise there?

45

552

1    A    Yes, she was.

2    Q    Was your children there?

3    A    Yes.

4    Q    Approximately what time did you arrive

5    home?

6    A    4:00 o'clock.

7    Q    Okay.

8         Now, approximately 5:00 o'clock,

9    were you still in your house at 11720 Princeton?

10        Were you still home?

11   A    Yes, I was.

12   Q    Was Denise still there?

13   A    Yes, she was.

14   Q    Were your children still there?

15   A    Yes.

16   Q    Was Karlena still there?

17   A    Yes.

18   Q    Did you have an occasion then to walk

19   from your house to, out to your front porch area at

20   5:15?

21   A    Yes.

22   Q    Can you tell his Honor, Judge Holt, who

23   was out on the porch when you went out there?

24   A    Denise, my two kids and Jerome Hendricks.

46

PENGAD/INDY. MUNCIE. IN  47302

SF-IL-24A

1          Q      This person that you refer to as

2    Jerome Hendricks, can you look around the Court and

3    see if you see Jerome Hendricks?

4          MS. PLACEK:  We stipulate she would identify

5    the Defendant.

6          MR. MURPHY:  We accept that stipulation, Judge.

7          THE COURT:  Stipulation will be accepted.

8    The record will reflect that she had identified the

9    Defendant.

10          MR. MURPHY:  Thank you.

11          MR. CASSIDY:  Thank you.

12                    Where was Karlena when you went out

13    to the porch?

14          THE WITNESS:  Karlena was walking behind me.

15          MR. CASSIDY:  Q  Karlena was out on the porch

16    after you?

17          A      Yes, she was.

18          Q      When you got out to the porch, then

19    with Jerome and your two kids out there and your

20    two kids, was there any conversation taking place?

21          A      Yes.

22          Q      Who was the conversation taking place

23    between?

24          A      Jerome was talking to  Denise.

47

554

Q       Okay.

                And after you got out of the
porch, what else did you say?

MR. PLACEK:  Objection.

THE COURT:  Basis?

MS. PLACEK:  Foundation.

THE COURT:  Lay a better foundation.

MR. CASSIDY:  Lay a better foundation?

THE COURT:  Yes.

MR. CASSIDY:   Q  Okay.  You say that your kids
were there and Jerome was there and Karlena was there
and Denise was there, is that correct?

A       Yes.

Q       Was there anybody else present?

A       No.

Q       Okay.

                And this is about 5:00, 5:15, is
that correct?

A       Yes.

Q       And did you say anything to, at this
time?

A       To Jerome.

Q       What did you say to Jerome?

48

1          MS. PLACEK:  Objection, foundation.

2          THE COURT:  Overruled.

3          MR. CASSIDY:  Q  What did you say to Jerome?

4          A      I asked Jerome what was he doing here.

5          Q      Okay.  What, if anything, did he

6      say?

7          A      He said he was just carrying a conver-

8      sation.

9          Q      Okay.

10                 What, if anything, didyou say to

11     him?

12         A      I told Jerome that he was not allowed

13     on the porch.

14         Q      Okay.

15                 Did you say anything else to him,

16     at this time?

17         A      No, I took my baby from him and him and

18     Karlena exchanged words.

19         Q      You took your baby from Jerome?

20         A      Yes.

21         Q      What did you do with your baby?

22         A      Gave my baby to Denise.

23         Q      What, if anything, did you say, at

24     this time?

49                        556

1    A    After I handed my baby to Denise, I

2  bent over and told Denise, and she had got upstairs.

3    Q    You said something to Denise?

4    A    Yes.

5    Q    What did you say to Denise?

6    MS. PLACEK:  Objection.  Basis as to the Defendant's

7  ability to hear.

8    THE COURT:  Overruled.

9    MR. CASSIDY:  Q  Go ahead.

10    A    I told Denise that Jerome had just got

11  out of jail for rape.

12    MS. PLACEK:  Objection.  Motion for a mistrial,

13  Judge.  The State obviously knew they were moving

14  into prejudicial material, Judge.

15    THE COURT:  This is a conversation that she

16  had, Ms. Placek, there is no error.  The objection is

17  overruled.

18    MR. CASSIDY:  Q  When you told Denise that,

19  what happened?

20    A    Denise took the baby, she went

21  upstairs.

22    Q    What did you do?

23    A    Karlena and I was talking to Jerome.

24    Q    What, if anything, did you say to

50                    557

1    Jerome?

2            A        Told Jerome that Denise was 12 years

3    old and that she was not allowed to talk to any men

4    at all.

