CASE NO. _____O8cv 1589_____

ATTACHMENT NO. _____4_____

EXHIBIT _____

TAB (DESCRIPTION) _____

1  dealing with Denise Johnson being alive on August

2  2nd, did you receive it as a result of a conver-

3  sation with individuals?

4      MR. MURPHY:  Objection.

5      THE COURT:  What is the basis for your

6  objection?

7      MR. MURPHY:  Assumes facts not in evidence.

8      MS. PLACEK:  It was already established that

9  he had such information.

10     MR. MURPHY:  Judge, getting back to the

11 contents of the conversation.

12     MS. PLACEK:  Judge, I am allowed, according

13 to, and I re-read Chambers versus Mississippi,

14 as to imputed knowledge.  I believe he stated

15 that he had that knowledge.  I'm allowed now to

16 cross examine as to the foundation to the

17 knowledge.

18     THE COURT:  So that this record might be

19 clear, why don't we conduct a voir dire of this

20 witness to determine whether or not under

21 any stated facts you're going to be able to

22 develop enough to warrant the invocation of

23 Chambers and then the record will be completely

24 clear in that area and not comingled with

1    what is and what is not hearsay.  To some extent

2    I can hear what this witness' conversation was in

3    trying to make a determination as to whether it

4    has any relationship to Chambers or not.  I'm

5    going to say to you off the top of my head, from

6    what I know about this evidence, I don't think

7    that Chambers is going to fit these circumstances.

8    I don't know enough about the situation to make

9    that determination.  So I'm going to suspend

10    the trial of this case and conduct a voir dire exam-

11    ination of this witness for the limited purpose

12    of seeing if you can lay a foundation which

13    will justify it.

14         MS. PLACEK:  If it please the Court.

15         MR. MURPHY:  May I finish what I was going

16    to say?

17         MS. PLACEK:  I am sorry, I thought the

18    Court was addressing me.

19         THE COURT:  I'm addressing both of you.

20         MR. MURPHY:  Your Honor, there was a

21    hearing pursuant to a motion made by the

22    Defense alleging that the State violated Brady,

23    and this witness was called as a witness by

24    the Defense and testified extensively regarding

1    the conversation which he is being asked about now.

2    For the purpose of the hearing the Court wants to

3    conduct, we would stipulate that would be the

4    Officer's testimony.

5        THE COURT:  The two hearings were for dif-

6    ferent purposes, while they overlap in what might

7    be an extreme way.  What I was looking for in that

8    hearing was whether or not there was any basis

9    whatsoever for the invocation of Brady versus

10   Merrill.  That's distinct from the invocation of

11   Chambers versus Mississippi in the fact that

12   they are closely related or bar upon the same

13   subject matter.  The distinction is still sharp.

14       You may proceed on the voir dire

15   examination.  It's going to have to unfold to

16   some degree of clarity and some degree of --

17       MS. PLACEK:  Therefore, Judge, since the

18   Court -- I understand the Court has a jury

19   waiting, and I understand this Court has been

20   more than patient with me in this matter.

21   What I would suggest, Judge, is that since

22   at this time, for the purpose of Chambers

23   hearing only, that this gentleman be made a

24   Court's witness with both sides allowing --

1    THE COURT:  It's not necessary, because

2    under the rules you can cross examine anybody.

3    So I don't have to call him as a court's

4    witness.  Put some questions to him, and if it

5    appears as though you can get information from

6    him better by cross examining, I will permit

7    you to do that.

8    MS. PLACEK:  Q  Officer, calling your

9    attention to August 2nd -- strike that.

10   August 7th, 1988, I would ask --

11   THE COURT:  Might I suggest to you that

12   the problem of Chambers that is bothering me,

13   which may not be relevant, but the problem that

14   is bothering me is assuming he got the infor-

15   mation from someone, to what degree can you

16   attribute any indicia at all of reliability

17   to it?

18   MS. PLACEK:  That was exactly my point,

19   Judge.  I believe that if anything --

20   THE COURT:  Put a question to him and not

21   to me.

22   MS. PLACEK:  Judge, can we assume that

23   for the purpose of the stipulation, to save

24   time, that the information was in fact received

1     from the two women as previously testified in the

2     Brady material?

3          THE COURT:  Can we adopt that?

4          MR. MURPHY:  I was willing to offer and

5     stipulate to that and move along.

6          THE COURT:  Put a question.

7          MS. PLACEK:  I would ask that I be allowed

8     to cross.

9          THE COURT:  Put a question.

10         MS. PLACEK:  Surely.

11         Q    Officer, isn't it correct that on

12    April 7th of 1988 you spoke to two women?

13         THE WITNESS:  A  That's correct.

14         Q    When you spoke to these two women,

15    you showed them the picture of Denise Johnson,

16    correct?

17         A    That's correct.

18         Q    What time of day or night was this?

19         A    It was approximately 2:00 o'clock.

20         Q    As a matter of fact, it was before

21    you spoke to Mrs. Fields or picked her up,

22    correct?

23         A    It was after I picked her up because

24    I got the pictures from her.

1    Q    Mrs. Fields was with you at that time?

2    A    I think she was waiting by my squad car

3    across the street.

4    Q    Officer, do you remember testifying in

5    a Brady motion previous to this date?

6    A    Yes, I do.

7    Q    I apologize, Judge, I have no transcript.

8    I would ask the Court to rely both on its notes --

9    THE COURT:  Put a question.

10   MS. PLACEK:  Q  Officer, isn't it correct

11   at that time that you said you had not in fact

12   spoken to the guardian or not personally -- the

13   guardian of Denise Johnson was not present to you

14   at the time that you spoke to these two women?

15   MR. MURPHY:  Objection, Judge.  It's not

16   impeaching

17   THE COURT:  She's not trying to impeach.  This

18   is a hearing to discover whether or not Brady,

19   and whether or not Chambers is going to apply and

20   to that extent the rules of evidence are relaxed

21   considerably.  Put a question.

22   MS. PLACEK:  Q  Isn't that correct?

23   THE WITNESS:  A  What was your question?

24   Q    Isn't it correct that Estelle Fields

1    was not with you when you spoke to these two women?

2         A.    No, she wasn't.

3         Q    Isn't it correct, as a matter of fact

4    it was only after you spoke to these two women

5    that you called Estelle Fields to tour the neighbor-

6    hood with you?

7         A    That's incorrect.  She didn't live --

8         Q    Officer, do you remember testifying --

9    MR. MURPHY:  Objection, Judge.

10   THE COURT:  You're cutting off the witness.

11   MS. PLACEK:  Continue, Officer.

12   THE WITNESS:  I had called her earlier the

13   day to meet me at -- we made arrangements to

14   meet at 10530 South State Street.  At that location

15   she gave me the pictures, the first time I had

16   the picture.  That was my first encounter with

17   Mrs. Fields.

18   MS. PLACEK:  Q  Was she to meet you solely

19   for the  purpose of giving you the picture?

20   THE WITNESS:  A  For giving me the picture

21   and to tour the area.

22        Q    Do you remember testifying at the

23   Brady motion on an earlier court date?

24        A    Yes.

1      Q    Do you remember testifying in fact

2    that you had in your possession a picture of

3    the deceased, Denise Johnson?

4      A    Correct.

5      Q    Do you remember testifying that it was

6    only after you received certain information from

7    these two people that you had called Estelle

8    Fields on the phone and then retrieved her to

9    tour the area with you?

10      A    I don't remember testifying to that.

11      Q    Officer, did you ask these women

12    their names?

13      A    I can't recall if I did or didn't.

14    I am sure I did.

15      Q    Did you ask them where they resided?

16      A    Yes.

17      Q    That was at 10537 South State?

18      A    Correct.

19      Q    And they told you in fact on August

20    2nd, 1988, at approximately 2:00 o'clock, or

21    1400 hours, that they saw the victim, Denise

22    Johnson?

23      A    I think I indicated that in my report

24    what those people had told me.

1307

1   Q Is your report, to the best of your

2 knowledge, true and correct?

3   A Yes.

4   MS. PLACEK: Thank you.

5   MR. MURPHY: Judge, I would ask that that

6 last question and answer be stricken.

7   THE COURT: Well, if you mean because it

8 means the contents of the report is true and

9 correct, to that extent it is stricken.

10   MS. PLACEK: Q Did they also tell you that

11 Denise Johnson might be on Wabash from 105th to --

12 excuse me, from ten five hundred to ten six

13 hundred Wabash?

14   THE WITNESS: A What was the address on

15 Wabash? I believe from 105th to 106th.

16   Q In the area of 109th and Indiana?

17   A Correct.

18   Q Did in fact you ask how they secured

19 that information?

20   A No, I didn't.

21   Q As a result of this information, did

22 you tour those specific areas?

23   A Yes.

24   Q Did you rely on that information --

1     did you in fact rely on that information?

2          A     Yes, I used that information.

3          Q     Does that mean you relied upon it,

4     Officer?

5          A     I used that information to follow up

6     the lead that was given to me, yes.

7          Q     Did you in fact put that information

8     down to be passed on to your brother officers?

9          A     I included it in my report, yes.

10         Q     Did you in fact meet Mrs. Fields

11    at the home of her father?

12         A     I met her at the home of a relative

13    at 10530 South State.

14         Q     Was that her father, William McCoy?

15    MR. MURPHY:  Objection.

16    THE COURT:  Sustained.

17    MS. PLACEK:  Q  As a matter of fact, you

18    met her on the first-floor apartment?

19    THE WITNESS:  A  I met her at the address,

20    right.

21         Q     And that was in fact inside of the

22    home, correct?

23         A     I really can't recall.

24         Q     As a matter of fact, would it be correct

1    in saying that you went there only for the purpose

2    of finding a picture or getting a picture of the

3    alleged victim?

4         A    For my sole purpose?

5         Q    Yes.

6         A    I didn't have a sole purpose in going

7    there.  I went there to get a picture.

8         Q    Am I correct that it's only after you

9    received this information as to the deceased

10    being alive at approximately 1400 hours on

11    August 2nd that then you got the complainant

12    and toured the area?

13         MR. MURPHY:  Objection.  Asked and answered.

14         THE COURT:  Sustained.

15         MS. PLACEK:  Am I correct in assuming

16    that originally that picture was only for publication?

17         MR. MURPHY:  Objection.

18         MS. PLACEK:  I'll withdraw it, Judge.

19         Q    Am I correct in assuming that you

20    were originally -- you originally only went to

21    get a picture from Mrs. Fields to be published

22    through different police media?

23         A    I went to meet with Mrs. Fields to inter-

24    view her to obtain a picture and see if she could

1    assist me in my investigation.

2        Q    By assist you in your investigation,

3    you mean interviewing her and giving you a

4    picture; correct?

5        A    And to have her tour the area with me.

6    She knew what the girl looked like.

7        Q    Was the picture accurate?

8        A    To the best of my knowledge.

9        MR. MURPHY:  Objection.

10       THE COURT:  Sustained.  How would he know?

11       MS. PLACEK:  Q  What time did you first

12   come to her father's apartment?

13       MR. MURPHY:  Objection, Judge.

14       THE COURT:  Sustained.

15       MS. PLACEK:  Q  What time did you first come

16   to the address at 10530 South State?

17       THE WITNESS:  A  I think I went around

18   2:00 p.m. in the afternoon, approximately.

19       Q    What time did you first develop in

20   on the source?

21       A    Shortly thereafter.

22       Q    On the 7th of August of 1988, the case

23   remained still not clear, correct?

24       MR. MURPHY:  Objection.

1     THE COURT:  Objection is sustained.

2     MS. PLACEK:  Q  Am I correct in assuming

3  that actually you arrived at 1500 hours?

4     THE WITNESS:  A  If that's what's written

5  in my report, yes, it's probably true.

6     Q   What time did you really speak to the

7  sources?

8     MR. MURPHY:  Objection.

9     THE COURT:  Sustained.

10    MS. PLACEK:  Q  Officer, how much time

11  elapsed between the time of your arrival until

12  the time you spoke to these sources?

13    THE WITNESS:  A  I can't be certain.

14    Q   In your report, am I correct in

15  assuming that you only spoke of touring the area

16  with Mrs. Fields after in fact the anonymous

17  sources gave you this information?

18    A   That is true.

19    Q   Am I correct in assuming that your

20  report was written chronologically?

21    MR. MURPHY:  Objection, Judge.

22    THE COURT:  Overruled.

23    THE WITNESS:  I don't know.

24    MS. PLACEK.  Q  You don't know how you wrote

1   your report?

2        THE WITNESS:  A  That particular report?

3        Q    Yes.

4        A    I assume it might have been chronological.

5        Q    Would it be correct the first thing is

6   that you contacted the complainant, Mrs. Fields?

7        A    Correct.

8        MR. MURPHY:  Objection, Judge.

9        THE COURT:  Objection is sustained.  It's

10  immaterial for the purpose of this hearing.

11       MS. PLACEK:  Well, then I would ask -- I

12  will make the objection later and the State can

13  argue.

14            That's all, Judge.

15       THE COURT:  State, do you have anything to

16  offer on this issue?  Do you wish to cross

17  examine, or examine?

18       MR. MURPHY:  I would like to ask a few questions,

19  if I may.

