CASE NO. _O8cv 1589_

ATTACHMENT NO._5_

EXHIBIT _____

TAB (DESCRIPTION) _____

rule out every possibility of his innocence in this case. I would submit to the Court, though, Judge, we just about have. I submit to the Court when he gives a statement freely and voluntarily without any coercion whatsoever as the evidence has shown saying, "Yeah, I was the guy in the garage. She was in the same position as when I saw her, and I put those garbage cans over her."

I submit to the Court, your Honor, that the evidence just shouts out, your Honor, if you apply the common sense standard to this case concerning all the evidence, Judge, taken together, that no one else, Judge, but the defendant committed this offense, your Honor. Thank you, Judge.

MR. PLACEK: Your Honor, specifically we would like to introduce into evidence dealing with our motion, especially dealing with the ethical violation approximately five reports dating from the 1st of August to approximately the 7th of August dealing, in fact --

THE COURT: Why don't I suggest to you, Miss Placek, that you incorporate those documents as exhibits in your Motion for a New trial, if a

Motion for a New Trial becomes necessary and appropriate in this case.

MS. PLACEK: Fine, Judge.

THE COURT: This defendant is charged in an 18-count indictment with miscellaneous counts of murder, miscellaneous counts of aggravated criminal sexual assault, criminal sexual assault, concealment of a homicidal death, kidnapping, aggravated kidnapping, and unlawful restraint. The Court has heretofore sustained the Defendant's Motion for Acquittal as to several of these 18 counts, Counts 5 and 6 specifically as I recall, which leaves the Court with a 16-count indictment to consider, and I would like to consider the arguments of counsel, my notes, which were made during the trial, the indictment, and other relevant factors overnight before rendering the Court's decision, to make certain that I have the facts straight in my mind as I perceive them at this point.

Ms. Placek, are you available tomorrow?

MS. PLACEK: No, Judge, unfortunately I'm not. I'm available Friday -- No, Judge, I'm sorry, I got

1502

a motion tomorrow I was supposed to do today, but I put it over in regards of being here.   I do apologize to the Court, Judge.   I could be here midmorning on Tuesday.   I could be here Friday if the Court wishes.

MR. MURPHY:  Judge, Friday is a problem for me. I'm going to be off Friday.

THE COURT:  Do you anticipate us being in session until 5:00 o'clock?

MR. MURPHY:  Today?

THE COURT:  Yes.

MR. MURPHY:  Yes, Judge, although two of the cases we have this afternoon are not necessarily pressing cases.

THE COURT:  Well, I want to hear the evidence in Mr. Emanuel's (Phonetic) case.  That's terribly frustrating not to reach that case and take some evidence.

MS. PLACEK:   I could do it Monday in the afternoon, Judge at 1:30.

THE COURT:  Well, my present thought is if we only have approximately an hour of testimony with Mr. Emanuel's case, then I could review my notes and render a decision today, and put any other

matters on the call today, we could put that over
until a later date.

On the other hand, if we do not
complete Mr. Emanuel's evidence hearing no later
than 4:15, it will become very doubtful whether we
could do this today, that would not give me enough
time to review my notes and render the decision.

In any event, let's pass this case.

MS. PLACEK:   If the Court wants, if I could
come in at 1:30 tomorrow, if I could have time
certain.

THE COURT:   What do we have on the call?

Let's try at 1:00 tomorrow.

MS. PLACEK:   I'll do my best.

THE COURT:   You'll be here sometime tomorrow
afternoon?

MS. PLACEK:   Yes, Judge, I will.

THE COURT:   Order of Court, as to Mr.
Hendricks, May 30, 1:00 p.m.

MS. PLACEK:   If the Court wishes, we have
transcripts, also.   Does the Court wish those?

THE COURT:   No, I don't think I will need
transcripts.   I just want to go over my notes and
refresh my recollection.   Thank you just the same,

1504

though.  See you tomorrow.

(Which were all the proceedings

had in the above-entitled cause.)

1    STATE OF ILLINOIS  )
                  ) SS.

2    COUNTY OF C O O K  )

3           IN THE CIRCUIT COURT OF COOK COUNTY
           COUNTY DEPARTMENT-CRIMINAL DIVISION

4

5    THE PEOPLE OF THE  )
    STATE OF ILLINOIS  )
                  )

6         V        )   No. 88 CR 12517
                  )

7    JEROME HENDRICKS   )

8           REPORT OF PROCEEDINGS had in the above entitled

9    cause, before the Honorable LEO E. HOLT, Judge of said

10    court, on the 30th day of May, A.D., 1991.

11           APPEARANCES:

12                HON. JACK O'MALLEY,
                    State's Attorney of Cook County, by

13                MR. JOHN MURPHY and
                MR. SCOTT CASSIDY,

14                    Assistant State's Attorneys,
                    appeared for The People;

15

16                MR. RANDOLPH STONE,
                    Public Defender of Cook County, by

17                MS. MARIJANE PLACEK,
                    Assistant Public Defender,

18                    appeared for The Defendant.

19

20

21

22

23

24

PENGAD/INDY. MUNCIE, IN 47302    SF-IL-24A

1509

1    THE CLERK:  Jerome Hendricks, in custody.

2  Sheet 9, Line 1.

3              (Defendant Present)

4    THE COURT:  All right.  Miss Placek, are you

5  expecting Mr. Lufrano to join you?

6    MS. PLACEK:  Pardon, sir?

7    THE COURT:  Are you expecting Mr. Lufrano

8  to join you?

9    MS. PLACEK:  I called for him, but if the

10  Court wishes to move ahead, I understand the Court

11  has a trial.  I'm sure Mr. Lufrano wouldn't be hurt

12  if the Court proceeds.

13    THE COURT:  When did you call him?

14    MS. PLACEK:  I called him when I entered the

15  courthouse.

16    THE COURT:  How long ago was that?

17    MS. PLACEK:  About ten minutes ago, Judge.

18  They were going to page him at the office.

19    THE CLERK:  I'll call him, Judge.

20    THE COURT:  Before we proceed any further,

21  I wish to advise Mr. Hendricks of some rights that

22  he has.

23              Mr. Hendricks, you have a constitutional

24  right to testify in this case on your own behalf.  The

ck129

1    right that you have is personal to you and it can

2    be waived by you.  That is to say, you do not have

3    to testify in this case if you choose not to.

4              But the right to testify is yours

5    and yours alone.  It does not belong to your

6    attorney or anyone else, and your attorney cannot

7    waive your right for you.

8              In making the decision as to whether

9    or not to testify in this case, you clearly have a

10   right to confer with your attorney, and you should

11   confer with your attorney in that regard.  You

12   should also give consideration to the advice

13   that is given to you by your attorney regarding whether

14   you should testify or not, but in the final analysis,

15   the decision as to whether to testify belongs to you

16   and only to you.

17             If you have not had a sufficient amount

18   of time to discuss the matter with your attorney,

19   and you desire to continue to discuss that with your

20   attorney, I will pass your case and allow you an

21   opportunity to further confer with your attorney

22   in regard to whether you should testify in this

23   case.

24             On the other hand, if you are satisfied

ck130

that you and your counsel have discussed it

and you understand your right, you understand

that you and you alone can waive your right and you

are prepared to do that, I will hear from you and

I will do whatever you desire me to do.

MS. PLACEK:  Judge, the defendant asks

that his case be passed.  He wishes to say something

to me.

THE COURT:  Pass.

MS. PLACEK:  Thank you.

(Whereupon a recess was taken in the

above entitled cause, after which the

following proceedings were had:)

THE CLERK:  Jerome Hendricks.

THE COURT:  All right.

Mr. Hendricks, have you had sufficient

time to confer with your attorneys?

THE DEFENDANT:  Yes, sir.

THE COURT:  What is it that you desire to do,

Mr. Hendricks?

THE DEFENDANT:  Waive my right, sir.

THE COURT:  All right.  The defense has

heretofore rested, and that will stand.

Mr. Hendricks is charged in a--

131

1        MR. CASSIDY: Excuse me, Your Honor.  May I

2  address the court a moment?

3        THE COURT:  Yes.

4        MR. CASSIDY:  Yesterday, Your Honor, I made

5  a statement about what is not contained in the

6  evidence and what is contained in the police reports.

7  I'd like to apologize to the Court and I ask that

8  be stricken.

9        It was a comment about what type of

10  person Denise Johnson was, and I believe I was at

11  fault.  The only evidence the Court should consider

12  is the evidence from the witness stand, and I was

13  not-- I was improper in saying that.  I just ask that

14  be stricken, what I said, Judge, and I apologize to

15  Your Honor for saying that.

16        THE COURT:  Yeah, I'm aware of the-- Of the

17  division of what was before me on the trial and

18  what was before me on the hearing to determine

19  whether or not the defendant could reach the

20  level of Chambers versus Mississippi situation,

21  and I have those differences pretty well categorized

22  in my mind.

23        There is a possibility there's been

24  some overlapping in my mind, but I don't think so.

132

1    MR. CASSIDY:  I apologize anyway, Your

2  Honor.  Thank you.

3    THE COURT:  This defendant is charged in

4  a multi-count indictment charging the offenses

5  of first degree murder, aggravated criminal sexual

6  assault, concealment of a homocidal death, criminal

7  sexual assault, kidnapping, aggravated kidnapping,

8  and unlawful restraint.  He is presumed to be

9  innocent of the charges placed against him, and

10  the State bears the burden of proving his guilt

11  beyond a reasonable doubt.

12    Because he is presumed to be innocent

13  of the charges placed against him, the defendant is

14  entitled to have the inferences that are drawn from

15  the evidence to be drawn in his favor so long as one

16  can do so without doing violence to logic and

17  common sense.

18    Now, the State in its argument

19  acknowledged, as is apparent, that most of the

20  evidence in this case is circumstantial.  At the

21  conclusion of the State's case we had an occasion

22  to discuss the question of the corpus delecti and

23  utilization of the defendant's statement in stabbing

24  the corpus delecti and what usage could be made of

133

the defendant's statement at that stage of the
trial and at this stage of the trial.

The Court clearly determined from
the evidence adduced at the close of the State's
case that the corpus delecti of the offense of
first degree murder was completely established
outside of the confession of the defendant.  Thus,
there was no need to discuss whether or not the
defendant's statement-- And I call it a statement
as distinguished from a confession, because one
thing is at least clear, if nothing else, is that
this statement does not confess the offense of
first degree murder.

What it confesses is the offense of
aggravated criminal sexual assault and aggravated
kidnapping, or the lesser offenses of criminal
sexual assault or kidnapping, and need not necessarily
be discussed at this point.

Suffice it to say that if it does not
confess those crimes, it comes very, very close to
it.  The distinction of a confession and a statement
of the defendant being that a confession must
contain all of the essential elements of the offense
so that it leaves nothing to be supplied by extrinsic

134

evidence. Whether that is the case here or
not as far as the two offenses of aggravated
criminal sexual assault and kidnapping, or
aggravated kidnapping, and their lesser includeds,
we will cross that bridge when we get to it.

The evidence which supports the
offense of first degree murder is circumstantial,
and the evidence which supports most of the counts,
or of aggravated criminal sexual assault, is also
circumstantial.

The evidence which would support the
concealment of a homocidal death is circumstantial,
ans so I suppose the first place to start in analyzing
this evidence is what is the consequences of the
circumstantial evidence.

Circumstantial evidence, of course,
is evidence just like any other evidence, with
perhaps the single caveat that a defendant ought
not be convicted on circumstantial evidence alone
unless the evidence is sufficient to remove all
reasonable doubt of guilt. Now, that is not a
new concept of any kind. If you think of
circumstantial evidence of simply being evidence,
then, of course, no defendant should be convicted of

135

1    criminal offenses unless the evidence is sufficient
2    to remove a reasonable doubt, or all reasonable
3    doubt.

4             The evidence in this case demonstrates
5    that on August 1st, 1988, that this defendant and
6    the decedent in this case met in the late evening
7    hours, and according to the statement of the
8    defendant,engaged in an act of sexual intercourse
9    at the insistence and request of the victim.

10            That shortly thereafter the two of
11   them,again at the request of the victim, went into
12   an abandoned garage and again engaged in an act of
13   sexual intercourse, accompanied with some degree of
14   deviation, kinkiness, or whatever one might want
15   to describe it as, according to the defendant.

16            That after completing that act of
17   sexual intercourse the defendant left the premises,
18   leaving the young girl there alive and well.  Some
19   three or four days later the defendant says that
20   he went into that same garage and the victim was
21   in the same position as he had last seen her,
22   except that she was now dead.

23            There is also evidence that the victim
24   was not seen alive after August 1st, 1988.  Now, I am

136

1   fully aware that there is some contention that

2   the victim was, in fact, seen alive.  That

3   contention does not arise during the course of

4   the trial of this case and is not evidence in

5   this case.  It comes about and comes to the

6   attention of the Court as a result of a hearing

7   held to determine whether or not the source of

8   that information had such a degree of reliability

9   as to overcome the hearsay nature of it and permit

10  its introduction into evidence, and after a hearing

1i  the Court concluded that it did not.  So the

12  evidence in this case establishes that the defendant

13  is the last person to have seen her alive.

14          The State argues that the Court cannot

15  take at face value all of the assertions made by

16  the defendant in his statement to the police

17  officers, and the Assistant States Attorney.  They

18  theorize that the defendant is admitting that which

19  he must admit and is avoiding implicating himself

20  in the more serious offenses with which he is

21  charged.