5            Q        What, if anything, happened then?

6            A        Karlena told Jerome to leave, and it

7    took Jerome about five or ten minutes to leave the

8    porch.  We was arguing with him to get him off the

9    porch.

10           Q        And did he eventually leave the porch?

11   Did he eventually leave?

12           A        Yes, he did.

13           Q        And then what did you do?

14           A        I stood on the porch for a minute to make

15   sure that he was gone.

16           Q        Okay.

17                    And where, then, did you go?

18           A        I went upstairs, me and Karlena went

19   upstairs.

20           Q        Who was upstairs?

21           A        Denise and my two kids.

22           Q        What happened when you went up there?

23           A        We went upstairs to talk to her.

24           Q        Did you have a conversation with her?

51

1      A      Yes, we did.

2      Q      Okay.

3              And then what happened after

4  that?

5      A      We told Denise about Jerome.

6      Q      What did you -- Withdraw that question.

7              Did you stay upstairs in the

8  bedroom?

9      A      Yes, I did.

10     Q      Okay.

11              Did Denise stay up there in the

12  bedroom?

13     A      Denise came to me and asked me could

14  she sit on the porch, because I was hot.

15     Q      What did you tell her?

16     MR. PLACEK:  Objection, as to both statements,

17  hearsay.

18     THE COURT:  What Denise said to her will go

19  out.  What she said to Denise will stay in.

20     MR. CASSIDY:  Q  After Denise said something

21  to you, what did you tell Denise?

22     A      I told Denise she could go on the

23  porch just for five minutes.

24     Q      What, then, did Denise leave the room?

52

1          A       Denise went downstairs.

2          Q       Did you stay upstairs?

3          A       I stayed upstairs.

4          Q       Approximately how long did you stay

5   upstairs?

6          A       For five minutes.

7          Q       And after those five minutes, then what

8   did you do?

9          A       I came downstairs to check on her.

10         Q       And where did you go?

11         A       Downstairs.

12         Q       Outside?

13         A       Yes.

14         Q       And when you went outside, did you go on

15  your front porch where you were earlier?

16         A       Yes.

17         Q       And did you look around?

18         A       Yes.

19         Q       Was Denise there?

20         A       No, she wasn't.

21         Q       Was Jerome there?

22         A       No, he wasn't.

23         Q       Did you ever see Denise alive after that

24  time?

53                          550

1          MS. PLACEK:  Objection, presuming.

2          THE COURT:  What does it presume?

3          MS. PLACEK:  Live or dead, Judge.

4          THE COURT:  Overruled.

5          MR. CASSIDY:  Q  Do you understand my question,

6  Ms. Hill?  Did you ever see Denise again

7  after you walked out that porch?

8          A     No, I didn't.

9          Q     Are you familiar with the area of

10  11720 South Princeton?

11         A     Yes, I am.

12         Q     And that is where you were living at this

13  time, is that correct?

14         A     Yes.

15         Q     Now, Princeton, is that bounded by the

16  -- strike that.  Withdraw that question.

17                    Did you have a chance to see a

18  diagram of the area up in our office prior to coming

19  down and testifying today?

20                    Did I show you a diagram?

21         A     Yes.

22         Q     Did that diagram truly and accurately

23  depict the area of 11720 Princeton, although it was

24  not to scale?

54                        551

1

2          A       Yes.

3          MS. PLACEK:  Well, Judge, with all due respect,

4    Judge, the foundational questions have not been laid

5    as to the knowledge of the area, independent of

6    seeing the diagram in the State's office.

7          THE COURT: The objection is overruled at this

8    point.

9          MR. CASSIDY:  Judge, may the witness be allowed

10   to get off, down off the witness stand and look at

11   People's Exhibit No. 6 for identification?

12         MS. PLACEK:  May I be allowed?

13         THE COURT:  What are you going to say, Ms.

14   Placek?

15         MS. PLACEK:  Will I be allowed to move?

16         THE COURT:  Certainly.

17         MR. CASSIDY:  I will be glad to move it.

18         MS. PLACEK:  No, for the Court's pleasure.

19         THE COURT:  You can proceed.

20         MR. CASSIDY:  Q May the witness be allowed to

21   step down?

22         THE COURT:  Yes.

23         MR. CASSIDY:  Q  Could she step down, Ms. Hill,

24   and walk over here.  You can stand over here, Ms. Hill.

                Now, is this diagram, People's

1

2      Exhibit No. 6 for identification, is this

3      the same diagram you seen earlier?