20       THE COURT:  You may.

21                    EXAMINATION BY

22                    MR. JOHN MURPHY:

23       MR. MURPHY:  Q  Officer, you indicated that

24  these two ladies were anonymous sources, is that

1  correct?

2      A    Correct.

3      Q    As you sit here today, do you know the

4  names of these two ladies that you spoke to?

5      A    No.

6      MS. PLACEK:  Objection.

7      THE COURT:  Overruled.

8      MR. MURPHY:  Q  Did you ever know the names

9  of those two ladies that you spoke to?

10      THE WITNESS:  A  No, if I had known that, they

11  would be in my report.

12      Q    In fact, they never told you their names,

13  they just told you something about the person whose

14  picture you had, is that correct?

15      A    Correct.

16      Q    You approached them; they did not approach

17  you?

18      A    Tha't correct.

19      Q    They responded to questions you asked

20  them, would that be fair to say?  Did you ask them

21  if they had seen this person who was in the picture?

22      A    Correct.

23      Q    And they responded to you, correct?

24      A    Correct.

1  Q Do you know what the relationship

2 between these two women were and Denise Johnson

3 at that time?

4  A No.

5  Q Did you ever learn if there was any

6 relationship?

7  A No.

8  Q So to your knowledge, you don't even

9 know if these people knew Denise Johnson, is

10 that correct?

11  A Correct.

12  Q But you did list in your report the

13 address where these women lived?

14  A Correct.

15  Q Did they ever describe to you what she

16 was wearing?

17  A No, I don't think so.

18  Q Did they ever describe to you what

19 she was doing when they thought they saw her?

20  A No.

21  Q And you testified that you went out and

22 looked for her after speaking to them, correct?

23  A Correct.

24  Q Did you ever locate her in the area

1    where they saw her or thought she would be?

2        A    No, I didn't.

3        Q    Obviously, these ladies -- you never seen

4    since then -- strike that.

5        MS. PLACEK:  Objection.

6        MR. MURPHY:  They are not in court today?

7        MS. PLACEK:  Objection.

8        THE COURT:  The objection is overruled.

9        MR. MURPHY:  Q  These ladies that you talked

10   to aren't in court today, is that correct?

11       THE WITNESS:  A  Correct.

12       Q    Have you seen them since then, to the

13   best of your knowledge?

14       A    No.

15       Q    And did these ladies tell you about

16   their involvement in her disappearance?

17       MS. PLACEK:  Objection.

18       THE WITNESS:  No.

19       THE COURT:  Overruled.

20       MR. MURPHY:  Q  Did they say anything to you

21   that you would view as perhaps incriminating

22   themselves?

23       MS. PLACEK:  Objection.

24       THE COURT:  Overruled.

1    THE WITNESS:  No.

2    MR. MURPHY:  Q  At the time you interviewed

3    these ladies, this was on August 7th, correct?

4    THE WITNESS:  A  Correct.

5    Q    This is at least six days after

6    Denise Johnson had disappeared, is that

7    correct?

8    A    That is correct.

9    MR. MURPHY:  No further questions.

10   THE COURT:  Anything further on the motion?

11   MS. PLACEK:  Yes.

12   Q    Officer, you said that they didn't say

13   anything incriminating to you, that you considered

14   incriminating, correct?

15   A    Correct.

16   Q    This is a conclusion on your part, isn't

17   that correct?

18   A    It was a criminal investigation.

19   Q .  So in other words, if they would have

20   said, "I murdered her," that wouldn't be in-

21   criminating?

22   MR. MURPHY:  Objection.

23   THE COURT:  Sustained.

24   MS. PLACEK:  Q  Let me ask you this, Officer.

1          The State's Attorney asked you whether or

2    not they told you what she was wearing at the time

3    they saw her, correct?

4         THE WITNESS:   A   He asked me that.

5         Q    Did you ask them?

6         A    I don't think so.  I don't know.

7         Q    Well, you were conducting the inves-

8    tigation, correct?

9         A    Correct.

10         Q    Did you ask them what she was doing

11    at the time they saw her; did you ask them

12    that question?

13         A    I may or may not have.

14         Q    Quite frankly, isn't your memory

15    exhaused as to what you did or didn't ask?

16         A    Correct.

17         Q    As a matter of fact, you're not sure

18    whether you asked them certain questions or

19    didn't ask certain questions, correct?

20         A    Correct.

21         Q    The only thing you're going by is your

22    report, correct?

23         A    Correct.

24         Q    So when you said whether or not they

1    said something incriminating to you, you don't

2    even know whether they did or didn't, correct?

3    Because you don't even remember what they truly

4    said; correct?

5        MR. MURPHY:  Objection.

6        THE COURT:  Overruled.

7        MS. PLACEK:  Q  Correct?

8        THE WITNESS:  A  I think something incriminating

9    I would have remembered.

10        Q    Let me ask you this, Officer.

11            Isn't it correct that your memory is based

12    solely on your report.

13        A    In this instance, yes.

14        Q    As a matter of fact, am I correct in

15    assuming that at the time you were doing your

16    report, you weren't looking for anything incriminating,

17    correct?

18        A    Correct.

19        Q    You were looking for a missing person,

20    correct?

21        A    Correct.

22        Q    And you believed them, correct?

23        MR. MURPHY:  Objection, Judge, as to what

24    the Officer believed.

1409

1      THE COURT:  Sustained.

2      MS. PLACEK:  Q  Let me ask you something,

3   Officer.

4          When you say your memory is exhausted,

5   am I correct in saying that quite frankly in

6   conducting the investigation you showed them

7   what appeared to be a true and accurate picture

8   of a person by the name of Denise Johnson; correct?

9      THE WITNESS:  A  True.

10      Q   And as a matter of fact, they said that

11   they saw her, correct?

12      A   That's true.

13      Q   And they said that they saw her,

14   according to your report, in several areas;

15   correct?

16      A   Correct.

17      Q   They not only saw her in several areas,

18   but they saw her in several areas on August 2nd,

19   correct?

20      A   That's what they told me.

21      Q   And they said that they saw her on a

22   specific time, correct?  At approximately 1400 hours,

23   correct?

24      A   Correct.

1        Q    And that is all you cared to ask,

2    correct, or that's all you remember you asked?

3        A    That's all I remember I asked.

4        Q    So as far as anything else, you're

5    speculating, correct?

6        MR. MURPHY:  Objection.

7        THE COURT:  Sustained.

8        MS. PLACEK:  Q  Let me ask you this, Officer.

9             The State's Attorney asked you if you

10   ever saw those women again.  You wouldn't even

11   know if you saw those women again, is that correct?

12       THE WITNESS:  A  That is true.

13       Q    And you knew, or rather that two

14   Chicago Police Departments knew that on August 8th

15   this Defendant was in custody, correct?

16       MR. MURPHY:  Objection.

17       MS. PLACEK:  Imputed knowledge, Judge.

18       MR. MURPHY:  This is the day before, Judge.

19       THE COURT:  I understand.  I will allow him

20   to answer.

21       MS. PLACEK:  On August 8th you knew

22   this defendant was in custody, correct?

23       THE WITNESS:  A  I subsequently learned

24   that somebody was in custody and charged with

1   this girl's murder.  When I learned that information

2   I couldn't tell you.

3        Q    Did you ever go back to the address

4   where these two women resided in an attempt to

5   find out their identity after you found out that

6   somebody was in custody on the murder?

7        A    No.

8        Q    Did you in fact know that the --

9   strike that.

10        You subsequently learned that the

11   person in custody on the murder was charged

12   under a time when these two women saw this person

13   alive, correct?

14        MR. MURPHY:  Objection, Judge.

15        THE COURT:  Sustained.

16        MS. PLACEK:  Q  Officer, did you ever make

17   any attempt after that -- strike that.

18        Since that August 7th date, did you

19   ever return to that ten five three seven South

20   State address to find out the identity of those

21   women?

22        THE WITNESS:  A  No.

23        MR. MURPHY:  Objection. Asked and answered.

24        THE COURT:  Answer given.

1412

1    MS. PLACEK:  Q  When you were asked whether

2    those two women were in the courtroom, quite

3    frankly you wouldn't know whether one or all of

4    them by facial --

5        MR. MURPHY:  Objection.

6        THE COURT:  Sustained.

7        MS. PLACEK:  Q  Am I correct in assuming as

8    you sit there the only thing you remember about

9    this is that the women were Black and female?

10       THE WITNESS:  A  Correct.

11       Q    Am I correct in assuming that in fact

12   you took no action after that August 2nd, 1988

13   date to investigate this case further, correct?

14       MR. MURPHY:  Objection.

15       THE COURT:  Sustained.

16       MS. PLACEK:  Q  Am I correct that you in

17   fact delivered this information and passed it

18   on to your brother police officers?

19       MR. MURPHY:  Objection.

20       THE COURT:  Sustained.

21       MS. PLACEK:  That's all, Judge.

22       THE COURT:  Anything further?

23       MR. MURPHY:  No, Judge.

24       THE COURT:  Do you have anything to further

1    offer on this theory?

2         MS. PLACE:  No, Judge.  As we pointed out with

3    our Brady material, the Officer had a faulty memory --

4         MR. MURPHY:  Objection.

5         THE COURT:  Sustained.

6         MS. PLACEK:  Judge, we are blocked by the

7    Chicago Police Department.  That's why we're

8    claiming prejudice; except we would ask the Court

9    to take judicial notice of the Bill of Particulars.

10        THE COURT:  It's quite apparent, was apparent

11   in the judgment that the conversation that this

12   Officer had with the two unidentified Black females

13   on August 2nd -- strike that -- August 7th, took

14   place and he received the information that is

15   reciged in his police report, which information,

16   without anything further, is classic every day

17   garden variety, home grown hearsay, and it's not

18   admissible in a criminal trial.

19        What I was looking for, and I think

20   it narrows exception enunciated by the Supreme

21   Court in the intent of due process, there are

22   many other exceptions to the hearsay rule,

23   all of which are bottomed on conditions which

24   society, through the courts, through the legislators,

1  has determined important indicia of reliability.

2  When there is no society rule built into the

3  rules of evidence, that yet does not preclude

4  the admissibility of otherwise hearsay evidence.

5  But it does require the proponent to develop

6  indicia of reliability.  And It argues not to

7  suggest that the Chicago Police Department are

8  frustrated, the ability to discover that indicia

9  of reliability, and I'm not certain that it's

10  even a fair accusation.  As a matter of fact,

11  from the evidence that I heard, it's not fair

12  to subscribe that motivation to anybody in this

13  case.  This Officer, perhaps had it been I or

14  someone else, might have jotted down names and

15  addresses, age, relationship, and some other

16  things and perhaps his knowledge of the circum-

17  stances had been greater, he might have.

18  But whatever he did does not impune this

19  situation with any indicia of reliability.

20         To say that he didn't do it in order

21  to avoid giving breath to indicia of reliability

22  is pure, absolute speculation.

23         MS. PLACEK:  That's not our argument.

24         THE COURT:  I know, Ms. Placek.  Whatever

1    the argument is, it cannot possibly make an argument

2    that impunes this situation with indicia of reliab-

3    ility.  To make that otherwise hearsay conversation

4    that this Officer had with those two unidentified

5    women admissible as substantive evidence.  Accordingly

6    the conversations that he had, which are fully

7    explored in this report, not only in this hearing,

8    not only in the so-called Brady hearing that was

9    conducted prior to the commencement of this trial,

10   but in his examination prior to our receiving the

11   circumstances of the conversation have been fully

12   explored, and the Court rules that the contents

13   of the conversation is not admissible in this

14   Defendant's trial.

15       MS. PLACEK:  If it pleases the Court, there

16   was one question contained within the transcript.

17   There was a question with the -- not the conver-

18   sation, but as to acting on information where he

19   spoke he had information involving, and that's why

20   he took certain actions.  I believe that that was

21   one of the last questions before we took the break.

22   The question dealt with, and I believe MR. Lufrano

23   stated it wasn't being offered for the truth of

24   the matter asserted, just to show action.  I would

29 ·

1    ask that the Court strike that.

2         THE COURT:  The record clearly shows that he

3    had a conversation, and as a result of it he and

4    Mrs. Fields toured the neighborhood looking

5    for the deceased in this case, I would presume,

6    and that's in the evidence.  That is in the

7    evidence and in a proper fashion so it stands.

8         MS. PLACEK:  That's the only thing that I

9    wanted to know, Judge.  I apologize.

10        THE COURT:  We'll go back to the trial of

11   this case.

12              Do you have any further questions of this

13   witness?

14        MS. PLACEK:  If I might have a moment.  As

15   long as I know that question is still in

16   existence.

17        THE COURT:  Ms. Placek, you have but a moment.

18   We are going to complete the examination of this

19   witness.

20        MS. PLACEK:  I understand.

21        Q    When you talked to Mrs. Fields

22   concerning the hobbies of Denise Johnson, did

23   she make an answer?

24        MR. MURPHY:  Objection, Judge.

1    THE COURT:  Overruled.

2    MS. PLACEK:  Q  Did she make an answer?

3    MR. MURPHY:  Judge, there has been no testimony

4  of this Officer, that he had talked to this woman

5  about Denise Johnson's hobbies.