22          And as I understand the argument, it

23  runs something like this; that because I do not

24  have to and cannot logically believe, because of

137

1  the nature of the victim by virtue of age and
2  other factors, the motivation of the defendant's
3  statement, that because I can't believe that he
4  told the truth, the whole truth, and nothing but
5  the truth, I can, therefore, disregard those
6  statements or the lack of statements implicating
7  him in the more serious offense, and conclude
8  that the opposite; that is, since he lied, the
9  opposite is true.  And I reject that as being a
10  proper analysis.

11      If I conclude that this defendant has
12  not told the truth, then clearly I can disregard
13  his statements, but in disregarding his statements
14  does not mean that there is any evidence to
15  support the contrary.

16      More specifically, there is no evidence
17  at all in this statement to support any forceful
18  sexual contact with this young girl.  The defendant's
19  statement negates totally any force to accomplish any
20  sexual act.  His statement essentially is one in
21  which he and the young girl engage in consentual
22  sex, and if I choose not to believe that, that
23  does not lead me to the other conclusion that the
24  sex was, therefore, forceful, and certainly doesn't

138

PENGAD/INDY, MUNCIE, IN 47302    SF-IL-24A

lead to that result beyond a reasonable doubt when there is no evidence other than what he says.

Now, the fact that this young girl died in a clearly violent manner with a ligature, or two ligatures around her throat, one of which the defendant says she placed there, or he placed there in order to engage in the fantasy of riding her like a horse, does not lead to the conclusion that this was forceful sexual contact, and since there is no evidence that the defendant committed any acts of force against the young girl in order to engage in acts of sexual intercourse, the defendant is found not guilty of the offense of aggravated criminal sexual assault as charged in Count 6 of this indictment and as charged in Count 7 of this indictment, and as charged in Count 9 of this indictment.

Counts 5 and 8, which charge the defendant with aggravated criminal sexual assault have already been dismissed against the defendant at the close of the State's case.

Now, Count 10 of the indictment charges the defendant with the offense of aggravated criminal

139

sexual assault, in that he, being over the age
of seventeen, committed an act of sexual penetration
with the deceased in this case, who was then under
the age of thirteen.

The defendant's statement, coupled
with the other evidence in this case which establishes
the age of the victim, establishes this count of
the indictment beyond a reasonable doubt, and the
defendant is found guilty of the offense of
aggravated criminal sexual assault as charged in
Count 13 of this indictment.  I mean Count-- As
charged in Count 10 of this indictment.

Count 11 of the indictment charges
the defendant with the offense of criminal sexual
assault by the use of force and by threat of force,
and because there is no evidence that the defendant
exerted any force or threat of force against the
victim, the deceased, to accomplish that result,
he is found not guilty of the offense of criminal
sexual assault as charged in Count 11 of the
indictment.

In Count 13 the defendant is charged
with the offense of kidnapping in that he knowingly
secreted and confined Denise Johnson against her

140

will.  While there is no direct evidence that taking Denise into that abandoned garage was against her will, and while the reasonable inferences to be drawn from the defendant's statement is that it was not against her will, nonetheless, the provisions of Section 10-1-A(1) are met when we consider Sub-Paragraph B of the kidnapping statute, and Sub-Paragraph B of the kidnapping statute provides that confinement of a child under the age of thirteen is against his will within the meaning of this statute if such confinement is without the consent of his parents or legal guardian.

Accordingly, the evidence in this case supports Count 13 of this indictment, and the defendant is found guilty of the offense of kidnapping.

The defendant is also charged with multi-counts of aggravated kidnapping, and in Count 14 he is charged with the offense of aggravated kidnapping by knowingly and secretly confining Denise Johnson, a child under the age of thirteen, against her will.

Again looking at Section 10-1A, the

141

definition of kidnapping, and Sub-Paragraph 2 of

Section 10-2, the aggravated kidnapping statute

which simply makes it an aggravated kidnapping if

the victim is under the age of thirteen, the

evidence in this case supports the proposition

that the defendant is guilty of the offense of

aggravated kidnapping as charged in Count 14 of

this indictment.

Because I have determined that the

defendant is guilty of the offense of aggravated

kidnapping as charged in Count 14, it also follows

and will be further elaborated upon, that the

defendant is guilty of the offense of aggravated

kidnapping as charged in Count 15, and in Count 16,

and in Count 17.

In Count 18 the defendant is charged

with the offense of unlawful restraint, which is

a lesser included offense of kidnapping, and he

is also found guilty of that offense.

Now, I have, therefore, discussed all of

the offenses with the exception of the first degree

murder counts.  The evidence which supports the

first degree murder count, as I indicated, is

circumstantial, but the circumstances in this case

142

1    are compelling.

2        The statement of the defendant, the

3    circumstances under which she's last seen alive,

4    the circumstances under which she is found, the

5    condition of the body at the time that she is

6    found, the acknowledgment by the defendant in

7    his statement of the condition of the body, the

8    location of the body, the position of the body

9    at the time that he last saw her, all tend to

10   strongly suggest and prove beyond a reasonable

11   doubt, removing all reasonable inferences of

12   innocence, that the defendant committed the offense

13   of first degree murder.

14       The difference in this case, and what

15   makes it impossible for the Court to find him

16   guilty of the offenses of aggravated criminal sexual

17   assault predicated on force is that I can't tell

18   whether the force was used in connection with the

19   sex act or as an afterthought to murder the victim

20   because of the sex act.

21       By that I simply mean this.  This

22   defendant could just as easily have committed the

23   offense of murder in order to cover up the offense

24   of aggravated criminal sexual assault by-- That is my

143

with a child, he being over the age of seventeen
and she being under the age of thirteen, but
whatever the motivation, it does not preclude
a finding that this defendant murdered the
deceased on or about August 1st or the early
morning hours of August 2nd.

The defendant argues that because of
the failure of the pathologist to delineate the
time of death, that that, in and of itself, raises
a reasonable doubt. And the fact that the
pathologist could not determine whether or not
sexual intercourse had taken place immediately prior
to death. The last aspect of that is unnecessary
for me to consider because the defendant's statement
supplies that information.

The body of the deceased was badly
decomposed and maggot infested to the point where
determination of time of death was, at best, going
to be difficult if not impossible, nor does the
evidence sufficiently illuminate whether or not
it was even attempted; that is whether the pathologist
even attempted, within the sphere of her discipline,
to ascertain time of death.

But one thing that we know is that the

144

1    degree of decomposition took some time to come

2    about, during all of which time, or that is to

3    say from August 1st until her body was found, she

4    was out of touch with her family, and found in the

5    exact location, that is in the garage, and indeed

6    in the position in the garage where the defendant

7    said he last saw it.

8              Accordingly, the defendant is found

9    guilty of the offense of first degree murder as

10    charged in Count 1 of the indictment.  He is also

11    found guilty of the offense of first degree murder

12    as charged in Count 2 of the indictment.

13              The defendant is found guilty of

14    first degree murder as charged in Count 3 of the

15    indictment.  The defendant is found not guilty of

16    the offense of first degree murder as charged in

17    Count 4 of the indictment.

18              Now, having found the defendant to be

19    guilty of the offenses as charged in Counts 1, 2, 3,

20    10, 12, 13, 14, 15, 16, 17, and 18, judgment

21    cannot be entered on all of those counts.  Some of

22    them merge with other counts in the indictment,

23    and under the doctrine of one act-one crime, judgment

24    cannot be entered on one of the indictments which

145

1    charges the same act in multiple different-- Or

2    the same crime in multiple ways. Accordingly,

3    judgment is entered on Count 1 of the indictment

4    charging the offense of aggravated-- Strike that.

5    Charging the offense of first degree murder.

6          Judgment is entered on Count 10 of the

7    indictment charging the defendant with the offense

8    of aggravated criminal sexual assault. Judgment

9    is entered on Count 12 of the indictment charging

10   the defendant with the offense of concealment of

11   a homicidal death, and judgment is entered on Count 14

12   of the indictment charging the defendant with the

13   offense of aggravated kidnapping.

14         Now, the defendant's bond is revoked

15   and a P.S.I. is ordered. Now, it was my understanding

16   at the beginning of this trial that if a finding of

17   guilty was had of first degree murder, particularly

18   the count charging felony murder, that the State

19   would request that a capital sentencing hearing be

20   held. Am I-- Is that still the State's position

21   in this case?

22         MR. MURPHY: Yes, Judge.

23         THE COURT: Nonetheless, I'm going to order

24   a P.S.I., a presentence investigation report. I

146

am not sure whether it's necessary. The statute,
as I understand it, says that where a jury is
going to be the sentencing body in a capital case,
a presentence investigation report is not necessary.

On the other hand, the statute is
silent as to what happens when the Court is going
to be the sentencing body in a capital case, but
does provide that no defendant shall be sentenced
in a felony without a presentence report unless
there is an agreement as to what the sentence should
be. So I-- I'm not sure whether that's am ambiguity
or oversight or what it is, but it doesn't seem to
do any violence to order a presentence investigation
and, consequently, it's ordered.

That's going to take at least three to
four weeks. I'm going to be on vacation for the
first two weeks of August. I mean the first two
weeks of July. Mr. Murphy, when will you return
from vacation?

MR. MURPHY: Judge, I should be back the
first week of August.

THE COURT: I don't see how we can do it
before then.

MR. MURPHY: That's fine.

147

THE COURT:  I don't know that we can get to it the last week of June.

MR. MURPHY:  I'll be out of town also, Judge.  I'm going to be out of town for six weeks.

THE COURT:  All right.  It has to be-- Well see then I'll be gone again the first two weeks of August.  I'll be gone the first two weeks of July and the first two weeks of August also.

MR. MURPHY:  I'm returning August 3rd, Judge.

THE COURT:  I'll be gone.  I'll be back August 19th.  I hate to put it off that long, but there is nothing that we can do about it, so--

MS. PLACEK:  August 19th?

THE COURT:  No, I don't think so.  I'll be back on August 19th.  What do we have set?

THE CLERK:  Two cases already set that date.  You want August 20th, Judge?

THE COURT:  Is there anything set on August 20th?

THE CLERK:  There are no other cases set yet.

THE COURT:  How about August 20th?

MS. PLACEK:  Fine, Judge.

THE COURT:  Order of Court, August 20th.

148

(Rev. 2/18/93) CCCR-56

**STATE OF ILLINOIS** } ss
**COUNTY OF COOK**

I, AURELIA PUCINSKI, Clerk of the Circuit Court of Cook County, in said County and State, and Keeper of the Records and Seal thereof, do hereby certify the above and foregoing to be a true, perfect and complete copy of ...VOLUME FOUR... OF A FIVE VOLUME

SUPPLEMENTAL RECORD CONSISTING OF THE ( REPORT OF PROCEEDINGS) ONLY. NO PRAECIPE .....

HAVING BEEN FILED PURSUANT TO THE NOTICE OF APPEAL FILED IN THE APPELLATE COURT .....

UNDER APPELLATE COURT NO. 95-0474 ..............................................................

....................................................................................................

....................................................................................................

in a certain cause ...LATELY............................................. pending in said Court, between

The People of the State of Illinois........WERE....................................., Plaintiffs and

JEROME HENDRICKS                        WAS                                ., Defendant. ...

Witness: **AURELIA PUCINSKI,**

Clerk of the court, and the Seal thereof, at Chicago
In said County,........JUNE 26,..................., 19 96....

*Aurelia Pucinski*

Clerk

**AURELIA PUCINSKI, CLERK OF THE CIRCUIT COURT OF COOK COUNTY**

**88CR 12517**

Transcript

App

to

APPELLATE    **Court of Illinois**

FIRST    **District**

GILBERT S. MARCHANT CLERK

SUPPLEMENTAL RECORD

**Circuit Court No.**    88 CR 12517

**Trial Judge**    LEO HOLT

**Reviewing Court No.**    95-0474

THE PEOPLE OF THE STATE OF ILLINOIS

**vs.**

JEROME HENDRICKS

**from**
**CIRCUIT COURT**
**of**
**COOK COUNTY, ILLINOIS**

*ORDER ENTERED*
*JAN 1 7 2007*
*APPELLATE COURT, FIRST DISTRICT*

**88-12517**

**DIVISION**

**AURELIA PUCINSKI**

**Clerk of Court**

VOLUME FIVE  OF FIVE VOLUMES
SUPPLEMENTAL RECORD

**Per** _____

**Deputy**

1  STATE OF ILLINOIS     )
                          )  SS:
2  COUNTY OF C O O K      )


3            IN THE CIRCUIT COURT OF COOK COUNTY
4            COUNTY DEPARTMENT-CRIMINAL DIVISION

5  THE PEOPLE OF THE         )
   STATE OF ILLINOIS         )
6                            )
                            )
7       -vs-                 )   No. 88 CR 12517
                            )
8  JEROME HENDRICKS          )

9

10            MOTION FOR NEW TRIAL

11            REPORT OF PROCEEDINGS had at the

12  hearing of the above-entitled cause on Tuesday, the

13  20th day of August, A. D., 1991, before the Honorable

14  LEO HOLT, Judge of said Court.

15

16  APPEARANCES:

17       HON. JOHN O'MALLEY,
            State's Attorney of Cook County, by
18       MR. JOHN MURPHY and
         MR. SCOTT CASSIDY,
19          Assistant State's Attorneys,
            appeared on behalf of the People;

20

21       HON. RANDOLPH STONE,
            Public Defender of Cook County, by
22       MS. MARIJANE PLACEK and
         MR. VINCENT LUFRANO,
23          Assistant Public Defenders,
            appeared on behalf of the Defendant.

24

1    THE CLERK: Jerome Hendricks.

2    MR. LUFRANO: Vincent Lufrano on behalf of

3    Jerome Hendricks.

4    MS. PLACEK: Your Honor, for the purpose of the

5    record, Marijane Placek, M-a-r-i-j-a-n-e, P-l-a-c-e-k.