4              A       Yes, I did.

5              Q       By looking at this, would this be better

6      for you to describe the area?

7              A       Yes.

8              Q       Now, looking at People's Exhibit No.

9      6 for identification, what area, generally, does

10     this depict?

11             A       Where I stay.

12             Q       Okay.

13                     And would that be approximately

14     the 117 area of Princeton and Yale?

15             A       Yes, it would.

16             Q       Looking on the diagram, although it's

17     not to scale, do you see approximately where your house

18     would be on that diagram?

19             A       Yes.

20             Q       And if you would, could you please take

21     this red marker and put an X, if you would, where

22     your house would be?

23                     Okay.  For the record, Judge, the

24     witness put a red dash.

                       Now, how many houses is your house

56

off the alley which separates -- Strike that.

Approximately how many houses are you from the alley, which divides, which is the alley behind 11700 Block?

MS. PLACEK:  Objection, form of the question, Judge.

THE COURT:  Overruled.  If she understands, she may answer.

THE WITNESS:  One.

MR. CASSIDY:  Q  Approximately one house?

A       Yes.

Q       Are you familiar where Jerome Hendricks was living on August 1st of 1988?

A       Yes, I am.

Q       And do you see, approximately, or could you identify it on this diagram?

A       Yes.

Q       If you would, could you take this marker and put a cirlce approximately where Jerome Hendricks' house was?

For the record, the witness has marked the People's Exhibit No. 6, Judge.

Now, Ms. Hill, is that the rear of the house you identified?

57

554

1          A        That is the back.

2          Q        Back of his house?

3          A        Yes.

4          Q        And if you would, could you put another

5   circle on where the front of his house would be?

6          A        (So done.)

7          Q        Now, on August 1st of 1988, was Jerome

8   Hendricks living in the approximate area where you just

9   marked on that diagram?

10         A        Yes, he was.

11         Q        Was he living in a house?

12         A        Yes.

13         Q        And with all due respect, there would

14  be certain questions as to foundation of this

15  knowledge.

16         THE COURT:  Your objection is sustained.

17         MS. PLACEK:  Motion to strike.

18         MR. CASSIDY:  Q  Did you know where Jerome

19  Hendricks was living on August 1st of 1988?

20         A        Yes, I did.

21         Q        And how did you know that?  Did you

22  see him coming to and from that house?

23         MS. PLACEK:  Objection, leading and suggestive.

24         THE COURT:  Sustained.  Leading.

58

555

1      MR. CASSIDY:  Q  Now, did you know where
2  Jerome was living on that date?

3      A      I seen Jerome coming --

4      MS. PLACEK:  For purposes of the record, with
5  all due respect --

6      MR. MURPHY:  Objection.  The witness is not
7  finished.

8      MR. CASSIDY:  Counsel's mouth is moving
9  directly when --

10      THE COURT:  That objection is overruled.
11  Please don't argue among yourselves.

12                    Put another question.

13      MR. CASSIDY:  That is a misstatement, though.

14      THE COURT:  Put another question and don't
15  argue with Counsel.

16                    Put another question to the
17  witness.

18      MR.CASSIDY:  Did she finish her answer?

19      THE COURT:  I don't know what the answer or
20  the question was, no, because of the colloquy.

21                    Put a question.

22      MR. CASSIDY:  I apologise.

23                    How do you know where Jerome
24  Hendricks was living on August 1st of 1988?

59                   556

1          THE WITNESS:  I seen Jerome coming out of there.

2          MR. CASSIDY:  I have no further questions,

3    Judge, or no further questions of the diagram at

4    this time.

5                    Can you resume your seat up there?

6          THE COURT:  Mr. Cassidy, would you please move

7    the diagram back against the wall now?

8          MR. CASSIDY:  For the record, I am showing

9    Defense Counsel People's Exhibit No. 7 for

10   identification.

11                   May I approach the witness?

12         THE COURT:  What happened to No. 6?

13         MR. CASSIDY:  That is the diagram.

14         THE COURT:  All right.

15         MR. CASSIDY:  Thanks.

16                   Ms. Hill, can you please look at

17   People's Exhibit No. 7 for identification.

18                   Could you recognize what that is?

19         A      Yes.

20         Q      Is that a photograph?

21         A      Of Denise.

22         Q      And was this the photograph taken of

23   her while she was alive?

24         A      Yes.

Q     And does it truly and accurately depict Denise, how she looked when she was alive?

A     Yes.