6    MS. PLACEK:  I'm asking --

7    MR. MURPHY:  Assumes a fact not in evidence.

8    THE COURT:  Sustained.

9    MS. PLACEK:  Q  Did you ask Mrs. Fields about

10  Denise Johnson?

11    THE WITNESS:  A  Yes.

12    Q    Did you ask whether she had any hobbies?

13    A    I can't recall.

14    Q    If she said she had any hobbies, would

15  you have put it down in your report?

16    MR. MURPHY:  Objection.

17    THE COURT:  Sustained.

18    MS. PLACEK:  Q  Is your memory exhausted as

19  to that point?

20    THE WITNESS:  A  As to whether or not she had

21  hobbies?

22    Q    Yes.

23    A    Yes.

24    Q    Would anything refresh your memory?

1          A      Possibly my report.

2          Q      I show you Defendant's Exhibit Number 7.

3    Is your memory in fact refreshed?

4          A      Yes, it is.

5          Q      As a matter of fact, you found out that

6    Denise Johnson had no hobbies; correct?

7          MR. MURPHY:  Objection, Judge.

8          THE COURT:  Sustained.

9          MS. PLACEK:  Q  Do you remember asking that

10   question?

11         THE WITNESS:  No, I don't remember that

12   question.  Generally that type of question is

13   asked as preliminary questioning by the beat

14   officer.

15         Q      You filled in nothing in your report

16   as to hobbies, interest, et cetera?

17         MR. MURPHY:  Objection.

18         THE COURT:  Sustained.

19         MS. PLACEK:  Q  Let me ask you this, Officer.

20              You had no idea when you called

21   Mrs. Fields whether or not other Chicago

22   Police Officers had called her before, correct?

23         THE WITNESS:  A  I did not know whether

24   or not other police officers were called?

1      Q     Yes.

2      A     I know other officers in my office had

3   investigated this case.

4      Q     And had called her, possibly?

5      A     Yes.

6      Q     And possibly even told her of other

7   sightings?

8      MR. MURPHY:  Objection.

9      THE COURT:  Objection sustained.

10     MS. PLACEK:  Q  Do you know what those other

11  officers might or might not have said to her

12  because you weren't present prior to the August

13  7th date?

14     THE WITNESS:  A  That is correct.

15     Q     By the way, you did use other infor-

16  mation, Officer Matkovich and Officer Blackman's

17  report in your information, correct, if you

18  remember?

19     MR. MURPHY:  I object.  That has been

20  asked and answered.

21     THE COURT:  Sustained.

22     MS. PLACEK:  Q  And you were looking for

23  a run-away, is that correct?

24     MR. MURPHY:  Objection.

1    THE COURT:  Sustained.

2    MS. PLACEK:  Am I allowed to ask that --

3    THE COURT:  You have asked it a dozen different

4    times.

5    MS. PLACEK:  Well, maybe I want an answer.

6    THE COURT:  I think he answered it.

7        Objection sustained.

8    MS. PLACEK:  No further questions.

9    THE COURT:  Do you care to cross examine

10   this witness?

11   MR. MURPHY:  No, Judge, I have no questions.

12   THE COURT:  Thank you, Officer.  You may step

13   down.

14               (Witness Excused.)

15   THE COURT:  We are going to recess the trial

16   of this case.

17        How many more witnesses do you plan on

18   calling?

19   MS. PLACEK:  We have one coming from out of

20   town, Judge.

21   THE COURT:  When?

22   MS. PLACEK:  She needs seven days notice.

23   THE COURT:  How about April 16th?

24   MS. PLACEK:  Fine.

1        THE COURT:   Order of Court, April 16.

2                               (Which were all the

3                               proceedings had in

4                               the above-entitled

5                               cause on this date.)

1   STATE OF ILLINOIS     )
                          )   SS:
2   COUNTY OF C O O K     )

3              IN THE CIRCUIT COURT OF COOK COUNTY
               COUNTY DEPARTMENT-CRIMINAL DIVISION
4
    THE PEOPLE OF THE        )
5   STATE OF ILLINOIS        )
                             )
6        VS                  )   No.  88 CR 12517
                             )
7   JEROME HENDRICKS         )   Charge:  MURDER

8                      BENCH TRIAL

9              BE IT REMEMBERED that this cause

10  came on for trial before the Honorable LEO E. HOLT, on

11  the 16th day of April, A.D., 1991.

12  PRESENT:

13          HON. JACK O'MALLEY,
                State's Attorney of Cook County, by:
14          MR. JOHN MURPHY,
                Assistant State's Attorney,
15              appeared on behalf of the People;

16

17          MR. RANDOLPH STONE,
                Public Defender of Cook County, by
18          MR. VINCENT LUFRANO and
            MS. MARIJANE PLACEK,
19              Assistant Public Defenders,
                Appeared on behalf of the Defendant.

20

21

22

23  JANYCE W. BOOTH, CSR
    Official Shorthand Reporter
24  Criminal Division - Markham

                    **1423**

1          THE CLERK:  Sheet 1 line 28.  Jerome Hendricks.

2          THE COURT:  Both sides are ready?

3          MR. LUFRANO:  Yes, Your Honor.

4          THE COURT:  Call your witness, defense.

5          MR. LUFRANO:  Your Honor, we would call Officer

6   Grzyb.

7                                        (Witness sworn)

8          THE COURT:  That microphone is on.  If you will

9   pull it over in front of you, speak directly into, keep

10  your voice up, we'll all hear you.  You made proceed.

11                  D A N   G R Z Y B,

12  called as a witness on behalf of the People of the

13  State of Illinois, being first duly sworn, was examined

14  and testified as follows:

15                  DIRECT EXAMINATION

16                  BY

17                  MR. LUFRANO:

18      Q.    Good morning.  Would you state your name

19  and occupation?

20      A.    Youth Officer Dan Grzyb, Chicago Police

21  Department.

22          THE COURT:  Please spell your name?

23          THE WITNESS:  G-r-z-y-b.

24

                      **1421**

2

1    BY MR. LUFRANO:

2          Q.    Sir, were you so employed on August 3,

3    1988?

4          A.    Yes, I was.

5          Q.    What was your assignment on that date?

6          A.    I was assigned to do a follow-up

7    investigation on a 12-year-old missing person.

8          Q.    And in the course of that investigation,

9    you talked with Estelle Fields?

10         A.    Yes.

11         Q.    And have you reviewed your report as to

12   that conversation?

13         A.    Yes.

14         Q.    Now do you remember what the interests

15   were?

16         A.    I'm sorry.  I don't understand.

17         Q.    You were told what the interests of the

18   missing girl were.  Do you remember that?

19         A.    No.

20         Q.    Would anything refresh your recollection?

21         A.    Yes.

22         Q.    I show you what is marked as Defendant's

23   Exhibit A.  Do you recognize what that is?

24         A.    You are talking about the top line.

3

1          Q.     What this report is?

2          A.     Yes.

3          Q.     What is that.

4          MR. CASSIDY:   Objection.

5          THE COURT:  What's the basis of your objection?

6          MR. CASSIDY:  I believe it's calls for

7     impeachment.

8          THE COURT:  I believe he's asking the officer if

9     he knows what the document he's showing him is.

10         MR. CASSIDY:  I thought it was being used to

11    refresh the officer's recollection.

12         THE COURT:  That's right, and he asked if he

13    recognizes --

14         MR. CASSIDY:  What's the relevance of whether

15    the officer knows what the document is.

16         THE COURT:  The objection is sustained.  He can

17    use anything to refresh his recollection.

18    BY MR. LUFRANO:

19         Q.   Officer after reviewing this, do you

20    remember what you put down in your police report?

21         A.     I don't remember --

22         MR. CASSIDY:  Objection, Judge.

23         THE COURT:  The objection is sustained.

24

**1426**

1    BY MR. LUFRANO:

2         Q.   Now, you had a conversation with Estelle

3    Fields, and she told you that the interests of the lady

4    in question Denise Johnson was boys, correct?

5         A.   Wrong.  That is not correct.

6         Q.   Now, you made a police report out at the

7    time, correct?

8         A.   Correct.

9         Q.   And it was right after you had talked to

10   Estelle Fields, correct?

11        A.   Correct.

12        Q.   I show you what's been marked as Exhibit

13   A.  Would you indicate what that is?

14        A.   This information was taken from previous

15   reports.

16        Q.   Sir, would you just tell us what it is?

17        A.   I don't understand what you're asking me

18   here.

19        Q.   Sure you do.  This piece of paper

20   MR. CASSIDY:  Objection, Judge.

21   THE COURT:  Objection sustained.  Argumentative.

22   BY MR. LUFRANO:

23        Q.   Piece of paper marked Exhibit A.  What is

24   it?

5

1            MR. CASSIDY:  Objection.  No basis for this

2     exhibit to be identified by this witness.

3            MR. LUFRANO:  His prior recollection

4     regarding --

5            THE COURT:  Is he the author of that document?

6            MR. LUFRANO:  Yes, he is.

7            THE COURT:  You haven't brought that out.

8     Objection is overruled at this point.

9            THE WITNESS:  Ask the question.

10    BY MR. LUFRANO:

11           Q.    What is this sheet of paper?

12           A.    It's a follow-up missing person case

13    report.

14           Q.    Whose signature is down on the bottom?

15           A.    My signature.

16           Q.    You authorized this report, correct?

17           A.    Yes.

18           Q.    And under Item 32 where it says

19    "interests," what is written or typed there?

20           MR. CASSIDY:  Objection.

21           THE COURT:  Objection is sustained.

22    BY MR. LUFRANO:

23           Q.    Is there somewhere on this document that

24    you show the interests of the girl that you were

1   looking for?

2           MR. MURPHY:  Objection, Judge.

3           THE COURT:  The objection is sustained.

4   BY MR. LUFRANO:

5           Q.    Now, this report was written after

6   discussing the matter of Denise Johnson with Estelle

7   Fields, correct?

8           A.    Correct.

9           Q.    And this document includes the

10  conversation with Estelle Fields, correct?

11          MR. MURPHY:  Objection, Judge.

12          THE COURT:  No.  Overruled.

13          THE WITNESS:  Correct.

14  BY MR. LUFRANO:

15          Q.    And this is the notes reflecting the

16  content of that conversation, is that correct?

17          A.    That is not correct.

18          Q.    What is this?

19          A.    That is the face sheet of a missing person

20  investigation.  Information taken from prior reports.

21          Q.    And those prior reports included your

22  conversation with Estelle Fields, did it not?

23          A.    Not the prior reports.

24          Q.    Sir, on August 3rd, you talked to Estelle

1429

7

1    Fields?

2           A.    Yes.

3           Q.    Do you remember her telling you that young

4    Denise was interested in young men?

5           A.    She never told me that.

6           Q.    And she never told you about older men?

7           A.    Never.

8           Q.    Now, did she not tell you that Denise had

9    become a problem child?

10          A.    She did say that.

11          Q.    Did she indicate to you that the nature of

12   that problem was her hanging around and socializing

13   with older men?

14          A.    No.

15          Q.    Now, you reviewed the prior reports in

16   your discussing the matter with Estelle Fields, right?

17          A.    I reviewed a prior discussion with her,

18   yes.

19          Q.    Now, where did you go looking for Denise?

20          MR. MURPHY:  Objection, Judge.  Relevance.

21          THE COURT:  How is it relevant?

22          MS. PLACEK:  We are allowed to go in into the

23   habits they established in their prima facie case.

24          THE COURT:  How do they knowing anything about

1    her habits?

2            MS. PLACEK:  Because of the police follow up

3    this case, Judge.

4            THE COURT:  The objection is sustained.

5    BY MR. LUFRANO:

6            Q.    Now, you were not told that she had church

7    habits, correct?

8            A.    Correct.

9            Q.    You never went to any church choir or any

10   churches at all?

11           A.    No.

12           Q.    But you did run and look on the streets,

13   correct?

14           MR. MURPHY:  Objection, Judge.

15           THE COURT:  Objection is sustained.

16   BY MR. LUFRANO:

17           Q.    Well, what Mrs. Fields told you,

18   summarized, led you to look for this young lady on the

19   streets, right?

20           MR. MURPHY:  Objection.

21           THE COURT:  Objection sustained.

22   BY MR. LUFRANO:

23           Q.    You asked Mrs. Fields about hobbies and

24   interests of Denise, did you not?

**1431**

9

1    A.    No, I didn't.

2    Q.    Weren't you there to get information that

3    would help you look for Denise?

4    A.    Yes.

5    Q.    Now, you don't remember anything other

6    than what's in your report, do you?

7    A.    No, I don't.

8    Q.    And it's from the total circumstances that

9    is in your report that you operated from at that time,

10   isn't it?

11   A.    I don't understand the question.

12   Q.    Well, sir, wasn't your report there to

13   help you find Denise Johnson and officers behind you to

14   know what you had done on the case to help them find

15   Denise Johnson?

16   A.    That's correct.

17   Q.    And, in fact, you listed the conversation

18   with Estelle Fields?

19   A.    Yes.

20   Q.    And she indicated to the officers that the

21   interests of Denise Fields were boys?