6                Your Honor, this matter, I believe,

7    is scheduled for the hearing of motions for new trial

8    and for sentencing in this case today, Judge. We are

9    in receipt of the pretrial -- presentence investigation.

10   Although I sent it through the office, the State

11   informed me this morning they didn't receive the

12   motion for new trial. I sent somebody to the office,

13   to zerox a copy for the State, per the State's request,

14   Judge, and Mr. Lufrano also stated to me that the

15   transcripts were not prepared as per this court order.

16   THE COURT: Have you filed a motion for new

17   trial?

18   MS. PLACEK: Yes, I did.

19   THE COURT: When?

20   MS. PLACEK: I filed it at 26th Street and

21   sent it over. That's the date stamped copy that

22   I am having zeroxed for the State.

23   THE COURT: Do you have a copy of it?

24   MS. PLACEK: I am having copies made at this

                            2
                          1529

1    time, Judge.

2         THE COURT:  The half sheet here does not

3    indicate that the motion was filed.  That does not

4    surprise me, if you filed it at 26th Street, and

5    if you have a stamped copy --

6         MS. PLACEK:  I do, Judge.

7         THE COURT:  I will consider that as being filed.

8    We'll just update the half sheet.

9         MS. PLACEK:  Your Honor, I did, and I asked

10   the clerk's office to send it over to the Markham

11   clerk's office, but I know sometimes these things

12   get a little awry, should we say.

13        THE COURT:  If you are going to be in a

14   position to do so, I will hear the arguments on

15   the motion for new trial before the noon hour.  If

16   not, I'll put the whole matter over until after the

17   noon hour and we'll hear the motion for new trial

18   and, if it's denied, we'll go into the other aspects

19   of this case.

20        MR. MURPHY:  Judge, I would ask that it be put

21   over until after the noon hour.  I have not read the

22   motion yet.

23        THE COURT:  1:30 P.M.

24        MS. PLACEK:  Fine, Judge.

3

1    THE COURT:  Ms. Placek, if you can get me a

2    copy of the motion prior to the time we reconvene,

3    I will also take a look at it.

4    MS. PLACEK:  Fine.

5                        (Whereupon, the above-entitled

6                        cause was passed, after which

7                        the following proceedings were

8                        had:)

9

10    THE CLERK:  Jerome Hendricks.

11    THE COURT:  Mr. Murphy.

12    MR. MURPHY:  Yes, Judge.

13    THE COURT:  As I indicated to you when this

14    matter was before us earlier today, the half sheet

15    does not indicate the filing of the defendant's

16    motion for new trial.  On the other hand, Ms. Placek

17    has handed me a stamped copy, stamped by the clerk's

18    file stamp, indicating that motion was filed with

19    the clerk of the court, on June 18, 1991.  Accordingly,

20    I am going to ask the clerk here to update the half

21    sheet, to reflect that filing date.

22    MR. MURPHY:  Judge -- I'm sorry.

23    THE COURT:  You may respond.

24    MR. MURPHY:  Your Honor, I would just indicate

1   for the record -- may I look at the Court's copy of

2   the motion for new trial, for a moment.

3                         (Document handed to Mr. Murphy.)

4        MR. MURPHY:  Thank you, Judge.

5                         Judge, for the record, we would object

6   to the timeliness of the filing of this motion.

7                         And I know the Court has to look only,

8   can look to the stamping of the clerk's office, to

9   determine the date.  What the record does indicate is

10  that this case was -- there was findings of guilt on

11  this case, on May 20, 1991, that this case was

12  continued to this date.

13       THE COURT:  I don't think that's quite correct.

14       MR. MURPHY:  I'm sorry, May 30, I stand corrected.

15                        And that the case was continued from

16  that date to this date, order of Court.  In the

17  interim, as I understand it, the Court did not receive

18  a copy of the motion for new trial; the State's

19  Attorney's Office, to my knowledge, did not receive

20  a copy of the motion for new trial; certainly,

21  Mr. Cassidy and I did not receive a motion for new

22  trial.

23                        There is a stamp on this motion

24  which indicates, actually indicates April 18, with

1  no year on it, and then written over April is J-u-n,

2  the year 1991 is handwritten in.  There are initials

3  which are hard to decipher.  It appears that the

4  first letter is either R or P, or whatever letter it

5  is, and second letter is a K.  I don't know what that

6  designates.

7       For the record, Judge, we would be

8  objecting to the timeliness of this motion.

9       MS. PLACEK:  If I may be allowed to respond,

10 your Honor.

11      THE COURT:  You may.

12      MS. PLACEK:  If the Court wishes, in this

13 particular matter, Judge, I kept the worse motion

14 for myself.  When I say the worst motion, the first

15 motion stamped.  RK is the initials of the clerk who,

16 in fact, stamped it, Richard Kerr, K-e-r-r.  The

17 matters were sent both to the State's Attorney,

18 through the interoffice mailing, Judge, and was

19 sent to the Court, through the clerk's office mail.

20 I apologize, but I would point out to Counsel, Judge,

21 if there was any attempt at fraud or any sort of

22 misleading, I would suggest that you have a copy of

23 a motion stamped a month before the finding would not

24 only be premature, strike that, according to Counsel's

1  representation, two months before a finding, would

2  not only be premature, but also would show certain

3  powers of psychic ability, which I do not possess,

4  dealing with, in fact, the issues as presented in

5  the motion.

6          Your Honor, we would further state

7  that if the Court remembers at the end, when the

8  Court made a finding and there was, in fact, stated

9  by myself an oral motion, rejected both by the Court,

10 and a promise, at that time, to file written memorandum

11 by myself.

12         In this matter, Judge, the suggestion,

13 and we would suggest quite frankly that, number one,

14 we apologize both to the Court and the State for what

15 would seem to be the untimely getting of the motion.

16 All we can say is that we complied with certain court

17 rules.

18         Number two, Judge, irrespective that

19 we would point out that the oral motion, in fact,

20 bound the term, just as the supplemental motion

21 holds and, therefore, we would suggest that, in fact,

22 the point is moot at this time.

23     THE COURT:  Do you care to respond, Mr. Murphy?

24     MR. MURPHY:  No, Judge.

7

1    THE COURT:  All right.  The question of the

2    receipt of the motion or copy of the motion by the

3    Court or Counsel bears little or no relevance to

4    whether or not it's timely filed.  Timeliness, as

5    I am using the term as it relates to this motion,

6    means whether it was filed within 30 days after the

7    finding in this case or as to preserve the case

8    before the Court, and I am satisfied that this motion

9    is timely, for several reasons.

10   One, the motion appears to have been

11   filed on January -- on June 18, 1991.  Now, absent

12   any indication of fraud, which the Court will not

13   presume, that's the date which it was filed.  And in

14   the unified court system that we have, the filing of

15   the motion with the clerk of the court, in any of its

16   divisions and wherever the court clerk's office may

17   be situated, is a sufficient filing.  It did not have

18   to be filed here before the clerk in my courtroom or

19   the clerk's office in this courthouse.  It was

20   sufficiently filed, if filed at 26th and California,

21   or in the Daley Center or in any other facility where

22   the clerk of the Circuit Court of Cook County maintains

23   an office.  That appears to be, from the face of the

24   motion, exactly what took place.

1          Again, as I say, absent some

2     indication of fraud, which the Court will not

3     presume and I take it that Counsel and all sides

4     in this case are conducting themselves in accordance

5     with the rules of professional responsibility.

6          Secondly, I am not certain that

7     whether this motion had been filed or not until

8     after sentencing would necessarily be lack of timeli-

9     ness.  Motion for new trial could very well be filed,

10    perhaps, after sentencing and, in many instances,

11    ought to be.  If there are errors in the sentencing

12    process that is sought to be preserved for review,

13    then a motion might very well be filed at that time.

14          In any event, I am going to ask the

15    clerk of the court to update the half sheet in this

16    case, to show the filing of this motion as of

17    June the 18th, 1991.

18          Are both sides now ready for hearing

19    on the motion?

20        MS. PLACEK:  Yes.

21        MR. MURPHY:  Yes, Judge.

22        THE COURT:  Ms. Placek or Mr. Lufrano, I will

23    hear you on your motion.

24        MS. PLACEK:  Very briefly, Judge, the common

1    wisdom, quite frankly, on a bench trial, to file a

2    motion for new trial is just some sort of standard

3    procedure that, in fact, the trial lawyer does in

4    order to perfect the appeal.  The wisdom, as pointed

5    out by the Appellate Court, is, in fact, standardized

6    by the fact that there is a rule that the trial judge

7    knew what he was doing when he originally ruled and,

8    somehow, when you argue before that same judge for

9    the purpose of the motion for new trial, you are asking

10   him to, in fact, correct himself on things that you

11   somehow found wrong.

12            At the risk of calling such a matter

13   into question and, if I might, I would like to highlight

14   certain matters which, in fact, were stated within our

15   motion.

16            The first allegation deals, in fact,

17   with, number one, which speaks of the fact that the

18   defendant was not proven guilty by the State, beyond

19   a reasonable doubt.  The Court heard almost

20   ad infinitum with argument over and over and over

21   again, the Defense's contention that the statement

22   as keyed to the crime as it was, in fact, perpetrated,

23   did not meet this test.  The simplicity of the state-

24   ment was an act of consentual sex, an act of

1  consentual sex, followed up by the defendant leaving

2  the young lady in the abandoned garage and seeing her

3  some four days later, when asked to take out the

4  garbage or investigate a smell, but always a denial

5  of the deed of either forcible, what can be called

6  rape, or the denial of a murder.

7            In this particular matter, Judge,

8  and I speak as to the murder charges, we feel that

9  this becomes important because of the fact that

10  with the pathologist on the stand, who this Court,

11  over the objection of the Defense, qualified as an

12  expert, and in the questioning of the pathologist,

13  much was, in fact, made of certain injuries, much was

14  made about certain states of the body, but the problem

15  becomes, and it becomes particularly important because

16  of the fact that the State's theory has the young lady

17  dead on the -- some eight days before her discovery.

18  There is no asking and there is no showing by the

19  pathologist of the time of death.

20            The reason that this becomes important

21  is because of the fact that the State's own witness,

22  the first officer on the scene, and again I apologize

23  for drinking water, Judge, the first officer on the

24  scene, speaking of, in fact, the body having certain

11

bodily fluids still there, a question directed by

Defense Counsel to the pathologist, in fact, dealt

with timing of death and dealt with whether or not

there would be, after certain time, bodily fluids

present.

The pathologist analyzing, yet still

not either being asked by either side, and we would

contend again it is the State's burden as to the time

of death, stated that this would, in fact, be highly

unlikely to impossible for the body to be out there

for the length of time as proposed both by the Bill

of Particulars on which the indictment rests and also

as to the facts as argued by the State.

Now, since this question was neither

asked and since, in fact, the defendant presented a

reasonable hypotheses of what, in fact, he did do,

and, in fact, the Court found him guilty of the

aggravated criminal sexual conduct based on the age

and the aggravated kidnapping based on age, and we

would suggest that this goes even further to the

logic of the theory that the statement, if believed

as true, must be believed in total, and since the

statements speak not of murder, but rather, simply

again of consentual sex and leaving a living person

1   there, the State, by failing to tie up these ends

2   again, failed to prove the defendant guilty beyond

3   a reasonable doubt.

4           We would take this one step further,

5   Judge, due to the fact that the State presented a

6   witness and the witness was supposed to discredit,

7   they brought him up from the penitentiary, to discredit

8   what was allegedly the false alibi given by the

9   defendant to the police.

10          We would suggest that the reason that

11  this plays into the beyond reasonable doubt argument

12  of the defendant is simply this.  Number one, your

13  Honor, this witness, under cross examination, was,

14  in fact, forced to admit that, in fact, he was at the

15  police station, not as the good citizen as portrayed

16  under direct examination or for the purpose of giving

17  information, but quite frankly, Judge, he was there

18  as a suspect.  Coupling this fact with facts previously

19  argued and combining this fact with, again, with what

20  the Court chose, and, again, we would apologize

21  because although the Court did sign a court order

22  asking for the transcript in this matter, and since

23  it was ordered as a matter of fact as soon as the

24  Court made its ruling, yet never received by the

1    Defense, the suggestion that, in fact, what we had

2    here was an abduction, rape, and murder is absurd,

3    because what we have here, in fact, is a young lady,

4    where there is evidence before the Court that she

5    ran away, where there was evidence before the Court

6    that she was not only a runaway, but she had engaged

7    in a fight with family members involving, correctly,

8    the defendant, because she wanted him to be her boy-

9    friend, therefore verifying the consentual sex.

10        And we also have the fact that the

11   garage, where her body was found, was a common area,

12   and we have also the police dealing into other

13   suspects.  The police dealing into other suspects

14   and, again, lacking the time of death and still the

15   moistness in body fluids combined with the expert

16   testimony, in fact, makes the scenario, as pointed

17   out by the State, an impossible one.  In 90-degree

18   heat, which was quoted by several of the State's

19   witnesses as the outside temperature, and it was

20   stated under cross examination by the witnesses who

21   did, in fact, go to the garage, that the garage was

22   hotter, the decomposing rate would be faster.  Not

23   only would the decomposing rate be faster, but, in

24   fact, the evaporation of body fluids would also be

1    hastened by this matter.

2         The suggestion that the State didn't

3    willfully ask what time or can the medical pathologist,

4    to a degree of medical certainty, state at what date

5    and what time the defendant, excuse me, strike that --

6    the victim was, in fact, killed.  The fact that this

7    was, this question was not asked, can be taken, in

8    fact, in account by the Court.