Q     For the record, your Honor, I am showing Defense Counsel People's Exhibit 8, 9, 10 and 11.

MS. PLACEK:  No objection, Judge.

Thank you.

MR. CASSIDY:  Q  Ms. Hill, I will show you what is marked as People's Exhibit No. 8 for identification.

I ask you to look at that photograph and do you recognize what is depicted in this photograph?

A     Yes.

Q     And can you please tell the Judge what that photograph shows?

A     The house where Jerome stay at.

MR. LUFRANO:  We can't hear.  If she could speak up a bit.

THE COURT:  Try to speak into the microphone. Keep your voice up.

MR. CASSIDY:  Q  Let me ask you this, Ms. Hill.

Next to Jerome's house, on August 1st of 1988, there was a garage, isn't that correct?

61

1        MR. LUFRANO:  Objection.

2        MS. PLACEK:  Objection, leading and suggestive.

3        THE COURT:  Sustained.  Leading.

4        MR. CASSIDY:  Q  Please tell the Judge what

5  People's Exhibit No. 8 shows?

6        MS. PLACEK:  Objection, it was previously

7  identified, it will speak for itself.

8        THE COURT:  Overruled.

9        MR. CASSIDY:  Q  What does People's Exhibit

10  No. 8, what does that photograph show, Yolanda?

11        A       It was a garage right here.

12        Q       What is there now instead of the

13  garage?

14        A       Nothing but a pathway.

15        Q       All right.

16                And what else is shown in the

17  photograph, besides where the garage used to be?

18        A       My house, where I used to live.

19        Q       I will show you what is marked as People's

20  Exhibit No. 9 for identification.

21                Do you recognize what is shown in

22  that photograph, Ms. Hill?

23        A       Yes.

24        Q       And please tell the Judge what that

559

62

1     photograph shows?

2          A     This photograph?

3          Q     Just tell him what it shows, to his

4     Honor.

5          A     Where the garage used to be at.

6          Q     What garage are you referring to?

7          A     The garage that Denise was found in.

8          MS. PLACEK:  Objection, unless the foundation

9     can be shown as to knowledge.

10         MR. CASSIDY:  Objection is sustained.

11         MS. PLACEK:  I ask to strike.

12         THE COURT:  Stricken.

13         MR. CASSIDY:  Q  What does that photograph

14    show?

15         MS. PLACEK:  Objection, asked and answered.

16         THE COURT:  Overruled.

17         THE WITNESS:  The garage that used to be there.

18         MR. CASSIDY:  Q  Okay.

19              The garage that used to be where?

20         A     In the back of the house.

21         Q     All right.

22              And is Jerome's house also shown

23    in that photograph?

24         A     Yes, it is.

63                    570

Q      The garage you are referring to,
where was that in relationship to Jerome's house?

A      Next door to Jerome's.

Q      Okay.

And for the record, if you would,
can you put, or what color is Jerome's house in
that photograph?

A      Green.

Q      I will show you now what is marked
as People's Exhibit No. 10 for identification.

Take a look at it.

Do you recognize what is shown
in that photograph?

A      Yes.

Q      What is shown in the photograph?

A      Jerome's house and the house that
is next door to him and the garage.

Q      What is shown in the photograph is
Jerome's house and what else?

A      And the house and where the garage was
standing.

Q      Where the garage used to be?

A      Yes.

Q      The garage thatwas there on August 1st

64

of 1988?

    A      Yes.

    Q      It's no longer there, is that correct?

    A      No.

    Q      Finally, I will show what is marked
as People's Exhibit No. 11 for identification.  Can
you take that.

                Take a look at it.  Do you
recognize what is contained, what is depicted in that
photograph?

    A      Yes.

    Q      And what is shown in that photograph,
Ms. Hill?

    A      This is from our porch, you can see the
garage.

    Q      Okay.

                It shows the angle from your front
porch that you were living in on August 1st of 1988?

    A      Yes, where the garage was standing at.

    Q      Where the garage used to be?

    A      Yes.

    Q      Is that what is depicted?

    A      Yes.

    Q      Do all of those four photographs that
you just described, do they truly and accurately show

65

572

1    what you just described?

2         A     Yes, it is.

3         Q     Did Denise ever go to Roseland Community

4    Hospital?

5         A     Yes, she did.

6    MS. PLACEK:  Objection.  Objection, foundation.

7    THE COURT:  Objection sustained.

8    MS. PLACEK:  Motion to strike.

9    THE COURT:  Stricken.

10   MR. CASSIDY:  Could I have just a moment, your

11   Honor?

12   THE COURT:  Mr. Cassidy, I am going to reverse

13   that ruling as to that question and allow her to

14   answer.