22   MR. CASSIDY:  Objection, Judge.

23   THE COURT:  Objection sustained.

24   MR. LUFRANO:  No further questions.

1          THE COURT:  Cross.

2          MR. CASSIDY:  No questions, Your Honor.

3          THE COURT:  Thank you, sir.  You may step down.

4                    (Witness excused)

5          THE COURT:  Call your next witness.

6          MR. LUFRANO:  We would call Officer Padgurskis.

7                    (Witness sworn)

8          D O H L I A   P A D G U R S K I S,

9     called as a witness on behalf of the People of the

10    State of Illinois, being first duly sworn, was examined

11    and testified as follows:

12                    DIRECT EXAMINATION

13                    BY

14                    MR. LUFRANO:

15         Q.    Officer, would you state your name and

16    occupation please?

17         A.    My name is Dohlia Padgurskis.  I'm a

18    sergeant with the Chicago Police Department.

19         THE COURT:  Spell your last name?

20         THE WITNESS:  P-a-d-g-u-r-s-k-i-s.

21    BY MR. LUFRANO:

22         Q.    Calling your attention to August 3, 1988,

23    were you so employed?

24         A.    Yes.  I wasn't a sergeant at the time.  I

**1433**

1      was a youth officer assigned to Area 2 youth.

2          Q.    What were your duties as a youth officer

3      assigned to Area 2?

4          A.    My duties were processing any arrests of

5      juveniles, doing investigations of missing persons, and

6      hotline investigations.

7          Q.    Calling your attention to August 3, 1988,

8      do you remember what your duties were on that date?

9          A.    I don't recall exactly what car I was

10     assigned to, but I was doing the normal investigations.

11     I had missing investigations to do as well as other

12     district assignments.

13         Q.    Did you review your reports concerning

14     Denise Johnson before testifying this morning?

15         A.    Yes, I did.

16         Q.    Now, did you have occasion on August 3rd

17     to have a conversation with Estelle Fields?

18         A.    Yes, I did.

19         Q.    And in that conversation did she not tell

20     you that Denise had a habit of socializing frequently

21     with older men or boys in their late teens?

22         MR. MURPHY:  Objection, Judge.

23         THE COURT:  Basis?

24         MR. MURPHY:  No foundation.

**1434**

1          THE COURT:  The objection is sustained --

2          MR. MURPHY:  Your Honor, I withdraw that

3     objection.

4          THE COURT:  Proceed.

5     BY MR. LUFRANO:

6          Q.    Did you have such a conversation with Miss

7     Fields?

8          A.    Yes, I did.

9          Q.    And did she tell you that?

10          A.    As part of the general statement, yes.

11          Q.    The other part of the statement she had

12     indicated to you that Denise had become a problem

13     child, did she not?

14          A.    She didn't tell me that, no.

15          Q.    Did she indicate to you that she had in

16     the past gone over and stayed with her grandfather

17     without authorization?

18          A.    Yes.

19          Q.    And that Estelle Fields disapproved of

20     that totally?

21          A.    I don't recall her saying that.

22          MR. MURPHY:  Objection, Judge.  That's not

23     impeachment.

24          THE COURT:  The objection is sustained.

**1435**

13

1          MR. MURPHY:  I would ask that be stricken.

2          THE COURT:  It's stricken.

3  BY MR. LUFRANO:

4        Q.    Well, did she indicate to you that Mr.

5  Hardy had done other things against the wishes of

6  Estelle Fields which concerned Denise?

7          MR. MURPHY:  Objection.

8          THE COURT:  Objection is sustained.

9  BY MR. LUFRANO:

10       Q.    Did she not specifically say in your

11  conversation and tell you that Mr. Hardy has previously

12  assisted Denise against her wishes?

13         MR. MURPHY:  Objection.

14         THE COURT:  Sustained.

15  BY MR. LUFRANO:

16       Q.    And did she not tell you that she had run

17  away on prior occasions?

18       A.    No, sir.

19       Q.    Now, you reviewed the other reports in

20  this matter prior to talking with Mrs. Fields, correct?

21       A.    Correct.

22       Q.    And there was nowhere in the prior reports

23  which indicated she had a church interest, correct?

24        MR. CASSIDY:  Objection, Judge.

**1436**

14

1           THE COURT:  The objection is sustained.

2   BY MR. LUFRANO:

3           Q.    You had no information to lead you to

4   believe that you would find Denise Johnson in a church

5   choir?

6           MR. MURPHY:  Objection.

7           THE COURT:  Sustained.

8   BY MR. LUFRANO:

9           Q.    When you talked to Miss Fields, she never

10  told you that Denise had a church interest, correct?

11          MR. MURPHY:  Objection.

12          THE COURT:  Sustained.

13          MR. LUFRANO:  There was testimony in that regard

14  by Miss Fields, Judge.

15          THE COURT:  Objection is sustained.

16  BY MR. LUFRANO:

17          Q.    Now other than freely socializing --

18          THE COURT:  Mr. Lufrano, I'm going to reverse

19  that.  The objection is overruled.

20          MR. LUFRANO:  Thank you, Judge.

21          MR. LUFRANO:  Would you read the question back

22  as to the church.

23          (Record read back by the court reporter)

24          MR. MURPHY:  Judge, if I may, I don't believe

1      the foundation has been made.

2              THE COURT:  Let's hear the question.

3                  (Record read back by court reporter)

4              THE COURT:  The objection is overruled.

5              MR. MURPHY:  Judge, with respect to this

6      particular officer, I don't think the defense has laid

7      a foundation for impeachment.

8              THE COURT:  In what respect?

9              MR. MURPHY:  Well, I believe that the witness,

10     Estelle Fields, was asked questions about what the

11     victim's interests were, and she answered that

12     question.  I don't believe that she was asked -- maybe

13     my recollection is incorrect and my notes are

14     incorrect, but I don't believe she was asked whether

15     she told this particular police officer that her

16     interests were at church choir.

17             THE COURT:  Miss Fields testified she could not

18     recall conversations with any police officer had on

19     August 3, 1988.  That's what I have and that's what the

20     testimony was which opens up the conversation that she

21     had with this police officer if they're relevant and

22     contrary to that assertion.  The objection is

23     overruled.

24             MR. MURPHY:  Judge, they're attempting to

**1438**

16

1    impeach the witness by omission, and there's not even

2    any evidence to use that question by this police

3    officer.

4         THE COURT:  This police officer has just given

5    us the indication that she had a conversation with

6    Estelle Fields.  Estelle Fields has denied recall of

7    any part of the conversation.  After that, the defense

8    is foreclosed from going any further and need not go

9    further to perfect a basis for impeachment.  Once a

10   witness says I have no recollection of the entirety of

11   the conversation, what else does one have to do in

12   order to lay a proper foundation to impeach?

13        MR. MURPHY:  But they are trying to impeach her

14   by omission with respect to a question that's never

15   been asked, Judge.

16        THE COURT:  No, no.  The objection is overruled.

17   BY MR. LUFRANO:

18        Q.    Officer, would you answer the question?

19        A.    Can you repeat it one more time?

20              (Record read back by the court reporter)

21        THE WITNESS:  Correct.

22   BY MR. LUFRANO:

23        Q.    And when you left Mrs. Fields, the

24   entirety of that conversation, summary, caused you to

**1439**

1   look for Denise on the streets, correct?

2          MR. MURPHY:  Objection.

3          THE COURT:  The objection is sustained, and also

4   the objection to the previous question regarding Mrs.

5   Fields telling her about the church connection is also

6   sustained.  The answer of the -- the question and the

7   answer is stricken.

8   BY MR. LUFRANO:

9          Q.    Now, she did tell you about the free

10  association with older men, right?

11         A.    That wasn't the way the response was

12  stated.

13         Q.    Well, that is how you wrote it down, is it

14  not?

15         MR. CASSIDY:  Objection, Judge.

16         THE COURT:  The objection is sustained.

17  BY MR. LUFRANO:

18         Q.    Well, did you make a police report after

19  talking with Miss Fields?

20         A.    Yes, I did.

21         Q.    I show you what's marked as Defense

22  Exhibit B for identification.  Do you recognize this?

23         MR. CASSIDY:  Objection, Judge.  There is no

24  reason to be showing the officer that.

1          THE COURT:  Objection is sustained.

2    BY MR. LUFRANO:

3          Q.    Well, officer, after talking to Mrs.

4    Fields and you had made your report, did you not

5    include in that report the conversation that you had

6    with Mrs. Fields?

7          A.    A summary of the conversation.

8          Q.    Right.  Do you remember that a summary of

9    that conversation was summarized that Mrs. Fields

10   explained that Denise has a habit of socializing freely

11   with older men?

12         MR. CASSIDY:  Objection, Your Honor.

13         THE COURT:  Sustained.

14         MR. LUFRANO:  Your Honor, we are talking about a

15   conversation.  This is past recollection recorded by

16   this officer.

17         THE COURT:  The objection is sustained.

18   BY MR. LUFRANO:

19         Q.    Officer, did you make a report after that

20   conversation?

21         A.    Yes, I did.

22         Q.    Will the report refresh your recollection

23   as to what occurred during that conversation?

24         MR. MURPHY:  Objection, Judge.

**1441**

19

1    THE COURT:  The objection is sustained.

2  BY MR. LUFRANO:

3    Q.   Do you remember why you summarized the

4  conversation with the words "Denise freely associated

5  or socializing with older men."

6    MR. CASSIDY:  Objection, Judge.

7    THE COURT:  Objection is sustained.

8  BY MR. LUFRANO:

9    Q.   After talking with Miss Fields, weren't

10  you informed that, in fact, Denise freely socialized

11  with older men?

12    A.   That's taken out of context.  There is a

13  continuation to that sentence.

14    Q.   "Or with boys in their late teens."

15    A.   Right.

16    Q.   So Mrs. Fields told you that, did she not?

17    A.   As a portion of her conversation.

18    Q.   But in that portion she was talking about

19  more than one older man, correct?

20    A.   Not the impression I got.

21    Q.   Well, isn't men in the plural?

22    A.   Yes.

23    Q.   And isn't boys in the plural?

24    MR. MURPHY:  Objection, Judge.

**1442**

20

1           THE COURT:  The objection is sustained.

2    BY MR. LUFRANO:

3           Q.    Well, your recollection now is that we

4    want to limit this to one man, right?

5           MR. CASSIDY:  Objection, Judge.  Argumentative.

6           THE COURT:  Sustained.

7    BY MR. LUFRANO:

8           Q.    At the time you talked to her and when you

9    proceeded on your investigation of Denise as a missing

10   person, wasn't it in your mind that you were looking

11   for a young lady who was associating freely with older

12   men and older boys?

13          MR. CASSIDY:  Objection, Judge.

14          THE COURT:  Sustained.

15   BY MR. LUFRANO:

16          Q.    Where did you look for her?

17          A.    I didn't go out and look for her that

18   night.

19          Q.    Where did you direct other people to look

20   for her?

21          MR. CASSIDY:  Objection.

22          THE COURT:  Sustained.

23   BY MR. LUFRANO:

24          Q.    Are you telling us that your summary of

21                        **1443**

1    "socializing freely with older men or boys in their

2    late teens" means just one person?

3              MR. CASSIDY:  Objection, Judge.

4              THE COURT:  Sustained.

5    BY MR. LUFRANO:

6         Q.    Well, that's your summary, is it not?

7              MR. CASSIDY:  Objection.

8              THE COURT:  Sustained.

9    BY MR. LUFRANO:

10        Q.    Do you remember anything else from the

11   conversation, ma'am?

12        A.    Yes.

13        Q.    Does it concern your summary of

14   socializing freely with older men?

15             MR. CASSIDY:  Objection.

16             THE COURT:  Sustained.

17   BY MR. LUFRANO:

18        Q.    Was that helped to be removed from your

19   memory by anyone.

20             MR. CASSIDY:  Objection.  Form of the question.

21             THE COURT:  If the witness understands -- the

22   objection is sustained.

23   BY MR. LUFRANO:

24        Q.    How long have you been a police officer?

**1444**

22

1          A.     13 years.

2          MR. LUFRANO:  No further questions.

3          THE COURT:  Cross.

4                         CROSS EXAMINATION

5                         BY

6                         MR. CASSIDY:

7          Q.     Miss Fields told you that Denise

8     socializes not only with men and boys but also with

9     girls, is that correct?

10         A.     Correct.

11         Q.     And she never told you that she was

12    socializing in a sexual manner, did she?

13         A.     No.

14         Q.     As a matter of fact, she told you that

15    Denise was not sexually active, isn't that correct?

16         A.     Correct.

17         MR. CASSIDY:  I have no further questions.

18                        REDIRECT EXAMINATION

19                        BY

20                        MR. LUFRANO:

21         Q.     Now you didn't write anything in your

22    report about the girls, did you?

23         MR. CASSIDY:  Objection, Judge.

24         MR. LUFRANO:  He opened the door, Judge.

**1445**

23

1          THE COURT:  Objection is overruled.

2          MR. CASSIDY:  Your Honor, I didn't open any door

3     about any report, Judge.

4          MR. LUFRANO:  Intentionally.

5          THE COURT:  Once you've opened the door, he has

6     a right to impeach on that area if he can.  The

7     objection is overruled.

8     BY MR. LUFRANO:

9          Q.    Nothing in your report about the girls,

10    correct?

11         A.    Correct.

12         Q.    And nothing in your investigation or

13    anyone else's investigation about her association with

14    girls?