9         And for this reason, Judge, and we

10   would suggest that since all other questions by the

11   State seam to be laboriously gone over, until the

12   Defense was forced to proffer an objection of asked

13   and answered, yet, this one question was steered

14   clear of, and since the defendant has no burden, that

15   we would suggest that this reasonable hypotheses,

16   this reasonable hypotheses of innocence and not guilty

17   or reasonable doubt was, in fact, indicative in this

18   matter.  Not only indicative in this matter, Judge,

19   but we would suggest that even by the defendant's

20   case, and that would be as to prior inconsistent

21   statements of the family that we brought up, that

22   they did, in fact, say that there was problems with

23   this young lady, that she did run away, that she was

24   perfect, until she started to get an interest in both

1   men, older boys and men, that this is the problem

2   that we have, in fact, and views why this issue is

3   brought again before this Court.

4          Combining these facts, it would be

5   our suggestion that reasonable doubt was committed

6   in the State's case and, therefore, in fact, the

7   defendant should have been found not guilty, not of

8   some of the charges, Judge, as the Court rightfully

9   did, but, rather, all of the charges.

10         We would further suggest that the

11   Court's finding, itself, is indicative of a confusion

12   and I beg the Court's pardon if I misstate or if I

13   somehow suggest an illogical inconsistency in the

14   Court's mind, but we would suggest that it would seem

15   to the Defense that what the Court did is the Court

16   split its finding.  In splitting its finding, the

17   Court, in fact, exemplified what we feel is the

18   confusion of the State's case.  Their case rests

19   solely on the fact that a statement was made.

20   Without belaboring the point, the State is tied up

21   with certain circumstantial evidence, as exemplified

22   by the Court in his closing remarks and in his

23   finding and, in fact, the statement deals always

24   with consentual and freely taken acts.

16

1    The Court, in its finding, said that

2    would have been fine if this, in fact, would have

3    been an adult woman, but the problem was this was a

4    12-year-old girl.  Rightfully or wrongfully, that was

5    the Court's finding.

6    We would suggest that the confusion

7    of the alternative, as presented by the State, that

8    is not only the filing of the charges concerning

9    violence, which the Court found the defendant not

10   guilty of, and I'm speaking not of the murder case,

11   and the presentation of the case by the State always

12   showing force, not consent, suggests, quite frankly,

13   that the reliability of the statement is that less

14   than needed to meet the burden of proof, because of

15   the fact that, number one, by always suggesting

16   force, the State suggests to the Court that they

17   don't believe this statement.  I believe and, again,

18   without dealing with the transcript, that, in fact,

19   the State, in their closing remarks, suggested to the

20   Court that this statement was a lie, as were other

21   statements given by the defendant and as a lie,

22   Judge, and as the Prosecutor stated that it is somehow

23   unreliable, it would be the Defense's contention that

24   the Court can't believe it either, because if anything,

1    the Prosecution isn't even standing for the evidence

2    that they are presenting to the Court.

3              Now, this becomes relevant due to the

4    fact that, again, the statement doesn't speak of any

5    sort of killing or any sort of force that would

6    indeed be inditia of a murder.  Without this reliability

7    placed within the statement itself, and I believe that's

8    the word the Court chose to speak of the document

9    signed by the defendant, without this being presented

10   under a cloud of, or being presented as a matter of

11   fact under a cloud of reliability, by taking it as a

12   whole, believing part of it, that is, about the

13   consentual sex and choosing to add other things to

14   it, the Court is, in fact -- the Court has, in fact,

15   extended it beyond the province that the Court has,

16   in fact, the power to do.  The Court can say that

17   just as night follows day, because the defendant had

18   consentual sex with a 12-year-old, that he must have

19   murdered her.

20             For this reason, we pray the Court

21   reconsider its ruling as to the counts found guilty

22   of, that the defendant was found guilty of, and, in

23   fact, grant the defendant a new trial on same.

24             If it pleases the Court as to the

18

1545

1    others, we would -- up to Section 2, 3, 4, 5, 6, we

2    would stand on the motion and previous arguments

3    made.  As to Section 7, the Court erred in overruling

4    the defendant's motion for directed finding at the

5    close of the State's case.

6

7

8

9

10                    (Whereupon, there was a change

11                     of Court Reporter.)

12

13

14

15

16

17

18

19

20

21

22

23

24

1    STATE OF ILLINOIS    )
                          )  SS:
2    COUNTY OF C O O K    )

3

4         IN THE CIRCUIT COURT OF COOK COUNTY
          COUNTY DEPARTMENT-CRIMINAL DIVISION

5    THE PEOPLE OF THE      )
     STATE OF ILLINOIS      )     NO. 88 CR 12517
6                           )
         VERSUS             )
7                           )     CHARGE:  Murder, etc.
     JEROME HENDRICKS       )

8

9              REPORT   OF   PROCEEDINGS

10

11        BE IT REMEMBERED that on Tuesday, the

12   20th of August,  A.D. 1991, this cause came on

13   for hearing before the Honorable LEO E. HOLT,

14   Judge of said Court.

15

16   APPEARANCES:

17        HON. JACK O'MALLEY,
               State's Attorney of Cook County, by
18        MR. JOHN MURPHY, MR. SCOTT CASSIDY,
               Assistant State's Attorneys
19             appeared for the People;

20        MR. RANDOLPH STONE,
               Public Defender of Cook County, by
21        MS. MARIJANE PLACEK, MR. VINCENT LUFRAND
               Assistant Public Defenders
22             appeared for .the Defendant.

23   VIRGINIA PETRITES, C.S.R.,
     Official Court Reporter
24


                    **1547**
                       1

1                        (AFTERNOON SESSION)

2                        (After a rotation of

3                        Official Court Reporters)

4        MS. PLACEK:   Your Honor, if the Court please

5    there were memorandums submitted to this Court

6    dealing with the matter of corpus delecti.

7    Without belaboring the point before this matter,

8    the simplicity is this:

9              One, in the finding that in fact the

10   circumstancial evidence substantiated the corpus

11   delecti as presented within both the facts

12   presented by the State at that time, and the

13   defendant's statement, the Court had in

14   fact made a leap of logic that again it is not

15   allowed to, and without belaboring the point, the

16   idea of the corups delecti is simply this, Judge,

17   that the confession to be substantiated in

18   somewhat, or the statement is to be substantiated

19   somewhat by the facts, and that should be enough.

20             Agreed, Judge, that the confession in

21   fact, or the statement, if you will, was

22   substantiated by the fact of the consentual sex

23   freely, admittedly, by the defendant.

24             If the Court wishes there could even be

1    a stretching somehow by finding a duty, which we

2    seriously disagree with, after seeing the body in

3    the garage, of the concealment of a homicide.

4              But the true logical leap comes through

5    the fact, through the fact that again no statement

6    has shown anything of a murder or of a killing for

7    violence done.

8              For this reason, Judge, because the

9    statement is neither corroborated by the facts,

10   nor in fact additional facts are presented by the

11   State to show that this man is in fact the primary

12   mover, or in fact the person who committed this,

13   the actor, as they are forced to do in the motion

14   for directed finding, that the criminal conduct

15   was as a result of a proximate cause of his

16   actions.

17             The problem we have before the Court is

18   simply this:  Again, the paradox of either

19   believing the statement or not believing the

20   statement.  If the statement speaks of consent and

21   all is well, can the Court say well, we know that

22   is a lie because there must have been something

23   that happened afterwards, because eight days we

24   find a dead girl in the garage.

**1549**

3

1          If this is a logical leap that the Court

2    makes at this particular time at the moment of

3    directed finding, the Defense has argued in the

4    motion and in the memorandum is simply this:

5    This logical leap is not substantiated either by

6    facts nor evidence.  It is substantiated neither

7    by the statement nor by anything attending same.

8          Therefore, Judge, we would suggest that

9    by overruling the motion for directed finding, it

10   is in fact an incorrect one.  And we would pray in

11   the alternative that the Court revise its ruling

12   and grant defendant's motion as to the remaining

13   charges, or in fact, in the alternative, Judge, we

14   would ask that the Court grant our motion for new

15   trial.

16         The matter next under consideration with

17   the Court's permission, when in fact somehow --

18   and I will very lightly touch on it as to the

19   reasonable hypothesis of evidence.

20         There was a motion presented by the

21   State in their opening statement, they spoke

22   simply of abduction, and this being the only man

23   capable of doing it.  They spoke not only of

24   this; but they spoke of violence.

1        Yet, your Honor, what we would be

2  suggesting to the Court, is simply this, in the

3  presentation of the case, and without belaboring

4  again time of death, without again belaboring the

5  abandon garage scene of the death, without again

6  belaboring the fact that again no evidence was

7  presented by the State that that was not the scene

8  of the death;  again we would ask the Court to

9  consider the body as it was covered with garbage

10  bags, rather than being a depository of the body

11  killed somewhere else, rather than the place of in

12  fact being killed, combined with the fact that the

13  police, although saying that only one suspect from

14  the stand, were made liars by the State's own

15  witness who said, "Yeah, I was a suspect, along

16  with some other guys there, and we were all being

17  questioned."

18        The suggestion of that being the

19  origination of in fact something more or a

20  reasonable hypothesis of innocence, or in fact

21  somehow through the holes of the State's case, and

22  I would point out again, in the Court's finding,

23  the Court stated that the case was circumstantial,

24  at best.  That this, in fact, states that there is

1    a reasonable hypothesis left open, and not filled

2    in fact, by any hypothesis suggested by the

3    defendant.

4              This becomes vital when the Court

5    considers that of course at the end of the case,

6    when both sides have rested, the Court can look

7    into every issue and every allegation as

8    presented.

9              Mr. Lufrano and I, in the presentation

10   of our case, if the Court remembers, just a

11   continuation to the lacking of the State's case

12   presented certain evidence, presented the fact and

13   again, with all due respect, not meaning to

14   mislead the Court in any way, that there was a

15   policeman who supposedly saw, who supposedly took

16   evidence after the girl was alive.

17             I would point out the Youth Officer

18   who, conveniently, Judge, and was in fact the

19   subject of a Brady Motion to dismiss, which we

20   would include in our motion for the new trial at

21   this time, which the Court denied.

22        MR. MURPHY:  Objection, Judge.

23        THE COURT:  Overruled.

24        MR. MURPHY:  I don't believe the defendant

1552
6

1    can make an oral motion, raise an issue orally.

2         THE COURT:  She is simply asking me to

3    reconsider as part of this motion, what happened

4    in relationship to the Youth Officer, which I am

5    fully aware of, anyway.

6         MR. MURPHY:  For the record, Judge, it is our

7    position it has not been raised in the written

8    motion.

9         THE COURT:  All right.

10        MS. PLACEK:  If the Court wishes, Judge --

11        THE COURT:  You may proceed.

12        MS. PLACEK:  With the understanding in

13   supplementing same with that Brady Motion, Judge,

14   in asking the Court to reconsider the suggestion

15   in fact that the Youth Officer, while in fact

16   investigating the disappearance of this young

17   girl, and investigating the disappearance of this

18   young girl would in fact talk to two people whose

19   names he failed to take;  but who he showed the

20   picture of, and who stated that they saw her after

21   supposedly the defendant said that she was killed.

22            We would suggest .to the Court that quite

23   frankly, in presenting this not only in the Brady

24   motion, but in fact in presenting this as part of

1    our case in chief, that in fact the State again

2    left open the stop gap of a reasonable hypothesis

3    and I believe opening the stop gap of reasonable

4    hypothesis by having a member of law enforcement

5    testify that he even took action, he even took the

6    legal guardian out to that area of the town, out

7    to that strip where in fact these two women, whose

8    names he conveniently didn't get, saw this young

9    lady, after the State contended that she was

10   dead.

11          We would suggest that in fact that

12   constitutes a reasonable hypothesis.

13          We would further suggest, Judge, that

14   because of this, combined with the other matters

15   previously mentioned, that in fact the Court

16   should grant our motion.

17          Your Honor, if I might move on?

18          If the Court remembers we made several

19   motions in limine at the start of this case.

20   Rightly or wrongly, the motions were not ruled on.

21   The motions dealt, in fact, with the defendant's

22   past, with certain evidence that was speculated by

23   the defense, and later confirmed in part of

24   argument by the State, that that would be the

**1554**

1    evidence that they would use, and that evidence in

2    fact, which the Court did not make a ruling on;

3    but did not in fact overrule the possibility that

4    we would later strike specifically, what the State

5    presented as proof of other crimes.

6           Now, the point being simply in dealing

7    with the jury at the time of the motions in

8    limine, and they were made timely, and they were

9    made properly before the case, Judge. The Court

10   reserved its ruling.

11          In reserving the ruling, Judge, as part

12   of the motion in limine, which was submitted to

13   the Court, not only as part of the motion in

14   limine, which was submitted to the Court, but

15   also, Judge, we asked that in opening statement,

16   let alone as part of their case in chief, that the

17   State be precluded from bring up these things.

18          The idea that in fact, that they would

19   be allowed to address the jury and speak to them

20   of things which in fact they couldn't bring up

21   during their case itself, or in fact precluded

22   from bringing up in their case. It seemed

23   somewhat ludicrous to the defense.

24          The Court made a ruling which somehow

1    puzzled and confused both  Defense Counsels and

2    Mr. Hendricks.

3           The basis of that ruling dealt, in fact

4    with that while I don't know --  and excuse me for

5    paraphrasing you, your Honor --  I am not sure how

6    I'm going to rule because I haven't heard the

7    evidence.  I am not going to try either of your

8    cases, nor restrict it.

9           When that evidence is to come about we

10   would ask in speaking as the Court, that you bring

11   my attention to it, and we will have argument,

12   then because then I will have more of a feeling

13   for it.