15   MR. CASSIDY:  Okay.

16                   Could I just have a moment,

17   please, Judge?

18   THE COURT:  All right.

19   MR. CASSIDY:  Q  Now, Ms. Hill, when you left

20   Denise and she went downstairs, back to the front porch

21   and you stayed upstairs, was she in fine physical

22   condition?

23        A     Yes, she was.

24        Q     Was she alive, as well?

66                    573

1          A        Yes.

2          Q        And when was the next time that you

3     saw her?

4               MS. PLACEK:  Objection, presuming.

5               THE COURT:  Overruled.

6               MR. CASSIDY:  Q  When was the next time that

7     you saw her?

8          A        When she came downstairs.

9          Q        All right.

10                        After you went out the front

11    porch, you didn't see her again, or you didn't see

12    her on that day, is that right?

13              MR. LUFRANO:  Objection, leading and suggestive.

14              THE COURT:  Overruled.

15              MR. CASSIDY:  Q  You didn't see her that day,

16    did you?

17         A        After the 1st, no.

18         Q        Okay.

19                        Did you ever see her again?

20         A        No.

21              MR. CASSIDY:  Thank you, your Honor, I have

22    no further questions.

23              THE COURT:  Cross?

24              MS. PLACEK:  Very briefly, your Honor.

67

1                        CROSS EXAMINATION

2                        BY

3                        MS. PLACEK:

4          Q      Ms. Hill, if I say anything you don't

5   understand or if I state a question to you that you

6   have a problem with --

7          MR. CASSIDY:  Objection, Judge.

8          THE COURT:  Overruled.

9          MS. PLACEK:  I will try to restate it, okay?

10         A      All right.

11         Q      Now, Ms. Hill, first of all speaking

12  about your cousin, did you ever tell the police that

13  you were, in fact, her aunt?

14         MR. CASSIDY:  Objection.

15         THE COURT:  Overruled.

16         MR. CASSIDY:  Foundation.

17         THE COURT:  Overruled.

18         MR. CASSIDY:  Objection, Judge, to the

19  foundation.

20         THE COURT:  Overruled.

21         THE WITNESS:  No, I didn't.

22         MS. PLACEK:  Q  Calling your attention --

23         THE COURT:  That is when the foundation becomes

24  relevant.

68                        575

1          MR. MURPHY:  It's relevant.

2          THE COURT:  If she told the police she had a

3     different relationship than what she is now testifying

4     to, it may become relevant.

5          MR. CASSIDY:  Impeachment, for impeachment.

6          THE COURT:  Okay.

7          MR. CASSIDY:  Correct me if I am wrong, I

8     have been wrong alot today, isn't it correct that, first

9     of all, you, to establish that, you have to have a

10    conversation with a policeman?

11         THE COURT:  She has just denied that she

12    told the police that.  Now we are going to find out when

13    it was that Counsel --

14         MR. CASSIDY:  I had to lay a foundation.  I

15    am just asking the same thing.

16         THE COURT:  Mr. Cassidy, 315 South Plymouth Court

17    they give refresher courses on evidence, Chicago,

18    Illinois.

19         MR. CASSIDY:  Right.  I need it.

20         THE COURT:  Proceed.

21         MS. PLACEK:  Thank you, Judge.

22         THE COURT:  This case is not going to proceed

23    like this all through this case with us arguing between

24    ourselves about irrelevances.  We are trying to try

69

1    this case as skilled lawyers without arguments between

2    Counsel and the Court.

3                    Proceed.

4           MS. PLACEK:   Q   Be that as it may, do you

5    remember having a conversation approximately on August

6    7th of 1990 -- Strike that, 1988, with an Officer,

7    a Youth Officer Steve Martkovich, M-a-r-t-k-o-v-i-c-h?

8           A     No.

9           Q     Do you remember, at this time, that he

10   spoke to you approximately -- that he spoke to you

11   concerning your missing relative, Denise Johnson,

12   your niece?

13          A     No.

14          Q     Do you remember whether or not he asked

15   you what your relationship was to Denise Johnson?

16          A     I don't remember speaking to anyone by

17   that name.

18          Q     Do you remember whether or not you

19   told him, at that time, that you were, in fact, her

20   aunt?

21          A     No.

22          THE COURT:  No, you do not remember or no, --

23          THE WITNESS:  No, I do not remember.

24          MS. PLACEK:   Q   Do you remember that conversation

70