15         MR. CASSIDY:  Objection, Judge.

16         THE COURT:  Overruled.

17         MR. CASSIDY:  Anyone else's investigation?

18    You're going to let the officer comment upon that.

19         .THE COURT:  Objection is sustained.

20    BY MR. LUFRANO:

21         Q.    Well, you didn't direct anybody to go look

22    at any girlfriends of hers, did you?

23         A.    I have no authority to direct an

24    investigation.

**1446**

1          Q.    You didn't write anything in your reports

2     that someone else would rely on looking for other women

3     that she knew, right?

4               MR. MURPHY:  Objection, Judge.

5               THE COURT:  No.  The objection is overruled.

6               MR. MURPHY:  Judge, asked and answered.

7               THE COURT:  Overruled.

8               MR. LUFRANO:  Can you repeat that.

9                    (Record read back by court reporter)

10              THE WITNESS:  Correct.

11    BY MR. LUFRANO:

12         Q.    Now, "freely socializing," why did you use

13    those words.

14              MR. CASSIDY:  Objection, Judge -- I withdraw the

15    objection.

16              THE COURT:  You may answer.

17              THE WITNESS:  Statements by Mrs. Fields were

18    made in a very general term, and I needed some kind of

19    term that would indicate a general kind of socializing.

20    BY MR. LUFRANO:

21         Q.    Right.

22               She wasn't sure if she was having sexual

23    relation, right?

24         A.    I couldn't answer that.

**1447**

25

1      Q.    Well, when you got done talking to her,

2   you weren't sure if she had sexual relations with these

3   older men and boys, correct?

4      MR. CASSIDY:  Objection.

5      THE COURT:  Objection is sustained.

6   BY MR. LUFRANO:

7      Q.    In fact, when you went looking for her,

8   you were looking for her on the basis that she might be

9   having sexual relations with older men and older boys?

10     MR. CASSIDY:  Objection.

11     THE COURT:  Objection sustained.

12     MR. LUFRANO:  Her state of mind, Judge.

13     THE COURT:  The objection is sustained.

14   BY MR. LUFRANO:

15     Q.    Now, there is nowhere in your report to

16   indicate that Denise was not sexually active, correct?

17     A.    There is no mention either way.

18     MR. LUFRANO:  No further questions.

19     MR. CASSIDY:  Nothing, Judge.

20     THE COURT:  Thank you, ma'am, you may step down.

21               (Witness excused)

22     THE COURT:  Call your next witness.

23     MS. PLACEK:  Judge, because these are the only

24   two witnesses for -- as I indicated, because these are

**1448**

26

1    counsel that these are relevant witnesses, and, but for

2    inadvertence and perhaps oversight and the unfortunate

3    circumstance of a witness having met with the accident

4    or unfortunate occurrence that prevented her from being

5    here, those witnesses would be available to testify.

6         On that basis, the Court has determined

7    that in the interest of justice a continuance on behalf

8    of the Defendant should be granted and is granted.  May

9    21st.

10        MR. CASSIDY:  Judge, will the record reflect on

11   the last court date counsel said she had one witness

12   who could not come to court.  The other witness who

13   received the gunshot wound, Paulette Townsend's name

14   never came up, and that witness was not here because of

15   the Defendant's last court date and that witness is not

16   here today.

17             (WHICH WERE ALL THE PROCEEDINGS HAD)

18

19

20

21

22

23

24

**1450**

28

```
1  1        STATE OF ILLINOIS   )
                                )   SS:
      2     COUNTY OF C O O K   )

      3            IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
                   MUNICIPAL DIVISION - FOURTH MUNICIPAL DISTRICT
      4
            THE PEOPLE OF THE              )
      5     STATE OF ILLINOIS,             )
                                           )
      6                     Plaintiff,     )
                                           )   NO. 88 CR 12517
      7        -vs-                        )
                                           )   MURDER, etc.
      8     JEROME HENDRICKS               )
                                           )
      9                     Defendant.     )

     10
                   REPORT OF PROCEEDINGS had in the
     11
            hearing before the Honorable LEO E. HOLT,
     12
            Judge of said Court, on the 29th
     13
            day of May, A.D. 1991.
     14
            A P P E A R A N C E S:
     15
                   HONORABLE JACK O'MALLEY,
     16             State's Attorney of Cook County, by:
                    MR. JOHN MURPHY, and
     17             MR. SCOTT CASSIDY,
                    Assistant State's Attorneys,
     18
                        appeared on behalf of the People;
     19
                    HONORABLE RANDOLPH STONE,
     20             Public Defender of Cook County, by:
                    MS. MARIJANE PLACEK, and
     21             MR. VINCENT LUFRANO,
                    Assistant Public Defender,
     22
                        appeared on behalf of the Defendant.
     23
            Clarice Reed, C.S.R.
     24     Official Court Reporter
```

1

2

1              THE CLERK:  People vs. Jerome Hendricks.

2              THE COURT:  Both sides ready?

3              MS. PLACEK:  Yes.

4              THE COURT:  Call your next witness.

5              MS. PLACEK:  In this particular matter as I

6       discussed previously with the state's attorney, we

7       would have intent to call a ~~Court Witness~~ as an

8       ~~offer of proof, judge.~~

9                    We would be submitting to the court what

10      is purported to be a general progress report of a

11      statement made by her on that evening in this matter.

12                   In this matter, judge, as the court

13      knows -- and I apologize for my voice.  I recently had

14      oral surgery.  And I sound rather interesting at least

15      to my own ear.

16                   But the point being that this was the

17      out-of-state witness for the purpose of testimony that

18      we were going to call.  A young lady in the audience

19      currently, Denise Porter who is present in court and

20      willing to take the oath, was attempting to assist us

21      in getting the young lady who since moved out of

22      state.

23                   All was fine except for approximately two

24      and a half weeks ago in attempting to arrange travel,

2

1    Miss Porter stated to me that she in a conversation

2    between herself, the proposed witness, and the

3    proposed witness' sister -- this was a telephonic

4    conversation -- stated to me that the witness stated

5    that she was threatened and would not come up to the

6    City of Chicago and would not testify before this

7    court.

8           For this reason, judge, this is the offer

9    of proof.  If the court wishes, Mrs. Porter is present

10    in court and will take the oath in regard, in the

11    regard of the conversation with Ms. Wittertake.

12           The persons or person who made the

13    alleged threats against her life was not disclosed

14    through any kind of questioning.

15    THE COURT:  You are offering this document as

16    an offer of proof.

17    MS. PLACEK:  As to what this witness would have

18    testified to, as to the statement contained in the

19    general prosecuting report, judge.

20    THE COURT:  State?

21    MR. MURPHY:  Judge, from what I understand, the

22    defendant is not asking for a continuance.  The

23    defendant is asking to just make an offer of proof as

24    to what this witness' testimony would be.

**1453**

3

2

1           MS. PLACEK:  That's correct.

2           MR. MURPHY:  Is that correct?

3           MS. PLACEK:  That's correct.

4           MR. MURPHY:  My only question would be the form

5      in which it's being made.  I don't believe I have a

6      right to oppose an offer of proof.  I believe that can

7      be made at any time by any party.

8                However, I don't really understand

9      exactly what is being offered.  I know there was a

10     report there, what form that's going to take.  And for

11     that matter, what purpose it would serve because the

12     witness is not here.  The court has given numerous

13     continuances to bring this witness in.  I can't

14     understand what point there is even to make an offer

15     of proof.

16           THE COURT:  I take it this document is being

17     offered to prove that if the witness were to take the

18     stand, that she would testify on -- I presume "last

19     Thursday" must mean August -- what date?

20           MS. PLACEK:  August 4.

21           THE COURT:  On August 4.

22           MS. PLACEK:  Either three or four, according to

23     the statement she gave me originally.

24           THE COURT:  Last Thursday I guess then would be

4

2     1     August 3 or 4 at about 11 o'clock at night, she saw

2     two men in the alley walk towards the front house and

3     then turn into the garage with a dull flashlight.

4     And the two men were black, ages unknown.

5     Both men were between five feet nine and six feet

6     tall.  The first man who was a male black wore a white

7     shirt.  And the rest of it I can't read very much.

8     But that's what it is being offered for.

9     MS. PLACEK:  For purposes of the record, judge,

10    the specific garage spoken of would, of course, be the

11    garage -- and I believe the counsel will assert to

12    this -- the garage where the body was found.  That's

13    what the questioning was about.

14    MR. MURPHY:  I never spoke to this witness.  I

15    would only be guessing what she is referring to.  I

16    really have no idea.

17    THE COURT:  That's what the document shows.

18    That's what I stated the offer of proof is.  And it

19    will be received and made a part of the record.

20    Anything further?

21    MR. MURPHY:  Judge, my only question is just so

22    the record is clear, I don't know what day Thursday

23    would fall on.

24    THE COURT:  The court can take judicial notice

1    of that.  I can't do it without a calendar.  But I can

2    take judicial notice of what date that was.  This

3    document is dated August 8.

4            MR. MURPHY:  For what it is worth, it would

5    have been the 4th.

6            MS. PLACEK:  That's what we stated, judge.

7            MR. MURPHY:  If that will clarify the record.

8            THE COURT:  Anything further?

9            MS. PLACEK:  No, judge.  With the presentation

10   of that, we rest.

11           THE COURT:  Defense rests.  State?

12           MS. PLACEK:  May I tell my witnesses they can

13   leave or stay, depending?

14           THE COURT:  Yes.

15           MS. PLACEK:  Thank you.

16           THE COURT:  State?

17           MR. MURPHY:  We have no witnesses in rebuttal.

18           THE COURT:  State rests in rebuttal.

19           THE COURT:  Both sides are ready for arguments?

20           MS. PLACEK:  Yes, judge.

21           THE COURT:  State?

22           MR. MURPHY:  Yes, judge, we are ready.  If I

23   can have just 30 seconds.

24               We are ready to proceed.  Your Honor, the

3

1        the state would waive opening argument and reserve

2        rebuttal.

3                THE COURT:  Mrs. Placek?

4                MS. PLACEK:  May we have one moment, judge?

5                THE COURT:  Surely.

6                MR. MURPHY:  I would ask for another moment

7        before we proceed any further.

8                MR. MURPHY:  Judge, I would like to make an

9        argument, if I may.

10               THE COURT:  You may proceed.

11               <u>CLOSING ARGUMENT ON BEHALF OF PLAINTIFF</u>

12               MR. MURPHY:  Your Honor, this case has been on

13       trial for the past five months, approximately.  And

14       the court has heard the state's case in chief during

15       the time period of the last -- approximately the last

16       two weeks of January of this year.

17               THE COURT:  This case started on February 7.

18               MR. MURPHY:  I believe this case started the

19       end of January.  That's my recollection.  I am sorry,

20       it was February 5, 1991.

21                   In any event, judge, this case has been

22       on trial before your Honor for a period of

23       approximately four months.  And your Honor has before

24       you evidence that you have heard some four months ago,

3

1          especially with regard to the state's case.

2                    Judge, you have before you a number of

3          charges.  One charge I would like to address

4          initially, and that is the charge of aggravated

5          criminal sexual assault based on the age of the

6          defendant and the age of the victim.

7                    I submit to the court that in this

8          particular -- with respect to this particular charge,

9          there could be absolutely no question whatsoever that

10         we have met our burden of proof.  The evidence is very

11         clear in this case that at the time of this offense,

12         the defendant was 17 years of age.  The evidence is

13         very clear in this case that at the time of this

14         offense, the victim was under the age of 13.

15                    And the evidence is very clear in this

16         case not only as a result of the corroborating

17         evidence, but the statement of the defendant that

18         there was sexual penetration.

19                    Regarding the other charges, judge,

20         specifically regarding the charge of first degree

21         murder, we are well aware that the evidence with

22         respect to those charges is circumstantial evidence.

23                    The bulk of the state's case is a

24         circumstantial case.  And we are also well aware,

8

**1458**

3

1    judge, of the standard that's applied in the courts

2    with respect to circumstantial evidence.  And that is

3    that in order to find the defendant guilty, the court

4    should or the trier of fact should be able to exclude

5    every reasonable theory of innocence.

6           Another factor that I'd like to point out

7    to the court to consider that standard and consider

8    the evidence in this particular case is the statement

9    of the defendant.  I submit to the court that in order

10    to find the defendant not guilty, the court would have

11    to conclude the defendant is completely -- was

12    completely truthful when he gave that statement that

13    he gave to the police.  Or at least substantially

14    truthful as to what occurred between him and Denise

15    Johnson.

16           And I submit to the court that the

17    defense is well aware that the truthfulness of his

18    statement is important with respect to this case and

19    they are aware of this at a very early stage in the

20    proceedings even before the trial in this case began.

21           Judge, when you apply the standard which

22    I have described, the defendant should be found

23    guilty.  If you are able to exclude every reasonable

24    theory of innocence, the operative word is reasonable.

9

3

1           And that's the word that should be and

2      the standard that should be applied when you consider

3      the evidence in this particular case.  In order to

4      believe what the defendant tells this court or tells

5      the police and this court heard, the court would have

6      to believe a set of circumstances, a set of

7      coincidences, and have to be able to make leaps in

8      logic which I submit are completely beyond belief.

9           Initially in the defendant's statement,

10      even to believe the beginning of the defendant's

11      statement, the court would have to believe that Denise

12      Johnson on August 1, 1988 was a willing participant in

13      a sexual act, a deviat sexual act with the defendant

14      on the garage floor of an abandoned garage next to the

15      store where the defendant lived.