14          By its defense counsel has no problem or

15   slight problem as made at that time with that

16   ruling.  For the simple reason that Mr. Lufrano

17   and myself objected to that sort of ruling for the

18   simple reason we had no ability to plan strategy

19   if in fact we didn't know what the State could or

20   couldn't bring up.  And I believe there were three

21   separate points.

22       THE COURT:  Mrs. Placek, I will ask you to

23   hold your thought right there for just a few

24   minutes.

1          I'm going to take a two-minute recess,

2     and I'll be right back.

3                    (Thereupon, a short recess

4                    was taken, after which the

5                    following proceedings were had:)

6          THE COURT:  Ms. Placek, you may proceed.

7          MS. PLACEK: As stated, Judge, the particular

8     point is although we objected at the time for the

9     Court not to make a definitive ruling on motions

10    in limine, that in fact we filed and suggested to

11    the Court that although possibly anticipated by

12    myself and Mr. Lufrano, by not ruling the Court

13    was in fact somewhat handcuffing the Defense in

14    front of a jury, because, as the Court knows, as

15    an experienced trial lawyer, what essentially

16    happens is that the most important statement that

17    a lawyer makes not only to the jury, is not the

18    closing but the opening.  And therefore, Judge, it

19    would become impossible for Mr. Lufrano and

20    myself both to adjust and somehow think, since we

21    weren't quite sure what evidence would be damaging

22    or not be introduced into this case by the State,

23    because the Court did not rule.

24                    We somehow maybe didn't object as much

1   as we should;  but the particular problem became

2   this in response to the Court's ruling or non

3   ruling on these matters.

4           Our suggestion is quite simply this:  We

5   suggested to the Court just as we were handcuffed

6   in the opening statement by the Court to the jury

7   if empaneled, what would happen, as if the State

8   was allowed to front the material that it sought

9   to introduce, and which the Court still made

10  subject to the motion, made subject to the matter

11  to the motion in limine that in fact the clever

12  Mr. Lufrano and I seemed in front of the jurors —

13  and even if that evidence didn't go before the

14  jury, they would simply think here we have two

15  clever and young Defense lawyers seeking to keep

16  that evidence we heard about in opening statements

17  out.

18          There is, of course, diverse opinion

19  among trial lawyers as to this tactic.  The Court

20  might say in answer, well, Counsel, I actually

21  gave you a leg up by not granting that motion,

22  simply by the fact that if I disallowed certain

23  material, spoke of by the State in opening

24  statement, you in your closing statement could in

1   fact state that the State either lied or

2   didn't have the horses or made mistakes and point

3   this out, their case was truly weak, and look what

4   they promised you in opening statement, and they

5   didn't deliver.

6           Well, with all due respect to the Court

7   it is in fact Mr. Lufrano and I who set the

8   strategy for the case; not the Court;  not the

9   State.  And by in fact allowing or stating and

10  denying our motion in limine, stating that the

11  Court would allow the State to bring up that

12  matter which was basically the subject of our

13  motion, and which the State said in answer to the

14  Court's question that yes, they were going to

15  bring up before, and they were going to seek to

16  have it brought into evidence, and yes, they would

17  bring it in opening statement, this Court

18  effectively handcuffed Defense Counsel in front of

19  that jury, and, in fact, changed the very

20  complexion at the last moment of this case.  And

21  by changing the complexion, it no longer became

22  one of reasonable doubt, because we would be

23  forced to listen to the State in their opening

24  statements speak of the background of the

1    defendant, certain bad acts, certain matters about

2    the garage, et cetera, as brought out in our

3    motion.    And not whether we should respond

4    and give them credence, because we wouldn't know

5    whether or not this Court itself would later rule

6    at a later time that this was inadmissible matter

7    when this Court found out more about this case.

8         Therefore, Judge, we, in a split second,

9    were forced to change this case from one that

10   rested not only as to law as it always does; but

11   also as to facts; and change in fact the strategy

12   and waive a jury in our client's best interest,

13   because as stated at the time of that argument,

14   we didn't know where we were going.    Because the

15   State would be able to make the allegations, we

16   wouldn't know when to respond, because we wouldn't

17   know whether or not they would be able to prove

18   these allegations.    And by responding give them

19   added credence.

20        For this reason, Judge, our Jury Waiver

21   was anything -- and I would point out by the

22   colloquial, that the defendant and the Court had

23   itself during this waiver, that this waiver was

24   conditional.    It was conditioned by the rules on

1   the motion in limine.

2   ~~I would suggest, Judge, that even on the~~

3   requestioning, because the State never objected,

4   ~~by this Court, the defendant always stated and~~

5   conditioned this ~~jury waiver, this was by advise~~

6   ~~of Counsel based on the Court's most recent~~

7   ~~ruling.~~

8           For this reason, Judge, as the Court

9   knows, it is a long standing principle within the

10  law of the State of Illinois that a conditional

11  waiver is not a waiver at all, and because in fact

12  this Court ruled as it did on the motion in

13  limine, this Court in fact handcuffed the Defense

14  to the point that at the last possible moment of

15  the complexion of the case, changed it, and the

16  issues had changed.  And Mr. Lufrano and I were

17  forced to try the case to a bench, responding

18  to what we felt would become our strongest issues.

19  That was the issue of corpus delecti previously

20  mentioned.

21          Your Honor, during the break, Mr.

22  Lufrano spoke to me and reminded me in preparation

23  of the motion, which he aided me in, and in the

24  preparation of this argument, that as to

1    Sub-Section 6 dealing with certain Constitutional

2    Rights that we were going to mention at the time

3    that there were numerous motions:   A motion to

4    quash and a motion to suppress heard in this case

5    Without belaboring the fact, we would suggest

6    quite frankly that during the motion to quash and

7    during the motion to suppress, the court listened

8    quite patiently to the evidence, and ruled against

9    the defense, dealing both with the statement and

10   the arrest.

11         The interesting thing about the ruling,

12   and of course we, as part of this Sub-Section 6

13   would be testing the correctness of the ruling and

14   asking said Court, and if this Court denies our

15   motion, reviewing Court to look at that motion, we

16   would be asking the Court to consider one fact

17   that the Court stated as part of its ruling on the

18   motion to suppress and quash the arrest and

19   suppress the statement.  And that would be that

20   the Court found the police officers in this matter

21   completely untruthful, and the Court made in those

22   words mention of that fact.

23         We would ask to incorporate that when

24   the Court looks to the logical consistencies

1    stated not only within previous corpus delecti

2    argument, but also hypotheses of innocence.  And

3    also, Judge, as to reasonable doubt.

4              Your Honor, the Court took three

5    witnesses, these three witnesses dealt with the

6    testimony of what is commonly known as other

7    crimes or other bad acts.

8              Your Honor --  and I won't belabor that

9    fact, because the Court in its final ruling did

10   say that he did not consider this testimony during

11   his consideration of the defendant's innocence or

12   guilt during this case.

13             We would suggest, though, that the Court

14   heard it, and just as the hypothetical inquiry

15   given to psychology students asking someone not to

16   think of elephants, that is all they think of for

17   the next five minutes, that this Court heard that

18   evidence, although we do respect this Court as a

19   jurist, we would suggest that:

20             Number one, this matter did not fit into

21   other crimes.

22             Two, that the defendant, by calling of

23   certain police officers, impeached this matter

24   even to the point of substantial evidence, taking

1    it out of what was now from the stand a jury --

2    other crimes to fit this.

3            And, thirdly, Judge, we would suggest tha

4    even by allowing said testimony, said testimony --

5    and to refresh the Court's memory of one woman who

6    complained supposedly of conduct done to her by

7    the Defendant, which was not only not mentioned

8    within the police report; but as a matter of

9    fact, where she continued a social relationship

10   with the defendant after that, going into a liquor

11   store by herself and buying him a bottle, and to

12   which she complained several days later to the

13   State's Attorney's office, the same people who

14   brought this man to prosecution, rejected the

15   charges.

16           We would suggest, Judge, that all this

17   served to do was muddy up the record, creating to

18   this Court a negative and bad impression of the

19   defendant, irrespective of the admonishments of

20   the fact that the Court said it took no

21   recollection of it.

22           Your Honor, the next matter is dealing

23   with bias towards the Prosecution.

24           I push a bit to say this, and I must be

1   quite honest, Judge --  I debated long and hard

2   before putting this in this motion.  The reason I

3   do this is because basically, I often wonder that

4   as an advocate whether or not there isn't just too

5   much fire in the blood during a trial, and whether

6   or not in debating and going over my notes both

7   with myself and with Mr. Lufrano, whether or not

8   what I felt was bias was actually rulings by the

9   Court which were true and correct.

10          And yet, as an advocate, I somehow,

11  because of either being bullheaded or being a true

12  advocate, continue to take them as the fact.

13  Unfortunately, through the many days Mr. Lufrano

14  and I spoke both in phone and in person over these

15  matters, Judge, I found this bias unfortunately,

16  somehow, to be there.

17          And I apologize to the Court and mean no

18  personal offense in the next part of this

19  argument, but feel I must make it for the point of

20  the record, in order for an accurate and true

21  defense of my client.

22          Your Honor, the first issue deals

23  correctly with misstatement of facts in law which

24  were in fact allowed to go uncorrected.  And if

1    you will, Judge, if not uncorrected, unsanctioned

2    by the Court by the State.

3            The first one, quite frankly, dealt with

4    the fact that when the defendant turned over to

5    the State the entire Youth Officer's file on this

6    --  Now, when I say we turned it over to the

7    State, these two  Prosecutors at trial, although

8    they said that they were ready for trial and said

9    in fact that they were prepared for trial, in fact

10   didn't know that there was --  or didn't

11   investigate that there was a youth officer file,

12   and that the youth officer's file spoke of the

13   very issue that was the Brady Motion, that the

14   girl was seen alive after supposedly, in the Bill

15   of Particulars she was supposedly killed by the

16   defendant.

17            The problem we have with the turning

18   over of the Youth Officer's file to the State, and

19   the problem that we have in the Court not granting

20   the motion which in fact accompanied same, is the

21   fact that we in fact, the Defense team got and

22   received the Youth Officer's file not through any

23   machinations or any close relationships that

24   either I or Mr. Lufrano have with the Chicago

1    Police Department, or either through the

2    impersonal matter of subpoena; but by the State's

3    Attorney other than these two gentlemen -- the

4    State's Attorneys who previously had this case,

5    handing it over to us, and to Counsels who

6    preceded us.

7              The State, during this fact, during the

8    fact that they said they were taken by surprise by

9    the information had on the youth officer's file,

10   dealing with the girl being an habitual runaway,

11   dealing with the statements that I previously

12   brought up to the Court, was somewhat confused,

13   and asked for a bit of time, if my memory serves

14   correctly, Judge,  and then went on to make

15   certain motions.

16             These certain motions were in the form

17   of motions in limine, Judge.  And after we did

18   turn over the file that we originally got from the

19   State's Attorney's office,  said they made a

20   motion as to the matter of notice that they had no

21   notice of it.

22             Now the problem here, Judge, as the

23   Court knows the law in Illinois is once it is

24   received by an office, be it a governmental

1    office, be it a Federal Government's prosecutorial

2    office or the State's Attorney's office of Cook

3    County, it is in fact alleged as received.

4              The question becomes even more puzzling

5    when in fact if the Court remembers our entire

6    motion to quash arrest with different State's

7    Attorneys in fact dealt with the youth officer's

8    file.

9              The Court made direct inquiry and spoke

10   of that file, Judge, before in fact speaking of

11   the motion in limine filed by the State in

12   response to the surprise, that they were

13   supposedly taken by the fact that there was a

14   youth officer's file that made certain claims --

15         MR. MURPHY:  Objection, Judge.

16              Judge, perhaps it is my ignorance, I

17   have no idea what point Counsel is directing her

18   oral argument to within the motion.

19         MS. PLACEK:  Mistakes of law, in fact, Judge,

20   made by the Prosecution, dealing with the Court's

21   bias towards the Prosecution Counsel.

22         THE COURT:  Paragraph 11A, Mr. Murphy, is

23   what she is talking about.

24         MR. MURPHY:  Thank you.

1        MS. PLACEK:  The particular point is

2   exacerbated by the fact in questioning the Court

3   as the State's Attorneys whether they read this

4   transcript that dealt primarily with the motion to

5   quash.  They said they had.  And it became

6   strange, because Mr. Ronkowski who previously had

7   this matter, not only had the youth officer's

8   file; but in fact as myself, made ample use of it

9   And both Mr. Lufrano and myself saw it in his

10  possession.

11       The point of this argument even

12  further--

13       MR. MURPHY:  Judge, I would object to

14  arguments that are made outside the record.

15       There is no evidence to support this

16  argument here that is in this record.

17       MS. PLACEK:  Yes, your Honor.

18       THE COURT:  It is argument, Mr. Murphy.

19       And I must frankly confess to you that

20  this record is voluminous, and I am not altogether

21  certain whether or not it is or it is not.

22       I am going to hear it, and rely upon my

23  recall of what has transpired over the last year

24  and a half.

1       MR. MURPHY:  Judge, I will also argue and

2   object to the argument, because I fail to see how

3   this argument --  I know Counsel is getting to the

4   point, how it relates to what is stated in 11A in

5   any event.

6       THE COURT:  It may never reach that point;

7   but to the extent that she is developing it, and I

8   take it that she --  She has a right to do it.

9           The objection is overruled.

10      MS. PLACEK:  The particular point becomes --

11  And to refresh the Court's memory, Judge, it was

12  during the cross examination of the first witness

13  the State proffered an objection that when we

14  asked whether or not the girl was an habitual

15  runaway, they objected, and stated there was no

16  place in the record or no report that stated that.

17          We showed same report to these State's

18  Attorneys.  They stated that they had never seen

19  that report, Judge.