16           In this particular case, not only in the

17      trial, but as I read the transcripts and the

18      memorandum that have been filed in this case, the

19      defendant has directly accused this twelve year old

20      girl of being the equivolent of a prostitute, a hoar,

21      or at least someone who is loose; or certainly has

22      made that inference about Denise Johnson.

23           And that's important to the defense case,

24      in their case.  Because the defendant in order to get

1450

4

1    to first base has to persuade this court that Denise

2    Johnson would willing go to this garage and go into

3    this garage, go down on the floor and have sex with

4    the defendant on the garage floor.

5            However, judge, that argument, that

6    allegation with respect to Denise Johnson is

7    contradicted by the evidence.  And if the court heard,

8    numerous questions were asked of witnesses by the

9    defense with respect to Denise Johnson's background.

10   And there was absolutely no evidence whatsoever to

11   support the allegation or the inference that the

12   defendant has tried to make about Denise Johnson.

13           To the contrary, the evidence in this

14   case shows or could be inferred that Denise Johnson

15   was an average typical twelve year old girl, that she

16   was not a runaway.  There is no evidence in this case

17   that she liked men in any abhorrent way or that she

18   had any sexual relations with men.

19           But when the court considers what the

20   defendant tried to do during this trial, and that is

21   plant a seed in the court's mind about who Denise

22   Johnson is and what she wanted, it is easy to

23   understand what the purpose of the defendant was.

24   Because that's the first step the defendant has to

11

4

1       take in order to persuade this court to what the

2       defendant told the police and the assistant state's

3       attorney, Anna Democopolous is true.

4               And even if you are willing to believe,

5       judge, what the defendant said about Denise Johnson is

6       true, even if you are willing to make that leap in

7       logic to buy what the defendant is alleging about

8       Denise Johnson, he asks you to go further.  Because

9       you have to go further to believe what he says.

10              And your Honor, as you consider

11      additionally what the defendant said in his statement,

12      I point to a number of cases which were cited in the

13      brief that we find in the motion for directed finding.

14      And those cases are, without having to go over them

15      again in detail, those cases stand for the proposition

16      generally that evidence is sufficient to support a

17      conviction.  And in many of those cases a conviction

18      for first degree murder, even where the defendant

19      denies committing the offense, but where the

20      defendant's admission or statement connects him enough

21      with the offense to support that conviction.

22              And I submit to the court that that's

23      what we have here in this case, along with the other

24      corroborating evidence.

4

1           Look at the factors.  Look at some of the

2      evidence that comes out through the defendant's

3      statement, what he asks this court to believe, the

4      stretch in logic that he asks this court to make.

5           The defendant in his statement asks this

6      court to believe that Denise Johnson, a girl who

7      didn't even live in this neighborhood, who was

8      actually baby-sitting for her cousin, led him, led him

9      to an abandoned garage next door to his house.

10          The defendant in his statement asked this

11     court to believe that she led him there.  And even

12     though she had rebuffed him earlier, that she led him

13     there for the purpose of having sex with him on the

14     garage floor.

15          And that in fact, the evidence in this

16     case showed that she was found on that same garage

17     floor in the same garage some eight days later.  The

18     defendant would have this court believe in his

19     statement that he had sex with her voluntarily and

20     that was all the contact he had with her on the very

21     same night that she disappeared from her family.

22          The defendant would have this court

23     believe that when he found Denise Johnson some three

24     or four days after she disappeared and at that time,

4

1          according to him, she was dead, that the shirt was

2          still over her neck in the same way as when he left

3          her.

4                    And that is in his statement, judge.  And your

5          Honor will have an opportunity to look at the

6          pictures, to look at the picture of Denise Johnson as

7          she was found with the her top actually tied around

8          her neck.  The top was tied.

9                    And the defendant, according to the

10         statement he made, said that that shirt was in the

11         same position as when he left her.  Why, according to

12         him, does he leave her in that garage with a shirt

13         tied around her neck?

14                   And why, coincidentally.  When he comes

15         back.

5

16              MR. LUFRANO:  Objection.  There is nothing in

17         there that the defendant ever said anything about

18         tying anything.

19              THE COURT:  The objection is overruled Mr.

20         Lufrano.  I heard the evidence, and I will resolve the

21         differences if any between the statements of counsel

22         and the evidence as I heard it.

23              MR. MURPHY:  Judge, if there is any question at

24         all, let me read from the statement what the defendant

14

5

1       says about the shirt around the victim's neck.  I am

2       reading from Page 4 of the statement.

3              When he went into the garage, Mr.

4       Hendricks stated he saw something that looked like a

5       body and went over to see what it was.  He said that

6       it was the same girl that he had sex with, and the

7       shirt was still in the same position over her head.

8              I submit to your Honor that the statement

9       that I have read to you speaks for itself.  The

10      defendant asks you to believe, judge, what he says,

11      according to what he says in his statement, that he

12      had consentual sex with this girl.  And yet, he went

13      out early the next morning looking for an alibi

14      witness, attempting to create an alibi witness through

15      Michael Walker.

16             Here is a man who, according to him,

17      should not have much to worry about because he had

18      consentual sex with a willing participant.  In fact, a

19      girl who wanted it from him.

20             And yet he shows uncommon energy in

21      waking up early the next morning and going out and

22      finding Michael Walker so that he can have Michael

23      Walker say that they were together the night before.

24             What does Jerome Hendricks have to worry

**1455**

5

1    about?  This girl, according to him, wanted to have

2    sex with him.

3              And why does he get out early the next

4    morning looking for Michael Walker in order to create

5    an alibi for himself?  Unless there is something more

6    involved, judge.  What the defendant was trying to do,

7    your Honor, was set up an alibi for a murder.

8              Another question is raised, judge, when

9    you consider his statement.  This business about

10   finding the body.  The first question that struck me,

11   judge, is why does the defendant say he even found the

12   body?  Why does he say that three or four days later

13   he went into that garage and saw that body?

14             I submit, your Honor, what the defendant

15   was concerned about, and this is just speculation,

16   judge, but I think it is a fair inference, what the

17   defendant was concerned about was that the police

18   would find his fingerprints either in the garage, in

19   the area of the floor, or some where around the body.

20             And if you recall, the defendant said he

21   actually touched that body.  So perhaps the defendant

22   had some concern about any other physical evidence

23   that would put him inside that garage.

24        MR. LUFRANO:  Objection.  This is total

5    1    speculation, not supported by the evidence.

2    THE COURT: And it will be treated accordingly,

3    Mr. Lufrano. The objection is overruled.

4    MR. MURPHY: But your Honor, what's interesting

5    is what the defendant does after he quote, unquote,

6    "finds the body". And that is that he leaves that

7    little girl there, leaves her body there. And there

8    is really no explanation that makes sense other than

9    the fact that he is trying to hide the murder that he

10    committed.

11    What is more important here? If he is

12    concerned about having sex with a young girl, the

13    least he can do is call the police or call somebody

14    anonymously. He doesn't do that. He leaves that body

15    there to rot in that garage until it is found

16    approximately five days later.

17    Judge, as you consider the defendant's

18    statement, more questions arise than are answered.

19    The defendant's statement raises questions and asks

20    this court to accept the set of coincidences and

21    circumstances that absolutely don't make sense. And

22    again we have to go back to what the defendant says

23    about Denise Johnson in the first place. That she was

24    a willing participant. That this twelve year old girl

1457

5

1       wanted to have sex with him on the garage floor.

2                   And judge, if you consider the evidence

3       in this case, I think that when you apply the standard

4       that the courts discuss with regard to circumstantial

5       evidence, and that being has every reasonable theory

6       of innocence been eliminated, I think there is only

7       two other ways that this girl could have been killed.

8                   And one of the ways is what the defense

9       has alluded to, even with the attempt to offer

10      evidence or make the offer of proof in this case.  And

11      that is that Denise Johnson left that garage alive

12      after the defendant left her in there.  This girl who

13      had never run away from home, been away from her

14      family for a night, not one single night.

6

15          MS. PLACEK:  Objection; misstatement of

16      evidence, judge.

17          THE COURT:  The objection is overruled.  I

18      heard the evidence and I will resolve the differences

19      between the evidence and the statements of counsel, if

20      any.

21          MR. MURPHY:  Well, judge, I know the court

22      heard the evidence.  The only evidence we heard in

23      this case is at one time, Denise Johnson who had moved

24      from her grandparent's house, walked back towards her

18

6

1       grandfather's house, in fact spoke to her grandfather,

2       and she was missing for a short period of time.  Their

3       mother or her stepmother who was concerned about her

4       called the police.  And in fact, it turned out she

5       went to her grandparent's house.  And that was it.

6           No evidence in this case that this girl

7       ever left her home, no evidence in this case that this

8       girl was ever a run away.  No evidence to support that

9       whatsoever.

10          In any event, judge, one possible theory

11      of innocence which the defendant has tried to put

12      forth in this case is that this girl was left there

13      alive, and she walked out of that garage.  That she

14      untied the top off of her neck, that she put her shoe

15      laces back on her shoes.  Because the defendant did

16      say that she put something around her head like a rope

17      or a shoelace.

18          That after she put her shoe laces back on

19      her shoes, that she went out of that garage and

20      brought somebody else back in to the same garage some

21      time between August 1 and the day she was discovered.

22      And that somehow this other person, who we don't know,

23      put her top around her neck in the same way, took her

24      shoe laces off again and either put them around her

1469

6

1    head or her face or wound up being her neck, and tied

2    the other shoe lace, tied her hands together behind

3    her back.

4                    That's one of the theories we are

5    supposed to believe.  But judge, the standard is that

6    that be reasonable.  And I submit to the court that

7    that is absolutely absurd.  It is absurd to believe.

8                    And the other theory of innocence which I

9    can think of, if there is any, is that this girl, the

10   defendant, if you believe him, walked out of this

11   garage and left this girl there on the floor.  And

12   that somebody was lurking around the garage or outside

13   the garage.  And that that person went in and killed

14   her.  And that that person was undiscovered by the

15   defendant, and the defendant just left the girl there.

16                    I submit, judge, that is absolutely

17   ridiculous, too.  There is no proof of that.  There is

18   no evidence.  And it is not a reasonable theory of

19   innocence, judge.  And I submit to the court that

20   there is no other theory that could be even advanced

21   in this case.  And your Honor heard during the course

22   of this trial evidence of other crimes.  And I don't

23   know how the court is going to treat that.

24                    The court heard evidence that the

6

1    defendant had raped two other women in what we submit

2    were very similar circumstances. And your Honor, that

3    evidence was offered for two reasons. One, we wanted

4    the court to see that in this case Denise Johnson did

5    not consent to what the defendant said. And in this

6    case the defendant intended to rape her.

7              And another reason we offered that

8    evidence is to show something that the defendant does

9    which is unique to him. And that is his fixation with

10   the victims' necks, the women's necks who he rapes.

11   That he put a rope around the neck of one victim when

12   he was raping her.

13             And in this particular case, judge,

14   Denise Johnson had ligatures, her top and her shoe

15   lace, around her neck. And your Honor can consider

16   that when considering intent as to the aggravated

17   criminal sexual assault charges involving force, and

18   as to the other charges involving force.

19             And that's the evidence, judge, that we

20   produced in this case. But the defense chose in this

21   case to put on a defense. And what was the defense

22   that we heard?

23             Well, we heard Dr. Jumbelic testify. And

24   basically on cross-examination, the substance of it

21

/

6

1       was about a report on Channel 7 which had absolutely

2       nothing to do with this case.

3                    We heard Detective Michael Baker testify.

4       And much of the cross-examination of Michael Baker was

5       about how much sleep he had.  Very little to do with

6       this case.

7                    Another part of the defense in this case

8       was attempting to portray Denise Johnson as a

9       prostitute.  But judge, although the finger was

10      pointed at her and those allegations were made or

11      certainly inferred, there is absolutely no evidence in

7

12      this case to support that.  None whatsoever.

13                   What the evidence in this case does show,

14      judge, is that Denise Johnson died in a cruel and

15      brutal way.  I submit, judge, what happened in this

16      case is this girl was taken into that garage, that she

17      was raped, and that she was strangled.  And it is a

18      terrible, terrible way to die.  And then she was left

19      there.

20                   And the defendant's statements about what

21      happened is so outrageous, judge, that it is an insult

22      to common sense.  It really is.  And if anything, what

23      that statement does do is point to him as the person

24      who killed her.

7

1          Judge, I am asking that you find the

2     defendant guilty on all of the charges.  Thank you.

3          THE COURT:  Miss Placek?

4          <u>CLOSING ARGUMENT ON BEHALF OF THE DEFENDANT</u>

5          MS. PLACEK:  Your Honor, very briefly, it

6     wasn't -- and first of all, it is in no way the

7     defense's position that we should portray anyone,

8     especially a dead girl, as a prostitute.  But we have

9     to deal with the facts as they came out during the

10    trial.

11              First of all, judge, it wasn't us who

12    said that Denise Johnson was a run away, habitual run

13    away.  It is what her people said to the police when

14    she became missing on August 1.  It wasn't {us|you is}

15    who said that Denise Johnson had an interest in older

16    boys and in men.