20          And then we went into the diatribe

21  dealing with that, and Mr. Lufrano very kindly

22  went to our office and xeroxed all of those pages.

23          The nexus of the argument, quite

24  frankly, deals again with what we call the

1   misstatement of the Prosecution.   The

2   misstatement of the prosecution --  And again, I

3   thought long and hard before making this argument

4   to the Court -- is simply this:

5           This is one misstatement, misstatements

6   have always been made to further their case.   And

7   the Court pointed out quite frankly and quite

8   clearly for a year and a half, sometimes

9   pleasantly and sometimes quite unpleasantly in the

10  atmosphere of the Court, the problem becomes this

11  --  We have been battling it out, and we have been

12  fighting as you do in any murder trial, and every

13  lawyer in this courtroom understands, including

14  this court, that occasionally it isn't the

15  evidence that makes the impression;  but rather

16  that which the Court thinks is the evidence.

17          This record is replete in mistakes up to

18  the last day of the trial; and Mr. Lufrano making

19  objection upon objection based on places where we

20  were forced to show where our information came

21  from, i.e. the explanation of the State and the

22  youth officer's file, which these gentlemen

23  claimed they never had, although their

24  predecessors did.

1          We would point out that even in his
2   closing argument one of the Assistant State's
3   Attorneys again made a misstatement without
4   sanction of the Court -- and I am speaking of the
5   sanction of the Court specifically every time her
6   conduct, which Mr. Lufrano and I deemed and made
7   motions for, prosecutorial overreaching, it was in
8   fact denied, stating that Mr. Hendricks, according
9   to their theory of the case, was the last person
10  to see her alive;  not as a point of argument, but
11  as a point of fact.
12          And when Defense Counsel and myself made
13  vociferous argument on this stating that this
14  culmination of prosecutorial overreaching for a
15  year and a half that we were forced to bear and go
16  through and leaving the impression that they are
17  correct, not by logic and reason, but by loudness
18  of voice, and stated that in fact the Attorneys
19  Registration and Disciplinary Commission states
20  there are certain rules that even Prosecutors must
21  follow, and the wilful statement of a non-truth is
22  one of those that the next day the Prosecutor came
23  in and admitted his wrong; not sua sponte, but we
24  would suggest quite frankly dealing with the fact

1    that the Attorneys Registration and Disciplinary

2    Commission was involved.

3            The point being, Defense Counsel --

4        MR. MURPHY:  Objection, Judge.

5        THE COURT:  The objection to that argument is

6    sustained.

7        MS. PLACEK: Defense Counsel can feel nothing

8    but bias over and over, this overreaching is

9    allowed, not only allowed, but yet when we make

10   our motion time and time again dealing with this

11   overreaching, it is overruled.  And yet, as the

12   Court points out, we go voluminously into records

13   and we state over and over and over on the record

14   Counsel and Judge alike that it becomes difficult

15   after a while not only to remember exact instances

16   that have not made it into our notes;  but also,

17   Judge, we would suggest that a trial among any

18   witnesses as an impression constantly in pointing

19   out in this trial as to the last points, sub-

20   section B, I even complained several times that

21   names were called by the Prosecutor of me.

22           It was put on the record through their

23   courtroom talking to one another  that it was

24   stated when I was either making an argument, or in

1    the alternative when I was crossing a witness,

2    said loudly enough for me to hear, and not for the

3    record.  This is an unpleasant task I bring before

4    the Court.  And quite frankly in my history I have

5    never stated;  but the point being I ask the Court

6    for sanctions.

7            I use the phrase often, I am a

8    stranger in a strange land here in Markham, for

9    the simple reason this is my first case tried in

10   Markham.  I am not used to the peculiarities or

11   idiosyncrasies that accompany every court

12   building in this County.

13           The point being simply this, Judge,

14   there is always a hampering and there is always a

15   problem when in fact the Prosecution, over a

16   lengthy trial like this, is not only allowed to

17   make misstatements;  but also, Judge, even when

18   reported in open court, and the record will bear

19   same, to make certain statements against Defense

20   Counsel and yet condescending, with all due

21   respect to this Court, for whom I have much

22   respect --  please don't believe by this argument

23   I have anything but respect for this court.  But

24   again, these remarks are to be both taken as

**1574**

28

1    sexist, not only that, Judge, but we brought to

2    the Court's attention there's not even an

3    admonition but rather an admonition to both

4    sides.

5         The point I am making Judge, is that

6    this is what we quite frankly feel is the reason

7    that we feel there was a certain amount of tipping

8    of bias by this Court to the Prosecution in this

9    case, and thus, unpleasantly, we have to make said

10   argument.

11        We feel this becomes necessary on behalf

12   of Mr. Hendricks.

13        Again, as I stated, both Mr. Lufrano and

14   myself have thought long and hard before putting

15   this to paper for the simple reason, Judge, both

16   he and myself have nothing but respect for the

17   Court, and we are somewhat puzzled during this

18   trial by certain actions taken by the Court in

19   either the non-sanctioning or the non-correction

20   of what we felt was guilty behavior.

21        Because, Judge, with all due respect to

22   the Court, name-calling can never, can never be

23   considered proper or not somehow some sort of

24   overreaching.

1          I would again ask the Court to forgive

2    me if I misinterpreted the evidence somewhat

3    different than the Court.  I could only rely, even

4    though an order was signed for a transcript, on my

5    memory, Mr. Lufrano's memory, our collective

6    memory and our collective notes from this case,

7    our suggestion quite frankly is because the errors

8    of law created in the record -- not only the

9    errors of law created in the record, but also the

10   certain errors of fact -- and with all due respect

11   to the Court in the compatibility of consentual

12   statements speaking of consentual actions to

13   somehow being able to leap to fact of violence

14   presence such a hypothesis that in fact cannot

15   support specifically a verdict of murder in this

16   case, Judge.

17          Thank you.

18      THE COURT:  State.

19      MR. MURPHY:  Judge, I'm going to try to

20   respond to these arguments that were made in the

21   order that the Defense made them to you --  the

22   defendant's attorney made them to you in this

23   motion for new trial, as best I can.

24          Some of these arguments I will not

1    respond to because I think they are arguments that

2    should be made during the course of the trial.

3           There has been a complete and thorough

4    record made, not only through the defendant's

5    argument; but our response -- and the Court has

6    enunciated its position with respect to those

7    issues very clearly in the record. And I don't

8    believe it is necessary to regurgitate again those

9    particular issues.

10          But there are some I wish to touch on.

11          The Defense argues to the Court that the

12   time of death is an issue in this case. Your

13   Honor discussed that in your ruling:

14          We are not required to prove beyond a

15   reasonable doubt the time of death of the victim

16   in this case.

17          There are inferences that can be made

18   with respect to the time of death, considering the

19   condition of Denise Johnson's body, considering

20   the date and time when she disappeared, and the

21   location.

22          I believe that those inferences were

23   properly made by the Court based on the evidence

24   in this case.

1          The Defense argues to the Court with

2     respect to the first point as to whether or not we

3     have proved the defendant's guilt beyond a

4     reasonable doubt.

5          That is standard, if I understand the

6     defense correctly, is whether or not he

7     established a reasonable hypothesis of what he

·8     did.   Judge, that is not the standard of the law

9     in this case.   The standard of law is whether or

10    not there is a reasonable theory of innocence, if

11    in fact the evidence is circumstantial, which was

12    the case in this case.

13         So the Defense misstates the law to the

14    Court in the oral argument as to the motion for

15    new trial.

16         The Defense also makes much of the

17    statement in this case, and the argument the

18    Defense makes in the motion for new trial as was

19    the case at the time of trial based on a faulty

20    premise.

21         The Defense argued to this court with

22    respect to the statement that was offered in

23    evidence that the Court, if I understand

24    correctly, must either totally believe what the

1    defendant said in his statement, or must totally

2    discount what the defendant said in his statement.

3    And I submit to the Court that is not correct.

4           The Court is the trier of fact, the

5    Court is the person who assesses the credibility

6    of the witnesses, has the position of being able

7    to determine what you believe or what you don't

8    believe, as to what a witness says or as to what

9    the defendant in his statement says.

10          And what is important about this

11   statement, the Court may not even agree with the

12   State in this case, and our position was that

13   statement was absolutely outrageous and totally

14   beyond belief.

15          But what is important about that

16   statement, and the Court relied on this, is that

17   statement connected the defendant, Jerome

18   Hendricks, to Denise Johnson, and connected him to

19   her on the night in the garage around the date

20   when she disappeared.

21          Another argument which the defendant

22   makes, which is based on a faulty premise, and has

23   made time and time again, not only in this trial

24   but in the pre-trial motions as well, is that

1    somehow what the defendant says in his statement

2    is believable because Denise Johnson, if you

3    believe what the defendant is saying, was a

4    prostitute.    That this 12 year old girl was a

5    prostitute, and therefore it is easy to believe

6    she willingly would go to a garage with the

7    defendant and have sex with him on a garage floor,

8    willing to participate in such an act.

9         And, Judge, our response to that, as it

10   was at the time of the trial,  there is absolutely

11   no evidence of that whatsoever.    And as Mr.

12   Cassidy said at the time of the trial, not only

13   did we argue to the Court and say to the Court it

14   is absurd to believe a 12 year old girl would

15   willingly engage in these acts;  but it is absurd

16   to believe based on the evidence in this case that

17   this girl, Denise Johnson, would willingly

18   participate in acts with the defendant.

19        And I believe the Court properly rejects

20   the Defendant's theory of the defense in this

21   case.

22        The Defendant argues to the Court that

23   your Honor's conclusion, or your Honor's findings

24   were indicative of confusion.    And your Honor, as I

1    review the findings, and I don't mean to speak for

2    the Court;  but I think what is very clear in the

3    Court's findings is the Court had a question --

4    or you had a question in your mind as to whether

5    or not we proved beyond a reasonable doubt whether

6    force was used by the defendant during the course

7    of the sexual assault.

8           And your findings I believe are based on

9    your conclusions with respect to that issue.  And

10    I believe the Court's findings are consistent with

11    respect to that line of thinking.

12           The defendant argues that the Court

13    improperly denied a motion for directed finding.

14    And, your Honor, I believe, as I will indicate

15    many times during the course of this argument,

16    your Honor provided an opportunity to the Defense

17    and to the State at each turn during the course of

18    the trial, for full and complete hearing and a

19    full and complete opportunity to argue whatever

20    points we felt were necessary.

21           And a great example for that is the

22    motion for directed finding, because in that

23    particular case the defendant filed a written

24    motion raising the issue of corpus delecti.

1           The Court continued this case for a

2    lengthy period of time to allow the State to file

3    a written response.  The Court then allowed the

4    Defense an opportunity to file a reply brief.

5           After thoroughly reviewing the issues,

6    the questions of fact with respect to the Motion

7    for directed finding, the Court ruled.

8           If anything, the record in this case

9    shows that the Court was thorough in giving the

10   defendant every opportunity to argue whatever

11   issue he wished to raise with respect to the

12   issues on the motion for directed finding.  And

13   the Court properly ruled that we had established a

14   corpus delecti.

15          The defendant argues to this Court that

16   there is evidence that two people definitely saw

17   Denise after this incident.  Well, your Honor,

18   first of all, there's no evidence of that in the

19   trial of this case.

20          What the evidence or the record does

21   show is that there were allegations made by the

22   Defense that there was such evidence.  The Court

23   allowed the defense an opportunity to present that

24   evidence, and it was clear from the record that

1    this was in the form of hearsay evidence.  And the

2    Court conducted what I believe the Court described

3    as in chambers hearing, a full hearing, allowing

4    the defense to call whatever witnesses they deemed

5    necessary to present whatever evidence to the

6    Court they deemed necessary, in order to show how

7    this evidence should be admitted;  how this

8    testimony should be admitted into evidence.

9           And after a full hearing the Court

10   properly decided there was not a basis to allow

11   hearsay testimony.

12          And it was clear from the record with

13   respect to this issue not only did the Court

14   properly rule, but what is clear is the defendant

15   attempted to get in hearsay testimony without

16   allowing the State an opportunity for cross-

17   examination.  And properly, the Court ruled that

18   was not the case.

19          What is also important with respect to

20   that issue, Judge, is the defendant had this

21   information for a lengthy period of time, and the

22   defendant, as the record would show, or perhaps

23   shows by their failure to act, did not locate

24   those witnesses and bring those witnesses in to

1    testify.

2                Your Honor, the point the defendant

3    argues is that because of the actions of the

4    Court, the defendant did not make an intelligent

5    jury waiver.  And within the motion itself there

6    is no -- it is not clear as to what waiver the

7    defendant is referring to.

8                Apparently, we are to conclude from the

9    oral argument they are referring to the waiver of

10   jury as to the issue of guilt or innocence.

11               And I believe that the defendant, in the

12   oral argument to the Court, misstated what

13   actually occurred prior to the trial.

14               The State filed a motion to advise the

15   defendant or inform the defendant that we intended

16   to offer evidence of other crimes.

17               As I understand it, Judge, there was no

18   motion by the defendant in limine to preclude the

19   State from offering evidence of other crimes.  And

20   I don't recall a motion in limine on the part of

21   the defendant to preclude the State from arguing

22   that issue to the jury in opening arguments.

23               It did become an issue, because the

24   State filed a motion, and there was an objection

1    on the part of the Defense.  But when the issue

2    came to light again, as has been consistently

3    followed by your Honor, you wanted an opportunity

4    for a full hearing.

5           And as I understand the Court's ruling

6    at the time, you wanted to allow the opportunity

7    to hear the evidence and conducted an in-camera

8    inspection, or in-camera hearing, outside the

9    presence of the jury, so the Court could properly

10   rule on whether the evidence that we sought to

11   introduce should be admitted as evidence of other

12   crimes.