17         MR. MURPHY:  Objection, judge.  There was no

18    evidence of that.

19         THE COURT:  Overruled.  I have heard the

20    evidence.  I will resolve any differences between the

21    statements of counsel and the evidence that was

22    adduced.

23         MS. PLACEK:  We would point out, judge, that

24    during the defense's case, we presented police

23                              1473

7

1          officers and youth officers who said that both her

2          legal guardian, that her aunt/cousin and her

3          grandfather had given that same description of Denise

4          Johnson at the time when they were looking at her when

5          they thought she was a missing person.

6                    The court found other things out from in

7          fact the statements of her family when they still

8          believed she was a missing person.  And that was

9          simply this.  They not only found out that all of the

10          sudden coincidentally at the age of 12, when the girl

11          reached the age of puberty, that she became a problem.

12          That, if the court remembers during -- strike that.

13          During the direct examination of the officer who was

14          presented for impeachment by Mr. Lufrano --

15                    MR. MURPHY:  Objection. that's not evidence.

16                    THE COURT:  Overruled.

17                    MS. PLACEK:  He asked whether or not there was

18          statements made by the guardian of whether or not

19          because of this dating of older boys and men that the

20          legal guardian considered her a problem.  And the

21          legal guardian described her as a problem.

22                    Now, judge, in an attempt to shift the

23          burden of proof, the state said that we had to present

24          to you a reasonable hypothesis of innocence.  I would

24

7

1   point out that not only is this incorrect, but I would

2   point out that furthermore, the facts as presented not

3   only present an alternative to the state's case, but I

4   would also point out, judge, that certain missing

5   elements, and again relying on the cases cited in our

6   memorandum of law, I would ask the court to consider

7   if legally, at this point in the trial, that they can

8   even get by the issues that they failed to present to

9   sustain a conviction.

10        Now first of all, judge, when you go back

11   to the August 1 date about the argument that was had

12   that precipitated Denise Johnson leaving her home, you

13   had an argument not against Mr. Hendricks, but the

14   inference that can be taken from that argument that

15   she had was that since she left, and again this was

16   pointed out not only by the police reports, but also

17   by the instances of the testimony of her cousin/aunt,

18   that in fact she was speaking to Mr. Hendricks when

19   her family objected, she went in the house for

20   approximately 20 minutes, and they argued over it.

21        Now, in order to have an argument, common

22   sense leads you to believe that first of all, you have

23   to have two sides, one opposing and one for.  And

24   since her family was supposedly at that time against

25

7

1    her seeing this older man, Mr. Hendricks, that Denise

2    Johnson was on the other side of the argument which

3    would present her for Mr. Hendricks.

4              Now, what does that give you?  That

5    Denise Johnson and that the facts contained within Mr.

6    Hendricks' statement are in fact logical and in fact

7    conclusive to in fact the presentation of the theory

8

8    as the defense laid out.

9              Number one, what did she do?  She left

10   the house.  No. 2, after leaving the house, what

11   happened?  We don't know.  And the reason we don't

12   know is because the state through their own experts

13   has failed to prove the time of death.

14             Now in the Bill of Particulars, we have a

15   time of death mentioned.  But it becomes interesting

16   that that Bill of Particulars becomes a fallacy for

17   the simple reason that we have her again through the

18   testimony presented to this court, supposedly seen her

19   alive after that time of death several days after, not

20   only seen alive after, but that this belief is so

21   reasonable and so logical that the police take action

22   with Mrs. Fields to in fact come about and bring about

23   the finding of this girl.

24             Now, what else do we have after this?

**1476**

8

1       Well, we have supposedly the circumstantial evidence

2       of the defendant's statement.  And that's supposed to

3       be the big thing that will link him into this crime.

4       Because it is supposed to be so totally unreasonable.

5                    As already presented, Denise Johnson did

6       not find Jerome Hendricks an affirmance.  That's why

7       she left her home.  That's what the logic and that's

8       what the statement of the police originally stated.  I

9       am speaking of the statement of her family.

10                       Finally, we have the idea of consentual

11      sex.  Consentual sex is all that's spoken from in this

12      statement.  But one of the things that the state

13      failed to bring up before you is the fact that, number

14      one, in reading the statement, the court is allowed to

15      take the circumstances under which the statement was

16      made.  Not only the circumstances under which the

17      statement was made, but the care of the statement, the

18      care under which it was taken.

19                       Now, needless to say, at the particular

20      time of the taking of the statement, Mr. Hendricks

21      could read and write English.  And if the court

22      remembers, there was a bit of cross-examination

23      between myself and the assistant state's attorney as

24      to why she didn't have him write out the statement.

27

8

1              Well, what we find out is that she

2      essentially wrote a summary of a summary of a summary.

3      A summary of what she was told by Mr. Hendricks in the

4      conversation, a summary of what she read in the police

5      reports.  And again I'd ask the court to go through

6      its notes.  And a summary again of what she was told

7      by the police that Mr. Hendricks in fact stated.

8              Well, the reliability of this summary of

9      a summary of a summary is further called into question

10     by the fact that number one, you have an interesting

11     thing evolving in the accuracy contained within the

12     statement.  And the reason I am bringing up the

13     accuracy of the statement is simply because of the

14     fact that Mr. Hendricks, and again the court can go

15     through what he went through because the court both

16     heard the motion and the court also heard the

17     testimony of the stand, what he went through prior to

18     giving that statement.  And the condition of his mind

19     at the time of giving the statement.

20             The condition of his mind would be,

21     "Let's get it over with.  Let me tell you what

22     happened, and fine."

23             Well, how does that become relevant to

24     what's in there and what is signed?  Much is made by

8

1     the state about it stating that he walks in and sees

2     the shirt in the same position.  Again, the court has

3     the statement in evidence.

4          The court has heard the testimony and the

5     court will see that Mr. Hendrick's words, as few as

6     they are, on the statement are put into quotes.

7          Now, the reason the casualness of

8     language becomes important is this.  Number one, the

9     assistant state's attorney spoke about making

10    corrections on the statement to ensure the accuracy.

11    She spoke of misspellings being corrected.

12         And when looking over the statement as I

13    am sure the court would, I would ask the court to

14    consider first of all that number one, not only are

15    there multiple misspellings that weren't corrected,

16    but that this casualness would encourage the defendant

17    to think that he was merely telling him the truth.

18         And that the accuracy of his words, the

19    preciseness of his words as taken by this woman beared

20    no meaning, beared no relevancy.

21         Next, we have the fact that by not

22    showing the date of death, we don't know when this

23    crime occurred.  Thus giving logic and reason to the

24    defendant's statement.  The logic and reason is that,

8
9

1          No. 1, you have consentual sex.  And No. 2, no murder

2          is ever spoken about.  No. 3, you have the other issue

3          dealing with the statement that the presumption of in

4          fact the defendant speaking of the consentual sex with

5          a minor is in fact itself an incriminating act.

6                    The idea that the defendant by giving

7          this statement was somehow trying to get the police

8          off his back, somehow trying to hide what he

9          eventually saw, becomes ludicrous.  Because

10         essentially what you do have is you have someone

11         admitting in a statement to one criminal act.  And

12         when you consider as brought out over the defense's

13         objection the background of the defendant, this

14         admission becomes key.

15                    Because essentially what you have is

16         someone with the defendant's past conviction rate

17         admitting to a crime to the police.  The veracity of

18         that increases or rather the risk of that increases

19         the veracity of the statement.

20                    I would suggest further, judge, that as

21         argued in our motion for directed finding and relying

22         on the cases stated within, specifically People versus

23         Lee, People versus Cratchner and People versus, I

24         believe it is, Mendez.

30

9

1    But the court has the brief before it.

2    That the suggestion that the state by mere inference

3    can leap to the fact that we had a sexual, a forced

4    sexual encounter due to the circumstances, becomes

5    absurd.  Because we would point out that in one of the

6    cases suggested where there was the death of a woman

7    where in fact there was the disembowelment and where

8    the murderer cut off the arms and legs, a

9    dismemberment of the body, and where in fact the

10    clothes left on the body, the panties and the pants

11    were ripped in the crotch area, but because of the

12    decomposition, the court said that the state failed to

13    prove any sexual assault because there was no medical

14    evidence tying to same.

15    I would point out that at this particular

16    grouping of the trial that that's analogous to the

17    case we have before the court at bar.

18    Because with their own expert, not only

19    didn't they prove time of death, they also failed to

20    prove, judge, they failed to prove any kind of sexual

21    assault.  Because quite frankly, the psychiatrist said

22    because of the positioning of the body and because of

23    the state of decomposition, she could not make that

24    assessment.

**1481**

9

1          We would further point out, judge, that

2     the decompositioned state of the body and the

3     testimony of the stand does in fact further the

4     defendant's reliability in that this murder took place

5     after, and several days after he in fact had

6     consentual sex with the victim.

7          The reason for that is this.  If the

8     court remembers, we asked several things of the

9     pathologist who took the stand.  One of the things we

10    asked was simply in fact would a body lying there in

11    90 degree plus heat -- because that was the testimony,

12    would there remain any moisture?  Would there remain

13    any sort of bodily fluids?

14         And if the court remembers, she testified

15    no.  If the court also remembers, the officer, and I

16    am speaking of the first uniformed officer at the

17    scene, we also made inquiries about the body.  The

18    inquiries we made about the body dealt specifically

19    with the moisture.

20         "Did you see any signs of bodily fluid?"

21    And I would ask the court to go back to its notes or

22    the transcripts in fact that we have.

23         His answer was  "Yes," he did.

24         The consistency in fact with the

32

9

1    defendant's statement goes in fact to the reality that

2    what we have here is a very, very ugly crime with

3    extremely ugly pictures dealing with an extreme

4    tragedy.

5         But what we also have here is we have

6    conveniency both by the police and by the state in

7    attempting to blame it on someone not because of hard

8    evidence but because it seems like the easiest thing

9    to do.  We would further point out that we have a

10   reason for saying that this casualness in

11   investigation is in existence because of the fact that

12   all the court has to look at is police conduct.

13        Even when this person was missing, Denise

14   Johnson, the police in their attempt to locate her,

15   were both casual and laxed in that No. 1, and I am

16   referring I believe to an officer, and I believe it

17   was Officer Caddigan, doesn't even take down the name

18   of the two women who in fact after showing a picture

19   to them, saying that they see her alive long after the

20   date that the state has presumed her dead  --

21        MR. MURPHY:  Objection.  That's not the

22   evidence, judge.

23        MS. PLACEK:  May I continue, judge?

24        THE COURT:  I am trying to think of what the

10

1483

10

1      evidence is in this regard.  And it is very sparse, if

2      any.

3           MS. PLACEK:  If the court remembers, judge,

4      there was certain testimony brought on by the

5      defendants.  We brought on -- we recalled the officer.

6      I believe that that part was not in fact sustained.

7      The state's objection was not sustained.

8                If the court wishes the transcript, we

9      have it available to it.

10          THE COURT:  That portion of the testimony, as I

11     recall it, was not part of the trial in this case.

12          MS. PLACEK:  He was called twice, judge, to

13     refresh the court's memory, that officer.  And

14     although the court did sustain the state's objection

15     as to part of his testimony, the court, if the court

16     will remember both in its notes, and I made an inquiry

17     of the court as to whether or not certain things will

18     remain dealing with the sustained objection, the court

19     said and made a very clear ruling that certain things

20     were sustained.

21               But the things that I spoke of, this

22     being one of them, the officer's actions, not asking

23     the name, was in fact overruled.  That is, the state's

24     objection was allowed to go into evidence.

34                        1484

10

1          THE COURT:  Well, in any event, I am going to

2     receive it as argument.  I will have recourse to my

3     notes probably before I decide this issue.  I will

4     straighten out the differences between the statement

5     of counsel and the evidence that I have heard.

6          MR. MURPHY:  Judge, without interrupting

7     defense counsel continually, I would just like to make

8     a standing objection.  Counsel has been making

9     arguments.  And that one included, with respect to

10     either matters that were not brought out, for example,

11     hearsay statements that were not allowed in.

12          THE COURT:  I am aware of that.

13          MR. MURPHY:  And also impeachment which is not

14     evidence, and areas where there was no impeachment.

15          THE COURT:  I am aware of the distinction.

16          MR. MURPHY:  Thank you, judge.

17          THE COURT:  At least I think I am.  You may

18     proceed.

19          MS. PLACEK:  We would further point out in

20     rebuttal to the state's bringing up of the witness,

21     Michael Walker, we would ask the court to consider the

22     mind, memory and ability of Mr. Walker who was brought

23     in from Joliet to testify.

24               We would further point out, judge, that

10

1    within a space of five minutes he never, not even --

2    forget about the fact that so-to-speak letter was

3    being offered by the state to be written on his

4    behalf.  But I would suggest it again, transcripts are

5    available.  He forgot numerous details that would be,

6    let's say, detrimental to the state's case until being

7    reminded that he could testify about them by the

8    state's attorney himself.

9                We would point out, judge, that the

10   original statement of the defendant again verified to

11   the police was he saw Michael Walker, not that he was

12   looking for Michael Walker, but he saw Michael Walker.

13   The first time that we have anything about Mr. Walker

14   is when he is brought up to Joliet the first time we

15   have anything said that supposedly the defendant tried

16   to arrange a false alibi, is from the mouth of Mr.