13          And at the time that we raised that

14   motion to offer evidence of other crimes, as I

15   understand it, the Court took it under advisement.

16   At that time the defendant never told the Court

17   that because of the Court's ruling with respect to

18   this motion that they were being forced into

19   making a jury waiver.

20          The defendant never asked this Court to

21   conduct the hearing before the jury selection

22   began with respect to the motion to offer evidence

23   of other crimes.   The defendant never asked this

24   Court to conduct this hearing before opening

1    arguments.

2            So really, Judge, the record doesn't

3    support what the defendant says to you, that they

4    were forced to waive the jury because the Court

5    had not conducted a hearing at the time that they

6    waived the jury.

7            And it is interesting to note, Judge,

8    that the defendant waived his right to jury after

9    the jury selection process began.

10        MS. PLACEK: ~~Objection, totally incorrect,~~

11    ~~Judge.~~

12        THE COURT: Overruled.

13            That is a fair characterization of what

14    happened.

15            The objection is overruled.

16        MR. MURPHY: As I recall, Judge, the Court

17    admonished -- a number of potential jurors were

18    brought into this courtroom, the Court admonished

19    the jurors, and the defendant and his attorneys

20    had an opportunity to view the potential jurors.

21    And even before the Court began to question each

22    individual juror the Defendant waived the jury.

23            The defendant argued in point 10 of the

24    motion for new trial, that the Court erred in

1    receiving evidence as to evidence of other

2    crimes.

3            And I believe, as I understand the

4    defendant's argument, that somehow the Court was

5    prejudiced when we offered this evidence, and that

6    somehow the Court's ruling or decision with

7    respect to guilt or innocence was effected by the

8    evidence the Court heard of evidence of other

9    crimes.

10            Well, Judge, this was a bench trial.

11    What do we have to offer of other crimes and to

12    have a determination made without asking the Judge

13    to hear the evidence?  The only recourse we have,

14    Judge, is to offer you the opportunity, whether it

15    be by a proffer of evidence, or by actual

16    testimony to hear that evidence and determine

17    whether or not there is a basis to offer the

18    evidence of some other crimes.

19            As I understood what occurred in this

20    case, the Court heard that evidence, and at the

21    time wanted to reserve ruling, or at least when

22    the issue was initially brought up, wanted to

23    reserve ruling.

24            As I understand the Court's ruling at

1    the time of the guilt or innocence, the time of

2    the findings in this case, the Court did not make

3    any reference whatsoever to the evidence of the

4    other crimes.    And as I understand the Court did

5    not rely on that in making your determination.

6            And even at the time we offered that

7    evidence, Judge, as I understood your comments,

8    Judge, that evidence was not being considered as

9    evidence of other crimes.

10           In point 11, Judge, the defendant argues

11   that the Court showed bias toward the Prosecution

12   --and like much of this motion, Judge, there is a

13   complete lack of specificity as to what the

14   defendant is actually raising as an issue.

15           Orally the defendant argued something

16   about youth files.    And I fail to see, Judge, how

17   whether we had certain files, or did not have

18   certain files or reports by the Chicago Police

19   Department, how that constituted a misstatment of

20   fact and law.

21           As I understand the rest of the

22   defendant's argument, or actually I fail to

23   understand how the rest of the defendant's

24   argument, where they specifically point to any

1   instances where the prosecution of this case

2   misstated any facts or law in this case.

3          There's been no specific allegations

4   made by the defendant.

5          And the same goes for point B, Judge.

6          The defendant spends a lot of time

7   talking about prosecutorial overreaching;  but

8   they fail to really specify any examples.

9          I believe there was one pointed to, and

10  that was it.

11         There's a reference made to the fact

12  that there were personal attacks made against

13  Defense Counsel.  Your Honor, I don't know what

14  Defense Counsel is talking about.  There is no

15  evidence whatsoever in this record that Defense

16  Counsel was attacked in any way whatsoever.

17         I have no knowledge, and I believe I

18  speak for Mr. Cassidy as well, of any evidence or

19  any attack on Defense Counsel, personally, in this

20  case.

21         It is easy to get up and make

22  allegations;  but there is no evidence in this

23  case whatsoever to support what the Defense says

24  with respect to this issue.

1        As I understand, as I worked on this

2   case, your Honor, I believe that there were

3   attempts to induce attacks on Defense Counsel;

4   however, there was no such attack made as the

5   Defense Counsel claims.

6        Your Honor, the defendant had a fair

7   trial.  The defendant had hearings with respect to

8   each and every issue he claimed he was entitled to

9   a hearing on.

10        Your Honor has bent over backwards with

11  the defendant to allow him an opportunity to have

12  his say with respect to each issue which he feels

13  should be addressed.

14        And I believe that this motion for new

15  trial should be denied.

16       THE COURT:  Defense?

17       MS. PLACEK:  Very briefly, your Honor.

18        The word, prostitute, was never used by

19  Defense Counsel, as a matter of fact, in both my

20  opening and closing, I stated that was not to be

21  the claim.

22        The State asked where did he get the

23  information.  Again, if the State wishes to go

24  through misstatement of fact, again there was

1590

1    always them who said that the defendant will try

2    and paint her as a prostitute --  never us.

3           Where we got our information from was

4    her family, as told to the police, and through the

5    right of impeachment.

6           We all stated --  and the theory of the

7    defense's case has always been the same as stated

8    per the police reports on the missing person.

9    Hatibual runaway, became a problem when in fact

10   became interested in older boys and men.  Was a

11   problem child, and often tried to elude her

12   guardian by going to her grandfather, and her

13   grandfather would lie about her whereabouts.

14          The point is, Judge, rather than simply

15   wipe this away and say this is something within

16   the Defense's imagination, this is their attempt

17   to smear.

18          It was argued at the time --  again this

19   poor, dead girl, again the words of the State by

20   making her a prostitute, was never in fact stated.

21          The reason we brought it up before the

22   Court, Judge, and the reason again --  and

23   incorporating this argument of the State, as to

24   sub count 11, is simply this, Judge:  The

1    information was clearly there.

2           This is not a motion based on

3    speculation, but based on the transcript.

4           If the evidence as presented was

5    incorrect, then it was geared incorrectly at the

6    time of her missing by her family.  And if it was

7    somehow transposed, the evidence given by her

8    family of these traits, which by the way, again,

9    in both arguments, we never spoke of her being a

10   prostitute;  but rather an habitual runaway in the

11   terms I previously mentioned.  Then the family

12   lied to the police in the missing person's report,

13   and the police, somehow, lied in some conspiracy

14   to help us in this matter.

15          The point of the State incorrectly

16   stating the argument and the information is in

17   fact of reliable sources.

18          Next as to the matter of hearsay which

19   the State claims was so unreliable of the

20   simplicity of the matter in the Brady hearing

21   where we moved for dismissal because of the

22   government in action.  In fact, there was evidence

23   of an attempt to find these two women and the

24   youth officer himself and talk to these women,

1     that is these women, Denise Johnson's picture at

2     the time during the chambers hearing, your Honor.

3     He took no action, and I admitted it from the

4     stand after the detective said he didn't believe

5     we found a body, so therefore although he put down

6     --  and I believe it was stated on the record as

7     to certain identification done where these women

8     said they stood and saw the young lady days after

9     the young lady was supposedly killed by this

10    defendant.  This police officer did more, he took

11    the guardian of the young lady who was missing for

12    several days, and took her to the area where in

13    fact these ladies said that they saw her.

14           The point being is that what we

15    suggested to the Court then, and as we suggest to

16    the Court now, that if anything unnatural --  and

17    I am speaking of the defense's supposed natural

18    enemies in the courtroom, the police, the same

19    police who arrested my client, although a

20    different branch working on the missing person and

21    the state of law, what is known to one branch is

22    known to all the branches, is the presumption,

23    what is known to one branch of the State's

24    Attorney's office should be known to all the

**1593**

1    branches, because of the simple fact the officer

2    said I rely on this information.  But on the other

3    hand when the detective said we found a body, I

4    just stopped looking for her.    But I did find

5    that evidence reliable enough to take action, to

6    take as we saw from the stand the grieving

7    guardian at that time, the worried and probably

8    grieving guardian out on the street and look for

9    the girl.  Therefore the State's allegation that

10   somehow it is some sort of flight of fancy on the

11   defendant's part, somehow the judge of the

12   credibility of the witnesses can't say I discount

13   that because this is just a typical defense

14   counsel's attempt to blacken the victim.

15           It can't be given credibility for the

16   simple fact that an habitual runaway became

17   interested in older men and boys.  The problem

18   child was made by its relatives.  It wasn't

19   made by a bunch of our investigators coming into

20   court, but in fact by the Chicago Police

21   Department's own report as told to them by the

22   relatives of the victim.

23           Your Honor, if I might, I would totally

24   discount Counsel's statement that somehow this is

48

1   some sort of a thing that can be disregarded.

2          It fits into the reasonable hypothesis

3   simply like this:  based on police officer's

4   reports that action was taken as a result of a

5   conversation that the investigator -- to look for

6   this girl, hightened as the result of a

7   conversation and a relative, a civilian was

8   brought out and able to help.  Based on the fact

9   that we have a girl in the spring of puberty

10  somehow going to the forbidden flame.  So based on

11  the fact that the State stated a different time of

12  death, based on the fact that all this is a

13  conversation relating to a time and actions after

14  the suggested time of death, the reasonable

15  hypothesis of death is not established by some

16  discredible witness by the Prosecution, but

17  established by the actions of the Chicago Police

18  Department themselves.

19         Therefore, Judge --  and we have all

20  been sitting at the same trial --  I would suggest

21  to the Court in reviewing its notes, as to who the

22  defense called and who the defense called during

23  the trial itself, were in fact members of the

24  Chicago Police Department, dealing with the

1  missing persons and dealing with the reasonable

2  hypothesis.

3  Now, Counsel says for some reason it

4  escapes his mind that these separate motions in

5  limine were filed; but in fact there was some sort

6  of response to their motions for other crimes.

7  The record will bear me out -- the

8  record would not only bear me out as to the

9  objection I made to opposing Counsel, the record

10  will bear out this fact, and this fact simply is

11  that the Court knew we had motions in limine from

12  the defendant and at the beginning of the motion

13  we began to argue.

14  Since the Court has become aware of my

15  style of argument, the Court knows I am not brief.

16  But the Court, unable to secure a jury, suggested

17  to both Counsel for the purpose of scheduling that

18  the jury be at least admonished, told it belonged

19  to this courtroom and sent it to lunch.  And in

20  the meantime Counsel would in fact deal with the

21  issue before the Court.

22  The idea to somehow try and mislead this

23  Court in thinking, well, Counsel agreed to a jury

24  selection until they looked at the jurors, is

1    absurd.   Because lengthy argument was made, and

2    the record will bear me out that it wasn't until

3    late in the afternoon that Counsel not only asked

4    for a different venire dealing with the fact that

5    they were asked to wait, but excuse me, in the

6    alternative, we suggested to the Court the motion

7    in limine that the State would not be allowed to

8    bring up in opening statements matters that we

9    clearly objected to.

10              Therefore some say we looked them over

11   and didn't like them, and that was what made up

12   our minds, is absurd.

13              The same argument proffered at the

14   motion for new trial was made at that time, Judge,

15   and it was made --  we wanted to be able to give

16   this man, the defendant, the best defense we could.

17   And we couldn't, if the Court handcuffed us.

18              Finally, as to the somewhat confusion

19   about the fact that they don't remember about

20   certain misstatements of facts of law, I called

21   the Court's attention, and I called the reviewing

22   Court's attention not only to the apology made the

23   next day;  but to the objections made throughout

24   the closing remarks, through the trial.   And the

**1597**

1    issue becomes this:  Simply this, just as the

2    Defense Counsel is meant to put on a trial with

3    all their skills and with all their ability in

4    order to defend their client, we are still

5    required to play within the rules;  not put on

6    perjured testimony, not make up shall we say false

7    issues before a jury that we feel cannot be borne

8    out later.

9         The duty of the State becomes a higher

10   one;  the higher one is quite frankly this:

11   Defense Counsel need only turn over that which we

12   in fact are planning to use during trial.  Per

13   Brady versus Maryland, the State must even turn

14   over that which is in fact helpful to the

15   Defense.

16        I know not why these Prosecutors are

17   somehow mysteriously, were missing the youth

18   officer and missing persons file which was

19   extremely helpful for the defendant.  Perhaps

20   their office sent them out without it.

21        All I know is Illinois law requires

22   it.

23        I know not what other matters were

24   missing from their file, or for that matter, since

**1598**

1    I'm not the first attorney who had this case; but

2    others had it before me, from my file due to this

3    somewhat questionable reasoning but all I can say,

4    Judge, is that that becomes the true problem, that

5    how can an experienced Prosecutor read a motion

6    when a file is referred to constantly throughout

7    the motion, and when it speaks constantly of the

8    fact that she was supposedly seen alive after the

9    time of the bill of particulars, that she was an

10   habitual runaway, and yet object when the

11   defendant brings it up.

12           I blush to go to the next part, but if

13   the Court needs examples, I will give him two

14   examples.

15           And I'm speaking about personal attacks.

16   First, my turning toward both Counsels during

17   arguments similar as this, and looking directly at

18   them and asking what they called making an offer

19   of proof before this Court.