17   Walker himself.

18                We would point out, judge, that even if

19   the court wishes to believe the absurdity of Mr.

20   Walker's testimony, again available in transcript, we

21   would point out that quite frankly, it is still

22   consistent with the reasonable hypothesis of

23   innocence, based upon the fact that again, without

24   belaboring for this court that Mr. Hendricks stated to

36

10

1    the police that he had committed a crime.

2          The crime, if the court chooses to

3    believe both the evidence as circumstantially

4    presented, and in fact the lack of evidence of sexual

5    assault as presented by the state, was sex with a

6    minor.

7          The suggestion that he was trying to

8    cover up some horrendous crime like a murder, can be

9    overcome by the reasonableness that one, Mr.

10    Hendricks, and again, if the court wishes to believe

11    Mr. Walker in the words of the state cover up, is

12    simply the consentual sex of a minor.

13          Now, the state has brought up the proof

14    of other crimes.  The court had made a statement a few

15    seconds ago that in fact the court thought or thought

16    it knew what the reason for the impeachment was

17    brought up to the court or what kind of evidence could

18    be used.

19          We would remind the court of how Illinois

20    holds proof of other crimes.  We would remind the

21    court that the court found itself in a bench trial.

22    And quite frankly, judge, the defense is still unclear

23    as to the manner, mode, and method as to what it is to

24    be considered for, and that is the proof of other

1487

10
11

1    crimes.

2    And secondly, judge, we would point out

3    that as to the proof of other crimes, we would draw

4    the court's attention to in fact the impeachment

5    presented to those proof of other crimes as presented

6    by Mr. Lufrano in that first of all, as to one of

7    them, there was never any mention of any kind of rope

8    or neck in this case.

9    And secondly, as to the other one, the

10    one involving the woman who went to the liquor store

11    afterwards with the defendant, there was not even any

12    charging.  But we would ask the court to look through

13    its notes and go fully through the testimony of this

14    woman and of the police officers later called by the

15    defense, that there was not only never any charging of

16    this crime, judge, but in fact, there was a disbelief

17    all around.

18    MR. MURPHY:  Objection, judge.

19    THE COURT:  Overruled.

20    MS. PLACEK:  We would further point out, judge,

21    that again the case of the state, and what essentially

22    was promised to you in opening statement is that they

23    would show you that, No. 1, that the defendant was the

24    last person to see her alive.

38                          1488

11

1            I believe, judge, through different

2       testimony and different reasons and of circumstances

3       we have shown that this is incorrect.  That they would

4       show you that in fact the defendant was the killer of

5       the girl, again, no evidence except for jumps that

6       would enable the court not lawfully to leap over the

7       presumption of innocence before rendering a

8       conviction, because of the fact that no time of death

9       has been shown and circumstances that in fact again,

10      speaking of the bodily fluids present as testified by

11      their officer and presented again by the fact that

12      neither one of the gentlemen on cross-examination --,

13      strike that -- on direct examination of their

14      pathologist dared ask the question.

15            And again, the court is allowed to go

16      into this as to whether or not she had an opinion to a

17      reasonable degree of medical certainty when in fact

18      the death occurred.  That question was never asked.

19      And I believe the court is allowed by Illinois law to

20      go into the motives as to why it was not.

21            And we would state furthermore, judge,

22      that in fact the statement is not a confession.  The

23      statement as we constantly objected at best should not

24      have been let into evidence because at best, according

11

1        to the theory of the state's case, it is a false

2        alibi.

3                I believe at one time there was an

4        interchange between this court and myself when the

5        court said, "Well, I am sure they are taking it for a

6        statement." And if they do take it for a statement,

7        judge, then it would be our suggestion that they are

8        bound by in fact the contents within.  And the

9        contents within were admitted by their own state's

10       attorney to be inaccurate, a summary.

11               And furthermore, judge, never speaking of

12       any kind of murder.  So therefore, judge, if they are

13       bound by that, the suggestion that a conviction for a

14       murder can come, is similar to some sort of Herculean

15       task being that the court is being asked to take on

16       and shoulder.

17               Your Honor, very briefly, the court has

18       seen the state's case.  The court has heard the

19       defendant's impeachment.  Even without the defendant's

20       impeachment, we would suggest while adopting our

21       memorandum of law previously presented, and asking the

22       court to consider that now the standards are in fact

23       differing, that in fact by failing or foregoing to

24       prove matters contained within their Bill of

11

1   Particulars, that is the date of death, by in fact

2   failing to show this to the court, that in fact the

3   leaps of imagination that the court is asked to take

4   is just too great.

5        When I opened before this court I

6   suggested that the only thing that this court could

7   find the defendant guilty of was the so-called old

8   statutory rape charge.

9        That would still be our contention at

10  this time, judge.  We, of course, would suggest that

11  since no evidence pursuant to the law, not leaps of

12  imagination, not leaps of inference, not ignoring the

13  presumption of innocence; but pursuant to the case law

14  presented to the court, can in fact be established.

15  For this reason, judge, we would be asking the court

16  to find the defendant not guilty of all charges.

17        (WHEREUPON, there was a change of

18        reporters.)

19

20

21

22

23

24

**1491**

(Whereupon there was a change

of Court Reporters)

THE COURT:   State?

MR. CASSIDY:   Thank you, your Honor.


CLOSING ARGUMENT

BY

MR. CASSIDY:

Your Honor, I hope you took very good notes or refer to the transcript.  In case you do have doubts in your mind about what the evidence was because you heard a lot of misstatements by the defendant of what the evidence was, out and out misstatements, Judge, not hear the evidence, but out and out misstatements, your Honor, of what the evidence was.

There was no evidence that Denise Johnson had interest in older boys or men.  There was no evidence that Denise Johnson was a problem child.  There was no evidence as counsel stated that the victim was dating older men.  There was no evidence of that whatsoever, Judge.  And I submit to the Court, your Honor, that not only was there no evidence of it, it simply was not true, Judge.

1492

It's sometimes unshallow when you say there was no evidence of it, so that's why I'm telling you, Judge, it simply was not true because nowhere was there any evidence whatsoever, no reports that this person was dating.  She had no interest whatsoever in older men.

MS. PLACEK:  Your Honor, I now have to make a Motion for Mistrial for the purposes of the record. I would ask that certain police reports be introduced.  I would suggest that the prosecutor, under the rules of professional conduct, is, in fact, found by certain evidence in his statement that there's no reports that state same.  It would be the     suggestion of this Court that this prosecutor has, in fact, made a misstatement.  I would ask -- And again in order to preserve my client's objection, I would ask that these reports be received, Judge.

THE COURT:  The Motion for Mistrial is denied.

MR. CASSIDY:  May I proceed, Judge?

THE COURT:  You may.

MR. CASSIDY:  Judge, what you have is simply Denise Johnson who, when this picture was taken, was 12 years old, she was 12 years old when she

1493

died, and that simply is Denise Johnson, your Honor.

Judge, the defense, themselves, spent an hour and 10 minutes with Doctor Dubelic (Phonetic) on some matter dealing with some report by Carol Maurine (Phonetic), which the defense heard from the other public defender down at 26th Street. No basis whatsoever, they spent an hour an 10 minutes going over there trying to impeach her credibility when she kept on denying the allegations submitted to her, but that was the defense case.

They also spoke of autoeroticism (Phonetic), and Doctor Dubelic told this Court that she never heard of it, but they submitted that proposition, and it simply was not true, but that was the defense case submitted to your Honor.

I submit to this Court, your Honor, that Michael Walker, and I believe the evidence showed it, Judge, gave a prior consistent statement to the police, so he didn't just come up here for the first time when he testified in front of your Honor. I submit to your Honor that the evidence was that he gave a prior consistent statement at

1494

the first interview with the police when this occurred which was consistent with the testimony in front of your Honor. So whatever motive he may have had later on to fabricate was the same consistent statement he gave before he even talked to any State's Attorney --

MS. PLACEK: Objection, your Honor. Mr. Walker stated at the time of giving the statement --

THE COURT: The statement is overruled.

You may proceed.

MR. CASSIDY: So that argument by counsel, your Honor, respectfully is without merit because he gave a prior consistent statement. The statements or argument by defense regarding the statement I do not understand. What motive the defendant may have for giving the statement?

All I know the evidence showed what happened was you had Anna Demacopoulos, female State's Attorney along with a Detective Ryan, I believe her first name was Joanne, a female detective taking a statement from a defendant. I submit to the Court there was no evidence whatsoever that the defendant was threaten, physically or mentally abused, or coerced in any

1495

manner to give the statement that he did. I submit

to the Court that the defense attempts to portray

Denise Johnson, 12-year-old Denise, as somewhat

promiscuous, and simply there's no evidence of it,

Judge, because it wasn't true. And, your Honor,

Denise would not have gone along with the

defendant. I submit to you there's a strong

inference why she would not have is because

Yolanda, just minutes before they told her that

he's a rapist, and that's what the evidence was.

So I submit to the Court she did not go anywhere

freely and voluntarily with the defendant, Judge,

and that's what the evidence showed.

I submit to the Court from the getgo

of the case the defense attempted to portray Denise

Johnson that way, to somehow or other, your Honor,

to just create whatever wild imagination you may

have. I mean, am I going to stand in front of

your Honor and say 12 year olds aren't promiscuous,

because no I'm not because maybe some 10 year olds

are, but in this case, there's no evidence of it,

but -- Strike that. The defense in a bad way here,

Judge, he has to create something here, your Honor,

and perhaps that's his only out, and after all,

1496

Judge, it is consistent with the defendant's thinking because if you look at what he did do to this poor little 12-year-old girl and others who testified in this case, you can see he treats girls, especially young girls as dish rags, in his way of mind they are promiscuous. In his way of mind, they have that coming to them. In his way of mind, he doesn't care what happens to them. He will rape them. He will put something around their throat. He would want to ride them like a horse. That's his way of thinking, so the defendant is consistent to the type of person he is. I submit to the Court that poor little Denise Johnson, when she's 12 years old, the little girl who takes time to write Denise in the insteps of her shoe. I submit to the Court when she's on that dirty floor with the garbage cans around her, and you got this guy on top of her with pulling off her shirt top and tying it around her neck, I submit to the Court, she didn't like it, and she wasn't agreeing to it. I submit to the Court that she wasn't thinking like he says she wanted more, but rather maybe, "Mommy, where are you?" or "Grandma, grandpa, where you when I need you? Why did I

1497

leave from that porch 50 feet away. I thought I
was safe." That's what she was thinking, not being
synergic like the defendant states.

I submit to the Court she was walking
within the site of where she was. That's where she
was, Judge. She was right there. Maybe she could
walk 50 feet she figured. Maybe she could walk
down the alley. She didn't know he was there. Is
there anything wrong with walking 50 feet away from
her house? She didn't go voluntarily with him, but
he would have you believe she liked it. She liked
it when he was taking off her top and he's entering
her back. She would have you believe she liked
that. I submit to the Court that as she was
gagging, Judge, she was trying to cry out.

MR. LUFRANO:  Objection, your Honor. This is
way beyond any evidence here.

THE COURT:  The objection is overruled.

MR. CASSIDY:  I submit to the Court people
couldn't hear her screams, Judge, because he tied
that thing around her throat as he was raping her.
I submit to the Court, your Honor -- First of all,
Judge, counsel cites case law, which I submit to
the Court really isn't relevant. What it comes

1498

down to is common sense. You're the fact finder.
I submit to the Court that's all you are is a fact
finder. I submit to the Court if it was a jury,
Judge, just use your common sense, and if you use
your common sense, your Honor, everything points to
him, everything, Judge. The last person seen with
the little 12-year-old girl is him, the guy who
likes to use -- tie things around people's neck
when he's having sex with them, this guy
(Indicating).

The body is found next door to where
he lives. It's an abandoned garage. It's found
next door -- Of all the people in the universe, of
all the billions of people, or just in the city of
Chicago, all the millions of people in Chicago,
where is the body found? Next door to him in his
garage, and he's the last person with her. Use
your common sense, Judge.

The statement he gives to the
Assistant State's Attorney, Anna Demacopoulos, and
Ryan, and he says, "I was in there having sex with
her in the very same garage where her body was
found," and he said she wanted to be ridden like a
horse. He admits to it. The only thing he doesn't

1499

admit to is the murder, Judge.

MR. LUFRANO:  Objection to the admission.

THE COURT:  The objection is overruled.

MR. CASSIDY:  The only thing he doesn't admit to, Judge, is murder.

Counsel brought up the fact why would this guy give up a statement he's been down there before?  As your Honor knows, they aren't brain surgeons, people who commit those offenses, and if they keep their mouth shut, they usually get away with it.  I submit to the Court he told exactly what it was, but he wouldn't go all that last point because he knows it was murder.  He was trying to make it consensual, and, Judge, there's no way, I submit to your Honor, as a fact finder, using his common sense, you can say, your Honor, in good conscious, "My God, well, maybe he did this consensually, but he didn't kill her."  It's just too -- You got to cut two fine lines, your Honor, and I submit to your Honor, the evidence is there.

Why would he go to Michael Walker and create an alibi?  Right away why would he go to Michael Walker and create an alibi?

Your Honor, I don't believe we have to

1500