20           Next, that the Court remembers, and I

21   understand it is the Court's habit, the Court

22   speaking to the State and conducting what it

23   speaks of as a law school for the State, that it

24   was not.  This Court, and the State, had a rather

1599

53

1    friendly exchange. I stated something to the

2    Court.    The Court -- you then asked to

3    acknowledge something to the State that I had

4    heard the two gentlemen as they spoke both loudly

5    to one another say.    The example of the record

6    specifically is the Court said I don't think that

7    is proper.    And I said quite frankly, Judge,

8    occasionally I have a problem telling what is

9    proper when you are constantly being called by

10   your opponent or constantly being referred to as

11   something that lives in a kennel, rather than

12   using the word, bitch, which I spoke to both

13   State's Attorneys after the proceedings, about

14   what I heard.

15        I don't understand the fact that there

16   seems to be a lack of memory of this matter;  but,

17   Judge, the record will bear it out.

18        I disdain this argument for the simple

19   reason that, number one, believe me, I take

20   neither personal offense, but I marvel at the fact

21   that it was done.

22        Thank you, your Honor.

23    THE COURT:  I would like to address some of

24   the issues raised, that you had in this motion.

**1600**

54

1          Many, if not all of them, have been

2    addressed at one time or another, in one way or

3    another, as we progressed through this trial, and

4    the pre-trial motions.

5          And I would like to start and address

6    the issues chronologically in the way in which

7    this case was brought to trial, that is starting

8    from the time this case came into the courtroom,

9    until today's date.

10         And in that regard, what arises first,

11   what was argued to me, as nearly as I can recall,

12   my view of and comments regarding the defendant's

13   motion to quash arrest and suppress evidence.  And

14   the remarks that I made concerning the credibility

15   of the police officers who testified in that

16   regard.

17         And it is true that I indicated that I

18   thought that the credibility of some of the police

19   officers was less than what it ought to have been

20   as it regarded the question of whether or not they

21   intended to arrest the defendant when they

22   proceeded to his home, what transpired in his

23   home,  the conditions that existed outside of his

24   home, and things of that nature.

## 1691

1          But whether or not I agreed, or however

2      I assessed the credibility of those police

3      officers has little or no bearing on the law that

4      was applicable to the defendant's situation.

5          At the time that the hearing commenced,

6      the settled law was embraced in Payton versus New

7      York, which gave rise to a different thought

8      pattern;  but by the time we concluded the

9      hearing, Harris versus New York had been decided,

10     which gave rise to an altogether different line of

11     reasoning, as to whether or not the defendant

12     could prevail on his motion and receive the relief

13     which he sought, which was to suppress the

14     evidence, or the statements taken from him at the

15     police station.

16         I concluded in reliance upon --  or not

17     in reliance upon but as mandated by the United

18     States Supreme Court decision in Harris versus

19     New York, that no constitutional right of the

20     defendant as it embraced his 5th Amendment Right

21     against self-incrimination had taken place.    Nor

22     had a 4th Amendment violation taken place so as to

23     infirm his 5th Amendment Rights.

24         What had essentially happened was that

1    Payton had been violated, at best, without any

2    consequences to the defendant that would have

3    necessitated the Court suppressing anything.

4            And so it is not fair to say that I had

5    assessed the credibility of these police officers

6    in such a way as to permanently infirm their

7    testimony.

8            I was talking about the rational listing

9    of the evidence as it impacted upon the

10   defendant's motions to suppress.

11           When this case was called for trial,

12   whatever the Court said in regard to a ruling on

13   the State's request to introduce evidence of other

14   crimes, or the defendant's motion in limine to bar

15   -- and we will talk about that later;  but

16   whatever was said in that regard, or any other

17   ruling of the Court, could not by any stretch of

18   anyone's imagination have caused the defendant to

19   relinquish his right to trial by jury.

20           Strangely and strikingly enough, while

21   Counsel argues at length the depravation of the

22   defendant's right to trial by jury by the Court,

23   not a single authority from any jurisdiction

24   anywhere has been cited to the Court to suggest

1    that a pre-trial ruling of the Court can infirm an

2    otherwise knowing and intelligent jury waiver.

3              What is at issue when the defendant

4    waives his right to trial by jury is one that he

5    knows that he has a Constitutional Right to have a

6    jury decide his guilt or innocence.  He has a

7    right to know that that Right, that is the right

8    to have a jury trial, is personal to him and

9    cannot be taken away from him by his lawyer, by

10   the Prosecutor, or by the Court.

11             He has a right to understand the nature

12   of the jury.  How it is selected, what it does,

13   and the fact that it requires unanimity for the

14   jury to find him guilty of an offense.

15             When he has understood all of these

16   things, he is in a position to assess whether or

17   not he wishes to waive that right, and submit his

18   cause to the Court.

19             Now, granted, making that decision is

20   critical in many respects, and in many instances

21   to the defendant, and it is often a difficult

22   decision to make;  but because the exercise of

23   Constitutional Rights or the waiver of

24   Constitutional Rights present difficult decisions

1     for a defendant, does not mean that his choices

2     are unintelligent.

3         Rather, what transpired here, in my

4     judgment, which again may or may not be accurate,

5     is that the defendant made a tactical decision

6     based on matters and things which I do not know,

7     and am not concerned with, that he should not try

8     his case to a jury -- which is precisely what

9     every defendant does when he or she waives the

10    right to trial by jury.  They make a tactical

11    decision based on conferences with, and guidance

12    by one's attorney.

13         And it is inconceivable to me that a

14    skilled practitioner, either as a Prosecutor or as

15    a Defense Attorney, would advise the defendant

16    that you have been wronged by the Court and remedy

17    lies ahead for you if the Court makes errors in

18    ruling on issues, and you waive your right to

19    trial by jury, because supposedly of those errors,

20    that you can be relieved of that jury waiver

21    somewhere down the line.

22         That is a position that is unknown, as

23    far as I am aware to the law, and apparently as

24    far as Counsel is aware, inasmuch as no authority

1    to that effect has been brought to my attention.

2    The defendant, just as he before that

3    waived his right to a jury at the sentencing

4    hearing with full intelligent, understanding

5    thereof, also waived his right to a trial by jury

6    on the guilt and innocence phase.  And the matters

7    -- not that one was a Constitutional Right and

8    one was a Statutory right, but the issue is that

9    the defendant knew what his rights were;  knew the

10   nature of a jury, knew the jury's function, as

11   distinguished from the Court's function, and

12   decided to submit his case in its entirety to the

13   Court.

14   The issue of whether or not the ruling

15   on the motion of the other crimes motion was one

16   which was a matter of law, Counsel approaches that

17   problem as if a motion in limine requires a

18   definitive ruling by the Court at the time the

19   motion is presented to the Court, and there is no

20   such rule of law to that effect either.

21   Motions in limine can be made and ought

22   to be made in many instances in order to assist

23   the Court in keeping the evidence in as pure a

24   form before a jury as is possible.  But they can

1  often be used as a mechanism for feeling out,

2  pre-trying, testing the winds, if you please, of

3  where the Court is going.

4          That may be equally fair game also.  The

5  difficulty with this issue, as I saw it, was

6  without a full understanding of the facts of this

7  case, which the Court could not have prior to

8  having heard any evidence, no matter how sincere

9  and how articulate it was presented to the Court

10 in limine, it is easier to make the decision once

11 one has a framework from whence to make it;  and

12 so I elected not to make the rulings until I had

13 more of an understanding of what the facts in this

14 case would disclose.

15         That ruling, like any other pre-trial

16 ruling, could not possibly have caused the

17 defendant to do anything other than make a

18 strategy decision in regard to whether he wished

19 to have his case tried by the jury or by the

20 Court.

21         Where, if you please, what would have

22 been the result of the Court saying to the

23 defendant, I decline to accept your jury waiver,

24 and so the Court is damned if it does, and damned

1    if it doesn't.

2         And, of course, the Court ought not to

3    interfere with the defendant's decision as to how

4    to try his case, if in fact the Court can

5    determine that he knowingly and intelligently is

6    waiving his rights.

7         And that is what the Court determined

8    Mr. Hendricks to be doing.

9         Then his case proceeded to trial.

10        The evidence that was adduced at trial,

11   it need not be gone into in any great detail at

12   this point by me, except that during the course of

13   every trial rules are made by the Court,

14   hopefully, they are right.

15        But the defendant is not entitled, nor

16   is the State entitled to a perfect trial. He is

17   entitled to a Constitutionally fair trial, one

18   which does not fundamentally abridge rights which

19   are guaranteed to him under the Constitution of

20   the United States and the laws of the State of

21   Illinois.

22        When the State rested its case, the

23   issues that the Court had to grapple with, and it

24   was a profound issue in my mind, was whether or

1 not the State had proven the corpus delecti of

2 the offenses charged in this indictment.

3    That didn't come as any shock to the

4 litigants in this case, the lawyers in this case

5 knew that that was going to be the position taken

6 by the Defense.

7    And so I considered the memorandums of

8 law supplied to me by both sides in this case.  I

9 read all of the authorities cited by both sides in

10 this case.  And I did my own independent research

11 and thinking about this case, not from an advocate

12 point of view;  but from a point of view of trying

13 to apply the law of this jurisdiction as I

14 understand it to be.

15    It may be argued, and probably and

16 undoubtedly will be argued, that I misapprehended

17 or misapplied the law to the facts of this case.

18 Be that as it may, it was my judgment without any

19 hesitation on the murder charge, that the State

20 had proven the corups delecti of murder outside of

21 or aliunde of the confession of the defendant.

22    The other crimes charged in this

23 indictment simply needed to be shown that the

24 defendant's confession was corroborated

1  sufficiently for the Court to rely upon the

2  confession, and used in support of the corpus

3  delecti of those offenses.

4          That is the law of the State as I

5  understand it.  And that is what the Court did.

6  And it is why the Court denied the defendant's

7  motion for acquittal at the close of the State's

8  case.

9          Now, the question of the so-called

10  chambers hearing, and the fact that there was some

11  reference to the deceased in this case having been

12  seen alive long after the State was able to show

13  that the defendant had been with her;  but that

14  was bothersome.  And so I reviewed Chambers

15  versus Mississippi, and other cases, to determine

16  whether or not that evidence could fairly come in,

17  because I think that under any circumstances all

18  of us would agree that it would have been the

19  admissibility of hearsay.

20          And so I allowed the Defense the maximum

21  opportunity to disclose and to show that this was

22  the kind of hearsay that bore some indicia of

23  reliability that would allow it to become

24  admissible in the trial of this case.

**1610**

1          The Defense failed to do that for many

2     reasons, reasons which perhaps are unknown to me,

3     or for whatever reason, it did not show that there

4     was any reliability that would allow the Court to

5     admit it into evidence.

6          Now, you can blame the police, you can

7     blame the Prosecutor, you can blame fate, or

8     whatever else you choose to blame.  But that will

9     not relieve you of the burden of demonstrating

10    reliability in this case.

11         And since there was no reliability to

12    these statements, the Court properly, in my

13    judgment, kept them out.

14         The most troublemsome part of the

15    argument, to me, has to do with whether or not the

16    Court showed bias to the Prosecution and the

17    remarks allegedly addressed to Defense Counsel.

18         I am a little flattered, almost, by the

19    first one of those, because it is the first time

20    anybody has accused me of that since I have been

21    on the bench, and I have, I must tell you, been

22    accused of the converse, many times.  And so it

23    makes me know that there is equilibrium and

24    balance left in my personality.

1    I can only say to you that if that

2    occurred, that was improper conduct on my part;

3    but I am not certain that it did occur.  And, of

4    course, I'm not going to be the final arbitrator

5    of that.

6    I find it very difficult to go back and

7    evaluate my own conduct.  I suppose I will have to

8    let somebody else do that, and that is somebody

9    else who would be the Reviewing Court, if review

10   of this case becomes necessary.  And they may very

11   well find me wanting in that regard.

12   I must say to them and to you that it

13   was not intentional, it was not malicious, and it

14   was not designed to disadvantage this defendant.

15   As to the sexual allegation of my

16   ignoring personal attacks against Counsel, I would

17   like for you, Miss Placek, and Mr. Lufrano, and

18   Mr. Murphy, and Mr. Cassidy, and everyone else

19   under the sound of my voice, to know that I am

20   fully aware, probably more so than any of you,

21   that gender, bias, sexism, racism, classism, are

22   part of the American way of life, unfortunately.

23   And it creeps into our courtroom more often than

24   it should.  And it is shameful of me, if I allowed

1   that to happen in my courtroom, and not address
2   it.
3           And if it did happen, you have my
4   sincere apology;  but to the best of my ability --
5   and I readily concede that I am am fallible --that
6   I would not permit, sit back idlly and listen to a
7   sexist, gender-bias, racist, anti-religious
8   argument or statement made by the defense, or the
9   prosecution, or witness or anyone else in this
10  courtroom that I became consciously aware of.
11          I would do something, and if nothing
12  else, resign from this seat, if I found myself in
13  a position where I had to be treated to that kind
14  of discourse in my courtroom, without any ability
15  or willingness or compulsion to do anything about
16  it.
17          Now, I don't purport to tell you that
18  did not happen;  I simply say to you that if it
19  happened, I was unaware of it, for whatever
20  reason, including insensitivity to it, for I may
21  very well have been insensitive to something I
22  should have been insensitive to.  But how that
23  affected the results of Mr. Hendricks, I fail to
24  know.

1           It was disgraceful if it happened;  but

2      it did not affect Hendricks' rights, which is the

3      issue here --  and not the conduct of the Court,

4      and the insensitivity of the Court;  but rather

5      whether or not Mr. Hendricks' rights have been

6      protected in this trial.

7           I think they have.

8           The defendant's motion for new trial is

9      denied.

10      MS. PLACEK:  Thank you, your Honor, for your

11     courtesy.

12      THE COURT:  We're going to take a five minute

13     recess, and we will proceed to the sentencing.

14                      (Thereupon, a short recess

15                      was taken, after which the

16                      following proceedings were had:)

17

18

19

20

21

22

23

24

**1614**